IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |
|---|---|
| In re:<br><br>MOUNTAIN EXPRESS OIL COMPANY, et al.,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 23-90147 (DRJ)<br><br>(Joint Administration Requested) |

**DEBTORS' <u>EMERGENCY</u> MOTION FOR ENTRY OF INTERIM AND
FINAL ORDERS (A) AUTHORIZING THE USE OF CASH COLLATERAL,
(B) PROVIDING ADEQUATE PROTECTION, (C) MODIFYING THE
AUTOMATIC STAY, AND (D) SCHEDULING A FINAL HEARING**

> **Emergency relief has been requested. Relief is requested not later than March 20, 2023.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter on March 20, 2023, at 12:00 p.m. (prevailing Central Time). Participation at the hearing will only be permitted by an audio and video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. Once connected, you will be asked to enter the conference room number. Judge Jones's conference room number is 205-691. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Jones's homepage. The meeting code is "JudgeJones". Click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Jones's homepage. Select the case name, complete the required fields and click "Submit" to complete your appearance.**

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at www.kccllc.net/mountainexpressoil. The location of Debtor Mountain Express Oil Company's principal place of business and the Debtors' service address in these Chapter 11 Cases is 3650 Mansell Road, Suite 250, Alpharetta, GA 30022.

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state the following in support of this motion (this "Motion"):

## RELIEF REQUESTED

1. By this Motion, the Debtors respectfully request entry of an interim order on an expedited basis, substantially in the form attached hereto as **Exhibit A** (the "Proposed Interim Order") and, following a final hearing to be set by the Court (the "Final Hearing"), entry of a Proposed Final Order in a form to be submitted (the "Proposed Final Order"):

   a. authorizing the Debtors to use cash collateral (the "Cash Collateral") in which the Prepetition Secured Parties (as defined below) have, or assert, an interest;

   b. authorizing the Debtors to provide adequate protection to the Prepetition Secured Parties for any decrease in the value (such decrease being a "Diminution in Value") of their interests in the Debtors' property resulting from (i) the use, sale or lease of the Debtors' property (including the use of Cash Collateral) or (ii) the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code;

   c. modifying the automatic stay imposed pursuant to section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the Proposed Interim Order and the Proposed Final Order;

   d. waiving any applicable stays under the Bankruptcy Rules and providing for the immediate effectiveness of the Proposed Interim Order and the Proposed Final Order; and

   e. scheduling a Final Hearing to allow for entry of the Proposed Final Order within twenty-one (21) days following entry of the Proposed Interim Order.

2. The Debtors believe that only the Prepetition Secured Parties assert an interest in the Debtors' Cash Collateral. Although this Motion is filed on a non-consensual basis, the Debtors will endeavor to negotiate the terms of a consensual cash collateral order with the Prepetition Secured Parties until the time of the interim hearing on this Motion.

## JURISDICTION AND VENUE

3. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). The Debtors confirm their consent, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court.

4. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5. The bases for the relief requested herein are sections 105, 361, 362, 363, and 507 of title 11 of the United States Code (the "Bankruptcy Code"), Bankruptcy Rule 4001, and Rule 4001-1 of the Local Bankruptcy Rules for the Southern District of Texas (the "Bankruptcy Local Rules").

## BACKGROUND

**A.    Case Background**

6. On March 18, 2023 (the "Petition Date"), the Debtors each commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code. The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee of creditors has been appointed in these chapter 11 cases.

7. Founded in 2000 and based in Alpharetta, Georgia, the Debtors are a recognized leader in the fuel distribution and retail convenience industry. As one of the largest fuel distributors in the American South, the Debtors serve 828 Fueling Centers and 27 Travel Centers across 27 states. The Debtors enjoy trusted relationships with every major oil company including ExxonMobil, BP, Shell, Chevron, Texaco, and Sunoco and have obtained Regal Status with Chevron, Platinum Status with ExxonMobil, and entered a Joint Venture with Pilot/Flying J to become the largest Pilot Dealer in the United States. Since 2013, the Debtors have distributed over 1.1 billion gallons of fuel.

B. **Prepetition Capital Structure**

8. Debtor Mountain Express Oil Company ("MEX") is the Borrower under that certain *First Amended and Restated Credit Agreement* dated as of March 12, 2020 (the "Prepetition Credit Agreement")[2] among MEX (the "Prepetition Borrower"), the Prepetition Guarantors (defined below), certain Lenders (as defined in, and designated from time to time pursuant to, the Prepetition Credit Agreement) (the "Prepetition Lenders"), and First Horizon Bank[3] (in its capacity as administrative agent, the "Prepetition Agent" and, together with the Prepetition Lenders, the "Prepetition Secured Parties") with respect to a secured term loan and revolving credit facility (the "Prepetition Loan Facility").[4] The Prepetition Credit

---

[2] References to documents herein shall include such documents as each of them may have been amended, modified, supplemented, and restated from time to time unless provided otherwise. The Prepetition Credit Agreement amends and restates an original credit agreement dated October 25, 2018. The Prepetition Credit Agreement was most recently amended pursuant to that certain *Fourth Amendment to First Amended and Restated Credit Agreement and Limited Waiver* dated as of December 1, 2022 (the "Fourth Amendment").

[3] Formerly known as IberiaBank, a division of First Horizon Bank. The Prepetition Agent is also a Prepetition Lender.

[4] The Prepetition Credit Agreement provided for the funding of three separate types of loans with different terms and applicable interest rates. Specifically, the Prepetition Credit Agreement permits borrowing under a term loan facility in the amount of $155 million (inclusive of a $5 million swing line loan) (the "Prepetition Term Loan Facility"), a revolving A credit facility with an aggregate commitment amount of $30 million (the "Prepetition

Agreement, collectively with the Loan Documents (as defined in the Prepetition Credit Agreement) and any other agreements and documents executed or delivered in connection therewith, each as amended, restated, supplemented, waived, or otherwise modified from time to time, the "Prepetition Loan Documents") provided for loans to the Prepetition Borrower of up to $205 million in aggregate principal amount.  As of the Petition Date, the aggregate amount outstanding under the Loan Facility is approximately $176.5 million consisting of approximately $148.3 million in outstanding principal due under the Prepetition Term Loan Facility, approximately $28.2 million in outstanding principal due under the Prepetition Revolving A Facility, and no amounts in outstanding principal due under the Prepetition Revolving B Facility.  Each of the foregoing amounts is exclusive of accrued interest, fees, costs and charges.

9. As more fully set forth in the Prepetition Loan Documents, prior to the Petition Date the Prepetition Borrower and the Prepetition Guarantors granted to the Prepetition Agent, for the benefit of itself and the Prepetition Lenders, a security interest in and continuing lien (the "Prepetition Liens") on substantially all of their assets and property, including inventory and equipment (with certain exceptions set forth in the Prepetition Loan Documents) and all proceeds, products, accessions, rents, and profits thereof (collectively, the "Prepetition Collateral").  The obligations of the Prepetition Borrower under the Prepetition Credit Agreement are guaranteed by Mountain Express Baking and Coffee Co.; Mountain

---

Revolving A Facility"), and a revolving B facility with an aggregate commitment amount of $20 million (the "Prepetition Revolving B Facility").  In addition, the Borrower and certain of the Prepetition Secured Parties were parties to a hedge agreement (the "Prepetition Hedge Agreement") to hedge interest rate exposure applicable to a portion of the principal amount borrowed under the Prepetition Term Loan Facility.  The Prepetition Hedge Agreement was terminated as of March 8, 2023, yielding a termination payment for the benefit of the Prepetition Borrower in the approximate amount of $6.648 million.  The termination payment is presently held by the Prepetition Agent.

Express Ethanol Company; Alabama Terminal Property, LLC; Spartan Tank Management, LLC;[5] Mountain Express Oil Company Southeast, LLC; MEX North Alabama, LLC; Mississippi MEX Company, LLC; B&T Petroleum LLC; Texas MEX Limited Company, LLC; Star Mountain Express, LLC; and West Hill Ranch Group LLC[6] (collectively, the "Prepetition Guarantors").  Each of the Prepetition Guarantors is a wholly-owned subsidiary of MEX[7] and is a Debtor in these chapter 11 cases. Pursuant to the Prepetition Loan Documents, the obligations of the Prepetition Guarantors to guarantee the full payment and performance of the Prepetition Borrower are secured by substantially all of the personal property assets of each of the Prepetition Guarantors.

10. On December 21, 2022, the Prepetition Agent notified the Prepetition Borrower and the Prepetition Guarantors that certain defaults had occurred under the Prepetition Credit Agreement.

## STATEMENT OF THE MATERIAL TERMS OF THE PROPOSED ORDERS

11. In accordance with Bankruptcy Rules 4001(b) and (d) and the *Procedures for Complex Cases in the Southern District of Texas*, effective January 1, 2023 (the "Complex Case Procedures"), below is a summary[8] of the terms of the proposed use of Cash Collateral:

---

[5] Formerly known as MEX Advance Fleet Services, LLC

[6] Second Financial Management Services, LLC, was previously a Prepetition Guarantor but has since been dissolved.

[7] Alabama Terminal Property, LLC, is a wholly-owned subsidiary of Mountain Express Oil Company Southeast, LLC, which, in turn, is wholly-owned by MEX.

[8] The summary of the Proposed Interim Order and the terms and conditions for the use of Cash Collateral set forth in this Motion is intended solely for informational purposes to provide the Court and parties in interest with an overview of the significant terms thereof.  The summary is qualified in its entirety by the Proposed Interim Order. In the event that there is any conflict between this Motion and the Proposed Interim Order, the Proposed Interim Order will control in all respects.

| Summary of Material Terms | | Location |
|---|---|---|
| **Entities with an Interest in Cash Collateral**<br><br>*Bankruptcy Rule 4001(b)(1)(B)(i)* | The Prepetition Secured Parties (as defined above). | N/A |
| **Amount of Cash Collateral and Purposes for Use of Cash Collateral**<br><br>*Bankruptcy Rule 4001(b)(1)(B)(ii)* | The Debtors seek to use Cash Collateral in an amount consistent with the expenditures described in the budget, the initial form of which is attached to the Proposed Interim Order as Exhibit 1 (the "Budget").<br><br>The Debtors seek authority to use Cash Collateral, wherever such Cash Collateral may be located, in accordance with the terms of the Proposed Interim Order to, among other things, (a) satisfy postpetition operating expenses of the Debtors as more fully described in the Budget, and (b) pay certain prepetition obligations of the Debtors as further described in the Debtors' forthcoming "first day" motions and authorized pursuant to the "first day" orders approving the same. | Proposed Interim Order ¶¶ 5-6. |
| **Budget**<br><br>*Bankruptcy Rule 4001(b)(1)(B)(ii); Complex Case Procedures ¶ 6* | The Debtors seek to use Cash Collateral in an amount consistent with the expenditures described in the budget, the initial form of which is attached to the Proposed Interim Order as Exhibit 1 (the "Budget"). | Proposed Interim Order ¶ 5. |
| **Carve-Out**<br><br>*Bankruptcy Rule 4001(b)(1)(B)(iii)* | None.[9] | N/A |
| **Postpetition Liens on Avoidance Actions**<br><br>*Complex Case Procedures ¶ 8(d)* | The Proposed Interim Order provides for Adequate Protection Liens on unencumbered assets to the extent of any Diminution in Value, (including Avoidance Actions (as defined below), subject to entry of a final order approving this Motion). | Proposed Interim Order ¶ 7(b). |
| **Proposed Adequate Protection**<br><br>*Bankruptcy Rule 4001(b)(1)(B)(iv)* | The Debtors propose to provide adequate protection to the Prepetition Secured Parties as follows: (i) a continuing security interest in and lien on all collateral of the Debtors of the same type and nature that exists as of the Petition Date with the same validity (or invalidity) and priority as exists as of the Petition Date, including the income and proceeds | Proposed Interim Order ¶ 7. |

---

[9] While the Budget attached as Exhibit 1 to the Proposed Interim Order does not include any professional or other restructuring expenses, all future Budgets in connection with the use of Cash Collateral or post-petition financing will include appropriate line items for such amounts.

| | **Summary of Material Terms** | **Location** |
|---|---|---|
| | thereof (the "Replacement Lien"), (ii) solely to the extent of any Diminution in Value, an additional and replacement security interest in and lien on all property and assets of the Debtors' estates to the extent that such property and assets can be pledged by the Debtors (the "Adequate Protection Lien"), *provided however*, that (a) such security interest and lien shall be junior to any existing, valid, senior, enforceable and unavoidable prior perfected security interests and liens (other than the Prepetition Liens), (b) in the event that the Debtors obtain postpetition financing in these chapter 11 cases, such security interest and lien may be junior to any valid, senior, enforceable security interests and liens granted to the postpetition lenders and authorized by the Court in connection with such postpetition financing, and (c) such security interest and lien shall not attach to any claims, defenses, causes of action or rights of the Debtors arising under sections 542 to 553 of the Bankruptcy Code or applicable state fraudulent transfer law (including all proceeds thereof, the "Avoidance Actions") absent entry of a final order approving this Motion, and (iii) solely to the extent of any Diminution in Value, to the extent provided by sections 503(b) and 507(b) of the Bankruptcy Code, an allowed administrative claim in these chapter 11 cases (the "Adequate Protection Claim"), *provided however*, that (a) absent entry of a final order approving this Motion such claim shall not extend to, or be payable from, any Avoidance Actions, and (b) in the event that the Debtors obtain postpetition financing in these chapter 11 cases, such administrative claim, if any, may be junior to the administrative claim granted to such postpetition lenders and authorized by the Court in connection with such postpetition financing. | |
| **Termination Date**<br><br>*Bankruptcy Rule 4001(b)(1)(B)(iii)* | The Debtors' ability to use Cash Collateral pursuant to the Proposed Interim Order shall end on the earliest of: (i) entry of the Final Order, which shall occur within twenty one (21) days following entry of this Interim Order; (ii) the date of entry of an interim order authorizing the further use of cash collateral and the obtaining of credit under Section 364 of the Bankruptcy Code from the Prepetition Agent and the Prepetition Lenders, (iii) the date that the Prepetition Agent gives notice of a material breach by the Debtors under this Interim Order or (iv) such other date as the Debtors and the Prepetition Agent may agree to in writing (the "Interim Budget Period"). | Proposed Interim Order ¶ 5. |

## NEED FOR THE CONTINUED USE OF CASH COLLATERAL

12. While the Debtors and the Prepetition Secured Parties are in advanced discussions regarding the funding of a debtor in possession financing facility ("DIP Facility"), no agreement has yet been reached and the Debtors have an urgent need for the use of Cash Collateral. Use of cash collateral pursuant to the terms of the Budget is necessary to preserve the Debtors assets and effectuate an orderly reorganization process that will maximize value for stakeholders. Moreover, the entry of the Proposed Interim Order will also allow the Debtors to continue their negotiations with the Prepetition Secured Parties regarding the funding of a DIP Facility. The Debtors anticipate that their negotiations with the Prepetition Secured Parties could result in the filing of a motion seeking approval of a DIP Facility as soon as March 20 or 21, 2023.

13. The Debtors have a workforce of approximately 1,000 full- and part-time Employees who possess the requisite knowledge to maintain the Debtors' going concern value and continued business operations. Moreover, without the use of Cash Collateral, the Debtors will be unable to purchase the fuel they require to operate. Without immediate access to Cash Collateral, the Debtors would be forced to immediately terminate all remaining staff, abandon their assets, and cease operations, causing immediate and irreparable harm to these estates. In order to preserve and maximize the value of the Debtors' assets, the Debtors urge the Court to approve this Motion.

14. Notably, the Prepetition Secured Parties will be adequately protected by the Replacement Lien, the Adequate Protection Lien, and the Adequate Protection Claim to avoid any risk in the diminution in value of the Prepetition Lender Liens.

**BASIS FOR RELIEF**

15. Without immediate access to Cash Collateral, the repercussions to the Debtors' restructuring efforts will be catastrophic and likely irreparable, ending their ability to maximize value for the benefit of all constituents. The Debtors need to fund, among other things, payroll obligations, taxing obligations, payments to fuel suppliers and other vendors for ongoing goods, services, and rent, and other administrative obligations.[10] In particular, the Debtors require access to Cash Collateral in order to purchase the fuel they require in order to operate.

A. **The Debtors Have an Immediate Need to Use Cash Collateral**

16. Bankruptcy Rule 4001(b) permits a court to approve a Debtors' request for use of cash collateral during the 14-day period following the filing of a motion requesting authorization for such use, "only . . . as is necessary to avoid immediate and irreparable harm to the estate pending a final hearing."[11] In examining requests for interim relief under this rule, courts apply the same business judgment standard applicable to other business decisions.[12] After the 14-day period, the request for use of cash collateral is not limited to those amounts necessary to prevent harm to the debtor's business.

17. As previously noted, in order to address their working capital needs and fund other costs and expenses associated with their reorganization efforts, the Debtors require immediate access to Cash Collateral. The use of Cash Collateral will provide the Debtors

---

[10] The Debtors urgently need to fund fuel purchases in order to maintain their operations. The Debtors reserve the right to file supplements to this Motion seeking further interim authority to use the Cash Collateral.

[11] Bankruptcy Rule 4001(b)(2).

[12] *See, e.g., In re Simasko Production Co.*, 47 B.R. 444, 449 (D. Colo. 1985); *see also In re Ames Dep't Stores Inc.*, 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990).

with the necessary capital with which to maintain their assets, including funding the Debtors' obligations to employees. Access to Cash Collateral will: (a) preserve the Debtors' going concern value and continued business operations, (b) allow the Debtors to continue to generate cash flow, and (c) maximize the value of the Debtors' assets. The Debtors do not have adequate available sources of working capital or financing without the use of Cash Collateral.

18. Further, the alternative in this case is "to force the Debtors to close down their operations and thus doom any effort at reorganization which will hopefully extract the maximum value of the assets involved to the benefit of all classes of creditors and other constituencies involved in this case."[13] Because this result would be at fundamental odds with the rehabilitative purposes of chapter 11, approval of this Motion is warranted.[14]

19. As noted above, MEX and certain of the Prepetition Secured Parties were parties to a hedge agreement to hedge interest rate exposure applicable to a portion of the principal amount borrowed under the term loan facility of the Prepetition Loan Agreement. The hedge agreement was terminated as of March 8, 2023, yielding a hedge termination payment for the benefit of the MEX in the approximate amount of $6.648 million ("Hedge Termination Payment"). The Hedge Termination Payment represents an additional source of funds that may be used by the Debtors to sustain and stabilize post-petition operations. For purposes of the Debtors' request to use cash collateral, the Debtors request access to the Hedge Termination Payment as may be necessary to meet the costs and

---

[13] *In re Dynaco Corp.,* 162 B.R. 389, 396 (Bankr. D.N.H. 1993).

[14] *Id.* at 394 (noting that "it is apparent that the Congress intended business under reorganization to proceed in as normal a fashion as possible") (quoting *In re Prime, Inc.*, 15 B.R. 216, 219 (Bankr. W.D. Mo. 1981)).

disbursements contemplated by the Budget in order to avoid immediate and irreparable harm to the estates.

B.  **Section 363 of the Bankruptcy Code Authorizes the Debtors' Use of Cash Collateral**

20. Section 363(c)(2) of the Bankruptcy Code provides that a debtor in possession may not use cash collateral unless (i) each entity that has an interest in such cash collateral provides consent, or (ii) the court approves the use of cash collateral after notice and a hearing.[15] Section 363(e) of the Bankruptcy Code provides that, "on request of an entity that has an interest in property used . . . or proposed to be used . . . by the [Debtors in possession], the court . . . shall prohibit or condition such use . . . as is necessary to provide adequate protection of such interest."[16]

21. The phrase "value of such entity's interest," although not defined in the Bankruptcy Code, was addressed by the Supreme Court in the landmark Timbers decision.[17] For the meaning of "value of such entity's interest," the Supreme Court was guided by section 506(a), which defines a creditor's allowed secured claim:

---

[15] *See* 11 U.S.C. § 363(c).

[16] 11 U.S.C. § 363(e).

[17] *United Savings Ass'n of Texas v. Timbers of Inwood Forest Assocs, Ltd.*, 484 U.S. 365, 108 S.Ct. 626 (1988); *see also In re 495 Central Park Ave. Corp.*, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992) (goal is to "safeguard the secured creditor from diminution in the value of its interest"); *Lincoln Nat'l Life Ins. Co. v. Craddock-Terry Shoe Corp. (In re Craddock-Terry Shoe Corp.)*, 98 B.R. 250, 255 (Bankr. W.D. Va. 1988) (finding that what needs to be adequately protected is the decrease in value attributable to the stay arising on the petition date).

22. The phrase 'value of such creditor's interest' in § 506(a) means 'the value of the collateral.'[18] The Debtors assert that the phrase 'value of such entity's interest' in sections 361(1) and (2), when applied to secured creditors, means the same.[19]

23. *Timbers* teaches that a secured creditor is entitled to "adequate protection" only against diminution in the value of the collateral securing the creditor's allowed secured claim. Under *Timbers*, therefore, where the "value of the collateral" is not diminishing by its use, sale, or lease, the creditor's interest is adequately protected. This conclusion flows directly from the equivalency of "value of such entity's interests" with "value of the collateral." Moreover, diminution is not equivalent to cash collateral use. A prepetition lender is "not entitled to an adequate protection claim on a dollar-for-dollar basis for cash collateral used during the case." [20]

24. Section 361 of the Bankruptcy Code provides that periodic cash payments, replacement liens, or relief constituting the "indubitable equivalent" of the creditor's interest may provide adequate protection. Provision of a replacement lien in property equal to the value of the cash collateral used specifically complies with section 361(2) and provides adequate protection within the meaning of section 363(e) of the Bankruptcy Code.[21]

25. Here, the Prepetition Secured Parties' interests in the Debtors' assets are adequately protected for the following reasons.

---

[18] H.R. Rep. No. 950-595, pp. 181, 356 (1977); *see also* S. Rep. No. 95-989, p. 68 (1978), U.S. Code Cong. & Admin. News, 1978 pp. 5787, 5854, 6141, 6312

[19] *Timbers*, at 630 (emphasis added).

[20] *Official Comm. v. UMB Bank, NA (In re Residential Capital, LLC)*, 501 B.R. 549, 596-97 (Bankr. S.D.N.Y. 2013).

[21] *See, e.g., MBank Dallas, N.A. v. O'Connor (In re O'Connor)*, 808 F.2d 1398, 1396 (10th Cir. 1987); *In re Dynaco Corp.*, 162 B.R. 389, 393-95 (Bankr. D. N.H. 1993); *In re T.H.B. Corp.*, 85 B.R. 192, 195 (Bankr. D. Mass. 1988).

26. *First*, access to Cash Collateral will maximize the value of the Debtors' assets through the knowledge and expertise of the Debtors' employees by maintaining the ordinary course value of the Debtors' business operations.

27. *Second*, there are unencumbered assets in these estates, including leasehold interests, available to satisfy any diminution in value claims that may be established by the Prepetition Secured Parties.

28. *Third*, the Debtors have proposed reasonable adequate protection in the form of the Replacement Lien, the Adequate Protection Lien, and the Adequate Protection Claim. Section 361 of the Bankruptcy Code authorizes a debtor to provide adequate protection by granting replacement liens, making periodic cash payments, or granting such other relief "as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property."[22] The Proposed Interim Order and the Proposed Final Order contemplate an Adequate Protection Lien and Adequate Protection Claim supported by all of the assets of the Debtors' estates to the extent that such property and assets can be pledged by the Debtors to satisfy any Diminution in Value that may be incurred by the Prepetition Secured Parties.

29. The Debtors believe that the proposed adequate protection components described above are fair and reasonable and compensate the Prepetition Secured Parties for any possible Diminution in Value of the Debtors' assets. Given the significant value that the Debtors stand to lose in the event that they are denied access to continued use of Cash Collateral, such protections are wholly appropriate and justified.

---

[22] *See* 11 U.S.C. § 361.

**PROPOSED INTERIM ORDER AND FINAL HEARING**

30. Pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2), the Debtors request that the Court set a date for the Final Hearing that is as soon as practicable, and fix the time and date prior to the final hearing for parties to file objections to this Motion.

31. The urgent need to preserve the Debtors' business, and avoid immediate and irreparable harm to the Debtors' estates, makes it imperative that the Debtors are authorized to use Cash Collateral as of the Petition Date, pending the Final Hearing, in order to continue their business and administer these chapter 11 cases. Without the ability to use Cash Collateral, the Debtors would be unable to meet their postpetition obligations or to fund their working capital needs, thus causing irreparable harm to the value of the Debtors' estates and effectively ending the Debtors' reorganization efforts. Moreover, the entry of the Proposed Interim Order will allow the Debtors to continue to operate while negotiating the terms of a DIP Facility with the Prepetition Secured Parties. The Debtors anticipate that could finalize an agreement on the terms of a DIP Facility as early as March 20 or 21, 2023. Accordingly, the Debtors respectfully request that, pending the hearing on a Proposed Final Order, the Proposed Interim Order be approved in all respects and that the terms and provisions of the Proposed Interim Order be implemented and be deemed binding and that, after the Final Hearing, the Proposed Final Order be approved in all respects and the terms and provisions of the Proposed Final Order be implemented and be deemed binding.

**EMERGENCY CONSIDERATION**

32. The Debtors request emergency consideration of the Motion pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first 21 days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid

immediate and irreparable harm."  The Debtors are in advanced stages of negotiations with the Prepetition Secured Parties to provide the Debtors a DIP Facility to sustain operations and fund the administration of these Chapter 11 Cases.  Because the Debtors and the Prepetition Secured Parties have not yet finalized the terms of a DIP Facility, the Debtors are filing this motion to obtain use of Cash Collateral generated by the Debtors' business to fund operations.  The Debtors anticipate seeking approval of a DIP Facility in the near future.  Accordingly, the Debtors have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and request that the Court approve the relief requested herein on an emergency basis.

## RESERVATION OF RIGHTS

33. Nothing contained in this motion or any order granting the relief requested in this motion, and no action taken pursuant to the relief requested or granted (including any payment made in accordance with any such order), is intended as or shall be construed or deemed to be: (a) an admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission or finding that any particular claim is an administrative expense claim, other priority claim or otherwise of a type specified or defined in this motion or any order granting the relief requested by this motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (g) a waiver or limitation of any claims, causes of action

or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law.

### **WAIVER OF BANKRUPTCY RULES 6004(a) AND 6004(h)**

34. The Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

### **NOTICE**

35. Notice of the hearing on the relief requested in this Motion will be provided by the Debtors in accordance and compliance with Bankruptcy Rules and Local Rules. The Debtors will provide notice of this motion to the following: (a) the U.S. Trustee for the Southern District of Texas; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the Debtors' Prepetition Lenders and their counsel (if known); (d) the Prepetition Agent and its counsel; (e) Oak Street and its counsel; (f) the parties holding secured claims against the Debtors; (g) the agent for the Debtors' postpetition financing facility and its counsel; (h) the United States Attorney's Office for the Southern District of Texas; (i) the Internal Revenue Service; (j) the United States Securities and Exchange Commission; (k) the state attorneys general for states in which the Debtors conduct business; (l) governmental agencies having a regulatory or statutory interest in these cases; and (m) any party that has requested notice pursuant to Bankruptcy Rule 2002 and Bankruptcy Local Rule 9013-1(d). No other or further notice is needed in light of the nature of the relief requested.

## CONCLUSION

**WHEREFORE**, the Debtors request that the Court enter the Orders granting the relief requested herein and such other and further relief as may be just and proper under the circumstances.

Dated: March 20, 2023

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Steven W. Golden*
Michael D. Warner (SBT 00792304)
Steven W. Golden (SBT 24099681)
440 Louisiana Street, Suite 900
Houston, TX 77002
Telephone: (713) 691-9385
Facsimile: (713) 691-9407
mwarner@pszjlaw.com
sgolden@pszjlaw.com

-and-

Jeffrey N. Pomerantz (*pro hac vice* forthcoming)
Jeffrey W. Dulberg (*pro hac vice* forthcoming)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
jpomerantz@pszjlaw.com
jdulberg@pszjlaw.com

*Proposed Counsel to the Debtors and Debtors in Possession*

## **Certificate of Accuracy**

I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

*/s/ Steven W. Golden*
Steven W. Golden

## **Certificate of Service**

I certify that on March 20, 2023, I caused a copy of the foregoing document to be served via the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Steven W. Golden*
Steven W. Golden

# EXHIBIT A

## PROPOSED INTERIM ORDER