**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |
|---|---|
| In re: | Chapter 11 |
| MOUNTAIN EXPRESS OIL COMPANY, et al., | Case No. 23-90147 (DRJ) |
| Debtors.[1] | (Jointly Administered) |

**DEBTORS' <u>EMERGENCY</u> MOTION FOR ENTRY OF AN ORDER
AUTHORIZING THE DEBTORS TO (I) PAY AND/OR HONOR PREPETITION
WAGES, SALARIES, INCENTIVE PAYMENTS, EMPLOYEE BENEFITS, AND
OTHER COMPENSATION; (II) REMIT WITHHOLDING OBLIGATIONS AND
DEDUCTIONS; (III) MAINTAIN EMPLOYEE COMPENSATION AND BENEFITS
PROGRAMS AND PAY RELATED ADMINISTRATIVE OBLIGATIONS; AND (IV)
HAVE APPLICABLE BANKS AND OTHER FINANCIAL INSTITUTIONS RECEIVE,
PROCESS, HONOR, AND PAY CERTAIN CHECKS PRESENTED FOR
PAYMENT AND HONOR CERTAIN FUND TRANSFER REQUESTS**

> **Emergency relief has been requested.  Relief is requested not later than March 22, 2023.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph.  Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter on March 22, 2023, at 3:30 p.m. (prevailing Central Time).  Participation at the hearing will only be permitted by an audio and video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility.  You may access the facility at (832) 917-1510.  Once connected, you will be asked to enter the conference room number.  Judge Jones's conference room number is 205691.  Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Jones's homepage.  The meeting code is "JudgeJones".  Click the settings icon in the upper right corner and enter your name under the personal information setting.**

---

[1] A complete list of each of the Debtors in these Chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at www.kccllc.net/mountainexpressoil. The location of Debtor Mountain Express Oil Company's principal place of business and the Debtors' service address in these Chapter 11 cases is 3650 Mansell Road, Suite 250, Alpharetta, GA 30022.

> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings.  To make your appearance, click the "Electronic Appearance" link on Judge Jones's homepage.  Select the case name, complete the required fields and click "Submit" to complete your appearance.**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state the following in support of this motion (this "Motion"):

## RELIEF REQUESTED

1.      By this Motion, the Debtors seek to minimize the personal hardship to their employees (collectively, the "Employees") as a result of the filing of these Chapter 11 Cases and to minimize the disruption to the Debtors' operations. To accomplish this, the Debtors respectfully request entry of an order, in substantially the form attached hereto (the "Order"), authorizing the Debtors, in their sole discretion: (a) to pay and honor, *inter alia*, certain prepetition claims of their Employees for wages, salaries, and compensation (the "Wages"); (b) to pay and honor employee benefits and expense reimbursements and honor and pay incentive payments owed to certain non-insider Employees (collectively, the "Benefits" and, together with Wages, the "Wages and Benefits"); (c) remit withholding obligations and employee deductions and withholdings; and (d) to continue to pay and honor such Wages and Benefits as they become due postpetition in the ordinary course of the Debtors' business.

2.      Pursuant to sections 105(a) and 363(b)(1) and (c)(1) of title 11 of the United States Code (the "Bankruptcy Code"), and the "necessity of payment" doctrine, the Debtors seek authority to pay or honor, in their sole discretion, the following, subject to the limits noted in the chart below (collectively, the "Prepetition Employee Obligations"):

| Wages or Benefits | Amount |
|---|---|
| Gross Wages | $625,000 |
| Administrative fees (payroll processing, | $50,000 |

DOCS_LA:347580.6 58614/001

| Wages or Benefits | Amount |
|---|---|
| COBRA, HSAs) | |
| Corporate Credit Card Program | $102,000 |
| Incentive and Commission Payments | $100,000 |
| Independent Contractors | $50,000 |
| Miscellaneous Benefits | $25,000 |

3.      The Debtors represent that: (a) they will not distribute any amounts over $15,150 directly to any individual Employee on account of the sum of unpaid: (i) prepetition Wages; (ii) prepetition Incentive Payments (as defined below); and (iii) contributions to employee benefit programs by the Debtors' Employees as provided under section 507(a)(5) of the Bankruptcy Code; and (b) they will not pay any amounts in excess of the estimated outstanding prepetition cap amounts for each category of prepetition claims identified in the chart above and in the proposed Order, as applicable, without further order from this Court, except to the extent required under state law.[2]

4.      To enable the Debtors to accomplish the foregoing, the Debtors request that the Court authorize and direct the Debtors' banks and other financial institutions to receive, process, honor, and pay all checks presented for payment and electronic payment requests relating to the foregoing.

5.      Notwithstanding the authority requested in this Motion, the Debtors, in the ordinary course of business, may modify, change, and discontinue employee programs and implement new employee programs, may continue to do so during these Chapter 11 Cases, and will provide notice thereof to the extent required by applicable rules and law.

---

[2]      As discussed in Section E herein, retention incentives in the amount of $20,000 are due to each of two legacy Brothers Employees on March 31, 2023, if those two Employees are employed through March 31, 2023.

## JURISDICTION AND VENUE

6.      The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). The Debtors confirm their consent, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court.

7.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

8.      The statutory bases for the relief requested herein are sections 105(a), 362(d), 363(b), and 507(a) of the Bankruptcy Code, Bankruptcy Rules 6003, 6004, and 9013, and Rule 9013-1(a) of the Local Bankruptcy Rules for the Southern District of Texas (the "Local Rules").

## GENERAL BACKGROUND

9.      On March 18, 2023 (the "Petition Date"), the Debtors each commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code. The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee of creditors has been appointed in these Chapter 11 Cases.

10.      Founded in 2000 and based in Alpharetta, Georgia, the Debtors are a recognized leader in the fuel distribution and retail convenience industry.  As one of the largest fuel distributors in the American South, the Debtors serve 828 Fueling Centers and 27 Travel Centers across 27 states.  The Debtors enjoy trusted relationships with every major oil company including ExxonMobil, BP, Shell, Chevron, Texaco, and Sunoco and have obtained Regal Status with Chevron, Platinum Status with ExxonMobil, and entered a Joint Venture with Pilot/Flying J to

4

become the largest Pilot Dealer in the United States.  Since 2013, the Debtors have distributed

over 1.1 billion gallons of fuel.

11.     Additional information regarding the Debtors' business and capital structure and

the circumstances leading to the commencement of these chapter 11 cases is set forth in the

*Declaration of Michael Healy in Support of Debtors' Chapter 11 Petitions and First Day Relief*

(the "First Day Declaration"),[3] which has been filed with the Court contemporaneously herewith

and is incorporated by reference herein.

**THE EMPLOYEE WAGES AND BENEFITS**

**A.      General Employee Overview**

12.     As of March 16, 2023, the Debtors employed approximately 180 full-time

Employees and 791[4] part-time Employees. Full-time Employees are those normally scheduled to

work on average of 30 or more hours per week while part-time Employees are those normally

scheduled to work on average of less than 30 hours per week.[5] The Employees are not unionized.

The Debtors also supplement their workforce with certain independent contractors who provide

IT services (the "Independent Contractors").[6]

13.     Non-Debtor affiliates Adelphi Transport LLC ("Adelphi Transport") and Adelphi

Environmental Services LLC ("Adelphi Environmental" and, together with Adelphi Transport,

"Adelphi"), employ approximately 102 full-time employees as of the Petition Date.  The Debtors,

in the ordinary course, funded Adelphi's payroll together with the payroll of the Debtors and are

---

[3]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

[4]     The census fluctuates frequently.

[5]     Some part-time Employees work more than 30 hours per week from time to time.

[6]     The Debtors retain the Independent Contractors through an employment agency.

5

reimbursed by Adelphi for the payroll.[7]   In year-to-date 2023 to date, Adelphi's payroll has averaged approximately $365,000 per month.

14.     Pursuant to this Motion, the Debtors seek to pay or honor all Wages and Benefits and other amounts detailed in this Motion, to the extent described herein, on an ongoing basis and in the ordinary course of business and subject to the applicable limits under section 507(a) of the Bankruptcy Code. There is no reason for the regular payment of Wages and Benefits to be disrupted, which would directly harm the Debtors and their Employees.

**B.     The Debtors' Payroll Schedules and Payroll Amounts**

15.     The Debtors' payroll schedules are as follows:

16.     **Cycle No. 1: Mountain Express Oil, Adelphi Environmental**. These Employees are paid every other week, 5 days in arrears. The applicable biweekly pay date (the "Cycle 1 Pay Date") occurs every other Wednesday. The last Cycle 1 Pay Date was March 15, 2023. The next Cycle 1 Pay Date will be on Wednesday, March 29, 2023 for accrued wages owing through March 24, 2023.

17.     **Cycle No. 2: Quik Chek, Adelphi Transport**. These Employees are paid each week, 6 days in arrears. The applicable weekly pay date (the "Cycle 2 Pay Date") occurs each Friday. The last Cycle 2 Pay Date was March 17, 2023. The next Cycle 2 Pay Date will be on Friday, March 24, 2023 for accrued wages owing through March 18, 2023.

18.     **Cycle No. 3: Brothers Petroleum, Big Red, Grab 'n Go, WHRG Entities.** These Employees are paid every other week, 6 days in arrears. The applicable biweekly pay date (the "Cycle 3 Pay Date" and together with the Cycle 1 Pay Date and the Cycle 2 Pay Date, the "Pay

---

[7]     In the case of Adelphi Environmental, payment to the Debtors has been made by deducting from the A/R balance owed by the Debtors to Adelphi Environmental.  Postpetition, Adelphi Environmental will make cash reimbursements to the Debtors following the Debtors' payments on account of the Adelphi Environmental Employees' payroll.

Dates")") occurs every other Friday. The last Cycle 3 Pay Date was March 17, 2023. The next Cycle

3 Pay Date will be on Friday, March 31, 2023 for accrued wages owing through March 25, 2023.

19.     Two business days prior to each Pay Date, the Debtors' payroll service provider,

Proliant (the "Payroll Processor"), drafts the funds from the Debtors' segregated payroll account

at First Horizon Bank, and the funds are automatically transferred that same day. Wages are paid

to Employees the following Wednesday or Friday, as applicable, via direct deposit. In rare

circumstances, the Debtors issue manual paychecks with respect to off-payroll cycle payments,

payroll adjustments, and other limited situations (collectively, the "Manual Checks"). To the extent

any prepetition Manual Checks have not been cashed, the Debtors request authority to reissue

Manual Checks postpetition to the affected Employees for any prepetition amounts owed. The

Payroll Processor also remits Deductions and Withholding Obligations (each as defined below) to

the appropriate taxing and governmental jurisdictions on each Pay Date.

20.     The Debtors seek authority, in their discretion, to continue to fund Adelphi's

payroll consistent with past practice, and subject to subsequent cash reimbursement by Adelphi.

As part of the relief requested in this Motion, the Debtors seek authority to permit the Payroll

Processor to continue to process the Debtors' payroll obligations, including of Adelphi, in the

ordinary course of business. The Debtors believe that they are current to the Payroll Processor on

account of unpaid payroll servicing fees. To the extent that any fees are still outstanding to the

Payroll Processor as of the Petition Date, the Debtors request authority, in their discretion, to remit

such amounts, not to exceed $50,000.

21.     The Debtors estimate that they will accrue approximately $625,000 in prepetition

unpaid Wages between the end of the prior pay period and the Petition Date. To ensure there is no

interruption in payment of amounts to Employees, the Debtors have funded $300,000 (the amount of the upcoming pay cycle) prepetition to the Payroll Processor in advance of the Petition Date.

**C.**      **Gross Pay Deductions and Payroll Taxes**

22.      For each applicable pay period, the Debtors routinely deduct certain amounts from each Employee's gross payroll, including, without limitation, garnishments, child support, spousal support, and similar deductions and other pre-tax and post-tax deductions payable pursuant the employee benefit plans discussed herein (including, for example, the Employee's share of health care benefits, retirement plan contributions, legally ordered deductions, and miscellaneous deductions) (collectively, the "Deductions"). As set forth below, the Deductions are not property of the Debtors or their estates and are withheld from Employees' gross payroll and remitted to the appropriate third parties. On average, the Debtors' payroll Deductions total approximately $35,000 per month, which the Debtors remit to the appropriate third-party recipients. As of the Petition Date, certain of the Deductions may not yet have been transmitted to the appropriate third party recipients and the Debtors request authority to transfer any Deductions to the appropriate third party recipients or as may be required under applicable nonbankruptcy law.

23.      In addition to the Deductions, applicable federal and state laws require the Debtors to withhold amounts related to federal, state, and local income taxes, Social Security, and Medicare taxes for remittance to the appropriate federal, state, or local taxing authorities (collectively, the "Withholding Obligations"). The Debtors must also pay, from their own funds, for Social Security and Medicare taxes and pay, based on a percentage of gross payroll, additional amounts for federal and state unemployment insurance (collectively the "Employer Payroll Taxes," and, together with the Withholding Obligations, the "Payroll Taxes"). On average, the Payroll Taxes per month, including both the Employee and employer portions, total approximately $900,000.

24.     To the extent any of the prepetition Deductions or Payroll Taxes have not yet been forwarded to the appropriate third-party recipients, the Debtors seek authority to forward such amounts (and to continue to forward Deductions and Payroll Taxes on a postpetition basis whether or not related to the prepetition period) to the applicable third-party recipients in the ordinary course of business and consistent with past practice.

**D.      Corporate Credit Card Program**

25.     The Debtors offer certain Employees[8] a corporate credit card to utilize for authorized business expenditures.  As of the Petition Date, there are approximately 47 issued American Express corporate credit cards (the "Corporate Credit Card Program").  The Debtors pay these credit cards directly, and Employees are not liable for the balances of the Corporate Credit Card Program.  The majority of the expenses incurred under the Corporate Credit Card Program are by the Debtors' district managers who regularly incur travel expenses, including rooms, meals, and incidentals such as gas and mileage expenses, as well as emergency repairs and maintenance costs associated with fuel tanks and fuel delivery vehicles.  In the year to date, monthly payments by the Debtors to American Express have averaged approximately $220,000.  As of the Petition Date, the Debtors estimate that they owe approximately $102,000 on account of the Corporate Credit Card Program.  The Debtors seek authority to pay all outstanding amounts owed on account of the Corporate Credit Card Program and to continue the Corporate Credit Card Program in the ordinary course in their discretion.

---

[8] In addition to Employees of the Debtors, certain credit cards have been issued to Adelphi (the "Adelphi Credit Cards").  On a go-forward basis (including with respect to all amounts to be paid pursuant to this Motion), the Debtors will not pay any amounts under the Corporate Credit Card Program on account of the Adelphi Credit Cards unless Adelphi reimburses the Debtors for such payments.

E.      **Employee Incentive and Commission Payments**

26.      The Debtors do not generally provide Employees with bonuses, other than (a) specific retention incentives offered to certain Employees related to the 2021 acquisition of Brothers Petroleum[9] and (b) in connection with the conversions of retail convenience stores to dealerships to reward loyalty and performance (the "Incentive Payments"). The Debtors' ability to fund the Incentive Payments has been critical to maintaining Employee morale and loyalty. The Incentive Payments provide the eligible Employees with stability and incentivizes them to continue to support critical components of the Debtors' operations. None of the Employees to whom Incentive Payments will be paid pursuant to this Motion are insiders of the Debtors.

27.      In addition, the Debtors pay certain Employees commissions based on various criteria, such as sales, on a regular basis (*i.e.*, monthly or quarterly) (the "Commissions"), and together with the Incentive Payments, the "Incentive and Commission Payments"). The Commissions are paid through a combination of payroll, 1099, and W-2.

28.      The Debtors wish to honor the prepetition amounts owed to their Employees for Incentive and Commission Payments as these amounts are an element of compensation that is relied upon by participating Employees. The Debtors seek authority, in their discretion, to pay the Incentive and Commission Payments up to $100,000 in the aggregate, and to continue to pay the Incentive and Commission Payments that may arise postpetition in the ordinary course of business and in the Debtors' discretion.

---

[9]      Two incentive payments of $20,000 each are due on March 31, 2023.  The retention incentives to certain accountants were provided in late 2021.

**F.**     **Independent Contractors**

29.     The Debtors are invoiced for the services of the Independent Contractors. The Debtors have paid approximately $12,000 year to date, representing services provided in January 2023. As the amount owing depends on hours actually spent, the precise amount of prepetition amounts owing to the Independent Contractors is unknown. Accordingly, the Debtors hereby seek authorization in their discretion to pay up to the amount of $50,000 on account of prepetition amounts that may be owing to Independent Contractors.

**G.**     **Health Benefits**

30.     The Debtors provide health insurance to certain Employees, including, *inter alia*, medical and prescription drug, dental, vision, disability, COBRA, and health savings accounts (collectively, the "Health Plans"), as described in more detail below. Each pay period, Employees make contributions toward the Health Plans for medical, dental, and vision coverage, and the Debtors deduct the Employees' contributions, if applicable, owing under the Health Plans from their Wages as Deductions.

                    a.     Medical, Dental and Vision Insurance.

31.     The Debtors offer a choice of a point of service (POS) or high-deductible medical plan through Anthem ("Anthem") for full time Employees and their dependents (collectively, the "Anthem Medical Plan"). The Anthem Medical Plan is fully insured. Employees enrolled in the Anthem Medical Plan pay approximately 33% of the cost through premium contributions.  In addition to health care coverage, participants in the Anthem Medical Plan receive telemedicine health care service, prescription drug coverage, and a 24/7 nurse line at no additional cost.

DOCS_LA:347580.6 58614/001

32.     For legacy Brothers Petroleum Employees in New Orleans, the Debtors offer a medical plan through Humana (the "Humana Medical Plan" and together with the Anthem Medical Plan, the "Medical Plans"). The Humana Medical Plan is also fully insured.

33.     Based on the current number of enrolled Employees and dependents, the Debtors pay approximately $200,000 monthly in the aggregate on account of the Medical Plans, inclusive of Employee contributions. The Debtors are current on obligations to Anthem, however the payment made on account of the Humana invoice dated March 1, 2023 in the approximate amount of $50,000 was returned.  The Debtors hereby seek authority to pay any prepetition amounts owing to Humana and to continue to pay postpetition amounts under the Medical Plans in the ordinary course of business and in the Debtors' discretion.

34.     The Debtors also offer dental plans (the "Dental Plan") and vision plans (the "Vision Plan") through Anthem and Humana.  Employees' Dental Plan and Vision Plan premiums are covered partially by Employee contributions. Except as set forth above, the Debtors are current on monthly premiums to Anthem and Humana. In an abundance of caution, the Debtors hereby seek authority to pay any prepetition amounts owing to Anthem and Humana as they come due in the ordinary course of business, and to continue to honor the Dental Plan and Vision Plan postpetition, in the Debtors' discretion.

b.      COBRA Benefits.

35.     The Consolidated Omnibus Budget Reconciliation Act ("COBRA") gives workers and their families who lose their health benefits the right to choose to continue the group health benefits provided by their group health plan for limited periods of time under certain circumstances, such as voluntary or involuntary job loss, reduction in the hours worked, transition

between jobs, death, divorce, and other life events. Qualified individuals are generally required to pay the entire premium for coverage, up to 102 percent of the cost to the plan.

36.     COBRA generally requires that group health plans sponsored by employers with 20 or more employees in the prior year offer employees and their families the opportunity for a temporary extension of health coverage (called continuation coverage) in certain instances where coverage under the plan would otherwise end. These former Employees fund approximately 102 percent of the cost of their health plan. Former Employees electing to receive COBRA benefits pay fixed premiums to Flores & Associates (for the Anthem Medical Plan) and iSolved (for the Humana Medical Plan), the Debtors' COBRA administrators. As of the Petition Date, the Debtors are unaware of any outstanding prepetition administrative COBRA fees that may be owed by the Debtors. Out of an abundance of caution, the Debtors seek authority to pay any unpaid prepetition COBRA administrative fees to Flores & Associates and iSolved, and to continue to pay postpetition COBRA administrative fees in the ordinary course of business and in the Debtors' discretion.

c.      Health Savings Accounts.

37.     As noted above, the Debtors provide eligible Employees with Health Savings Accounts ("HSAs"), administered by Anthem, which help defray the costs of the Employees' Health Plan deductibles and co-pays. Specifically, Employees may use HSA funds to pay medical expenses, including deductible payments, coinsurance, prescription drugs, urgent and emergency care, lab tests, and hospital visits. The Debtors seek authority to continue to withhold and remit payments to the HSAs.

DOCS_LA:347580.6 58614/001

      d.      <u>Life Insurance, Accidental Death & Dismemberment and
Disability Plan</u>

38.      Full-time Employees of the Debtors may elect voluntary life insurance and AD&D coverage for themselves and dependents (the "<u>Life/AD&D Insurance Plan</u>") through Lincoln Financial Group ("<u>Lincoln</u>") at the sole cost of the Employees. The Employees pay all premiums in connection with the Life/AD&D Insurance Plan. Additionally, the Debtors may elect voluntary long-term disability and short-term disability coverage (the "<u>Employee Disability Plan</u>").

39.      The Debtors do not incur any costs of administration of these programs. The Debtors are current on payments owing under the Basic Life/AD&D Insurance Plan and Employee Disability Plan on behalf of the Employee participants. In an abundance of caution, the Debtors seek authority to pay unpaid prepetition amounts on account of the Basic Life/AD&D Insurance Plan and Employee Disability Plan, and to continue to pay postpetition premium amounts on account of the Basic Life/AD&D Insurance Plan and Employee Disability Plan in the ordinary course of business and in the Debtors' discretion.

      e.      <u>Holidays, Vacation and Sick Leave</u>

40.      Employees have six paid holidays per year. The Debtors also award paid time off ("<u>PTO</u>") to Employees. Employees of Debtor Mountain Express Oil Company (the "<u>Corporate Employees</u>") in their first four years of employment by the Debtors accrue 3.08 hours of PTO per bi-weekly payroll cycle (totaling two weeks per year). Starting their fifth year of consecutive employment, Corporate Employees accrue 4.61 hours of PTO per bi-weekly payroll cycle (totaling three weeks per year). Corporate Employees also accrue five days of paid sick leave per year ("<u>Sick Leave</u>").

41.      Store Employees start earning PTO after one year of consecutive employment. During their first four years of employment, they earn two days of PTO per year. Starting their

14

fifth year of consecutive employment, store Employees accrue five days of PTO per year. Employees may roll over a maximum of 40 hours of PTO to the following year provided that it must be used by March 1.

42.     By this Motion, the Debtors seek authority to continue to honor their PTO and Sick Leave programs in the ordinary course of business by allowing Employees to use accrued prepetition PTO and Sick Leave postpetition in the Debtors' discretion and consistent with past practice. The Debtors also seek authority, but not the obligation, in their sole discretion, to pay out any accrued and prepetition PTO amounts that are owed to Employees solely to the extent their employment with the Debtors is terminated postpetition in accordance with their ordinary course business practices and/or applicable law.

### f.        401(k) Plan[10]

43.     The Debtors provide Employees who have been employed by the Debtors for at least six (6) months with a 401(k) retirement plan (the "401(k) Plan"). Employee contributions are withheld from paychecks as Deductions. To the extent any prepetition 401(k) Deductions have not yet been made, the Debtors seek authority to process those Deductions.

44.     Historically, the Debtors have matched up to 4% of eligible earnings. In 2022, the Debtors funded matching contributions to the 401(k) Plan in the amount of approximately $115,000.

45.     The Debtors are in the process of employing an auditor for the 401(k) Plan (the "401(k) Plan Audit") in accordance with compliance requirements under certain Department of Labor and IRS regulations. The 401(k) Plan Audit fees are estimated to be approximately $30,000,

---

[10]     The 401(k) Plan is the only active retirement plan currently offered by the Debtors which the Debtors seek authority to honor in this Motion.

to be conducted and paid in the coming months. The Debtors intend to pay postpetition amounts with respect to the 401(k) Plan Audit in the ordinary course of business and in their discretion.

46.     The 401(k) Plan is maintained by Human Interest, Inc. ("Human Interest"). The Debtors seek authority, in their discretion, to continue the 401(k) Plan postpetition in the ordinary course of business, consistent with their prepetition policies, including paying all fees to Human Interest associated therewith.

**H.     Other Benefits**

47.     As of the Petition Date, the Debtors offer eligible Employees with additional miscellaneous benefits including the following (collectively, the "Miscellaneous Benefits"):

- The Debtors provide an employee assistance program (the "EAP") through Lincoln Financial Group, which is designed to assist employees in resolving personal problems that may be adversely affecting the Employee's performance including child or elder care, relationship challenges, financial or legal problems, wellness matters, and traumatic events like workplace violence. Programs are delivered at no cost to Employees by Master's level counselors. Services are often delivered via phone, video-based counseling, online chatting, e-mail interactions, or face-to-face;

- Employees may enroll for DailyPay payroll benefits. For enrollees in DailyPay, the Employee will build up a "pay balance" in the DailyPay account each day worked that can be transferred into the Employee's bank account, to the Employee's debit card or to the Employee's payroll card. This balance is updated when the Employee clocks out of each shift;

- TravelConnect is a comprehensive program that can assist with accessing care for a medical emergency while traveling 100 or more miles from home. Employees enrolled in the Debtors' voluntary life insurance and/or AD&D benefits plans have access to TravelConnect 24 hours, 7 days a week; and

- Employees enrolled in the Debtors' voluntary life insurance and disability benefits plans will have access to LifeKeys. LifeKeys is a service that offers discounts on shopping and entertainment, identity theft protection, will preparation, and additional services.

48.     The Debtors anticipate that any prepetition amounts owing in connection with the Miscellaneous Benefits are *de minimis* and hereby seek authority in the abundance of caution to pay up to $25,000 on account of prepetition Miscellaneous Benefits costs owed and to continue to

administer these and similar programs and pay amounts owed on account of the Miscellaneous Benefits postpetition in the ordinary course of business and in their discretion.

I.      **Workers' Compensation Insurance**

49.     The Debtors maintain no-deductible workers' compensation insurance (the "WC Program") to provide Employees with coverage for injury claims arising from or related to their employment with the Debtors (the "WC Claims") in accordance with applicable state law.  The Debtors' insurance carrier is Federated Mutual Insurance Company ("FMIC").

50.     For the mid-2022 to mid-2023 policy year, the annual premium was approximately $1.2 million based on estimated annual payroll, with a true-up at the end of the policy year.  The Debtors pay the policy in monthly installments and are current on premiums owing to FMIC. Out of abundance of caution and to avoid any potential interruptions in coverage or administration of claims, the Debtors seek authority to pay to FMIC any amounts owed to them that may be related to the prepetition period (including based on the afore-referenced true-up) and to continue to pay postpetition amounts to them in the ordinary course of business in the Debtors' discretion.

## BASIS FOR RELIEF

I.      **Sufficient Cause Exists to Authorize the Debtors to Honor the Employee Compensation and Benefits Obligations.**

   A.      **Certain of the Employee Compensation and Benefits Are Entitled To Priority Treatment**

51.     Sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code entitle the majority of the Employee Compensation and Benefits to priority treatment. As priority claims, the Debtors are required to pay these claims in full to confirm a chapter 11 plan. See 11 U.S.C. § 1129(a)(9)(B). To the extent that an Employee receives no more than the statutory prescribed limit of $15,150 on account of claims entitled to priority, the relief sought with respect to compensation only affects the timing of payments to Employees and does not have any material negative impact on recoveries

for general unsecured creditors. The Debtors submit that payment of the Employee Compensation and Benefits at this time enhances value for the benefit of all interested parties. Finding, attracting, and training new qualified talent would be extremely difficult and would most likely require higher salaries, guaranteed bonuses, and more comprehensive compensation packages than are currently provided to Employees.

       **B.**     **Payment of Certain Employee**
                    **Compensation and Benefits Is Required by Law**

       52.     The Debtors seek authority to pay the Withholding Obligations to the appropriate third-party payees. These amounts principally represent Employee earnings that governments, Employees, and judicial authorities have designated for deduction from Employees' wages. Certain Withholding Obligations are not property of the Debtors' estates because the Debtors have withheld such amounts from Employees' wages on another party's behalf. *See* 11 U.S.C. §§ 541(b)(1), (d). Further, federal law requires the Debtors to withhold certain tax payments from Employees' wages and to pay such amounts to the appropriate taxing authority. 26 U.S.C. §§ 6672, 7501(a); *see also City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 95–97 (3d Cir. 1994) (finding that state law requiring a corporate debtor to withhold city income tax from its employees' wages created a trust relationship between debtor and the city for payment of withheld income taxes); *In re DuCharmes & Co.*, 852 F.2d 194, 196 (6th Cir. 1988) (noting that individual officers of a company may be held personally liable for failure to pay trust fund taxes). Because the Withholding Obligations may not be property of the Debtors' estates, the Debtors request authorization to transmit the Withholding Obligations to the proper parties in the ordinary course of business.

       53.     Similarly, the laws of some jurisdictions in which the Debtors operate require the Debtors to maintain the WC Program. If the Debtors fail to maintain the WC Program, the laws of

those jurisdictions may prohibit the Debtors from continuing to operate in those jurisdictions. Payment of all obligations related to the WC Program is crucial to the Debtors' continued operations and the success of these Chapter 11 Cases.

**II.     Payment of the Employee Compensation and Benefits and the Relief Sought Herein Is a Sound Exercise of the Debtors' Business Judgment and Necessary to Preserve the Value of the Estates.**

54.     Courts generally acknowledge that it is appropriate to authorize the payment (or other special treatment) of prepetition obligations in appropriate circumstances. *See, e.g.*, *In re Ionosphere Clubs, Inc.*, 98 B.R. 175 (Bankr. S.D.N.Y. 1989) (granting authority to pay prepetition wages). In authorizing payments of certain prepetition obligations, courts have relied on several legal theories, rooted in sections 1107(a), 1108, 363(b), 507, and 105(a) of the Bankruptcy Code.

55.     Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, debtors in possession are fiduciaries "holding the bankruptcy estate[s] and operating the business[es] for the benefit of [their] creditors and (if the value justifies) equity owners." *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). Implicit in the fiduciary duties of any debtor in possession is the obligation to "protect and preserve the estate, including an operating business's going-concern value." *Id.* Some courts have noted that there are instances in which a debtor can fulfill this fiduciary duty "only . . . by the preplan satisfaction of a prepetition claim." *Id.*

56.     The *CoServ* court specifically noted that satisfaction of prepetition claims would be a valid exercise of the debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate." *Id.*

57.     Section 363 of the Bankruptcy Code provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Courts in the Fifth Circuit have granted a debtor's request to use property of the estate outside of the ordinary course of business pursuant to section

363(b) of the Bankruptcy Code upon a finding that such use is supported by sound business reasons. *See, e.g.*, *Inst. Creditors of Cont'l Air Lines, Inc. v. Cont'l Air Lines, Inc. (In re Cont'l Air Lines, Inc.)*, 780 F.2d 1223, 1226 (5th Cir. 1986).

58.     Courts also apply section 105(a) pursuant to the "doctrine of necessity," which functions in a chapter 11 case as a mechanism by which the bankruptcy court can exercise its equitable power to allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code and further supports the relief requested herein. *See In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). Moreover, the doctrine of necessity is designed to foster a debtor's rehabilitation, which courts have recognized is "the paramount policy and goal of Chapter 11." *In re Ionosphere Clubs*, 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989).

59.     Many Employees may live from paycheck to paycheck and rely exclusively on receiving their full compensation or reimbursement of their expenses in order to continue to pay their daily living expenses. These Employees may be exposed to significant financial and healthcare-related problems if the Debtors are not permitted to pay and/or honor the Wages and Benefits, and the expenses associated therewith, in the ordinary course of the Debtors' business. Moreover, the Debtors believe that if they are unable to honor accrued Wages and the Benefits described above, including honoring prepetition PTO and Sick Leave by allowing Employees to use accrued prepetition PTO and Sick Leave on a postpetition basis, Employee morale and loyalty will be jeopardized at a time when Employee support is critical. The Debtors believe that any uncertainty with regard to continuation of Wages and Benefits will cause significant anxiety at precisely the time the Debtors need their Employees to perform their jobs at peak efficiency.

60.     The Employees have an intimate knowledge of the operation of the Debtors' business and are critical components to the successful reorganization of the Debtors' business.

Deterioration in the morale and welfare of the Employees at this critical time undoubtedly would adversely impact the Debtors and their ability to sustain their operations. Satisfaction of the Wages and Benefits, as described herein, is necessary to maintain the Employees' morale during the cases and to insure continued, efficient operation in order to maximize value for all creditors.

## EMERGENCY CONSIDERATION

61.     The Debtors request emergency consideration of the Motion pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first 21 days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm." An immediate and orderly transition into chapter 11 is critical to the viability of the Debtors' operations and that any delay in granting the relief requested could hinder such operations and cause irreparable harm. The failure to receive the requested relief during the first 21 days of these Chapter 11 Cases could disrupt the Debtors' operations at this critical juncture and add needless costs to the administration of these cases. The Debtors have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and request that the Court approve the relief requested herein on an emergency basis.

## WAIVER OF BANKRUPTCY RULES 6004(a) AND 6004(h)

62.     The Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## NO ASSUMPTION OR ASSIGNMENT OF EMPLOYEE BENEFITS

63.     To the extent any Benefits or related agreement is deemed an executory contract within the meaning of section 365 of the Bankruptcy Code, the Debtors do not, at this time, seek to assume any such contract. Accordingly, if the Court authorizes the payments described above,

such payments should not be deemed to constitute a postpetition assumption or adoption of the programs, policies, or agreements as executory contracts pursuant to section 365 of the Bankruptcy Code. Moreover, authorization to pay all amounts on account of Wages and Benefits shall not affect the Debtors' rights to contest the amount or validity of these obligations.

## **REQUEST FOR FINANCIAL INSTITUTIONS TO HONOR CHECKS**

64.     The Debtors request that all applicable banks and other financial institutions be authorized to receive, process, honor, and pay all checks presented for payment and to honor all fund transfer requests made by the Debtors to Employees (and other third parties described herein), whether such checks were presented or fund transfer requests were submitted prior to, on, or after the Petition Date. Nothing contained in this Motion, however, shall constitute a request for authority to assume any agreements, policies, or procedures relating to Wages and Benefits. Further, the Debtors seek to retain the discretion to decide which Wages and Benefits it will pay and honor, and nothing in this Motion shall be deemed an admission by the Debtors that any Wages and Benefits will in fact be paid or honored.

65.     Finally, the Debtors request authority to pay all of the processing fees associated with payment of the Wages and Benefits including, but not limited to, any fees owed to any third party administrators of Benefits as described in the Motion.

## **NOTICE**

66.     Notice of the hearing on the relief requested in this Motion will be provided by the Debtors in accordance and compliance with Bankruptcy Rules and Local Rules.  The Debtors will provide notice of this motion to the following: (a) the U.S. Trustee for the Southern District of Texas; (b) the holders of the 40 largest unsecured claims against the Debtors (on a consolidated basis); (c) the Debtors' Prepetition Lenders and their counsel (if known); (d) the Prepetition Agent

and its counsel; (e) Oak Street and its counsel; (f) the parties holding secured claims against the Debtors; (g) the United States Attorney's Office for the Southern District of Texas; (h) the Internal Revenue Service; (i) the United States Securities and Exchange Commission; (j) the state attorneys general  for states in which the Debtors conduct business; (k) governmental agencies having a regulatory or statutory interest in these cases; and (l) any party that has requested notice pursuant to Bankruptcy Rule 2002 and Bankruptcy Local Rule 9013-1(d).  No other or further notice is needed in light of the nature of the relief requested.

## <u>CONCLUSION</u>

WHEREFORE, the Debtors request that the Court enter the Order granting the relief requested herein and such other and further relief as may be just and proper under the circumstances.

*[Remainder of page intentionally left blank]*

Dated: March 21, 2023

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Michael D. Warner*

Michael D. Warner (SBT 00792304)
Steven W. Golden (SBT 24099681)
440 Louisiana Street, Suite 900
Houston, TX 77002
Telephone: (713) 691-9385
Facsimile:  (713) 691-9407
mwarner@pszjlaw.com
sgolden@pszjlaw.com

-and-

Jeffrey N. Pomerantz (admitted *pro hac vice*)
Jeffrey W. Dulberg (admitted *pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile:  (310) 201-0760
jpomerantz@pszjlaw.com
jdulberg@pszjlaw.com

*Proposed Counsel to the Debtors and Debtors in Possession*

## Certificate of Accuracy

I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

*/s/ Michael D. Warner*
Michael D. Warner

## Certificate of Service

I certify that on March 21, 2023, I caused a copy of the foregoing document to be served via the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Michael D. Warner*
Michael D. Warner