IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |
|---|---|
| In re: <br><br> MOUNTAIN EXPRESS OIL COMPANY, et al., <br><br> Debtors.[1] | Chapter 11 <br><br> Case No. 23-90147 (DRJ) <br><br> (Jointly Administered) |

**DEBTORS' EMERGENCY MOTION FOR ENTRY OF AN ORDER ESTABLISHING PROCEDURES FOR DEALER CONVERSION TRANSACTIONS**

> **Emergency relief has been requested. Relief is requested not later than April 12, 2023.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter on April 12, 2023, at 12:00 p.m. (prevailing Central Time). Participation at the hearing will only be permitted by an audio and video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. Once connected, you will be asked to enter the conference room number. Judge Jones's conference room number is 205691. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Jones's homepage. The meeting code is "JudgeJones". Click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on JudgeJones's homepage. Select the case name, complete the required fields and click "Submit" to complete your appearance.**

---

[1] A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at www.kccllc.net/mountainexpressoil. The location of Debtor Mountain Express Oil Company's principal place of business and the Debtors' service address in these Chapter 11 Cases is 3650 Mansell Road, Suite 250, Alpharetta, GA 30022.

1

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state the following in support of this motion (this "Motion"):

## Relief Requested

1. The Debtors seek entry of an order (the "Order"), substantially in the form attached hereto, authorizing the Debtors to implement expedited procedures to: (a) use, sell, or transfer certain assets associated with the Debtors' Operated Dealers (as defined below), including any rights, interests, or portions thereof (collectively, the "Operated Dealer Assets") in any individual transaction or series of related transactions, including related ancillary agreements thereto (each, a "Dealer Conversion Transaction") to a single non-insider buyer or group of related non-insider buyers free and clear of all liens, claims, interests, and encumbrances (collectively, the "Liens"), without the need for further court approval and with Liens attaching to the proceeds of such use, sale, or transfer with the same validity, extent, and priority as had attached to the Operated Dealer Assets immediately prior to the use, sale, or transfer; (b) pay those reasonable and necessary documented fees and expenses (if any) incurred in connection with the use, sale, transfer, or acquisition of Operated Dealer Assets, including, but not limited to, as applicable, commission fees to agents, brokers, auctioneers, and liquidators, and other customary expenses with the amount of such proposed fees to be paid to be disclosed in the Transaction Notice (as defined herein); and (c) granting related relief.

## Jurisdiction and Venue

2. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). The Debtors confirm their consent, pursuant

to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court.

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The bases for the relief requested herein are sections 105(a) and 363 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and Bankruptcy Rules 2002, 6004, 6007, and 9006.

**General Background**

5. On March 18, 2023 (the "Petition Date"), the Debtors each commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code. The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee of creditors has been appointed in these Chapter 11 Cases.

6. Founded in 2000 and based in Alpharetta, Georgia, the Debtors are a recognized leader in the fuel distribution and retail convenience industry. As one of the largest fuel distributors in the American South, the Debtors serve 828 Fueling Centers and 27 Travel Centers across 27 states. The Debtors enjoy trusted relationships with every major oil company including ExxonMobil, BP, Shell, Chevron, Texaco, and Sunoco and have obtained Regal Status with Chevron, Platinum Status with ExxonMobil, and entered a Joint Venture with Pilot/Flying J to become the largest Pilot Dealer in the United States. Since 2013, the Debtors have distributed over 1.1 billion gallons of fuel.

7. Additional information regarding the Debtors' business and capital structure and the circumstances leading to the commencement of these Chapter 11 Cases is set forth in the

*Declaration of Michael Healy in Support of Debtors' Chapter 11 Petitions and First Day Relief* [Docket No. 57] (the "First Day Declaration").[2]

## Dealer Conversion Transactions

8. As of the Petition Date, the Debtors have three business segments: (a) the "C-Store Operation Business" which consists of the operation of fueling centers and associated convenience stores; (b) the "Travel Center Operation Business" which consists of the operation of travel centers ("Travel Centers"); and (c) the "Fuel Distribution Business" which consists of the distribution of fuel procured from the Fuel Suppliers. Historically, as discussed in further detail in the First Day Declaration, the Debtors acquired Fueling Centers and Travel Centers and simultaneously re-sold them to third-party investment vehicles who then lease the Fueling Centers and Travel Centers back to the Debtors pursuant to long-term agreements. Certain of the Fueling Centers (the "Operated Fueling Centers") are operated by the Debtors, while certain sites are subleased to third-parties (the "Network Dealers") to operate a Fueling Center on the site (the "Network Dealer Sites").

9. Prior to the Petition Date, the Debtors made the determination to exit the C-Store Operation Business. Accordingly, beginning in or about October 2022, in the ordinary course of the Debtors' business, the Debtors have been engaging in Dealer Conversion Transactions wherein the Debtors have sold and transferred the Operated Dealer Assets associated with one or more Operated Fueling Centers. In each Dealer Conversion Transaction, the Operated Fueling Centers have been converted to Network Dealer Sites, with the Debtors entering into sublease agreements

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

4

(the "Subleases") and long-term fuel supply agreements (the "Fuel Supply Agreements") with each new Network Dealer.

10. Prior to the Petition Date, the Debtors converted 104 Operated Fueling Centers to Network Dealer Sites and, as of the Petition Date, are under contract with various third-parties to convert an additional 55 Operated Fueling Centers to Network Dealer Sites. Through each Dealer Conversion Transaction, the Debtors maintain long-term positive cash flows through fuel volume distribution and rent income while simultaneously reducing their operating expenses associated with the day-to-day operations of a Fueling Center. In general, Dealer Conversion Transactions do not produce a large amount of sale proceeds due to the Debtors; occasionally, as part of the negotiation process, the Debtors agree to incur certain capital expenditures associated with the subject Operated Fueling Centers (the "Debtor CapEx") prior to the closing of a Dealer Conversion Transaction.

11. The Debtors believe that the Dealer Conversion Transactions are ordinary course transactions. However, in an abundance of caution and to alleviate any concerns that certain counterparties to Dealer Conversion Transactions may have regarding whether the Debtors may effectuate such transactions without authorization from the Court, the Debtors seek approval of certain procedures that authorize, to the extent necessary, a streamlined process for the Debtors to engage in Dealer Conversion Transactions postpetition.

12. Oftentimes, the Debtors have a limited window of time during which they can take advantage of opportunities to engage in Dealer Conversion Transactions. The cost and delay associated with seeking individual Court approval of each Dealer Conversion Transaction could eliminate or substantially diminish the economic benefits of the transactions. The Dealer Conversion Transaction Procedures (defined below) permit the Debtors to convert Operated

Fueling Centers to Network Dealers in a streamlined manner and allows for expeditious and cost-effective review of such transactions by interested parties, while protecting the rights of creditors and other parties in interest. Importantly, the Dealer Conversion Transaction Procedures (as defined below) will not apply to any transaction involving any insider of the Debtors.

### Dealer Conversion Transaction Procedures

13. The Debtors propose to use, sell, or transfer each of the Operated Dealer Assets on the best terms available, taking into consideration the exigencies and circumstances in each such transaction under the following procedures (the "Dealer Conversion Transaction Procedures"). The Dealer Conversion Transaction Procedures will apply to any individual transaction or series of related transactions to a single non-insider buyer or group of related non-insider buyers with sale proceeds of less than $250,000 and/or Debtor CapEx of less than $50,000:

   a. the Debtors are authorized to consummate such Dealer Conversion Transactions if the Debtors determine in the reasonable exercise of their business judgment that such transactions are in the best interest of the estates, without further order of the Court, subject to the procedures set forth herein; *provided, however*, that the Debtors may submit an order approving a Dealer Conversion Transaction upon certification of counsel that the Dealer Conversion Transaction Procedures have been followed and no pending unresolved objection exists;

   b. any such Dealer Conversion Transactions shall be, without need for any action by any party, final and fully authorized by the Court and may be, as provided in the documentation governing the applicable Dealer Conversion Transaction, to the extent permitted by the Bankruptcy Code and applicable non-bankruptcy law, free and clear of all Liens with such Liens attaching only to the proceeds of such Dealer Conversion Transactions with the same validity, extent, and priority as immediately prior to the transaction;

   c. the Debtors shall, at least seven (7) calendar days' prior to closing such Dealer Conversion Transaction, give written notice (email sufficient) of such transaction substantially in the form attached as **Exhibit 1** to the Order (each notice, a "Transaction Notice") to the (a) U.S. Trustee for the Southern District of Texas; (b) counsel to the DIP Lenders; (e) any known affected creditor(s), including counsel to any creditor asserting a Lien on the relevant Operated Dealer Assets; (c) counsel to any statutory committee; and (d) those parties requesting notice pursuant to Bankruptcy Rule 2002 (collectively, the "Transaction Notice Parties"); *provided that* in the event

the Debtors are unable to provide seven (7) calendar days' notice, the Debtors shall provide as much notice as reasonably practicable;

d.  each Transaction Notice shall: (a) identify the Operated Dealer Assets being used, sold, or transferred; (b) identify the purchaser of the Operated Dealer Assets and attest that the purchaser is not an insider of the Debtors; (c) identify the parties known to the Debtors as holding Liens on the Operated Dealer Assets; (d) include the purchase price, Debtor CapEx, and any other material economic terms and conditions of the use, sale, or transfer; and (e) identify any commission, fees, or other customary expenses to be paid in connection with such transaction;

e.  if the terms of a proposed sale or transfer are materially amended (in the reasonable judgment of the Debtors) after transmittal of the Transaction Notice, but prior to the applicable deadline of any Transaction Notice Parties' right to object to such sale or transfer of the Operated Dealer Assets, the Debtors will send (email sufficient) a revised Transaction Notice (the "Amended Transaction Notice") to the Transaction Notice Parties, after which the Transaction Notice Parties shall have an additional three (3) calendar days to object to such sale or transfer prior to closing such sale or effectuating such transaction;

f.  if no written objections are filed and served on the Debtors with a copy to their counsel (email sufficient) by the Transaction Notice Parties within the greater of (a) seven (7) calendar days of service of such Transaction Notice or (b) three (3) calendar days of service of an Amended Transaction Notice, as applicable (the "Transaction Notice Period"), the Debtors are authorized to consummate such transaction immediately; *provided* that counsel to the DIP Lenders and any statutory committee may informally object to any such proposed Dealer Conversion Transaction by notifying the Debtors and their counsel in writing (email sufficient) of such informal objection within three (3) business days after receiving such notice, without the need to file a formal objection with the Court, and, if after good faith negotiations, the Debtors and counsel to the DIP Lenders and any statutory committee, as applicable, are unable to resolve such informal objection consensually, counsel to the DIP Lenders and any statutory committee shall file within three (3) business days after receiving notice from the Debtors that the informal objection will not be resolved, a formal objection and the matter shall be resolved by the Court prior to the closing of the transaction at a hearing to be scheduled as soon as reasonably practicable and in accordance with the Court's calendar;

g.  if a written objection, whether formal or informal, is received from a Transaction Notice Party within the Transaction Notice Period that cannot be resolved, the transaction can be consummated only upon withdrawal of such written objection, whether formal or informal, or further order of the Court; and

7

       h.       good faith purchasers of assets pursuant to these Dealer Conversion Transaction Procedures shall be entitled to the protections of section 363(m) of the Bankruptcy Code.

14. Additionally, the Debtors will provide a written report to the Court, the U.S. Trustee, counsel to the DIP Lenders, any statutory committee, and those parties requesting notice pursuant to Bankruptcy Rule 2002, beginning with the calendar quarter ending on June 30, 2023, and each calendar quarter thereafter, no later than thirty (30) days after the end of each such calendar quarter, concerning any Dealer Conversion Transactions consummated during the preceding calendar quarter pursuant hereto, including the names of the purchasing or selling parties, as applicable, and the types and amounts of the transactions.

15. The Debtors submit that the establishment of the foregoing procedures is desirable and in the best interests of the Debtors' estates, their creditors, and other parties in interest in these Chapter 11 Cases. The use, sale, or transfer of the Operated Dealer Assets will generate additional value and help preserve existing value for the benefit of the Debtors' estates and all parties in interest. These procedures will promote an efficient administration of these Chapter 11 Cases, make Dealer Conversion Transactions cost effective, and expedite the use, sale, or transfer of more valuable assets in a manner that will provide the most benefit to the Debtors' estates and creditors.

**Basis for Relief**

**I.    The Dealer Conversion Transaction Procedures Are Appropriate Under Section 363(b) of the Bankruptcy Code.**

16. Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."[3] Although section 363 of the Bankruptcy Code does not specify a standard for determining

---

[3] 11 U.S.C. § 363(b)(1).

when it is appropriate for a court to authorize the use, sale, or lease of property of the estate, bankruptcy courts routinely authorize sales of a debtor's assets if such sale is based upon the sound business judgment of the debtor.[4]

17. The Debtors submit that the Dealer Conversion Transaction Procedures reflect a reasonable exercise of their business judgment. Courts generally will accord significant deference to a debtor's business judgment to use or sell assets outside the ordinary course of business.[5] Requiring the Debtors to file a motion with the Court each time the Debtors seek to engage in a Dealer Conversion Transaction, which involves the ordinary course disposition of non-core assets in a manner that increases the overall value of the Debtors' estates, would distract from their restructuring efforts and force the Debtors to incur unnecessary costs that would reduce whatever value might be realized from the Dealer Conversion Transaction. In addition, the Dealer Conversion Transaction Procedures afford those creditors with an interest in the Operated Dealer Assets the opportunity to object to their use, sale, or transfer, and obtain a hearing if necessary, and the relief requested will not apply to sales of Operated Dealer Assets to "insiders," as that term is described in section 101(31) of the Bankruptcy Code.

---

[4] *See Institutional Creditors of Cont'l Air Lines, Inc. v. Cont'l Air Lines, Inc. (In re Cont'l Air Lines)*, 780 F.2d 1223, 1226 (5th Cir. 1986) ("[F]or a debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors, and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business."); *In re Chateaugay Corp.*, 973 F.2d 141 (2d Cir. 1992) (approval of section 363(b) sale is appropriate if good business reasons exist for such sale).

[5] *See In re W.A. Mallory Co., Inc.*, 214 B.R. 834, 836–37 (Bankr. E.D. Va. 1997) ("[G]reat deference is given to a business in determining its own best interests."); *see also In re Global Crossing, Ltd.*, 295 B.R. 726, 744 n.58 (Bankr. S.D.N.Y. 2003) ("[T]he Court does not believe that it is appropriate for a bankruptcy court to substitute its own business judgment for that of the [d]ebtors and their advisors, so long as they have satisfied the requirements articulated in the case law.").

## II. The Dealer Conversion Transaction Procedures Are Appropriate Under Bankruptcy Rule 2002(a)(2).

18. The notice and hearing requirements contained in section 363(b)(1) of the Bankruptcy Code are satisfied if appropriate notice and an opportunity for hearing are given in light of the particular circumstances.[6] Generally, Bankruptcy Rules 2002(a)(2) and 2002(i) require that a minimum of twenty-one (21) days' notice of proposed uses or sales of property outside the ordinary course of business be provided by mail to "the debtor, the trustee, all creditors and indenture trustees" and any committee appointed under section 1102 of the Bankruptcy Code.

19. Courts are authorized under Bankruptcy Rule 2002(a)(2), however, to shorten the 21-day notice period generally applicable to asset sales, or direct another method of giving notice, upon a showing of "cause." Courts have recognized that when determining whether notice is appropriate under the circumstances for purposes of section 102(1)(A) of the Bankruptcy Code, they are guided by fundamental notions of procedural due process.[7] Due process "requires that any notice is 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'"[8] If basic due process is afforded to interested parties and appropriate cause is established, a court may determine that shortened or limited notice of an asset sale or transfer is appropriate.

20. The usual process of obtaining court approval of each sale of Operated Dealer Assets would create costs to the Debtors' estates that may undermine or eliminate the economic benefits of the underlying transaction and may hinder the Debtors' ability to take advantage of use, sale, or transfer opportunities that are available for only a limited time. The Debtors therefore

---

[6] See 11 U.S.C. § 102(1)(A) (defining "after notice and a hearing" to mean such notice and an opportunity for hearing "as [are] appropriate in the particular circumstances").

[7] See In re Lomas Fin. Corp., 212 B.R. 46, 54 (Bankr. D. Del. 1997).

[8] Id. (quoting Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)).

propose to streamline the process and shorten the applicable notice periods as described herein to maximize the net value realized from uses, sales, or transfers of Operated Dealer Assets for the benefit of all parties in interest.

### III. The Dealer Conversion Transaction Procedures Are Appropriate Under Section 363(f) of the Bankruptcy Code.

21. Section 363(f) of the Bankruptcy Code permits a debtor to sell property free and clear of another party's interest in the property if: (a) applicable nonbankruptcy law permits such a "free and clear" sale; (b) the holder of the interest consents; (c) the interest is a lien and the sales price of the property exceeds the value of all liens on the property; (d) the interest is in bona fide dispute; or (e) the holder of the interest could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of its interest.[9]

22. The Debtors propose to sell or transfer the Operated Dealer Assets in a commercially reasonable manner and expect that the value of the proceeds from such sales or transfers will fairly reflect the value of the property sold. The Debtors further propose that any party with a Lien on Operated Dealer Assets sold or transferred pursuant to this motion shall have a corresponding security interest in the proceeds of such sale or transfer. Moreover, the Debtors propose that no objection to the entry of the Order approving this motion along with no timely objection under the Dealer Conversion Transaction Procedures, as applicable, in each case following the provision of notice, be deemed "consent" to any sales or transfers pursuant to the Order within the meaning of section 363(f)(2) of the Bankruptcy Code. As such, the requirements of section 363(f) of the Bankruptcy Code would be satisfied for any proposed sales or transfers free and clear of Liens.

---

[9] 11 U.S.C. § 363(f).

### IV. Sales or Other Divestitures of Operated Dealer Assets Should Be Entitled to the Protections of Section 363(m) of the Bankruptcy Code.

23. Section 363(m) of the Bankruptcy Code provides in relevant part that the reversal or modification on appeal of an authorization under section 363(b) of a sale or lease of property does not affect the validity of a sale or lease under such authorization to a purchaser who bought or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.[10] "Although the Bankruptcy Code does not define the meaning of 'good-faith purchaser,' most courts have adopted a traditional equitable definition: one who purchases the assets for value, in good faith and without notice of adverse claims."[11] The Third Circuit, for example, has held that "[t]he requirement that a purchaser act in good faith . . . speaks to the integrity of [purchaser's] conduct in the course of the sale proceedings."[12] Typically, the misconduct that would destroy a purchaser's good faith status involves "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders."[13] The Debtors submit that any agreement that results in the sale or divestiture of Operated Dealer Assets will be an arm's-length transaction entitled to the protections of section 363(m).

### V. Courts in this Circuit and Others Have Approved Similar Procedures.

24. As this Court and others have recognized, the usual process of obtaining Court approval of ordinary course and/or *de minimis* asset transactions, such as the Dealer Conversion Transactions: (a) would impose unnecessary administrative burdens on the Court and usurp

---

[10] *See* 11 U.S.C. § 363(m).

[11] *In re Gucci*, 126 F.3d 380, 390 (2d Cir. 1997) (internal citations omitted).

[12] *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 147 (3d Cir. 1986) (internal citations omitted).

[13] *Hoese Corp. v. Vetter Corp. (In re Vetter Corp.)*, 724 F.2d 52, 56 (7th Cir. 1983) (emphasis omitted) (quoting *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978) (interpreting Bankruptcy Rule 805, the precursor to section 363(m)).

valuable Court time at hearings; (b) would create costs to the Debtors' estates that may undermine or eliminate the economic benefits of the underlying transactions; and (c) in some instances may hinder the Debtors' ability to take advantage of sale opportunities that are available only for a limited time.[14] On the other hand, the Dealer Conversion Transaction Procedures will allow for the Debtors to re-focus their efforts on their core Fuel Distribution Business by building long-term fuel volume, reducing operating expenses, eliminate certain administrative costs, and expedite the sale of Operated Dealer Assets for the benefit of the Debtors' estates. Accordingly, the Court should approve the proposed Dealer Conversion Transaction Procedures.

## Basis for Emergency Relief

25. As discussed in further detail in the First Day Declaration, the Debtors have been converting Operated Dealers to Network Dealers since October 2022 and aim to complete the conversion process by June 2023. The Debtors have several Dealer Conversion Transactions in advanced stages of negotiation and which will need to close as expeditiously as possible after agreements are reached. Moreover, it is important that the Debtors be able to communicate to such parties that streamlined procedures are in place to expedite the approval and consummation of what are, in the context of these Chapter 11 Cases, relatively minor, non-core transactions. Accordingly, the Debtors believe that it is essential that the relief requested herein be granted as soon as practicable.

---

[14] *See, e.g., In re Compute North Holdings, Inc.*, Case No. 22-90723 (MI), Docket No. 256 (Bankr. S.D. Tex. Oct. 24, 2022); *In re Strike, LLC*, Case No. 21-90054 (DRJ), Docket No. 59 (Bankr. S.D. Tex. Dec. 6, 2021); *In re Brazos Elec. Power Coop., Inc.*, Case No. 21-30725, Docket No. 875 (Bankr. S.D. Tex. July 13, 2021); *In re Valaris plc*, Case No. 20-34114 (MI), Docket No. 240 (Bankr. S.D. Tex. Sep. 21, 2020).

13

### **Waiver of Bankruptcy Rule 6004(a) and 6006(h)**

26. The Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

### **Reservation of Rights**

27. Nothing contained herein or any actions taken by the Debtors pursuant to any order granting the relief requested by this Motion is intended or should be construed as: (a) an admission as to the validity, priority, or amount of any particular claim against a Debtor entity; (b) a waiver of the Debtors' right to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined herein or in any order granting the relief requested by this Motion, or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtors or any other party-in-interest that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are valid and the Debtors and all other parties-in-interest expressly reserve their rights to contest the extent, validity, or perfection, or to seek avoidance of all such liens. If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other party-in interest's rights to subsequently dispute such claim.

**Notice**

28.     Notice of the hearing on the relief requested in this Motion will be provided by the Debtors in accordance and compliance with Bankruptcy Rules and Local Rules.  The Debtors will provide notice of this motion to the following: (a) the U.S. Trustee for the Southern District of Texas; (b) the holders of the 40 largest unsecured claims against the Debtors (on a consolidated basis); (c) the Debtors' Prepetition Lenders and their counsel (if known); (d) the Prepetition Agent and its counsel; (e) Oak Street and its counsel; (f) the parties holding secured claims against the Debtors; (g) the United States Attorney's Office for the Southern District of Texas; (h) the Internal Revenue Service; (i) the United States Securities and Exchange Commission; (j) the state attorneys general  for states in which the Debtors conduct business; (k) governmental agencies having a regulatory or statutory interest in these cases; (l) any known affected creditor(s), including counsel to any creditor asserting a Lien on the relevant Operated Dealer Assets; and (m) any party that has requested notice pursuant to Bankruptcy Rule 2002 and Bankruptcy Local Rule 9013-1(d).  No other or further notice is needed in light of the nature of the relief requested.

**Conclusion**

WHEREFORE, the Debtors request that the Court enter an order, substantially in the form attached hereto, granting the relief requested herein and such other and further relief as may be just and proper under the circumstances.

Dated: March 31, 2023        **PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Steven W. Golden*
Michael D. Warner (SBT 00792304)
Steven W. Golden (SBT 24099681)
440 Louisiana Street, Suite 900
Houston, TX 77002
Telephone: (713) 691-9385
Facsimile:  (713) 691-9407
mwarner@pszjlaw.com
sgolden@pszjlaw.com

-and-

Jeffrey N. Pomerantz (admitted *pro hac vice*)
Jeffrey W. Dulberg (admitted *pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile:  (310) 201-0760
jpomerantz@pszjlaw.com
jdulberg@pszjlaw.com

*Proposed Counsel to the Debtors and Debtors in Possession*

**Certificate of Accuracy**

I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

*/s/ Steven W. Golden*
Steven W. Golden

**Certificate of Service**

I certify that on March 31, 2023, I caused a copy of the foregoing document to be served via the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Steven W. Golden*
Steven W. Golden