## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| MOUNTAIN EXPRESS OIL COMPANY, et al., | Case No. 23-90147 (DRJ) |
| Debtors.[1] | (Jointly Administered) |

### JOINT EMERGENCY MOTION FOR ENTRY OF AN ORDER AUTHORIZING CLOSING OF CAMERON TRANSACTION

> **Emergency relief has been requested. Relief is requested not later than April 10, 2023.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter on April 10, 2023, at 11:00 a.m. (prevailing Central Time). You may participate in the hearing either in person or by an audio and video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. Once connected, you will be asked to enter the conference room number. Judge Jones's conference room number is 205691. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Jones's homepage. The meeting code is "JudgeJones." Click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Jones's homepage. Select the case name, complete the required fields and click "Submit" to complete your appearance.**

---

[1] A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at www.kccllc.net/mountainexpressoil. The location of Debtor Mountain Express Oil Company's principal place of business and the Debtors' service address in these Chapter 11 Cases is 3650 Mansell Road, Suite 250, Alpharetta, GA 30022.

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), CAM-PL Cedar Rapids LLC, CAM-PL Cokeville LLC, CAM-PL Kansas City LLC (collectively, "Cameron"), and Pilot Travel Centers LLC ("Pilot" and together with Cameron and the Debtors, the "Parties") state the following in support of this motion (this "Motion"):

### Relief Requested

1. The Parties seek entry of an order (the "Order"), substantially in the form attached hereto, authorizing the Debtors to complete an ordinary course transaction (the "Cameron Transaction"), described herein, related to the sale-leaseback of real property and improvements located in Cokeville, WY, Cedar Rapids, IA, and Kansas City, MO (collectively, the "Properties"). The Cameron Transaction was negotiated, entered into, and commenced prior to the Petition Date between the Debtors and non-insider Parties and for which the agreed-upon closing date (the "Closing Date") is within the next 14 days.[2] In connection with the Cameron Transaction, out of an abundance of caution, the Parties seek authority for the Debtors to perform all actions necessary to consummate the Cameron Transaction, including to:

   a. Pay all outstanding principal and interest on the MEX Note (as defined below);

   b. Release liens held by the Debtor MEX RE Holdings LLC on the Properties;

   c. Purchase inventory located on the Properties;

   d. Assume operations of travel centers located on the Properties; and

   e. Enter into Equipment Lease and Thru-Put Agreements ("ELTAs") between Pilot and the Debtors for each of the Properties.

The Parties also ask the Court to grant related relief.

---

[2] The Closing Date has been extended by agreement of the Parties, most recently to April 14, 2023.

2

**Jurisdiction and Venue**

2.  The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). The Debtors confirm their consent, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court.

3.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.  The bases for the relief requested herein are sections 105(a) and 363 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and Bankruptcy Rules 2002, 6004, and 9006.

**General Background**

5.  On March 18, 2023 (the "Petition Date"), the Debtors each commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code. The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee of creditors has been appointed in these Chapter 11 Cases.

6.  Founded in 2000 and based in Alpharetta, Georgia, the Debtors are a recognized leader in the fuel distribution and retail convenience industry. As one of the largest fuel distributors in the American South, the Debtors serve 828 Fueling Centers and 27 Travel Centers across 27 states. The Debtors enjoy trusted relationships with every major oil company including ExxonMobil, BP, Shell, Chevron, Texaco, and Sunoco and have obtained Regal Status with Chevron, Platinum Status with ExxonMobil, and became the largest Pilot Dealer in the United States. Since 2013, the Debtors have distributed over 1.1 billion gallons of fuel.

7. Additional information regarding the Debtors' business and capital structure and the circumstances leading to the commencement of these Chapter 11 Cases is set forth in the *Declaration of Michael Healy in Support of Debtors' Chapter 11 Petitions and First Day Relief* [Docket No. 57] (the "First Day Declaration").[3]

## Cameron Transaction

8. The Debtors have three business segments: (a) the C-Store Operation Business which consists of the operation of fueling centers and associated convenience stores ("Fueling Centers"); (b) the Travel Center Operation Business which consists of the operation of travel centers ("Travel Centers"); and (c) the Fuel Distribution Business which consists of the distribution of fuel procured from the Fuel Suppliers. As discussed in further detail in the First Day Declaration, the Debtors acquire Travel Centers and simultaneously re-sell them to third-party investment vehicles, who then lease the Travel Centers back to the Debtors pursuant to long-term agreements (the "Prime Leases"). The Cameron Transaction is an example of such a transaction that the Debtors consummate in the ordinary course of its business.

9. In December 2022, Pilot sold the Properties to Debtor MEX RE Holdings LLC ("MEX RE Holdings"), who simultaneously sold the Properties to Cameron and Cameron immediately entered into Prime Leases with Debtors MEX RE-NW-IA, LLC; MEX RE-NW-WY LLC; and MEX RE-NW-MO LLC (collectively, the "MEX RE Subsidiaries") with respect to the Properties. Pilot agreed to seller finance a portion of the purchase price for the Properties, and MEX RE Holdings in turn agreed to seller finance the same amount in its sale of the Properties to Cameron. Specifically, (a) Debtor Mountain Express Oil Company, MEX RE Holdings, and

---

[3] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to them in the First Day Declaration.

4

certain of their affiliates issued that certain *Secured Promissory Note*, dated December 30, 2022, favor of Pilot (as amended, restated, supplemented or otherwise modified from time to time, collectively, the "MEX Note"); and (b) Cameron issued that certain *Promissory Note* dated December 30, 2022 in favor of MEX RE Holdings (as amended, restated, supplemented or otherwise modified from time to time, the "Cameron Note" and together with the MEX Note, the "Notes"). The Cameron Note was secured by mortgages on the Properties, which were recorded in the applicable counties. Payment by Cameron to satisfy the Cameron Note benefits the Debtors as payment of the Cameron Note pays off the equivalent amount under the MEX Note.[4]

10. MEX RE Holdings collaterally assigned and granted a security interest in all right, title, and interest of MEX RE Holdings under the Cameron Note and related documents (collectively, the "Cameron Note Rights") to Pilot pursuant to that certain *Collateral Assignment of Loan Documents, Mortgages, and Security Agreements*, dated December 30, 2022 (the "Collateral Assignment"). The Cameron Note is in the possession of Pilot, and the Collateral Assignment was recorded in the applicable counties. Additionally, pursuant to that certain *Second Amendment to Promissory Note*, effective February 24, 2023, Cameron became obligated to make all payments of the Cameron Note directly to Pilot.

11. The Parties have been engaged in negotiations regarding the transition of operations of the travel centers on the Properties (the "Cameron Travel Centers") from Pilot to the Debtors. The Parties have extended the maturity date of the Notes to allow sufficient time for Cameron to secure financing that will allow it to satisfy the Cameron Note in full and to ensure a smooth transition of operations to the Debtors. In the interim period, Pilot has continued to operate the

---

[4] The Notes are not exact mirror images of each other as the MEX Note is interest bearing, while MEX RE Holdings waived all interest under the Cameron Note.

Cameron Travel Centers pursuant to temporary subleases between Pilot and the applicable MEX RE Subsidiary.

13. The Parties are ready to consummate the Cameron Transaction by April 14, 2023. Simultaneous with Cameron's payment of the Notes, Pilot will coordinate transition operation of the Cameron Travel Centers to the Debtors, which includes selling inventory at the Cameron Travel Centers to the Debtors and entering into ELTAs between Pilot and the Debtors to govern go-forward operations. The Debtors and Pilot will release their liens once payment of the Notes is received.

**Basis for Relief**

**I.     Consummation of the Cameron Transactions Is Appropriate Under Section 363(c) of the Bankruptcy Code.**

13. Section 363(c)(1) states that a debtor "may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice of a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing."

14. The Debtors believe that the Cameron Transaction is an ordinary course transaction, consistent with the Debtors' business operations prior to the Petition Date. It is essential for the Debtors to honor the Cameron Transaction and other similar ordinary course transactions in order to preserve the going concern value of the business. However, in an abundance of caution and to alleviate any concerns that counterparties may have regarding whether the Debtors may effectuate such transaction without authorization from the Court, the Debtors seek approval to consummate the Cameron Transaction.

15. The Debtors submit that consummating the Cameron Transaction is in the best interests of the Debtors' estates, their creditors, and other parties in interest in these Chapter 11 Cases.

## II. Alternatively, the Cameron Transactions Is Appropriate Under Section 363(b) and (c) of the Bankruptcy Code.

16. Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."[5] Section 363(c)(2) of the Bankruptcy Code states that a debtor "may not use, sell, or lease cash collateral . . . unless each entity with an interest in cash collateral consents; or . . . the court, after notice and a hearing, authorizes such use, sale, or lease. Although section 363 of the Bankruptcy Code does not specify a standard for determining when it is appropriate for a court to authorize the use, sale, or lease of property of the estate, bankruptcy courts routinely authorize sales of a debtor's assets if such sale is based upon the sound business judgment of the debtor.[6]

17. The Debtors submit that consummation of the Cameron Transaction reflects a reasonable exercise of their business judgment. Courts generally will accord significant deference to a debtor's business judgment to use or sell assets outside the ordinary course of business.[7] Notably, the only funds that the Debtors are expected to expend in order to consummate the Cameron Transaction are those related to the ordinary course transition of operations of the

---

[5] 11 U.S.C. § 363(b)(1).

[6] *See Institutional Creditors of Cont'l Air Lines, Inc. v. Cont'l Air Lines, Inc. (In re Cont'l Air Lines)*, 780 F.2d 1223, 1226 (5th Cir. 1986) ("[F]or a debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors, and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business."); *In re Chateaugay Corp.*, 973 F.2d 141 (2d Cir. 1992) (approval of section 363(b) sale is appropriate if good business reasons exist for such sale).

[7] *See In re W.A. Mallory Co., Inc.,* 214 B.R. 834, 836–37 (Bankr. E.D. Va. 1997) ("[G]reat deference is given to a business in determining its own best interests."); *see also In re Global Crossing, Ltd*., 295 B.R. 726, 744 n.58 (Bankr. S.D.N.Y. 2003) ("[T]he Court does not believe that it is appropriate for a bankruptcy court to substitute its own business judgment for that of the [d]ebtors and their advisors, so long as they have satisfied the requirements articulated in the case law.").

Cameron Travel Centers from Pilot to the Debtors. Critically, the Debtors believe that closing of the Cameron Transactions and the Debtors' operation of the Cameron Travel Centers will increase revenues and create value for the Debtors' estates.

### III. Compliance with Applicable Notice Requirements.

18. The notice and hearing requirements contained in section 363(b)(1) of the Bankruptcy Code are satisfied if appropriate notice and an opportunity for hearing are given in light of the particular circumstances.[8] Generally, Bankruptcy Rules 2002(a)(2) and 2002(i) require that a minimum of twenty-one (21) days' notice of proposed uses or sales of property outside the ordinary course of business be provided by mail to "the debtor, the trustee, all creditors and indenture trustees" and any committee appointed under section 1102 of the Bankruptcy Code.

19. Courts are authorized under Bankruptcy Rule 2002(a)(2), however, to shorten the 21-day notice period generally applicable to asset sales, or direct another method of giving notice, upon a showing of "cause." Courts have recognized that when determining whether notice is appropriate under the circumstances for purposes of section 102(1)(A) of the Bankruptcy Code, they are guided by fundamental notions of procedural due process.[9] Due process "requires that any notice is 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'"[10] If basic due process is afforded to interested parties and appropriate cause is established, a court may determine that shortened or limited notice of an asset sale or transfer is appropriate.

---

[8] *See* 11 U.S.C. § 102(1)(A) (defining "after notice and a hearing" to mean such notice and an opportunity for hearing "as [are] appropriate in the particular circumstances").

[9] *See In re Lomas Fin. Corp.*, 212 B.R. 46, 54 (Bankr. D. Del. 1997).

[10] *Id.* (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

20. Here, the Parties have already entered into the Cameron Transaction prior to the Petition Date, including having previously issued the Notes, entered into purchase and sale agreements, and the Prime Leases. But for the commencement of the Chapter 11 Cases on the Petition Date, the Cameron Transaction would have closed in the ordinary course of business, and any further extension of the Closing Date would only prejudice the Parties without any benefit to the Debtors' estates or any other party in interest. Accordingly, the Debtors submit that cause exists to shorten any applicable notice periods.

## Basis for Emergency Relief

21. As discussed in further detail in the First Day Declaration, the Debtors have routinely entered into sale-lease back transactions similar to the Cameron Transaction in the ordinary course of business. The maturity date on the Notes is April 14, 2023, after which the Debtors will be in default on the MEX Note and Pilot may exercise its remedies against Cameron, a non-Debtor, assigned to it under the Collateral Assignment. The Debtors will also be in breach of its obligations to Cameron, increasing liabilities of the estate and, potentially, litigation. Additionally, it is important for the Debtors to honor their obligations under the mostly-completed Cameron Transaction not only so it can begin operating the Cameron Travel Centers and realize additional revenue through such operations, but also to communicate to parties that the Debtors continue to operate in the normal course of business through these Chapter 11 Cases.

## Waiver of Bankruptcy Rule 6004(a) and 6006(h)

22. The Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

9

**Reservation of Rights**

23.     Nothing contained herein or any actions taken by the Debtors pursuant to any order granting the relief requested by this Motion is intended or should be construed as: (a) an admission as to the validity, priority, or amount of any particular claim against a Debtor entity; (b) a waiver of the Debtors' right to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined herein or in any order granting the relief requested by this Motion, or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtors or any other party-in-interest that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are valid and the Debtors and all other parties-in-interest expressly reserve their rights to contest the extent, validity, or perfection, or to seek avoidance of all such liens.  Each of Cameron and Pilot does not waive and expressly reserves all rights and remedies against each of the other Parties pursuant to the Cameron Transaction.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other party-in interest's rights to subsequently dispute such claim.

**Notice**

24. Notice of the hearing on the relief requested in this Motion will be provided by the Debtors in accordance and compliance with Bankruptcy Rules and Local Rules. The Debtors will provide notice of this motion to the following: (a) the U.S. Trustee for the Southern District of Texas; (b) the holders of the 40 largest unsecured claims against the Debtors (on a consolidated basis); (c) the Debtors' Prepetition Lenders and their counsel (if known); (d) the Prepetition Agent and its counsel; (e) Oak Street and its counsel; (f) the parties holding secured claims against the Debtors; (g) the United States Attorney's Office for the Southern District of Texas; (h) the Internal Revenue Service; (i) the United States Securities and Exchange Commission; (j) the state attorneys general for states in which the Debtors conduct business; (k) governmental agencies having a regulatory or statutory interest in these cases; (l) any known affected creditor(s), including counsel to any creditor asserting a Lien on the relevant Operated Dealer Assets; and (m) any party that has requested notice pursuant to Bankruptcy Rule 2002 and Bankruptcy Local Rule 9013-1(d). No other or further notice is needed in light of the nature of the relief requested.

**Conclusion**

WHEREFORE, the Debtors request that the Court enter an order, substantially in the form attached hereto, granting the relief requested herein and such other and further relief as may be just and proper under the circumstances.

[*Remainder of page intentionally left blank.*]

| | |
|---|---|
| Dated: April 3, 2023 | */s/ Steven W. Golden* <br> **PACHULSKI STANG ZIEHL & JONES LLP** <br> Michael D. Warner (SBT 00792304) <br> Steven W. Golden (SBT 24099681) <br> 440 Louisiana Street, Suite 900 <br> Houston, TX 77002 <br> Telephone: (713) 691-9385 <br> Facsimile:  (713) 691-9407 <br> mwarner@pszjlaw.com <br> sgolden@pszjlaw.com <br><br> -and- <br><br> Jeffrey N. Pomerantz (admitted *pro hac vice*) <br> Jeffrey W. Dulberg (admitted *pro hac vice*) <br> 10100 Santa Monica Blvd., 13th Floor <br> Los Angeles, CA 90067 <br> Telephone: (310) 277-6910 <br> Facsimile:  (310) 201-0760 <br> jpomerantz@pszjlaw.com <br> jdulberg@pszjlaw.com <br><br> *Proposed Counsel to the Debtors and Debtors in Possession* |
| */s/ James E. Rossow Jr.* <br> **RUBIN & LEVIN, P.C.** <br> James E. Rossow Jr. (admitted *pro hac vice*) <br> 135 North Pennsylvania Street, Suite 1400 <br> Indianapolis, IN 46204 <br> Telephone: (317) 860-2893 <br> Facsimile:  (317) 453-8619 <br> Jim@rubin-levin.net <br><br> -and- <br><br> **KAYNE LAW GROUP** <br> Adam L. Smith (Ohio 70928) <br> 612 Park St., Suite 100 <br> Columbus, OH 43215 <br> Telephone:  (614) 226-8800 <br> asmith@kaynelaw.com <br><br> *Counsel to Cameron* | */s/ Duston K. McFaul* <br> **SIDLEY AUSTIN LLP** <br> Duston K. McFaul (24003309) <br> Maegan Quejada (24105559) <br> 1000 Louisiana St., Suite 5900 <br> Houston, TX 77002 <br> Telephone: (713) 495-4500 <br> Facsimile:  (713) 495-7799 <br> Email:  dmcfaul@sidley.com <br>         mquejada@sidley.com <br><br> -and- <br><br> Robert S. Velevis (24047032) <br> Chelsea McManus (24131499) <br> 2021 McKinney Ave, Suite 2000 <br> Dallas, TX 75201 <br> Telephone: (214) 981-3300 <br> Facsimile:  (214) 981-3400 <br> Email:  rvelevis@sidley.com <br>         cmcmanus@sidley.com <br><br> *Counsel to Pilot* |

**Certificate of Accuracy**

I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

*/s/ Steven W. Golden*
Steven W. Golden

**Certificate of Service**

I certify that on April 3, 2023, I caused a copy of the foregoing document to be served via the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Steven W. Golden*
Steven W. Golden