```
                    UNITED STATES BANKRUPTCY COURT
                  SOUTHERN DISTRICT OF TEXAS (HOUSTON)

                                       .
IN RE:                                 .  Case No. 23-90147
                                       .  Chapter 11
MOUNTAIN EXPRESS OIL COMPANY,          .
et al.,                                .  515 Rusk Street
                                       .  Houston, TX 77002
                                       .
                     Debtors.          .  Wednesday, March 29, 2023
                                       .  8:30 a.m.
. . . . . . . . . . . . . . . . .      .


                    TRANSCRIPT OF SHOW CAUSE HEARING
                  BEFORE THE HONORABLE DAVID R. JONES
                  UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtor:            Pachulski Stang Ziehl & Jones LLP
                           By:  BENJAMIN WALLEN, ESQ.
                           440 Louisiana Street, Suite 900
                           Houston, TX 77002
                           (713) 691-9385

For the United States      Office of the United States Trustee
Trustee:                   By:  JAYSON RUFF, ESQ.
                           515 Rusk Street, Suite 3516
                           Houston, TX 77002
                           (713) 718-4640

TELEPHONIC APPEARANCES CONTINUED.

Audio Operator:            Courtroom ECRO Personnel

Transcription Company:     Access Transcripts, LLC
                           10110 Youngwood Lane
                           Fishers, IN 46048
                           (855) 873-2223
                           www.accesstranscripts.com


      Proceedings recorded by electronic sound recording,
transcript produced by transcription service.
```

TELEPHONIC APPEARANCES (Continued):


For the Debtor:                 Pachulski Stang Ziehl & Jones LLP
                                By:  JEFFREY POMERANTZ, ESQ.
                                10100 Santa Monica Boulevard
                                13th Floor
                                Los Angeles, CA 90067-4003
                                (310) 277-6910

                                Pachulski Stang Ziehl & Jones LLP
                                By:  STEVEN GOLDEN, ESQ.
                                780 Third Avenue, 34th Floor
                                New York, NY 10017-2024
                                (212) 561-7700

For First Horizon               Greenberg Traurig, LLP
Bank, as                        By:  JOHN D. ELROD, ESQ.
Administrative Agent:           Terminus 200
                                3333 Piedmont Road Northeast
                                Suite 2500
                                Atlanta, GA 30305
                                (678) 553-2100

For Pepsi-Cola                  Crowe & Dunlevy
Bottling Co. of                 By:  MARK A. CRAIGE, ESQ.
McAlester, Inc.:                222 N. Detroit, 6th Floor
                                Tulsa, OK 74120
                                (918) 592-9878

                                Crowe & Dunlevy
                                By:  CHRISTOPHER M. STAINE, ESQ.
                                2525 McKinnon Street, Suite 425
                                Dallas, TX 75201
                                (214) 420-2143

1          (Proceedings commence at 8:30 a.m.)

2                THE COURT:  Good morning, everyone.  This is Judge

3    Jones.  The time is 8:30 Central.  Today is March the 29th,

4    2023.  This is the docket for Houston, Texas.  We have first on

5    the 8:30 docket this morning in the jointly-administered cases

6    under Case Number 23-90147, Mountain Express Oil Company.

7                Folks, please don't forget to record your electronic

8    appearance.  I know we've got a couple of folks perhaps the

9    first time appearing.

10        (Court and clerk confer)

11               THE COURT:  How about now, folks, can you hear me?

12   All right.  Then let me start over.

13               Good morning, everyone.  The time is 8:31 Central.

14   Today is March the 29th, 2023.  This is the docket for Houston,

15   Texas.  On the 8:30 docket, we have several matters in the

16   jointly-administered cases under Case Number 23-90147, Mountain

17   Express Oil Company.

18               Folks, please don't forget to record your electronic

19   appearance.  I know we've got a couple folks, may be the first

20   time appearing.  If you got to my website, it's a couple of

21   mouse clicks.  You see a link, just that is the way we note the

22   official appearance.

23               First time that you speak, if you would please state

24   your name and who you represent, that really does help the

25   court reporters in the event that a transcript request is made.

1            Finally, we are recording this morning using

2    CourtSpeak.  We'll have an audio of the hearing up on the

3    docket shortly after the conclusion of the hearing.

4            Let me first deal -- is it Craige, or is there a

5    different pronunciation, Mr. Craige?

6            MR. CRAIGE:  No, it's Craige, Your Honor.

7            THE COURT:  All right.

8            MR. CRAIGE:  Mark Craige.  The E is just kind of

9    superfluous.

10           THE COURT:  Got it.  Mr. Craige, I saw your pro hac.

11   It's been signed.  You just haven't seen it yet.  But for --

12   you are certainly admitted to appear today.

13           I don't think there are any other preliminaries.  I

14   have seen everything that's been filed on the docket.

15           Mr. Wallen, do you want to tell me where we are --

16   and let me -- Mr. Alonzo, could you turn on the camera for the

17   lectern?

18      (Court and clerk confer)

19           THE COURT:  Folks, again, my apologies.  My normal

20   staff person had his stomach bug this morning and I appreciate

21   Mr. Alonzo coming in early, but he wasn't prepped for this.

22   Give us just a second.  We'll get this rolling.

23      (Court and clerk confer)

24           THE COURT:  Tell you what, let's do this, so folks

25   don't wait.  Mr. Wallen, I will ask, since no one can hear you,

1   they can certainly -- I'm sorry.  No one can see you.  They can

2   certainly hear you.  We'll just all try to make sure that we

3   take a deep breath and not speak over the top of everyone.  I

4   will note for the record, everyone, I also have an attorney for

5   the United States Trustee, who is in the courtroom.

6           Mr. Wallen.

7           MR. WALLEN: Good morning, Judge Jones.  Ben Wallen,

8   Pachulski Stang Ziehl & Jones, proposed counsel to the debtors.

9           Judge, first off, thank you so much for hearing us

10  early this morning on short notice.  We know your schedule's

11  busy.  But as you observed, there have been a number of

12  developments so --

13          THE COURT:  All right.  Can I ask you to pull just

14  the microphone a little closer?  Make sure -- can everybody

15  hear Mr. Wallen?  I can hear him fine, but I just want to make

16  sure if people can hear him.  Okay, people can -- you're just

17  fine.  My apologies.

18          MR. WALLEN:  Thank you, Judge.  So we thought we'd

19  begin today with a status update.  There have been a number of

20  developments.

21          THE COURT:  Okay.

22          MR. WALLEN:  So to start at the top, when we were

23  last before Your Honor on last Thursday's interim DIP hearing,

24  Mr. Pomerantz appraised [sic] this Court that the debtors had

25  been aware of reports that certain of its creditors had

1  intended to effectuate self-help against the debtors,

2  notwithstanding the Chapter 11 filing and the automatic stay.

3  Mr. Pomerantz made an oral motion for entry of an order in aid

4  of the automatic stay.

5         Judge, you first entered what we've called in our

6  papers the stay-violation order there at Docket 119, which

7  among other things, directed any party to return property of

8  the estate within 48 hours of being served with a copy of the

9  order and notifying such person or entity that should the

10 debtor proceed against them with respect to their stay

11 violations and violations of that order, they would be required

12 to attend an in-person hearing on that relief.

13        The following day, Judge, you entered the worldwide

14 stay order at Docket 127, essentially restating and setting

15 forth the terms of the automatic stay and relevant provisions

16 of the Bankruptcy Code.  Last Friday, March 24th, Pepsi Cola

17 Bottling Company of McAlester, Inc., what I'll refer to as

18 McAlester Bottling --

19        THE COURT:  Okay.

20        MR. WALLEN:  -- blatantly disregarded the automatic

21 stay and orders of this Court and exercised self-help remedies

22 at nine of the debtors' locations in and around McAlester and

23 Eufaula, Oklahoma.  The debtors' motion only identifies four of

24 those locations, as you'll recall, because at the time of

25 filing, there were a number of other creditors in the area that

1   had also exercised self-help relief.  And I'll speak more to

2   that in a moment, Judge, if that's okay?

3           THE COURT:  Sure.   What was actually taken?

4           MR. WALLEN:  It was a variety of coolers,

5   refrigerators, point-of-sale type mini fridge with branding on

6   there, as well as soda fountains and related, I think,

7   infrastructure.

8           THE COURT:  Okay.

9           MR. WALLEN:  McAlester Bottling took these actions

10  despite, excuse me, being informed multiple times by the

11  debtors of the Chapter 11 filing and the existence of the

12  automatic stay before such self-help actions were taken.

13  Additionally, and more concerning, Judge, is that McAlester

14  Bottling's employees were served with copies of the order at

15  those four locations we identified, and they responded

16  essentially that they didn't care or that the order did not

17  apply to them.

18          The debtor sent a follow-up demand later that day,

19  last Friday, March 24th, demanding the immediate return of the

20  equipment no later than 5 p.m. this past Sunday, which was

21  consistent with the 48-hour deadline you set in the stay

22  violation order.  No response was received the follow --

23  despite following up with McAlester Bottling the following day.

24  As a result, the debtors put together and filed their motion

25  for contempt and to show cause and filed that on Monday,

1 | March 27th, at Docket 152.

2 |       The following day, Judge, we were first contacted by

3 | local McAlester, Oklahoma counsel and then later on, bankruptcy

4 | counsel who is in attendance today.  We heard from bankruptcy

5 | counsel around the time that you issued the show cause order at

6 | Docket 161 against Charles Rogers, the chief's -- chief

7 | executive, rather, of McAlester Bottling, which required him to

8 | appear in person at this morning's hearing, but that Mr. Rogers

9 | could obtain a continuance by certifying under oath that

10 | McAlester Bottling had returned all of the equipment.

11 |       When we spoke, McAlester Bottling's bankruptcy

12 | counsel informed the debtors that McAlester Bottling had

13 | immediately gone into the process of returning the equipment to

14 | the affected debtor locations.  It took a bit of doing

15 | yesterday afternoon, Judge, but the debtors were able to

16 | confirm that all of the equipment that was taken --

17 |       THE COURT:  So somebody's got two broadcasting

18 | devices going on.  I can figure that out.  But if you -- if

19 | you've got, like, a set of Air Pods and a speakerphone, or a

20 | phone and a speakerphone, you need to mute one of them.  That's

21 | where that feedback is coming from.

22 |       Mr. Wallen, if you'd go ahead, please.

23 |       MR. WALLEN:  Of course, Judge.  As I was saying,

24 | there were a number -- it took a bit of doing to confirm that

25 | all of the equipment was returned to the debtors.  Additional

1  equipment that had been damaged as a result of McAlester

2  Bottling's self-help.  Mostly the lines related to the soda

3  fountains at three locations were in the process of being

4  repaired by McAlester Bottling.  Those repairs were stopped

5  last night around 10 p.m. when the debtors' locations closed,

6  and I understand that they're set to resume this morning and

7  will continue until the soda fountains are in full working

8  order.

9          THE COURT:  Okay.

10          MR. WALLEN:  An affidavit was filed by McAlester

11  Bottling at Docket 166, which I believe you're aware of,

12  regarding the return of the equipment, and a motion to excuse

13  Mr. Rogers's attendance solely at this morning's hearing was

14  filed last night.

15          Based on these developments, Judge, the debtors

16  wanted to hold this morning's hearing to provide you an update

17  on the McAlester Bottling and others.  Despite it, however, the

18  debtors would ask that the Court continue this hearing to a

19  time next week to determine both the amount of damages as a

20  result of McAlester Bottling's actions, as well as to ensure

21  compliance and that the equipment is returned to good working

22  order.  The debtors believe that the hearing should be attended

23  in person by Mr. Rogers.

24          THE COURT:  All.  Thank you.

25          Mr. Staine, Mr. Craige, who's going to take the lead

1  this morning?

2          MR. CRAIGE:  Your Honor, I believe I will since the

3  pro hac has been granted.  I had Mr. Staine from my Dallas

4  office on just in case that didn't get done.

5          THE COURT:  No, of course.

6          MR. CRAIGE:  Okay.  Thank you, Your Honor.  If I may

7  we were contacted yesterday around eleven o'clock about all the

8  conflicts.  There were several because of all the debtors.  But

9  anyway, as soon as we got cleared, I contacted Mr. Wallen, and

10  we advised our client immediately, as he said, to return

11  everything.  And I got an email this morning telling me that

12  they -- my clients showed me pictures of all the soda fountains

13  that have been reconnected and repaired.  We -- but we'll

14  confirm that today.

15          We think we've cured the violation and returned

16  everything as it was.  Certainly, that's our intention to do

17  that.  And then, we'd like to put this off as Mr. Wallen said.

18  It gives us a chance to negotiate what the monetary issues are,

19  excuse me.  And I think we can resolve that.

20          I believe I have a decent idea what -- fortunately,

21  the monetary damages, I think, are fairly nominal.  And it's

22  the loss of the sale of about 18 bottles per store of Coke per

23  day is what the averages are.  So it's, fortunately, not a big

24  number.

25          In any event, our clients are going to be prepared to

1    pay what needs to be paid to square this up with the Court.

2              THE COURT:  So -- and Mr. Craige, number one, any of

3    my comments are not directed toward your firm at all.  I

4    appreciate -- I very much appreciate your involvement.  I

5    looked your firm up just because I didn't know them.  From what

6    I can tell, you guys all do exemplary work.  You understand the

7    law, and you appreciate the necessity for following rules.  So

8    I -- number one, I'm very happy that you're here.

9              This is one of the most distasteful things that I

10   ever have to do.  And I -- unfortunately, I have to do it from

11   time to time just to make sure that people understand how

12   important it is that we follow the law.  I, again -- you've

13   done in substance what I asked to be done.  And so I -- I'm

14   going to give you the time to work through the issues with the

15   debtor.

16             I want to tell you up front, these guys are

17   expensive.  These -- their rates are high, and this is going to

18   have to be a net zero to the estate to keep me from getting

19   involved because, at the end of this, my order that was

20   violated, and I take that very seriously.  I don't issue many

21   of those orders, but when I do, I will absolutely follow them

22   to the very end.  And I -- you don't know me, and this --

23   again, this is not for you; it's for your client.

24             I took -- I gave up an oath -- I gave up an awful lot

25   to take the oath and enforce the process.  And I do it, and I

1   can be extremely harsh at times if I need to be.  I'm going to

2   give you the opportunity because sometimes I think that

3   self-inflicted correction is better and serves a greater

4   purpose than if I do it.  And so I'm going to give you that

5   opportunity to do it.  If you are able to negotiate a

6   resolution, I'm not going to say that I'm just going to rubber

7   stamp it.

8           MR. CRAIGE:  We understand.

9           THE COURT:  I'm going to look at it, but I can't

10  imagine that I don't look at skilled counsel on both sides who

11  negotiate a resolution and just say, okay, that makes sense to

12  me because everyone was adequately represented.

13          I do want the U.S. Trustee involved in this.  And

14  again, I'm not -- they're certainly not going to negotiate.

15  But I want them to see any order that is drafted.  I want them,

16  to the extent that there are issues that they find to be

17  compelling as part of their oversight duty, I certainly want

18  the parties to listen.

19          I -- again, you don't have to agree.  Perfectly happy

20  to work through this myself.  If you are able to reach an

21  agreement and we're going to come up with a day or we're going

22  to -- for a continued hearing.  If there is an agreement that's

23  reached at least 24 hours before the hearing, then I'll excuse

24  Mr. Rogers from having to attend.  If the agreement is not

25  reached within 24 hours prior to the hearing, then Mr. Rogers

1    is going to attend even if an agreement is subsequently

2    reached.

3           So, Mr. Craige, I think I've been overly fair in

4    terms of giving your client an opportunity to correct what I'm

5    just going to call an error in judgment, and I genuinely

6    believe that's what it is.  I -- you know, am I happy that

7    someone took one of my orders and said that, you know, I don't

8    care what's on that piece of paper?  No, I'm not.  I am

9    assuming that you have given the appropriate advice and

10   explained to them how the process works.  And so I'm just going

11   to accept that.

12          Let me ask -- I'm going to guess, and you all tell

13   me.  Is next week too soon?  I mean, I'm going to take

14   Mr. Craige at his word that either things are fixed and

15   business is back up and running or it will be very promptly,

16   and it's just because there's a couple of sort of loose ends to

17   tie up.  I -- I'm just going to accept that, absent hearing

18   something further.

19          Mr. Wallen, you tell me.  I mean, today is -- today's

20   the 29th.  I'll make time when I need to.  But I'm thinking

21   that maybe having, you know, maybe a hearing the week of the

22   10th, first part of the week, would make more sense and give

23   everybody an opportunity to try to work through the issues.

24          But if everybody wants it next week because that

25   really lights the fire under everybody, I'm happy to do that

1    too.

2          MR. WALLEN:  Judge, I think the fire that will be lit

3    for early the following week will be sufficient.  What would be

4    a convenient date for you, Judge?

5          THE COURT:  So let's look at this, and Mr. Craige and

6    Mr. Staine, if I can ask you to look at your respective

7    calendars.

8          MR. POMERANTZ:  Your Honor, this is Jeff Pomerantz.

9    We already have a hearing scheduled, I believe, for April 12th.

10   So to avoid multiple appearances, maybe we take that time.

11         THE COURT:  Oh, that said, that may save a few

12   nickels.  All fine by me, as well.

13         So the hearing, Mr. Craige and Mr. Staine, that we

14   currently have set is for Wednesday, April the 12th at noon

15   Central time.  I know that that interferes with your lunchtime.

16   It interferes with mine and, I do like to eat.  But that would

17   just -- it was necessary based on just some other events.

18   Would noon on the 12th work or do we need something different?

19         MR. CRAIGE:  Your Honor, this is Mark Craige.  I

20   actually have a -- (audio interference) board meeting in Kansas

21   City at noon on that day, and so that day's pretty much shot

22   for me, unfortunately.

23         THE COURT:  I got it so --

24         MR. CRAIGE:  I apologize.

25         THE COURT:  No, no, no.  It's just fine.  So,

1   Mr. Craige, I will tell you that your headset is -- has got

2   some significant issues.  I don't know whether -- I can't -- so

3   it looks like you're wireless.  But it was -- you were having

4   significant problems.

5           I think what I heard you say was you had a board

6   meeting in Kansas City on the 12th at noon.  Let me do this

7   because I can't imagine -- just given the progress that we've

8   already made, it's going to be my guess that you folks are

9   going to be able to work through this.  But even if we're not,

10  I would imagine Mr. Wallen, it's something that you could

11  probably just handle by yourself.

12          So let's do this.  Let's go back to Monday the 10th.

13  What about eleven o'clock?  And that would be Central time.

14  Would that work?

15          MR. WALLEN:  That works great for me, Judge.

16          THE COURT:  Mr. Craige, Mr. Staine, would that work

17  for you?

18          MR. STAINE:  That works for me, Judge.

19          THE COURT:  Thank you.  And would that work for the

20  U.S. Trustee?

21          MR. RUFF:  It does, Your Honor.

22          THE COURT:  All right.  Then we'll continue today's

23  hearing to eleven o'clock on Monday, April the 10th.  And given

24  that it's on a Monday -- so let me back up and deal with the

25  requirement for Mr. Rogers to attend.  If there is a proposed

1   agreed order that has been uploaded, signed off by everybody,

2   by noon on the 7th, no need to appear.  And Mr. Craige and

3   Mr. Staine, we won't even have a hearing unless there's

4   something that I don't understand about the order.

5         If there -- if an agreement hasn't been uploaded by

6   noon on the 7th, then I will expect to see Mr. Rogers present.

7   I'll still have the video to the extent that, you know,

8   Mr. Craige or Mr. Staine -- Mr. Staine, if you want to appear

9   and, Mr. Craige, you want to be on video or vice versa, all

10   fine by me but I'm going to require Mr. Rogers to be here.

11         I will tell you again, this is -- I'm just trying to

12   give you lay of the land.  If we have one of these hearings, I

13   would -- you can expect that I will ask some questions to the

14   extent that -- to the extent that I don't think Mr. Wallen gets

15   enough detail.  So I'm hoping that we don't have that.  But if

16   we do, I want everybody to be prepared for what will occur.

17   Okay?

18         MR. CRAIGE:  Very well.

19         THE COURT:  All right.  Mr. Wallen, anything else

20   from your perspective that we need today?  And I very much

21   appreciate the timeline.  Very helpful.  Hopefully, this just

22   turns out to be a single error in judgment and this gets

23   corrected very quickly.

24         MR. WALLEN:  Judge, we do have an update on other

25   creditors in similar situations.

1              THE COURT:  Understood.  I want to -- to the extent

2    that Mr. Craige and Mr. Staine need to go to other things, I

3    want to make sure that we're done with their client.

4              MR. WALLEN:  I understand, Judge.  Nothing further

5    with respect to this motion.

6              THE COURT:  All right.  The U.S. Trustee have any

7    issues they need to raise with respect to just this one issue?

8              MR. RUFF:  I'll come to the podium.

9              THE COURT:  Please, no, very much.  Thank you.

10             MR. RUFF:  No, Your Honor.  With everything we've

11   heard today, I think we're on the right track now, so we'll

12   stand by, and we'll observe.

13             THE COURT:  Got it.  And are you the point person to

14   the extent that there's an order to review?

15             MR. RUFF:  Yes, Judge.

16             THE COURT:  Okay.  Just wanted to make sure.  All

17   right.  Thank you.

18             Any reason Mr. Staine and Mr. Craige cannot be

19   excused?

20             All right, gentlemen, again, thank you for your

21   involvement.  And thank you for appearing this morning.  You

22   folks are excused if you wish.

23             MR. CRAIGE:  Thank you, Your Honor.

24             MR. STAINE:  Thank you for the time, Judge.

25             THE COURT:  Thank you.  All right, Mr. Wallen, you've

1    got other issues that have occurred.

2            MR. WALLEN:  Yes, Judge.  The debtors have three

3    other creditors in that same McAlester/Eufaula area in Oklahoma

4    that have likewise exercised self-help.

5            THE COURT:  Okay.

6            MR. WALLEN:  Let me start.  Two creditors are

7    similarly situated.  They're also bottlers in that area.  They

8    contacted the debtors yesterday afternoon.  They let us know

9    that they are in the process of returning equipment

10   immediately.

11           THE COURT:  Okay.

12           MR. WALLEN:  The debtors, with the influx of

13   equipment, are still confirming that we've received everything.

14   Certainly, Judge, if it turns out that there's equipment still

15   missing and it's not promptly remedied, we will be back in

16   front of you.

17           THE COURT:  No, of course.  And I assume even if it

18   has been returned, I mean, that doesn't end the issue.  So I

19   will be prepared for whatever it is that the debtor chooses to

20   file.  The debtor, and therefore the estate and creditors,

21   should not bear the burden in any shape, way, or form for

22   ignoring the law.  I mean, it -- just, folks who do follow the

23   law shouldn't have to bear the cost for those who don't.  And

24   if the estate spends one nickel dealing with this, it should be

25   reimbursed by the folks who caused the actions to take place.

1          Again, I don't -- you know, that's just simple

2  equity.  Even if it turns out as I think this one was, perhaps

3  someone just exercising bad judgment, you know, with judgment

4  comes a consequence, be it bad or be it good.

5          MR. WALLEN:  All right.  I hear you loud and clear,

6  Judge.  We will take the appropriate actions.

7          THE COURT:  Okay.

8          MR. WALLEN:  Judge, there is a third creditor that is

9  perhaps in a different situation, another Oklahoma creditor.

10  It's a coffee distributor called Stephenson Wholesale Company,

11  Inc., doing business as Indian Nation Wholesale.  Based off our

12  investigations, similar to this, we do not believe that there's

13  a tie to an Indian nation or tribe at this point.

14          THE COURT:  Okay.

15          MR. WALLEN:  We're still investigating that.  So at

16  this point we don't believe that there's sovereign immunity

17  issues implicated.

18          THE COURT:  I don't think they are anyway, but okay.

19          MR. WALLEN:  I understand.  The debtors have demanded

20  the return of the equipment and set a deadline for compliance

21  later today.  Consistent with this Court's stay violation

22  order, we also served a copy of both of the stay orders that

23  you issued, Judge.  If that remains unreturned, likewise, we

24  expect to be in front of Your Honor, pretty quickly.

25          THE COURT:  Fair enough.  Hopefully, you'll get

1   counsel involved and this is one of those opportunities where

2   you can use CourtSpeak and send a copy of the audio of today's

3   hearing if folks really want to see how this is going to go.

4           You know, only because we had two skilled lawyers

5   show up today that understood the need to comply with the law

6   did this hearing go as easy as it did.  To the extent that

7   there is behavior which contravenes my orders, as well as the

8   laws of the United States of America, that is conduct that must

9   be remedied.  And sometimes, that remedy can be harsh.  And so,

10  I -- again, not something I want to do, but absolutely

11  something I will do.

12          MR. WALLEN:  Thank you, Judge.

13          THE COURT:  All right.  Anything else we need to talk

14  about this morning?

15          MR. WALLEN:  Not from the debtors' perspective, I

16  don't.

17          THE COURT:  All right.  If it turns out that there

18  are other issues, I -- obviously let me know.  It won't bother

19  me a bit to find out that there are, you know, that there are

20  unremedied problems.  I'm going to guess, just judging by the

21  folks that you got involved, they're going to see the need to

22  really take the extra step to make sure everything is made

23  whole and that the debtors are back up and running and at least

24  until they decide to file something the proper way, that things

25  will just get done.  But if that turns out to be wrong, I want

1  to know and I want to know quickly.

2          MR. WALLEN:  Understood, Judge.

3          THE COURT:  Okay.  Thank you.  Anyone else have

4  anything they need to address?

5          All right.  Mr. Pomerantz, I'm very sorry.  I got you

6  up at, I guess, what is six o'clock in the morning.  My

7  apologies, sir.

8          MR. POMERANTZ:  Your Honor, I'm headed to the airport

9  a little later, so it -- you know, really the problem was

10 putting on a jacket and tie this early, but there's no problem.

11         THE COURT:  Then I won't ask you to stand up.  All

12 right.

13         MR. POMERANTZ:  Good decision.  Good judgment.

14         THE COURT:  All right.  Mr. Elrod, anything from your

15 perspective?  I know you were just watching because you have an

16 interest in how this goes, but anything that -- anything that's

17 been triggered that I need to be aware of or that you have

18 concerns about?

19         MR. ELROD:  No, Your Honor, but I appreciate your

20 checking in with me.

21         THE COURT:  All right.  Then with that, everyone,

22 please enjoy the rest of your day and we'll be adjourned until

23 nine o'clock.  Thank you all.

24         MR. WALLEN:  Thank you, Judge.

25         MR. ELROD:  Thank you, Your Honor.

1      (Proceedings concluded at 8:56 a.m.)

2                         * * * * *

3

4

5

6

7

8

9

10

11

12

13

14                  **C E R T I F I C A T I O N**

15

16      I, Alicia Jarrett, court-approved transcriber, hereby

17 certify that the foregoing is a correct transcript from the

18 official electronic sound recording of the proceedings in the

19 above-entitled matter.

20

21

22

23 _____

24 ALICIA JARRETT, AAERT NO. 428    DATE: April 4, 2023

25 ACCESS TRANSCRIPTS, LLC