**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |
|---|---|
| In re: | Chapter 11 |
| MOUNTAIN EXPRESS OIL COMPANY, et al., | Case No. 23-90147 (DRJ) |
| Debtors. [1] | (Jointly Administered) |

**DEBTORS' <u>EMERGENCY</u> MOTION FOR (I) ENTRY OF AN ORDER TO
APPEAR AND SHOW CAUSE AGAINST INDEPENDENT BOTTLER,
ADA COCA-COLA BOTTLING COMPANY, AND (II) THE IMPOSITION OF
COMPENSATORY AND COERCIVE SANCTIONS FOR VIOLATIONS
OF THE AUTOMATIC STAY  AND COURT ORDERS**

> **Emergency relief has been requested.  Relief is requested not later than April 12, 2023.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph.  Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter on April 12, 2023, at 12:00 p.m. (prevailing Central Time).  You may participate in the hearing either in person or by an audio and video connection, unless otherwise ordered by the Court.  *See* Docket No. 119.**
>
> **Audio communication will be by use of the Court's dial-in facility.  You may access the facility at (832) 917-1510.  Once connected, you will be asked to enter the conference room number.  Judge Jones's conference room number is 205691.  Video communication will be by use of the GoToMeeting platform.  Connect via the free GoToMeeting application or click the link on Judge Jones's homepage.  The meeting code is "JudgeJones".  Click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings.  To make your appearance, click the "Electronic Appearance" link on Judge Jones's homepage.  Select the case name, complete the required fields and click "Submit" to complete your appearance.**

---

[1]     A complete list of each of the Debtors in these Chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at www.kccllc.net/mountainexpressoil. The location of Debtor Mountain Express Oil Company's principal place of business and the Debtors' service address in these Chapter 11 cases is 3650 Mansell Road, Suite 250, Alpharetta, GA 30022.

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state the following in support of this emergency motion (this "Motion"):

## PRELIMINARY STATEMENT

1.      On Friday, March 24, 2023, a local independent bottler in Ada, Oklahoma, Ada Coca-Cola Bottling Company ("ACC"), removed three branded store display coolers (the "Equipment") from the Debtors' possession at the premises located at 601 S. Mississippi Avenue, Ada, Oklahoma 74820 (the "Premises").  When one of the Debtors' employees provided a copy of the Stay Violation Order (defined below) to the persons purporting to act on behalf of ACC (the "ACC Agents") removing the Equipment from the Debtors' possession, the ACC Agents refused to accept the copy of the Stay Violation Order.

2.      On April 4, 2023, after having received the Initial Demand and the Stay Orders (each defined below) from Debtors' counsel, Mr. Frank Ray Crabtree, Jr., a Vice-President of ACC and its Registered Agent ("Mr. Crabtree"), called Debtors' counsel (the "April 4 Call") and, *inter alia*, aggressively disputed the applicability of the Automatic Stay (defined below) and the Stay Orders to ACC.  **Moreover, Mr. Crabtree adamantly refused to discuss a resolution of ACC's Self-Help Actions (defined below), and abruptly concluded the April 4 Call by inviting Debtors' counsel, in reference to the Initial Demand and the Stay Orders, to "_shove it up your a\*\*, mother f\*\*\*\*er_" before hanging up the phone.**

3.      Shortly thereafter, Debtors' counsel sent the Transcript Email (defined below) to ACC, and attached the transcript from the March 29, 2023 hearing before the Court with respect to violations of the automatic stay of section 362 of the Bankruptcy Code (the "Automatic Stay") and the Stay Orders by a different Oklahoma bottler.  Later that day, Mr. Crabtree sent the ACC Response (defined below), which, among other things, displayed unfounded nationalistic and

xenophobic biases as well as a complete disregard for this Court and the integrity of the chapter

11 process, stating:

> . . . We can pick up any equipment we own any where in any account at any time
> for any reason.  . . .
>
> Last but not least.  We did not break any laws.  We don't break laws.  We are what
> a American stands for "A descent thing honestly made"
>
> You and all your  lawyers and judges have no control over me, my family or our
> company.   As you can tell I don't take bullying lightly.  This is America hot shot.
> Not China.
>
> By the way your client owes us 2900.00.  Tell them to pay up.
>
> If the court wants to pursue this I am happy to see you in the courthouse.  I am not
> intimidated at all by you or this bankruptcy crap.  We took swift action to go to
> cash and get our equipment.  You guys are out of luck!!

*See* Exhibit 3 (errors in original).

4.      Importantly, the ACC Response caused an independent violation of the Automatic

Stay by attempting to collect on a prepetition claim against the Debtors and simultaneously

disputed this Court's jurisdiction and power over ACC while espousing a desire to litigate the

propriety of the Self-Help Actions before this Court.

5.      As of the time of filing of this Motion, ACC has not remedied its Self-Help Actions,

and the Debtors continue to incur damages through the incurrence of additional legal fees and

depressed revenues as a result of ACC's non-compliance with the Automatic Stay and the Stay

Orders.  Moreover, ACC's Self-Help Actions undermine the confidence of employees and all other

stakeholders in the integrity of the Chapter 11 process and such actions are highly disruptive to the

Debtors' efforts to maximize value for their stakeholders.

6.      Accordingly, by this Motion, the Debtors request (I) entry of an order, in

substantially the form attached hereto (the "Order"), directing ACC, through Mr. Crabtree, to

appear in person at a hearing (the "Show Cause Hearing") to show why ACC should not be held in contempt for violations of the Automatic Stay and the Stay Orders of this Court, and (II) the imposition of (a) coercive sanctions against ACC to accrue until such time as ACC remedies its violations of the Automatic Stay and the Stay Orders, and (b) compensatory sanctions against ACC in an amount of damages incurred by the Debtors, including professional fees and expenses, to be established by the Debtors once ACC remedies its non-compliance and violations of the Automatic Stay and the Stay Orders.

## JURISDICTION AND VENUE

7.      The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). The Debtors confirm their consent, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court.

8.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

9.      The statutory bases for the relief requested herein are section 105(a) of Title 11 of the United States Code (the "Bankruptcy Code"), Bankruptcy Rules 9014, 9020, and rule 9013-1 of the Local Bankruptcy Rules for the Southern District of Texas (the "Local Rules").

## GENERAL BACKGROUND

10.      On March 18, 2023 (the "Petition Date"), the Debtors each commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code. The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these Chapter 11 Cases.

DOCS_NY:47356.2 58614/002

11.     On April 4, 2023, the Office of the United States Trustee appointed the Official Committee of Unsecured Creditors (the "Committee"), consisting of the following three members: (i) The Necessity Retail REIT, Inc.; (ii) Total Image Solutions, LLC; and (iii) Coca-Cola Bottling Company United, Inc.  *See* Docket No. 202.

12.     Founded in 2000 and based in Alpharetta, Georgia, the Debtors are a recognized leader in the fuel distribution and retail convenience industry.  As one of the largest fuel distributors in the American South, the Debtors serve 828 Fueling Centers and 27 Travel Centers across 27 states.  The Debtors enjoy trusted relationships with every major oil company including ExxonMobil, BP, Shell, Chevron, Texaco, and Sunoco and have obtained Regal Status with Chevron, Platinum Status with ExxonMobil, and entered a Joint Venture with Pilot/Flying J to become the largest Pilot Dealer in the United States.  Since 2013, the Debtors have distributed over 1.1 billion gallons of fuel.

13.     Additional information regarding the Debtors' business and capital structure and the circumstances leading to the commencement of these Chapter 11 cases is set forth in the *Declaration of Michael Healy in Support of Debtors' Chapter 11 Petitions and First Day Relief* [Docket No. 107] (the "First Day Declaration"),[2] which is incorporated by reference herein.

### ACC'S VIOLATIONS OF THE AUTOMATIC STAY AND ORDERS OF THIS COURT

14.     ACC has historically provided Coca-Cola and other products to the Debtors at the Premises located in Ada, Oklahoma on a purchase order basis.  Prepetition, in or about February 2023, ACC informed the Debtors that they intended to stop providing products to the Debtors due to unpaid arrearages until the Debtors became current on such amounts.  At that time and through

---

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

the Petition Date, the Debtors utilized the Equipment provided to them by Ada Coca-Cola in their day-to-day operations, including the sale of chilled beverages to their retail customers.

15. On March 23, 2023, Debtors' counsel informed the Court of, *inter alia*, various threats of Automatic Stay violations by the Debtors' creditors and requested by oral motion (the "Oral Motion") the entry of an order restating the Automatic Stay.  In response, the Court entered the *Order Regarding Violations of the Automatic Stay* [Docket No. 119] (the "Stay Violation Order").  Among other things, the Stay Violation Order (i) required any party that repossessed items located at the Debtors' locations to return such items at their sole expense within 48 hours of receiving a copy of the Stay Violation Order, and (ii) notified all possible parties who had taken possession of property in the Debtors' possession  (a) of potential violations of the terms of the Stay Violation Order and the Automatic Stay and (b) that any violating person or entity must appear in person at a hearing before the Court in Houston, Texas and that failure to appear may result in the issuance of a bench warrant for such party.

16. On March 24, 2023, in response to the Oral Motion, the Court entered the *Order (I) Restating and Enforcing the Worldwide Automatic Stay, Anti-Discrimination Provisions and Ipso Facto Protections of the Bankruptcy Code* [Docket No. 127] (the "Stay Restatement Order," and together with the Stay Violation Order, the "Stay Orders").  The Stay Restatement Order set forth, *inter alia*, the provisions of Automatic Stay and related Bankruptcy Code provisions common to creditors and other vendors who might otherwise wish to exercise self-help remedies in violation of the Automatic Stay.

17. On March 24, 2023, the ACC Agents arrived at the Debtors' Premises and took possession of the Equipment (the "Self-Help Actions").  When one of the Debtors' employees presented the Stay Violation Order to the ACC Agents, the ACC Agents refused to accept it.  On

or about that same date, a number of other local bottlers in the central/eastern Oklahoma area began repossessing similar equipment from the Debtors, including another independent Coca-Cola bottler, causing significant disruptions to the Debtors' operations and undermining employee morale.  *See* Docket No. 152.  Such other independent bottlers have substantially cured their violations of the Automatic Stay and the Stay Orders, and it took a number of days for the Debtors to determine that only ACC refused to make any effort to comply with the Automatic Stay and the Stay Orders.

18.     On April 4, 2023, Debtors' counsel initially called the main phone line of ACC regarding the Self-Help Actions and a representative of ACC directed Debtors' counsel to ACC's controller, Rod Dillard ("Mr. Dillard"), who was unavailable at that time.  Thereafter on April 4, 2023, Debtors' counsel sent a letter to ACC (the "Initial Demand"), via e-mail to Mr. Dillard, Federal Express, and U.S. Mail, and attached copies of the Stay Orders thereto.  The Initial Demand as well as the Federal Express delivery receipts with respect thereto are attached hereto as **Exhibit 1**.  Among other things, the Initial Demand identified the existence of the Automatic Stay, the Court's entry of the Stay Orders (which were enclosed), and the Self-Help Actions, as well as reserved the Debtors' right to seek damages, including legal fees and costs, in connection with the Self-Help Actions.

19.     On April 4, 2023 at 11:51 a.m. (Central Time), Mr. Crabtree initiated the April 4 Call to Debtors' counsel regarding the matters set forth in the Initial Demand.  Mr. Crabtree quickly became hostile and verbally aggressive.   Among other things, Mr. Crabtree disputed the applicability of the Automatic Stay and the Stay Orders, asserting that ACC "knew its rights." While Debtors' counsel attempted to inform Mr. Crabtree of the implications of the Debtors' chapter 11 filing and the Debtors' possessory interest in the Equipment, Mr. Crabtree was wholly

7

unwilling to engage in a resolution of the issues created by the Self-Help Actions.  Instead, Mr. Crabtree, in reference to the Initial Demand and Stay Orders, directed Debtors' counsel to "shove it up your a\*\*, mother f\*\*\*\*er" before hanging up the phone.

20.     Notwithstanding the hostile and obscene conclusion to the April 4 Call, Debtors' counsel sent a follow-up email at 12:55 pm. (Central Time) to Mr. Dillard (the "Transcript Email"), which, *inter alia*, recounted the conclusion of the April 4 Call and informed ACC of the Debtors' actions to enforce the Automatic Stay and the Stay Orders against a different Oklahoma bottler who exercised self-help remedies against the Debtors.  Importantly, the Transcript Email also attached a copy of the transcript of the March 29, 2023 hearing regarding such bottler's self-help actions, at which the Court made a number of significant comments and admonishments regarding violations of the Automatic Stay and the Stay Orders.  A copy of the Transcript Email is attached hereto as **Exhibit 2**.

21.     On April 4, 2023, at 5:26 p.m. (Central Time), Debtors' counsel received an email from Mr. Crabtree (the "ACC Response"), a copy of which is attached hereto as **Exhibit 3**.  Among other things, the ACC Response sought to justify the Self-Help Actions, and disputed receipt of the notice of the Chapter 11 Cases and the Debtors' attempt to provide a copy of the Stay Violation Order to the ACC Agents while conducting the Self-Help Actions.  The ACC Response further asserted that ACC was in compliance with the law and that ACC does not violate laws, notwithstanding the existence of the Automatic Stay and the Stay Orders, which Mr. Crabtree ostensibly referred to as "***this bankruptcy crap***."  Curiously, Mr. Crabtree disputed this Court's power to control ACC, yet simultaneously expressed a desire to litigate the propriety of ACC's violations of the Automatic Stay and the Stay Violation Orders before this Court.  Mr. Crabtree concluded the ACC Response by doubling-down on the Self-Help Actions.  He demanded payment

8

on pre-petition amounts purportedly owed by the Debtors to ACC and extolled the prudence of the Self-Help Actions.

22.     As of the time of filing this Motion, ACC has failed and refused to return the Equipment to the Debtors despite their counsel's best efforts to resolve these issues without involvement of the Court.

## BASIS FOR RELIEF

### A.     The Automatic Stay Applies to ACC and the Self-Help Actions

23.     Upon the filing of a bankruptcy petition, "an automatic stay operates as a self-executing injunction" that prevents creditors from pursuing collection efforts against the debtor or the property of the debtor's estate for pre-petition debts. *Campbell v. Countrywide Home Loans, Inc.*, 545 F.3d 348, 354–55 (5th Cir. 2008). The purpose of the automatic stay is to provide debtors with a "breathing spell from [their] creditors" and channel competing claims for a debtor's assets into a single forum to provide a platform for the debtor's reorganization. *Browning v. Navarro*, 743 F.2d 1069, 1083 (5th Cir. 1984) (citations omitted); *see also In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 989 (2d Cir. 1990); *In re Timbers of Inwood Forest Assocs., Ltd.*, 793 F.2d 1380, 1409 (5th Cir. 1986), *on reh'g*, 808 F.2d 363 (5th Cir. 1987), *aff'd sub nom. United Sav. Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365 (1988) (similar).

24.     Given its fundamental importance to a debtor's reorganization, courts broadly construe the Bankruptcy Code's automatic stay provisions. *See In re Padilla*, 379 B.R. 643, 658 (Bankr. S.D. Tex. Aug. 3, 2007). The application of the protections afforded a debtor by section 362 of the Bankruptcy Code is automatic upon the filing of a chapter 11 petition. *See* 11 U.S.C. § 362(a)(3), 362(a)(6) ("[A] petition filed under section 301 . . . of this title . . . operates as a stay, applicable to all entities, of, [among other things,] (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate; . . . (6)

9

any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title . . . .").

25.     On the Petition Date, the Automatic Stay went into effect, forbidding, *inter alia*, all actions by creditors and other parties, such as ACC, to exercise control over the Debtors' property, including property in which the Debtors held a possessory interest, or to seek to recover upon a claim against the Debtors arising before the Petition Date.  ACC knew or should have known of the existence of the Automatic Stay when taking the Self-Help Actions because the ACC Agents were presented with a copy of the Stay Violation Order at such time.  By undertaking the Self-Help Actions, ACC took possession of property, the Equipment, in which the Debtors held at least a possessory interest on the Petition Date.  Additionally, undeterred by the Debtors' chapter 11 filing or this Court, ACC committed a further violation of the Automatic Stay by attempting to collect on a prepetition claim in the ACC Response.  As a result, the Self-Help Actions and the ACC Response violated the Automatic Stay.

**B.     ACC Should "Show Cause" as to Why It Is Not in Contempt of Court for Its Violations of the Automatic Stay.**

26.     This Court has authority to fashion appropriate remedies for violations of the Automatic Stay. See 11 U.S.C. § 105(a); *see also In re Noram Res., Inc.*, No. 08-38222, 2015 WL 5965654, at *4 (Bankr. S.D. Tex. Oct. 9, 2015) ("[T]he Court may invoke its civil contempt powers under § 105(a) to remedy violations of the automatic stay.") The Fifth Circuit Court of Appeals has established a three-part test for establishing an actionable violation of the stay: (1) the creditor must have known of the existence of the stay; (2) the creditor's acts must have been intentional; and (3) the creditor's acts must have violated the stay. *Young v. Repine (In re Repine)*, 536 F.3d 512, 519 (5th Cir. 2008). "Specific intent to violate the stay is not required. Only acts which violate

the stay need be intentionally committed." *In re MD Promenade, Inc.*, 2009 WL 80203, at \*13 (Bankr. N.D. Tex. Jan. 8, 2009).

27.     As set forth above, ACC, through its agents, was provided a copy of the Stay Violation Order, which the ACC Agents refused to accept despite having the opportunity, prior to engaging in the Self-Help Actions.  Moreover, ACC, though Mr. Crabtree, unambiguously rejected its obligations to comply with the Automatic Stay and the Stay Orders, despite admitted knowledge of the existence of the Debtors' Chapter 11 Cases.  ACC's assertions, through Mr. Crabtree, that it is in compliance with the law stands fundamentally at odds with the existence of the Automatic Stay.  It appears that ACC has gone out of its way to ignore its legal obligations, to the detriment of the Debtors and their stakeholders.  *Cf. In re Freemyer Indus. Pressure, Inc.*, 281 B.R. 262, 267 (Bankr. N.D. Tex. 2002) ("[O]nce a party is put on notice of a bankruptcy filing, he is under a duty to seek further information which should reveal the applicability and scope of the automatic stay.") (citing *Wagner v. Ivory (In re Wagner)*, 74 B.R. 898, 904 (Bankr. E.D. Pa. 1987)).  Moreover, the Debtors attempted on multiple occasions to engage amicably in a resolution of ACC's violations of the Automatic Stay (and the Stay Orders), which efforts were summarily rejected by ACC. Indeed, undeterred after receiving the Initial Demand, the Transcript Email, and copies of the Stay Orders, ACC, through Mr. Crabtree, again violated the Automatic Stay by attempting to collect prepetition amounts from the Debtors purportedly owed to ACC.  *See* 11 U.S.C. § 362(a)(6).

28.     As a result, the Debtors require intervention of this Court, which should enter the Order requiring ACC to show cause why the Court should not exercise its civil contempt powers to (i) coerce ACC into complying with the Automatic Stay by returning the Equipment and ceasing any further collection efforts and (ii) compensate the Debtors for their damages, including (but not

limited to) professional fees, costs, and expenses, as a result of the bad faith actions perpetrated by ACC.

**C.    ACC Intentionally and Willfully Violated Court Orders and is Subject to Compensatory and Coercive Sanctions**

29.    In addition to violating the Automatic Stay, ACC also concurrently violated the Stay Orders.  The Court's authority to enforce its own orders is plain. *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 1653-55 (2009). In the Stay Orders, the Court (i) restated, *inter alia*, the terms of the Automatic Stay and related provisions, and (ii) required any person or entity, including ACC, to return any property of the Debtors' estates taken in violation of the Automatic Stay within 48 hours of receipt of the Stay Violation Order.  As set forth above, ACC intentionally violated the Stay Orders when it took possession of the Equipment post-petition, following entry of the Stay Orders.  Although Mr. Crabtree disputes that the ACC Agents were presented with a copy of the Stay Violation Order when conducting the Self-Help Actions, it is indisputable that ACC has had actual knowledge of the Stay Orders since at least April 4, 2023, and has failed and refused to comply therewith since that date.   As of the filing of this Motion, well over 48 hours have passed since ACC was provided a copy of the Stay Orders.

30.    Section 105(a) of the Bankruptcy Code permits this Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  "Civil contempt can serve two purposes, either coercing compliance with an order or compensating a party who has suffered unnecessary injuries or costs because of contemptuous conduct." *Ingalls v. Thompson (In re Bradley)*, 588 F.3d 254, 263 (5th Cir. 2009) (citation omitted). The elements to establish civil contempt are "(1) that a court order was in effect, and (2) that the order required certain conduct by the respondent, and (3) that the respondent failed

DOCS_NY:47356.2 58614/002

to comply with the court's order." *Id.* (quoting *Fed. Deposit Ins. Corp. v. LeGrand*, 43 F.3d 163, 170 (5th Cir. 1995)).

31.    It is well established that bankruptcy courts possess civil contempt power. *In re White-Robinson*, 777 F.3d 792, 795 (5th Cir. 2015). "Bankruptcy Code provisions, Bankruptcy Rules and court orders may not be violated without recourse." *In re Rodriguez*, 517 B.R. 724, 729 (Bankr. S.D. Tex. 2014). Section 105(a) of the Bankruptcy Code provides bankruptcy courts broad authority to "take any action that is necessary or appropriate to prevent an abuse of process." *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 375 (2007) (internal quotations omitted). Bankruptcy courts must make a finding of bad faith to impose sanctions pursuant to their inherent authority, but "bad faith may be inferred." *VSP Labs, Inc. v. Hillair Capital Invs. LP*, 619 B.R. 883, 904 (N.D. Tex. 2020).

32.    The Fifth Circuit has held that an order "which compensates the debtor for damages suffered as a result of a creditor's violation of" a bankruptcy court order "was both necessary and appropriate to carry out the provisions of the bankruptcy code." *Placid Refin. Co. v. Terrebonne Fuel & Lube, Inc. (In re Terrebonne Fuel & Lube, Inc.)*, 108 F.3d 609, 613 (5th Cir. 1997). The Supreme Court has also held that a court's inherent power permits it to assess attorneys' fees against a party who has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991).

33.    Here, the Court should find that ACC acted in bad faith by disregarding the Stay Violation Order, failing to inquire in any respect regarding its legal obligations (and prohibitions), and refusing to work with Debtors' counsel to understand the issues implicated by the Stay Violation Order or the Debtors' chapter 11 filing. The statements made in and actions effectuated by the ACC Response alone demonstrate ACC's bad faith. Indeed, ACC committed an

13

independent violation of the Automatic Stay by attempting to collect a purported prepetition debt from the Debtors after receiving, the Stay Orders, Initial Demand, and Transcript Email. ACC clearly has no desire to act as a responsible corporate citizen and comply with its obligations.

34.     Moreover, the Self-Help Actions were acts to obtain control over property of the Debtors' estates in violation of, *inter alia*, the Automatic Stay and the Stay Orders, perpetrated with reckless and wonton disregard for the Stay Orders and the Automatic Stay. The Stay Orders' terms are patently clear, and yet ACC continues to dispute its obligation to comply therewith, despite ample opportunity. As a result, the Court should issues civil contempt sanctions against ACC in the form of (i) coercive sanctions designed to encourage ACC's compliance with the Stay Orders and the Automatic Stay and (ii) compensatory sanctions against ACC to remedy the damages sustained by the Debtors, including the incurrence of unnecessary professional fees and costs, as a result of ACC's bad faith conduct.

## EMERGENCY CONSIDERATION

35.     The Debtors request emergency consideration of the Motion no later than Wednesday, April 12, 2023. ACC's violations of the Automatic Stay and the Stay Orders remain ongoing, and the Debtors require the Equipment in the ordinary course of their operations. The Equipment is an important part of the Debtors' retail offerings at the Premises. Without the immediate return of the Equipment, the Debtors risk alienating customers and decreased revenue from the Premises, to the detriment of the Debtors' estates and their stakeholders. Moreover, the Debtors require immediate action to halt the disruptive effects of ACC's actions on their efforts to maximize value during these Chapter 11 Cases for the benefit of their stakeholders.

14

## RESERVATION OF RIGHTS

36.     Nothing contained herein is intended or shall be construed as (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' or any appropriate party-in-interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtors; (c) a waiver of any claims or causes of action which may exist against any creditor or interest holder; or (d) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy between the Debtors and any third party under section 365 of the Bankruptcy Code.

## NOTICE

37.     Notice of the hearing on the relief requested in this Motion will be provided by the Debtors in accordance and compliance with Bankruptcy Rules and Local Rules.  The Debtors will provide notice of this motion to the parties identified on the Debtors' Master Service List and to ACC.

*[Remainder of Page Intentionally Left Blank]*

15

## <u>CONCLUSION</u>

**WHEREFORE**, the Debtors respectfully request that this Court enter appropriate orders granting the relief requested herein and granting such other and further relief as is just and proper under the circumstances.

Dated: April 7, 2023

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Benjamin L. Wallen*

Michael D. Warner (SBT 00792304)
Steven W. Golden (SBT 24099681)
Benjamin L. Wallen (SBT 24102623)
440 Louisiana Street, Suite 900
Houston, TX 77002
Telephone: (713) 691-9385
Facsimile:  (713) 691-9407
mwarner@pszjlaw.com
sgolden@pszjlaw.com

-and-

Jeffrey N. Pomerantz (admitted *pro hac vice*)
Jeffrey W. Dulberg (admitted *pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile:  (310) 201-0760
jpomerantz@pszjlaw.com
jdulberg@pszjlaw.com

*Proposed Counsel to the Debtors and Debtors in Possession*

**Certificate of Accuracy**

I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

*/s/ Benjamin L. Wallen*
Benjamin L. Wallen

**Certificate of Service**

I certify that on April 7, 2023, I caused a copy of the foregoing document to be served via the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Benjamin L. Wallen*
Benjamin L. Wallen