David R. Gibson
SBN 07861220
david.gibson@gibsonlawgroup.com
15400 Knoll Trail Dr., Suite 205
Dallas, Texas 75248
(817) 769-4044
(817) 764-4313 (facsimile)

**COUNSEL FOR CREDITOR SAMNOSH, LLC**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| IN RE: MOUNTAIN EXPRESS OIL COMPANY, | § § § § § | CASE NO. 23-90147<br><br>CHAPTER 11 |
| *Debtor* | | |

**SAMNOSH LLC'S MOTION TO COMPEL REJECTTION OF EXECUTORY CONTRACT**
**AND NOTICE OF OBJECTION DEADLINE**

> **NOTICE: This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 14 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing.**
>
> **Represented parties should act through their attorney.**

Samnosh LLC moves the Court to compel Debtor Mountain Express Oil Company ("Debtor") to reject its petroleum products supply agreement with Movant under Fed. R. Bankr. P. 6006(a) and (c) because the contract is void or, in the alternative, because Debtor is in material breach and its assumption would cause serious economic harm for Movant.

## Facts

1. Samnosh LLC, is the owner of a fuel station and convenience store located at 2439 Walnut Hill Lane, Dallas, Texas 75229 (the "Store").

2. On December 18, 2018, Movant entered a petroleum products supply agreement (the "Agreement") with Mountain Express Oil Company. Under the Agreement, Debtor was to provide Movant's entire fuel capacity requirements, major oil company branding for the Store, and credit card merchant services for the Store. The Agreement is attached hereto as Exhibit A.

3. From minute one Debtor failed to perform its material obligations under the Agreement. Debtor delayed 28 months before branding provided the Store and, to this very day, has been regularly and substantially delinquent in making fuel deliveries. Because the Store was forced to sell unbranded fuel (a huge competitive disadvantage) and did not have an adequate and reliable supply of fuel, Movant lost sales and its regular customer base dwindled. See the 2017-2018 Fuel Purchase Summary and the 2019-2020 Fuel Purchase Summary showing Movant's fuel sales before and after the Agreement attached hereto as Exhibits B & C, respectively.

4. Branding. Debtor was to pay for and install branding of the Movant's store with a "brand…associated with high quality service and products…" See Exhibit A, Sec. 3.

5. Schedule 3 of the Agreement states that the initial branding of the Movant was to be 76 or Exxon. Because Debtor failed to provide branding as agreed, Movant had to brand the

Movant with "76" logos at its own expense in June 2019. Debtor finally did provide Valero branding for the Movant in April of 2021, *28 months after entering into the Agreement*.

6.  <u>Fuel Delivery</u>. The Agreement is a requirements contract. The Agreement provides that "[Debtor] agrees to sell to customer…such quantities of [Debtor's] petroleum and other products as may be necessary *to meet the customer demand* for motor fuel products at the Location." *See* <u>Exhibit A</u>, Sec. 2(a).

7.  The Agreement further requires that Debtor "will fill all orders with reasonable promptness."

8.  From the beginning of the term of the Agreement, Debtor regularly failed to provide Movant's orders with reasonable promptness, resulting in Movant not having fuel for days at a time. It is essential for a convenience store to always have fuel, as it is the principal driver of inside sales. Moreover, when a c-store is consistently out of fuel, it loses customers who never return, going across the street or around the corner instead.

9.  Because fuel order delivery was sporadic at best, Movant was deprived of fuel for significant periods of time resulting in an immediate loss of sales and a long-term loss of customers, *i.e.*, goodwill.

10. <u>Merchant Services</u>. Under section 8 of the Agreement, Debtor has the sole right to provide the credit card network for the fuel pumps and the in-store credit card sales. The proceeds of those sales go directly into Debtor's account and are only to be credited to future fuel sales:

> Invoices from credit card sales shall be credited and paid to [Debtor] in accordance with fuel jobber (wholesaler) industry standards; provided that <u>credit cards [*sic*] sales shall not be repaid to Customer but held on Customer's account as additional credit against fuel purchases.</u>

<u>Exhibit A</u>, Sec. 8.

11. In typical jobber/c-store arrangements, proceeds from credit card sales are paid back to the c-store. Under the present Agreement, however, Debtor indefinitely retains all funds received for credit card purchases leaving Movant to operate a business on the meager cash sales it is able to muster.

12. Essentially, *Movant receives no benefit from the Agreement*, and even revenue from sales that are unrelated to fuel are paid to Debtor. *This is an untenable business situation, that will put Movant out of business if allowed to continue*.

### Request to Compel Rejection

13. Movant requests that the court compel Debtor to reject the Agreement.

14. The Agreement is an executory contract as defined by §365 of the Bankruptcy Code. The terms of the Agreement render it void for unconscionability, lack of consideration, and fraud. Even if the contract is not void for the foregoing reasons, Debtor has materially breached by failing to provide branding, failing to provide Movant's fuel capacity requirements, and by not paying net proceeds of credit card transactions of the Movant.

15. The foregoing breaches have created substantial economic harm for Movant. Specifically, Debtor's failure to provide branding and Movant's fuel capacity requirements have caused the loss of sales and the loss of long-term customers. *See* Exhibits B & C.

16. Debtor has failed to provide adequate assurances that it will be able to remedy its breaches; Debtor's inability to meet Movant's capacity requirements is ongoing, and it refuses to pay net proceeds for credit card sales to Movant.

17. Movant will not have adequate revenue to support its operations if Debtor is allowed to continue retaining all of Movant's credit card sales.

**A. The Court should compel rejection because the Agreement is void.**

18. The Agreement is void and unenforceable because it is unconscionable, and because there is a lack of consideration.

19. <u>Unconscionability</u>. Under the Uniform Commercial Code of Georgia, a contract for the sale of goods is void if it is "unconscionable":

> If the court as a matter of law finds the contract **or any clause of the contract** to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

OCGA § 11-2-302(1) (emphasis added).

20. While the UCC does not provide a definition for "unconscionability," the Georgia Supreme Court has stated that there are two types of unconscionability: (1) "procedural unconscionability," whereby there is a disparity between the sophistication, competency, or bargaining position of the parties; and (2) "substantive unconscionability," whereby the court considers the terms of the contracts themselves. *See Technologies, Inc. v. Nelson*, 478 S.E.2d 769, 771 (Ga. 1996).

21. In this case, the Agreement is substantively unconscionable. When evaluating the substantive unconscionability of a contract, the courts look to the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns. *Id* at 772.

22. The terms of a contract are unconscionable when, "one side or the other is to be penalized by the enforcement of the terms of a contract so unconscionable that ***no decent, fair minded person would view the ensuing result without being possessed of a profound sense of injustice***, that equity will deny the use of its good offices in the enforcement of such unconscionability." *Id.* at 775.

23. The Agreement obligates Movant to provide a storefront, convenience store inventory, equipment, and personnel; and Debtor has the exclusive right to sell its fuel products and to collect *all* credit card sales for the Movant, including sales of non-fuel inventory sold inside the c-store, or what is known in the industry as "inside sales."

24. Essentially, Debtor gets a free fuel depot where it sells fuel and collects all sales of the Movant, with no obligation to provide compensation for its rights or even to reimburse Movant for its inside sales:

> Invoices from credit card sales shall be credited and paid to [Debtor] in accordance with fuel jobber (wholesaler) industry standards; provided that <u>credit cards [sic] sales shall not be repaid to Customer but held on Customer's account as additional credit against fuel purchases.</u>

<u>Exhibit A</u>, Sec. 8 (emphasis added).

25. Clearly, the terms of the Agreement are such that "no decent, fair minded person would view the ensuing result without being possessed of a profound sense of injustice" from the beginning.

26. <u>Consideration</u>. Under the Georgia Code, a contract is void without consideration. OCGA § 13-3-40(a).

27. Under the Agreement, Debtor has the exclusive right to sell fuel to Movant and the exclusive right to receive revenue from the sale of not only fuel, but the sale of the non-fuel inventory of the Movant. *See* <u>Exhibit A</u>, Sec. 8. Additionally, Debtor has the right to dictate how the Movant conducts business. *Id. at* Sec. 3.

28. Further, the Agreement does not require Debtor to make *any* payments to Movant at *any* time. And any funds received in excess of the fuel purchase requirements of the Movant are not credited to Movant at any time. Movant receives no benefit from the Agreement. Accordingly, the Agreement is void for want of consideration.

29. <u>Fraud</u>. Even if the court finds that there is *some* consideration, "the inadequacy is so great that it is a strong circumstance to evidence a fraud." OCGA § 13-3-46. Accordingly, the Agreement is void for being fraudulent on its face.

30. For the foregoing reasons, the court find the contract void and unenforceable and compel Debtor to reject the Agreement.

**B. The Court should deny assumption because Debtor is in breach of the Agreement.**

31. In the alternative, Movant requests that the court compel rejection of the Agreement because Debtor is in breach.

32. On December 18, 2018, Movant and Debtor executed a written contract. *See* <u>Exhibit A</u>. The contract provided that Debtor would: 1) supply Movant's fuel and petroleum product capacity requirements; 2) provide major oil company branding of the Movant; and, 3) provide merchant services for the Store. In exchange, Movant was to send all of its credit card sales receipts to Debtor to be credited towards future fuel purchases.

33. Movant performed its contractual obligations as best it could, considering Debtor's material failure to perform.

34. Debtor breached the contract by continuously failing to provide Movant's fuel requirements. Debtor has never consistently met Movants capacity fuel requirements, and its failure to do so has continued after petitioning the court for Chapter 11 relief.

35. Debtor's breach caused injury to Movant. Specifically, Movant has lost sales on an ongoing basis due to not having fuel to sell to its customers, and it has lost regular customers who might otherwise have purchased fuel and convenience Movant products from Movant. *See* <u>Exhibits B & C</u>.

36. Movant requests that the court compel Debtor to reject the Agreement.

**Prayer**

For these reasons, Movant asks that Debtor be cited to appear and answer and that the court compel rejection of the Agreement.

Respectfully submitted,

THE GIBSON LAW GROUP, P.C.

*By*: _____
David R. Gibson
SBN 07861220
david.gibson@gibsonlawgroup.com
Reagan R. Herod
SBN 24068030
reagan.herod@gibsonlawgroup.com

15400 Knoll Trail Dr., Ste. 205
Dallas, Texas 75248
(817) 769-4002
(817) 764-4313 Facsimile

**COUNSEL FOR SAMNOSH, LLC**

**CERTIFICATE OF SERVICE**

On this 14th day of April 2023, a true and correct copy of the foregoing instrument was served through the Court's CM/ECF system on all parties who receive such notice.

_____
David R. Gibson

## LOCAL RULE 4001-1(a) CERTIFICATE OF CONFERENCE

I hereby certify that Movant has conferred with opposing counsel on the requested relief, and the parties hereto were not able to come to an agreement on the requested relief.

*/s/ David R. Gibson*
David R. Gibson