IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |
|---|---|
| In re:<br><br>MOUNTAIN EXPRESS OIL COMPANY, et al.,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 23-90147 (DRJ)<br><br>(Jointly Administered) |

**DEBTORS' APPLICATION FOR AUTHORITY TO (I) EMPLOY AND RETAIN FTI CONSULTING, INC., (II) DESIGNATE MICHAEL HEALY TO SERVE AS CHIEF RESTRUCTURING OFFICER, AND (III) PROVIDE ADDITIONAL PERSONNEL FOR DEBTORS**

> **IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE ELECTRONICALLY AT HTTPS://ECF.TXSB.USCOURTS.GOV WITHIN TWENTY-ONE (21) DAYS FROM THE DATE THIS APPLICATION WAS FILED. IF YOU DO NOT HAVE ELECTRONIC FILING PRIVILEGES, YOU MUST FILE A WRITTEN OBJECTION THAT IS ACTUALLY RECEIVED BY THE CLERK WITHIN TWENTY-ONE (21) DAYS FROM THE DATE THIS APPLICATION WAS FILED. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state the following in support of this application (this "Application"):

**RELIEF REQUESTED**

1. The Debtors seek entry of an order (the "Order"), substantially in the form attached hereto, authorizing the Debtors to (i) employ and retain FTI Consulting, Inc. ("FTI") to provide the Debtors with a Chief Restructuring Officer ("CRO") as well as additional supportive staff to

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at www.kccllc.net/mountainexpressoil. The location of Debtor Mountain Express Oil Company's principal place of business and the Debtors' service address in these chapter 11 cases is 3650 Mansell Road, Suite 250, Alpharetta, GA 30022.

assist the CRO ("Hourly Temporary Staff") and (ii) designate Michael Healy as the Debtors' CRO (together with the Hourly Temporary Staff, the "FTI Professionals") pursuant to the terms of the engagement letter by and among the Debtors and FTI, dated as of March 6, 2023 (the "Engagement Letter").[2] In support of this application, the Debtors rely upon the declaration of Michael Healy (the "Healy Declaration"), a copy of which is attached hereto as **Exhibit A**.

## JURISDICTION AND VENUE

2. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of Texas*, dated May 24, 2012 (the "Amended Standing Order"). This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). The Debtors confirm their consent to the entry of a final order by the Court.

3. Venue is proper pursuant to 28 U.S.C. § 1408.

4. The bases for the relief requested herein are sections 327(a), 328(a), and 1107 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), rules 2014-1 and 2016-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules"), and the Procedures for Complex Cases in the Southern District of Texas (the "Complex Case Procedures").

## BACKGROUND

5. On March 18, 2023 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On March 20, 2023, the Court entered an order

---

[2] The Engagement Letter is attached as Exhibit 1 to the Healy Declaration.

authorizing the joint administration and procedural consolidation of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b) and Bankruptcy Local Rule 1015-1. Docket No. 33. The Debtors are operating their businesses and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these chapter 11 cases.

6. On April 4, 2023, the United States Trustee for Region 7 (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors (the "Committee") consisting of the following three members: (i) The Necessity Retail REIT, Inc.; (ii) Total Image Solutions, LLC; and (iii) Coca-Cola Bottling Company United, Inc. *See* Docket No. 202.

7. Founded in 2000 and based in Alpharetta, Georgia, the Debtors are a recognized leader in the fuel distribution and retail convenience industry. As one of the largest fuel distributors in the American South, the Debtors served 828 Fueling Centers and twenty-seven (27) Travel Centers across twenty-seven (27) states as of the Petition Date. The Debtors enjoy trusted relationships with every major oil company including ExxonMobil, BP, Shell, Chevron, Texaco, and Sunoco and have obtained Regal Status with Chevron, Platinum Status with ExxonMobil, and is the largest Pilot Dealer in the United States. Since 2013, the Debtors have distributed over 1.1 billion gallons of fuel.

8. Additional information regarding the Debtors' business and capital structure and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Michael Healy in Support of Debtors' Chapter 11 Petitions and First Day Relief* [Docket No. 57] (the "First Day Declaration").[3]

---

[3] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

DOCS_NY:47201.6

**FTI'S QUALIFICATIONS**

9. The Debtors understand that FTI has a wealth of experience in providing interim management services and enjoys an excellent reputation for services it has rendered in large and complex chapter 11 cases on behalf of debtors throughout the United States.

10. FTI professionals have provided strategic advice to debtors, creditors, bondholders, investors, and other entities in numerous chapter 11 cases of similar size and complexity to the Debtors' chapter 11 cases. FTI has provided financial and/or crisis management services in numerous large cases in this district. *See, e.g., In re Diamond Sports Group*, Case No. 23-90116 (Bankr. S.D. Tex.) (retention application to be filed); *In re SpeedCast International Limited*, Case No. 20-32243 (Bankr. S.D. Tex.); *In re HONX, Inc.*, No. 22-90035 (Bankr. S.D. Tex.); *Party City Holdco, Inc.*, Case No. 23-90005 (Bankr. S.D. Tex.); *In re Entrust Energy, Inc.*, No. 21-31070 (Bankr. S.D. Tex.); *In re GWG Holdings, Inc.*, Case No. 22-90032 (Bankr. S.D. Tex.); *In re Serta Simmons Bedding, LLC*, Case No. 23-90020 (Bankr. S.D. Tex.); *In re Sungard Availability Services Ltd.*, Case No. 22-90026 (Bankr. S.D. Tex.); *In re Cineworld Group PLC*, Case No. 22-90168 (Bankr. S.D. Tex.); *In re Talen Energy Supply*, Case No. 22-90054 (Bankr. S.D. Tex.); *In re Neighbors Legacy Holdings, Inc.*, Case No. 18-33836 (Bankr. S.D. Tex.); *In re Pipeline Health System, LLC*, Case No. 22-90291 (Bankr. S.D. Tex.); *In re Brazos Electric Power Cooperative, Inc.*, Case No. 21-30725 (Bankr. S.D. Tex.); and *In re IEH Auto Parts Holding LLC, et al.*, Case No. 23-90054 (Bankr. S.D. Tex.).

11. Michael Healy, a Senior Managing Director of FTI and the proposed CRO for the Debtors, has extensive experience which includes advising companies, creditors, shareholders and other interested parties on restructuring transactions both in Chapter 11 and in non-bankruptcy driven resolutions. He has industry expertise in commercial products, general industrial, financial

services, healthcare, manufacturing and retail, among other areas. Examples of Mr. Healy's experience include leading engagements where he has represented companies and creditors in formal and informal restructurings and advising clients, including companies and creditors, on structuring, negotiating and refinancing various forms of debt and equity. Mr. Healy has served as Chief Restructuring Officer and Chief Financial Officer to distressed companies and developed and implemented cost reduction and cash flow improvement initiatives. In addition, he has valued and sold companies in and outside of Chapter 11, advised acquirers of such companies, and identified, analyzed and recommended strategic and financial alternatives.

12. A representative list of Mr. Healy's client experience includes All American Group (Coachman), CHC Group, Dayton Superior, Diagnostic Imaging Group, First Trade Union Bank, Foodarama Supermarkets, HMX Group, Integrated Electrical, Jobson Medical Information, Linens 'n Things, Malden Mills Industries, Pathfinder Bancorp, Penn Traffic Co., PRACS Institute, Precision Parts International, Reichhold Industries, Remedy Health Media, Signstrut Ltd., St. Louis Post-Dispatch, Transcentra Inc., USG, World Health Alternatives, W.R. Grace and Vertis Communications.

13. The FTI Professionals who will work on this matter have substantial expertise in the areas discussed above, and, if approved, will provide services to the Debtors in accordance with the Engagement Letter and applicable orders of the Court. The FTI Professionals will work closely with the Debtors' management and professionals throughout the reorganization process. By virtue of the expertise of its restructuring personnel, FTI is well qualified to provide services to and represent the Debtors' interests in these chapter 11 cases.

14. The Debtors seek the retention of FTI because of FTI's experience and reputation for providing restructuring services in connection with large chapter 11 cases. Furthermore, FTI

performed significant prepetition work for the Debtors and, as a result, has acquired knowledge of the Debtors and their businesses and familiarity with the Debtors' financial affairs, capital structure, operations, and related matters. Likewise, in providing prepetition services to the Debtors, FTI's professionals have worked closely with the Debtors' management and their other advisors. Accordingly, FTI has experience, expertise, and specifically relevant knowledge regarding the Debtors that will assist it in providing effective and efficient services in these chapter 11 cases. The Debtors submit that the designation of Michael Healy as CRO and the retention of FTI on the terms and conditions set forth herein are necessary and appropriate, in the best interests of the Debtors' estates, creditors, and all other parties in interest, and should be granted in all respects.

## SERVICES TO BE RENDERED

15. On or about March 6, 2023, FTI entered into the Engagement Letter to provide financial advisory services to the Debtors in connection with potential chapter 11 cases and to assist the Debtors in their restructuring. Under the Engagement Letter, FTI also agreed to provide interim management services to the Debtors through the designation of Michael Healy as the Debtors' CRO, reporting directly to the Board of Directors of the Debtors (the "Board") as well as to provide additional personnel to assist the Debtors in their restructuring. Generally, the CRO and FTI shall perform activities and services to assist the Debtors throughout the Debtors' chapter 11 process. Working collaboratively with the Debtors' senior management team, CEO, and other professionals, Mr. Healy will assist the Debtors in evaluating and implementing strategic and tactical options through the restructuring process. In addition to the ordinary course duties of a CRO, FTI Professionals may provide the following services:

- Assist with preparation of voluntary petitions and exhibits for each entity that may commence a case under chapter 11 of the Bankruptcy Code;

6

- Assist with preparation of first day motions;

- Develop the Debtors' matrix of creditors;

- Assist the Debtors in the development or refinement of a 13/26-week cash flow forecast and any associated debtor-in-possession financing forecast;

- Provide the Debtors with strategic communication services in connection with the overall restructuring;

- Advise the Debtors in other pre-filing operational preparedness activities including accounting cut-off and payment controls among others;

- Assist with development of monthly operating reports and any other necessary financial disclosures required in connection with any chapter 11 cases for the Debtors;

- Identify accounting system capabilities for pre/post filing cut off and on-going implementation of cut-off processes;

- Prepare Statements of Financial Affairs and Schedules of Assets and Liabilities for each Debtor;

- Develop and monitor claims data base including analysis of claims for accuracy, entity and classification;

- Assist with the development of emergence accounting protocols and statement; and

- Assist the Debtors with updating and monitoring support for a 13/26-week cash flow forecast and associated DIP financing forecast.

16. In addition to the scope of work detailed above, FTI is available to assist in all aspects of a restructuring including the development or substantial update of the long-term business plan, should the Company request these services of FTI.

### NO DUPLICATION OF SERVICES

17. The services provided by Mr. Healy and FTI will complement, not duplicate, the services to be rendered by any other professional retained in these chapter 11 cases.

### TERMS OF RETENTION

18. FTI's decision to accept this engagement is conditioned upon its ability to be retained in accordance with its customary terms and conditions of employment, compensated for

7

its services, and reimbursed for the out-of-pocket expenses it incurs in accordance with its customary billing practices, as set forth in the Engagement Letter (the "Fee and Expense Structure").

19. Pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, the Debtors may retain FTI on reasonable term and conditions. The terms and conditions set forth in the Engagement Letter, which are similar to the terms and conditions FTI offers to similar clients for similar services, are reasonable.

20. FTI's current standard hourly rates for 2023, subject to periodic adjustments, are as follows:

| Title | Hourly Rate |
| --- | --- |
| Senior Managing Directors | $1,125 - $1,495 |
| Directors / Senior Directors / Managing Directors | $835 - $1,055 |
| Consultants/Senior Consultants | $475 - $750 |
| Administrative / Paraprofessionals | $175 - $325 |

21. FTI reviews and revises its billing rates semi-annually. FTI has agreed to provide ten (10) business days' notice to the Debtors, the U.S. Trustee, and any statutory committee before any increases in the hourly rates set forth in the Application or the Engagement Letter are charged to the Debtors. In addition, changes in applicable hourly rates will be noted on the invoices for the first time period in which the revised rates become effective.

22. In addition to compensation for professional services rendered by FTI Professionals, FTI will seek reimbursement for reasonable, necessary, and documented out-of-pocket expenses incurred in connection with these chapter 11 cases, including transportation costs, lodging, and meals.

23. The Fee and Expense Structure is consistent with and typical of compensation arrangements entered into by FTI and other comparable firms that render similar services under similar circumstances. The Debtors believe that the Fee and Expense Structure is reasonable, market-based, and designed to compensate FTI fairly for its work and to cover fixed and routine overhead expenses.

24. To the extent FTI uses the services of independent contractors (the "Contractors") in these chapter 11 cases, FTI shall: (a) pass through the cost of such Contractors to the Debtors at the same rate that FTI pays the Contractors; (b) seek reimbursement for actual costs only; (c) ensure that the Contractors are subject to the same conflict checks as required for FTI; and (d) file with the Court such disclosures required by Bankruptcy Rule 2014.

25. To the extent FTI requires the services of its international divisions or personnel from specialized practices, the standard hourly rates for that international division or specialized practice will apply.

26. FTI will submit monthly invoices to the Debtors, and the Debtors request authority to pay, in the ordinary course of business, all reasonable amounts invoiced by FTI for fees and expenses.

27. The Debtors understand that FTI intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these chapter 11 cases consistent with the Fee and Expense Structure, subject to this Court's approval and in compliance with applicable provisions of the Bankruptcy Code, including sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and any other applicable procedures and orders of this Court.

28. FTI, as well as Mr. Healy, will also maintain records in support of any fees (in 1/10th of an hour increments), costs, and expenses incurred in connection with services rendered in these chapter 11 cases. Records will be arranged by category and nature of the services rendered and will include reasonably detailed descriptions of those services provided on behalf of the Debtors. FTI's applications for compensation of fees and reimbursement of expenses will be paid by the Debtors pursuant to the terms of the Engagement Letter and any procedures established by this Court.

29. To the best of the Debtors' knowledge, there is no agreement or understanding between FTI and any nonaffiliated person or entity for sharing compensation received, or to be received, for services rendered in connection with the Debtors' chapter 11 cases. The Fee and Expense Structure is consistent with and typical of compensation arrangements entered into by FTI and other comparable firms that render similar services under similar circumstances. The Fee and Expense Structure is reasonable, market based, and designed to compensate FTI fairly for its work and to cover fixed and routine overhead expenses. Thus, the Fee and Expense Structure is fair and reasonable under the standards set forth in section 328(a) of the Bankruptcy Code. The U.S. Trustee will retain the right to object to the compensation to be paid to FTI pursuant to the Engagement Letter based on the reasonableness standard provided for in section 330 of the Bankruptcy Code.

30. Pursuant to the Engagement Letter, FTI received a retainer in the total amount of $350,000 from the Debtors on March 17, 2023 (the "Retainer"). According to FTI's books and records, during the ninety (90) days before the Petition Date, the Debtors paid FTI $1,125,000 in the aggregate for professional services performed and expenses incurred, including the Retainer and advanced payments. The Debtors do not owe FTI any sums for prepetition services.

**FTI'S DISINTERESTEDNESS**

31. To the best of the Debtors' knowledge, information, and belief, and except to the extent disclosed herein and in the Healy Declaration, FTI (a) is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, (b) has no connection with the Debtors, their creditors, or other parties in interest, or the attorneys or accountants of the foregoing, or the U.S. Trustee or any person employed by the U.S. Trustee; and (c) does not hold any interest adverse to the Debtors' estates.

32. As set forth in further detail in the Healy Declaration, FTI has certain connections with creditors, equity security holders, and other parties-in-interest in these chapter 11 cases. All of these matters, however, are unrelated to these chapter 11 cases. FTI does not believe that any of these matters represent an interest materially adverse to the Debtors' estates or otherwise create a conflict of interest regarding the Debtors or these chapter 11 cases.

33. To the extent that any new relevant facts or relationships bearing on the matters described herein during the period of FTI's retention are discovered or arise, Debtors are advised that FTI will use reasonable efforts to promptly file a supplemental declaration.

**INDEMNIFICATION**

34. The Engagement Letter contains standard indemnification language with respect to FTI's services including, without limitation, an agreement by the Debtors to indemnify FTI and its affiliates, partners, directors, officers, employees and agents, as well as Mr. Healy (each, an "FTI Party") from and against all claims, liabilities, losses, expenses, and damages arising out of or in connection with the engagement of FTI that is the subject of the Engagement Letter, except to the extent caused by gross negligence, willful misconduct, or fraud of any FTI Party.

35. The indemnification provisions contained in the Engagement Letter (the "Indemnification Provisions") are customary and reasonable for FTI and comparable firms providing financial advisory services. The terms and conditions of the Indemnification Provisions were negotiated by the Debtors and FTI at arm's length and in good faith. The provisions contained in the Engagement Letter, viewed in conjunction with the other terms of FTI's proposed retention, are reasonable and in the best interest of the Debtors, their estates, and creditors in light of the fact that the Debtors require FTI's services to successfully reorganize.

36. Notwithstanding the foregoing, FTI understands that the Indemnification Provisions shall apply only to such FTI employees not serving in executive officer positions and that the indemnification of any persons serving as executive officers shall be on the same terms as provided to the Debtors' other officers and directors under the corporate bylaws and applicable state law, along with insurance coverage under the Debtors' directors and officers insurance policy. The indemnification terms herein supersede and replace any provision of the Engagement Letter related to the indemnification of any executive officers including, but not limited to, the applicable provisions of Section 6 of the Standard Terms and Conditions of the Engagement Letter.

37. The Debtors request that with respect to any persons not serving in executive officer positions, this Court approve the Indemnification Provisions as set forth in the Engagement Letter.

## BASIS FOR RELIEF

38. In consideration of the size and complexity of their businesses, the Debtors seek to engage FTI to provide Mr. Healy to serve as the Debtors' CRO and to provide the FTI Professionals, effective as of the Petition Date, under section 327(a) of the Bankruptcy Code, which provides that a debtor is authorized to employ professional persons "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist

12

the [Debtor] in carrying out the [Debtor's] duties under this title." 11 U.S.C. § 327(a). Section 1107(b) of the Bankruptcy Code elaborates upon sections 101(14) and 327(a) of the Bankruptcy Code in cases under chapter 11 of the Bankruptcy Code and provides that "a person is not disqualified for employment under section 327 of [the Bankruptcy Code] by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case."

39. The Debtors seek approval of the Fee and Expense Structure and the Engagement Letter pursuant to section 328(a) of the Bankruptcy Code, which provides, in relevant part, that the Debtors "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a). Section 328 of the Bankruptcy Code permits the compensation of professionals, including consultants, on flexible terms that reflect the nature of their services and market conditions. As the United States Court of Appeals for the Fifth Circuit recognized in *In re Nat'l Gypsum Co.*, 123 F.3d 861, 862 (5th Cir. 1997):

> Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done. That uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court award to professional consultants "reasonable compensation" based on relevant factors of time and comparable costs, etc. Under present § 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

123 F.3d at 862 (footnote omitted).

40. Bankruptcy Rule 2014 requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for

13

> compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other Party-in-Interest , their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014.

41. The Fee and Expense Structure in the Engagement Letter sets forth reasonable terms and conditions of employment and should be approved under section 328(a) of the Bankruptcy Code. The Fee and Expense Structure adequately reflects: (a) the nature of the services to be provided by FTI; and (b) fee and expense structures and indemnification provisions typically utilized by FTI and other leading financial advisory and consulting firms. In addition, FTI is "disinterested" and all of its fees and expenses are subject to approval of the Court in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and further orders of the Court.

42. The retention of FTI and the services of Mr. Healy as CRO are in the best interests of the Debtors and their estates and is a sound exercise of the Debtors' business judgment. As set forth above, Mr. Healy has extensive experience working with many companies undertaking restructuring efforts, and the FTI Professionals are well qualified and equipped to assist the Debtors. In providing prepetition services to the Debtors, FTI gained experience, expertise, and specifically relevant knowledge regarding the Debtors' business that will assist it in providing effective and efficient services in these chapter 11 cases. Accordingly, the retention of FTI on the terms set forth herein and in the Engagement Letter is in the best interests of all parties in interest in these chapter 11 cases.

43. This Application is filed within thirty (30) days of the Petition Date and, pursuant to Bankruptcy Local Rule 2014-1 and paragraph 47 of the Complex Case Procedures, the Application is deemed contemporaneous with the Petition Date and entitled to relief effective as of

the Petition Date. *See* Local Bankr. R. 2014-1(b)(1) ("If an application for approval of the employment of a professional is made within 30 days of the commencement of that professional's provision of services, it is deemed contemporaneous."); Complex Case Procedures ¶ 47.

## NOTICE

44. Notice of the hearing on the relief requested in this Application will be provided by the Debtors in accordance and compliance with Bankruptcy Rules 4001 and 9014, as well as the Local Rules, and is sufficient under the circumstances. The Debtors will provide notice to parties-in-interest, including on the Debtors' Master Service List.

## CONCLUSION

WHEREFORE, the Debtors request that the Court enter the Orders granting the relief requested herein and such other and further relief as may be just and proper under the circumstances.

Dated: April 14, 2023                                          **MOUNTAIN EXPRESS OIL COMPANY, et al.**

By: */s/ Turjo Wadud*
    Turjo Wadud
    Chief Executive Officer

15

## **Certificate of Service**

I certify that on April 14, 2023, I caused a copy of the foregoing document to be served via the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Michael D. Warner*
Michael D. Warner