```
                    UNITED STATES BANKRUPTCY COURT
                  SOUTHERN DISTRICT OF TEXAS (HOUSTON)

                                      .
IN RE:                                .  Case No. 23-90147
                                      .  Chapter 11
MOUNTAIN EXPRESS OIL COMPANY,         .
et al.,                               .  515 Rusk Street
                                      .  Houston, TX 77002
                                      .
                      Debtors.        .  Wednesday, April 12, 2023
                                      .  12:01 p.m.
. . . . . . . . . . . . . . . . . . . .


                  TRANSCRIPT OF SHOW CAUSE HEARING
               BEFORE THE HONORABLE DAVID R. JONES
                UNITED STATES BANKRUPTCY COURT JUDGE


APPEARANCES:

For the Debtor:            Pachulski Stang Ziehl & Jones LLP
                           By:  BENJAMIN WALLEN, ESQ.
                           440 Louisiana Street, Suite 900
                           Houston, TX 77002
                           (713) 691-9385

For Ada Coca-Cola
Bottling Company:          Crowe & Dunlevy
                           By:  CHRISTOPHER M. STAINE, ESQ.
                           2525 McKinnon Street, Suite 425
                           Dallas, TX 75201
                           (214) 420-2143

APPEARANCES CONTINUED.

Audio Operator:            Courtroom ECRO Personnel

Transcription Company:     Access Transcripts, LLC
                           10110 Youngwood Lane
                           Fishers, IN 46048
                           (855) 873-2223
                           www.accesstranscripts.com



    Proceedings recorded by electronic sound recording,
transcript produced by transcription service.
```

```
APPEARANCES (Continued):

For the Official            McDermott Will & Emery LLP
Committee of Unsecured      By:  CHARLES R. GIBBS, ESQ.
Creditors:                  250 North Harwood Street, Suite 1900
                            Dallas, TX 75201
                            (214) 295-8063


Also Present:               CHARLES RAY CRABTREE, VP and CFO
                            ADAM CRABTREE, Director of Sales
                            Ada Coca-Cola Bottling Company



TELEPHONIC APPEARANCES:

For the Debtors:            Pachulski Stang Ziehl & Jones LLP
                            By:  JEFFREY POMERANTZ, ESQ.
                            10100 Santa Monica Boulevard
                            13th Floor
                            Los Angeles, CA 90067-4003
                            (310) 277-6910

For the United States       Office of the United States Trustee
Trustee:                    By:  JAYSON RUFF, ESQ.
                            515 Rusk Street, Suite 3516
                            Houston, TX 77002
                            (713) 718-4640
```

1          (Proceedings commence at 12:01 p.m.)

2              THE COURT: All right. Good afternoon, everyone.
3  This is Judge Jones. The time is 12:01 Central. Today is
4  April the 12th, 2023. This is the docket for Houston, Texas.
5  Next on this afternoon's docket, we have the jointly
6  administered cases under Case Number 23-90147, Mountain Express
7  Oil Company.

8              Folks, don't forget to record your electronic
9  appearance. That's a quick trip to the website. You can do
10 that at any time prior to the conclusion of the hearing, but
11 that is the way that we record your official appearance. First
12 time that you speak, if you would please state your name and
13 who you represent, really does give the court reporter a good
14 point of reference in the event that a transcript request is
15 made.

16             We are recording this afternoon using CourtSpeak.
17 We'll have the audio up on the docket shortly after the
18 conclusion of the hearing.

19             To the folks in the courtroom, I would ask that when
20 you speak, you come to the lectern. We only have one camera,
21 and so I need you in front of the lectern so you can both be
22 seen and be heard.

23             With that, Mr. Wallen, good afternoon. Do you want
24 to give me a status update?

25             MR. WALLEN: Good afternoon, Judge Jones. Ben

1  Wallen, Pachulski, Stang, Ziehl & Jones, proposed counsel to
2  the debtors.  I'm joined today with my colleague, Jeff
3  Pomerantz, who's appearing remotely.
4              Judge, I'd love to give you a status update.  We are
5  here, of course, today on the debtors' motion -- emergency
6  motion rather -- for entry of an order to show cause and for
7  compensatory and coercive sanctions against independent
8  bottler, Ada Coca-Cola Bottling Company, filed at Docket 229.
9  Judge, this is the second time the debtors are coming before
10 the Court regarding violations of the automatic stay and stay
11 orders issued by you.  But for now, Judge, I'd like to not
12 belabor the point set forth in the motion and instead turn to
13 an update.
14             Shortly after the Court entered the show cause order
15 on Monday, the debtor served a copy of the show cause order and
16 filed a certificate of service on the docket at Docket 246 in
17 compliance with the terms of the order.  That same day, we
18 received a call from general business counsel for Ada Coca-Cola
19 and, shortly thereafter, received a call from Mr. Craig.  Your
20 Honor will recall Mr. Craig represented a similar contemnor
21 just a couple of weeks ago before you, Judge.  Mr. Craig
22 informed us that he had spoken with Ada Coca-Cola regarding
23 their obligations and let us know that they intended to come in
24 compliance with the automatic stay and the Court's orders the
25 following day.

1          Judge, a little before three o'clock yesterday, the
2   debtors were able to confirm that the equipment was returned to
3   the effective location and is in working order.  So while the
4   debtors view the return of the equipment as curing the
5   noncompliance with the automatic stay and the court orders,
6   there is still a need to address the harm and damage inflicted
7   upon the debtors' estates.  We've begun initial discussions
8   with Mr. Craig and Mr. Staine, who's here in the courtroom on
9   behalf of Aida Coca-Cola, but of course, are looking for any
10  guidance, Your Honor has.  So with that, Judge, I'll pause for
11  any comments or questions for me.
12          THE COURT:  All right.  Let me ask -- Mr. Staine,
13  come forward please, sir.  You agree with Mr. Wallen's
14  assessment of where we are?
15          MR. STAINE:  Yes, Your Honor.  Christopher Staine
16  with Crowe & Dunlevy on behalf of Ada Coca-Cola Bottling
17  Company, and I agree with the update that Mr. Wallen provided.
18  We did get confirmation from debtors' counsel that, yesterday
19  afternoon, all equipment had been returned.  And after we were
20  retained, I believe Ada Coca-Cola Bottling Company has a much
21  better appreciation for not only the automatic stay, but its
22  impact on our client's rights and -- which is why there was
23  such a quick turn in returning the equipment.  And we intend to
24  continue our discussions with Mr. Wallen and the U.S. Trustee's
25  Office in order to make sure that any damages that were caused

```
 1  are rectified.
 2           THE COURT:  All right.  Let me -- who did you bring
 3  with you today?
 4           MR. STAINE:  Your Honor, in compliance with the order
 5  to -- your order to appear, I have Mr. Frank Crabtree,
 6  vice-president and CFO of Ada Coca-Cola Bottling Company, and
 7  also Mr. Adam Crabtree, who is the director of sales for the
 8  company.
 9           THE COURT:  All right.  I just seem to remember a
10  different first name of the parties that I required to be here.
11  Am I just mistaken?  I'm looking at the order.  So it's Frank
12  Ray Crabtree.
13           MR. STAINE:  Yes, Your Honor.  Mr. Frank Ray
14  Crabtree, vice-president and CFO.
15           THE COURT:  All right.  So, Mr. Crabtree, if you
16  could please come forward, sir.  Good afternoon.
17           MR. CRABTREE:  Good afternoon, sir.
18           THE COURT:  All right.  Mr. Crabtree, I want you to
19  listen to me for just a second.
20           MR. CRABTREE:  Certainly.
21           THE COURT:  Sorry about that.  Security measures.  I
22  can't get on my computer without my phone anymore.
23           This is the least fun thing about my job.  I want you
24  to understand I didn't issue the order requiring you to appear
25  lightly.  I understand that there's a cost attached to it, just
```

1   not only in terms of a plane fare or however it is you got
2   here.  But I also understand that there's a cost to you not
3   being able to attend to your business.  I recognize that.  But
4   I want to tell you, with comments that were in the email, as
5   well as the comments that were repeated by counsel, I want to
6   tell you, you know, we're all Americans.  We are.  We all have
7   to live by the rule of law.  And if you knew what I gave up to
8   take this job, one, you would look at me and go, you're out of
9   your mind, and I would probably agree with you, but I did it
10  because this involves a process that does so much good for
11  people.  And if you think about being a nation of second
12  chances, I can't tell you, you know, because of people who pass
13  through here, how many people have jobs today, how many people
14  have a second chance to make it because of the process that
15  exists.
16          It is also a very fragile process.  It depends upon
17  people complying with the law.  It depends upon people treating
18  each other like human beings.  You know, we're neighbors.
19  You're a state to the north.
20          MR. CRABTREE:  We are.
21          THE COURT:  You know, this is not something I enjoy
22  doing, but what I want to emphasize to you -- and I appreciate
23  the fact you hired good lawyers, you took the steps to try and
24  get as right as you could -- there's still a step that you're
25  going to have to deal with.  And I know you know that, I know

1  your lawyers have talked to you about that.  I'm going to give
2  you that opportunity.  But I want you to understand why I'm
3  giving you that opportunity.
4          It is because I believe in second chances.  And I
5  believe, just because of where you live, what you do, I got to
6  believe that you want to be a good law-abiding citizen.  I'm
7  going to chalk up what happened to just simply being had a bad
8  day, you had an error in judgment.  But what I want to
9  reiterate with you, number one, that youngster sitting right
10 there is a young lawyer trying to do a good job.  He didn't
11 need to be subjected to the type of email that was sent.  It's
12 not right.  I mean, you know, he's somebody's son.  Think about
13 your son.  It's not right.  If he had been that way to you, I'd
14 have been a lot harder on him, because he knows better, than I
15 am going to be on you.  I want you to remember today because
16 I'm going to give you a second chance.  There's a side to my
17 personality that some of the lawyers know, you don't, and I
18 hope you don't ever find that out.  I can be unbelievably harsh
19 when someone violates a process that I took an oath to uphold.
20 I don't want to be that person.  What I want to be is someone
21 that can reason that we can all be human beings, we can realize
22 that mistakes get made, that with mistakes come a consequence.
23 But I want you take out of this is that there's a better way.
24 You know, if the law provides a way that if you believe that
25 something needs to be adjusted, that's what I do every single

1   day.  I mean, if you look at what I do, I generally consider
2   probably, on average, 100 things a day.  I work really hard to
3   try to make sure the process is right.  I want you to
4   understand a country provides you an opportunity.  We all,
5   every single one of us, owes an obligation back to that
6   process.  That makes sense?
7           MR. CRABTREE:  Does, Your Honor.
8           THE COURT:  Okay.  From my viewpoint, you have two
9   things that you need to do.  Number one, you got to get right
10  with the bankruptcy estate, and I'm going to give -- your
11  lawyers know what that's going to take, and I'm going to let
12  you -- I'm going to give you some time to work that out.  You
13  don't have to agree.  If you decide you don't want to agree,
14  then I'll make the call.
15          MR. CRABTREE:  Right.
16          THE COURT:  You -- I've always believed you're so
17  much better off fixing your own mistakes than having somebody
18  fix them for you.  Second thing you need to do, and you do this
19  out in the hall, be a man.  You owe that young man an apology.
20          MR. CRABTREE:  I do.
21          THE COURT:  You know, you don't owe me anything.  I'm
22  grown.  I got an awfully thick skin.  I've done this for
23  30-plus years.  I'm good.  He hasn't.  So make this right.
24  Next time you deal with someone who perhaps had a bad day,
25  remember today.

```
 1              MR. CRABTREE:  Yes, sir.
 2              THE COURT:  Okay.  All right.  Thank you, sir.
 3              MR. CRABTREE:  Thank you, Your Honor.
 4              THE COURT:  Let me ask the parties.
 5              You're fine.
 6              You were really successful in solving the prior
 7  issue.  Do you want me to give you a continued hearing date?
 8  Do you want me to simply hold it in abeyance and the two of you
 9  can ask for a hearing if you can't get it resolved?  What would
10  make -- what would make sense?
11              MR. WALLEN:  Judge, as you've observed before,
12  deadlines help, so what we've initially discussed is setting a
13  very similar framework like before.  Give us until close of
14  business on Monday, April 24th, to submit an agreed form of
15  order.  And then, if we cannot reach an agreement, we would
16  have another in-person hearing in front of you, Judge, later
17  that week.
18              THE COURT:  All right.
19              MR. WALLEN:  Subject to your availability.
20              THE COURT:  Two of you got your calendars?
21              MR. WALLEN:  Yes.
22              THE COURT:  So we're going to set Monday the 24th as
23  your deadline to either agree or not agree.  And then you want
24  your hearing on the 25th?  Do you want your hearing on the
25  26th?  What are you looking for?
```

```
 1             MR. WALLEN:  The 26th, 27th, the back half of that
 2  week would be great for me, Judge.
 3             THE COURT:  All right.
 4             MR. STAINE:  I'm open on --
 5             THE COURT:  Both days?
 6             MR. STAINE:  Yeah, 26th or the 27th.
 7             THE COURT:  I got it.  And so my memory is you're
 8  coming down from Dallas?
 9             MR. STAINE:  Yes, Your Honor.
10             THE COURT:  Okay.  And your client's coming from
11  Oklahoma.
12             MR. STAINE:  Ada.  Ada, Oklahoma.
13             THE COURT:  Is that just -- is that a flight out
14  of --
15             MR. STAINE:  OKC.
16             THE COURT:  -- Oklahoma City?  Okay, got it.  Because
17  I'm trying to avoid you having to spend the night.  If we set
18  something for early afternoon, would that make sense?  Do you
19  come in in the morning, and then hopefully, there's a late
20  flight in the evening if you have to have it?
21             MR. STAINE:  I think that works just fine.
22             THE COURT:  All right.  So let's do this.  I am very
23  comfortable with your deadline to reach a resolution and upload
24  an agreed order.  Actually, let me do it this way.  I'm just
25  going to give you a hearing date.  You get it resolved at any
```

1   time before that date, terrific.  And if you don't, then you
2   don't.  That make sense?
3              MR. WALLEN:  So if we file the order, you enter it,
4   we don't need to appear then.
5              THE COURT:  Oh, absolutely.  If I just put in -- if
6   you all reach an agreement, just put in a one-line sentence
7   that says the hearing scheduled for -- it'll be April the 26th,
8   why don't we say at 1:30 Central -- is cancelled.  That make
9   sense?
10             MR. WALLEN:  Yes.
11             MR. STAINE:  Yes.
12             THE COURT:  All right, thank you.  And again, I'm
13  going to just chalk this up as to we had a bad day, we said
14  some things we wish we could take back.  We're all going to be
15  law-abiding citizens, and if we think change ought to be made,
16  there's a process to effectuate change.  But otherwise, we're
17  all going to follow the law.  All right?
18             MR. STAINE:  Understood, Judge.
19             THE COURT:  Terrific.  I appreciate the hard work.  I
20  appreciate the professional manner that the two of you have
21  approached this.  I also appreciate Mr. Crabtree's humility in
22  being here, and, you know, whether he believes it or not, you
23  know, we'll never know.  But I do appreciate him appearing and
24  acknowledging that perhaps there was a different way.
25             All right.  Let me ask.  So we now have Committee on

1  board.  Mr. Gibson [sic], thank you.  Thank you for coming
2  down.
3           MR. GIBBS:  Good afternoon, Your Honor.  Chuck Gibbs
4  with McDermott, Will & Emery, proposed counsel for the
5  unsecured creditors' committee.  We have been retained subject
6  to court order, obviously.
7           THE COURT:  Sure.
8           MR. GIBBS:  And I was working in Houston today and
9  tomorrow, so I decided to come over because I wasn't sure the
10 status of whether this was going to go forward or was resolved.
11          THE COURT:  No, I --
12          MR. GIBBS:  Rapidly getting up to speed.
13          THE COURT:  I think everybody's working really hard
14 to try to get focused on the ultimate future of the company,
15 and these little stumbling blocks, we'll just deal with and
16 move on.
17          Let me ask you.  I know we've got a number of things
18 coming up.
19          MR. GIBBS:  Uh-huh.
20          THE COURT:  Are you getting what you need?  Are you
21 getting -- are you having the conversations you need to have in
22 order to become educated?
23          MR. GIBBS:  Yes, we are, Your Honor, with the caveat
24 that I'm not sure I can say yes, we've gotten everything we
25 need, but we are having conversations that are productive.

```
 1  Debtors' counsel has been very accommodating, as has their
 2  financial advisor, FTI.  They've been engaged with our proposed
 3  financial advisor, Province.  We started getting information
 4  yesterday.  We got admitted to a data room that's been set up.
 5  So we're on that process, and we're having discussions, for
 6  example, with counsel for the DIP lender with respect to the
 7  proposed DIP loan that's set currently for final hearing, I
 8  believe, Friday in Corpus Christi.
 9            THE COURT:  Got it.  So is -- the concept, I was
10  going to just ask.  Are we in -- you know, I'm just on my
11  normal Corpus docket, so I will be in Corpus.  Are we -- I
12  guess we got two things set.  Mr. Wallen, I'm looking to you.
13  We've got we've got KERP and then final DIP?
14            MR. WALLEN:  Judge, currently, I believe on calendar
15  for Friday is a dealer reconciliation procedures motion, as
16  well as the Cameron transaction, closing motion, and the final
17  DIP are the ones that are currently scheduled.
18            THE COURT:  Okay, fair enough. So someone better
19  become more educated before Friday, but we --
20            MR. GIBBS:  We are --
21            THE COURT:  I've got a lot of things to do between
22  now and Friday.
23            MR. GIBBS:  We are in active conversations with
24  debtors' counsel with respect to the other two motions that Mr.
25  Wallen just talked about.
```

```
 1            THE COURT:  So let me tell you -- what were you all
 2  planning on doing?  Because here's what I've done in the past,
 3  and I don't remember either one of you -- obviously, if you
 4  want to come to Corpus, you can come to Corpus, but what we
 5  will do is we'll have the courtroom live, and I will just port
 6  it in.  So if you all want to come here, that's terrific, just
 7  if you would just shoot us an email, let us know.  If you want
 8  to be on just remotely, all fine by me.  I'll be sitting in --
 9  I don't know whose judge's courtroom I'll be using in Corpus,
10  but I'll be in somebody's courtroom on Friday.  Okay?
11            MR. GIBBS:  All right.
12            MR. WALLEN:  Understood, Judge.
13            THE COURT:  All right.  Terrific.  Anything else we
14  need to talk about?
15            MR. WALLEN:  Nothing from the debtors, I don't
16  believe.
17            THE COURT:  All right.  Thank you all again.
18            Mr. Ruff, I did not mean to ignore you.  Did you have
19  any questions or comments?  He's waiting on me to unmute him.
20  Mr. Ruff?
21            MR. RUFF:  Here I am.  Good afternoon, Your Honor.
22  Jayson Ruff with the U.S. Trustee's Office.  Nothing at this
23  point.  Thank you for allowing me the opportunity to say one
24  way or the other.
25            THE COURT:  Thank you.
```

```
 1            And Mr. Pomerantz, I assumed that Mr. Wallen just did
 2   a far better job than anyone else could have done and you have
 3   nothing to add.
 4            MR. POMERANTZ:  I didn't realize, Your Honor, my line
 5   was muted.  But Mr. Wallen, I think, did us proud.  Appreciate
 6   Your Honor setting the hearing, and Mr. Wallen and Mr. Gibbs
 7   were accurate in terms of Friday's hearing.  I know I will be
 8   handling the majority of Friday's hearing, and I will plan to
 9   be doing it virtually, as I suspect our witness is, as well, in
10   light of Your Honor being in Corpus Christi, but if other
11   people want to use our facilities, that's okay with us.
12            THE COURT:  Thank you.  Courtroom -- in this
13   courtroom will be open, and the video will be attached, and
14   Ms. Portillo will be here.  I just simply will be in another
15   courtroom.  All right?  All right.  Thank you.  We'll be
16   adjourned --
17            MR. POMERANTZ:  Thank you, Your Honor.
18            THE COURT:   -- until one o'clock.
19            MR. WALLEN:  Thank you, Judge.
20            THE CLERK:  All rise.
21            MR. STAINE:  Thank you, Your Honor.
22       (Proceedings concluded at 12:19 p.m.)
23                           * * * * *
24
25
```

**C E R T I F I C A T I O N**

I, Alicia Jarrett, court-approved transcriber, hereby certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

_____

ALICIA JARRETT, AAERT NO. 428    DATE: April 16, 2023

ACCESS TRANSCRIPTS, LLC