IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| MOUNTAIN EXPRESS OIL COMPANY, *et al.*,[1] | ) ) ) | Case No. 23-90147 (DRJ) |
| Debtors. | ) ) ) | (Jointly Administered) |

**OBJECTION OF THE NECESSITY LANDLORDS
TO DEBTORS' EMERGENCY MOTION FOR ENTRY OF
INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO
(A) OBTAIN POSTPETITION FINANCING AND (B) USE OF CASH COLLATERAL,
(II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE
EXPENSE CLAIMS, (III) GRANTING ADEQUATE PROTECTION TO
PREPETITION SECURED PARTIES, (IV) MODIFYING THE AUTOMATIC STAY,
(V) SCHEDULING A FINAL HEARING, AND (VI) GRANTING RELATED RELIEF**

Landlords (i) AFN ABSPROP001, LLC, (ii) ARG MESMOAR001, LLC, (iii) ARG MEVNAAL001, LLC, and (iv) ARG E19PCK001, LLC, each affiliated with The Necessity Retail REIT, Inc. (collectively, the "Necessity Landlords") hereby file this Objection to the Emergency Motion [Docket No. 105] (the "DIP Motion")[2] of the debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), seeking, among other things, entry of the interim order, entered on March 23, 2023 [Docket No. 117] (the "Interim DIP Order") and a final order (the "Final DIP Order"), authorizing the Debtors to obtain postpetition debtor-in-possession financing and granting other related relief.  In support of the Objection, the Necessity Landlords respectfully state as follows:

---

[1]  A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' claims and noticing agent at www.kccllc.net/mountainexpressoil. The location of Debtor Mountain Express Oil Company's principal place of business and the Debtors' service address in these Chapter 11 Cases is 3650 Mansell Road, Suite 250, Alpharetta, GA 30022.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the DIP Motion.

## PRELIMINARY STATEMENT

1. The Necessity Landlords recognize the Debtors' need for a DIP facility and support obtaining financing adequate to fund these cases and pursue an exit strategy that is fair, Code compliant and beneficial to the creditors and estates. This DIP Facility is not, and cannot be approved absent modification. In fact, the Debtors have submitted a Final DIP Order that fails to address postpetition rent obligations required to be paid under the Bankruptcy Code, leaving the Necessity Landlords unfairly prejudiced and the Debtors at risk of administrative insolvency. To make matters worse, the Debtors propose to use the rent they collect from sub-tenants in possession of the leased premises to fund these cases *without making the corresponding lease payments for those same premises*. This does not work. The Debtors should not be permitted to obtain postpetition financing unless it is clearly on terms that comply with Section 365(d)(3) of the Bankruptcy Code, and in any event, financing should only be approved if it ensures that the Debtors' payment obligations are complied with and steps are taken to avoid administrative insolvency.

2. Despite (a) FTI (the Debtors' financial advisor) initially advising the Committee's professionals that these postpetition rent payments were going to be timely made and (b) a line item in the Approved Budget appearing to provide for such payments to be made by April 7th, the Debtors have not made any payments to the Necessity Landlords for postpetition rent, including April rent. As the Debtors' second-largest landlord (collectively) and counterparty to 71 nonresidential leases, April obligations alone to the Necessity Landlords total more than $950,000. The accrued amounts will inevitably grow each month,[3] and the Debtors have not assured the Necessity Landlords or the other constituencies that these payments can and will be

---

[3] In addition, stub-rent for the Petition Date of March 18th to April 1st is approximately $415,000.

made. Failure to account for these amounts and the Debtors' obligations to the Necessity Landlords and others similarly situated could leave these estates administratively insolvent, despite the proposed Final DIP Facility.

3. The Debtors have neither sought for cause, nor been granted any relief from their obligations under section 365(d)(3) of the Bankruptcy Code.[4] Therefore the Debtors are required to perform their postpetition obligations as and when due under the terms of the Leases (as defined below). The Final DIP Order as currently drafted flies in the face of this requirement, permitting the Debtors to deny the Necessity Landlords their postpetition rents for an indefinite period of time while the Debtors collect rent from their sub-tenants to use as they see fit. The Final DIP Order and attached Budget must be modified to provide (a) assurance and clarity that the Debtors will use proceeds of the DIP Facility to timely satisfy their section 365(d)(3) obligations, (b) adequate protection or other assurances for the accrued postpetition rent that remains unpaid and (c) clarity that DIP Liens do not attach to leasehold interests, including rent.

## BACKGROUND

4. The Necessity Landlords are landlords under seventy-one (71) leases with certain debtor entities throughout six (6) states, as follows:

> (i) AFN ABSPROP001, LLC is landlord and Texas MEX Limited Company, LLC is tenant under six (6) leases of real property located in Texas, which were also guaranteed by Mountain Express oil Company;
>
> (ii) AFN ABSPROP001 LLC and/or ARG MESMOAR001, LLC are landlord and Mountain Express Oil Company is tenant under nine (9) leases of real property located in Arkansas;
>
> (iii) AFN ABSPROP001, LLC and/or ARG MEVNAAL001, LLC are landlord and MEX North Alabama, LLC is tenant under fifteen (15) leases of real property located in Alabama, which are also guaranteed by Mountain Express Oil Company;

---

[4] Even if the Debtors showed cause and obtained an extension, they would still need to demonstrate that on the 61st day of the case, the Debtors will make timely payments and satisfy such administrative costs.

(iv) AFN ABSPROP001 and/or ARG ME19PCK001, LLC are landlord and Mountain Express Oil Company is tenant under thirty-nine (39) leases of real property located in Georgia, of which eighteen (18) are subject to a Master Lease Agreement dated on or about February 28, 2019;

(v) AFN ABSPROP001, LLC is landlord and Mountain Express Oil Company is tenant under one (1) lease of real property located in South Carolina; and

(vi) AFN AFN ABSPROP001, LLC is landlord ad Mountain Express Oil Company is tenant under one (1) lease of real property located in Mississippi (collectively, the "Leases").

Each of the Leases generally requires, among other things, payment of all rent as provided thereunder on the first day of each month.

5.  Prepetition, the Debtors failed to pay the amounts owed under the Leases as and when they become due. On or about January 10, 2023, the Necessity Landlords sent notices of default to the applicable Debtors under the Leases, stating that, among other things, rent due for January 2023 had not been timely paid. The Necessity Landlords indicated that the Debtors' failure to cure these defaults immediately by remitting the outstanding amounts would be deemed an event of default under the Leases and that the Necessity Landlords would exercise their rights as set forth in the Leases, under law or equity.

6.  On or about January 13, 2023, the Necessity Landlords sent a second notice of default to the Debtors under the Leases, including the Necessity Landlords' intent to accelerate the amounts due under the Leases. The second notice of default demanded payment of all past due amounts, together with lawful accrued and unpaid interest thereon, on or before January 20, 2023 at 10:00 a.m.

7.  On or about January 23, 2023, the Necessity Landlords sent a third notice of default to the Debtors under the Leases, again reiterating that the January 2023 rent had not been paid and notifying them that, effective as of January 2, 2023, all rent was accelerated to be due and owing under the Leases, totaling no less than $215,360,814.88.

8. To date, the Debtors have not paid any rent due and owing under the Leases from January 2023 onwards.

9. As a result of these defaults, the Necessity Landlords filed various civil complaints against the Debtors on or around March 7 through March 9, 2023: (i) Case No. DC-23-02871 in the District Court of Dallas County, Texas; (ii) Case No. 04CV-23-654 in the Circuit Court of Benton County, Arkansas; (iii) Case No. 02-CV-2023-900409-00 in the Circuit Court of Mobile County, Alabama; (iv) Case No. 2023CP3000188 in the Court of Common Pleas of Laurens County, South Carolina; (v) Case No. 48CI1:23-cv-00081 in the Circuit Court of Monroe County, Mississippi; and (vi) a civil case in the State Court for Fulton County, Georgia.

10. On March 18, 2023 (the "Petition Date"), the Debtors commenced these Chapter 11 Cases by filing voluntary petitions for bankruptcy protection under chapter 11 of the Bankruptcy Code. No trustee has been appointed and the Debtors continue to operate their businesses as debtors-in-protection.

11. On March 23, 2023, the Debtors filed the DIP Motion on an emergency basis. The Court entered the Interim DIP Order later that same day. A final hearing on the DIP Motion was scheduled for April 12, 2023 at 12:00 p.m. prevailing Central Time. The hearing was later rescheduled to April 14, 2023 at 10:00 a.m. prevailing Central Time. *See* Notice of Continued Hearing [Docket No. 228].

12. By agreement with the Debtors, the deadline for the Necessity Landlords to object to the DIP Motion and the Interim DIP Order is currently April 18, 2023 at 5:00 p.m. prevailing Central Time.

13. As of the date of this Objection, the Necessity Landlords have not received any payment on account of April rent under any of the Leases.

14. The Debtors, non-debtor affiliates or their sub-tenants are currently in possession of and using the leased properties.

15. The Debtors have neither sought nor been granted any extension of their postpetition obligations (including with respect to the Leases) under § 365(d)(3) of the Bankruptcy Code.

## OBJECTION

16. The Necessity Landlords do not challenge the Debtors' allegations concerning their need for a DIP facility, or the other averments contained in the DIP Motion. Instead, the Necessity Landlords' objection is limited to the Debtors' failure to fulfill their mandated obligations under section 365(d)(3) of the Bankruptcy Code and the absence of any provisions in the proposed Final DIP Order requiring or otherwise providing for satisfaction of such obligations, and approving a facility that will likely lead to administrative insolvency unless the lease obligations are addressed.[5]

17. Section 365(d)(3) of the Bankruptcy Code provides that "[t]he trustee shall timely perform all the obligations of the debtor . . . arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 502(b)(1) of this title." This section requires the Debtors to continue *timely* performing its obligations under any unexpired lease of nonresidential real property during the time period between the petition date and the date that such lease is assumed or

---

[5] The Necessity Landlords provided comments to the proposed Final DIP Order to the Debtors to address other issues as well, including DIP Liens on leaseholds and remedial rights of the DIP Lender to access the leased premises during an Event of Default. The Necessity Landlords understand the Debtors are considering such comments and reserve all rights.

rejected. *See, e.g.*, *In re CEC Entertainment, Inc.*, 625 B.R. 344, 353 (Bankr. S.D. Tex. 2020) ("Section 365(d)(3) unambiguously requires that debtors timely perform obligations under commercial leases. The Court cannot override that statutory mandate.").

18. The sole exception to this requirement is also provided by section 365(d)(3) of the Bankruptcy Code, which allows a bankruptcy court to "extend, for cause, the time for performance of any such obligation that arises within 60 days after the date of the order for relief, but the time for performance shall not be extended beyond such 60-day period." Here, the Debtors have never requested such relief, much less shown the requisite cause for the Court to enter any order granting such an extension. In the absence of any such order, the Debtors remain bound to honor their obligations under the Leases when and as required by the terms of the Leases.

19. The Debtors remain in possession and control of the premises subject to the Leases. The Debtors, non-debtor affiliates and their sub-tenants are occupying, in possession of and using the leased properties. Yet the Debtors have refused to satisfy their accrued postpetition obligations, including the payment of April rent, and will not commit to make any future payments. This treatment is directly contrary to the dictates of § 365(d)(3) of the Code.

20. The Debtors' Approved Budget attached to the Interim DIP Order is limited in detail. It contains a line item for "Rent Expense" in the amount of (i) $8,472,000 payable on April 7, 2023, (ii) $8,490,000 on May 5, 2023, and (iii) $8,481,000 on June 2, 2023 and thus appears to expressly contemplate payment to the Necessity Landlords. The Debtors, however, are unable, or simply refuse to provide a breakdown of what these amounts represent or how they would be allocated across lease obligations. Thus, there is no way to ascertain whether these line items would be (or are even intended to be) sufficient to pay all of the Debtors' rent

obligations, including under the Leases. At the very least, the Debtors are evidently not using these amounts to pay April rent due under the Leases, which the Necessity Landlords have thus far not received.

21. Any Final DIP Order must address the Debtors' obligations under § 365(d)(3) clearly in order for it to be acceptable and entered by the Court. Specifically, the Final DIP Order should include the creation of a reserve account to ensure that the Debtors' obligations under § 365(d)(3), to the extent not already addressed through the Approved Budget, will be accounted for and timely performed as required under the Bankruptcy Code. Otherwise, the Necessity Landlords will be deprived of the rights due to them under the Code and prejudiced in their timely collection of substantial amounts duly owed to them by the Debtors.

22. In addition, the Final DIP Order must also provide adequate protection to landlords under sections 362 and 363 of the Bankruptcy code, ensuring that the Debtors' postpetition obligations under the Leases are being satisfied in full as and when required by the Leases. *See, e.g.*, *Memphis-Shelby County Airport Authority v. Braniff Airways, Inc. (In re Braniff Airways, Inc.)*, 783 F.2d 1283, 1286–87 (5th Cir. 1986) ("Periodic rental payments compensating a creditor for use and occupancy of his premises may serve as adequate protection."); *In re P.J. Clarke's Restaurant Corp.*, 265 B.R. 392, 404 (Bankr. S.D.N.Y. 2001) ("Since the 1984 Amendments to the Bankruptcy Code, several courts have specifically held that a Landlord's right to timely payment of post-petition rent constitutes an interest in property entitled to adequate protection."). This adequate protection should include reporting and delivery of financial information, providing the Necessity Landlords with the underlying detail showing the breakdown of each rent expense being treated thereunder, and to the extent that the

DIP Financing is approved and payment of the rent is delayed, the Necessity Landlords should be provided a superpriority administrative claim.[6]

23. As it stands, the Necessity Landlords (and presumably all similarly-situated creditors) are being forced to wait on the sidelines while the Debtors use their rent proceeds to fund operations, rather than to honor their postpetition obligations as required under the Bankruptcy Code. The Leases have not been rejected and Debtors and/or their sublessees are still occupying the real property, and if and when the Debtors file a motion to reject, the payments are still due and owing and not excused. 11 U.S.C. § 361(1) is clear that adequate protection may take the form of "periodic cash payments" to creditors. The Necessity Landlords' real property is being operated and occupied by the Debtors and/or their sublessees with no consideration being provided to the Necessity Landlords. Thus, to the extent that the Debtors are not fulfilling their obligations under § 365(d)(3), they should provide adequate protection to the Necessity Landlords in the form of periodic cash payments in the amount of the rent due under the Leases.

24. The DIP Motion and Interim DIP Order have other deficiencies with respect to landlord rights as well, such as not providing for landlords' notice and consent before allowing the DIP Lenders to have rights of access to any leased premises, or with respect to the DIP Lenders' exercise of remedies against any leasehold DIP Collateral (if any). These deficiencies must be rectified in order for any Final DIP Order to be acceptable. The Necessity Landlords have provided Debtors' counsel with comments that would resolve these issues, and is hopeful that they may still be consensually resolved.

---

[6] The Necessity Landlords have also requested information about individual location performance, which information they are entitled to under the respective Leases.

**RESERVATION OF RIGHTS**

25. The Necessity Landlords reserve all rights to supplement and/or amend this Objection prior to or at any hearing thereon, in the event that the Necessity Landlords' objections raised herein are not resolved or in the event that any further changes to the Final DIP Order are proposed; or to further address the DIP Motion or any other ancillary issues.

**CONCLUSION**

WHEREFORE, The Necessity Landlords respectfully request that this Court enter an order (i) denying the DIP Motion and any Final DIP Order unless such Final DIP Order is modified to ensure compliance with the Debtors' obligations under § 365(d)(3), (ii) granting adequate protection to landlords of nonresidential unexpired leases of real property under §§ 361 and 364 with respect to the timely performance of the Debtors' obligations under § 365(d)(3), (iii) precluding DIP Liens on leasehold interests, including rent and (iv) granting such other relief as the Court may deem proper.

Dated: April 18, 2023
  New York, New York

**ARENTFOX SCHIFF LLP**

*/s/ Andrew I. Silfen*
Andrew I. Silfen (admitted *pro hac vice*)
Beth M. Brownstein (admitted *pro hac vice*)
1301 Avenue of the Americas, Floor 42
New York, NY 10019
Tel: (212) 484-3900
Fax: (212) 484-3990
Email: andrew.silfen@afslaw.com
     beth.brownstein@afslaw.com

*Counsel to AFN ABSPROP001, LLC, ARG MESMOAR001, LLC, ARG MEVNAAL001, LLC, and ARG E19PCK001, LLC*

## **CERTIFICATE OF SERVICE**

I certify that on April 18, 2023, a copy of this document was served via electronic mail on all counsel of record via the Court's CM/ECF system.

*/s/ Andrew I. Silfen*
Andrew I. Silfen
