**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re:<br><br>MOUNTAIN EXPRESS OIL COMPANY, et al.,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 23-90147 (DRJ)<br><br>(Jointly Administered) |

**DEBTORS' EMERGENCY FIRST OMNIBUS MOTION FOR
ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTORS TO REJECT
CERTAIN UNEXPIRED LEASES, SUBLEASES AND RELATED CONTRACTS
PURSUANT TO 11 U.S.C. § 365, AND (II) GRANTING RELATED RELIEF**

> **Emergency relief has been requested. Relief is requested not later than April 27, 2023.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter on April 27, 2023, at 11:00 a.m. (prevailing Central Time). You may participate in the hearing either in person or by an audio and video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. Once connected, you will be asked to enter the conference room number. Judge Jones's conference room number is 205691. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Jones's homepage. The meeting code is "JudgeJones". Click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Jones's homepage. Select the case name, complete the required fields and click "Submit" to complete your appearance.**

> **PARTIES RECEIVING THIS MOTION SHOULD LOCATE THEIR RESPECTIVE NAMES AND LEASES/CONTRACTS ON THE LIST OF REJECTED AGREEMENTS ON EXHIBIT 1 TO THE PROPOSED ORDER ATTACHED HERETO.**

---

[1] A complete list of each of the Debtors in these Chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at www.kccllc.net/mountainexpressoil. The location of Debtor Mountain Express Oil Company's principal place of business and the Debtors' service address in these Chapter 11 cases is 3650 Mansell Road, Suite 250, Alpharetta, GA 30022.

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state the following in support of this motion (this "Motion"):

## RELIEF REQUESTED

1. By this Motion, the Debtors seek entry of an (the "Order"), pursuant to sections 105(a) and 365(a) of title 11 of the United States Code (the "Bankruptcy Code") and Federal Rules of Bankruptcy Procedure 6006 and 6007 (the "Bankruptcy Rules"), authorizing the rejection of (a) certain unexpired leases of non-residential real property (under which a Debtor is a tenant), (b) the subleases associated with each of the premises leased under the foregoing leases (under which a Debtor is a landlord), and (c) certain related equipment and supply agreements with third parties, each as more particularly described on **Exhibit 1** to the proposed Order attached hereto (collectively, the "Rejected Agreements").  The Rejected Agreements comprise a subset of the premises leased by the Debtors from AR Global Investments, LLC.  The Debtors seek to reject the Rejected Agreements effective as of the date of entry of an order granting this Motion (the "Rejection Date").

## JURISDICTION AND VENUE

2. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). The Debtors confirm their consent, pursuant to Bankruptcy Rule 7008, to the entry of a final order by the Court.

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory bases for the relief requested herein are section 365(a) of the Bankruptcy Code and Bankruptcy Rules 6006 and 6007.

**GENERAL BACKGROUND**

5.     On March 18, 2023 (the "Petition Date"), the Debtors each commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code.  The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these chapter 11 cases.

6.     On April 4, 2023, the Office of the United States Trustee (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors (the "Committee"), consisting of the following three members: (i) The Necessity Retail REIT, Inc.; (ii) Total Image Solutions, LLC; and (iii) Coca-Cola Bottling Company United, Inc.  *See* Docket No. 202.

7.     Founded in 2000 and based in Alpharetta, Georgia, the Debtors are a recognized leader in the fuel distribution and retail convenience industry.  As one of the largest fuel distributors in the American South, the Debtors served 828 Fueling Centers and 27 Travel Centers across 27 states as of the Petition Date.  The Debtors enjoy trusted relationships with every major oil company including ExxonMobil, BP, Shell, Chevron, Texaco, and Sunoco and have obtained Regal Status with Chevron, Platinum Status with ExxonMobil, and is the largest Pilot Dealer in the United States.  Since 2013, the Debtors have distributed over 1.1 billion gallons of fuel.

8.     Additional information regarding the Debtors' business and capital structure and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Michael Healy in Support of Debtors' Chapter 11 Petitions and First Day Relief*

[Docket No. 57] (the "First Day Declaration"),[2] which has been filed with the Court contemporaneously herewith and is incorporated by reference herein.

## THE REJECTED LEASES AND CONTRACTS

9. As of the Petition Date, the Debtors were party to various leases with AR Global Investments, LLC, and/or certain of its affiliates (collectively, "AR Global") pursuant to which the Debtors lease 71 real property sites (i.e., the "Primary Leases") located in Alabama, Arkansas, Georgia, Mississippi, South Carolina, and Texas. The Debtors do not operate any of the convenience store or fuel station locations covered by the AR Global lease portfolio. Rather, the stores are each operated by third-party dealers pursuant to subleases between the Debtors and those third-party dealers. In certain of the locations, the Debtors also have agreements with other parties to operate beverage or other similar concessions at the stores.

10. By this Motion, the Debtors seek to reject the Primary Leases associated with 28 of the AR Global locations, as well as the corresponding dealer subleases at those 28 locations, and certain other contracts with third parties associated with the locations.[3] Of the 28 locations, 18 are covered by a single master lease with an AR Global entity (the "Master Lease") and the remaining Primary Leases (also with an AR Global entity) are individual leases applicable to a single location. Thus, the Debtors seek to reject the Master Lease (covering 18 locations) and 10 individual Primary Leases covering an additional 10 locations.

11. The Debtors and their professionals have reviewed the value of the Debtors' operations at the 28 locations leased from AR Global. For calendar year 2022, the entire AR

---

[2] A capitalized term used but not otherwise defined herein shall have the meanings ascribed to it in the First Day Declaration.

[3] The Debtors are also party to fuel supply agreements under which the Debtors sell fuel products to the dealers that operate the convenience stores and fuel stations at the subleased locations. None of these fuel supply agreements is subject to this Motion.

4

DOCS_LA:348566.10 58614/002

Global lease portfolio (a total of 71 locations) generated an annual aggregate loss of approximately $2.9 million. This is because the rent paid by the Debtors to AR Global on account of the entire 71-property portfolio ($11.9 million) exceeds by $5.7 million the sublease rent received by the Debtors from the subtenants ($6.2 million). Only $2.8 million of that aggregate "net rent" loss is recovered by the fuel margin earned by the Debtors from their fuel supply agreements with such dealers, leaving a remaining annual loss of approximately $2.9 million.

12. The negative "delta" between the Debtors' rental expense under the Primary Leases and the income produced by fuel payments and sublease rent is concentrated largely at the 28 sites the Debtors propose to reject by this Motion. These sites accounted for virtually all of the annual aggregate losses in the AR Global portfolio.

13. Accordingly, the Debtors have determined, in the exercise of their business judgment, to reject the Rejected Agreements as of the Rejection Date because continued performance under them is a burden to the Debtors and their estates. The Debtors will not require the Rejected Agreements to operate their business going forward. As noted, the Rejected Agreements do not include the fuel supply agreements between one or more of the Debtors and the subtenant operators at the affected locations.

## BASIS FOR RELIEF

14. Bankruptcy Code section 365(a) provides that a debtor-in-possession "subject to the court's approval, may . . . reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). "This provision allows a trustee to relieve the bankruptcy estate of burdensome agreements which have not been completely performed." *Stewart Title Guar. Co. v. Old Republic Nat'l Title Co.*, 83 F.3d 735, 741 (5th Cir. 1996) (citing *In re Murexco Petrol., Inc.*, 15 F.3d 60, 62 (5th Cir. 1994)). Bankruptcy courts have broad authority and considerable discretion in

determining whether to approve the assumption or rejection of an executory contract or unexpired lease under Bankruptcy Code section 365. *See Class Five Nev. Claimants v. Dow Corning Corp. (In re Dow Corning Corp.)*, 280 F.3d 648, 656 (6th Cir. 2002).

15. The Supreme Court has recognized that "the authority to reject an executory contract" is not merely incidental, but rather it "is vital to the basic purpose of a Chapter 11 reorganization, because rejection can release the debtor's estate from burdensome obligations that can impede a successful reorganization." *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 528 (1984). Courts have similarly held that "[t]he right of a debtor in possession to reject certain contracts is fundamental to the bankruptcy system because it provides a mechanism through which severe financial burdens may be lifted while the debtor attempts to reorganize." *Westbury Real Estate Ventures, Inc. v. Bradlees Stores, Inc. (In re Bradlees Stores, Inc.)*, 194 B.R. 555, 558 n.1 (Bankr. S.D.N.Y. 1996). Rejection of an executory contract under Bankruptcy Code section 365(a) constitutes a breach of the contract—not a modification or termination. *See* 11 U.S.C. § 365(g); *see also Osprey-Troy Officentre, LLC v. World All. Fin. Corp.*, 502 F. App'x 455, 456-57 (6th Cir. 2012); *see also In re N. Am. Royalties, Inc.*, 276 B.R. 860, 865 (Bankr. E.D. Tenn. 2002) ("Rejection is independent of the contract terms.").

16. Rejection is "vital" and "fundamental," because in many cases, the debtor could not emerge from bankruptcy as a going concern if it were forced to specifically perform under burdensome executory contracts. *Leasing Serv. Corp. v. First Tenn. Bank N.A.*, 826 F.2d 434, 436 (6th Cir. 1987) ("Rejection denies the right of the contracting creditor to require the bankrupt estate to specifically perform..."); *see also Midway Motor Lodge of Elk Grove v. Innkeepers Telemgmt. & Equip. Corp.*, 54 F.3d 406, 407 (7th Cir. 1995) ("Rejection avoids specific performance, but the debtor assumes a financial obligation equivalent to damages for breach of contract."); *Bradlees*

6

*Stores*, 194 B.R. at 558 ("Specific performance should not be permitted where the remedy would in effect do what section 365 meant to avoid, that is, impose burdensome contracts on the debtors.") (quoting *In re Fleishman*, 138 B.R. 641, 648 (Bankr. D. Mass. 1992)).

17. The Bankruptcy Code permits the debtor to breach burdensome executory contracts, transforming those obligations into a prepetition claim for damages, which may be satisfied and discharged together with all other claims against the estate. *See* 11 U.S.C. § 365(g); *see also In re Richendollar*, No. 04-70774, 2007 WL 1039065 (Bankr. N.D. Ohio Mar. 31, 2007) ("The purpose of section 365(g) is to make clear that, under the doctrine of relation back, the other party to a contract that has not been assumed Section 365(g) is simply a general unsecured creditor.") (quoting 3 COLLIER ON BANKRUPTCY ¶ 365.09[1] (15th ed. 2006).

18. Rejection thereby allows for ratable treatment of a debtor's unsecured creditors. *In re Albrechts Ohio Inns, Inc.*, 152 B.R. 496, 501–02 (Bankr. S.D. Ohio 1993) (noting the business judgment rule is satisfied for rejection purposes where "rejection will result in benefit to the debtor's general unsecured creditors").

19. The standard for rejection is satisfied when a trustee or debtor has made a business determination that rejection will benefit the estate. *See Commercial Fin. Ltd. v. Hawaii Dimensions, Inc. (In re Hawaii Dimensions, Inc.)*, 47 B.R. 425, 427 (D. Haw. 1985) ("under the business judgment test, a court should approve a debtor's proposed rejection if such rejection will benefit the estate.").

20. If a trustee's or debtor's business judgment has been reasonably exercised, a court should approve the assumption or rejection of an unexpired lease or executory contract. *See, e.g., NLRB v. Bildisco & Bildisco*, 462 U.S. at 523 (1984); *In re Federal Mogul Global, Inc.*, 293 B.R. 124, 126 (D. Del. 2003).

21. Here, the Debtors seek to reject the Rejected Agreements to avoid incurring additional rental expense related to the Rejected Agreements, which expense is not fully defrayed by fuel payments and sublease rental income. The Rejected Agreements, thus, no longer provide an economic benefit to the Debtors' estates and the Debtors lose money under them. Therefore, the Rejected Agreements are, and will continue to be, a burden to the Debtors' estates.

22. The Debtors have further determined, in their reasonable business judgment, that there is no benefit that can be readily achieved by marketing and assigning the Rejected Agreements.[4] As a result, the Debtors have concluded that the cost to the Debtors of continuing to perform the Debtors' obligations under the Rejected Agreements and incurring unnecessary losses and administrative expenses is burdensome and that rejection of the Rejected Agreements is in the best interests of the Debtors' estates and creditors.[5]

## EMERGENCY CONSIDERATION

23. Emergency relief is appropriate under the circumstances because entry of the Order will not prejudice any party-in-interest to the chapter 11 cases. As discussed above, the relief requested in this Motion is in the Debtors' business judgment and is done in a manner to minimize costs and maximize value for the Debtors' estates. In particular, timely entry of the order and implementation of the rejection's effectiveness prior to the end of the month will unquestionably

---

[4] The Debtors reserve all of their rights with respect to the determination of whether any Rejected Agreement is executory or has been (or will have been) terminated or breached. In either event, the Debtors do not believe that assumption of the Rejected Agreements is in the best interests of the Debtors' estates or their creditors and thus seek to reject the Rejected Agreements pursuant to this Motion.

[5] The Debtors continue to review their contract and lease portfolio and will file additional motions if they determine that rejecting other contracts and leases is in the estates' best interests.

benefit the estates by allowing the rejection to become effective prior to rent becoming due in May 2023.[6]

24. Moreover, while entry of the Order will not prejudice any party-in-interest to the Chapter 11 cases, delay in the Court's consideration of the relief sought herein for the standard notice period[7] will, in practical terms, put the Debtors' efforts to reject these burdensome contracts on pause. Such delay in the entry of the Proposed Order would simply lead to unnecessary and burdensome expenses on the Debtors' estates.

25. Accordingly, the Debtors submit that emergency consideration is warranted.

## NOTICE

26. Notice of the hearing on the relief requested in this Motion will be provided by the Debtors in accordance and compliance with Bankruptcy Rules 4001 and 9014, as well as the Local Rules, and is sufficient under the circumstances. The Debtors will provide notice to parties-in-interest, including on the Debtors' Master Service List and the counterparties to each Rejected Agreement.

[*Remainder of Page Intentionally Left Blank*]

---

[6] The Debtors reserve all rights to contest any claim under any rejected lease for the amount of administrative rent accruing prior to the Rejection Date of the Rejected Agreements.

[7] *See* Bankruptcy Rules 9013 and 9006(d); Local Rule 9013-1.

## CONCLUSION

**WHEREFORE**, the Debtors request that the Court enter the Orders granting the relief requested herein and such other and further relief as may be just and proper under the circumstances.

Dated: April 18, 2023  **PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Michael D. Warner*
Michael D. Warner (SBT 00792304)
Steven W. Golden (SBT 24099681)
440 Louisiana Street, Suite 900
Houston, TX 77002
Telephone: (713) 691-9385
Facsimile:  (713) 691-9407
mwarner@pszjlaw.com
sgolden@pszjlaw.com

-and-

Jeffrey N. Pomerantz (admitted *pro hac vice*)
Jeffrey W. Dulberg (admitted *pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile:  (310) 201-0760
jpomerantz@pszjlaw.com
jdulberg@pszjlaw.com

*Proposed Counsel to the Debtors and Debtors in Possession*

**Certificate of Accuracy**

      I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

*/s/ Michael D. Warner*
Michael D. Warner

**Certificate of Service**

      I certify that on April 18, 2023, I caused a copy of the foregoing document to be served via the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Michael D. Warner*
Michael D. Warner