IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>MOUNTAIN EXPRESS OIL COMPANY, et al.,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 23-90147 (DRJ)<br><br>(Jointly Administered) |

**DECLARATION OF MICHAEL HEALY IN SUPPORT OF
DEBTORS' EMERGENCY MOTION FOR ENTRY OF AN ORDER
(I) AUTHORIZING AND APPROVING A NON-INSIDER
KEY EMPLOYEE RETENTION PLAN AND (II) GRANTING RELATED RELIEF**

I, Michael Healy, declare that the following is true to the best of my knowledge, information, and belief:

1.  I am the Chief Restructuring Officer (the "CRO") of Mountain Express Oil Company ("MEX") and its affiliates (collectively, the "Company"). In addition to serving as the Company's CRO, I am a Senior Managing Director at FTI Consulting, Inc. ("FTI"), a leading global business advisory firm with 121 offices worldwide and over 7,600 professionals. I have more than 20 years of restructuring experience and have advised companies, lenders, creditors, corporate boards and equity sponsors across a diverse range of industries both domestically and internationally.

2.  I submit this declaration (the "Declaration") in support of the *Debtors' Emergency Motion for Entry of an Order (I) Authorizing and Approving a Non-Insider Key Employee*

---

[1] A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at www.kccllc.net/moutainexpressoil. The location of Debtor Mountain Express Oil Company's principal place of business and the Debtors' service address in these Chapter 11 Cases is 3650 Mansell Road, Suite 250, Alpharetta, Georgia 30022.

DOCS_NY:47359.3 58614/002

*Retention Plan and (II) Granting Related Relief* (the "KERP Motion"),[2] filed concurrently herewith, of the above-captioned debtors and debtors in possession (the "Debtors"). The KERP Motion requests an order authorizing the Debtors to implement a retention program for a small group of non-insider, non-executive employees. The program would apply to 29 employees and the total cost of the program would not exceed $522,000 (inclusive of a $50,000 supplemental cash pool for certain non-insider employees that are not otherwise included in the program).

3.      Unless otherwise indicated, the statements set forth in this Declaration are based on (a) my personal knowledge or views based on my experience; (b) information I have received from the Debtors and my colleagues at FTI who are assisting me in my role as CRO, as well as other advisors of the Debtors; and/or (c) my review of relevant documents. If I were called upon to testify, I would testify competently to the facts and views set forth herein.

4.      Following the commencement of these Chapter 11 cases, the Debtors have suffered unexpected attrition among their rank and file employees working at their corporate headquarters and in certain regional field offices. Prepetition, the Debtors had already been stretched thin by losses in their accounting, finance and operations departments and cannot suffer further reductions without adversely impacting the conduct of these cases. Since the petition date alone, the Debtors have lost the services of eight key employees, including a permit and licensing specialist, a retail controller and several district and territory managers.

5.      In order to alleviate the detrimental effect that continued attrition would have on the Debtors' ongoing operations, I worked with the Debtors' management team to formulate a cash-based retention program to retain certain vital employees over the course of the sale process contemplated during the case. The program applies only to non-insider, non-executive employees

---

[2] A capitalized term used but not defined herein shall have the meaning ascribed to it in the KERP Motion.

working at the Debtors' headquarters facilities (and a handful of key field employees) but not to retail, store-level employees. In my view, each of the KERP participants serves a vital role at the Company and cannot be readily replaced. The KERP program, and each of its 29 participants, has also been vetted and approved by the Debtors' Executive Vice President/Chief Operations Officer.

6. As described in my First Day Declaration, the Debtors operate a vertically-integrated fuel supply and distribution network. The Debtors are parties to fuel purchase agreements with virtually every major domestic oil company. The acquired fuel is then distributed by the Debtors across their network of convenience stores, fuel stations and travel centers. Some of these are controlled-locations (*i.e.,* where the Debtors hold a leasehold interest in the subject premises), and the remainder are non-controlled locations (*i.e.,* where third parties own the business premises). The Debtors' controlled locations are partly operated in-house and partly by dealers. The complex, detailed and daily process of tracking and matching fuel purchase and supply commitments requires a highly skilled and dedicated workforce. The Debtors operate in numerous states, each with varying logistics, permitting and payment stream requirements.

7. To maintain their high standards and ensure their fuel supply system continues to perform as anticipated, it is vital the Debtors retain their specialized workforce while in chapter 11. Replacing these employees cannot occur without substantial costs, delays and disruptions in the Debtors' carefully synchronized wholesale and retail operations.

8. Retaining the Debtors' key non-insider employees is also critical as the Debtors embark on a sale process. By implementing the KERP program, the Debtors seek to acknowledge the extraordinary work that the headquarters team has been doing since the cases were commenced and to assure these employees that their continued, focused efforts will be recognized.

9. The KERP program covers 29 KERP Participants. The program is based on the Debtors' current compensation program (the KERP payments are based on 20% of the employee's annual base salary) and is intended to provide a meaningful reward for employees to remain with the Debtors during the chapter 11 process. The KERP Participants perform a variety of important business functions for the Debtors that are vital to the Debtors' ability to preserve and enhance stakeholder value. Most of the KERP Participants are employed in the Debtors' accounting, finance, treasury and operations departments. Many of them have developed deep institutional knowledge regarding the Debtors' business operations that would be difficult and expensive to replace on an expedited basis. In addition, the KERP Participants have provided important support to the Debtors' advisors in meeting the additional demands imposed by the chapter 11 process.

10. The Non-Insider KERP consists of a cash pool for retention payments to 29 non-insiders in an aggregate amount of approximately $521,000. Each participant is entitled to receive a retention payment not to exceed 20% of such person's base annual salary (with the average payout being approximately $16,268).[3] Payments to each participant will be structured as two equal cash payments, with half payable shortly following the approval of the KERP program and the balance paid following the consummation of a sale of substantially all of the Debtors' asserts. If a KERP Participant who receives the first installment under the KERP program voluntarily ceases his or her employment prior to the consummation of a sale, such installment would be subject to recapture by the Debtors. The Non-Insider KERP contemplates an installment payout feature that corresponds to the anticipated sale process in the chapter 11 cases. The second of the

---

[3] The KERP also contemplates a modest supplemental cash pool of $50,000 for the purpose of rewarding extraordinary contributions to the Debtors' sale effort. The supplemental cash pool will be available to those non-insider, non-executive employees who are not KERP Participants. No more than $15,000 will be awarded to any single employee. The amount and recipient of any award will be determined by the Debtors' management team, in their discretion. An award from the supplemental cash pool would be payable at the time the final payment under the KERP program.

Non-Insider KERP's two installments would be distributed at closing of a sale, which provides a retentive effect on the KERP Participants that is directly tied to maintaining the Debtors' current operations through the consummation of a transaction.

11. Although I have raised the need for a KERP program with advisors to the DIP Lenders, the Approved Budget under the Debtors' DIP financing does not, at present, reflect the cost of the Non-Insider KERP, nor have the DIP Lenders agreed to the proposed KERP program. The Debtors intend to amend the current Approved Budget to reflect the cost of the Non-Insider KERP and will submit the amended budget for review by the DIP Lenders in accordance with the interim order approving the DIP financing that was entered on March 23, 2023.

12. In formulating the KERP program, we evaluated whether the KERP's design, structure, and cost are reasonable and consistent with market practices. FTI analyzed twelve (12) non-insider plans approved in recent chapter 11 cases during the period from June 2016 through March 2022 (the "KERP Peer Group"). The KERP Peer Group was comprised of comparable non-insider plans (mostly in the oil and gas, and energy industries) with an average total cost of approximately $2.8 million. Among the KERP Peer Group, the average number of non-insider participants was 60 and the average cost per participant was approximately $51,000. Here, the total cost of the proposed Non-Insider KERP pool is under $522,000 with an average payment per participant of approximately $16,000, well-beneath the costs of comparable retention plans in the KERP Peer Group. (In addition, among the few plans in the KERP Peer Group that featured a supplemental cash pool, the amount of the pool was $300,000 – here, the Debtors propose a supplemental cash pool of $50,000.) FTI also looked at the Debtors' historical compensation practices as a gauge for the reasonableness of the KERP program. Although the Debtors have not

historically offered discretionary bonuses to supplement an employee's annual compensation, this is one reason that I believe the proposed KERP will have a meaningful retentive effect.

13. The KERP Participants include highly trained and specialized personnel that would be extremely difficult to replace without a negative effect on the Debtors' business. Given the increasing demands placed upon the potential KERP Participants during the chapter 11 cases, providing compensation designed to motivate key employees to remain with the Debtors through completion of the sale process is critical. It is my opinion that the proposed KERP program will serve its intended purpose of maintaining the Debtors' key non-insider workforce intact and engaged through the consummation of a sale.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 11th day of April, 2023, at New York, NY

*/s/ Michael Healy*
Michael Healy

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>MOUNTAIN EXPRESS OIL COMPANY, et al.,<br><br>Debtors. [1] | Chapter 11<br><br>Case No. 23-90147 (DRJ)<br><br>(Joint Administration Requested) |

**ORDER AUTHORIZING AND APPROVING THE DEBTORS' MOTION
FOR ENTRY OF AN ORDER (I) AUTHORIZING AND APPROVING
A NON-INSIDER KEY EMPLOYEE RETENTION
PLAN AND (II) GRANTING RELATED RELIEF**

(Related Docket No. _____)

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order"), authorizing the Debtors to adopt the Non-Insider KERP as more fully set forth in the Motion; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C.§§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the

---

[1] A complete list of each of the Debtors in these Chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at www.kccllc.net/mountainexpressoil. The location of Debtor Mountain Express Oil Company's principal place of business and the Debtors' service address in these Chapter 11 cases is 3650 Mansell Road, Suite 250, Alpharetta, GA 30022.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

1

DOCS_NY:47341.7

Motion; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. The Non-Insider KERP is authorized and approved in its entirety.

2. The Debtors are authorized, pursuant to sections 363(b), 363(c), and 503(c) of the Bankruptcy Code, to take all actions necessary to implement the Non-Insider KERP on the terms and conditions set forth in the Motion, including making any payments that come due pursuant to the terms thereof during these chapter 11 cases and without the need for further Court approval.

3. Notice of the Motion satisfies the requirements of Bankruptcy Rule 6004(a).

4. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

5. Notwithstanding the relief granted in this Order, any payment made or to be made by the Debtors pursuant to the authority granted herein shall be subject to and in compliance with the *Interim Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, and 507, Bankruptcy Rules 2002, 4001, 6004, and 9014, and Local Rule 4001-2 (i) Authorizing the Debtors to Use Cash Collateral and Obtain Post-Petition Financing, (ii) Granting Liens and Providing Super-Priority Administrative Expense Status, (iii) Granting Adequate Protection, (iv) Scheduling a Final Hearing, and (v) Granting Related Relief* entered on March 23, 2023 [Docket No. 117], as it may be amended, extended or superseded by a final order from time to time.

6. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

Dated: _____, 2023

_____
DAVID R. JONES
UNITED STATES BANKRUPTCY JUDGE

3