ii. Authorizing the Debtors to execute and enter into the DIP Loan Documents and to perform all such other and further acts as may be required in connection with the DIP Loan Documents, including the DIP Obligations, and all instruments, security agreements, assignments, pledges, mortgages, reaffirmations, and other documents referred to therein or requested by the DIP Lenders to give effect to the terms thereof;

iii. Authorizing the Debtors to use proceeds of the DIP Facility as permitted in the DIP Loan Documents and in accordance with this Final DIP Order;

iv. Authorizing the Debtors to grant, and granting super-priority administrative expense claims status pursuant to section 364(c)(1) of the Bankruptcy Code to the claims of the DIP Agent, for the benefit of the DIP Lenders in respect of the DIP Obligations;

v. Granting liens on and security interests in the DIP Collateral (as defined herein) as follows: (a) pursuant to sections 364(c)(2) and (d) of the Bankruptcy Code, valid, perfected, enforceable, and non-avoidable first priority priming liens on and security interests in all now owned or hereafter acquired assets and property of the Debtors subject to Permitted Liens ~~(as defined in the DIP Credit Agreement)~~ and the Excluded Assets, and (b) pursuant to section 364(c)(3) of the Bankruptcy Code, valid, perfected, enforceable, and non-avoidable second priority or other junior liens on and security interests in all now owned or hereafter acquired assets and property of the Debtors that are subject only to Permitted Liens, in each case on the terms set forth in the DIP Loan Documents;

vi. Authorizing the Debtors to use Cash Collateral in which the Prepetition Lenders (each as defined below) have an interest pursuant to any Prepetition Loan Document (as defined below) and granting adequate protection to the Prepetition Lenders in connection therewith;

3

including all such actions to create, protect, and perfect the DIP Liens in favor of the DIP Agent; and (c) comply with and perform all of the terms and conditions contained in the DIP Credit Agreement and other DIP Loan Documents.  Upon execution and delivery of the DIP Loan Documents and entry of this Final DIP Order, the DIP Loan Documents shall constitute valid and binding obligations of the Debtors, enforceable against each Debtor party thereto and their respective estates and any successor trustee, in accordance with the terms thereof.  No obligation, payment, transfer, or grant of security under the DIP Loan Documents as approved under this Final DIP Order shall be stayed, restrained, voided, voidable, or recoverable under the Bankruptcy Code or applicable nonbankruptcy law, except to the extent this Final DIP Order expressly provides otherwise.

4. The Debtors are expressly authorized to borrow from the DIP Lenders, on a final basis, a maximum principal amount of the DIP Loans outstanding at any time not to exceed **$37,850,000.00**, on the terms and conditions set forth in the DIP Loan Documents and this Final DIP Order.

5. ~~As approved by the Interim DIP Order, the~~The DIP Obligations are subject to (i) a Facility Fee (as defined in the DIP Credit Agreement) equal to five percent (5%) of the Committed Amount and (ii) interest ("Interest") at the annual rate of eleven percent (11.0%) per annum from and after entry of this Final DIP Order (for clarity, ten percent (10%) per annum for the period prior to entry of this Final DIP Order).  Accrued Interest earned shall be payable monthly in cash. Principal and accrued, unpaid Interest will be payable at the Maturity Date (as defined below).  As approved by the Interim DIP Order, the Facility Fee accrued on the closing of the DIP Facility to the benefit of the DIP Lenders and shall be fully earned and payable at the Maturity Date.  The fees and expenses relating to the DIP Facility, including the Facility Fee and

11

the last Business Day of the immediately preceding week, "Total Net Cash Flow," "Total Operating Costs," "Operating Cash Flow," and "Ending Unrestricted Cash Balance," (ii) for the applicable Test Period, the cumulative actual "Total Net Cash Flow" and "Total Operating Disbursements;" provided, however, that, with respect to the calculations for each of clauses (i) and (ii), such calculations shall be computed in a manner consistent with the manner such line items are computed in the Approved Budget in effect at such time, and (iii) the variance (as a percentage) of the amounts set forth in clause (ii) from the Approved Budget. The most recent 13-Week Forecast delivered to the DIP Lenders shall become the DIP Budget eight (8) calendar days after delivery thereof if approved by the DIP Lenders in their reasonable sole discretion; provided, however, that the DIP Lenders shall be deemed to have approved if they have not objected within eight (8) calendar days.

8. [Reserved]

9. ~~Upon~~Subject to paragraph 22 of this Final DIP Order, upon an Event of Default (as defined in the DIP Credit Agreement) and any applicable notice period, the DIP Agent may direct the Debtors to (or the DIP Agent may directly) instruct all account debtors of future accounts receivable included in the DIP Collateral to make payments directly into accounts satisfactory to the DIP Agent, in which event all such Cash Proceeds (as defined below) shall be applied in accordance with the DIP Loan Documents. As used herein, "Cash Proceeds" means Cash Collateral and other cash coming into the possession or control of the Debtors, including arising from the collection or other conversion to cash of the DIP Collateral, including cash from the sale of inventory and the collection of accounts receivable, tax refunds, deposits subject to setoff, and insurance proceeds.

10. ~~Following~~<u>Subject to paragraph 22 of this Final DIP Order, following</u> an Event of Default and any applicable notice period, the DIP Agent is authorized to collect upon, convert to Cash Proceeds, and enforce checks, drafts, instruments, and other forms of payment now or hereafter coming into its possession or under their control which constitute DIP Collateral or proceeds of DIP Collateral, subject to the provisions hereof.

11. Following an Event of Default and subject to the Carve-Out, the Debtors will not use or seek to use Cash Proceeds, unless the Debtors obtain an order of the Court approving such use, and (i) the DIP Lenders have consented to such order; or (ii) at the time of the entry of such an order, there are no DIP Obligations outstanding, and no obligation of the DIP Lenders to extend additional DIP Loans.

12. As security for the DIP Obligations, and as provided in the DIP Loan Documents and this Final DIP Order, the DIP Agent, for the benefit of the DIP Lenders, shall have (effective and continuing, without the necessity of the execution, filing, and/or recordation of mortgages, security agreements, control agreements, patent security agreements, trademarks security agreements, pledge agreements, financing statements, or otherwise) (a) pursuant to sections 364(c)(2), 364(c)(3) and 364(d)(1) of the Bankruptcy Code, valid, binding, fully perfected, enforceable, and non-avoidable first-priority priming liens on and security interests in all now owned or hereafter acquired assets and property of the Debtors that is not otherwise subject to the Permitted Liens (as defined below), including, but not limited to, the Prepetition Collateral and avoidance actions under chapter 5 of the Bankruptcy Code and applicable state law (collectively, "<u>Avoidance Actions</u>")[5] or the proceeds thereof (collectively, "<u>Avoidance Action</u>

---

[5] The Avoidance Actions shall be considered "last-resort collateral," meaning that the DIP Agent and the DIP Lenders shall use reasonably-commercial efforts to satisfy or repay the DIP Loans first from all other DIP Collateral (as defined herein) before applying the Avoidance Action Proceeds to the obligations under the DIP Loans.

15

Prepetition Obligations or (b) the extent, legality, validity, priority, perfection, nonavoidability, or enforceability of the Prepetition Liens shall be filed by objection or adversary proceeding with the Court (each of the foregoing, a "Challenge") (x) by the Committee (which already has standing) within sixty (60) days from the appointment of the Committee, or (y) by any other party in interest with requisite standing within seventy-five (75) days from the entry of the Interim DIP Order, in each of clauses (x) and (y) as may be extended in writing by the Prepetition Agent (at the direction of the Prepetition Lenders in their sole discretion) in respect of the Prepetition Obligations (in each case, the "Challenge Deadline"). Notwithstanding the foregoing, if a chapter 7 or 11 trustee is appointed prior to the expiration of the Challenge Deadline, he or she shall have until the later of the expiration of the Challenge Deadline or thirty (30) days from the date of appointment to assert a Prepetition Debt Objection, subject to extension by the Court for cause.  The Debtors' Stipulations shall be binding upon the Debtors' estates and all parties in interest except to the extent any Prepetition Debt Objection is timely filed and successfully pursued. If no Prepetition Debt Objection is timely filed, or if a Prepetition Debt Objection is timely filed but denied, (a) the Prepetition Obligations shall be deemed allowed in full, shall not be subject to any setoff, recoupment, counterclaim, avoidance, subordination, deduction, cure, reinstatement, or claim of any kind, and shall not be subject to any further objection or challenge by any party at any time, and the Prepetition Liens as applicable, shall be deemed legal, valid, perfected, enforceable, and non-avoidable for all purposes and of first and senior priority, subject to only the other Permitted Liens, the Carve-Out and the DIP Liens, and (b) the Prepetition Agent, the Prepetition Lenders and each of their agents, officers, directors, employees, attorneys, professionals, successors, and assigns shall be deemed released and discharged from any and all claims and causes of action related to or arising

23

out of the Prepetition Loan Documents and shall not be subject to any further objection or challenge by any party at any time.  For the avoidance of doubt, nothing set forth in this Final DIP Order or the DIP Documents, nor the roll-up of the Prepetition Obligations hereunder, shall (a) eliminate by virtue of the roll-up of the Prepetition Obligations any Challenge or (b) otherwise affect the right of the Committee (which already has standing) or any other party in interest with requisite standing to bring a Challenge consistent with this paragraph 19; *provided, however*, that nothing set forth herein shall be deemed a waiver of the DIP Lenders' rights to challenge the standing of any party in interest (other than the Committee) asserting standing to assert a Challenge.

20. It shall constitute an Event of Default in respect of the DIP Loan Documents if the Debtors do not comply with the following milestones (the "Case Milestones"):

    a. Intentionally Omitted;

    b. Intentionally Omitted;

    c. By April 25, 2023, the Debtors shall obtain entry of an order of the Court, in form and substance acceptable to the DIP Agent approving the DIP Facility on a final basis;

    d. Not later than eighty-six (86) days after the Petition Date, the Debtors shall file a motion to establish bidding procedures for the sale of substantially all of the Debtors' assets (the "Bid Procedures Motion");

    e. Not later than one hundred ten (110) days after the Petition Date, the Debtors shall obtain entry of an order of the