IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| MOUNTAIN EXPRESS OIL COMPANY, *et al.*,[1] | ) ) ) | Case No. 23-90147 (DRJ) |
| Debtors. | ) ) ) ) | (Jointly Administered) |

**MOTION OF THE NECESSITY LANDLORDS FOR ENTRY
OF AN ORDER (I) COMPELLING DEBTORS TO COMPLY WITH POST-
PETITION OBLIGATIONS UNDER UNEXPIRED LEASES OF REAL PROPERTY
PURSUANT TO 11 U.S.C. § 365(d)(3) AND (II) GRANTING RELATED RELIEF**

> **This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing.**
>
> **Represented parties should act through their attorney.**

Landlords (i) AFN ABSPROP001, LLC, (ii) ARG MESMOAR001, LLC, (iii) ARG MEVNAAL001, LLC, and (iv) ARG E19PCK001, LLC, each affiliated with The Necessity Retail REIT, Inc. (collectively, the "<u>Necessity Landlords</u>") hereby file this Motion for Entry of

---

[1] A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' claims and noticing agent at www.kccllc.net/mountainexpressoil. The location of Debtor Mountain Express Oil Company's principal place of business and the Debtors' service address in these Chapter 11 Cases is 3650 Mansell Road, Suite 250, Alpharetta, GA 30022.

an Order (I) Compelling Debtors to Comply with Post-Petition Obligations Under Unexpired Leases of Real Property Pursuant to 11 U.S.C. § 365(d)(3) and (II) Granting Related Relief. In support of the Motion, the Necessity Landlords respectfully state as follows:

### PRELIMINARY STATEMENT

1. Regrettably, the Necessity Landlords need Court intervention to require the Debtors' post-petition performance under the Leases. The Debtors and their subtenants and non-debtor affiliates continue to use, operate and benefit from the Necessity Landlords' properties. Yet with the exception of a partial payment made three weeks late, the Debtors have failed to pay post-petition rent to the Necessity Landlords on account of their 71 unexpired leases of real property, even though all Lease payment obligations were included and authorized to be paid under the Debtors' proposed DIP Budget. The Necessity Landlords understand that they are the *only* landlords who have still not received (i) stub rent for March and (ii) April rent for all unexpired leases that have not yet been rejected. The Debtors have not applied for or received Court approval excusing compliance with section 365(d)(3) of the Bankruptcy Code and they are not entitled to unilaterally elect non-compliance. Even if some or all of the Leases are eventually rejected, the Debtors' section 365(d)(3) obligations do not disappear. Those obligations have already accrued, were provided for under the Debtors' budget in the interim and final cash collateral orders, and must be paid timely.

2. Also troubling is that the Debtors are not current with their non-monetary obligations either. These non-monetary obligations, from regulatory compliance to financial reporting, are critical to the Necessity Landlords and the estates. For basic safety reasons, the Debtors must be able to ensure compliance with environmental regulatory obligations. The Necessity Landlords and other stakeholders must know that the Debtors are current with monitoring and inspection requirements under applicable law and that to the extent remediation

AFDOCS:27345583.3

is required, the problem is being addressed. The Debtors must also ensure that the payment of tax and insurance obligations are current, as those items affect, among other things, administrative solvency.

3. Compliance with section 365(d)(3) of the Bankruptcy Code is important for the remaining 43 Leases, even if the Debtors are able to reject the 28 Leases with the Necessity Landlords (the "Designated Leases"), the 27 subleases and 27 concession agreements that are all the subject of their emergency Rejection Motion (defined below).[2] The Debtors use the properties, collect rent from subtenants and generate revenue from their fuel agreements, among other revenue sources.

4. The law is clear: the Debtors need to timely pay their post-petition rent and perform their post-petition obligations. They have failed, and refused, to do so, and so the Court should compel them to comply with the law.

**RELIEF REQUESTED**

5. By this Motion, the Necessity Landlords seek entry of an Order, pursuant to sections 105(a) and 365(d)(3) of title 11 of the United States Code (the "Bankruptcy Code"), substantially in the form attached hereto as **Exhibit A**, compelling the Debtors to timely perform their post-petition monetary and nonmonetary obligations under the Leases, including but not limited to the payment of all overdue post-petition rent from the Petition Date through and including the present.

**JURISDICTION AND VENUE**

6. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core

---

[2] The Necessity Landlords oppose certain of the relief sought in the Rejection Motion as described more fully in the Necessity Landlords' Rejection Objection (as defined below).

3

proceeding within the meaning of 28 U.S.C. § 157(b). The Necessity Landlords consent to the entry of a final order by the Court pursuant to Federal Rule of Bankruptcy Procedure 7008.

7. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

8. The statutory bases for the relief requested herein are sections 105(a) and 365(d)(3) of the Bankruptcy Code.

## RELEVANT BACKGROUND

**A. Debtors' Failure to Satisfy Monetary Obligations Under the Leases**

9. The Necessity Landlords are landlords under seventy-one (71) leases with certain debtor entities throughout six (6) states, as follows:

(i) AFN ABSPROP001, LLC is landlord and Texas MEX Limited Company, LLC is tenant under six (6) leases of real property located in Texas, which were also guaranteed by Mountain Express oil Company;

(ii) AFN ABSPROP001 LLC and/or ARG MESMOAR001, LLC are landlord and Mountain Express Oil Company is tenant under nine (9) leases of real property located in Arkansas;

(iii) AFN ABSPROP001, LLC and/or ARG MEVNAAL001, LLC are landlord and MEX North Alabama, LLC is tenant under fifteen (15) leases of real property located in Alabama, which are also guaranteed by Mountain Express Oil Company;

(iv) AFN ABSPROP001 and/or ARG ME19PCK001, LLC are landlord and Mountain Express Oil Company is tenant under thirty-nine (39) leases of real property located in Georgia, of which eighteen (18) are subject to a Master Lease Agreement dated on or about February 28, 2019;

(v) AFN ABSPROP001, LLC is landlord and Mountain Express Oil Company is tenant under one (1) lease of real property located in South Carolina; and

(vi) AFN AFN ABSPROP001, LLC is landlord ad Mountain Express Oil Company is tenant under one (1) lease of real property located in Mississippi (collectively, the "Leases").

Each of the Leases generally requires, among other things, payment of all rent as provided thereunder on the first day of each month.

4

10. Prepetition, the Debtors failed to pay the amounts owed under the Leases as and when they become due. On or about January 10, 2023, the Necessity Landlords sent notices of default to the applicable Debtors under the Leases, stating that, among other things, rent due for January 2023 had not been timely paid. The Necessity Landlords indicated that the Debtors' failure to cure these defaults immediately by remitting the outstanding amounts would be deemed an event of default under the Leases and that the Necessity Landlords would exercise their rights as set forth in the Leases, under law or equity.

11. On or about January 13, 2023, the Necessity Landlords sent a second notice of default to the Debtors under the Leases, including the Necessity Landlords' intent to accelerate the amounts due under the Leases. The second notice of default demanded payment of all past due amounts, together with lawful accrued and unpaid interest thereon, on or before January 20, 2023 at 10:00 a.m.

12. On or about January 23, 2023, the Necessity Landlords sent a third notice of default to the Debtors under the Leases, again reiterating that the January 2023 rent had not been paid and notifying them that, effective as of January 2, 2023, all rent was accelerated to be due and owing under the Leases, totaling no less than $215,360,814.88.

13. To date, the Debtors have not paid any rent due and owing under the Leases from January 2023 onwards, except as set forth below.

14. As a result of these defaults, the Necessity Landlords filed various civil complaints against the Debtors on or around March 7 through March 9, 2023: (i) Case No. DC-23-02871 in the District Court of Dallas County, Texas; (ii) Case No. 04CV-23-654 in the Circuit Court of Benton County, Arkansas; (iii) Case No. 02-CV-2023-900409-00 in the Circuit Court of Mobile County, Alabama; (iv) Case No. 2023CP3000188 in the Court of Common

Pleas of Laurens County, South Carolina; (v) Case No. 48CI1:23-cv-00081 in the Circuit Court of Monroe County, Mississippi; and (vi) a civil case in the State Court for Fulton County, Georgia.

15. On March 18, 2023 (the "Petition Date"), the Debtors commenced these Chapter 11 Cases by filing voluntary petitions for bankruptcy protection under chapter 11 of the Bankruptcy Code. No trustee has been appointed and the Debtors continue to operate their businesses as debtors-in-protection.

16. On April 18, 2023, the Debtors filed their *Emergency First Omnibus Motion for Entry of an Order (I) Authorizing the Debtors to Reject Certain Unexpired Leases, Subleases and Related Contracts Pursuant to 11 U.S.C. § 365, and (II) Granting Related Relief* [Docket No. 295] (the "Rejection Motion"). The Necessity Landlords opposed the relief sought in the Rejection Motion as described more fully in the Necessity Landlords' *(I) Objection to Debtors' Request for Emergency Relief and to Schedule Expedited Hearing Under Local Rule of Bankruptcy Procedure 9013-1(i) and (II) Preliminary Objection to Debtors' Emergency First Omnibus Motion for Entry of an Order Authorizing the Debtors to Reject Certain Unexpired Leases, Subleases, and Related Contracts Pursuant to 11 U.S.C. § 365* [Docket No. 310] (the "Rejection Objection").

17. On April 20, 2023, the Debtors tendered a partial payment for April rent on account of the Leases, excluding the Designated Leases. No March rent has been paid on account of any of the Leases. No April rent has been paid on account of the Designated Leases.

18. The Debtors, non-debtor affiliates or their sub-tenants remain in possession of and using the leased properties. The Debtors continue to generate revenue and collect rent on all of the properties.

6

19. The Debtors have neither sought nor been granted any extension of their post-petition obligations (including with respect to the Leases) under § 365(d)(3) of the Bankruptcy Code.

**B. The Debtors' Non-Monetary Obligations Under the Leases**

20. The terms of each of the Leases are generally consistent across each document.[3] Among other things, the Leases require that the Debtors perform certain nonmonetary obligations and provide certain representations and warranties to the Necessity Landlords. The Leases provide that the performance of these nonmonetary covenants and the continued accuracy of the representations and warranties are material terms of the Leases, with the failure to observe them constituting a breach.

21. The Leases require that the Debtors timely provide proof of payment of all taxes and assessments with respect to each of the subject leased premises. The Leases also require that the Debtors provide insurance against loss or damage to the subject leased premises, including, without limitation, with respect to damage resulting from underground storage tanks ("USTs") and the Debtors' Existing Personalty. The Leases define Existing Personalty to be "any furniture, trade fixtures, equipment, or other personal property located upon the [leased premises]," with such Existing Personalty being the property of tenant, i.e. the Debtors.

22. The Leases require that the Debtors comply with all applicable local, state and federal law and regulations, including environmental laws and regulations, with respect to their occupation and operation of the leased premises, including but not limited to the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended by Superfund Amendments and Reauthorization Act of 1986, and the Federal Waste Disposal Act as amended

---

[3] The discussion herein is meant to include summaries of the relevant terms of the Leases. In the event of any inconsistency, the Lease provisions control.

by the Resource Conservation and Recovery Act of 1976. These requirements include the Debtors' use of any USTs, and the removal of any USTs upon the expiration or termination of the Lease at landlord's option.

23. The Leases include a representation and warranty by the Debtors that they have obtained all required licenses and permits, both governmental and private, to use and operate the leased premises as contemplated by the Leases. The Leases further include representations and warranties that the leased premises and the Debtors are not in violation of any applicable environmental law by their occupation and operation of the leased premises, including with respect to any USTs and hazardous materials. The Leases include a covenant by the Debtors to continue operating the leased premises in accordance with all applicable environmental laws, including the requirements that the Debtors, at their sole cost and expense, perform any environmental site assessments or other investigation or inspection of environmental conditions at the leased premises that may be required, including with respect to any USTs. These obligations of the Debtors survive any termination of the Lease.

24. The Leases require that the Debtors comply with all applicable laws relating to registration and operation of any USTs in order to qualify for any applicable state specific funds available to pay for any remediation of any release or threatened release of hazardous materials from such USTs.

## ARGUMENT

25. Section 365(d)(3) of the Bankruptcy Code provides that "[t]he trustee shall timely perform all the obligations of the debtor . . . arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 502(b)(1) of this title." This section requires the Debtors to continue

8

*timely* performing their obligations under any unexpired lease of nonresidential real property during the time period between the petition date and the date that such lease is assumed or rejected. *See, e.g.*, *In re CEC Entertainment, Inc.*, 625 B.R. 344, 353 (Bankr. S.D. Tex. 2020) ("Section 365(d)(3) unambiguously requires that debtors timely perform obligations under commercial leases. The Court cannot override that statutory mandate.").

26. The sole exception to this requirement is also provided by section 365(d)(3) of the Bankruptcy Code, which allows a bankruptcy court to "extend, for cause, the time for performance of any such obligation that arises within 60 days after the date of the order for relief, but the time for performance shall not be extended beyond such 60-day period." Here, the Debtors have never requested such relief, much less shown the requisite cause for the Court to enter any order granting such an extension. In the absence of any such order, the Debtors remain bound to honor their obligations under the Leases when and as required by the terms of the Leases. *See*, *e.g.*, *In re Appletree Markets, Inc.*, 139 B.R. 417, 420 (Bankr. S.D. Tex. 1992) (noting that text and legislative history of § 365(d)(3) require "that the obligations must be performed *at the time required in the lease*.") (emphasis in original); *CEC Entertainment*, 625 B.R. 344 at 353 ("Section 365(d)(3) unambiguously requires that debtors timely perform obligations under commercial leases. The Court cannot override that statutory mandate. As such, the Bankruptcy Code does not permit this Court to equitably alter [debtors'] state law rent obligations.") (citations and quotations omitted).

27. Furthermore, the post-petition amounts due under the Leases are not limited to the rent. The plain language of § 365(d)(3) provides that the Debtors must timely perform "all the obligations" under the Leases, *not* merely the payment of rent. This is in fact made clear from the legislative history of the section, wherein Senator Hatch observed that "this timely

performance requirement will insure that debtor-tenants pay their rent, common area and other charges on time . . . ." *In Amber's Stores, Inc.*, 193 B.R. 819, 822 (Bankr. N.D. Tex. 1996). The Debtors are therefore responsible for the immediate payment of all amounts coming due and payable postpetition under the Leases, which amounts include, but are not limited to, insurance, tax payments, default interest, and late fees.

28. The Debtors remain in possession and control of the premises subject to the Leases. For the last several months, the Debtors have collected rent from their subtenants, received payments from fuel agreements and other third party agreements, yet not made payments on the Leases. The same practice has continued post-petition. Yet the Debtors have refused to satisfy their accrued post-petition obligations, including the payment of March rent for all of the Leases and April rent for the Designated Leases, and will not commit to make any future payments. The payment of these obligations was contemplated under the Debtors' budget and the Debtors' actions are directly contrary to the dictates of § 365(d)(3) of the Code.

29. It appears however, the Debtors intend to argue that because they are rejecting the Designated Leases as of May 1st, their section 365(d)(3) obligations for April disappear upon rejection and they can defer the payment of April rent until the end of the case to be paid as an administrative expense based on the value to the estate. This argument is inconsistent with the plain text and legislative history of the Bankruptcy Code and unsupported by applicable caselaw. *See, e.g.*, *CEC Entertainment*, 625 B.R. 344 at 353.

30. As it stands, the Necessity Landlords (and presumably all similarly-situated creditors) are being forced to wait on the sidelines while the Debtors use their rent proceeds to fund operations, rather than to honor their post-petition obligations as required under the Bankruptcy Code. The Leases have not been rejected and Debtors and/or their sublessees are

still occupying the real property, and despite the Rejection Motion (which has not been granted), the payments are still due and owing and not excused.

31. Just as alarming are the Debtors' nonmonetary obligations under the Leases. These nonmonetary obligations require that the Debtors maintain adequate insurance on the leased premises and are current on any taxes or assessments thereon. Failure to perform these obligations could endanger the physical property itself; indeed, at least one of the properties has burned to the ground under the Debtors' tenancy, casting a spotlight on the need for the Debtors to comply with their insurance obligations. The Debtors' failure to timely comply with their tax obligations could give rise to governmental tax claims and/or liens against the leased properties.

32. Perhaps most concerning of all are the Debtors' continued environmental law obligations, including with respect to the operation of the USTs. The Leases require that the Debtors operate the leased premises and the USTs in accordance with all applicable local, state, and federal laws and regulations, including environmental laws. This includes the Debtors' responsibility to conduct any required investigations, inspections, or other assessments with respect to the USTs and any hazardous wastes on the leased premises. The Debtors' failure to observe these nonmonetary obligations could result in disastrous harm to the leased premises and the environment and substantial liability to the Debtors, whether directly or through their continuing indemnification obligations to the Necessity Landlords. In short, ensuring that these nonmonetary obligations are complied with is absolutely critical not only to the Necessity Landlords, but to all interest holders in these cases.

33. The Debtors are attempting to have their cake and eat it too, forgoing the timely performance of their obligations while reaping the benefits from their subleases and fuel supply agreements. The Court should not allow them to run roughshod over the Necessity Landlords'

rights in derogation of the Bankruptcy Code. The Debtors must be ordered to *immediately* pay all amounts due and owing and continue timely performing all of their nonmonetary obligations post-petition under *all* of the Leases, including the Designated Leases.

## CONCLUSION

WHEREFORE, The Necessity Landlords respectfully request that this Court enter an order (i) compelling the Debtors to timely comply with their post-petition monetary and nonmonetary obligations under the Leases pursuant to § 365(d)(3), including but not limited to the payment of post-petition rent, and (ii) granting such other relief as the Court may deem proper.

Dated: May 1, 2023
      New York, New York

**ARENTFOX SCHIFF LLP**

*/s/ Andrew I. Silfen*
Andrew I. Silfen (admitted *pro hac vice*)
Beth M. Brownstein (admitted *pro hac vice*)
1301 Avenue of the Americas, Floor 42
New York, NY 10019
Tel: (212) 484-3900
Fax: (212) 484-3990
Email: andrew.silfen@afslaw.com
      beth.brownstein@afslaw.com

*Counsel to AFN ABSPROP001, LLC, ARG MESMOAR001, LLC, ARG MEVNAAL001, LLC, and ARG E19PCK001, LLC*

## **CERTIFICATE OF SERVICE**

I certify that on May 1, 2023, a copy of the foregoing document was served via electronic mail on all counsel of record via the Court's CM/ECF system.

*/s/ Andrew I. Silfen*
Andrew I. Silfen

AFDOCS:27345583.3