IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| MOUNTAIN EXPRESS OIL COMPANY, *et al.,* | Case No. 23-90147 (DRJ) |
| Debtors.¹ | Jointly Administered |
| | **Related to Docket Nos. 288 & 373** |

### LIMITED OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO DEBTORS' APPLICATION TO EMPLOY AND RETAIN RAYMOND JAMES & ASSOCIATES, INC. AS INVESTMENT BANKER FOR THE DEBTORS

The Official Committee of Unsecured Creditors (the "Committee") appointed in the chapter 11 cases (the "Chapter 11 Cases") of the above-captioned debtors and debtors in possession (the "Debtors"), by and through its undersigned counsel, hereby submits this limited objection (the "Limited Objection") to the *Debtors' Application for Entry of an Order (I) Authorizing the Employment and Retention of Raymond James & Associates, Inc. as Investment Banker for the Debtors, Effective as of the Petition Date and (II) Granting Related Relief* [Docket No. 288] (the "Raymond James Application" or the "Application").² In support of this Limited Objection, the Committee respectfully states as follows:

---

¹ A complete list of each of the Debtors in the Chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at www.kccllc.net/mountainexpressoil. The location of Debtor Mountain Express Oil Company's principal place of business and the Debtors' service address in the Chapter 11 cases is 3650 Mansell Road, Suite 250, Alpharetta, GA 30022.

² The Application includes an amended and restated engagement letter agreement dated as of March 17, 2023, which is attached to the Application as Exhibit 1 (the "Engagement Letter") and two Declarations (defined below). The Engagement Letter includes two addendums, "Addendum A" and "Addendum B." Only Addendum A is disclosed in the Application. The Debtors have filed two declarations in support of the Application, (a) the *Declaration of Geoffrey Richards in Support of the Debtors' Application for Entry of an Order (I) Authorizing the Employment and Retention of Raymond James & Associates, Inc. as Investment Banker for the Debtors, Effective as of the Petition Date and (II) Granting Related Relief* [Docket No. 288, Exhibit B] (the "Original Richards Declaration"), and (b) the *Supplemental Declaration of Geoffrey Richards in Support of the Debtors' Application for Entry of an Order (I) Authorizing the Employment and Retention of Raymond James & Associates,*

1

**PRELIMINARY STATEMENT**[3]

1. The Committee does not question Raymond James's qualifications to provide investment-banking services to the Debtors in these cases. But the Committee objects to the proposed compensation structure set forth in the Raymond James Engagement Letter. If the Committee's read of the Raymond James Application is correct, Raymond James seeks approval under section 328 of the Bankruptcy Code of at least seven (7) different types of fees, including monthly advisory fees, financing transaction fees, restructuring fees, forbearance fees, business combination fees, alternative transaction fees, and break-up fees, which fees aggregate to at least $11.25 million.[4] Given the nature of these cases, the Committee does not support approval of these fees under section 328 of the Bankruptcy Code at this time.

2. From the Committee's early evaluation of these cases and its experience in the market place, the Committee does not believe that Raymond James' proposed compensation is in line with reality or the market. For one, the Fees are not tied to any value-performance benchmarks; instead, Raymond James would receive an outsized minimum fee regardless of the value realized by the estates.

3. In addition, the Engagement Letter appears to provide that Raymond James is entitled to a 2% fee on $171 million of prepetition-debt obligations that were "rolled up" under the Final DIP Order, resulting in an undisclosed $3.4 million charge against the new-money proceeds

---

*Inc. as Investment Banker for the Debtors, Effective as of the Petition Date and (II) Granting Related Relief* [Docket No. 373] (the "Supplemental Richards Declaration" and with the Original Richards Declaration, the "Declarations").

[3] Capitalized terms set forth in this Preliminary Statement shall have the meanings ascribed to such terms below or in the Engagement Letter, as applicable.

[4] This figure is calculated as follows: (a) $1.75 million minimum Financing Transaction Fee, (b) $2.5 million minimum Restructuring Transaction Fee, (c) $3.5 million minimum Business Combination Transaction Fee, and (d) $3.5 million minimum Alternative Transaction Fee, and excludes Monthly Advisory Fees, Database Expense Amounts, Forbearance Fees, and Break-Up Fees.

of the DIP Facility. This $3.4 million charge represents 9% of the new-money proceeds and 37% of the third tranche ($9.25 million) of incremental financing approved under the Final DIP Order, notwithstanding the fact that the estates may never receive this incremental financing or only receive $3.4 mm would result in a pass-through payment to Raymond James. Until such time as the DIP Financing is nearly paid in full, Raymond James will earn more in fees based on the DIP Financing than it will on fees related to any sale transaction—the Debtors' professed goal for these Chapter 11 Cases.

4. While the Committee believes that an investment banker providing value to the estates should be compensated, it cannot support approval of the Raymond James Application in its current form; in particular, the Committee cannot support: (a) the potential for payment of $11.25 million in aggregated *minimum* fees; (b) a 2% fee on the rolled-up prepetition debt obligations; (c) a "transaction" fee that is not tied to value triggers/benchmarks; (d) any stacking of "transaction" fees; (e) transaction fees representing more than 2% of the overall transaction value; (f) the indemnification carve-outs; and (g) a limitation-of-liability cap that does not include extend to all fees earned by Raymond James during this engagement.

5. In addition, the Committee is continuing to evaluate the impact of the supplemental disclosures recently made by Raymond James through the Supplemental Richards Declaration and their impact on these cases. As with the proposed compensation structure, the Committee will continue to engage with the Debtors' professionals regarding its concerns. But at this time, the Committee cannot support entry of an order approving the Raymond James Application in light of these additional disclosures.

6. The Committee had hoped that the parties would resolve these issues without the need to file this Limited Objection. Unfortunately, the parties could not come to an agreement

3

before the Committee's deadline to object[5] to the Application, and the Debtors/Raymond James were not inclined to further extend such deadline. As such, the Committee cannot support approval of the Raymond James Application at this time.

## JURISDICTION AND VENUE

7.     The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over the Chapter 11 Cases and this Limited Objection pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of Texas*, dated May 24, 2012. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). The Committee confirms its consent to the entry of a final order with respect to this Limited Objection if it is determined that the Court would lack Article III jurisdiction to enter such final order or judgment absent consent of the parties.

8.     Venue of the Chapter 11 Cases in this district is proper under 28 U.S.C. §§ 1408 and 1409.

## RELEVANT BACKGROUND

**A.    General Background**

9.     On March 18, 2023 (the "Petition Date"), the Debtors commenced the Chapter 11 Cases by filing petitions for relief under chapter 11 of the Bankruptcy Code. The Chapter 11 Cases are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Rule 1015-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules"). The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

---

[5]  On May 3, 2023, Debtors' counsel confirmed via email the Committee's objection deadline to the Raymond James Application was extended to Wednesday, May 10, 2023, at 5:00 P.M. (CT).

10. On April 4, 2023, pursuant to section 1102 of title 11 of the United States Code (the "Bankruptcy Code"), the Office of the United States Trustee for Region 7 (Southern and Western Districts of Texas) appointed the following entities as members of the Committee: (a) The Necessity Retail REIT, Inc.; (b) Total Image Solutions, LLC; and (c) Coca-Cola Bottling Company United, Inc. *See* Docket No. 202.

11. On April 5, 2023, the Committee selected McDermott Will & Emery ("McDermott") to serve as its counsel in connection with the Chapter 11 Cases, subject to Court approval. On April 6, 2023, the Committee selected Province, LLC ("Province") to serve as its financial advisor in connection with the Chapter 11 Cases, subject to Court Approval. The Committee filed its respective applications to retain McDermott and Province on May 5, 2023. *See* Docket Nos. 371 and 372.

**B. Raymond James Application**

12. The Debtors filed the Raymond James Application on April 14, 2023. *See* Docket No. 284. The Original Richards Declaration and the Engagement Letter were attached to the Raymond James Application as exhibits. Pursuant to the terms of the Engagement Letter, Raymond James is entitled to one or more, and possibly all of the following fees (the "Proposed Fee Structure"):

(a) **Monthly Advisory Fee and Database Expense Amount:** Commencing on April 1, 2023, Raymond James is entitled to receive Monthly Advisory Fee of $150,000, the first two payments of which are to be credited against any Transaction Fees earned.[6]

(b) **Financing Transaction Fee:** Raymond James is entitled to the greater of $1.75 million (the "Minimum Financing

---

[6] Engagement Letter, § 2(a).

5

        Transaction Fee") and the sum of: "2% of the Proceeds[7] of new first lien senior secured notes and bank debt raised; 3% of the Proceeds of any second lien or junior debt raised; and 5% of equity or equity-linked securities raised."[8] The Engagement Letter clarifies that "the Minimum Financing Transaction Fee shall not apply to any debtor-in-possession financing ("DIP Financing")."[9] There is no minimum consideration or threshold attached to the Minimum Financing Transaction Fee.[10]

(c) **Restructuring Transaction Fee:** Raymond James is entitled to a flat fee of $2.5 million in connection with a Restructuring Transaction.[11]

(d) **Forbearance Fee:** If one or more Forbearances are entered into between the Debtors and its secured lenders that have terms aggregating more than 3 months but less than 12 months, RJ is entitled to a $300,000 Forbearance Fees. Raymond James is entitled to only one Forbearance Fee under this construct.[12] However, if the terms any Forbearances aggregate to more than 12 months, the Restructuring Transaction Fee is triggered (i.e., Raymond James would be entitled to the $2.5 million Restructuring Transaction Fee instead of the $300,000 Forbearance Fee).[13]

(e) **Business Combination Transaction Fee:** Raymond James is entitled to the greater of (i) $3.5 million, and (ii) 2.25% of

---

[7] The term "Proceeds" is based on the gross consideration attached to a Financing Transaction and includes any subsequent increase in Proceeds. *Id.*, at § 2(b)(ii)(B). This definition is too broad.

[8] *Id.*, at § 2(b).

[9] *Id.*, at § 2(b).

[10] The Committee reads the Engagement Letter to provide that the Financing Fee applies solely to new money financing. Specifically, the term "Financing Transaction" is defined as requiring the issuance of new money "as opposed to the restructuring, renegotiation, forgiveness, or exchange with or by the holder of any outstanding debt obligation . . ." with any such transactions constituting "a Restructuring Transaction or "such other financing of any type committed to complete any other Transaction." *Id.*, at Definition (b). It is the Committee's understanding, however, that Raymond James interprets the Engagement Letter to allow it to forgo the Minimum Financing Transaction Fee (which expressly carves out the DIP Financing) in favor of 2% the entirety of the DIP Financing amounts, notwithstanding the fact that the Engagement Letter provides that the fee would be on "2% of the Proceeds of new first lien senior secured notes and bank debt *raised*." (emphasis added).

[11] The Committee's read of the Engagement Letter is that the rolled-up amounts would qualify for a Restructuring Transaction Fee, not a Financing Fee. *See id.*, at Definitions (b) and (e), § 2(c). Either way, the Committee does not feel that it is appropriate for Raymond James to receive a fee on the rolled up amounts of the DIP, and, to the Committee's knowledge, Raymond James had not earned such a fee in prior cases.

[12] *Id.*, at § 2(d).

[13] *Id.*

6

<div style="padding-left: 2em;">

the Transaction Value. The term Transaction Value means "the fair market value of ***all*** of the Debtors' assets."[14] Among other things, a Business Combination Transaction is triggered by one or more sales of "all or a substantial portion of" the Debtors' assets and the assignment of executory contracts.[15] The Business Combination Transaction Fee is payable at closing immediately and directly from the proceeds of any qualifying transaction, as opposed to being payable at the conclusion of the Chapter 11 Cases as part of a final fee application.

(f) **Alternative Transaction Fee:** Under the Engagement Letter, RJ is entitled to an Alternative Transaction Fee in an amount customary "for transactions of similar size and nature (but in no event less than $3.5 million) as mutually agreed upon by the Parties."[16] The term "Alternative Transactions" means "any transactions or series or combination of transactions outside of the Company's ordinary course of business, other than a Business Combination Transaction . . ."[17] Raymond James may earn one or more Alternative Transaction Fees, but the aggregate amount of Alternative Transaction Fees cannot exceed the Business Combination Transaction Fee.[18] If Raymond James receives an Alternative Transaction Fee and a subsequent Business Combination Transaction Fee is triggered, Raymond James is entitled to the difference between to the two fees up to the amount of the Business Combination Transaction Fee.[19]

(g) **Break-Up Amount:** If the Debtors or its equity holders enter into a Definitive Agreement for a Business Combination Transaction that fails to close and the Debtors

</div>

---

[14] *Id.*, at § 2(e)(ii). In other words, if certain assets are excluded from a sale, Raymond James is entitled to the value of those retained or excluded assets when calculating the amount of its Business Combination Transaction Fee.

[15] *Id.*, at § 2(e)(i).

[16] *Id.*, at § 2(e)(iii).

[17] *Id.* As the BCTF and the Alternative Transaction Fee bear the same $3.5 million minimum amount, the Committee assumes that the Alternative Transaction is provided for to ensure that Raymond James receives the minimum Business Combination Transaction Fee even if no Business Combination Transaction is ever achieved.

[18] *Id.*

[19] *Id.*

receive a break-up or other compensatory fee as a result, Raymond James is entitled to 35% of any such fees.[20]

13. If more than one Financing Transaction Fee, Restructuring Transaction Fee, Business Combination Transaction Fee, and/or Alternative Transaction Fee (collectively, the "Transaction Fees") is earned, Raymond James is entitled to only one (the highest) of the applicable Transaction Fee.[21] Other than a credit of the first two (2) Monthly Advisory Fees against any Transaction Fee, there are no other offsetting mechanisms under the Engagement Letter with respect to the various Transaction Fees. The Transaction Fees carry a 12-month tail. To the extent that Raymond James' expenses have not be satisfied in full, the Tail Period is extended until such time as the expenses are paid.[22]

14. In addition, under the Engagement Letter, Raymond James is entitled to reimbursement of expenses, including legal counsel, [23] and its liability is capped "at 50% of the Transaction Fee actually earned by Raymond James."[24]

## **LIMITED OBJECTION**

15. As noted above, the Committee takes no issue with the necessity of the retention of an investment banker in connection with these Chapter 11 Cases. Nor might the Committee have no issue with Raymond James serving in that role, subject to further explanation and analysis regarding these newly-filed disclosures and appropriate safeguards acceptable to the UCC. But the

---

[20] *Id.*, at § 2(e)(iv).

[21] *See id.,* at § 2(e)(v) ("If a single Transaction constitutes more than one of a Restructuring Transaction, a Business Combination Transaction and an Alternative Transaction, then Raymond James shall only be paid the greatest of the applicable Transaction Fee; provided, however, nothing herein shall prevent Raymond James from collecting the applicable Transaction Fee for separate and independent Transactions during the Term or the during the Tail Period.").

[22] *Id.*, at § 4.

[23] *Id.*, at § 3.

[24] *See Id.,* at Addendum A. It is unclear if this applies to each Transaction Fee earned or only to the Transaction Fee related to the alleged wrongdoing.

8

Committee is concerned with a Proposed Compensation Structure that includes seven (7) different types of earnable fees, four of which—the Transaction Fees—aggregate to $11.25 million in minimum amounts—where there is virtually no offsetting, and there are no minimum thresholders or benchmarks required to earn such fees. The Committee further takes issue with the proposed fees attached to the amounts rolled up under the DIP Facility. Not only are these fees not market, but as far as the Committee knows, Raymond James has not earned such a fee in past engagements. Further, if Raymond James is entitled to a 2% fee on the $171 million of rolled up prepetition debt obligations, as it insists it does, then the result is a previously undisclosed $3.4 million charge against the new money portion of the DIP Facility. This change represents 9% of the new money proceeds and 37% of the third tranche ($9.25 million) of incremental financing approved under the Final DIP Order, notwithstanding the fact that the estates may never receive this incremental financing. Thus, under the Proposed Fee Structure, Raymond James will earn more in fees based on the DIP Financing than it will on fees related to any sale transaction until such time that the DIP Financing is more or less paid in full.

16. The Committee also takes issue with the proposed indemnification carveouts and the cap on Raymond James' liability under the Engagement Letter.

17. At bottom, the language of the Engagement Letter is not clear and the Committee has yet to receive a written explanation as to what Raymond James believes it is entitled to in terms of overall fees for this engagement. As every dollar that goes out of the estates means a dollar that is unavailable to satisfy general unsecured claims, the Committee cannot support the Proposed Fee Structure in its current form and must have clarification with respect to the terms of the Engagement Letter generally. In addition, the circumstances of these cases do not support approval of the RJ fees under section 328 at this time. Nothing in the RJ engagement letter ties RJ's fees to

any performance benchmark – e.g., sale value. Thus, authorizing minimum fees related to any transaction without any performance benchmarks is tantamount to guaranteeing compensation to RJ without regard to the benefit conferred to the estate. Given the information delay (and likely gap), it is unwise at this stage of the case to essentially pre-approve RJ fees. Instead, all fees requested by RJ should be subject to review under section 330 for everyone – not just the court and the US Trustee. As such, all fees – including those based on the tail – should be subject to 330 review.

18. In addition, the Committee is still evaluating the supplemental disclosures set forth in the Supplemental Richards Declaration filed on May 5, 2023. Until such time as the Committee is comfortable that it has fully evaluated the disclosures and that sufficient procedures have been put in place, as appropriate, the Committee cannot support approval of the Raymond James Application at this time.

## RESERVATION OF RIGHTS

19. The Committee reserves all rights to supplement and/or amend this Limited Objection prior to or at any hearing therein, in the event the Committee's objections raised herein are not resolved or in the event that any further changes to the proposed order attached to the Raymond James Application are proposed, or to address the Raymond James Application or any other ancillary issues, including, without limitation, the disclosure issues raised in this Limited Objection.

## CONCLUSION

WHEREFORE, the Committee respectfully requests that this Court enter an order (i) denying the Raymond James Application, or (ii) granting such other relief as the Court may deem proper.

Dated: May 10, 2023
Dallas, Texas

**MCDERMOTT WILL & EMERY LLP**

<u>/s/  Marcus A. Helt</u>
Charles R. Gibbs (Texas Bar No. 7846300)
Marcus A. Helt (Texas Bar No. 24052187)
Jane A. Gerber (Texas Bar No. 24092416)
2501 North Harwood Street, Suite 1900
Dallas, Texas 75201-1664
Telephone: (214) 295-8000
Facsimile: (972) 232-3098
Email: crgibbs@mwe.com
         mhelt@mwe.com
         jagerber@mwe.com

-and-

Maris J. Kandestin (admitted *pro hac vice*)
The Nemours Building
1007 North Orange Street, 10th Floor
Wilmington, Delaware 19801
Telephone: (302) 485-3900
Facsimile: (302) 351-8711
Email:  mkandestin@mwe.com

*Proposed Counsel to the Official Committee of Unsecured Creditors*

**CERTIFICATE OF SERVICE**

    The undersigned does hereby certify that a true and correct copy of the foregoing document was served by CM/ECF system for the United States Bankruptcy Court for the Southern District of Texas on May 10, 2023.

                                           */s/ Marcus A. Helt*
                                           Marcus A. Helt