IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: <br><br> MOUNTAIN EXPRESS OIL COMPANY, *et al.*, <br><br> Debtors. | Chapter 11 <br><br> Case No. 23-90147 (DRJ) <br><br> (Jointly Administered) |

**OBJECTION OF FIRST HORIZON BANK, AS ADMINISTRATIVE AGENT TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' EMERGENCY MOTION (I) TO COMPEL PRODUCTION OF DOCUMENTS OF FIRST HORIZON BANK, AS PREPETITION AGENT AND AGENT PURSUANT TO BANKRUPTCY RULE 2004(C) AND (II) FOR ENTRY OF AN ORDER EXTENDING THE CHALLENGE PERIOD**

First Horizon Bank, as Administrative Agent for the DIP Loans and prepetition secured loans (the "Agent") objects to the *Emergency Motion of the Official Committee of Unsecured Creditors (i) to Compel Production of Documents of First Horizon Bank, as Prepetition Agent and Agent Pursuant to Bankruptcy Rule 2004(c) and (ii) for Entry of an Order Extending the Challenge Period* [Doc. 384] (the "Motion").[1] In support of its Objection, the Agent states as follows:

**INTRODUCTION**

Due to its own delay, the Committee has created a discovery dispute as a pretext for an extension of the Challenge Period that it bargained for and agreed to as a part of the Final DIP Order. After weeks of delay in requesting documents, the Committee agreed to a confidentiality agreement (the "Confidentiality Agreement"), reneged on that agreement, and then filed the Motion requesting additional time.[2] The Agent has never refused to produce loan documents and

---

[1] All capitalized terms not specifically defined herein shall have the meaning ascribed to them in the Motion.

[2] This is becoming a recurring theme from the Committee's counsel. Previously, the Committee negotiated and agreed to a form of the Final DIP Order and then, 1.5 hours before the April 25 final DIP hearing, submitted additional comments to the proposed order, resulting in a lengthy delay in the hearing.

1

in fact has produced the requested documents. The relief sought in the Motion is therefore moot.[3] Rather than simply executing the Confidentiality Agreement, the Committee instead decided to litigate against the Agent and incur the substantial cost of preparing the Motion and ancillary documents, which exceed fifty pages.

The Committee's incomplete recital of the background of this matter obscures the fact that it failed to seek loan documents for several weeks after its formation and failed to respond to the Agent for days at a time, resulting in unnecessary delay of the Committee's own making. In sum, the purported discovery dispute referenced in the Motion is nothing more than an excuse for seeking an extension of the investigation period and overbroad written discovery from the Agent, which was never previously requested or discussed. The Court should not reward the Committee for its own intransigence and delay and should therefore deny the Motion in its entirety.

## BACKGROUND

**A.     Case Background**

1.     On March 18, 2023 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. Since the Petition Date, the Debtors have continued to operate and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Debtors' chapter 11 cases.

2.     On April 4, 2023, the United States Trustee appointed the Committee. Shortly thereafter, the Committee selected its proposed counsel and financial advisor. Upon information and belief, the prepetition amounts owed to the Committee's constituents total approximately $4 million.

---

[3] The Agent has redacted certain confidential and proprietary information which does not preclude the Committee from completing its lien investigation.

3. By his own admission, the Committee's proposed counsel waited nearly three weeks after his law firm was hired to request loan documents from the Agent.[4]

B. **The Prepetition Debt Obligations and Liens**

4. The Debtors and the lenders thereunder (collectively, the "Prepetition Lenders") are parties to that First Amended and Restated Credit Agreement, dated as of March 12, 2020 (as amended, amended and restated, supplemented or otherwise modified from time to time, the "Prepetition Agreement," and, together with the other Loan Documents (as defined in the Prepetition Agreement), the "Loan Documents"). The Loan Documents evidence and govern the obligations of the Debtors for principal, accrued and unpaid interest, fees, costs, expenses, indemnities and other amounts arising under the Loan Documents totaling not less than $171,641,151.00 (the "Prepetition Obligations").[5] The Prepetition Obligations are secured by first priority liens and security interests (the "Prepetition Liens") granted to the Agent, on the collateral described and defined in the Loan Documents for the Prepetition Loan.

C. **The DIP Loan and Challenge Period**

5. On April 25, 2023, the Court entered the *Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, and 507, Bankruptcy Rules 2002, 4001, 6004, and 9014, and Local Rule 4001-1, (I) Authorizing the Debtors to Use Cash Collateral and Obtain Post-Petition Financing, (II) Granting Liens and Providing Super-Priority Prepetition Expense Status, (III) Granting Adequate Protections, and (IV) Granting Related Relief* [Docket No. 332] (the "Final DIP Order").

6. Pursuant to the Final DIP Order, the Agent agreed to loan an additional $37,850,000 to finance these cases, which amounts are secured by liens on all assets of these estates.

---

[4] According to its retention application, the McDermott firm was hired on April 5, yet Mr. Helt's Declaration (the "Helt Dec.") indicates that he did not request loan documents until April 24. *See* Doc. 371 at ¶ 6 and Doc. 385 at ¶ 8.
[5] *See* Final DIP Order at p.6, ¶ 2.

Accordingly, the total funded and unfunded obligations owing from the Debtors to the Agent total not less than $209 million.

7. Prior to and during the final DIP hearing, the terms and form of the Final DIP Order were heavily negotiated by the Debtors, the Agent and the Committee.[6]

8. The Final DIP Order provides the Committee with sixty (60) days from its appointment (the "Challenge Period") to seek to avoid, object to, or otherwise challenge the validity, enforceability, extent, priority, or perfection of the Prepetition Obligations or Prepetition Liens. Accordingly, the Challenge Period expires on June 3, 2023 (the "Challenge Deadline").

9. On April 27, 2023, three days following the entry of the Final DIP Order and the Committee's counsel's informal, initial request for the Loan Documents, counsel for the Agent immediately provided the Committee with a Confidentiality Agreement to review and sign.

10. On May 2, 2023, nearly a week after the Committee's counsel received a draft Confidentiality Agreement, counsel for the Agent received comments from the Committee and spent the next two days negotiating the terms of the Confidentiality Agreement with the Committee's counsel.

11. On May 5, 2023, after the Committee circulated a revised draft of the Confidentiality Agreement, counsel for the Agent promptly notified the Committee of its acceptance of these revisions. *See* Doc. 385-2 at p. 5 May 5, 2023 email from J. Elrod to D. Green ("Thank you. **These changes are acceptable to my client**. Please send signature pages at your earliest opportunity." [emphasis added])

12. Surprisingly, the Committee's counsel then refused to sign the Confidentiality Agreement because the individual committee members would not sign the agreement.

---

[6] In fact, as stated *supra*, the final DIP hearing was adjourned for further negotiations with the Committee resulting in lengthy delay.

13. Following email exchanges that same day, the Agent did not hear from Committee again on this subject until May 9, 2023 when the Motion was filed.[7]

14. Upon information and belief, the Committee has had a copy of the Credit Agreement between the Agent and the Debtors for some time. The Agent produced the remaining Loan Documents and documents evidencing the Agent's perfected liens on May 10, 2023.

## BASIS FOR OBJECTION

**I. The Motion is moot because the Agent has produced the Loan Documents and the Committee failed to confer in an appropriate manner prior to filing the Motion.**

15. Because the Agent has produced the Loan Documents requested by the Committee, the motion to compel is moot. Moreover, the Committee's own delay in conducting its investigation does not justify the relief sought in the Motion.

16. Other than the limited exchange of emails,[8] the Committee did not contact or continue negotiations with the Agent's counsel, and instead spent four days drafting the Motion, incurring unnecessary expense and thereby delaying document production. Simply signing the agreed Confidentiality Agreement, as modified and agreed to by the UCC's counsel, would have resulted in an immediate production of the Loan Documents.[9] *See Soto v. City of Concord*, 162 F.R.D. 603, 623 (N.D. Cal. 1995)(denying a motion to compel where counsel for the movant had

---

[7] In the interim, the McDermott firm filed its retention application [Doc. 371] in which it disclosed, for the first time, conflicts of interest with the Agent and Oak Street, who are likely the two largest creditors of these estates.
[8] *See* Helt Dec., Exhibits A, B.
[9] In the Motion, the Committee points to the "multiple options" that it gave the Agent regarding the Confidentiality Agreement. Four email exchanges, regarding an issue that has never before been raised does not constitute a good faith attempt to resolve a discovery dispute. *See Clement v. Alegre,* 177 Ca. App. 4th 1277 (2009)("'Argument is not the same as informal negotiation'; attempting informal resolution means more than the mere attempt by the discovery proponent 'to persuade the objector of the error of his ways'; and '[a] reasonable and good faith attempt at informal resolution entails something more than bickering with [opposing] counsel .... Rather, the law requires that counsel attempt to talk the matter over, compare their views, consult, and deliberate.'")(quotations omitted).

5

attempted to satisfy the good-faith conferment requirement by sending a single letter to opposing counsel). The Committee's counsel never requested a telephone conference to work through issues with the Confidentiality Agreement.

17. The original draft of the Confidentiality Agreement included signature blocks for the three Committee members. The Committee was aware that signatures from each member were a requirement and yet failed to mention its position on the issue until a week after the draft had been circulated and after all other changes had been agreed to. This stonewalling smacks of bad faith and suggests that the Committee's real motive was to seek an extension of the Challenge Period.

18. Nonetheless, in a good faith attempt to resolve the Motion, the Agent has produced all documents that were originally requested. Therefore, any remaining request for these documents should be denied as moot.[10]

19. In summary, the Committee's failure to obtain the Loan Documents (some of which it had already received from the Debtors) has not been due to the Agent's actions but is instead due to the Committee's own delay in requesting documents and failure to confer in good faith.

**II.   The Committee is not entitled to an extension of the Challenge Period.**

20. Due to its self-imposed delay in requesting loan documents and lack of good faith, the Committee has created this situation. Nonetheless, it still has over three weeks to conduct and complete its investigation.

---

[10] Accordingly, at this juncture, there is nothing for the Court to compel. *See, e.g.*, *Genereux v. Hardric Labs., Inc.*, C.A. Nos. 04-12137 and 10-11652, 2013 WL 12303197 at *1 (D.Mass. Mar. 14, 2013)("Plaintiff's Motion to Compel Production of Documents . . . is DENIED as moot . . . because defendant has since provided [the requested] information."); *Am. Gen. Life Ins. Co. v. Schoenthal Family, L.L.C., et al.*, 1:06-cv-695-WSD, 2007 WL 9701683 at *2 (N.D.Ga. Feb. 1, 2007)("Because Plaintiff's [sic] have agreed to produce documents in response to Requests 1, 2, 3, and 5, the motion [to compel] with respect to these requests is denied as moot.").

21. The Committee has not established a basis for the modification of the Final DIP Order, particularly given that the terms of the Final DIP Order were agreed to by the Committee and heavily negotiated. The Committee has failed to establish grounds under Federal Rule of Bankruptcy Procedure 9024 and has not even cited that rule or argued that its requirements have been satisfied.

22. Instead, the Committee argues that Rule 9006 applies. However, the Committee has not established cause to extend the Challenge Period and its own negligence caused this situation. The Committee still has over three weeks remaining to conduct the investigation.

23. The Committee alleges that it agreed to the Final DIP Order based on assurances from counsel for the Agent that he had the Loan Documents, had performed his own lien investigation and would provide the documents to the Committee following the entry of the Final DIP Order.

24. The Committee took over a week to respond to the Confidentiality Agreement and then after several days of negotiations, changed its position and refused to sign the Confidentiality Agreement.

25. Rather than continue negotiations past the initial set of emails, the Committee apparently decided to spend four days drafting the Motion and at no point during that time did they attempt to resolve the dispute. The Committee's choice to spend a week litigating over a minor issue (the signatories to the Confidentiality Agreement) does not entitle it to additional time.

26. If the Committee was truly concerned about the amount of time in the Challenge Period, the Committee could have signed the Confidentiality Agreement and begun reviewing the documents as early as May 4, 2023 (or even earlier, had the Committee made a timely document

request).[11] Instead the Committee delayed in requesting documents and chose to spend nearly a week of the Challenge Period litigating discovery rather than reviewing the Loan Documents.

### III. The Committee's proposed document requests are plainly overbroad and were only disclosed to the Agent upon the filing of the Motion.

27. The Committee requested production of "loan documents and lien-perfection materials," and only after nearly three weeks passed since its formation.[12] The Committee now seeks, via motion rather than a formal written discovery request, production of a broad range of documents[13] wholly unrelated to its original request and beyond the scope of documents which are necessary to the Committee to conduct a proper investigation as outlined in the Final DIP Order.[14]

28. The request made in the Motion is procedurally improper and would prolong the Challenge Period by months as the Agent would need to produce every document relating to its relationship with the Debtors. The Committee has never provided the Agent with any type of written discovery prior to filing the Motion.[15]

29. Pursuant to paragraph 19 of the Final DIP Order, the Committee is entitled to object to, challenge, or contest the existence, validity, priority, or amount of the Prepetition Obligations or the Prepetition Liens. The requests made in the Motion go far beyond the bounds of the documentation previously requested and the obligations outlined in the Final DIP Order.

---

[11] Signing the Confidentiality Agreement would not have prevented the Committee from coming before the Court at a later date, if it was later determined that any of the produced documents needed to be made available to the public.
[12] *See* Helt Dec., Exhibit A.
[13] The Committee is using a dispute over three signatures on a Confidentiality Agreement to improperly seek more documents and more time, than the Committee has ever before requested, much less negotiated. Through the Motion, the Committee has brought to the Court discovery issues which it has never attempted to meet and confer over, or even mention to, the Agent prior to the filing of the Motion. Such action is not only burdensome to the Court and the Debtors' estate but is evident of bad faith or dilatory tactics on part of the Committee.
[14] *See* Final DIP Order, ¶ 19.
[15] In fact, the Committee has not even served this discovery request on the Agent and has instead forced the Agent to find such request buried in the Motion.

30. Pursuant to Federal Rule of Civil Procedure 26(b)(1), made applicable to this proceeding through Federal Rule of Bankruptcy Procedure 7026, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." The burden, however, is on the moving party to show that the materials and information sought are relevant to the action or will lead to the discovery of admissible evidence. *See Export Worldwide, Ltd. V. Knight*, 241 F.R.D. 259, 263 (W.D. Tex. 2006).

33. The Committee has not met its burden to establish that all the requests made in the document request are necessary and relevant to conduct its investigation,[16] nor have they justified why, if such evidence is necessary, they have waited until halfway through the Challenge Period to request these documents.

34. The document requests contained in the Motion, including without limitation requests for "[a]ll Documentation and Communication Relating to the Prepetition Loan Facility", are overbroad. The bulk of the remaining requests are similarly overbroad or have been satisfied, and the Agent reserves the right to object on any and all grounds.

35. Given that the relevant loan documents have already been produced, the Motion is moot. The manner in which the Committee has sought the documents is procedurally defective and has resulted in unnecessary expense to these bankruptcy estates. The Committee's own failures do not warrant relief from this Court, and therefore the Motion should be denied.

---

[16] As an example, the Document Request defines "Communication" as "the transmittal of information of any kind, in any form, and by any means…" and then goes on to request "Communication" related to every agreement or relationship ever considered between the Agent and the Debtor. The requests are plainly overbroad and seek evidence wholly unrelated to the matters the Committee is permitted to investigate.

**WHEREFORE,** the Agent respectfully requests that the Court deny the Motion and grant any further relief that the Court deems just and appropriate.

Respectfully submitted this 11th day of May, 2023.

> **GREENBERG TRAURIG, LLP**
>
> By: */s/ John D. Elrod*
> Shari L. Heyen
> Texas Bar No. 09564750
> *Shari.Heyen@gtlaw.com*
> 1000 Louisiana St., Suite 1700
> Houston, Texas 77002
> Telephone:    (713) 374-3564
> Facsimile:    (713) 374-3505
>
> – and –
>
> John D. Elrod (admitted *pro hac vice*)
> *ElrodJ@gtlaw.com*
> Terminus 200, Suite 2500
> 3333 Piedmont Road, NE
> Atlanta, Georgia 30305
> Telephone:    (678) 553-2259
> Facsimile:    (678) 553-2269
>
> **COUNSEL FOR FIRST HORIZON BANK, AS ADMINISTRATIVE AGENT AND DIP AGENT**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served upon the parties eligible to receive notice through the Court's ECF facilities by electronic mail on May 11, 2023.

> */s/ John D. Elrod*
> John D. Elrod