**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| MOUNTAIN EXPRESS OIL COMPANY, et al., | Case No. 23-90147 (DRJ) |
| Debtors. [1] | (Jointly Administered) |

**DEBTORS' REPLY IN SUPPORT OF DEBTORS' MOTION
FOR ENTRY OF ORDER (I) RATIFYING THE APPOINTMENT
OF INDEPENDENT DIRECTORS EFFECTIVE AS OF THE PETITION
DATE; AND (II) AUTHORIZING THE PAYMENT OF DIRECTOR FEES**
(Related Docket Nos. 283, 370, 393)

The above-captioned debtors and debtors in possession (collectively, the "Debtors")
hereby reply (this "Reply") to the objection [Docket No. 370] (the "UST Objection") of the Office
of the Unites States Trustee (the "U.S. Trustee") and the objection [Docket No. 393] (the
"Committee Objection," and together with the UST Objection, the "Objections") of the Official
Committee of Unsecured Creditors (the "Committee") to the *Debtors' Motion for Entry of Order
(I) Ratifying the Appointment of Independent Directors Effective as of the Petition Date; and (II)
Authorizing the Payment of Director Fees* [Docket No. 283] (the "Motion"),[2] and in furtherance
thereof, respectfully state as follows:

**PRELIMINARY STATEMENT**

1.      The purpose of the Motion is to foster an open, transparent, and participation-
encouraging chapter 11 process by disclosing and seeking Court review and approval for an

---

[1]     A complete list of each of the Debtors in these Chapter 11 cases may be obtained on the website of the Debtors'
proposed claims and noticing agent at www.kccllc.net/mountainexpressoil. The location of Debtor Mountain Express
Oil Company's principal place of business and the Debtors' service address in these Chapter 11 cases is 3650 Mansell
Road, Suite 250, Alpharetta, GA 30022.

[2]     A capitalized term used but not defined herein shall have the meaning ascribed to it in the Motion.

DOCS_NY:47639.1 58614/002

arguably non-ordinary course action by the Debtors.  The core actions at the heart of the Motion are not challenged by the Committee or the U.S. Trustee—the appointment of the Independent Directors—nor could they be.  The Independent Directors are highly respected individuals in the insolvency and reorganization space with decades of experience, which individuals will act to, *inter alia*, ensure that any transactions  in these Chapter 11 Cases involving insiders are appropriate and in the best interest of the Debtors' estates.  In fact, the Committee goes so far as to affirmatively *support* the prudence of the Debtors' actions in appointing the Independent Directors.  *See* Committee Objection, ¶ 3.  Rather, the Committee and U.S. Trustee argue that the Court should deny the Motion because it is <u>*not required in the first place*</u>.[3]  Both the Committee and U.S. Trustee misunderstand the intent and purpose of the Motion and the important role it plays in ensuring an open and transparent chapter 11 process.

2.      The appointment of independent directors by a debtor pre-bankruptcy has been the subject of frequent criticisms, particularly in recent years.  These criticisms generally assert that the prepetition appointment of independent directors, which will necessarily have a material impact on a debtor's chapter 11 case, fail to provide an opportunity for parties in interest to consider, probe, or evaluate the propriety, purpose, and terms relating to these appointments. Here, the Motion is designed to address these concerns directly by providing parties in interest an opportunity to understand, evaluate, and respond to such appointments. Given the Objections, the Debtors efforts have been vindicated, albeit not in the way the Debtors initially expected.

3.      The Debtors are surprised that the watch-dog institutions of the Committee and U.S. Trustee would prefer a closed-door process which would omit the involvement of the Court and

---

[3]     The Committee also raises objections as to the manner in which the Special Transactions Committee of the Board operates that have been subsequently resolved, as more fully discussed below, by a further Resolution of the Board.

DOCS_NY:47639.1 58614/002

forgo transparency for parties in interest, in favor a process which would have excluded their constituents.[4]

4.      The Committee also objects to the inclusion in any order approving the Motion of a provision that (1) establishes the go-forward standard of care for the Independent Directors by exculpating them from any prospective negligence claims that could be asserted against them; and (2) requires this Court to pre-approve the filing of any lawsuit against the Independent Directors. Exculpating Independent Directors from negligence claims is consistent with the Fifth Circuit's recent opinion in *Nexpoint Advisors, L.P. v. Highland Capital Mgmt., L.P. (In re Highland Capital Mgmt., L.P.)*, 48 F.4th 419 (5th Cir. 2022).   Moreover, the Committee fails to explain why preservation of negligence claims against the Independent Directors—claims for which they are indemnified under the Debtors' corporate governance documents—in any way could benefit the Debtors' estates when the Debtors will be the ones satisfying any such claims.  Similarly, the Committee cannot explain how allowing this Court to act as a gatekeeper to prevent any frivolous claims from being asserted is not in the best interests of all stakeholders.

5.      The U.S. Trustee and Committee are simply missing the forest through the trees in the Objections, and the Court should grant the Motion.

---

[4]   The Debtors are especially troubled by the inflammatory tactics of the Committee in its Objection.  More particularly, the Committee asserts that it "is concerned that, based on the Governance Documents, the sale process is under the threat of being marred by conflict." Committee Objection, ¶ 33.  The technical issues underlying this commentary are collateral to the relief requested in the Motion and cast unsubstantiated, unnecessary, and, frankly, inappropriate and improper doubt on the Debtors' sale and marketing process.  The Committee unnecessarily attempts to place the Debtors' sale and marketing process under a value-chilling taint, to the seeming detriment of the Committee's own constituents.  While the Committee's Objection was filed entirely under seal (the Committee took no effort to file an appropriately redacted version to assist in the participation of its constituents), it was initially errantly filed openly on the Court's Docket and will ostensibly be the subject of open argument in the Court.  While the Committee took steps to take down the offending version of the document from the Docket, it was unable to do so prior to its dissemination by the press.   As a result, the Debtors are required to respond and otherwise address these reckless and unfounded allegations publicly.

3

## **REPLY**

6.      Since the filing of the Motion, the Debtors have worked with the U.S. Trustee and the Committee in a cooperative manner to address their concerns.  While open issues remain, the Debtors have resolved certain of the Committee's technical objections through a further resolution of the Board, which resolution is attached hereto as **Exhibit 1** (the "Resolution"), as well as through an amendment to the proposed order, reflected in the amended form of proposed order granting the Motion (the "Amended Proposed Order"), submitted concurrently herewith.  The Resolution establishes that the Special Transaction Committee may call a meeting at any time and that the two Independent Directors, acting unanimously, shall solely determine, upon advice of counsel, whether an action constitutes a Conflicted Transaction that is within the purview of the Special Transaction Committee. The Amended Proposed Order makes clear that if either of the two Independent Directors is unwilling or unable to serve, any replacement shall ultimately be subject to this Court's approval.   The Debtors address the remaining unresolved issues in the Objections below.

**A.      The Court has Authority to Approve the Ratification of the Appointment of the Independent Directors, and It Should Do So.**

7.      The thrust of the UST Objection is that Bankruptcy Code section 363(b) is not implicated, including with respect to the payment of the fees of the Independent Directors.  The UST Objection continues that section 105(a), which authorizes the Court to, *inter alia*, issue orders that are necessary or appropriate to carry out the provisions of the Bankruptcy Code, is inapplicable because the appointment of the Independent Directors occurred prepetition and the Bankruptcy Code does not expressly authorize the ratification of the appointment of the Independent Directors. *See* UST Objection, ¶¶ 8-9.  Similarly, the Committee goes to great lengths to describe that the

Debtors' corporate governance documents and the Independent Director's retention agreements do not _strictly_ require Court approval. *See* Committee Objection, ¶¶ 14-16.

8.      As discussed above, the purpose of the relief requested in the Motion is to aid in the transparent administration of these Chapter 11 Cases and to encourage the participation of parties in interest.  The Objections themselves vindicate the Debtors' actions in filing and defending the Motion, as well as the importance of these goals to the chapter 11 process.  As a result, the relief requested in the Motion is entirely consistent with the aims and objectives of the Bankruptcy Code and well within the Court's grant of authority.  Courts routinely take actions in furtherance of the chapter 11 process which are consistent with the Bankruptcy Code and its objectives, but which are not expressly spelled-out therein.[5]  Moreover, the Committee's assertion that the relief requested in the Motion is unprecedented is false; this Court has entered a substantially similar order in the recent past.[6]

9.      While the Debtors agree that the relief requested in the Motion is not "necessary" in the strictest sense, the relief requested is an important gap-filler to maintain the integrity and transparency of the chapter 11 process in response to industry-wide criticisms of the prepetition appointment of independent directors, which appointment is not subject to review, input and consideration from stakeholders or the Court.  Adopting procedures—such as the Motion—

---

[5]    *See, e.g., In re CoServ, L.L.C.*, 273 B.R. 487, 497-98 (Bankr. N.D. Tex. 2002) (stating in the context of critical vendor relief, "In such instances it is only logical that the bankruptcy court be able to use Section 105(a) of the Code to authorize satisfaction of the prepetition claim in aid of preservation or enhancement of the estate."); *cf. Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 468 (2017) (discussing approvingly of routine first day orders, such as employee wage and critical vendor orders, which might appear to violate the Bankruptcy Code's absolute priority rule on its face, but which are supported by "significant Code-related objectives").  Taking the U.S. Trustees' position to its logical conclusion, only those items which are expressly included in the Bankruptcy Code could be sought from the Court, which would have the effect of summarily discarding a significant portion of judicial opinions analyzing and defining the contours of the Bankruptcy Code.

[6]    *See Order (I) Authorizing the Appointment of Independent Directors Effective as of the Petition Date; (II) Granting the Debtors to Maintain the Independent Directors, and (III) Authorizing the Payment of Direct Fees*, *In re Westwind Manor Resort Association, Inc.*, Case No. 19-50026 (DRJ) (Bankr. S.D. Tex. April 2, 2019).

designed to shed light on the appointment of independent directors is a good thing and furthers the integrity of the chapter 11 process.

10.     Whether the Motion was strictly "necessary" is beside the point.  Parties routinely seek strictly "unnecessary" clarifying orders as a matter of good form where, for example, actions might violate the Bankruptcy Code, such as filing a motion to determine that the automatic stay of section 362(a) does not apply to a given action before undertaking it.  Certainly, it would be a massive departure from well-established practices for the U.S. Trustee and the Committee to now contend that parties should cease such prudent measures simply because they are not strictly "necessary."  Indeed, the U.S. Trustee often seeks to impose requirements not expressly included in the Bankruptcy Code, ostensibly based on similar desires.[7]  As a result, whether or not the relief requested in the Motion is strictly necessary is inconsequential, and the Court is well within its authority to grant the relief requested in the Motion.  Neither the Committee nor the U.S. Trustee can articulate any reason why the Debtors seeking such relief is not in the best interests of stakeholders and of the chapter 11 process.

**B.     Setting the Prospective Standard of Care for the Independent Directors and Including Gatekeeping Provision is Appropriate, Reasonable, and Consistent with Fifth Circuit Law**

11.     The Committee and U.S. Trustee argue in their Objections that the inclusion of paragraph 5 of the proposed order attached to the Motion (the "Gatekeeping Provision") (which is also included in the Amended Proposed Order) is unsupported and inappropriate. *See* UST Objection, Preliminary Statement; Committee Objection, ¶ 14.  The Committee Objection also

---

[7]     *See, e.g., Appendix B–Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 for Attorneys in Larger Chapter 11 Cases,* dated June 11, 2013, available at: https://www.justice.gov/ust/fee-guidelines.

6

baselessly asserts that the Debtors are seeking the inclusion of the Gatekeeping Provision merely to create precedential value.

12.    The Gatekeeping Provision is intended to achieve two objectives: (1) requiring any party seeking to assert claims against the Independent Directors (in their capacities as such) to come to this Court, rather than another court, before asserting such claims in order to allow this Court to determine the validity of such claims before engaging in potentially costly and distracting litigation, and (2) to clearly establish an appropriate "standard of care" for their Independent Directors (and thereby provide limited exculpations).[8] The Gatekeeping Provision is consistent with recent Fifth Circuit law and embodies and clarifies the longstanding *Barton* Doctrine, further aiding the transparency and efficient administration of the Debtors' estates.

13.    The Committee argues that establishing a standard of care for Independent Directors against which their conduct will be measured and exculpating them from negligence claims is unnecessary because the Independent Directors are indemnified under the Independent Directors' retention agreements and Georgia state law.  An indemnity just means that the Debtors will be required to fund a defense and satisfy any negligence judgment against the Independent Directors.  The point is that it is the *Debtors*—not the Independent Directors—whose assets will be used to defend against such claims and satisfy any judgment.  Setting the standard of care to exclude negligence based claims will *prevent* any such claims from being filed in the first place.  Why then, is the Committee—which acknowledges the Independent Directors' entitlement to indemnification for negligence—insisting that negligence claims can be asserted against them in the first place, thereby resulting in the depletion of estate assets for, at a minimum, defense costs?

---

[8]    The Committee's assertions that the Gatekeeping Provision is an impermissible non-consensual third-party release fundamentally misunderstands the issues presented by the Gatekeeping Provision.  No third-party release for pre-petition conduct is sought in the Motion or via the Gatekeeping Provision itself.

Setting the prospective standard of care for Independent Directors is not only consistent with Fifth Circuit law, but will discourage unnecessary litigation and mitigate against potential unnecessary and costly distractions in these Chapter 11 Cases.

14.     With respect to the gatekeeping functions, the Fifth Circuit has made clear, "Courts have long recognized bankruptcy courts can perform a gatekeeping function. Under the *Barton* doctrine, the bankruptcy court may require a party to obtain leave of the bankruptcy court before initiating an action in district court when the action is against the trustee or other bankruptcy-court-appointed officer, for acts done in the actor's official capacity."[9] The Gatekeeping Provision is entirely consistent with this concept, and, contrary to the assertions of the Committee, is not limited to use in the chapter 11 plan context.  Indeed, the foundation for the inclusion of this gatekeeping concept is the *Barton* Doctrine, which applies as soon as a court appoints a trustee or officer over the bankruptcy estate.  The Gatekeeping Provision is entirely consistent with, and in furtherance of, these concepts.  By including the Gatekeeper Provision in the publicly filed order approving the Motion, all parties are put on notice that they must come to this Court before asserting any claims against the Independent Directors, should any exist.  The Gatekeeper Provision, by requiring this Court's pre-approval, acts as a deterrent to frivolous lawsuits thereby preserving the estates' assets.

15.     Additionally, establishing the prospective standard of care for the Independent Directors that will govern their services to the Debtors in the Gatekeeping Provision is consistent with recent Fifth Circuit law.  In *Highland Capital*, the Fifth Circuit analogized the role of

---

[9]    *Nexpoint Advisors, L.P. v. Highland Capital Mgmt., L.P. (In re Highland Capital Mgmt., L.P.)*, 48 F.4th 419, 439 (5th Cir. 2022) (quoting *Villegas v. Schmidt*, 788 F.3d 156, 159 (5th Cir. 2015)) (internal marks omitted); *see also* Hr'g Tr. At 7:17-20, *In re 4E Brads Northamerica, LLC*, 22-50009 (DRJ) (Bankr. S.D. Tex. Sept. 26, 2022) (The Court: "I do think that the inclusion of the gatekeeper provision is something I've done for a long time, makes perfect sense. The Circuit has now validated the use of that concept.")

8

independent directors, such as those who are the subject of the Motion, to that of a court appointed trustee, and, citing established Fifth Circuit law, stated, "It follows that the Independent Directors are entitled to the limited qualified immunity for any actions short of gross negligence."[10]  In this regard, the Gatekeeping Provision offers exactly this relief and provides clarity about the standard of care applicable to the Independent Directors.  By including the Gatekeeping Provision, the Debtors are implementing Fifth Circuit law, while reducing the potential that third-parties might bring spurious and distracting litigation in other forums while the Debtors, and their Independent Directors, focus their efforts and energies on furthering value-maximizing objectives in these Chapter 11 Cases.  As a result, including the Gatekeeper provision in the order granting the Motion is supported by applicable authority and benefits the chapter 11 process.

[*Remainder of Page Intentionally Left Blank*]

---

[10]   *Highland Capital*, at 497.

## CONCLUSION

**WHEREFORE**, the Debtors respectfully request that this Court enter the Amended

Proposed Order granting the relief requested in the Motion and granting such other and further

relief as is just and proper under the circumstances.

Dated: May 24, 2023

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Michael D. Warner*
Michael D. Warner (SBT 00792304)
Steven W. Golden (SBT 24099681)
Benjamin L. Wallen (SBT 24102623)
440 Louisiana Street, Suite 900
Houston, TX 77002
Telephone: (713) 691-9385
Facsimile:  (713) 691-9407
mwarner@pszjlaw.com
sgolden@pszjlaw.com
bwallen@pszjlaw.com

-and-

Jeffrey N. Pomerantz (admitted *pro hac vice*)
Jeffrey W. Dulberg (admitted *pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile:  (310) 201-0760
jpomerantz@pszjlaw.com
jdulberg@pszjlaw.com

*Counsel to the Debtors and Debtors in Possession*

## Certificate of Service

I certify that on May 24, 2023, I caused a copy of the foregoing document to be served via
the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District
of Texas.

*/s/ Michael D. Warner*
Michael D. Warner

**EXHIBIT 1**

## WRITTEN CONSENT OF THE BOARD OF DIRECTORS
## OF MOUNTAIN EXPRESS OIL COMPANY

The undersigned, being all of the Directors of Mountain Express Oil Company, a Georgia corporation (together with its subsidiaries, the "**Company**"), acting without a meeting pursuant to Section 821 of the Georgia Business Corporation Code, O.C.G.A. section 14-2-101, et seq., hereby take the following action and adopt the following resolutions:

**WHEREAS** on March 15, 2023, the Board adopted resolutions (the "*March 15 Resolution*") that provides for the appointment of a Special Transactions Committee to evaluate Conflicted Transactions (as defined in the March 15 Resolution) involving the Company.

**WHEREAS** the Board has determined that certain amendments to the March 15 Board Resolution are necessary to clarify who determines whether a particular transaction is to be evaluated as a Conflicted Transaction and who can call a meeting of the Special Transactions Committee.

Based upon the foregoing,

**BE IT RESOLVED**, that the determination of whether a specific transaction is to be evaluated as a Conflicted Transaction, shall be made by solely the Special Transactions Committee, acting unanimously, following receipt of the advice of counsel; and

**BE IT FURTHER RESOLVED**, that the Special Transactions Committee shall meet when requested by any member of the Special Transactions Committee to do so and any such meeting shall require the attendance of all members of the Special Transactions Committee, whose attendance may be in person or via telephone or video conferencing.

This Written Consent may be executed in multiple counterparts, each of which shall be considered an original and all of which together will be deemed one instrument.

DATED: May 20, 2023

Turjo Wadud (May 23, 2023 12:35 EDT)

_____
Turjo Wadud, Director

_____
Lamar Frady, Director

_____
Crag Barbarosh, Director

_____
Lawrence Perkins, Director

DOCS_LA:349158.2 58614/002

## WRITTEN CONSENT OF THE BOARD OF DIRECTORS
## OF MOUNTAIN EXPRESS OIL COMPANY

The undersigned, being all of the Directors of Mountain Express Oil Company, a Georgia corporation (together with its subsidiaries, the "***Company***"), acting without a meeting pursuant to Section 821 of the Georgia Business Corporation Code, O.C.G.A. section 14-2-101, et seq., hereby take the following action and adopt the following resolutions:

**WHEREAS** on March 15, 2023, the Board adopted resolutions (the "***March 15 Resolution***") that provides for the appointment of a Special Transactions Committee to evaluate Conflicted Transactions (as defined in the March 15 Resolution) involving the Company.

**WHEREAS** the Board has determined that certain amendments to the March 15 Board Resolution are necessary to clarify who determines whether a particular transaction is to be evaluated as a Conflicted Transaction and who can call a meeting of the Special Transactions Committee.

Based upon the foregoing,

**BE IT RESOLVED**, that the determination of whether a specific transaction is to be evaluated as a Conflicted Transaction, shall be made by solely the Special Transactions Committee, acting unanimously, following receipt of the advice of counsel; and

**BE IT FURTHER RESOLVED**, that the Special Transactions Committee shall meet when requested by any member of the Special Transactions Committee to do so and any such meeting shall require the attendance of all members of the Special Transactions Committee, whose attendance may be in person or via telephone or video conferencing.

This Written Consent may be executed in multiple counterparts, each of which shall be considered an original and all of which together will be deemed one instrument.

DATED: May 20, 2023

_____
Turjo Wadud, Director

_____
Lamar Frady, Director

_____
Crag Barbarosh, Director

_____
Lawrence Perkins, Director

## WRITTEN CONSENT OF THE BOARD OF DIRECTORS
## OF MOUNTAIN EXPRESS OIL COMPANY

The undersigned, being all of the Directors of Mountain Express Oil Company, a Georgia corporation (together with its subsidiaries, the "*Company*"), acting without a meeting pursuant to Section 821 of the Georgia Business Corporation Code, O.C.G.A. section 14-2-101, et seq., hereby take the following action and adopt the following resolutions:

**WHEREAS** on March 15, 2023, the Board adopted resolutions (the "*March 15 Resolution*") that provides for the appointment of a Special Transactions Committee to evaluate Conflicted Transactions (as defined in the March 15 Resolution) involving the Company.

**WHEREAS** the Board has determined that certain amendments to the March 15 Board Resolution are necessary to clarify who determines whether a particular transaction is to be evaluated as a Conflicted Transaction and who can call a meeting of the Special Transactions Committee.

Based upon the foregoing,

**BE IT RESOLVED**, that the determination of whether a specific transaction is to be evaluated as a Conflicted Transaction, shall be made by solely the Special Transactions Committee, acting unanimously, following receipt of the advice of counsel; and

**BE IT FURTHER RESOLVED**, that the Special Transactions Committee shall meet when requested by any member of the Special Transactions Committee to do so and any such meeting shall require the attendance of all members of the Special Transactions Committee, whose attendance may be in person or via telephone or video conferencing.

This Written Consent may be executed in multiple counterparts, each of which shall be considered an original and all of which together will be deemed one instrument.

DATED: May 20, 2023

_____
Turjo Wadud, Director

_____
Lamar Frady, Director

_____
Crag Barbarosh, Director

_____
Lawrence Perkins, Director

DOCS_LA:349158.2 58614/002