**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re:<br><br>MOUNTAIN EXPRESS OIL COMPANY, et al.,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 23-90147 (DRJ)<br><br>(Jointly Administered) |

**DEBTORS' EMERGENCY SECOND OMNIBUS MOTION FOR ENTRY
OF AN ORDER (I) AUTHORIZING THE DEBTORS TO REJECT
CERTAIN EXECUTORY CONTRACTS PURSUANT TO
11 U.S.C. § 365 AND (II) GRANTING RELATED RELIEF
(Fuel Supply Agreements)**

> **Emergency relief has been requested. Relief is requested not later than June 22, 2023.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter on June 22, 2023, at 3:00 p.m. (prevailing Central Time). You may participate in the hearing either in person or by an audio and video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. Once connected, you will be asked to enter the conference room number. Judge Jones's conference room number is 205691. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Jones's homepage. The meeting code is "JudgeJones". Click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Jones's homepage. Select the case name, complete the required fields and click "Submit" to complete your appearance.**

> **PARTIES RECEIVING THIS MOTION SHOULD LOCATE THEIR RESPECTIVE NAMES AND LEASES/CONTRACTS ON THE LIST OF FUEL SUPPLY AGREEMENTS ON <u>EXHIBIT 1</u> TO THE PROPOSED ORDER ATTACHED HERETO.**

---

[1]  A complete list of each of the Debtors in these Chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at www.kccllc.net/mountainexpressoil. The location of Debtor Mountain Express Oil Company's principal place of business and the Debtors' service address in these Chapter 11 cases is 3650 Mansell Road, Suite 250, Alpharetta, GA 30022.

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") state the following in support of this motion (this "<u>Motion</u>"):

## RELIEF REQUESTED

1. In April, the Debtors filed an emergency motion[2] to reject 28 unexpired leases of nonresidential real property (the "<u>Rejected Leases</u>") with the Necessity Landlords.[3] The 28 Rejected Leases are a subset of 71 convenience store and gas station premises leased to the Debtors by the Necessity Landlords. The Debtors do not operate any of the stores covered by the Rejected Leases. Instead, the stores are operated by third-party dealers (the "<u>Dealers</u>") pursuant to subleases between the Debtors and the Dealers. As part of the Lease Rejection Motion, the Debtors also sought to reject the associated sublease for each of the locations (the "<u>Rejected Subleases</u>").[4]

2. As explained in the Lease Rejection Motion, in order for the prime leases to be economically attractive to the Debtors, the sublease rent and the other amounts paid by the Dealers must exceed the rent due to the Necessity Landlords. Yet, that is not the case for any of the 28 locations. The monthly sublease income for each location is approximately $176,000. The corresponding monthly rent due to the Necessity Landlords is approximately $489,000. Hence, the Debtors incur a monthly loss of about $313,000, which amount is only partly offset by fuel receipts from the Dealers. As a result, the Debtors filed the Lease Rejection Motion in order to mitigate their losses and the ongoing accrual of administrative rent.

---

[2] *See Debtors' <u>Emergency</u> First Omnibus Motion for Entry of an Order (i) Authorizing the Debtors to Reject Certain Unexpired Leases, Subleases and Related Contracts Pursuant to 11 U.S.C. § 365, and (ii) Granting Related Relief*, filed on April 18, 2023 [Docket No. 295] (the "<u>Lease Rejection Motion</u>"). Of the 28 locations, 18 are covered by a single master lease and the remaining 10 locations are covered by individual leases. On April 23, 2023, the Necessity Landlords filed an objection [Docket No. 310] to the Lease Rejection Motion.

[3] The Lease Rejection Motion defined those parties as AR Global. For convenience, this Motion refers to the lessors under the primary leases as the Necessity Landlords.

[4] Although there are 28 Rejected Leases, there are only 27 Rejected Subleases because there is no subtenant at one, non-operating location.

2

3

3. The Debtors are also party to fuel supply agreements under which the Debtors sell gasoline, diesel and other petroleum fuel products to each of the Dealers at the 27 subleased locations (collectively, the "Fuel Supply Agreements").[5] At the time the Debtors filed the Lease Rejection Motion in mid-April, the Debtors did not also seek to reject the Fuel Supply Agreements. The Debtors were hopeful that the Necessity Landlords and the Dealers might reach alternate arrangements for a direct tenancy of the store premises. If so, the Debtors believed that keeping the Fuel Supply Agreements intact would facilitate the ongoing operation of the stores for their intended purpose and would also alleviate hardship to the Dealers.

4. Following discussions between the Debtors and the Necessity Landlords, the Necessity Landlords have decided to retake possession of the leased premises. Accordingly, the Necessity Landlords have requested that the Debtors cease further delivery of fuel to the Dealers in anticipation of the simultaneous rejection of the Rejected Subleases (and the resulting surrender of the premises by the Dealers to the Necessity Landlords). Thus, in order to restore the leased premises to the Necessity Landlords and minimize the prolonged presence of unsold fuel at the stores, the Debtors must promptly discontinue fuel deliveries to the Dealers under the Fuel Supply Agreements. Accordingly, by this Motion, the Debtors seek entry of an order (the "Order") substantially in the form attached hereto, pursuant to sections 105(a) and 365(a) of title 11 of the United States Code (the "Bankruptcy Code") and Federal Rules of Bankruptcy Procedure 6006 and 6007 (the "Bankruptcy Rules"), authorizing the rejection of the Fuel Supply Agreements.

5. The Debtors seek to reject the Fuel Supply Agreements coincident with the date of rejection of the Rejected Leases and the Rejected Subleases. Under a compromise in principle

---

[5] Each of the Fuel Supply Agreements is more particularly identified on **Exhibit 1** to the proposed Order attached hereto.

reached by the Debtors and the Necessity Landlords,[6] the parties have agreed to reject the foregoing leases as of June 30, 2023 (the "Rejection Date"). Accordingly, pursuant to this Motion, the Debtors seek to reject the Fuel Supply Agreements as of the same Rejection Date.[7]

## JURISDICTION AND VENUE

6. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). The Debtors confirm their consent, pursuant to Bankruptcy Rule 7008, to the entry of a final order by the Court.

7. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

8. The statutory bases for the relief requested herein are section 365(a) of the Bankruptcy Code and Bankruptcy Rules 6006 and 6007.

## GENERAL BACKGROUND

9. On March 18, 2023 (the "Petition Date"), the Debtors each commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code. The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these chapter 11 cases.

10. On April 4, 2023, the Office of the United States Trustee (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors (the "Committee"), consisting of the

---

[6] The proposed compromise would resolve the Lease Rejection Motion as well as the motion filed by the Necessity Landlords on May 2, 2023 [Docket No. 353] seeking an order compelling the Debtors to comply with section 365(d)(3) (the "Compliance Motion"). By the Compliance Motion, the Necessity Landlords sought the payment of rent under certain leases for March and April 2023, among other relief.

[7] The Debtors will work with each of the Dealers to plan the scale and sequence of fuel deliveries in advance of the Rejection Date in order reduce, as reasonably practicable, any surplus fuel remaining at the store premises as of the Rejection Date.

4

following three members: (i) The Necessity Retail REIT, Inc.; (ii) Total Image Solutions, LLC; and (iii) Coca-Cola Bottling Company United, Inc. *See* Docket No. 202.

11. Founded in 2000 and based in Alpharetta, Georgia, the Debtors are a recognized leader in the fuel distribution and retail convenience industry. As one of the largest fuel distributors in the American South, the Debtors served 828 Fueling Centers and 27 Travel Centers across 27 states as of the Petition Date. The Debtors enjoy trusted relationships with every major oil company including ExxonMobil, BP, Shell, Chevron, Texaco, and Sunoco and have obtained Regal Status with Chevron, Platinum Status with ExxonMobil, and is the largest Pilot Dealer in the United States. Since 2013, the Debtors have distributed over 1.1 billion gallons of fuel.

12. Additional information regarding the Debtors' business and capital structure and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Michael Healy in Support of Debtors' Chapter 11 Petitions and First Day Relief* [Docket No. 57] (the "First Day Declaration"),[8] which is incorporated by reference herein.

## THE REJECTED FUEL SUPPLY AGREEMENTS

13. As noted, on April 18, 2023, the Debtors filed the Lease Rejection Motion. As described therein, the Debtors are party to certain leases with the Necessity Landlords pursuant to which the Debtors lease 28 real property sites located in Alabama, Arkansas, Georgia, and Texas. The Debtors have requested authority to reject those 28 leases. In addition, by the same motion, the Debtors seek to reject 27 subleases with the third-party Dealers that operate the convenience stores or gas stations at the leased locations. As explained more fully in the Lease Rejection Motion, the Debtors cannot profitably operate these dealered locations.

---

[8] A capitalized term used but not otherwise defined herein shall have the meanings ascribed to it in the First Day Declaration.

14. Each of the Dealers is also a party to a Fuel Supply Agreement with the Debtors pursuant to which the Debtors supply the Dealers with motor fuels. Generally speaking, under these agreements, each Dealer agrees to exclusively purchase petroleum products from the Debtors for a minimum term (usually tied to the term of the applicable sublease for the premises), at volume requirements based on the expected demand for motor fuel at the location. Although there may be certain exceptions, most of the Fuel Supply Agreements at issue here provide for wholesale deliveries of fuel by the Debtors to the Dealer on a cost-plus basis (i.e., at the Debtors' cost from its applicable oil company provider plus 1¢, for example).

15. Originally, in the Lease Rejection Motion, the Debtors did not seek to reject the Fuel Supply Agreements associated with each of the 27 subleased locations. The reason was simple–the Debtors anticipated that, as a consequence of the rejection of the Rejected Leases, the Necessity Landlords and the subtenants might explore a direct leasing relationship. If so, maintenance of the fuel supply arrangements at each of the subleased locations would have been advantageous to all parties. Each of the leased sites has historically been operated as, and is suitable primarily for, a convenience store or gas station. Keeping the fuel supply arrangements in place was intended to avoid disruption and serve as a possible catalyst for a direct lease between the Necessity Landlords and the existing subtenants

16. After the Debtors filed the Lease Rejection Motion, in an effort to assist the Necessity Landlords to evaluate the leased sites, the Debtors provided the Necessity Landlords with sublease records and contact information for each of the sublessees at the 27 subleased locations. The Debtors also provided environmental and regulatory records for the properties, including the registration status of the underground storage tank (UST) located on the property, the current remediation status of any release of hazardous materials, and the current status of any

notices of violations received from any applicable governmental or regulatory bodies. The Necessity Landlords have since determined to retake possession of the premises instead of marketing the Rejected Leases for potential assignment. As a result, the Debtors must also terminate the Rejected Sublease and the related Fuel Supply Agreements for each of the leased sites in anticipation of delivering possession to the Necessity Landlords.

17. Accordingly, the Debtors have determined, in the exercise of their business judgment, to reject the Fuel Supply Agreements as of the Rejection Date. The Debtors will work with each of the Dealers, in advance of the targeted Rejection Date of June 30, 2023, to gradually reduce deliveries to minimize any unsold fuel retained in the storage tanks at each location as of such date. The Debtors will also work with each Dealer to provide appropriate contact information at the Necessity Landlords to assist with the turnover of the premises.

## BASIS FOR RELIEF

18. Bankruptcy Code section 365(a) provides that a debtor-in-possession "subject to the court's approval, may . . . reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). "This provision allows a trustee to relieve the bankruptcy estate of burdensome agreements which have not been completely performed." *Stewart Title Guar. Co. v. Old Republic Nat'l Title Co.*, 83 F.3d 735, 741 (5th Cir. 1996) (citing *In re Murexco Petrol., Inc.*, 15 F.3d 60, 62 (5th Cir. 1994)). Bankruptcy courts have broad authority and considerable discretion in determining whether to approve the assumption or rejection of an executory contract or unexpired lease under Bankruptcy Code section 365. *See Class Five Nev. Claimants v. Dow Corning Corp. (In re Dow Corning Corp.)*, 280 F.3d 648, 656 (6th Cir. 2002).

19. The Supreme Court has recognized that "the authority to reject an executory contract" is not merely incidental, but rather it "is vital to the basic purpose of a Chapter 11

reorganization, because rejection can release the debtor's estate from burdensome obligations that can impede a successful reorganization." *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 528 (1984). Courts have similarly held that "[t]he right of a debtor in possession to reject certain contracts is fundamental to the bankruptcy system because it provides a mechanism through which severe financial burdens may be lifted while the debtor attempts to reorganize." *Westbury Real Estate Ventures, Inc. v. Bradlees Stores, Inc. (In re Bradlees Stores, Inc.)*, 194 B.R. 555, 558 n.1 (Bankr. S.D.N.Y. 1996). Rejection of an executory contract under Bankruptcy Code section 365(a) constitutes a breach of the contract—not a modification or termination. *See* 11 U.S.C. § 365(g); *see also Osprey-Troy Officentre, LLC v. World All. Fin. Corp.*, 502 F. App'x 455, 456-57 (6th Cir. 2012); *see also In re N. Am. Royalties, Inc.*, 276 B.R. 860, 865 (Bankr. E.D. Tenn. 2002) ("Rejection is independent of the contract terms.").

20. Rejection is "vital" and "fundamental," because in many cases, the debtor could not emerge from bankruptcy as a going concern if it were forced to specifically perform under burdensome executory contracts. *Leasing Serv. Corp. v. First Tenn. Bank N.A.*, 826 F.2d 434, 436 (6th Cir. 1987) ("Rejection denies the right of the contracting creditor to require the bankrupt estate to specifically perform..."); *see also Midway Motor Lodge of Elk Grove v. Innkeepers Telemgmt. & Equip. Corp.*, 54 F.3d 406, 407 (7th Cir. 1995) ("Rejection avoids specific performance, but the debtor assumes a financial obligation equivalent to damages for breach of contract."); *Bradlees Stores*, 194 B.R. at 558 ("Specific performance should not be permitted where the remedy would in effect do what section 365 meant to avoid, that is, impose burdensome contracts on the debtors.") (quoting *In re Fleishman*, 138 B.R. 641, 648 (Bankr. D. Mass. 1992)).

21. The Bankruptcy Code permits the debtor to breach burdensome executory contracts, transforming those obligations into a prepetition claim for damages, which may be

8

satisfied and discharged together with all other claims against the estate. *See* 11 U.S.C. § 365(g); *see also In re Richendollar*, No. 04-70774, 2007 WL 1039065 (Bankr. N.D. Ohio Mar. 31, 2007) ("The purpose of section 365(g) is to make clear that, under the doctrine of relation back, the other party to a contract that has not been assumed Section 365(g) is simply a general unsecured creditor.") (quoting 3 COLLIER ON BANKRUPTCY ¶ 365.09[1] (15th ed. 2006)).

22. Rejection thereby allows for ratable treatment of a debtor's unsecured creditors. *In re Albrechts Ohio Inns, Inc.*, 152 B.R. 496, 501–02 (Bankr. S.D. Ohio 1993) (noting the business judgment rule is satisfied for rejection purposes where "rejection will result in benefit to the debtor's general unsecured creditors").

23. The standard for rejection is satisfied when a trustee or debtor has made a business determination that rejection will benefit the estate. *See Commercial Fin. Ltd. v. Hawaii Dimensions, Inc. (In re Hawaii Dimensions, Inc.)*, 47 B.R. 425, 427 (D. Haw. 1985) ("under the business judgment test, a court should approve a debtor's proposed rejection if such rejection will benefit the estate.").

24. If a trustee's or debtor's business judgment has been reasonably exercised, a court should approve the assumption or rejection of an unexpired lease or executory contract. *See, e.g., NLRB v. Bildisco & Bildisco*, 462 U.S. at 523 (1984); *In re Federal Mogul Global, Inc.*, 293 B.R. 124, 126 (D. Del. 2003).

25. Here, the Debtors seek to reject the Fuel Supply Agreements because the necessity landlords, the master lessor under each of the Rejected Leases, has decided to regain possession of the leased premises. Accordingly, the Debtors will no longer retain an occupancy right at the premises and must therefore also reject the Rejected Subleases and the Fuel Supply Agreements. Insofar as each of the Fuel Supply Agreements is site-specific, the Debtors do not believe that

9

assumption or assignment of the Fuel Supply Agreements would be feasible or in the best interests of the Debtors' estates or their creditors. For the foregoing reasons, the Debtors request the Court enter the Order permitting the rejection of the Fuel Supply Agreements as of the agreed Rejection Date of June 30, 2023.[9]

## EMERGENCY CONSIDERATION

26. Emergency relief is appropriate under the circumstances because entry of the Order will not prejudice any party-in-interest to the chapter 11 cases. As discussed above, the relief requested in this Motion is in the Debtors' business judgment and is done in a manner to minimize costs and maximize value for the Debtors' estates. Moreover, even though the Debtors seek emergency consideration of this Motion, the requested Rejection Date of June 30 reflects the Debtors' ongoing efforts to permit the parties adequate time to plan for the termination of the tenancy at each location. In particular, timely entry of the order and implementation of the rejection's effectiveness coincident with the rejection of the leases and subleases at each location will benefit the estates by allowing for an orderly and synchronized transition of the premises back to the landlord.

27. Moreover, while entry of the Order will not prejudice any party-in-interest to the Chapter 11 cases, delay in the Court's consideration of the relief sought herein for the standard notice period[10] will, in practical terms, put the Debtors' efforts to reject these burdensome contracts on pause. Such delay in the entry of the proposed Order would simply lead to unnecessary and burdensome expenses on the Debtors' estates. Accordingly, the Debtors submit that emergency consideration is warranted.

---

[9] The Debtors reserve all of their rights with respect to the determination of whether any Fuel Supply Agreement is executory or has been (or will have been) terminated or breached.

[10] *See* Bankruptcy Rules 9013 and 9006(d); Local Rule 9013-1.

10

## NOTICE

28. Notice of the hearing on the relief requested in this Motion will be provided by the Debtors in accordance and compliance with Bankruptcy Rules 4001 and 9014, as well as the Local Rules, and is sufficient under the circumstances. The Debtors will provide notice to parties-in-interest, including on the Debtors' Master Service List and the counterparties to each Fuel Supply Agreement.

## CONCLUSION

**WHEREFORE**, the Debtors request that the Court enter the Order granting the relief requested herein and such other and further relief as may be just and proper under the circumstances.

Dated: June 19, 2023

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Michael D. Warner*
Michael D. Warner (SBT 00792304)
Steven W. Golden (SBT 24099681)
440 Louisiana Street, Suite 900
Houston, TX 77002
Telephone: (713) 691-9385
Facsimile:  (713) 691-9407
mwarner@pszjlaw.com
sgolden@pszjlaw.com

-and-

Jeffrey N. Pomerantz (admitted *pro hac vice*)
Jeffrey W. Dulberg (admitted *pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile:  (310) 201-0760
jpomerantz@pszjlaw.com
jdulberg@pszjlaw.com

*Counsel to the Debtors and Debtors in Possession*

**Certificate of Service**

      I certify that on June 19, 2023, I caused a copy of the foregoing document to be served via the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                                */s/ Michael D. Warner*
                                Michael D. Warner