**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| MOUNTAIN EXPRESS OIL COMPANY, et al., | Case No. 23-90147 (DRJ) |
| Debtors. [1] | (Jointly Administered) |

**ORDER (I) APPROVING BID PROCEDURES FOR SALE
OF THE DEBTORS' ASSETS, (II) APPROVING BID PROTECTIONS,
(III) SCHEDULING CERTAIN DATES WITH RESPECT THERETO,
(IV) APPROVING THE FORM AND MANNER OF NOTICE THEREOF, AND
(V) APPROVING CONTRACT ASSUMPTION AND ASSIGNMENT PROCEDURES**

**(Related Docket No. ——536)**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order"), (a) authorizing and approving the Bid Procedures, substantially in the form attached hereto as **Exhibit 1** (the "Bid Procedures"), (b) establishing certain dates and deadlines in connection with the Bid Procedures, (c) approving the Bid Protections (in the event of one or more Stalking Horse Purchasers), (d) approving procedures for assuming and assigning certain executory contracts and unexpired leases, and certain related notices, approving the Sale Notice, substantially in the form attached hereto as **Exhibit 2**, and approving the Cure Notice, substantially in the form attached hereto as **Exhibit 3**, all as more fully set forth in the Motion; and the Court having reviewed the evidence in support of the Motion; and the Court having reviewed the Motion and having heard the

---

[1]  A complete list of each of the Debtors in these Chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at www.kccllc.net/mountainexpressoil. The location of Debtor Mountain Express Oil Company's principal place of business and the Debtors' service address in these Chapter 11 cases is 3650 Mansell Road, Suite 250, Alpharetta, GA 30022.

[2]  Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion or the Bid Procedures, as applicable.

statements in support of the relief requested therein at a hearing before the Court (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and any objections to the Motion having been withdrawn with prejudice or overruled on the merits at the Hearing; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor,

**THE COURT FINDS**:[3]

A.      Jurisdiction and Venue. The Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334, and venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

B.      Bases for Relief. The bases for the relief requested in the Motion are sections 105, 363, 365, 503, and 507 of the Bankruptcy Code and Bankruptcy Rules 2002(a)(2), 6004, 6006, 9007, and 9014 and Bankruptcy Local Rule 9013-1.

C.      Notice of the Bid Procedures Motion. Good and sufficient notice of the Motion, the Bid Procedures, and the relief sought in the Motion has been given under the circumstances, and no other or further notice is required except as set forth herein and in the Bid Procedures. The notice of the Motion and of the Hearing is reasonable and sufficient in light of the circumstances and nature of the relief requested in the Motion, and no other or further notice of the Motion or the Hearing is necessary. A reasonable and fair opportunity to object to the Motion and the relief granted in this Order has been afforded under the circumstances.

---

[3]     The findings of fact and conclusions of law herein constitute the Court's findings of fact and conclusions of law for the purposes of Bankruptcy Rule 7052 made applicable pursuant to Bankruptcy Rule 9014. To the extent any findings of facts are conclusions of law, they are adopted as such.

D.     Bid Procedures. The Debtors have articulated good and sufficient reasons for authorizing and approving the Bid Procedures, which are fair, reasonable, and appropriate under the circumstances and designed to maximize value for the benefit of the Debtors' estates, their creditors, and other parties in interest. The Debtors, with the assistance of their advisors, are engaged in a fulsome marketing and sale process to solicit and develop the highest or otherwise best offer for the Assets. The Bid Procedures are designed to build on that marketing and sale process following entry of this Order.

E.     Bid Protections.  In the case of one or more Stalking Horse Purchasers, subject to the noticing requirements and objection procedures set forth in this Order, the Bid Protections (i) are an actual and necessary cost and expense of preserving the Debtors' estates within the meaning of sections 503(b) and 507(a)(2) of the Bankruptcy Code, (ii) are commensurate to the real and material benefits conferred upon the Debtors' estates by the Stalking Horse Purchaser(s), and (iii) are fair, reasonable, and appropriate, including in light of the commitments that have been made and the efforts that have been and will be expended by the Stalking Horse Purchaser(s). The Bid Protections are necessary to induce the Stalking Horse Purchaser(s) to pursue the Sale and to be bound by the Stalking Horse Purchase Agreement.

F.     Assumption and Assignment Procedures. The Cure Notice is reasonably calculated to provide counterparties to the Transferred Contracts to be assumed, assumed and assigned, or transferred with proper notice of the intended assumption, assumption and assignment, or transfer of their Transferred Contracts, any cure amounts, and the Assumption and Assignment Procedures, and no other or further notice of such intention, the cure amounts, or the Assumption and Assignment Procedures shall be required.

G.    <u>Sale Notice</u>. The Sale Notice is reasonably calculated to provide all interested parties with timely and proper notice of the Auction, including the date, time, and place of the Auction (if one is held) and the Bid Procedures and certain dates and deadlines related thereto, and no other or further notice of the Auction shall be required.

**NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED**:

1.    All objections, statements, and reservations of rights to the relief granted herein that have not been withdrawn with prejudice, waived, or settled are overruled and denied on the merits with prejudice.

**I.    Important Dates and Deadlines.**

2.    The following dates and deadlines regarding the Sale are hereby established, subject to the right of the Debtors, to modify the following dates in consultation with the Consultation Parties (as defined in the Bid Procedures), and with the consent of the DIP Agent, provided notice is given in accordance with the terms of this Order:

| <u>Date</u>[4] | <u>Event</u> |
|---|---|
| **June 22, 2023** | Bid Procedures Hearing[~~5~~4] |
| **Within four business days after entry of Bid Procedures Order** | Deadline to <u>file and</u> serve Bid Procedures and Sale Notice |
| **Within four business days after entry of Bid Procedures Order** | Deadline to File Assumption and Assignment Notice |
| **July 12, 2023** | Cure/Assignment Objection Deadline |
| **July 21, 2023** | Deadline to Submit Qualified Bids |
| **Deadline to Designate Stalking Horse Purchaser(s) if Selected by Debtors** | Prior to the Auction |
| **July 28, 2023 at 10:00 a.m. ~~(Prevailing Eastern Time)~~ ET** | ~~Sale~~ Auction |
| **Promptly after Auction** | Deadline to File Notice of Successful Bidder(s) and Backup Bidder(s) |

---

[~~4~~]   ~~All times are prevailing Central Time, unless otherwise noted.~~

[~~5~~ 4]  Because the Bid Procedures Motion is being filed on an emergency basis, objections to the Bid Procedures Motion may be filed up to and including the date of the Bid Procedures Hearing.

| | |
|---|---|
| ~~July 31~~August 3, **2023** | Adequate Assurance Objection Deadline |
| | Deadline to Object to Sale(s) |
| **August ~~7~~__, 2023, ~~subject to the Court's availability~~at __:__ __.m. (prevailing Central Time)** | Sale Hearing |
| **August 15, 2023** | Deadline to Close Transaction(s) |

3.       *Successful Bidder*.  Following the Auction (if any), the Debtors will promptly file with the Court a notice (the "Notice of Successful Bidder") that will inform the Court of the results of the Auction.  In the event that, in accordance with the Bid Procedures, no Auction is conducted and the Stalking Horse Purchaser(s) (if any) is/are named the Successful Bidder, the Debtors will file a notice to that effect, which will constitute the Notice of Successful Bidder. The Notice of Successful Bidder will identify: (i) the Successful Bidder(s) as the proposed purchaser(s) of the Assets; (ii) the amount and form of consideration to be paid by the Successful Bidder(s) for the Assets; (iii) the liabilities to be assumed by the Successful Bidder(s); and (iv) the Potential Assumed/Assigned Contracts to be assumed by the Debtors and assigned or transferred to the Successful Bidder(s), or the Debtors' rights and interests therein sold and transferred to the Successful Bidder(s), as the case may be, in connection with the Sale Transaction(s) (the "Transferred Contracts").  The list of Transferred Contracts may be modified at any time until the closing of the Sale Transaction.  The Notice of Successful Bidder will also include similar information relating to the Back-Up Bidder(s) and the Back-Up Bid(s). In addition, the Debtors will attach to the Notice of Successful Bidder: (i) the Sale Order(s) approving the Sale(s) to the Successful Bidder(s); (ii) a copy of the Purchase Agreement(s) entered into by the Debtors and the Successful Bidder(s) following the Auction; and (iii) any additional information or documentation relevant to the Successful Bid(s).  The Debtors will file the Notice of Successful Bidder on the docket for these Chapter 11 Cases as promptly as is reasonably practicable prior to the Sale Hearing, but will not be required to serve the same on any parties-in-interest in these Chapter 11 Cases.

**II.       The Bid Procedures.**

4.      The Bid Procedures, which are incorporated by reference as though fully set forth herein, are hereby approved, and the Debtors are authorized to solicit bids and conduct an Auction, if necessary, on the terms set forth in the Bid Procedures. The Bid Procedures shall govern the submission, receipt, and analysis of all bids, and any party desiring to submit a bid on the Assets must do so strictly in accordance with the terms of the Bid Procedures and this Order. The Debtors are authorized to take all actions as are reasonably necessary or appropriate to implement the Bid Procedures.

5.      Each bidder participating at an Auction (if any) shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale, as set forth in the Bid Procedures, and an Auction (if any) shall be transcribed or recorded.

6.      Pursuant to the Bid Procedures, including any applicable consultation rights therein, the Debtors may (a) determine which Qualified Bid is the highest or otherwise best offer for the applicable Assets, (b) at any time prior to entry of an Order of the Court approving the applicable Successful Bid, reject any Bid (other than the Stalking Horse Purchase Agreement, if any) that the Debtors determine, after consultation with the Consultation Parties, is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code or the Bid Procedures, or (iii) contrary to the best interests of the Debtors' estates and their creditors, and (c) prior to conclusion of an Auction (if any) and after consultation with the Consultation Parties, impose such other terms and conditions upon Qualified Bidders as the Debtors determine to be in the best interests of the Debtors' estates in the Chapter 11 Cases.

7.      If the Auction is cancelled, then the Debtors shall file a notice with the Court of such election within two (2) business days of the determination of such election by the Debtors. The deadline to object to the Sale shall be ~~July 31~~August 3, 2023, at 4:00 p.m. (prevailing

7

Central Time).

8.      Other than any Bid Protections approved for the Stalking Horse Purchaser (if any) in accordance with the procedures set forth in this Order, no person or entity shall be entitled to any expense reimbursement, breakup fees, "topping," termination, or other similar fee or payment, and by submitting a bid, such person or entity is deemed to have waived their right to request or to file with this Court any request for expense reimbursement or any fee of any nature in connection with such bid, whether by virtue of section 503(b) of the Bankruptcy Code or otherwise.

**III.    Approval of Procedures for Selection of Stalking Horse Purchaser and Bid Protections.**

9.      The Debtors are authorized to enter into a Stalking Horse Purchase Agreement in form and substance acceptable to the DIP Agent and the Committee, which may provide for payment of the Bid Protections, as set forth in the Bid Procedures; *provided, however*, that if the DIP Agent or the Committee, for any reason, do not consent to the Debtors' entry into a Stalking Horse Purchase Agreement, the Debtors may seek approval of the Stalking Horse Purchase Agreement on an emergency basis.

10.     In the event that the Debtors select one or more parties to serve as a Stalking Horse Purchaser, either with the consent of the Committee and the DIP Agent or pursuant to entry of a Court Order, then prior to the commencement of the Auction the Debtors shall file with the Court notice of selection of a Stalking Horse Purchaser ("Notice of Stalking Horse Purchaser") and serve such Notice of Stalking Horse Purchaser on the following parties (a) the United States Trustee for the Southern District of Texas; (b) counsel for the Committee; (c) counsel for the DIP Agent; and (d) persons who have filed a request for notice pursuant to

DOCS_DE:243413.5 58614/002243413.7 58614/002

Bankruptcy Rule 2002.

## IV.    The Assumption and Assignment Procedures

11.    The following Assumption and Assignment Procedures regarding the
assumption and assignment of the Transferred Contracts proposed to be assumed by the
Debtors and assigned to a Successful Bidder are approved:

(a)    **Cure Notice**. Within four (4) business days after entry of the Bid
Procedures Order, the Debtors will file a notice (the "Cure Notice")
identifying the Potential Assumed/Assigned Contracts (such list, the
"Cure Schedule"), substantially in the form attached as <u>Exhibit 3</u> to the
Bid Procedures Order, and serve such notice on all Contract
Counterparties to the Potential Assumed/Assigned Contracts.  The Cure
Schedule attached to the Cure Notice served on each Contract
Counterparty shall: (i) identify Potential Assumed/Assigned Contracts;
(ii) identify the Debtor counterparty to such Potential Assumed/Assigned
Contracts; (iii) list the proposed cure amounts, if any, that the Debtors
believe must be paid to cure all defaults outstanding under each Potential
Assumed/Assigned Contract (the "Cure Amounts") as of such date; (iv)
include a statement that assumption and assignment of such Potential
Assumed/Assigned Contract is not required or guaranteed; and (v)
inform such Contract Counterparty of the requirement to file any
Cure/Assignment Objection (as defined below) by the Cure/Assignment
Objection Deadline (as defined below).  Service of the Cure Notice,
including the Cure Schedule, upon a Contract Counterparty does not
constitute an admission that a particular Potential Assumed/Assigned
Contract is an executory contract or unexpired lease, or confirm that the
Debtors are required to assume and/or assign such contract or lease.

(b)    **Cure and Assignment Objections**. A Contract Counterparty with any
Potential Assumed/Assigned Contract listed on the Cure Schedule must
file any objections to a proposed Cure Amount (a "Cure Objection")
and/or any other objections to the assumption and assignment or transfer
of any of the Potential Assumed/Assigned Contracts (an "Assignment
Objection") by **July 12, 2023 at ~~5:00~~4:00 p.m. (prevailing Central
Time)** (the "Cure/Assignment Objection Deadline").    Any Cure
Objection and/or Assignment Objection must: (i) be in writing; (ii)
comply with the applicable provisions of the Bankruptcy Rules, the
Bankruptcy Local Rules, and any order governing the administration of
these Chapter 11 Cases; (iii) state with specificity the nature of the
objection and, if the Cure Objection pertains to the proposed Cure
Amounts, state the cure amount alleged to be owed to the objecting
Contract Counterparty, together with any applicable and appropriate

documentation in support thereof; (iv) include complete contact information for such Contract Counterparty (including address, telephone number, and email address); and (v) be filed with the Court and served upon the Objection Notice Parties⁶⁵ prior to the Cure/Assignment Objection Deadline; *provided* that the Debtors may modify the Cure/Assignment Objection Deadline with respect to any Contract Counterparty upon consultation with the Stalking Horse Purchaser (if any) or the Successful Bidder, as applicable, by email confirmation.

(c)     **Adequate Assurance Objections**.   A Contract Counterparty with any Potential Assumed/Assigned Contract listed on the Cure Schedule must file any objections to the Successful Bidder's and/or Backup Bidder's proposed form of adequate assurance of future performance (an "Adequate Assurance Objection" and, together with Cure Objections and Assignment Objections, "Contract Objections") no later than ~~July 31~~August 3**, 2023 at 4:00 p.m. (prevailing Central ~~Time~~time)**. Upon request of a Contract Counterparty, the Debtors will provide information demonstrating adequate assurance of future performance on a confidential basis promptly following the conclusion of the Auction but in no event later than 9:00 a.m. CT on July 31, 2023.

(d)     **Effects of Filing a Cure Objection**.  A properly filed Contract Objection will reserve such objecting party's rights against the Debtors only with respect to the assumption and assignment or transfer of the Potential Assumed/Assigned Contracts at issue, and/or objection to the accompanying Cure Amounts, as set forth in the Contract Objection, but will not constitute an objection to the remaining relief requested in the Motion.

---

⁶⁻⁵ The Objection Notice Parties are (i) the United States Trustee for the Southern District of Texas; (ii) counsel to the DIP Agent; (iii) counsel to the Official Committee of Unsecured Creditors; (iv) counsel to any Stalking Horse Purchaser (if any); and (v) persons who have filed a request for notice pursuant to Bankruptcy Rule 2002.

DOCS_DE:~~243413.5 58614/002~~243413.7 58614/002

(e)     **Dispute Resolution**. Any Contract Objection that remains unresolved after the Sale Hearing shall be heard at such later date as may be agreed upon by the parties or fixed by the Court. To the extent that any Contract Objection cannot be resolved by the parties, any Potential Assumed/Assigned Contracts subject to such Contract Objection shall be assumed and assigned or transferred only upon satisfactory resolution of the Contract Objection, to be determined in the Successful Bidder's reasonable discretion. To the extent a Contract Objection which is an Adequate Assurance Objection remains unresolved, the Potential Assumed/Assigned Contract may be conditionally assumed and assigned, subject to the express written consent of the Successful Bidder and the Objecting Contract Counterparty, pending a resolution of the Contract Objection after notice and a hearing. If a Contract Objection is not satisfactorily resolved, the Successful Bidder may determine that such Contract should not be a Transferred Contract, in which case the Successful Bidder will not be responsible for any Cure Amounts in respect of such contract. Notwithstanding the foregoing, if a Contract Objection is solely a Cure Objection (any such objection, a "Cure Dispute"), the applicable Potential Assumed/Assigned Contract may be assumed by the Debtors and assigned to the Successful Bidder provided that the cure amount the Contract Counterparty asserts is required to be paid under section 365(b)(1)(A) and (B) of the Bankruptcy Code (or such lower amount as agreed to by the Contract Counterparty) is deposited in a segregated account and not disbursed by the Debtors pending the Court's adjudication of the Cure Dispute or the parties' consensual resolution of the Cure Dispute.

(f)     **Supplemental Cure Notice**. If the Debtors discover Potential Assumed/Assigned Contracts inadvertently omitted from the Cure Notice or the Successful Bidder identifies other Potential Assumed/Assigned Contracts that it desires to assume or assume and assign in connection with the Sale, the Debtors may, after consultation with the Successful Bidder, at any time before the closing of the Sale, supplement the Cure Notice with previously omitted Potential Assumed/Assigned Contracts or modify a previously filed Cure Notice, including by modifying the previously stated Cure Amounts associated with any Potential Assumed/Assigned Contracts (the "Supplemental Cure Notice").

(g)     **Objection to the Supplemental Cure Notice**. Any Contract Counterparty listed on a Supplemental Cure Notice may file an objection (a "Supplemental Cure/Assignment Objection") only if such objection is to the proposed assumption or assumption and assignment or transfer of the applicable Potential Assumed/Assigned Contracts or the proposed Cure Amounts, if any. All Supplemental Cure/Assignment Objections must: (i) be in writing; (ii) comply with the applicable provisions of the Bankruptcy Rules, the Bankruptcy Local Rules, and any order governing

the administration of these Chapter 11 Cases; (iii) state with specificity the nature of the objection and, if the Supplemental Cure/Assignment Objection pertains to the proposed Cure Amounts, state the cure amount alleged to be owed to the objecting Contract Counterparty, together with any applicable and appropriate documentation in support thereof; (iv) include complete contact information for such Contract Counterparty (including address, telephone number, and email address); and (v) be filed no later than 5:00 p.m. (prevailing Central Time) on the date that is the later of (x) seven (7) days following the date of service of such Supplemental Cure Notice and (y) the Cure/Assignment Objection Deadline (the "Supplemental Cure/Assignment Objection Deadline"); *provided* that the Debtors may modify the Supplemental Cure/Assignment Objection Deadline with respect to any Contract Counterparty upon consultation with the Stalking Horse Purchaser or the Successful Bidder, as applicable, by email confirmation.

(h)     **Dispute Resolution of Supplemental Cure Objection**. If a Contract Counterparty files a Supplemental Cure/Assignment Objection in a manner that is consistent with the requirements set forth above, and the parties are unable to consensually resolve the dispute, the Debtors shall seek an expedited hearing before the Court to determine the Cure Amounts, if any, and approve the assumption or transfer of the relevant Potential Assumed/Assigned Contracts.  If there is no such objection, then the Sale Order shall constitute an order of the Court fixing the Cure Amounts and approving the assumption and assignment or transfer of any Potential Assumed/Assigned Contracts listed on a Supplemental Cure Notice, subject to such Potential Assumed/Assigned Contract's designation as a Transferred Contract. Notwithstanding the foregoing, if a Supplemental Cure/Assignment Objection relates solely to a Cure Dispute, the applicable Potential Assumed/Assigned Contracts may be assumed by the Debtors and assigned to the Successful Bidder provided that the cure amount the Contract Counterparty asserts is required to be paid under section 365(b)(1)(A) and (B) of the Bankruptcy Code (or such lower amount as agreed to by the Contract Counterparty) is deposited in a segregated account by the Debtors pending the Court's adjudication of the Cure Dispute or the parties' consensual resolution of the Cure Dispute.

(i)     **No Cure Objections**. If there are no Contract Objections or Supplemental Cure/Assignment Objections, or if a Contract Counterparty does not file and serve a Contract Objection or a Supplemental Cure/Assignment Objection in a manner that is consistent with the requirements set forth above, and absent a subsequent order of the Court establishing an alternative Cure Amount, (i) the Cure Amounts, if any, set forth in the Cure Notice (or Supplemental Cure Notice) shall be controlling, notwithstanding anything to the contrary in any Potential Assumed/Assigned Contract or any other document, and (ii) the Contract

Counterparty will be deemed to have consented to the assumption, assumption and assignment, or transfer of the Potential Assumed/Assigned Contract and the Cure Amounts, if any, and will be forever barred from objecting to the assumption, assumption and assignment, or transfer of such Potential Assumed/Assigned Contract and rights thereunder, including the Cure Amounts, if any, and from asserting any other claims related to such Potential Assumed/Assigned Contract against the Debtors or the Successful Bidder, or the property of any of them.

12.     Any objection to the ability of the Successful Bidder to provide adequate assurance of future performance with respect to any Assigned Contract must be filed with the Court no later than ~~July 31~~<u>August 3</u>, **2023 at 4:00 p.m. (prevailing Central Time)**.

13.     The inclusion of a Potential Assumed/Assigned Contract on a Cure Notice or Supplemental Cure Notice will not (a) obligate any Debtor to assume, assume and assign, and/or transfer such Potential Assumed/Assigned Contract listed thereon nor obligate the Stalking Horse Purchaser or any other Successful Bidder to take assignment of such Potential Assumed/Assigned Contract; or (b) constitute any admission or agreement of the Debtors that such Potential Assumed/Assigned Contract is an executory contract or unexpired lease.  <u>Only those Potential Assumed/Assigned Contracts that are included on a schedule of assumed and assigned contracts attached to the definitive agreement of the Successful Bidder (including amendments or modifications to such schedules in accordance with such agreement)—*i.e.* the Transferred Contracts—will be assumed and assigned or transferred to the Successful Bidder.</u>

**V.     Sale Notice and Related Relief.**

14.     The Sale Notice, substantially in the form attached hereto as **Exhibit 2**, is hereby approved. Within four (4) business days after entry of this Order, the Debtors shall serve the Bid Procedures and the Sale Notice upon (a) the Office of the United States Trustee for the Southern District of Texas; (b) counsel to the Official Committee of Unsecured Creditors,

13

McDermott Will & Emery LLP, Attn: Maris J. Kandestin (mkandestin@mwe.com), Chuck Gibbs (crgibbs@mwe.com), Marcus Helt (mhelt@mwe.com); (c) counsel to the DIP Agent, Greenberg Traurig, LLP, Attn: John D. Elrod, Esq. (elrodj@gtlaw.com) and Shari Heyen, Esq. (heyens@gtlaw.com); (d) the state Attorneys General for states in which the Debtors conduct business; (e) the Internal Revenue Service; (f) the Securities and Exchange Commission; (g) the Environmental Protection Agency and similar state agencies for states in which the Debtors conduct business; (h) all known holders of liens, encumbrances, and other claims secured by the Assets; (i) all known creditors of the Debtors; (j) each governmental agency that is an interested party with respect to the Sale and transactions proposed thereunder; (k) any party that has requested notice pursuant to Bankruptcy Rule 2002; and (l) any other party entitled to notice pursuant to Bankruptcy Local Rule 9013-1(d).  In addition, within five (5) business days after entry of this Order, the Debtors will publish the Sale Notice, with any modifications necessary for ease of publication, on the case-specific website maintained by KCC to provide notice to any other potential interested parties, and will serve the Cure Notice upon the Objection Notice Parties and the applicable Contract Counterparties.  No publication notice shall be required under the circumstances of these cases.

15.    Nothing in this Order or the Bid Procedures shall be deemed a waiver of any rights, remedies, or defenses that any party (including the Debtors, the Debtors' lenders, the DIP Agent, the Stalking Horse Purchaser, or any other prospective purchaser) has or may have under applicable bankruptcy and non-bankruptcy law or any rights, remedies or defenses of the Debtors with respect thereto, including seeking relief from the Court with regard to the Auction, the Bid Procedures, the Sale, and any related items (including, if necessary, to seek an extension of the Bid Deadline).

16.     This Order permits the use of cash only to the extent authorized under this Court's applicable orders authorizing debtor-in-possession financing, including the Budget (as defined therein) (the "DIP Orders"). In the event of any inconsistency between this Order and the DIP Orders, the DIP Orders shall control.  Notwithstanding the foregoing, nothing in the DIP Orders shall affect the Stalking Horse Purchaser's right to the payment from sale proceeds of the Breakup Fee and Expense Reimbursement pursuant to this Order, the Bid Procedures, and the Stalking Horse Purchase Agreement, subject in all cases to the conditions giving rise to payment of the Breakup Fee and Expense Reimbursement under the Stalking Horse Purchase Agreement having occurred.

17.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

18.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

19.     The requirements set forth in Bankruptcy Local Rule 9013-1 and the Procedures for Complex Chapter 11 Cases in the Southern District of Texas are satisfied by the contents of the Motion.

20.     Notwithstanding Bankruptcy Rule 6004(h) and 6006, to the extent applicable, this Order shall be immediately effective and enforceable upon entry hereof.

21.     The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated:_____, 2023

DAVID R. JONES
UNITED STATES BANKRUPTCY JUDGE

DOCS_DE:243413.5 58614/002243413.7 58614/002

**Exhibit 1**

**Bid Procedures**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |
|---|---|
| In re: | Chapter 11 |
| MOUNTAIN EXPRESS OIL COMPANY, et al., | Case No. 23-90147 (DRJ) |
| Debtors. [1] | (Jointly Administered) |

---

**BID PROCEDURES FOR THE SALE OF THE DEBTORS' ASSETS**

On March 18, 2023, the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Court").

On ●, 2023, the Court entered the *Order (I) Approving Bid Procedures for the Sale of the Debtors' Assets, (II) Approving Bid Protections, (III) Scheduling Certain Dates with Respect Thereto, (IV) Approving the Form and Manner of Notice Thereof, and (V) Approving Contract Assumption and Assignment Procedures* [Docket No. ●] (the "Bid Procedures Order"),[2] by which the Court approved the following procedures (the "Bid Procedures").

These Bid Procedures set forth the process for a potential auction (the "Auction") for the sale or sales (any such sale, a "Sale") of some or all of the assets of the Debtors (the "Assets").

---

**Copies of the Bid Procedures Order or other documents related thereto are available upon request to KCC by calling 888-647-1737 or visiting the Debtors' restructuring website at www.kccllc.net/mountainexpressoil.**

---

**Assets to Be Auctioned**

These Bid Procedures set forth the terms by which prospective bidders, if any, may qualify for and participate in an Auction, thereby competing to make the highest or otherwise best offer or combination of offers which in the aggregate will make the highest or otherwise best offer to purchase some or all of the Debtors' Assets. The Debtors may consider bids from multiple bidders (including multiple bids submitted by the same bidder) in any combination for the Assets.

---

[1]     A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' claims and noticing agent at www.kccllc.net/mountainexpressoil. The location of Debtor Mountain Express Oil Company's principal place of business and the Debtors' service address in these Chapter 11 Cases is 3650 Mansell Road, Suite 250, Alpharetta, GA 30022.

[2]     All capitalized terms used but not immediately defined shall have the meanings ascribed to them elsewhere in these Bid Procedures or the Bid Procedures Order.

The following is a table setting forth key dates and deadlines with respect to the Sale process:

| Date[3] | ~~Event~~ |
|---|---|
| June 22, 2023 | Bid Procedures Hearing[43] |
| **Within four business days after entry of Bid Procedures Order** | Deadline to ~~serve~~File Bid Procedures ~~and Sale~~ Notice |
| **Within four business days after entry of Bid Procedures Order** | Deadline to File Assumption and Assignment Notice |
| **July 12, 2023** | Cure/Assignment Objection Deadline |
| **July 21, 2023** | Deadline to Submit Qualified Bids |
| **Deadline to Designate Stalking Horse Purchaser(s) if Selected by Debtors** | Prior to the Auction |
| **July 28, 2023 at 10:00 a.m. ~~(Prevailing Eastern Time)~~ ET** | ~~Sale~~ Auction |
| **Promptly after Auction** | Deadline to File Notice of Successful Bidder(s) and Backup Bidder(s) |
| **~~July 31~~August 3, 2023** | Adequate Assurance Objection Deadline |
| | Deadline to Object to Sale(s) |
| **August ~~7~~__, 2023, ~~subject to the Court's availability~~at __:__ __.m. (prevailing Central Time)** | Sale Hearing |
| **August 15, 2023** | Deadline to Close Transaction(s) |

## I.    Public Announcement of Auction.

Within four (4) business days after entry of the Bid Procedures Order, the Debtors shall serve on the Sale Notice Parties a notice of the Auction and Sale (the "Sale Notice").

## II.   Potential Bidder Requirements.

To participate in the bidding process or otherwise be considered for any purpose hereunder, a person or entity interested in purchasing some or all of the Debtors' Assets (a "Potential Bidder") must deliver or have previously delivered to the Debtors the following documents (collectively, the "Preliminary Bid Documents"):

a.      an executed confidentiality agreement (a "Confidentiality Agreement") in form and substance acceptable to the Debtors;

---

[3]   ~~All times are prevailing Central Time, unless otherwise noted.~~

[4] [3] Because the Bid Procedures Motion is being filed on an emergency basis, objections to the Bid Procedures Motion may be filed up to and including the date of the Bid Procedures Hearing.

b.      a non-binding written indication of interest specifying, among other things, with respect to any proposed Sale, the identity of the Assets to be acquired, the amount and type of consideration to be offered, and any other material terms to be included in a bid by such party;

c.      preliminary proof by the Potential Bidder of its financial capacity to close the proposed Sale (which may include current audited or verified financial statements of, or verified financial commitments ("Financial Statements") obtained by, the Potential Bidder (or, if the Potential Bidder is an entity formed for the purpose of acquiring the property to be sold, the party that will bear liability for a breach) as well as an overview of any recent transactions), the adequacy of which must be reasonably acceptable to the Debtors after consultation with the Consultation Parties (as defined below); *provided, however,* that the Debtors may only determine that a Potential Bidder has not provided adequate information of its financial wherewithal with the consent of the DIP Agent;

d.      identity of the Potential Bidder, including its legal name, jurisdiction and form of organization, and details regarding the ownership and capital structure of the Potential Bidder, as well as the identity of any controlling persons, significant direct or indirect equity or debt investors, and/or guarantors of such entity, and any known connections the Potential Bidder has to the Debtors or their advisors, any statutory committee appointed in these cases or its advisors, the DIP Agent or its advisors, or any creditor or equity security interest holder of the Debtors; and

e.      a list with the names and contact information for any financial, legal and other advisors the Potential Bidder has engaged to assist in connection with the proposed Sale.

The Debtors, in their reasonable discretion, and after consultation with the Consultation Parties, may agree to waive some or all of the Potential Bidder requirements set forth above. Each Potential Bidder shall comply with all reasonable requests for information and access by the Debtors or their advisors regarding the ability of such Potential Bidder, as applicable, to consummate a proposed Sale. Promptly after a Potential Bidder delivers Preliminary Bid Documents, the Debtors shall (a) determine and notify each Potential Bidder as to whether such Potential Bidder has submitted acceptable Preliminary Bid Documents, (b) provide copies of any such notices to the Objection Notice Parties, and (c) provide copies of such Preliminary Bid Documents to the following parties (each, a "Consultation Party" and collectively, the "Consultation Parties"): (i) counsel to the DIP Agent, Greenberg Traurig, LLP, Attn: John D. Elrod, Esq. (elrodj@gtlaw.com) and Shari Heyen, Esq. (heyens@gtlaw.com); and (ii) counsel to the Official Committee of Unsecured Creditors, McDermott Will & Emery LLP, Attn: Maris J. Kandestin (mkandestin@mwe.com), Chuck Gibbs (crgibbs@mwe.com), Marcus Helt (mhelt@mwe.com). If the DIP Agent submits a Bid, including a credit bid, on a particular asset that serves as collateral under the DIP Facility, it shall no longer be deemed a Consultation Party with respect to the Sale of that asset; *provided* that the DIP Agent shall still be a

Consultation Party with respect to any Sale for all other individual assets that serve as collateral under the DIP Facility as well as any Sale for all or substantially all of the Debtors' Assets; *provided* further that if the DIP Agent submit a Bid for all or substantially all of the Debtors' Assets, the DIP Agent shall cease being a Consultation Party.

Only those Potential Bidders that have submitted acceptable Preliminary Bid Documents to the reasonable satisfaction of the Debtors and their advisors, after consultation with the Consultation Parties, may submit bids to purchase the Debtors' Assets. The Debtors reserve the right to work with any Potential Bidder to cure any deficiencies in the Preliminary Bid Documents.

## III. **Obtaining Due Diligence Access**.

Only Potential Bidders that have submitted acceptable Preliminary Bid Documents to the reasonable satisfaction of the Debtors and their advisors shall be eligible to receive information and access to the Debtors' electronic data room and to additional non-public, non-privileged information regarding the Debtors. All information requests must be directed to the Debtors' investment banker, Raymond James & Associates, Inc., Attn: Jake Wainwright (email: Jake.Wainwright@raymondjames.com). The Debtors will provide to each Potential Bidder reasonable due diligence information, as requested by such Potential Bidder in writing, as soon as reasonably practicable after such request, and the Debtors shall post substantially all written due diligence provided to any Potential Bidder to the Debtors' electronic data room. Potential Bidders will not, directly or indirectly, contact or initiate or engage in discussions in respect of matters relating to the Debtors or a potential transaction with any customer, supplier, or contractual counterparty of the Debtors without the prior written consent of the Debtors. The due diligence period will end on the Bid Deadline (as defined herein), *provided* that the Debtors will provide reasonable access to information reasonably requested by any Qualified Bidder (as defined below) after the Bid Deadline.

In connection with the provision of due diligence information to Potential Bidders, the Debtors shall not furnish any confidential information relating to the Debtors or a potential transaction to any person except a Potential Bidder or such Potential Bidder's duly authorized representatives to the extent provided in an applicable Confidentiality Agreement.

The Debtors and their advisors shall coordinate all reasonable requests for additional information and due diligence access from Potential Bidders; *provided* that the Debtors may decline to provide such information to Potential Bidders who, in the Debtors' reasonable business judgment, after consultation with the Consultation Parties and with the consent of the DIP Agent, have not established, or who have raised doubt, that such Potential Bidders intend in good faith to, or have the capacity to, consummate any Sale. For any Bidder who is a competitor or customer of the Debtors or is affiliated with any competitors or customers of the Debtors, the Debtors reserve the right, after consultation with the Consultation Parties and with the consent of the DIP Agent, to withhold or modify any diligence materials that the Debtors determine are commercially sensitive or otherwise inappropriate for disclosure to such bidder.

> **Raymond James Associates Attn: Jake Wainwright shall coordinate all requests for additional information and due diligence access on behalf of the Debtors.**

DOCS_DE:243413.5 58614/002243413.7 58614/002

A.  **Communications with Potential Bidders (including Qualified Bidders).**

Notwithstanding anything to the contrary in these Bid Procedures, all substantive direct communications, including any diligence requests, with Potential Bidders and Qualified Bidders shall be through Raymond James Associates (via email shall be acceptable), Attn:

Geoffrey Richards (geoffrey.richards@raymondjames.com),
Scott Garfinkel (scott.garfinkel@raymondjames.com),
Roger Woodman (roger.woodman@raymondjames.com) and
Jake Wainwright (jake.wainwright@raymondjames.com).

B.  **Due Diligence from Potential Bidders (including Qualified Bidders).**

Each Potential Bidder (including any Qualified Bidder) shall comply with all reasonable requests for additional information and due diligence access requested by the Debtors or their advisors regarding the ability of such Potential Bidder (including any Qualified Bidder) to consummate its contemplated Sale. Failure by a Potential Bidder (including any Qualified Bidder) to comply with such reasonable requests for additional information and due diligence access may be a basis for the Debtors, after consultation with the Consultation Parties and with the consent of the DIP Agent, to determine that such bidder is no longer a Qualified Bidder or that a bid made by such bidder is not a Qualified Bid.

C.  **No Communications Among Potential Bidders.**

There must be no communications between or among Potential Bidders, or between Potential Bidders and the Consultation Parties, unless the Debtors have previously authorized such communication in writing. Should any Potential Bidder attempt to communicate directly with another Potential Bidder or the Consultation Parties, such Potential Bidder or the Consultation Parties, as applicable shall immediately inform, in writing, the Debtors' counsel and the Debtors' investment banker. The Debtors reserve the right, in their reasonable business judgment and upon consultation with the Consultation Parties and consent of the DIP Agent, to disqualify any Potential Bidders that have communications between and amongst themselves without the prior written consent of the Debtors (email acceptable). The Debtors further reserve their right, in their reasonable business judgment, to disqualify any Potential Bidders that have communications with any Consultation Party; *provided* that the Debtors shall provide such Consultation Party with notice that the Debtors are exercising their rights to strip the Consultation Parties of its consultation rights and shall work in good faith with such Consultation Party to resolve the issue without the need to strip the Consultation Party of their consultation rights.

IV.  **Bid Protections in the Event of a Stalking Horse Purchaser.**

Recognizing that a Stalking Horse Purchaser will expend time, energy and resources, and that the Stalking Horse Purchaser (if any) provides a floor bid with respect to the Assets that it offers to purchase, the Debtors are authorized (pursuant to the Bid Procedures Order), but not required, to provide the following bidding protections to the Stalking Horse Purchaser (if any) (subject to the Committee and DIP Agent's consent): the DIP Agent or the Committee do not consent to the Debtors' entry into a Stalking Horse Purchase Agreement, the Debtors may seek approval of the Stalking Horse Purchase Agreement on an

(A) an expense reimbursement ("Expense Reimbursement") for the reasonable, documented out-of-pocket expenses of the Stalking Horse Purchaser incurred in connection with the Stalking Horse Purchase Agreement in an aggregate amount not to exceed $1,000,000 of actual, documented out of pocket expenses; and

(B) a breakup fee ("Breakup Fee") for the Stalking Horse Purchaser in an amount not to exceed three percent (3%) of the cash portion of the purchase price under the Stalking Horse Purchase Agreement ((A) and (B) of this sentence, collectively, the "Bid Protections"), payable only from the proceeds of a Sale with a Qualified Bidder other than the Stalking Horse Purchaser. The Bid Protections shall be an allowed administrative expense.

Any Bid submitted on or before the Bid Deadline by a party or parties other than the Stalking Horse Purchaser must be in an amount that is sufficient to pay the Breakup Fee and Expense Reimbursement and result in additional consideration to the Debtors' estates in the amount of at least $500,000 (as compared to the Purchase Price offered by the Stalking Horse Purchaser), after payment of the Breakup Fee and Expense Reimbursement.

## V.    **Bid Requirements**.

To be selected to acquire the Assets or to be eligible to participate in the Auction, if applicable, a Potential Bidder must deliver to the parties set forth in Section VII below a written, irrevocable, and binding offer for purchase of the Assets (the "Bid") that must be determined by the Debtors in their business judgment, after consultation with the Consultation Parties, to satisfy each of the following conditions (collectively, the "Bid Requirements"):

a.    **Identity**: Each Bid must fully disclose the identity of each entity and each entity's shareholders, partners, investors, and ultimate controlling entities that will be bidding for or purchasing the applicable Assets or otherwise participating in connection with such Bid, and the complete terms of any such participation, along with sufficient evidence that the Potential Bidder is legally empowered to complete the transactions on the terms contemplated by the parties. Each Bid must also include contact information for the specific person(s) whom Debtors' counsel and investment banker should contact regarding such Bid;

b.    **Identity of Assets and Purchase Price**: Each Bid must clearly state which of the Assets the Potential Bidder seeks to acquire and which liabilities of the applicable Debtor the Potential Bidder agrees to assume. Each Bid must clearly set forth the purchase price to be paid, including cash and non-cash components, if any, including any assumption of liabilities (collectively, the "Purchase Price"). The Purchase Price should be a single point value in U.S. Dollars for the total enterprise value of the Assets the Potential Bidder seeks to acquire on a cash-free, debt-free basis; *provided* that the Potential Bidder shall include an allocation of such Purchase Price among the Assets the Potential Bidder seeks to acquire;

---

Purchase Agreement, the Debtors may seek approval of the Stalking Horse Purchase Agreement on an emergency basis.

c.   **Markup of the Purchase Agreement**: Each Bid must be accompanied by executed transaction documents, including a draft purchase agreement, and a markup of the form of Asset Purchase Agreement attached as <u>Exhibit 4</u> to the Bid Procedures Order (the "<u>Form Asset Purchase Agreement</u>"), including the exhibits, schedules and ancillary agreements related thereto, and any other related material documents integral to such Bid pursuant to which the Potential Bidder proposes to effectuate the proposed Sale, along with copies that are marked to reflect any amendments and modifications from the Form Asset Purchase Agreement provided to such Potential Bidder, which amendments and modifications may not be materially more burdensome than the provisions in the Form Asset Purchase Agreement, or otherwise inconsistent with these Bid Procedures. The Debtors, in their reasonable business judgment, after consultation with the Consultation Parties, will determine whether any such amendments and modifications are materially more burdensome;

d.   **Contingencies; No Financing or Diligence Outs**: Any Bid shall not be conditioned on the obtaining or the sufficiency of financing, any internal approval, or on the outcome or review of due diligence, and each Bid must identify with particularity each and every condition to closing, including the executory contracts and unexpired leases for which assumption and assignment is required. The Potential Bidders are expected to have completed all of their due diligence by the Bid Deadline, including all business, legal, accounting, and other confirmatory diligence. The extent and nature of any remaining due diligence should be set forth in a specific list attached to each Bid;

e.   **As-Is, Where-Is**: Each Bid must include a written acknowledgement and representation that the Potential Bidder: (i) has had an opportunity to conduct any and all due diligence prior to making its offer; (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Assets in making its Bid; and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the completeness of any information provided in connection therewith, except as expressly stated in the Potential Bidder's proposed purchase agreement;

f.   **Authorization**: Each Bid must contain evidence that the Potential Bidder has obtained authorization or approval from its shareholders and/or its board of managers or directors, as applicable, with respect to the submission of its Bid and the consummation of the Sale contemplated by such Bid;

g.   **Deposit:** Each Bid must be accompanied by a cash deposit by wire transfer to an escrow agent selected by the Debtors with the DIP Agent's consent in an amount equal to 10% of the cash purchase price of the bid (the "<u>Good Faith Deposit</u>"). The Qualified Bidder must deliver the Good Faith Deposit on or before the Bid Deadline.  If the DIP Agent elects to submit a Bid, it shall not be required to provide a Good Faith Deposit.

7

h.  **Adequate Assurance of Future Performance**: Each Bid must (i) identify the Contracts to be assumed and assigned in connection with the proposed Sale, (ii) provide for the payment of all Cure Amounts related to such Contract by the Potential Bidder and otherwise demonstrate that any non-monetary Cure Amounts will be promptly cured, and (iii) demonstrate, in the Debtors' reasonable business judgment, that the Potential Bidder can provide adequate assurance of future performance under all such Contracts;

i.  **Government Approvals**: Each Bid must include a description of all governmental, licensing, regulatory, or other approvals or consents that are required to close the proposed Sale, together with evidence satisfactory to the Debtors, after consultation with the Consultation Parties, of the ability to obtain such consents or approvals in a timely manner, as well as a description of any material contingencies or other conditions that will be imposed upon, or that will otherwise apply to, the obtainment or effectiveness of any such consents or approvals;

j.  **Government Approvals Timeframe**: Each Bid must set forth (i) an estimated timeframe for obtaining any required governmental, licensing, regulatory, or other approvals or consents for consummating any proposed Sale, and (ii) the basis for such estimate;

k.  **Compliance with Bankruptcy Code and Non-Bankruptcy Law; Acknowledgment**: Each Bid must comply in all respects with the Bankruptcy Code and any applicable non-bankruptcy law. Each Bid must also include a written acknowledgment that the Bidder agrees to all of the terms of the Sale set forth in these Bid Procedures and that it has not engaged in any collusion, coordination, or unfair competitive practices with respect to its Bid;

l.  **Irrevocable**: A Potential Bidder's Bid must be binding and irrevocable unless and until the Debtors accept a higher Bid and such Potential Bidder is not selected as the Backup Bidder (as defined herein);

m.  **No Fees**: Each Potential Bidder presenting a Bid or Bids will bear its own costs and expenses (including legal fees) in connection with the proposed Sale, and by submitting its Bid is agreeing to refrain from and waive any assertion or request for a breakup fee, transaction fee, termination fee, expense reimbursement, or any similar type of payment or reimbursement on any basis, including under section 503(b) of the Bankruptcy Code;

n.  **Joint Bids**: The Debtors will be authorized in consultation with the Consultation Parties to approve joint Bids in their reasonable discretion on a case-by-case basis;

o.     **Adherence to Bid Procedures**: By submitting its Bid, each Potential Bidder is agreeing to abide by and honor the terms of these Bid Procedures and agrees not to submit a Bid or seek to reopen the Sale process or the Auction (if held) after conclusion of the selection of the Successful Bidder (as defined herein). By submitting its Bid, each Potential Bidder is agreeing to comply in all respects with the Bankruptcy Code and any applicable non-bankruptcy law;

p.     **Consent to Jurisdiction**: Each Potential Bidder must submit to the jurisdiction of the Court and waive any right to a jury trial in connection with any disputes relating to the Debtors' qualification of Bids, the Auction (if held), the construction and enforcement of these Bid Procedures, the Sale documents, and consummation of a Sale (or Sales) (including confirmation of chapter 11 plan in connection therewith), as applicable;

q.     **Backup Bid**: Each Bid must provide that the Potential Bidder will serve as a Backup Bidder if the Potential Bidder's Bid is the next highest or otherwise best Bid, ready to close the Sale on the terms stated in the next highest or otherwise best Bid within two business days of the failure of the Successful Bidder to close; and

r.     **Expected Closing Date**: Each Bid must state the Potential Bidder's expected date of closing of the Sale, which shall be no later than August 15, 2023; *provided*, such closing date may be extended pursuant to the terms of an asset purchase agreement in consultation with the Consultation Parties.

Only Bids fulfilling all of the preceding requirements contained in this section may, at the Debtors' reasonable discretion, after consultation with the Consultation Parties, be deemed to be "Qualified Bids," and only those parties submitting Qualified Bids may, at the Debtors' reasonable discretion, after consultation with the Consultation Parties, be deemed to be "Qualified Bidders." All information disclosed by any Potential Bidder in connection with all of the preceding requirements will promptly be made available by the Debtors to the Consultation Parties; *provided* that any confidential financing and/or equity commitment documents received from any such Potential Bidder shall only be shared with the Consultation Parties on a "professionals' eyes only" basis; *provided, however, that the DIP Agent's professionals may share any such information with one representative of the DIP Agent*.

As soon as reasonably practicable following the Bid Deadline, the Debtors shall determine, after consultation with the Consultation Parties, which Potential Bidders are Qualified Bidders and will notify the Potential Bidders whether Bids submitted constitute Qualified Bids, which will enable such Qualified Bidders to participate in the Auction (if held). Any Bid that is not deemed a Qualified Bid shall not be considered by the Debtors; *provided, however*, that if the Debtors receive a Bid prior to the Bid Deadline that does not satisfy the requirements of a Qualified Bid, the Debtors shall provide the Potential Bidder with the opportunity to remedy any deficiencies prior to the Bid Deadline. The Debtors may accept a single Qualified Bid or multiple Bids for non-overlapping material portions of the Assets such that, if taken together in the aggregate, would otherwise meet the standards for a single

9

Qualified Bid (in which event those multiple bidders will be treated as a single Qualified Bidder for purposes of selecting the Successful Bidder; *provided* that the Debtors also reserve the right, in consultation with the Consultation Parties, to conduct more than one Sale process or Auction with respect to non-overlapping material portions of the Assets).

## VI.    Bid Deadline.

Binding Bids must be received (via email shall be acceptable) by (a) the Debtors' counsel, Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Boulevard, 13th Floor, Los Angeles, California 90067, Attn.: Jeffrey Pomerantz (jpomerantz@pszjlaw.com) and Jeffrey Dulberg (jdulberg@pszjlaw.com); (b) the Debtors' investment banker, Raymond James & Associates, Inc., Attn.: Geoffrey Richards (geoffrey.richards@raymondjames.com), Scott Garfinkel (scott.garfinkel@raymondjames.com), Roger Woodman (roger.woodman@raymondjames.com) and Jake Wainwright (jake.wainwright@raymondjames.com), counsel to the Official Committee of Unsecured Creditors, McDermott Will & Emery LLP, Attn: Maris J. Kandestin (mkandestin@mwe.com), Chuck Gibbs (crgibbs@mwe.com), Marcus Helt (mhelt@mwe.com); and counsel to the DIP Agent, Greenberg Traurig, LLP, Attn: John D. Elrod, Esq. (elrodj@gtlaw.com) and Shari Heyen, Esq. (heyens@gtlaw.com) in each case so as to be **actually received no later than 5:00 p.m. (prevailing Central Time) on July 21, 2023** (the "Bid Deadline").

## VII.   Evaluation of Qualified Bids.

Prior to the Auction (if held), the Debtors and their advisors will evaluate Qualified Bids and identify the Qualified Bid(s) that is, in the Debtors' reasonable business judgment, after consultation with the Consultation Parties, the highest or otherwise best Bid (the "Starting Bid"). If applicable, the Starting Bid shall include the amount provided for in the Stalking Horse Purchase Agreement, if any, *plus* the amount of the Bid Protections, *plus* $500,000. In addition, prior to the selection of the Successful Bidder, the Debtors may, in the Debtors' reasonable business judgment, engage in negotiations with bidders with respect to their Bids. For the avoidance of doubt, the Debtors may, after consultation with the Consultation Parties, select more than one Qualified Bid to collectively serve as the Starting Bid in an Auction (if held) if each such Qualified Bid contemplates the purchase of different Assets. In conducting the evaluation of the Qualified Bids, the Debtors will take into consideration the following non-exclusive factors:

a.      the amount of the Purchase Price of the Qualified Bid;

b.      the value to be provided to the Debtors under the Bid, including the net economic effect upon the Debtors' estates, taking into account the Bid Protections;

c.      the proposed changes or modifications to the Form Asset Purchase Agreement delivered in connection with such Qualified Bid and the comparative favorability of the terms set forth in such proposed purchase agreement versus the Form Asset Purchase Agreement;

d.      the assets and liabilities excluded from the Qualified Bid and any executory

contracts or leases or other liabilities proposed to be assumed;

e.    any benefit to the Debtors' bankruptcy estates from any assumption of liabilities or waiver of liabilities;

f.    the certainty of a Qualified Bid leading to a confirmed chapter 11 plan;

g.    the transaction structure and execution risk, including conditions to, timing of, and certainty of closing; termination provisions; availability of financing and financial wherewithal to meet all commitments; and required governmental or other approvals; and

h.    any other factors the Debtors may, consistent with their fiduciary duties, reasonably deem relevant.

Promptly after determination of the Starting Bid and prior to the Auction, the Debtors will distribute a copy of the Starting Bid to each Qualified Bidder who has submitted a Qualified Bid with respect to such Assets.

If any Bid is determined by the Debtors not to be a Qualified Bid, the Debtors will refund such Qualified Bidder's Good Faith Deposit within five (5) business days after the Bid Deadline.

## VIII.    <u>No Qualified Bids</u>.

If no Qualified Bids other than the Stalking Horse Purchase Agreement, if any, are received by the Bid Deadline, then the Debtors, after consultation with the Consultation Parties and with the consent of the DIP Agent, may cancel the Auction, and may decide, in the Debtors' reasonable business judgment, to designate the Stalking Horse Purchase Agreement as the Successful Bid, and pursue entry of the Sale Order approving a Sale of the Debtors' Assets to the Stalking Horse Purchaser pursuant to the Stalking Horse Purchase Agreement. The Debtors shall file notice of any cancellation of the Auction and designation of the Stalking Horse Purchase Agreement as the Successful Bid with the Court, within two business days of the determination of such election by the Debtors.

## IX.    <u>Right to Credit Bid</u>.

Any Qualified Bidder that has a valid and perfected lien on any assets of the Debtors' estates (a "<u>Secured Creditor</u>"), and the right under applicable non-bankruptcy law to credit bid claims secured by such lien shall have the right to credit bid all or a portion of the value of such Secured Creditor's claims within the meaning of, and subject to, section 363(k) of the Bankruptcy Code; *provided* that a Secured Creditor shall have the right to credit bid its claim only with respect to the collateral by which such Secured Creditor is secured; *provided further*, that a credit bid shall not constitute a Qualified Bid if the bid does not include a cash component sufficient to pay in full all claims for which there are valid, perfected, and unavoidable liens on any assets included in such bid that are senior in priority to those of the Secured Creditor seeking to credit bid.

For the avoidance of doubt, the DIP Agent is a Secured Creditor and shall be deemed a Qualified Bidder in all respects without the need for the submission of any additional documentation or Court approval.  The DIP Agent shall be entitled to credit bid any portion of its secured claim prior to the Bid Deadline.

**X.    Auction**.

If one or more Qualified Bids are received by the Bid Deadline with respect to any applicable non-overlapping Assets, then the Debtors shall conduct the Auction with respect to such Assets. The Auction will be held on **July 28, 2023**, at **10:00 a.m. (prevailing Eastern Time)**, at the office of Raymond James, 320 Park Ave. 12th Floor, New York, NY, or at such later time or other place as the Debtors determine, after consultation with the Consultation Parties, in which case the Debtors shall timely notify all Qualified Bidders of such later time or other place, and file a notice of the change on the Court's docket for these chapter 11 cases.[65]

The Auction will be conducted in accordance with the following procedures (the "Auction Procedures"):

a.    except as otherwise provided herein, the Auction will be conducted openly;

b.    only Qualified Bidders, including the Stalking Horse Purchaser (if any), shall be entitled to bid at the Auction;

c.    the Qualified Bidders, including the Stalking Horse Purchaser (if any), shall appear at the Auction through duly authorized representatives at the Auction;

d.    only the following parties shall be permitted to attend the Auction: authorized representatives of each of the Qualified Bidders (including the Stalking Horse Purchaser), the Debtors, and the Consultation Parties and their respective advisors;

e.    bidding at the Auction will begin at the applicable Starting Bid;

f.    Bids at the Auction, including any Bids by the Stalking Horse Purchaser, must be made in minimum increments of such amount as the Debtors determine and announce at or prior to the Auction, after consultation with the Consultation Parties and with the consent of the DIP Agent, of additional value (including after payment of the Bid Protections to the Stalking Horse Purchaser);

g.    each Qualified Bidder will be permitted a reasonable time to respond to previous bids at the Auction, as determined by the Debtors in consultation with the Consultation Parties;

h.    the bidding will be transcribed or recorded to ensure an accurate recording of the

---

[65]    If the Debtors decide to hold a live, in-person Auction, Qualified Bidders shall still have the ability to submit Bids remotely.

bidding at the Auction;

i.     no Qualified Bidders (or their respective representatives) may communicate with one another, collude, or otherwise coordinate for purposes of participating in the Auction, and each Qualified Bidder will be required to confirm on the record of the Auction that (i) it has not engaged in any collusion, coordination, or unfair competitive practices with respect to the bidding or the Sale and (ii) its Bid represents an irrevocable, binding, good faith, and bona fide offer to purchase some or all of the Assets identified in such Bid if such Bid is selected as the Successful Bid; *provided, however*, that two or more Qualified Bidders may coordinate to the extent they wish to provide a combined bid if the Debtors, after consultation with the Consultation Parties, approve such coordination in their reasonable discretion;

j.     the Auction will not close unless and until all Qualified Bidders have been given a reasonable opportunity to submit an overbid at the Auction to the then-prevailing highest bid, subject to the Debtors' right, in consultation with the Consultation Parties, to require last and final bids to be submitted on a "blind" basis;

k.     the Debtors reserve the right, in their reasonable business judgment, after consultation with the Consultation Parties, to adjourn the Auction one or more times to, among other things, (i) facilitate discussions between the Debtors and Qualified Bidders, (ii) allow Qualified Bidders to consider how they wish to proceed, and (iii) provide Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in their reasonable business judgment, after consultation with the Consultation Parties, may require that the Qualified Bidder has sufficient internal resources or has received sufficient non-contingent debt and/or equity funding commitments to consummate the proposed transaction at the prevailing amount; and

l.     the Auction will be governed by such other Auction Procedures as may be announced by the Debtors and their advisors, after consultation with the Consultation Parties, from time to time on the record at the Auction; *provided* that such other Auction Procedures are (i) not inconsistent with the Bid Procedures Order, the Bankruptcy Code, or any other order of the Court, (ii) disclosed orally or in writing to all Qualified Bidders, and (iii) determined by the Debtors, after consultation with the Consultation Parties, to further the goal of attaining the highest or otherwise best offer for the applicable Assets.

For the avoidance of doubt, nothing in the Auction Procedures (if an Auction is held) will prevent the Debtors from exercising their respective fiduciary duties under applicable law (as reasonably determined in good faith by the Debtors).

**XI.**     **Acceptance of the Successful Bid**.

The Auction shall continue until only one Qualified Bid is the highest or otherwise best bid to purchase some or all of the Assets in the Debtors' reasonable business judgment (after consultation with the Consultation Parties) and in a manner consistent with the exercise of their fiduciary duties and outlined below in further detail (a "Successful Bid"), and that further bidding is unlikely to result in a different Successful Bid or Successful Bids that would be acceptable to the Debtors, at which point, the Auction will be closed. When determining the highest or otherwise best Qualified Bids, as compared to other Qualified Bids, the Debtors may consider the following factors in addition to any other factors that the Debtors deem appropriate: (a) the amount and nature of the total consideration; (b) the likelihood of the Qualified Bidder's ability to close a Sale and the timing thereof; (c) the net economic effect of any changes to the value to be received by each of the Debtors' estates from the Sale contemplated by the Bid Documents; (d) the tax consequences of such Qualified Bid; and (e) the certainty of the Debtors being able to confirm a chapter 11 plan.

For the avoidance of doubt, the Debtors may select more than one Qualified Bid to collectively serve as a Successful Bid if each such Qualified Bid contemplates the purchase of different Assets. The Qualified Bidder or Qualified Bidders having submitted the Successful Bid or Successful Bids will be deemed the "Successful Bidder" or "Successful Bidders," with respect to the applicable Assets. The Debtors shall promptly file notice of the Successful Bid(s) and the Successful Bidder(s) with the Court. The Debtors shall present the results of the Auction at a hearing (the "Sale Hearing") and shall seek Court approval to enter into a binding purchase agreement or other definitive documentation with the Successful Bidder(s) on the terms of the Successful Bid(s) (the order approving such entry, the "Sale Order"). For the avoidance of doubt, the Sale Order shall deem the Debtors' selection of the Successful Bid(s) final and, subject to the designation of the Backup Bid, the Debtors shall not solicit or accept any further bids or offers to submit a bid after such selection; *provided* that, notwithstanding anything to the contrary in these Bid Procedures, nothing in these Bid Procedures shall require the board of directors, board of managers, or such similar governing body of any Debtor to take or refrain from taking any action that would be inconsistent with applicable law or its fiduciary obligations under applicable law.

Each Successful Bidder and the Debtors shall, as soon as commercially reasonable and practicable, complete and sign all agreements, contracts, instruments, or other documents evidencing and containing the terms upon which each such Successful Bid was made.

**XII.**     **Designation of Backup Bidder**.

The Qualified Bidder or Qualified Bidders with the second highest or otherwise best bid(s) or combination(s) of bids (each, a "Backup Bid") to purchase any or all of the applicable Assets (each, a "Backup Bidder") will be determined by the Debtors, after consultation with the Consultation Parties, at the conclusion of the Auction and will be announced at that time to all the Qualified Bidders participating in the Auction. Each Backup Bidder shall be required to keep its Qualified Bid open and irrevocable until the earlier of (i) the closing of the transaction with the applicable Successful Bidder; and (ii) August 30, 2023. The Backup Bidder's Good

14

Faith Deposit (if any) shall be held in escrow until the closing of the transaction with the applicable Successful Bidder. If for any reason a Successful Bidder fails to consummate the purchase of such Assets within the time permitted after the entry of the Sale Order, then the Backup Bidder will automatically be deemed to have submitted the Successful Bid for such Assets, and the Backup Bidder shall be deemed a Successful Bidder for such Assets and shall be required to consummate the Sale with the Debtors as soon as is commercially practicable without further order of the Court; *provided* that the Debtors shall file a notice with the Court.

## XIII.  **Approval of Sale**.

The Debtors will present the results of the Auction to the Court for approval at the Sale Hearing, at which certain findings will be sought from the Court regarding the Auction, including, among other things, that: (a) the Auction was conducted, and the Successful Bidder or Successful Bidders were selected, in accordance with the Bid Procedures; (b) the Auction was fair in substance and procedure; (c) the Successful Bid or Successful Bids were Qualified Bids as defined in the Bid Procedures; and (d) consummation of any Sale(s) as contemplated by the Successful Bid(s) in the Auction will provide the highest or otherwise best offer for the Debtors and the Debtors' Assets and is in the best interests of the Debtors and their estates.

The Sale Hearing is presently scheduled to commence on **August ●, 2023**, at ● **(prevailing Central Time)**, or as soon thereafter as counsel may be heard, before the Honorable David R. Jones, United States Bankruptcy Court for the Southern District of Texas.

## XIV.  **Return of Good Faith Deposit.**

The Good Faith Deposit of a Successful Bidder shall, upon consummation of any Sale, be credited to the purchase price paid for the applicable Assets. If a Successful Bidder fails to consummate the Sale, then the Good Faith Deposit (if any) shall be forfeited to, and retained irrevocably by, the Debtors (subject to the DIP Agent's liens), and the Debtors specifically reserve the right to seek all available damages from the defaulting Successful Bidder.

The Good Faith Deposit of any Qualified Bidders that are not Successful Bidders or Backup Bidders will be returned within five (5) business days after the Auction or upon the permanent withdrawal of the applicable proposed Sale, and the Good Faith Deposit of any Backup Bidders will be returned within five (5) business days after the consummation of the applicable Sale or upon the permanent withdrawal of the applicable proposed Sale.

Each Good Faith Deposit shall be held in interest-free escrow and at no time shall be deemed property of the Debtors' estates absent further order of the Court, except as otherwise provided herein.

## XV.  **Reservation of Rights**.

The Debtors reserve their rights to modify these Bid Procedures in their reasonable business judgment, after consultation with the Consultation Parties, in a manner consistent with the exercise of their fiduciary duties, and in any manner that will best promote the goals of the bidding process, or impose, at or before the Auction (if held), additional customary terms and conditions on the sale of some or all of the Debtors' Assets, including, without limitation: (a)

~~with the prior written consent of the DIP Agent (not to be unreasonably withheld),~~ extending the deadlines set forth in these Bid Procedures; (b) adjourning the Auction; (c) modifying the Auction Procedures or adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction; (d) canceling the Auction; (e) rejecting any or all Bids or Qualified Bids; and (f) adjusting the applicable minimum overbid increment, including by requesting that Qualified Bidders submit last or final bids on a "blind" basis. For the avoidance of doubt, the Debtors reserve the right at any point prior to the selection of the Successful Bidder, and after consultation with the Consultation Parties and with the consent of the DIP Agent, to terminate the Sale processes contemplated hereunder with respect to any or all of the Debtors' Assets and seek to sell any or all Assets pursuant to section 363(b) of the Bankruptcy Code.

## XVI.   **Consent to Jurisdiction.**

All Qualified Bidders at the Auction will be deemed to have consented to the core jurisdiction of the Court and waived any right to a jury trial in connection with any disputes relating to any Sale, the Auction, and the construction and enforcement of these Bid Procedures, any written indications of interest, any Preliminary Bid Documents, or any Bid documents, as applicable, and consented to the entry of a final order or judgment in any way related to these Bid Procedures, the bid process, the Auction, the Sale Hearing, or the construction and enforcement of any agreement or any other document relating to a Sale if it is determined that the Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

Any parties raising a dispute relating to these Bid Procedures must request that such dispute be heard by the Court on an expedited basis.

## XVII.   **Fiduciary Out**.

Notwithstanding anything to the contrary in these Bid Procedures, nothing in these Bid Procedures or the Bid Procedures Order shall require a Debtor or the board of directors, board of managers, or similar governing body of a Debtor, after consulting with counsel, to take any action or to refrain from taking any action related to any sale transaction to the extent taking or failing to take such action would be inconsistent with applicable law or its fiduciary obligations under applicable law; *provided, however,* that the foregoing does not constitute a finding by the Court or any other court of competent jurisdiction that the Debtors' officers and directors have complied with their fiduciary duties by taking, or refraining from, any such action.

Further, notwithstanding anything to the contrary in these Bid Procedures, through the date of the Auction (if held), nothing in these Bid Procedures or the Bid Procedures Order shall diminish the right of the Debtors and their respective directors, officers, employees, investment bankers, attorneys, accountants, consultants, and other advisors or representatives to: (a) consider, respond to, and facilitate alternate proposals for sales or other restructuring transactions involving any or all of the Debtors' Assets (each an "Alternate Proposal"); (b) provide access to non-public information concerning the Debtors to any entity or enter into confidentiality agreements or nondisclosure agreements with any entity; (c) maintain or continue discussions or negotiations with respect to Alternate Proposals; (d) otherwise

cooperate with, assist, participate in, or facilitate any inquiries, proposals, discussions, or negotiation of Alternate Proposals; and (e) enter into or continue discussions or negotiations with holders of claims against or equity interests in a Debtor or any other party in interest in these chapter 11 cases (including the United States Trustee), or any other entity regarding Alternate Proposals.

**\*\*\***

**Exhibit 2**

**Form of Sale Notice**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |
|---|---|
| In re: | Chapter 11 |
| MOUNTAIN EXPRESS OIL COMPANY, et al., | Case No. 23-90147 (DRJ) |
| Debtors. [1] | (Jointly Administered) |

**NOTICE OF AUCTION FOR THE SALE OF THE DEBTORS' ASSETS FREE**
**AND CLEAR OF ANY AND ALL CLAIMS, INTERESTS, AND ENCUMBRANCES**

**PLEASE TAKE NOTICE** that the above-captioned debtors and debtors in possession (collectively, the "Debtors") are soliciting offers for a transaction or transactions, any of which may include the purchase of some or all of the Debtors' Assets and assumption of certain liabilities of the Debtors, consistent with the bidding procedures (the "Bid Procedures")[2] approved by the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Court") by entry of an order on June ●, 2023 [Docket No. ●] (the "Bid Procedures Order"). **All interested bidders should carefully read the Bid Procedures and Bid Procedures Order**. To the extent that there are any inconsistencies between this notice and the Bid Procedures or the Bid Procedures Order, the Bid Procedures or the Bid Procedures Order, as

---

**Copies of the Bid Procedures Order or other documents related thereto are available upon request to KCC by calling 866-967-0495 or visiting the Debtors' restructuring website at www.kccllc.net/mountainexpressoil.**

---

applicable, shall govern in all respects.

**PLEASE TAKE FURTHER NOTICE** that the Bid Deadline is **July 21, 2023**, **at** ~~5:00~~**4:00** **p.m. (prevailing Central Time)**, and that any person or entity who wishes to participate in the Auction must comply with the participation requirements, bid requirements, and other requirements set forth in the Bid Procedures.

---

[1]   A complete list of each of the Debtors in these Chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at www.kccllc.net/mountainexpressoil. The location of Debtor Mountain Express Oil Company's principal place of business and the Debtors' service address in these Chapter 11 cases is 3650 Mansell Road, Suite 250, Alpharetta, GA 30022.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bid Procedures Order or the Bid Procedures, as applicable.

PLEASE TAKE FURTHER NOTICE that the Debtors intend to conduct the Auction, at which time they will consider proposals submitted to the Debtors and their professionals, by and pursuant to the Bid Procedures as set forth in the Bid Procedures Order, beginning on **July 28, 2023**, at **10:00 a.m. (prevailing Eastern Time)** via videoconference or such other form of remote communication arranged by counsel to the Debtors.

PLEASE TAKE FURTHER NOTICE that the Debtors expect to seek approval of any Sales at the Sale Hearing, which is presently scheduled to commence on **August ●, 2023**, at **● (prevailing Central Time)**, or as soon thereafter as counsel may be heard, before the Honorable David R. Jones in the United States Courthouse, Courtroom 400, 4th Floor, 515 Rusk Street, Houston, Texas 77002.

PLEASE TAKE FURTHER NOTICE that, except as otherwise set forth in the Bid Procedures Order with respect to objections to proposed cure amounts or the assumption and assignment of Potential Assumed/Assigned Contracts, objections, if any, to a proposed Sale **must**: (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules and the Bankruptcy Local Rules; (c) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (d) be filed with the Court by ~~July 12~~**August 3,** 2023, at ~~5:00~~**4:00 p.m. (prevailing Central Time)**; *provided, however,* that any objections to the manner in which the Auction was conducted and the identity of the Successful Bidder or Backup Bidder may be filed up to 24 hours prior to the Sale Hearing, or, if the Debtors elect not to proceed with an Auction, two (2) business days following the notification filed with the Court of such election not to proceed with an Auction.

## CONSEQUENCES OF FAILING TO TIMELY MAKE AN OBJECTION

**ANY PARTY OR ENTITY WHO FAILS TO TIMELY MAKE AN OBJECTION TO A SALE ON OR BEFORE THE SALE OBJECTION DEADLINE IN ACCORDANCE WITH THE BID PROCEDURES ORDER SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO SUCH SALE, INCLUDING WITH RESPECT TO THE TRANSFER OF THE SELLING DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS.**

## NO SUCCESSOR OR TRANSFEREE LIABILITY

The Sale Order is expected to provide, among other things, that the Successful Bidder from the Sale will have no responsibility for, and the Assets will be sold free and clear of, any successor liability, including the following:

To the greatest extent allowable by applicable law, the Successful Bidder shall not be deemed, as a result of any action taken in connection with the Stalking Horse Purchase Agreement (in the case where the Stalking Horse Purchaser is the Successful Bidder) or a separate purchase agreement entered into with the Successful Bidder (if the Stalking Horse Purchaser is not the Successful Bidder), the consummation of the Sale, or the transfer or operation of the Assets, to (a) be a legal successor, or otherwise be deemed a successor to the Debtors (other than with respect to any obligations as an assignee under the Potential Assumed/Assigned Contracts arising after the effective date); (b) have, de facto or otherwise, merged with or into the Debtors; or (c) be an alter ego or mere continuation or substantial continuation of the Debtors, in the case of each of (a), (b), and (c), including, without limitation, within the meaning of any foreign, federal, state or local revenue law, pension law, the Employee Retirement Income Security Act, the Consolidated Omnibus Budget Reconciliation Act, the WARN Act (29 U.S.C. §§ 2101 et seq.), the Fair Labor Standard Act, Title VII of the Civil Rights Act of 1964 (as amended), the Age Discrimination and Employment Act of 1967 (as amended), the Federal Rehabilitation Act of 1973 (as amended), the National Labor Relations Act (29 U.S.C. § 151, et seq.), environmental liabilities, debts, claims or obligations, any liabilities, debts or obligations of or required to be paid by the Debtors for any taxes of any kind for any period, labor, employment, or other law, rule or regulation (including without limitation filing requirements under any such laws, rules or regulations), or under any products liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine.

All rights of any party to set off any claims, debts, or obligations owed by or to the Successful Bidder in connection with the assets shall be extinguished on the effective date pursuant to the Sale Order. Other than as expressly set forth in the Stalking Horse Purchase Agreement (or another Successful Bidder's purchase agreement, as applicable) with respect to assumed liabilities, the Successful Bidder shall not have any responsibility for (a) any liability or other obligation of the Debtors or related to the assets or (b) any claims (as such term is defined by section 101(5) of the Bankruptcy Code) against the Debtors or any of their predecessors or affiliates. To the greatest extent allowed by applicable law, the Successful Bidder shall have no liability whatsoever with respect to the Debtors' (or their predecessors' or affiliates') respective businesses or operations or any of the Debtors' (or their predecessors' or affiliates') obligations based, in whole or part, directly or indirectly, on any theory of successor or vicarious liability of any kind or character, or based upon any theory of antitrust, environmental, successor or transferee liability, de facto merger or substantial continuity, labor and employment or products liability, whether known or unknown as of the effective date, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated, including liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Assets prior to the effective date.

3

DOCS_DE:243413.5 58614/002243413.7 58614/002

**PLEASE TAKE FURTHER NOTICE** that the Debtors reserve the right, after consultation with the Consultation Parties and in their reasonable business judgment and subject to the exercise of their fiduciary duties, to modify the Bid Procedures and/or to terminate discussions with any Potential Bidders at any time, to the extent not materially inconsistent with the Bid Procedures.

**PLEASE TAKE FURTHER NOTICE** that copies of the Bid Procedures Motion, Bid Procedures, and Bid Procedures Order, as well as all related exhibits, are available: free of charge upon request to KCC by calling **866-967-0495** or visiting the Debtors' restructuring website at www.kccllc.net/mountainexpressoil, or for a fee via PACER by visiting http://www.txs.uscourts.gov.

Dated: [●]

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ DRAFT*

Michael D. Warner (SBT 00792304)
Steven W. Golden (SBT 24099681)
440 Louisiana Street, Suite 900
Houston, TX 77002
Telephone: (713) 691-9385
Facsimile:  (713) 691-9407
mwarner@pszjlaw.com
sgolden@pszjlaw.com

-and-

Jeffrey N. Pomerantz (admitted *pro hac vice*)
Jeffrey W. Dulberg (admitted *pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile:  (310) 201-0760
jpomerantz@pszjlaw.com
jdulberg@pszjlaw.com

*Counsel to the Debtors and Debtors in Possession*

**Exhibit 3**

**Form of Cure Notice**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| MOUNTAIN EXPRESS OIL COMPANY, et al., | Case No. 23-90147 (DRJ) |
| Debtors. [1] | (Jointly Administered) |

**NOTICE TO CONTRACT PARTIES TO POTENTIALLY
ASSUMED EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

> **YOU ARE RECEIVING THIS NOTICE BECAUSE YOU
> OR ONE OF YOUR AFFILIATES IS A COUNTERPARTY TO AN
> EXECUTORY CONTRACT OR UNEXPIRED LEASE WITH ONE OR MORE
> OF THE DEBTORS AS SET FORTH ON <u>EXHIBIT A</u> ATTACHED HERETO.**

**PLEASE TAKE NOTICE** that on ●, 2023, the United States Bankruptcy Court for the Southern District of Texas (the "Court") entered the *Order (I) Approving Bid Procedures for the Sale of the Debtors' Assets, (II) Approving Bid Protections, (III) Scheduling Certain Dates with Respect Thereto, (IV) Approving the Form and Manner of Notice Thereof, and (V) Approving Contract Assumption and Assignment Procedures* [Docket No. ●] (the "Bid Procedures Order"),[2] authorizing the Debtors to conduct an auction (the "Auction") to select a party or parties to purchase some or all of the Debtors' assets (the "Assets"). The Auction will be governed by the bidding procedures (attached to the Bid Procedures Order as <u>Exhibit 1</u> the "Bid Procedures").

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Bid Procedures and the terms of any Successful Bid, the Debtors **may** assume and assign to the Successful Bidder certain of the Potential Assumed/Assigned Contracts listed on the Cure Schedule, attached hereto as **Exhibit A**, to which you are a counterparty, upon approval of the Sale. The Cure Schedule can also be viewed on the Debtors' case website (www.kccllc.net/mountainexpressoil). The Debtors have conducted a review of their books and records and have determined that the cure amount for unpaid monetary obligations under such Potential Assumed/Assigned Contracts is as set forth on **Exhibit A** attached hereto (the "Cure Amounts").

**PLEASE TAKE FURTHER NOTICE** that if you disagree or otherwise have any objections to a proposed Cure Amount (a "Cure Objection") and/or any other objection to the

---

[1]   A complete list of each of the Debtors in these Chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at www.kccllc.net/mountainexpressoil. The location of Debtor Mountain Express Oil Company's principal place of business and the Debtors' service address in these Chapter 11 cases is 3650 Mansell Road, Suite 250, Alpharetta, GA 30022.

[2]   All capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Bid Procedures Order or the Bid Procedures, as applicable.

assumption and assignment or transfer of any of the Potential Assumed/Assigned Contracts (an "Assignment Objection"), your objection must: (i) be in writing; (ii) comply with the applicable provisions of the Bankruptcy Rules, Bankruptcy Local Rules, and any order governing the administration of these chapter 11 cases; (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed Cure Amounts, state the correct cure amount alleged to be owed to the objecting Contract Counterparty, together with any applicable and appropriate documentation in support thereof; and (iv) be filed with the Court **no later than July 12, 2023**, at **5:00 p.m. (prevailing Central Time)** (the "Cure/Assignment Objection Deadline"), and if you object to the ability of the Successful Bidder and/or Backup Bidder to provide adequate assurance of future performance with respect to any Potential Assumed/Assigned Contract (an "Adequate Assurance Objection" and, together with Cure Objections and Assignment Objections, "Contract Objections"), be filed with the Court **no later than ~~July 31~~August 3, 2023 at 4:00 p.m. (prevailing Central time)** (the "Adequate Assurance Objection Deadline"), in each case, by the following parties: (a) the Debtors' counsel, Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Boulevard, 13th Floor, Los Angeles, California 90067, Attn.: Jeffrey Pomerantz (jpomerantz@pszjlaw.com) and Jeffrey Dulberg (jdulberg@pszjlaw.com); and (b) the United States Trustee for the Southern District of Texas, 515 Rusk Street, Suite 3516, Houston, Texas 77002, Attn.: Jayson B. Ruff (jayson.b.ruff@usdoj.gov).

**PLEASE TAKE FURTHER NOTICE** that if no Contract Objection is filed by the Cure/Assignment Objection Deadline or Adequate Assurance Objection Deadline, as applicable, then (i) you will be deemed to have stipulated that the Cure Amounts as determined by the Debtors are correct, (ii) you will be forever barred, estopped, and enjoined from asserting any additional cure amount under the Potential Assumed/Assigned Contract, and (iii) you will be forever barred, estopped, and enjoined from objecting to such proposed assignment or transfer to the Successful Bidder on any grounds whatsoever, including the grounds that the Successful Bidder has not provided adequate assurance of future performance as of the closing date of the Sale.

**PLEASE TAKE FURTHER NOTICE** that any Cure Objection in connection with the Successful Bid that otherwise complies with these procedures yet remains unresolved as of the commencement of the Sale Hearing, shall be heard at a later date to be fixed by the Court.

**PLEASE THAT FURTHER NOTICE** that, notwithstanding anything herein, the mere listing of any Potential Assumed/Assigned Contract on the Cure Notice does not require or guarantee that such Potential Assumed/Assigned Contract will be assumed by the Debtors at any time or assumed and assigned or transferred, and all rights of the Debtors and the Successful Bidder with respect to such Potential Assumed/Assigned Contract are reserved. Moreover, the Debtors explicitly reserve their rights, in their reasonable discretion, to seek to reject or assume each Potential Assumed/Assigned Contract pursuant to section 365(a) of the Bankruptcy Code and in accordance with the procedures allowing the Debtors and/or the Successful Bidder, as applicable, to designate any Potential Assumed/Assigned Contract as either rejected or assumed on a post-closing basis.

**PLEASE TAKE FURTHER NOTICE** that, nothing herein (i) alters in any way the prepetition nature of the Potential Assumed/Assigned Contracts or the validity, priority, or

amount of any claims of a counterparty to any Potential Assumed/Assigned Contract against the Debtors that may arise under such Potential Assumed/Assigned Contract, (ii) creates a postpetition contract or agreement, or (iii) elevates to administrative expense priority any claims of a counterparty to any Potential Assumed/Assigned Contract against the Debtors that may arise under such Potential Assumed/Assigned Contract.

Dated: [●]                                    **PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ DRAFT*
Michael D. Warner (SBT 00792304)
Steven W. Golden (SBT 24099681)
440 Louisiana Street, Suite 900
Houston, TX 77002
Telephone: (713) 691-9385
Facsimile:  (713) 691-9407
mwarner@pszjlaw.com
sgolden@pszjlaw.com

-and-

Jeffrey N. Pomerantz (admitted *pro hac vice*)
Jeffrey W. Dulberg (admitted *pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile:  (310) 201-0760
jpomerantz@pszjlaw.com
jdulberg@pszjlaw.com

*Counsel to the Debtors and Debtors in Possession*

3

DOCS_DE:243413.6 58614/002243413.7 58614/002

**Exhibit 4**

**Form Asset Purchase Agreement**

~~(to be filed)~~

Document comparison by Workshare Compare on Thursday, June 22, 2023
12:45:42 PM

| Input: | |
|---|---|
| Document 1 ID | PowerDocs://DOCS_DE/243413/6 |
| Description | DOCS_DE-#243413-v6-MEX-_Bid_Procedures_Order_[As_Circulated] |
| Document 2 ID | PowerDocs://DOCS_DE/243413/7 |
| Description | DOCS_DE-#243413-v7-MEX-_Bid_Procedures_Order_[As_Circulated] |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 59 |
| Deletions | 54 |
| Moved from | 1 |
| Moved to | 1 |
| Style changes | 0 |
| Format changes | 0 |
| Total changes | 115 |