```
 1                      UNITED STATES BANKRUPTCY COURT
                          SOUTHERN DISTRICT OF TEXAS
 2                             LAREDO DIVISION

 3                                      ) CASE NO: 23-90147-drj
                                        )
 4   MOUNTAIN EXPRESS OIL COMPANY        ) Laredo, Texas
     and                                 )
 5   OFFICIAL COMMITTEE OF               ) Tuesday, June 20, 2023
     UNSECURED CREDITORS,                )
 6          Debtors.                     ) 4:13 p.m. - 4:34 p.m.
     -------------------------------)

 7

 8                                   TRIAL

 9             BEFORE THE HONORABLE DAVID R. JONES
                   UNITED STATES BANKRUPTCY JUDGE
10

11   APPEARANCES:

12   For the Debtor:           JEFF POMERANTZ
                               Pachulski Stang Ziehl & Jones LLP
13                             480 Third Avenue, 34th Floor
                               New York, NY 10017
14
                               BENJAMIN W. KADDEN
15                             Lugenbuhl Wheaton et al
                               601 Poydras Street, Suite 2775
16                             New Orleans, LA 70130

17   For M&Y Pump Services:    RANDY WILLIAMS

18   Court Reporter:           Unknown

19   Courtroom Deputy:         Unknown

20   Transcribed by:           Veritext Legal Solutions
                               330 Old Country Road, Suite 300
21                             Mineola, NY 11501
                               Tel: 800-727-6396
22

23

24   Proceedings recorded by electronic sound recording;
     Transcript produced by transcription service.
25
```

| | |
|---|---|
| 1 | <u>LAREDO, TEXAS; DAY, MONTH DATE, YEAR; TIME</u> |
| 2 | (Call to Order) |
| 3 | THE COURT:  All right, folks.  Are we ready? |
| 4 | MR. POMERANTZ:  Yes, Your Honor. |
| 5 | THE COURT:  All right.  Good afternoon, everyone. |
| 6 | The time is 4:14.  I do apologize for the late start.  Today |
| 7 | is June 20th, 2023.  This is the docket for Houston, Texas. |
| 8 | On the 4:00 docket we have the jointly administered cases |
| 9 | under Case Number 23-90147, Mountain Express Oil Company. |
| 10 | Folks, please don't forget to record your electronic |
| 11 | appearance.  If this is new for you or it's been a while, |
| 12 | it's a quick trip to my website, couple of mouse clicks. |
| 13 | You can do that at any time prior to the conclusion of this |
| 14 | hearing, or the hearing this afternoon. |
| 15 | The first time that you speak, whether it be, |
| 16 | remotely or in the courtroom, if you would, please state |
| 17 | your name and who you represent.  That really does serve as |
| 18 | a good point of reference in the event that a transcript |
| 19 | request is made. |
| 20 | Again, if you are in the courtroom, because we |
| 21 | have some folks who are watching, if you would speak only |
| 22 | from the lectern.  That's the only place we have a camera |
| 23 | and I want you to both be seen and be heard. |
| 24 | Finally, we are recording this afternoon using |
| 25 | Court Speak.  We'll get the audio up on the docket shortly |

1  after conclusion of the hearing.
2          And with that, let me ask Mr. Pomerantz, are you
3  watching, or are you starting us off?  I saw -- ah, there we
4  go.  I got a waved hand.  All right.  But Mr. Pomerantz, I
5  did activate the hand-raising feature because of the noise.
6  If you know you're going to be speaking and you're on the
7  line, if you'd give me 5 star on your telephone, I'll get
8  you unmuted.  All right.  No takers.
9          So, Mr. Pomerantz, I haven't seen the 5 star yet.
10 There you go.  All right, Mr. Pomerantz.  No, you're good.
11 Ah, let me try this again.  Don't touch anything.  How about
12 now?
13          MR. POMERANTZ:  Okay.  Can you hear me, Your
14 Honor?
15          THE COURT:  Loud and clear.  Thank you for asking.
16          MR. POMERANTZ:  Can you hear me?
17          THE COURT:  Yes, sir.
18          MR. POMERANTZ:  Good afternoon, Your Honor.  Jeff
19 Pomerantz, Pachulski Stang Ziehl Jones.  And as I always do,
20 I take Your Honor's orders extremely seriously.  When you
21 said that anyone who would be actively participating in
22 today's hearing should be in your courtroom in the flesh, I
23 am here to observe.  Mr. Ben Kadden and his colleagues will
24 be handling that on behalf of the Debtors.
25          THE COURT:  All right.  Thank you.  All right.

1  Mr. Kadden, good afternoon.  Do you want to just take a
2  couple minutes, tell me where we are, what progress we've
3  made, what progress we haven't made?
4              MR. KADDEN:  Good afternoon, Your Honor.  Benjamin
5  Kadden, here today with Benjamin Wallen, as well as Michael
6  Healy, the CRO, and our two proposed witnesses.
7              We're today, Your Honor, unfortunately not in the
8  courtroom with the people that have caused a massive amount
9  of expenditure of time and frustration and professional
10 fees.
11             We're here today, Your Honor, to deal with yet
12 another violation of the automatic stay, and unfortunately
13 ad unlike the prior ones, which involved isolated vendors,
14 this involves a group of six New York dealers in upstate New
15 York who have taken it upon themselves to remove the
16 Debtors' credit card systems and black boxes from their
17 pumps, which thereby deprives the Debtors of the ability and
18 opportunity to figure out how much is being sold, what is
19 being sold.  And because these are stores that operate on a
20 commission basis, they've essentially stolen the Debtors'
21 fuel and aren't accounting for it.
22             When this was discovered, the Debtors immediately
23 contacted me.  They also contacted the representatives
24 directly.  And I sent notices of violation of stay to each
25 of the relevant parties.  In addition to the six dealers,

1  there were two additional parties who we had reason to
2  believe were either participating in or coordinating
3  potentially the actions of the six dealers, those being
4  BOARD MEMBER Petro, represented by VM Petro, represented by
5  Ms. Tran, and M&Y Pump Service, who today is appearing
6  through Mr. Randy Williams.
7           To cut to the end of the story on VM Petro and
8  M&Y, both of those parties have reached out to the Debtor.
9  I will let Mr. Williams make his statement on the record
10 regarding M&Y, that they did not participate or have any
11 knowledge regarding the contractual relationships.  They
12 were merely acting as a vendor.  They have agreed not to do
13 any further work at these six sites without the written
14 consent of the Debtors.  They have agreed to submit a sworn
15 statement that says that the equipment that was removed and
16 disconnected was left at the stores.  And they've agreed to
17 provide the identity of the parties who were ordering the
18 removal and disconnection of the store orders -- of the
19 credit card systems.
20          VM Petro is a fuel supplier.  It's an entity that
21 we have a commercial relationship with.  There was some
22 concern, really twofold.  Number one, that they were
23 participating and coordinating the efforts by these six
24 dealers.  And then number two, their counsel, in response to
25 my notice of violation, had submitted a demand for payment

1    for an amount which included prepetition amounts.  They have
2    subsequently submitted a declaration, making clear that they
3    didn't believe that they were involved in any way in any
4    sort of nefarious activity.  And they've withdrawn the
5    prepetition demand.
6              And so, at least with respect today, Your Honor,
7    to VM Petro, who is here through counsel, and M&Y, who I
8    believe is here through counsel but is not in the courtroom,
9    the Debtors have authorized me to withdraw the request for
10   sanctions, subject to the statements and agreements that I
11   just recited to Your Honor.
12             THE COURT:  All right.  Let me ask Mr. Williams,
13   is there any statement that you wanted to make, needed to
14   make, with respect to your clients, or are you just agreeing
15   with what Mr. Kadden said?
16             MR. WILLIAMS:  Just briefly, Your Honor.  Got
17   contacted late yesterday, got hired this morning by M&Y Pump
18   Services Inc.  Again, my name is Randy Williams.  My contact
19   has been Umit, U-M-I-T, Ayazglu, A-Y-A-Z-G-L-U.  He is a
20   service manager with M&Y Pump Services.
21             Just for the record, they did receive five calls
22   from five different -- five of these different stations.
23   We've identified the one station that did not contact us,
24   that has apparently been disconnected.  M&Y says they did
25   not do that and they don't know who did it.  We've provided

1  the names of the people that we did have that made the calls
2  for the service.  We will provide sworn statements that the
3  technicians just disconnected the equipment and installed
4  new equipment.  They took nothing with them.  They left it
5  in the locations.  And they have not been back since this
6  happened in May.
7            We will agree and are willing to have a
8  stipulation or an order of this Court that we will not
9  disconnect -- M&Y will not disconnect any other Mountain
10 Express dealers again unless they instruct us that that's
11 something that we can do.
12           My client does want to continue to provide service
13 because they update these systems, and in fact between
14 yesterday and today they had two calls from other Mountain
15 Express dealers whose systems were simply not working, where
16 they needed to send out technicians so that they could sell
17 gas.  Because without them working, of course, they can't
18 operate the pumps.
19           And again, with that, I think that's everything
20 that Mr. Kadden and I talked about today to try and get this
21 resolved, and will work with the Debtor moving forward.
22           THE COURT:  All right.  And if it turns out, as
23 you work your way through this, if you decide that you need
24 an order, so long as it's signed off by everybody, I'm more
25 than happy to do it.

1                MR. WILLIAMS:  I'm taking Mr. Kadden's lead.  What
2    he needs, that'll make him happy.  Given that they've pulled
3    down the sanctions, we have said we'll only cooperate.  And
4    again, we do do business for other Mountain Express
5    customers and my client very much wants to continue to do
6    the updates and the service going forward.
7                THE COURT:  Right.  Which is why I was -- that's
8    why the offer.  If they need something -- because I'm
9    assuming, you know, you're a referral from somebody and so
10   I'm assuming there's someone in New York that they depend on
11   for advice and guidance, and if I can give comfort to a
12   process that works, I'm more than happy to do it that's all
13   I was trying to say.
14               MR. WILLIAMS:  Thank you very much, Your Honor.
15               THE COURT:  Right.  Thank you.  All right.  Mr.
16   Kadden?
17               MR. KADDEN:  Your Honor, with those two issues out
18   of the way, we're really left with the elephant in the room,
19   which is the six dealers who are not in the room, are not in
20   the room through counsel.
21               Your Honor, the significant concern here is that
22   each of these dealers operates stores that sell gas on a
23   commission basis, which means that the fuel that is
24   delivered to them belongs to the Debtors' estate.  The
25   credit card equipment is vital because that is how the money

```
 1   goes through the credit card system to the fuel supplier;
 2   the Debtor gets its pay.
 3              THE COURT:  Yeah, I got all of that --
 4              MR. KADDEN:  All of that disconnection --
 5              THE COURT:  -- so let me --
 6              MR. KADDEN:  I'm sorry, Your Honor.
 7              THE COURT:  Let me stop you.  I got all of that.
 8   Been down this road before.  So, I signed the order that I
 9   was given.  But it just says a fully authorized agent.  I
10   can't issue a bench warrant, which is what I'm going to do
11   for an authorized agent.  I need specific individuals.  I
12   need the president of entities and I need for them to have
13   an opportunity to appear.  I need to be able to serve them
14   so that the process is satisfied.
15              If they then don't show up, I'll then have them
16   arrested and I'll transfer them within the federal prison
17   system to Houston.  From New York, my guess is that's about
18   a six-week trip.  I'm serious about this.  You asked for
19   help.  You're going to get it.  But we all have to do our
20   jobs.
21              And you know, in terms of -- and I'm just giving
22   you this because to go forward, you know, you can put on
23   your case and I got it, I can sanction the entities.  But my
24   view is the way to get action is to get the attention of
25   individuals, some of whom I have no doubt are listening, and
```

1    I am talking to them, and I mean exactly what I say.  I'm
2    not going to tolerate this.  But I will eventually figure
3    out who the right person is, because that's your job.  And
4    then I will get them here, and then that's my job.
5              So, with that understanding, what you want to do
6    today?
7              MR. KADDEN:  Your Honor, we have two witnesses who
8    traveled in today who are not --
9              THE COURT:  Okay.
10             MR. KADDEN:  -- particularly heavily involved.
11   One is Mr. Jay Lally, and the second is Ms. Lisa Ciotoli.
12   They each had very limited testimony.  We submitted
13   declarations by each of them.  I was going to offer those --
14   proffer those as their testimony, subject to any opportunity
15   to cross-examine.
16             I'm also just as happy to have that taken up when
17   the full group is here.  I think it's important that --
18             THE COURT:  Well, they had --
19             MR. KADDEN:  -- President show up.
20             THE COURT:  I'm assuming that you've got good
21   service and that you can prove that up.  You know, I don't
22   know why I should inconvenience those witnesses if there's
23   been good notice.  I'm perfectly happy to take the
24   testimony.  I would think really hard about whether or not
25   you want to do this by proffer or whether or not you want to

1  do this by Q and A.  It's totally up to you.  It's your
2  case.  I'm not going to tell you which way to go or not.
3          But what I am telling you is this is an affront to
4  my process.  And this is not something that's just going to
5  stand.  This is stealing.  And this -- stealing is not
6  something I'm going to tolerate.
7          MR. KADDEN:  Your Honor, could I have one minute?
8          THE COURT:  Of course.
9          MR. KADDEN:  Thank you.
10         THE COURT:  While he's doing that, Mr. Gibbs, do
11 you have -- will you -- do you have a statement on behalf --
12 not now -- I want Mr. -- I want folks to be back in here.
13 But do you have comments on behalf of the Committee?  Have
14 you looked at this?  Are you involved in this?
15         MR. GIBBS:  It goes sequentially.  I don't have a
16 comment.  We have looked at it.  We are involved in it.  We
17 are supportive of the relief being requested.  But this is
18 the Debtors' motion.
19         THE COURT:  I got it.  I just --
20         MR. GIBBS:  We share your outrage.
21         THE COURT:  Okay.  Mr. Kadden?
22         MR. KADDEN:  Your Honor, after talking to Mr.
23 Healy, it's the Debtors' preference to put on its case at a
24 single hearing.  If we could have 24 hours, 12 hours, to
25 submit a revised order to show cause that is inclusive of

```
 1   the relevant parties' names?
 2             THE COURT:  What I want you to do is I want you to
 3   trace -- you know, do whatever it is you have to do to
 4   figure out who the highest officer that you can identify is.
 5             MR. KADDEN:  Mm hmm.
 6             THE COURT:  Then call Mr. Alonzo, get a date.
 7   When you're ready to submit that, get a date for the hearing
 8   so you can plug that in.  I want folks to have five to seven
 9   days to retain counsel and make their plane reservations.
10   They should have already done it by now, but they may not
11   leave and I want them to -- I want them to have ample time
12   to put their affairs in order.
13             I am hoping that to the extent folks are
14   listening, they hear my voice, they hear the resolve in my
15   voice, and that you get some reach-outs to -- you know, I
16   don't know -- I don't know what happened.  I mean, I've not
17   heard the other side of the story.  If mistakes were made,
18   mistakes can be rectified.  If it was an attempt to game the
19   system, they picked the wrong game to play in.
20             MR. KADDEN:  Understood, Your Honor.
21             THE COURT:  This is never worth freedom, and
22   that's what these folks have put at risk is their freedom.
23   Not to mention their economic future.  So, when you get that
24   done and you're ready, reach out for a hearing date to Mr.
25   Alonzo.  I'll set that hearing and we'll go from there.
```

1  Make sure you're segregating all of your time.  The estate's
2  not going to bear this cost.  That includes, to the extent
3  that you brought witnesses today, their travel costs, their
4  time, whatever -- whatever it cost, the Debtor is not going
5  to spend one penny on this.
6          MR. KADDEN:  On that point, Your Honor, I had a
7  resistible suggestion that perhaps now would be the time to
8  discuss.
9          THE COURT:  Sure.
10         MR. KADDEN:  Which is I see this process as sort
11 of bifurcated.  One is, were there stay violations?  And
12 that evidence is one bucket of evidence.  Number two, what
13 are the damages that we would be seeking in the form of
14 compensatory sanctions.  And I wonder if it makes sense to
15 have an initial hearing where the focus is, were there stay
16 violations?  And then once they have insured compliance,
17 then the very numbers that you're talking about in terms of
18 professional fees, the burn will stop.
19         The Debtor in this case is losing money daily
20 because not only have they taken them off the system, they
21 are no longer buying fuel from us, which means that the
22 profit margin that this Debtor enjoys -- and they're also
23 not paying rent.  Each of those things is continuing every
24 single day.  An so I thought maybe it made sense to have the
25 damages hearing separated from the stay violation hearing.

1  But --

2          THE COURT:  All fine by me.

3          MR. KADDEN:  Okay.

4          THE COURT:  But I've got to get everybody here.

5          MR. KADDEN:  Oh, 100 percent, Your Honor.

6          THE COURT:  And you know, to the extent that
7   property that belongs to the Debtor has been stolen, I
8   expect the appropriate authorities to be notified and police
9   reports filed.  I'm going to -- I will do my own
10  responsibility and make sure that I've got the U.S. -- U.S.
11  Trustee is here, so Mr. Ruff's on the line.  To the extent
12  that I need to go further and notify the FBI, I will do that
13  as well.  This is going to get remedied one way or the
14  other.  We're just not going to behave this way in a case
15  that I oversee.

16         MR. KADDEN:  One final request, Your Honor, for
17  this first order.  Can we include a very short three days,
18  five-day deadline for them to allow for the compliance
19  inspection at each of the stores?  At this point, what Ms.
20  Ciotoli's testimony would have said is that our monthly
21  inspections have been blocked because access has been
22  blocked, which means that we're not in a position to do the
23  inspection of the underground tanks, do the inspection of
24  the fuel.  There's vapors, there's --

25         THE COURT:  You don't need three days.  You have -

1  -

2            MR. KADDEN:  Okay.

3            THE COURT:  -- 24 hours.

4            MR. KADDEN:  24 hours.  Thank you, Your Honor.

5            THE COURT:  All right.  So, do that.  Mr. Ruff, do

6  you have any questions, comments?  I know that you're new to

7  this.  I assume that you've read everything?

8            MR. RUFF:  I have.  Thank you, Your Honor.  Jayson

9  Ruff, for the U.S. Trustee.  I have read everything.  I

10 don't have any questions at this point.  But obviously,

11 we're paying attention to what's going on here and we'll

12 respond appropriately.

13           THE COURT:  All right.  Thank you.  With that, Mr.

14 Kadden, anything else?  Yes, Mr. Gibbs?

15           MR. GIBBS:  I think I violated one of the Court's

16 instructions.  You asked the first time we approach, we

17 identify ourselves for the record, and I didn't.  Chuck

18 Gibbs, with McDermott Will & Emery, counsel for the

19 Committee.  I apologize.

20           THE COURT:  Oh, thank you, Mr. Gibbs.  All right.

21           MR. KADDEN:  Your Honor, one further thing, if I

22 may.

23           THE COURT:  Sure.

24           MR. KADDEN:  I wanted on behalf of the Debtor to

25 express our sincere appreciation for you taking this

1  extremely seriously.  This is an issue, obviously, that is
2  very scary for the Debtors, both in terms of liquidity and
3  environmental safety, but it's also critically important
4  that dealers across the country understand and appreciate
5  the seriousness that this Court and the Debtors take, not
6  only with regard to the automatic stay, but with regard to
7  contractual obligations.
8         We have already filed one adversary proceeding.
9  We have a hearing on Thursday from another dealer.  These
10 dealers live in a community where they talk to one another.
11 And to the extent that they're, you know, empowered by
12 inaction by the Debtors, which is why we're here today, I
13 hope that they get the message loud and clear that we aren't
14 going to sit on our hands and let them put our company and
15 the public at risk.
16         THE COURT:  Debtors have got a responsibility to
17 act on behalf of all of its constituents, which I know it
18 is.  And I've got an obligation to protect the integrity of
19 the process itself.  And I know for a fact that I take my
20 job very seriously.
21         So, with that, anything else we need to address
22 this afternoon?
23         MR. KADDEN:  That's it, Your Honor.
24         THE COURT:  All right.  We'll note -- and you know
25 who these four people are?

```
 1                    MR. KADDEN:  Yes, Your Honor.
 2                    THE COURT:  All right.  And you know who those two
 3     people are?
 4                    MR. KADDEN:  Yes, Your Honor.
 5                    THE COURT:  All right.  And with that, I'll note
 6     that there's been no compliance with my order.  So that the
 7     entities themselves are in contempt, as set forth in the
 8     order.  And I am asking you to identify the most senior
 9     officer that you can identify, modify the order, require
10     their appearance.  Again, call Mr. Alonzo, get a hearing,
11     and we'll go from there.  All right?
12                    MR. KADDEN:  Understood, Your Honor.
13                    THE COURT:  All right.  Thank you.
14                    MR. KADDEN:  Thank you.
15                    THE COURT:  We'll be adjourned.
16                    CLERK:  All rise.
17         (Proceedings adjourned at 4:34 p.m.)
18
19
20
21
22
23
24
25
```

```
 1                        CERTIFICATION
 2
 3    I certify that the foregoing is a correct transcript from
 4    the electronic sound recording of the proceedings in the
 5    above-entitled matter.
 6
 7    [signature: Sonya M. Ledanski Hyde]
 8
 9
10    Sonya Ledanski Hyde
11
12
13
14
15
16
17
18
19
20    Veritext Legal Solutions
21    330 Old Country Road
22    Suite 300
23    Mineola, NY 11501
24
25    Date:  June 23, 2023
```