**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| MOUNTAIN EXPRESS OIL COMPANY, et al., | Case No. 23-90147 (DRJ) |
| Debtors. [1] | (Jointly Administered) |

**STIPULATION AND AGREED ORDER BY AND AMONG THE DEBTORS
AND FIRST HORIZON BANK**

The debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases, and First Horizon Bank, solely in its capacities as Administrative Agent and DIP Agent ("Agent," and together with the Debtors, the "Parties"), hereby enter into this stipulation and agreed order (the "Stipulation"),[2] and by and through the undersigned counsel, hereby stipulate and agree as follows:

**WHEREAS**, on March 18, 2023 (the "Petition Date"), the Debtors each filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court");

**WHEREAS**, the Debtors, the Agent, and certain banks and financial institutions (each, a "Lender" and, collectively, the "Lenders") are parties to that certain *Senior Secured, Super-Priority Debtor-in-Possession Credit Agreement dated as of March 23, 3023* (as amended by that certain *First Amendment to Senior Secured, Super-Priority Debtor-in-Possession Credit*

---

[1]   A complete list of each of the Debtors in these Chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at www.kccllc.net/mountainexpressoil. The location of Debtor Mountain Express Oil Company's principal place of business and the Debtors' service address in these Chapter 11 cases is 3650 Mansell Road, Suite 250, Alpharetta, GA 30022.

[2]   A capitalized term used but not defined herein shall have the meaning ascribed to it in the *Waiver Under Senior Secured, Super-Priority Debtor-in-Possession Credit Agreement*, which is attached hereto as **Exhibit A** (the "Waiver").

*Agreement dated as of April 28, 2023*, and as further amended, restated, supplemented, or otherwise modified prior to the date hereof, the "Postpetition Credit Agreement");

WHEREAS, on April 25, 2023, the Bankruptcy Court entered the *Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, and 507, Bankruptcy Rules 2002, 4001, 6004, and 9014, and Local Rule 4001-1 (i) Authorizing the Debtors to Use Cash Collateral and Obtain Post-Petition Financing, (ii) Granting Liens and Providing Super-Priority Administrative Expense Status, (iii) Granting Adequate Protection, and (iv) Granting Related Relief* (the "Final DIP Order");

WHEREAS, the Agent has declared certain defaults under the Final DIP Order and Postpetition Credit Agreement related to certain Case Milestones, all as more fully specified in the Waiver (collectively, the "Specified Events of Default"); and

WHEREAS, the Debtors have requested that Agent and Lenders waive the Specified Events of Default and commit to funding the remaining Subsequent Advances under the Postpetition Credit Agreement and Final DIP Order in the aggregate amount of $6,937,500, and Agent and Required Lenders are willing to do so on the terms and conditions set forth in the Waiver and subject to Bankruptcy Court approval of this Stipulation.

**NOW, THEREFORE, IT IS STIPULATED AND AGREED TO BY THE PARTIES, AND UPON APPROVAL BY THE COURT OF THIS STIPULATION, IT IS SO ORDERED AS FOLLOWS:**

1.      The above recitals are incorporated by reference herein with the same force and effect as if fully set forth hereinafter.

2.      The Waiver attached hereto as **Exhibit A** is hereby approved.  The Parties are authorized to take such actions as may be necessary or appropriate to enter into and perform in accordance with the terms of the Waiver.

3.      This Stipulation may be executed by electronic means and the printed product of such shall constitute an original of this Stipulation.

4.      Notwithstanding anything in the Bankruptcy Code or the Bankruptcy Rules to the contrary, this Stipulation shall be effective immediately upon Bankruptcy Court approval thereof.

5.      The Bankruptcy Court shall have exclusive jurisdiction and power regarding the implementation, interpretation, and enforcement of this Stipulation.

**IT IS SO ORDERED.**

**Dated: June ___, 2023**

                           **_____**
                           **DAVID R. JONES**
                           **UNITED STATES BANKRUPTCY JUDGE**

**AGREED AS TO FORM AND CONTENT:**

Dated: June 29, 2023

| | |
|---|---|
| /s/ *Michael D. Warner* | /s/ *John D. Elrod* |
| **PACHULSKI STANG ZIEHL & JONES LLP** | **GREENBERG TRAURIG, LLP** |
| Michael D. Warner (TX Bar No. 00792304) | Shari L. Heyen Texas Bar No. 09564750 |
| Steven W. Golden (TX Bar No. 24099681) | 1000 Louisiana St., Suite 1700 |
| 440 Louisiana Street, Suite 900 | Houston, Texas 77002 |
| Houston, TX 77002 | Telephone: (713) 374-3564 |
| Telephone: (713) 691-9385 | Facsimile: (713) 374-3505 |
| Facsimile: (713) 691-9407 | Shari.Heyen@gtlaw.com |
| mwarner@pszjlaw.com | |
| sgolden@pszjlaw.com | -and- |
| | |
| -and- | John D. Elrod (admitted *pro hac vice*) |
| | Terminus 200, Suite 2500 |
| Jeffrey N. Pomerantz (admitted *pro hac vice*) | 3333 Piedmont Road, NE |
| Jeffrey W. Dulberg (admitted *pro hac vice*) | Atlanta, Georgia 30305 |
| 10100 Santa Monica Blvd., 13th Floor | Telephone: (678) 553-2259 |
| Los Angeles, CA 90067 | Facsimile: (678) 553-2269 |
| Telephone: (310) 981-6910 | ElrodJ@gtlaw.com |
| Facsimile: (310) 201-0760 | |
| jpomerantz@pszjlaw.com | *Counsel for First Horizon Bank, as* |
| jdulberg@pszjlaw.com | *Administrative Agent and DIP Agent* |
| | |
| *Counsel to the Debtors and Debtors in* | |
| *Possession* | |

## EXHIBIT A

**(*Waiver*)**

**WAIVER UNDER SENIOR SECURED, SUPER-PRIORITY
DEBTOR-IN-POSSESSION CREDIT AGREEMENT**

THIS WAIVER UNDER SENIOR SECURED, SUPER-PRIORITY DEBTOR-IN-POSSESSION CREDIT AGREEMENT (this "Agreement"), dated as of [_____], 2023, is by and among MOUNTAIN EXPRESS OIL COMPANY, a Georgia corporation (the "Company" or the "Borrower"), the persons identified as the Guarantors on the signature pages hereto (together with the Borrower, the "Loan Parties"), the Lenders (as defined below) party hereto, and FIRST HORIZON BANK, as Administrative Agent (in such capacity, together with its successors and assigns in such capacity, "Agent").

**W I T N E S S E T H:**

WHEREAS, on March 18, 2023, the Loan Parties commenced jointly administered voluntary cases under chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Court");

WHEREAS, the Loan Parties, the Agent, and certain banks and financial institutions (each, a "Lender" and, collectively, the "Lenders") are parties to that certain Senior Secured, Super-Priority Debtor-in-Possession Credit Agreement dated as of March 23, 3023 (as amended by that certain First Amendment to Senior Secured, Super-Priority Debtor-in-Possession Credit Agreement dated as of April 28, 2023, and as further amended, restated, supplemented, or otherwise modified prior to the date hereof, the "Postpetition Credit Agreement"; capitalized terms used herein without definition shall have the meanings ascribed to such terms in the Postpetition Credit Agreement);

WHEREAS, the Bankruptcy Court entered its Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, and 507, Bankruptcy Rules 2002, 4001, 6004, and 9014, and Local Rule 4001-1 (i) Authorizing the Debtors to Use Cash Collateral and Obtain Post-Petition Financing, (ii) Granting Liens and Providing Super-Priority Administrative Expense Status, (iii) Granting Adequate Protection, and (iv) Granting Related Relief (the "Final DIP Order"), on April 25, 2023;

WHEREAS, the Loan Parties (a) have failed to comply with the Case Milestone set forth in Section 20(d) of the Final DIP Order, resulting in the occurrence of a Default pursuant to Section 20 of the Final DIP Order and Section 11.1(b) of the Postpetition Credit Agreement; (b) will fail to comply with the Case Milestones set forth in Section 20(f) and 20(g) of the Final DIP Order and Section 11.1(b) of the Postpetition Credit Agreement; and (c) have submitted one or more Variance Reports that have not complied with the covenants set forth in Section 7 of the Final DIP Order and Section 11.1(b) of the Postpetition Credit Agreement (the "Specified Events of Default"); and

WHEREAS, Borrower has requested that Agent and Lenders waive the Specified Events of Default, and commits to funding the remaining Subsequent Advances in the aggregate amount of $6,937,500; including $2,312,500 on June 29, 2023 and the remaining $4,625,000 on July 6, 2023, and Agent and Required Lenders are willing to do so on the terms and conditions set forth below.

NOW, THEREFORE, in consideration of the agreements herein contained and other good and valuable consideration, the parties hereby agree as follows:

PART I.DEFINITIONS

SUBPART 1.1  Certain Definitions.  Unless otherwise defined herein or the context otherwise requires, the following term used in this Agreement, including its preamble and recitals, has the following meanings:

"Waiver Effective Date" shall have the meaning set forth in Subpart 3.1.

SUBPART 1.2  Other Definitions.  Unless otherwise defined herein or the context otherwise requires, terms used in this Agreement, including its preamble and recitals, have the meanings provided in the Postpetition Credit Agreement.

PART II.
LIMITED WAIVER OF SPECIFIED EVENT OF DEFAULT

SUBPART 2.1  Limited Waiver.  Upon the terms, and subject to satisfaction of the conditions, set forth in this Agreement, the Agent and the Required Lenders hereby waive the Specified Events of Default and the Satisfactory Letter of Intent, Satisfactory Asset Purchase Agreement, and Satisfactory Sale conditions with respect to the remaining Subsequent Advances such that the aggregate amount of $2,312,500 shall be advanced by the Lenders to the Borrower by June 29, 2023, with the balance of $4,625,000 to be funded by the Lenders to the Borrower by July 6, 2023.  This limited waiver shall be effective only in this specific instance and for the specific purpose for which this limited waiver is given, shall not constitute a waiver of any Default (whether now existing or hereafter arising) other than the Specified Events of Default, and shall not entitle Borrower to any other or further waiver in any similar or other circumstances.  In order to induce the Agent and the Required Lenders to provide this limited waiver and enter into this Agreement, Borrower represents and warrants that, after giving effect hereto, no Default has occurred and is continuing.

PART III.
CONDITIONS TO EFFECTIVENESS

SUBPART 3.1  Effective Date.  This Agreement shall be and become effective as of the date set forth in the preamble to this Agreement (the "Waiver Effective Date"), subject to the following conditions having been satisfied in full:

(a)     Each Loan Party and the Required Lenders shall have executed and delivered counterparts of this Agreement to the Agent;

(b)     After giving effect to this Agreement, (i) the representations and warranties of Borrower contained in Subpart 5 hereof shall be true and correct in all material respects (without duplication of any materiality qualifier contained therein) on and as of the Waiver Effective Date, except to the extent that such representations and warranties expressly relate to an earlier date (in which event such representations and warranties shall have been true and correct in all material respects (without duplication of any materiality qualifier contained therein) as of such earlier date) and (ii) no Default shall have occurred and be continuing;

(c)     Borrower shall have paid to Agent a waiver fee equal to 0.50% of the aggregate amount of the Committed Amount, which fee shall (i) be fully earned as of the date hereof, (ii) not be subject to refund or rebate under any circumstances, and (iii) be paid in kind and shall constitute and increase the outstanding principal amount of the Loans for all purposes under the

2

Postpetition Credit Agreement as of the date hereof, and shall bear interest from and after such date in accordance with the provisions of the Postpetition Credit Agreement;

(d) the Bankruptcy Court shall have entered an order approving this Agreement, and

(e) all other documents and legal matters in connection with the transactions contemplated by this Agreement shall have been delivered, executed, or recorded and shall be in form and substance satisfactory to Agent.

PART IV.
POST-CLOSING COVENANTS

SUBPART 4.1  Exclusivity Period.  Each Loan Party hereby covenants, acknowledges and agrees with Agent and the Lenders that (i) the Loan Parties' exclusivity period (the "Exclusivity Period") under Section 1121 of the Bankruptcy Code for the filing of a chapter 11 plan expires on July 16, 2023 (the "Exclusivity Period Expiration Date"), (ii) the Loan Parties' shall seek and obtain an extension of the Exclusivity Period with respect to all parties in interest except for the Agent, and (iii) the Agent will be permitted to file and solicit acceptances to a chapter 11 plan after the Exclusivity Period Expiration Date. Notwithstanding anything to the contrary contained herein and, in addition to any other breach of any representation, warranty, covenant or agreement hereunder, each Loan Party acknowledges and agrees that the failure to seek and obtain an extension of the Exclusivity Period with respect to all parties other than the Agent on or before the Exclusivity Period Expiration Date shall constitute an immediate Default under the Postpetition Credit Agreement and this Agreement.

SUBPART 4.2  Consultation with Agent's Financial Advisor.  Each Loan Party hereby covenants, acknowledges and agrees with Agent and the Lenders that the Chief Restructuring Officer and financial advisors to the Loan Parties shall hold an in-person meeting with the financial advisor to the Agent on or before July 7, 2023, to conduct a detailed review of the proposed budget and any Approved Budget (the "Budget Review Meeting").  Notwithstanding anything to the contrary contained herein and, in addition to any other breach of any representation, warranty, covenant or agreement hereunder, each Loan Party acknowledges and agrees that the failure to hold the Budget Review Meeting shall constitute an immediate Default under the Postpetition Credit Agreement and this Agreement.

PART V.
MISCELLANEOUS

SUBPART 5.1  No Additional Obligations.  Each Loan Party acknowledges and agrees that the execution, delivery and performance of this Agreement shall not create (nor shall such Loan Party rely upon the existence of or claim or assert that there exists) any obligation of any of Agent or Lenders to consider or agree to any other amendment of or waiver or consent with respect to the Postpetition Credit Agreement or any other instrument or agreement to which Agent or any Lender is a party (collectively, an "Additional Amendment" or "Consent"), and in the event that Agent and Lenders subsequently agree to consider any requested Additional Amendment or Consent, neither the existence of this Agreement nor any other conduct of Agent or Lenders related hereto, shall be of any force or effect on Lenders' consideration or decision with respect to any such requested Additional Amendment or Consent, and Lenders shall not have any obligation whatsoever to consider or agree to any such Additional Amendment or Consent.

SUBPART 5.2  Waiver of Claims.  In order to induce Agent and Lenders to enter into this Agreement, each Loan Party hereby releases, remises, acquits and forever discharges each Lender and Agent and each of their respective employees, agents, representatives, consultants, attorneys, officers, directors, partners, fiduciaries, predecessors, successors and assigns, subsidiary corporations, parent

3

corporations and related corporate divisions (collectively, the "Released Parties"), from any and all actions, causes of action, judgments, executions, suits, debts, claims, demands, liabilities, damages and expenses of any and every character, known or unknown, direct or indirect, at law or in equity, of whatever nature or kind, whether heretofore or hereafter arising, for or because of any manner of things done, omitted or suffered to be done by any of the Released Parties, prior to and including the date of execution hereof, and in any way directly or indirectly arising out of any or in any way connected to this Agreement, the Postpetition Credit Agreement, or the other Loan Documents (collectively, the "Released Matters") provided, that the foregoing shall not apply as to any Released Party to matters resulting solely from such Released Party's own willful misconduct or gross negligence.  Each Loan Party hereby acknowledges that the agreements in this Subpart 5.2 are intended to be in full satisfaction of all or any alleged injuries or damages arising in connection with the Released Matters.  Each Loan Party hereby represents and warrants to each Lender and Agent that it has not purported to transfer, assign or otherwise convey any right, title or interest of in any Released Matter to any other Person and that the foregoing constitutes a full and complete release of all Released Matters.  For the avoidance of doubt, nothing set forth in this Subpart 5.2 or in this Agreement shall be deemed to abrogate, impair, or otherwise prejudice the rights of the Official Committee of Unsecured Creditors (the "Committee") under the Final DIP Order to assert a Challenge or Prepetition Debt Objection on or before the Challenge Deadline (each as defined in the Final DIP Order, and as extended by agreement of the Committee, the Prepetition Agent, and Prepetition Lenders, or as may be extended by order of the Bankruptcy Court).

SUBPART 5.3   Acknowledgments and Stipulations.  In order to induce Agent and Lenders to enter into this Agreement, each Loan Party acknowledges, stipulates and agrees that (a) all of the Obligations are absolutely due and owing to Agent and Lenders in accordance with the terms and provisions of the Postpetition Credit Agreement without any defense, deduction, offset or counterclaim (and, to the extent any Loan Party had any defense, deduction, offset or counterclaim on the date hereof, the same is hereby waived by such Loan Party); (b) the Loan Documents executed by the Loan Parties are legal, valid and binding obligations of such Loan Party, enforceable against such Loan Party in accordance with their respective terms, except as enforcement may be limited by equitable principles or by bankruptcy, insolvency, reorganization, moratorium, or similar laws relating to or limiting creditors' rights generally; (c) the Liens granted by each Loan Party to Agent in the Collateral are valid and duly perfected, first priority Liens, subject only to Permitted Liens; (d) each of the recitals contained at the beginning of this Agreement is true and correct; and (e) prior to executing this Agreement, the Loan Parties consulted with and had the benefit of advice of legal counsel of its own selection and has relied upon the advice of such counsel, and in no part upon the representation of Agent, any Lender or any counsel to Agent or any Lender concerning the legal effects of this Agreement or any provision hereof.

SUBPART 5.4   Cross-References.  References in this Agreement to any Part or Subpart are, unless otherwise specified, to such Part or Subpart of this Agreement.

SUBPART 5.5   Representations and Warranties of Borrower.  Borrower hereby represents and warrants that, after giving effect to this Agreement, (a) the representations and warranties contained in Article 7 of the Postpetition Credit Agreement are correct in all material respects on and as of the date hereof as though made on and as of such date, except to the extent that any such representation or warranty specifically relates to an earlier date, and (b) no Default exists under the Postpetition Credit Agreement. Without limitation of the preceding sentence, each Loan Party hereby expressly reaffirms the validity, effectiveness and enforceability of each Loan Document to which it is a party (in each case, as the same may be modified by the terms of this Agreement).

SUBPART 5.6   This Agreement Constitutes a Loan Document.  Without limiting the generality of anything contained in the Postpetition Credit Agreement, this Agreement constitutes a Loan Document.

The breach of any representation, covenant, agreement or obligation of any Loan Party set forth herein shall constitute a Default.

SUBPART 5.7  Counterparts.  This Agreement may be executed in counterparts (and by different parties hereto in different counterparts), each of which shall constitute an original, but all of which when taken together shall constitute a single contract.  This Agreement constitutes the entire contract among the parties relating to the subject matter hereof and supersedes any and all previous agreements and understandings, oral or written, relating to the subject matter hereof.  Except as provided in Part III, this Agreement shall become effective when it shall have been executed by the Agent and when the Agent shall have received counterparts hereof that, when taken together, bear the signatures of each of the other parties hereto.  Delivery of an executed counterpart of a signature page of this Agreement by facsimile or in electronic (i.e., "pdf" or "tif") format shall be effective as delivery of a manually executed counterpart of this Agreement.

SUBPART 5.8  Choice of Law; Venue.  THIS AGREEMENT SUPPLEMENTS, AND FORMS A PART OF, THE POSTPETITION CREDIT AGREEMENT, BUT (FOR THE AVOIDANCE OF DOUBT) THE PARTIES HERETO IN ANY EVENT SPECIFICALLY AGREE (WITHOUT LIMITATION OF THE FIRST PART OF THIS SENTENCE) THAT THE PROVISIONS OF ARTICLE 14 OF THE POSTPETITION CREDIT AGREEMENT APPLY TO THIS AGREEMENT, *MUTATIS MUTANDIS*.

SUBPART 5.9  Successors and Assigns.  This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

Each of the parties hereto has caused a counterpart of this Agreement to be duly executed and delivered as of the date first above written.

**BORROWER**:

MOUNTAIN EXPRESS OIL COMPANY,
a Georgia corporation

By: _____
      Michael Healy
      Chief Restructuring Officer

**GUARANTORS**:

Loan Parties listed on following page

By: _____
      Michael Healy
      Chief Restructuring Officer

[MEX—WAIVER]

## GUARANTORS

1200 Wego LLC
1227 Veterans, LLC
1308 Jefferson Davis LLC
13289 Old Hammond Highway LLC
1600 Manhattan Blvd, LLC
2601 Gen. Degaulle LLC
2698 Barataria Blvd LLC
2701 Canal Street LLC
2850 Belle Chasse Hgwy LLC
300 Lee Drive LLC
3049 Loyola Drive L.L.C.
4115 Airline Hgwy., LLC
4408 S. I-10 Service Road LLC
4520 Jefferson Highway LLC
4662 GDD LLC
4915 Westbank Expwy LLC
4940 Groom Road, L.L.C.
5310 Flannery Road, LLC
798 Jean Lafitte, L.L.C.
8692 River Road, LLC
9410 Greenwell Springs, LLC
Alabama Terminal Property, LLC
Avondale Brothers No 128 LLC
Avondale Investments, L.L.C.
B&T Petroleum LLC
Brothers Belle Chasse, L.L.C.
Brothers Carol Sue, LLC
Brothers Expressway, Inc.
Brothers I-10 Service Road, Inc.
Brothers Petroleum, L.L.C.
Brothers Stonebridge, Inc.
Brothers Terry Parkway, Inc.
CONSOLIDATED HR SERVICES LLC
Crowder Brothers, LLC
Exxon General Degaulle, LLC
Gause Operation, L.L.C.
Jamie Boulevard, LLC
Lapalco Brothers No. 125, LLC
Madison Auto Truck Plaza And Lucky Dollar Casino, LLC
MEX Fuels LLC
MEX Fuels NE LLC
MEX Fuels NE-IL LLC
MEX Fuels NE-IN LLC
MEX Fuels NE-KY LLC
MEX Fuels NE-NJ LLC
MEX Fuels NE-NY LLC
MEX Fuels NE-OH LLC
MEX Fuels NW LLC
MEX Fuels NW-IA LLC

[MEX—WAIVER]

MEX Fuels NW-MO LLC
MEX Fuels SE LLC
MEX Fuels SE-GA LLC
MEX Fuels SE-MS LLC
MEX Fuels SE-TN LLC
MEX Fuels SW LLC
MEX Fuels SW-LA LLC
MEX Fuels SW-OK LLC
MEX North Alabama, LLC
MEX RE Holdings LLC
MEX RE-NE LLC
MEX RE-NE-IN LLC
MEX RE-NE-NJ LLC
MEX RE-NE-NY LLC
MEX RE-NE-NY-LI LLC
MEX RE-NE-OH LLC
MEX RE-NE-PA LLC
MEX RE-NW LLC
MEX RE-NW-IA LLC
MEX RE-NW-KS LLC
MEX RE-NW-MN LLC
MEX RE-NW-MO LLC
MEX RE-NW-ND LLC
MEX RE-NW-WI LLC
MEX RE-SE LLC
MEX RE-SE-AL LLC
MEX RE-SE-FL LLC
MEX RE-SE-GA LLC
MEX RE-SE-MS LLC
MEX RE-SE-NC LLC
MEX RE-SE-SC LLC
MEX RE-SE-TN LLC
MEX RE-SW LLC
MEX RE-SW-AR LLC
MEX RE-SW-LA LLC
MEX RE-SW-OK LLC
MEX RE-SW-TX LLC
Mississippi MEX Company, LLC
Mountain Express Baking and Coffee Co.
Mountain Express Ethanol Company
Mountain Express Oil Company Southeast, LLC
Newton Brothers, Inc.
South Claiborne Operation LLC
Spartan Tank Management LLC
Star Mountain Express, LLC
Texas MEX Limited Company, LLC
Webster P II L.L.C.
WebsterP L.L.C.
West Hill Ranch Group LLC
WHRG Retail Ops LLC
WHRG TC LLC

[MEX—WAIVER]

WHRG TC-NE LLC
WHRG TC-NE-PA LLC
WHRG TC-NW LLC
WHRG TC-NW-IA LLC
WHRG TC-NW-KS LLC
WHRG TC-NW-MO LLC
WHRG TC-NW-ND LLC
WHRG TC-NW-WY LLC
WHRG TC-SE LLC
WHRG TC-SE-AL LLC
WHRG TC-SE-SC LLC
WHRG TC-SW LLC
WHRG TC-SW-AR LLC
WHRG TC-SW-LA LLC
WHRG-LA, LLC
WHRG-LA2, LLC
WHRGOPS NE LLC
WHRGOPS NE-NY LLC
WHRGOPS NE-NY-LI LLC
WHRGOPS NE-PA LLC
WHRGOPS NW LLC
WHRGOPS NW-IA LLC
WHRGOPS NW-IA-WIA LLC
WHRGOPS NW-KS LLC
WHRGOPS NW-MI LLC
WHRGOPS NW-MO LLC
WHRGOPS NW-MO-NMO LLC
WHRGOPS NW-WI LLC
WHRGOPS NW-WI-NWI LLC
WHRGOPS SE LLC
WHRGOPS SE-AL-NORTH LLC
WHRGOPS SE-MS LLC
WHRGOPS SE-MS-JACKSON LLC
WHRGOPS SE-SC LLC
WHRGOPS SE-TN LLC
WHRGOPS SE-TN-WTN LLC
WHRGOPS SW LLC
WHRGOPS SW-AR LLC
WHRGOPS SW-AR-NWAR LLC
WHRGOPS SW-OK LLC
WHRGOPS SW-OK-OKC LLC
WHRGOPS SW-TX LLC
WHRGOPS SW-TX-DALLAS LLC
WHRGOPS SW-TX-STX LLC

[MEX—WAIVER]

**AGENT**:

FIRST HORIZON BANK,
as Agent

By: _____
Name: _____
Title: _____

**LENDERS**:

FIRST HORIZON BANK,
as a Lender

By: _____
Name: _____
Title: _____

[MEX—WAIVER]

HANCOCK WHITNEY BANK,
as a Lender

By: _____
Name: _____
Title: _____

CADENCE BANK,
as a Lender

By: _____

Name: _____

Title: _____

[MEX—WAIVER]

BANK OF HOPE,
as a Lender

By: _____

Name: _____

Title: _____

[MEX—WAIVER]

UNITED COMMUNITY BANK,
as a Lender

By: _____
Name: _____
Title: _____

[MEX—WAIVER]

SYNOVUS BANK,
as a Lender

By: _____
Name: _____
Title: _____

SOUTH STATE BANK,
as a Lender

By: _____
Name: _____
Title: _____

PINNACLE BANK,
as a Lender

By: _____
Name: _____
Title: _____