# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

|  |  |
|---|---|
| In re: <br><br> MOUNTAIN EXPRESS OIL COMPANY, et al., <br><br> Debtors.[1] | Chapter 11 <br><br> Case No. 23-90147 (DRJ) <br><br> (Jointly Administered) |

**DEBTORS' EMERGENCY THIRD OMNIBUS MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTORS TO REJECT CERTAIN UNEXPIRED LEASES, SUBLEASES, FUEL SUPPLY AGREEMENTS AND RELATED CONTRACTS PURSUANT TO 11 U.S.C. § 365, AND (II) GRANTING RELATED RELIEF**

> **Emergency relief has been requested. Relief is requested not later than July 31, 2023.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter on July 31, 2023, at 2:00 p.m. (prevailing Central Time). You may participate in the hearing either in person or by an audio and video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. Once connected, you will be asked to enter the conference room number. Judge Jones's conference room number is 205691. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Jones's homepage. The meeting code is "JudgeJones". Click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Jones's homepage. Select the case name, complete the required fields and click "Submit" to complete your appearance.**

> **PARTIES RECEIVING THIS MOTION SHOULD LOCATE THEIR RESPECTIVE NAMES AND LEASES/CONTRACTS ON THE LIST OF REJECTED AGREEMENTS IN THE EXHIBITS TO THE PROPOSED ORDER ATTACHED HERETO.**

---

[1] A complete list of each of the Debtors in these Chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at www.kccllc.net/mountainexpressoil. The location of Debtor Mountain Express Oil Company's principal place of business and the Debtors' service address in these Chapter 11 cases is 3650 Mansell Road, Suite 250, Alpharetta, GA 30022.

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state the following in support of this motion (this "Motion"):

**RELIEF REQUESTED**

1. By this Motion, the Debtors seek entry of an (the "Order"), pursuant to sections 105(a) and 365(a) of title 11 of the United States Code (the "Bankruptcy Code") and Federal Rules of Bankruptcy Procedure 6006 and 6007 (the "Bankruptcy Rules"), authorizing the rejection of (a) certain unexpired leases of non-residential real property (under which a Debtor is a tenant), (b) the subleases associated with certain (but not all) of the premises leased under the foregoing leases (under which a Debtor is a landlord), (c) the fuel supply agreements for certain (but not all) of the gas station and convenience stores at those locations, and (d) certain related equipment and concession agreements with third parties, each as more particularly described in the **Exhibits** to the proposed Order attached hereto (collectively, the "Rejected Agreements").

2. Previously, the Debtors had rejected the leases, subleases and associated fuel supply agreements for 28 sites leased from AR Global Investments, LLC, and/or certain of its affiliates (collectively, "AR Global").[2] The Rejected Agreements under this Motion apply to the remaining 43 sites leased by the Debtors from AR Global. AR Global consents to the relief sought in the Motion as applicable to the leases between it and the Debtors and the parties expect to reach an agreed form of order with respect to such leases.[3] The Debtors seek to reject the Rejected Agreements effective as of July 31, 2023 (the "Rejection Date").

---

[2]  The orders applicable to the prior rejection of such agreements are set forth below.

[3]  The proposed Order attached to this Motion will be revised to cover only those Rejected Agreements that are not addressed by the agreed order for the Primary Leases between AR Global and the Debtors.

2

**JURISDICTION AND VENUE**

3. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). The Debtors confirm their consent, pursuant to Bankruptcy Rule 7008, to the entry of a final order by the Court.

4. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5. The statutory bases for the relief requested herein are section 365(a) of the Bankruptcy Code and Bankruptcy Rules 6006 and 6007.

**GENERAL BACKGROUND**

6. On March 18, 2023 (the "Petition Date"), the Debtors each commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code. The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these chapter 11 cases.

7. On April 4, 2023, the Office of the United States Trustee (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors (the "Committee"), consisting of the following three members: (i) The Necessity Retail REIT, Inc.; (ii) Total Image Solutions, LLC; and (iii) Coca-Cola Bottling Company United, Inc. *See* Docket No. 202.

8. Founded in 2000 and based in Alpharetta, Georgia, the Debtors are a recognized leader in the fuel distribution and retail convenience industry. As one of the largest fuel distributors in the American South, the Debtors served 828 Fueling Centers and 27 Travel Centers across 27 states as of the Petition Date. The Debtors enjoy trusted relationships with every major oil company including ExxonMobil, BP, Shell, Chevron, Texaco, and Sunoco and have obtained

3

Regal Status with Chevron, Platinum Status with ExxonMobil, and is the largest Pilot Dealer in the United States.  Since 2013, the Debtors have distributed over 1.1 billion gallons of fuel.

9.  Additional information regarding the Debtors' business and capital structure and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Michael Healy in Support of Debtors' Chapter 11 Petitions and First Day Relief* [Docket No. 57] (the "First Day Declaration"),[4] which is incorporated by reference herein.

## THE REJECTED AGREEMENTS

10.  As of the Petition Date, the Debtors were party to various leases with AR Global pursuant to which the Debtors leased 71 real property sites (*i.e*., the "Primary Leases") located in Alabama, Arkansas, Georgia, Mississippi, South Carolina, and Texas.  As noted above, 28 of the Primary Lease have already been rejected.  With two exceptions, the Debtors do not operate any of the convenience store or fuel station locations covered by the original AR Global lease portfolio.  Instead, the stores are operated by third-party dealers ("Dealers") pursuant to subleases between the Debtors and the Dealers.  At two locations, one of the Debtors operates the store instead of a Dealer.  In addition, at certain locations, the Debtors also have agreements with other parties to operate beverage or other similar concessions at the stores.

11.  At those stores operated by a Dealer, each Dealer is also a party to a fuel supply agreement under which the Debtors sell gasoline, diesel and other petroleum fuel products to each of the Dealers at the subleased locations (collectively, the "Fuel Supply Agreements").  Generally speaking, under these agreements, the Dealer agreed to exclusively purchase petroleum products from the Debtors for a minimum term (usually tied to the term of the applicable sublease for the

---

[4] A capitalized term used but not otherwise defined herein shall have the meaning ascribed to it in the First Day Declaration.

4

premises), at volume requirements based on the expected demand for motor fuel at the location. Although there may be certain exceptions, most of the Fuel Supply Agreements at issue here provide for wholesale deliveries of fuel by the Debtors to the Dealer on a cost-plus basis (i.e., at the Debtors' cost from its applicable oil company provider plus 1¢, for example).

12. On June 20, 2023, the Court entered the *Stipulation and Agreed Order (I) Granting, as to the Necessity Landlords, the Debtors' Emergency First Omnibus Motion for Entry of an Order Authorizing the Debtors to Reject Certain Unexpired Leases, Subleases and Related Contracts Pursuant to 11 U.S.C. § 365 and (II) Resolving the Necessity Landlords' Motion for Entry of an Order Compelling Debtors to Comply with Post-Petition Obligations Under Unexpired Leases of Real Property with Respect to the Rejected Leases Pursuant to 11 U.S.C. § 365(d)(3)* [Docket No. 672] (the "Agreed Order") authorizing the rejection of 28 of the Primary Leases between AR Global and one of the Debtors.

13. On June 22, 2023, the Court entered an *Order (I) Authorizing the Debtors to Reject Certain Unexpired Leases, Subleases and Other Contracts Pursuant to 11 U.S.C. § 365, and (II) Granting Related Relief* [Docket No. 700], authorizing the rejection of 27 subleases for the premises covered by the 28 Primary Leases[5] and 22 related agreements applicable to the various leased sites (the "First Omnibus Rejection Order").

14. On June 22, 2023, the Court also entered an *Order (I) Authorizing the Debtors to Reject Certain Executory Contracts Pursuant to 11 U.S.C. § 365, and (II) Granting Related Relief (Fuel Supply Agreements)* [Docket No. 699] (the "Second Omnibus Rejection Order"), authorizing the rejection of 27 Fuel Supply Agreements associated with the 28 Primary Leases that were rejected pursuant to the Agreed Order.

---

[5] There was no sublease with a Dealer at a non-operating location leased by the Debtors from AR Global.

5

DOCS_NY:47920.6 58614/002

15. By this Motion, the Debtors seek to reject the remaining 43 Primary Leases with AR Global, as well as the corresponding subleases with the Dealers that operate the convenience stores or gas stations at the leased locations. In addition, the Debtors propose to reject the Fuel Supply Agreements, and certain other contracts with third parties, applicable to these locations. The number of Primary Leases (i.e., 43) does not precisely match the number of subleases or Fuel Supply Agreements associated with each location. This is because one of the 43 store locations is closed, a Dealer at one location has a direct fuel arrangement, and two of the stores are operated by the Debtors (not a Dealer), and, hence, there is no corresponding Fuel Supply Agreement at that store (in other words, the Debtors obtain fuel for such locations directly under their master oil company agreements, instead of re-selling such fuel to a Dealer).

16. The Debtors and their professionals have reviewed the value of the Debtors' operations at the remaining 43 locations leased under the Primary Leases from AR Global. As previously disclosed in connection with entry of the First Omnibus Rejection Order, for calendar year 2022, the entire AR Global lease portfolio (originally a total of 71 locations) generated an annual aggregate loss of approximately $2.9 million. This is because the annual rent paid by the Debtors to AR Global on account of the entire 71-property portfolio ($11.9 million) exceeded by approximately $5.7 million the sublease rent received by the Debtors from the subtenants ($6.2 million). Only $2.8 million of that aggregate "net rent" loss was recovered by the fuel margin earned by the Debtors from the Fuel Supply Agreements with the Dealers, leaving a remaining annual loss of about $2.9 million.

17. Although the negative "delta" between the Debtors' rental expense under the Primary Leases and the income produced by fuel payments and sublease rent was concentrated at those 28 sites that the Debtors have now rejected pursuant to the First Omnibus Rejection Order,

6

the Debtors, after further diligence, believe that the remaining 43 sites governed by this Motion are also unprofitable or barely profitable. The Debtors do not believe that the cost and time associated with attempting to assume and/or assume and assign the agreements governing the remaining sites is warranted given their overall lack of profitability.

18. The Debtors will work with each of the Dealers, in advance of the targeted Rejection Date of July 31, 2023, to gradually reduce deliveries under the applicable Fuel Supply Agreements to minimize any unsold fuel retained in the storage tanks at each location as of such date. The Debtors will also work with each Dealer to provide appropriate contact information at the AR Global to assist with the turnover of the premises.

19. Accordingly, based on the foregoing, the Debtors have determined, in the exercise of their business judgment, to reject the Rejected Agreements as of the Rejection Date because continued performance under them is a burden to the Debtors and their estates. The Debtors will not require the Rejected Agreements to operate their business going forward. As noted, the Debtors understand that AR Global consents to the relief sought herein and the parties are preparing a mutually acceptable form of order applicable to the Primary Leases that are sought to be rejected under this Motion.

## BASIS FOR RELIEF

20. Bankruptcy Code section 365(a) provides that a debtor-in-possession "subject to the court's approval, may . . . reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). "This provision allows a trustee to relieve the bankruptcy estate of burdensome agreements which have not been completely performed." *Stewart Title Guar. Co. v. Old Republic Nat'l Title Co.*, 83 F.3d 735, 741 (5th Cir. 1996) (citing *In re Murexco Petrol., Inc.*, 15 F.3d 60, 62 (5th Cir. 1994)). Bankruptcy courts have broad authority and considerable discretion in

determining whether to approve the assumption or rejection of an executory contract or unexpired lease under Bankruptcy Code section 365. *See Class Five Nev. Claimants v. Dow Corning Corp. (In re Dow Corning Corp.)*, 280 F.3d 648, 656 (6th Cir. 2002).

21. The Supreme Court has recognized that "the authority to reject an executory contract" is not merely incidental, but rather it "is vital to the basic purpose of a Chapter 11 reorganization, because rejection can release the debtor's estate from burdensome obligations that can impede a successful reorganization." *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 528 (1984). Courts have similarly held that "[t]he right of a debtor in possession to reject certain contracts is fundamental to the bankruptcy system because it provides a mechanism through which severe financial burdens may be lifted while the debtor attempts to reorganize." *Westbury Real Estate Ventures, Inc. v. Bradlees Stores, Inc. (In re Bradlees Stores, Inc.)*, 194 B.R. 555, 558 n.1 (Bankr. S.D.N.Y. 1996). Rejection of an executory contract under Bankruptcy Code section 365(a) constitutes a breach of the contract—not a modification or termination. *See* 11 U.S.C. § 365(g); *see also Osprey-Troy Officentre, LLC v. World All. Fin. Corp.*, 502 F. App'x 455, 456-57 (6th Cir. 2012); *see also In re N. Am. Royalties, Inc.*, 276 B.R. 860, 865 (Bankr. E.D. Tenn. 2002) ("Rejection is independent of the contract terms.").

22. Rejection is "vital" and "fundamental," because in many cases, the debtor could not emerge from bankruptcy as a going concern if it were forced to specifically perform under burdensome executory contracts. *Leasing Serv. Corp. v. First Tenn. Bank N.A.*, 826 F.2d 434, 436 (6th Cir. 1987) ("Rejection denies the right of the contracting creditor to require the bankrupt estate to specifically perform..."); *see also Midway Motor Lodge of Elk Grove v. Innkeepers Telemgmt. & Equip. Corp.*, 54 F.3d 406, 407 (7th Cir. 1995) ("Rejection avoids specific performance, but the debtor assumes a financial obligation equivalent to damages for breach of contract."); *Bradlees*

*Stores*, 194 B.R. at 558 ("Specific performance should not be permitted where the remedy would in effect do what section 365 meant to avoid, that is, impose burdensome contracts on the debtors.") (quoting *In re Fleishman*, 138 B.R. 641, 648 (Bankr. D. Mass. 1992)).

23. The Bankruptcy Code permits the debtor to breach burdensome executory contracts, transforming those obligations into a prepetition claim for damages, which may be satisfied and discharged together with all other claims against the estate. *See* 11 U.S.C. § 365(g); *see also In re Richendollar*, No. 04-70774, 2007 WL 1039065 (Bankr. N.D. Ohio Mar. 31, 2007) ("The purpose of section 365(g) is to make clear that, under the doctrine of relation back, the other party to a contract that has not been assumed Section 365(g) is simply a general unsecured creditor.") (quoting 3 COLLIER ON BANKRUPTCY ¶ 365.09[1] (15th ed. 2006).

24. Rejection thereby allows for ratable treatment of a debtor's unsecured creditors. *In re Albrechts Ohio Inns, Inc.*, 152 B.R. 496, 501–02 (Bankr. S.D. Ohio 1993) (noting the business judgment rule is satisfied for rejection purposes where "rejection will result in benefit to the debtor's general unsecured creditors").

25. The standard for rejection is satisfied when a trustee or debtor has made a business determination that rejection will benefit the estate. *See Commercial Fin. Ltd. v. Hawaii Dimensions, Inc. (In re Hawaii Dimensions, Inc.)*, 47 B.R. 425, 427 (D. Haw. 1985) ("under the business judgment test, a court should approve a debtor's proposed rejection if such rejection will benefit the estate.").

26. If a trustee's or debtor's business judgment has been reasonably exercised, a court should approve the assumption or rejection of an unexpired lease or executory contract. *See, e.g., NLRB v. Bildisco & Bildisco*, 462 U.S. at 523 (1984); *In re Federal Mogul Global, Inc.*, 293 B.R. 124, 126 (D. Del. 2003).

27. Here, the Debtors seek to reject the Rejected Agreements to avoid incurring additional rental expense under the Primary Leases, which expense is not fully defrayed by fuel payments and sublease rental income. The Rejected Agreements, thus, no longer provide an economic benefit to the Debtors and are, and will continue to be, a burden to the Debtors' estates. According to the Debtors' analysis, the rent due to AR Global under the Primary Leases exceeds the income from the Dealers under the subleases and associated Fuel Supply Agreements.

28. The Debtors have further determined, in their reasonable business judgment, that there is no benefit that can be readily achieved by marketing and assigning the Rejected Agreements.[6] As a result, the Debtors have concluded that the cost to the Debtors of continuing to perform the Debtors' obligations under the Rejected Agreements and incurring unnecessary losses and administrative expenses is burdensome and that rejection of the Rejected Agreements is in the best interests of the Debtors' estates and creditors.[7]

## EMERGENCY CONSIDERATION

29. Emergency relief is appropriate under the circumstances because entry of the Order will not prejudice any party-in-interest to the chapter 11 cases. As discussed above, the relief requested in this Motion is in the Debtors' business judgment and is done in a manner to minimize costs and maximize value for the Debtors' estates. In particular, timely entry of the order and implementation of the rejection's effectiveness prior to the end of the month will unquestionably

---

[6] The Debtors reserve all of their rights with respect to the determination of whether any Rejected Agreement is executory or has been (or will have been) terminated or breached. In either event, the Debtors do not believe that assumption of the Rejected Agreements is in the best interests of the Debtors' estates or their creditors and thus seek to reject the Rejected Agreements pursuant to this Motion.

[7] The Debtors continue to review their contract and lease portfolio and will file additional motions if they determine that rejecting other contracts and leases is in the estates' best interests.

benefit the estates by allowing the rejection to become effective prior to rent becoming due in August 2023.

30. Moreover, while entry of the Order will not prejudice any party-in-interest to the Chapter 11 cases, delay in the Court's consideration of the relief sought herein for the standard notice period[8] will, in practical terms, put the Debtors' efforts to reject these burdensome contracts on pause. Such delay in the entry of the Proposed Order would simply lead to unnecessary and burdensome expenses on the Debtors' estates.

31. Accordingly, the Debtors submit that emergency consideration is warranted.

## NOTICE

32. Notice of the hearing on the relief requested in this Motion will be provided by the Debtors in accordance and compliance with Bankruptcy Rules 4001 and 9014, as well as the Local Rules, and is sufficient under the circumstances. The Debtors will provide notice to parties-in-interest, including on the Debtors' Master Service List and the counterparties to each Rejected Agreement.

[*Remainder of Page Intentionally Left Blank*]

---

[8] *See* Bankruptcy Rules 9013 and 9006(d); Local Rule 9013-1.

**CONCLUSION**

**WHEREFORE**, the Debtors request that the Court enter the Order granting the relief requested herein and such other and further relief as may be just and proper under the circumstances.

Dated: July 11, 2023                                   **PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Michael D. Warner*
Michael D. Warner (SBT 00792304)
Steven W. Golden (SBT 24099681)
440 Louisiana Street, Suite 900
Houston, TX 77002
Telephone: (713) 691-9385
Facsimile:  (713) 691-9407
mwarner@pszjlaw.com
sgolden@pszjlaw.com

-and-

Jeffrey N. Pomerantz (admitted *pro hac vice*)
Jeffrey W. Dulberg (admitted *pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile:  (310) 201-0760
jpomerantz@pszjlaw.com
jdulberg@pszjlaw.com

*Counsel to the Debtors and Debtors in Possession*

**Certificate of Service**

I certify that on July 11, 2023, I caused a copy of the foregoing document to be served via the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Michael D. Warner*
Michael D. Warner