IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: <br><br> MOUNTAIN EXPRESS OIL COMPANY, *et al.*,[1] <br><br> Debtor. | Chapter 11 <br><br> Case No. 23-90147 <br><br> (Jointly Administered) |

**IMPERIAL RELIANCE, LLC AND MOHAMMAD SAJJAD'S
OBJECTION TO CURE AMOUNTS**

Imperial Reliance, LLC and Mohammad Sajjad ("Imperial Reliance"), contract counterparties in interest in this case, submit their Objection to Cure Amount ("Objection") objecting to the proposed cure amount for the assumption of contracts listed on the Debtor's cure schedule related to eight Imperial Reliance operated locations Nos. 744, 745, 746, 747, 748, 749, 750, and 751.[2]

The Debtors filed their Notice to Counterparties to Potentially Assumed Executory Contracts and Unexpired Leases ([Dkt. 728] "Cure Notice") on June 28, 2023, with attached Exhibit "A" which sets the cure amounts for all of the above Imperial Reliance contracts at zero. Imperial Reliance both disagrees with, and objects to, this proposed cure amount. In support of this Objection, Imperial Reliance states the following:

---

[1] A complete list of each of the Debtors in these Chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at www.kccllc.net/mountainexpressoil. The location of Debtor Mountain Express Oil Company's principal place of business and the Debtors' service address in these Chapter 11 cases is 3650 Mansell Road, Suite 250, Alpharetta, GA  30022.

[2] Imperial Reliance offers that, pursuant to *In re Natl. Gypsum Co.*, this Objection does not waive Imperial Reliance's right to a jury trial and therefore does not run contrary to the Motion to Abstain filed with this Court on July 5, 2023, in *Mountain Express Oil Company et al. v. Imperial Capital LLC et al.*, Case No. 23-03096. *See* 208 F.3d 498, 507 (5th Cir. 2000) ("In sum, the court affirmed that a claim arises only from the rejection of an unexpired lease or executory contract, not from the assumption of such a lease or contract.").

2849164.1:011933.00001

# I
# BACKGROUND

1. On June 22, 2023, the Court entered its Order (I) Approving Bid Procedures for the Sale of the Debtors' Assets, (II) Approving Bid Protections, (III) Scheduling Certain Dates with Respect Thereto, (IV) Approving the Form and Manner of Notice Thereof, and (V) Approving Contract Assumption and Assignment Procedures [Docket No. 701] (the "Bid Procedures Order"), authorizing the Debtors to conduct an auction to select a party or parties to purchase some or all of the Debtors' assets.

2. On June 28, 2023, pursuant to the Bid Procedures Order, the Debtors filed the Cure Notice, listing the Imperial Reliance Contracts[3] as contracts to be potentially assumed and assigned to the successful bidder, but listing the cure amount for all of the contracts at zero.

# II
# FACTUAL BACKGROUND

3. Imperial Reliance is the lessee under certain Master Sublease Agreements with one of the Debtors, Mountain Express Oil Company ("MEX"):

| Stores | Contract | Counterparties |
|---|---|---|
| 744, 745, 746 | Master Sublease Agreement | Imperial Reliance and Mohammad Sajjad |
| 747, 748, 749, 750, 751 | Master Sublease Agreement | Imperial Reliance and Mohammad Sajjad |

4. Imperial Reliance is also the counterparty to certain Fuel Sales Agreements with MEX:

---

[3] Defined *infra* ¶¶ 3-4.

| Stores | Contract | Counterparties |
|---|---|---|
| 744, 745, 746 | Fuel Supply Agreement | Imperial Reliance and Mohammad Sajjad |
| 747, 748, 749, 750, 751 | Fuel Supply Agreement | Imperial Reliance and Mohammad Sajjad |
| 744, 745, 746, 747, 748, 749, 750, 751 | First Amendment of Fuel Supply Agreement | Imperial Reliance and Mohammad Sajjad |

(Collectively, these 5 agreements will be referred to herein as the "Contracts")

5. The Debtors have asserted that the Contracts, which contain cross-default clauses, were part of one integrated transaction and should, therefore, be read as one contract as to the pertinent locations. *See* Debtors' Adversary Complaint, filed in Case No. 23-03096, p. 4 at ¶ 10; p. 7 at ¶ 19. Accordingly, the cure amounts are applicable to Contracts collectively. Per the Debtors' argument, those contracts can only be assumed or rejected as a unit or the cure amount applies equally to both agreements.

6. After the Contracts were entered into, Imperial Reliance became aware that the Debtors had not been honest with Imperial Reliance when it described the past sales of the facilities that it had leased to Imperial Reliance.

7. Throughout the life of the Contracts, MEX has breached the same by failing to provide fuel in accordance thereof, failing to provide required branding assistance, failing to remit credit card sales proceeds to Imperial Reliance, overcharging for fuel and freight, billing fees that are not provided in the Contracts, providing wrongly branded fuel to Imperial Reliance and other breaches of contract.

8. The lack of fuel and the retention of the credit card sales proceeds robbed Imperial Reliance of cashflow, crippled both fuel and ancillary sales and essentially put many of the locations out of business. At the very least, these breaches by MEX have led to substantial loss of business and reputational harm to Imperial Reliance. A gas station or travel center without fuel cannot function.

9. Imperial Reliance has commissioned preliminary audits of the fuel purchases from Debtors in an attempt to quantify the overcharges on fuel portions of its damages. However, those audits are incomplete. Additionally, many of the records necessary to accurately calculate Imperial Reliance's damages are in the sole possession of Debtors which Debtors have so far refused to produce. Thus, Imperial Reliance has had no choice but to estimate some of its damages at this time based on the data it does have.

10. The retained credit card sales proceeds that belong to Imperial Reliance that are being held by the Debtors can be calculated by Imperial Reliance with more, but not perfect certainty.

11. Additionally, the incredibly accelerated sale process in this case gave Imperial Reliance roughly two weeks from the date of the cure notice to the date on which objections were due. It is simply impossible in such a short time to commission the appropriate audits, retain experts and get accurate analysis of all the losses caused by the breaches and resulting harm described herein.

12. Imperial Reliance has done its best to calculate its losses as a result of the breaches described herein, as described in detail on Exhibit "A" to this objection and summarized below:[4]

---

[4] Imperial Capital will continue to try and refine its numbers as the matter progresses and will amend as necessary to update its numbers.

4

| Store | Contracts | Cure Amount Due |
|---|---|---|
| 744 | Commercial Lease, Fuel Supply Agreement and Amendment | $169,035.40 |
| 745 | Commercial Lease, Fuel Supply Agreement and Amendment | $193,005.11 |
| 746 | Commercial Lease, Fuel Supply Agreement and Amendment | $59,966.71 |
|  | **TOTAL for 744-746 Contracts** | **$422,007.22** |
| 747 | Commercial Lease, Fuel Supply Agreement and Amendment | $90,435.82 |
| 748 | Commercial Lease, Fuel Supply Agreement and Amendment | $55,196.90 |
| 749 | Commercial Lease, Fuel Supply Agreement and Amendment | $54,537.54 |
| 750 | Commercial Lease, Fuel Supply Agreement and Amendment | $108,471.84 |
| 751 | Commercial Lease, Fuel Supply Agreement and Amendment | $77,464.47 |
|  | **TOTAL for 747-751 Contracts** | **$386,106.58** |

13.     **These amounts, along with the attorneys' fees and Credit Card Equipment Charges described below, are the proper cure amounts that are required to be paid before the subleases and fuel contracts described thereon can be properly assumed and assigned und 11 U.S.C. § 365.**[5]

---

[5] Imperial Reliance has also suffered significant business damage and lost profits caused by the pre-and post-contract conduct of the Debtors.  However, at this time, such damage cannot be calculated with reliable certainty, because much of the information and documentation necessary to calculate the same is in the possession of the Debtors. To the extent such harm is attributable to Debtors' breaches of contract and can at some point be reliably calculated, Imperial Reliance does not waive same and reserves the right to supplement this objection.

2849164.1:011933.00001

14. Additionally, Debtors improperly charged $4,000.00 to Imperial Reliance for additional Credit Card Machines without any support in the Contracts. These charges were not allocated to a specific store or contract, so they are listed separately here.

### III
### LEGAL ARGUMENT

15. The Contracts are executory contracts, subject to assumption and assignment by the Debtors pursuant to 11 U.S.C. § 365. The Debtors have admitted as much by listing these agreements on the Cure Notice.

16. Section 365 "allows a debtor to 'continue in a beneficial contract provided, however, that the other party is made whole at the time of the debtor's assumption of said contract.'" In re *Natl. Gypsum Co.*, 208 F.3d 498, 506 (5th Cir. 2000) (citing In re *Eagle Bus Mfg., Inc.*, 148 B.R. 481, 483 (Bkrtcy. S.D. Tex. 1992)). Accordingly, the cure requirements are "a guarantee to the non-debtor party, who may be forced to continue a relationship it would rather terminate, that as condition to the forced continuation of the contractual relationship, any losses or defaults existing at the time will be satisfied either through a timely cure or through reasonable assurances of future payment." *In re Natl. Gypsum Co.*, 208 F.3d at 509.

17. Once a default has occurred, Debtors may not assume the Contracts unless and until they have shown that "at the time of assumption" each of the requirements under § 365 have occurred. *See In re Patriot Place, Ltd.*, 486 B.R. 773, 795 (Bankr. W.D. Tex. 2013) ("The debtor . . . bears the burden of showing that the requirements for assumption under § 365 have been met." (citations omitted)).

18. Under § 365, the requirements for assumption are as follows: (1) cure, or provide adequate assurance that it will promptly cure, any monetary defaults in the relevant contract or

lease; (b) cure all past nonmonetary defaults under those same agreements; (c) compensate, or provide adequate assurance of prompt compensation, for any pecuniary loss resulting from such default; and (d) provide adequate assurance of future performance under those same agreements. In re Patriot Place, Ltd., 486 B.R. 773, 795 (Bankr. W.D. Tex. 2013); *In re Natl. Gypsum Co.*, 208 F.3d 498, 506 (5th Cir. 2000) (citing 11 U.S.C. § 365).

19. Among the cure requirements set forth under § 365, Debtors are required to pay the attorneys' fees attributable to the cure costs under the Contracts.

> Attorneys' fees incurred in attempting to collect sums due from debtors following default may be recovered as pecuniary loss under § 365(b)(1)(B) if such monies were expended as the result of a default under the contract or lease between the parties and are recoverable under the contract and applicable state law.

*Three Sisters Partners, L.L.C. v. Harden (In re Shangra-La, Inc.)*, 167 F.3d 843, 849 (4th Cir. 1999); *In re Crown Books Corp.*, 269 B.R. 12, 15 (Bankr. D. Del. 2001). To date, Imperial Reliance has incurred approximately $31,000.00 in attorneys' fees as a result of Debtors' breaches and such fees continue to accrue. This is an additional cure amount to be paid prior to assumption.

20. Prior to assumption and assignment of the Contracts, the Debtors are required to cure the default and promptly pay the appropriate cure amount to Imperial Reliance, including applicable attorneys' fees.

21. By asserting that the cure amount applicable these contracts is zero, the Debtors have failed to comply with 11 U.S.C. § 365, and thus, they may not assume and assign the Contracts.

22. Accordingly, Imperial Reliance objects to the cure amount proposed by the Debtors, objects to the assumption and assignment of the Contracts without payment of the correct cure amounts set forth herein and seeks full payment of proper cure amount.

7

23. Imperial Reliance reserves the right to supplement this Objection with further costs and fees, and to raise any objection to any other matter before this Court.

Dated: July 12, 2023

*/s/     Larry G. Ball*
Tami J. Hines, TX Bar No. 24133319
Larry G. Ball, OBA No. 12205, *pro hac vice*
**HALL, ESTILL, HARDWICK, GABLE, GOLDEN & NELSON, P.C.**
100 North Broadway, Suite 2900
Oklahoma City, OK 73102-8865
Tel: (405) 553-2828
Fax: (405) 553-2855
Email: lball@hallestill.com
       thines@hallestill.com
***Counsel to Imperial Reliance, LLC***

8

**CERTIFICATE OF SERVICE**

I hereby certify that on this 12th day of July 2023, I electronically transmitted the above document for filing to the Clerk of Court using the CM/ECF System for filing and transmittal of Notice of Electronic Filing to all ECF registrants.

*s/ Larry G. Ball*