IN THE UNITED STATES BANKRUPTY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| MOUNTAIN EXPRESS OIL COMPANY, *et al.*, | Case No. 23-90147 (DRJ) |
| Debtors.<sup>1</sup> | *(Jointly Administered)* |

**LIMITED OBJECTION AND RESERVATION OF RIGHTS OF
DOCTOR'S ASSOCIATES LLC AND AFFILIATES TO (I) PROPOSED
ASSUMPTION AND ASSIGNMENT OF SUBWAY® FRANCHISE AGREEMENTS AND
UNEXPIRED LEASES, AND (II) CURE AMOUNTS RELATED THERETO**

DOCTOR'S ASSOCIATES LLC, f/k/a DOCTOR'S ASSOCIATES INC., (hereinafter "Subway"), SUBWAY REAL ESTATE, LLC ("Subway LLC") and SUBWAY REALTY, LLC, f/k/a SUBWAY REAL ESTATE CORP. ("Subway Realty") (Subway LLC and Subway Realty, hereinafter "Subway RE"), by and through their undersigned counsel, hereby file this Limited Objection and Reservation of Rights (this "Limited Objection") to (i) the proposed assumption and assignment of any franchise agreements between the Debtors and Subway for the operation of Subway® restaurants (collectively, the "Franchise Agreements"), (ii) the proposed assumption and assignment of any unexpired lease/sublease agreements between the Debtors and Subway RE in respect of any Subway® restaurant (collectively, the "Leases"), and (iii) the proposed cure amounts related thereto. In support hereof, Subway and Subway RE state as follows:

**RELEVANT BACKGROUND**

1.      On March 18, 2023, the above captioned debtors (collectively, the "Debtors") filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code.

---

[1] A complete list of each of the Debtors in these Chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at www.kccllc.net/mountainexpressoil.

1

2. On March 20, 2023, this Court entered the *Order (I) Directing Joint Administration of the Debtors' Chapter 11 Cases and (II) Granting Related Relief* [ECF Nos. 17 and 33], which consolidated several chapter 11 cases for procedural purposes.

3. On June 16, 2023, the Debtors filed the *Debtors' Emergency Motion for Entry of Orders (A)(I) Authorizing Asset Purchase Agreement for Sale of Substantially All of Debtor's Assets, (II) Approving Bid Procedures for Sale of Debtors' Assets, (III) Approving Bid Protections, (IV) Scheduling Certain Dates With Respect Thereto, (V) Approving the Form and Manner of Notice Thereof, and (VI) Approving Contract Assumption and Assignment Procedures; (B) Approving (I) Sale of Certain Assets Free and Clear of All Liens, Claims, Encumbrances, and Other Interests, and (II) Assumption and Assignment of Certain Contracts and Leases; and (C) Granted Related Relief* [ECF No. 536] (the "<u>Bid Procedures Motion</u>").

4. The Bid Procedures Motion sought approval of certain bid procedures and related relief designed to facilitate the sale of substantially all of the Debtors' assets through one or more sales under sections 363 and 365 of the Bankruptcy Code. The Bid Procedures Motion does not identify any potential purchasers of, or stalking horse buyers for, the acquisition of some or all of the Debtors' assets, but instead states that one or more parties are interested in consummating a sale transaction with the Debtors.

5. On June 22, 2023, this Court entered its *Order (I) Approving Bid Procedures for Sale of the Debtors' Assets, (II) Approving Bid Protections, (III) Scheduling Certain Dates With Respect Thereto, (IV) Approving the Form and Manner of Notice Thereof, and (V) Approving Contract Assumption and Assignment Procedures* [ECF No. 701] (the "<u>Bid Procedures Order</u>").

6. Pursuant to the Bid Procedures Order, on June 28, 2023, the Debtors filed the *Notice to Counterparties to Potentially Assume Executory Contracts and Unexpired Leases* [ECF No. 728] (the "Assignment Notice").

7. Pursuant to the Assignment Notice, the Debtors have advised that the following Franchise Agreements and Leases related to the operation of certain Subway® restaurants may be potentially assumed and assigned by the Debtors to one or more purchasers:

| Debtors' Store Number | Subway's Store Number | Contract Type | Title | Counterparty | Debtor Entity | Est. Cure |
|---|---|---|---|---|---|---|
| 3280 | 55116 | QSR/Franchise Agreement | Franchise Agreement Rider | Subway | Mountain Express Oil Company | $0.00 |
| 3280 | 55116 | QSR/Franchise Agreement | Franchise Agreement | Subway | Mountain Express Oil Company | $0.00 |
| 3280 | 55116 | QSR/Franchise Agreement | Transfer Addendum | Subway | Mountain Express Oil Company | $0.00 |
| 637 | 27676 | Prime Lease (Single Site) | Amendment | Subway Corp. | Star Mountain Express, LLC | $0.00 |
| 61 | 53376-0 | Sublease | First Amendment of Concession Agreement | Subway RE | Mountain Express Oil Company | $0.00 |
| 61 | 53376-0 | QSR/Franchise Agreement | Concession Agreement | Subway RE | Mountain Express Oil Company (as successor-in-interest to Kamal Investments, LLC) | $0.00 |
| 61 | 53376-0 | Sublease | Second Amendment of | Subway RE | Mountain Express Oil Company | $0.00 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | Concession Agreement | | | |
| 3024 | 49667 | Sublease | First Amendment of Concession Agreement | Subway RE | Mountain Express Oil Company | $0.00 |
| 4024 | 49667 | QSR/Franchise Agreement | Concession Agreement | Subway RE | Mountain Express Oil Company (as successor-in-interest to United Fuel LLC) | $0.00 |

8. Based on discussions to date between counsel to Subway and counsel to the Debtors, the information contained in the Assignment Notice in respect of the Franchise Agreements with Subway and the Leases with Subway RE is not complete and needs to be amended. To that end and based on information shared between the parties to date, the Debtors appear to be operating five (5) Subway® restaurants and have Leases with Subway RE for four (4) Subway® restaurants. From and after the Debtors filed the Assignment Notice, undersigned counsel to Subway and counsel to the Debtors have been working cooperatively together to confirm the universe of the written agreements that exist between the parties in connection with any proposed assumption and assignment of the Franchise Agreements and/or the Leases. In the interim, however, Subway and Subway RE are filing this Limited Objection in order to preserve all of their respective rights in connection the proposed assumption and assignment of any of the Franchise Agreements and/or Leases. Undersigned counsel to Subway and Subway RE will continue to work with counsel to the Debtors in order to resolve, or at least narrow, any issues between Subway and Subway RE on the one hand and the Debtors on the other related to this Limited Objection.

**LIMITED OBJECTION AND RESERVATION OF RIGHTS**

9. Pursuant to the Bid Procedures Motion, "[a] Contract Counterparty with any Potential Assumed/Assigned Contract listed on the Cure Schedule must file any objections to a proposed Cure Amount (a "Cure Objection") and/or any other objections to the assumption and assignment or transfer of any of the Potential Assumed/Assigned Contracts (an "Assignment Objection") by **July 12, 2023, at 5:00 p.m. (prevailing Central Time)** (the "Cure/Assignment Objection Deadline").

10. To be clear, Subway does not oppose the sale of the Debtors' assets provided that Subway's rights under its Franchise Agreements, the Bankruptcy Code and well-established non-bankruptcy federal law (i.e., the Lanham Trademark Act, codified in Chapter 22 of Title 15 of the United States Code (the "Lanham Act")) are acknowledged, respected and protected in connection therewith, including, without limitation, its cure rights, approval rights and consent rights.

11. As set forth below, Subway's consent is required with respect to any proposed assumption and assignment of its Franchise Agreements to any purchaser. However, pursuant to the Bid Procedures Order, the deadline for the submission of qualified bids is July 21, 2023, with an auction, if necessary, on July 28, 2023. As a result, Subway and Subway RE will likely not know the identity of the proposed purchaser(s) until shortly after the completion of the auction. However, unless and until Subway knows the identity of the proposed purchaser of one or more of the Franchise Agreements and receives all required documents and information needed from such purchaser(s) in order to complete its franchisee approval process, then Subway will not be in a position to evaluate any proposed purchaser(s), and therefore will not be in a position to either consent or object to any such proposed assignment in connection therewith. Once Subway has all of the information required for its franchisee approval process, then Subway will use its best efforts

5

to expedite such approval process.  In the interim and as set forth below, Subway reserves all of its rights to object to any proposed assumption and assignment of its Franchise Agreements and Leases, and requests that any proposed purchaser(s) be made aware of Subway's approval and consent rights so as to ensure that such purchasers will promptly engage with Subway in order to facilitate Subway's franchisee approval process.

12. In addition, Subway and Subway RE reserve all of their respective rights under section 365(b) of the Bankruptcy Code to object to any proposed form of adequate assurance of future performance that may be provided by a proposed purchaser.  To that end and as provided in the Bid Procedures Order, Subway and Subway RE request that the Debtors provide them with all available information demonstrating adequate assurance of future performance in respect of any proposed purchaser on or before 9:00 a.m. (CT) on July 31, 2023.

13. Lastly, pursuant to the Assignment Notice, the Debtors have indicated that the proposed cure amounts in connection with the Franchise Agreements and the Leases is zero. While Subway and Subway RE are in the process of confirming such proposed cure amounts, based on the information currently available to Subway and Subway RE, as of the Petition Date, the Debtors appear to have been current with Subway on the Franchise Agreements and with Subway RE on the Leases.  In addition, the Debtors appear to be current with Subway and Subway RE for post-petition periods, provided however, that the calculation and billing of royalty and advertising charges under the Franchise Agreements are in arrears, and provided further that with respect to the Leases, Subway RE typically leases the property from the property owner and then subleases the property to the Subway® franchisee, with all payments generally being made directly by the franchisee to the master landlord.  As a result, there is often a delay in Subway and/or Subway RE learning of a default under any of the Franchise Agreements or Leases.  Based on the

above, Subway and Subway RE reserve all of their rights in respect of the cure amounts as of the Petition Date and for all post-petition periods.

### A. The Debtors Cannot Assume and Assign the Subway Franchise Agreements in Connection With a Sale Process without Subway's Consent

14. Pursuant to section 365(c)(1) of the Bankruptcy Code, the Debtors may neither assume nor assign the Franchise Agreements if (1) applicable law excuses Subway from accepting performance from a party other than the Debtors, and (2) Subway does not consent to such assumption or assignment.

15. Specifically, Section 365(c)(1) of the Bankruptcy Code provides:

> (c) The trustee **may not assume or assign any executory contract** or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if—
>
> (1) (A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor or the debtor in possession, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and
>
> (B) such party does not consent to such assumption or assignment; ….

(emphasis added).

16. The Franchise Agreements may not be assumed and assigned in connection with a sale process without Subway's consent based on Section 365(c)(1) of the Bankruptcy Code and federal trademark law, including the Lanham Act. Subway has a number of rights under the Franchise Agreements, including, most critically, Subway's consent and approval rights, which are subject to Subway's sole and absolute discretion in the event of a bankruptcy sale by the

express terms of the Franchise Agreements.[2] When a franchise agreement expressly provides that the franchisor may condition its consent to a transfer in its "sole judgment," courts have found that the franchisor's exercise of that judgment is not arbitrary, such that it should not be questioned. *See Burger King Corp. v. H&H Restaurants, LLC*, 2001 WL 1850888, *5-6 (S.D. Fla. Nov. 30, 2001).

17. Generally, provisions in an executory contract or unexpired lease which restrict a debtor's ability to assign are rendered unenforceable by section 365(f)(1) of the Bankruptcy Code. However, the situation is different in the case at bar where there is a license of protected intellectual property.

18. It is well settled that federal trademark law, including the Lanham Act, constitutes applicable law under section 365(c) that would excuse Subway from accepting performance under the Franchise Agreements from a third party without Subway's consent. *In re Wellington Vision, Inc.*, 364 B.R. 129, 134-37 (S.D. Fla. 2007) ("The [franchise] agreement in this case clearly granted [the debtor] a license to use trademarks belonging to [the franchisor], and therefore the Lanham Act is the 'applicable law' by which the exception to assumption and assignment is triggered via section 365(c)."); *In re Rupari Holding Corp.*, 573 B.R. 111, 117 (Bankr. D. Del. 2017); *In re The Travelot Co.*, 286 B.R. 447 (Bankr. S.D. Ga. 2002) (holding that federal trademark law, as set forth in the Lanham Act, qualifies as appliable law under section 365(c)(1)). That is because federal

---

[2] For example, section 18(b)2(1) of the Franchise Agreement dealing with one of the Subway® locations operated by the Debtors at 4301 Highway 51, I-10 @ Exit 209, Laplace, Louisiana provides, among other things, that the Franchise Agreement cannot be sold and transferred unless and until the Debtors obtain Subway's prior written consent and "[n]otwithstanding anything herein to the contrary, if a Bankruptcy Event … occurs, then [Subway's] consent to any assignment or transfer hereunder in connection with or during such Bankruptcy Event shall be made in [Subway's] sole and absolute discretion, and shall apply for all purposes, including in connection with any proposed assumption or assignment of this Agreement under 11 U.S.C. §365 or any successor or related statutes or regulations."

trademark law provides that "a licensor who grants a non-exclusive license for the use of its trademark is entitled to certain protections, including restrictions on assignment." *Rupari*, 573 B.R. at 117. "In other words, federal trademark law generally bans assignment of trademark licenses absent the licensor's consent because, in order to ensure that all products bearing its trademark of uniform quality, the identity of the licensee is crucially important to the licensor." *Id*. Thus, courts read § 365(c) in conjunction with the assignment restrictions of the Lanham Act to hold that a debtor-licensee may not assume or assign "a franchise agreement without [the franchisor's] consent." *Wellington*, 364 B.R. at 134, 136.

19. Here, the Franchise Agreements grant the Debtors the right to use intellectual property and trademarks of Subway® solely in connection with the Debtors' operation of Subway® restaurants that are the subject of the Franchise Agreements. Therefore, the Debtors cannot assume and assign the Franchise Agreements without Subway's express consent and without complying with Subway's transfer requirements as set forth in the Franchise Agreement and related documents.

20. As set forth above, once Subway learns the identity of the proposed purchaser(s) of one or more of the Franchise Agreements and receives all required documents and information in connection with its franchisee approval process, including adequate assurances of future performance, then Subway will use its best efforts to expedite such approval process. In the interim, Subway reserves all of its rights to object in connection therewith and requests that the proposed sale order reflect those rights.

B. **Subway Reserves the Right to Exercise its Right of First Refusal**

21. In addition to the above, pursuant to the Franchise Agreements and related documents, Subway also maintains a right of first refusal with respect to any *bona fide* offers to

purchase the Subway® restaurants (the "Right of First Refusal"). For example, under the Franchise Agreements and related documents, in the event the Debtors wishes to accept a *bona fide* offer from a third party to purchase a Subway® restaurant or any portion thereof or interest therein, then Subway, among other things, has the prior option to purchase the interests covered by the offer at the price and upon the same terms of the offer.

22. In connection with any proposed assumption and assignment of the Franchise Agreements by the Debtors, Subway reserves the right to exercise the Right of First Refusal. *See E-Z Serve Convenience Stores, Inc.*, 289 B.R. 45 (Bankr. M.D.N.C. 2003) (enforcing right of first refusal); *In re Capital Acquisitions & Management Corp.*, 341 B.R. 632 (Bankr. N.D. Ill. 2006)(enforcing right of first refusal); *In re The IT Group, Inc., Co.*, 302 B.R. 483 (D. Del. 2003) (enforcing right of first refusal). *But see In re Adelphia Communications Corp., et. al.*, 359 B.R. 65 (Bankr. S.D.N.Y. 2007)(disallowing right of first refusal); *In re Mr. Grocer, Inc.*, 77 B.R. 349 (Bankr. D.N.H. 1987)(disallowing right of first refusal).

## CONCLUSION

WHEREFORE, Subway respectfully requests that the Court (i) sustain this Limited Objection, (ii) preserve Subway's rights to object to any proposed assumption and assignment of the Franchise Agreements, (iii) preserve the rights of Subway and Subway RE to object to any proposed cure amounts as set forth above, (iv) direct the Debtors to provide to Subway and Subway RE on or before 9:00 a.m. on July 31, 2023 all available information demonstrating adequate assurance of future performance on the part of any proposed purchaser, (v) preserve the rights of Subway and Subway RE to object to any proposed form of adequate assurance of future performance to be provided by any proposed purchaser, and (vi) grant such other and further relief as the Court deems necessary and appropriate.

DATED: July 12, 2023.

        Respectfully submitted,

        */s/ Paul J. Battista*
        Paul J. Battista
        Florida Bar No. 884162
        Admitted *Pro Hac Vice*
        VENABLE, LLP
        100 Southeast Second Street, 44th Floor
        Miami, Florida 33131
        Telephone: 305.349.2300
        Facsimile: 305.349.2310
        PJBattista@Venable.com
        *Attorneys for Subway and Subway RE*

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 12, 2023, a true and correct copy of the foregoing was electronically filed and served on all parties entitled to receive CM/ECF notifications in the above-styled proceedings.

*/s/ Paul J. Battista*
Paul J. Battista
