**IN THE UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |
|---|---|
| In re:<br><br>Kal Freight Inc., *et al*.,<br><br>        Debtors.[1] | Chapter 11<br><br>Case No. 24-90614 (CML)<br><br>(Jointly Administered) |

**ORDER (I) APPROVING BIDDING PROCEDURES FOR SALE OF REAL**
**PROPERTY AND ANY RELATED PERSONAL PROPERTY AND**
**IMPROVEMENTS THERETO, (II) APPROVING BREAKUP FEE,**
**(III) SCHEDULING CERTAIN DATES WITH RESPECT THERETO,**
**AND (IV) APPROVING THE FORM AND MANNER OF NOTICE THEREOF**

(Related Docket No. 844)

Upon the motion (the "<u>Motion</u>")[2] of the above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") for entry of an order (this "<u>Order</u>"), (a) authorizing and approving the Bidding Procedures, substantially in the form attached hereto as **Exhibit 1** (the "<u>Bidding Procedures</u>"), (b) establishing certain dates and deadlines in connection with the Bidding Procedures, (c) approving the Breakup Fee set forth in the Stalking Horse Purchase Agreement attached hereto as **Exhibit 2**, (d) approving procedures for assuming and assigning certain executory contracts and unexpired leases, and certain related notices, approving the Sale Notice, substantially in the form attached hereto as **Exhibit 3**, all as more fully set forth in the Motion; and the Court having reviewed any evidence in support of the Motion; and the Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification numbers, are: KAL Freight Inc. (0249); KAL Aviation LLC (2600); KAL Partz Inc. (0139); KAL Trailers & Leasing Inc. (0840); and KVL Tires Inc. (0320). The location of the Debtors' service address in these Chapter 11 cases is 10156 Live Oak Ave., Fontana, CA 92335.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion or the Bidding Procedures, as applicable.

before the Court (the "Hearing"); and the Court having determined that the legal and factual bases

set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and any

objections to the Motion having been withdrawn with prejudice or overruled on the merits at the

Hearing; and upon all of the proceedings had before the Court; and after due deliberation and

sufficient cause appearing therefor,

**THE COURT FINDS**:[3]

A.      Jurisdiction and Venue. The Court has jurisdiction to consider the Motion and the

relief requested therein pursuant to 28 U.S.C. § 1334, and venue is proper before this Court

pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

B.      Bases for Relief. The bases for the relief requested in the Motion are sections 105,

363, 365, 503, and 507 of the Bankruptcy Code and Bankruptcy Rules 2002(a)(2), 6004, 6006,

9007, and 9014 and Bankruptcy Local Rule 9013-1.

C.      Notice of the Bidding Procedures Motion. Good and sufficient notice of the Motion,

the Bidding Procedures, and the relief sought in the Motion has been given under the

circumstances, and no other or further notice is required except as set forth herein and in the

Bidding Procedures. The notice of the Motion and of the Hearing is reasonable and sufficient in

light of the circumstances and nature of the relief requested in the Motion, and no other or further

notice of the Motion or the Hearing is necessary. A reasonable and fair opportunity to object to the

Motion and the relief granted in this Order has been afforded under the circumstances.

D.      Bidding Procedures. The Debtors have articulated good and sufficient reasons for

authorizing and approving the Bidding Procedures, which are fair, reasonable, and appropriate

---

[3] The findings of fact and conclusions of law herein constitute the Court's findings of fact and conclusions of law for the purposes of Bankruptcy Rule 7052 made applicable pursuant to Bankruptcy Rule 9014. To the extent any findings of facts are conclusions of law, they are adopted as such.

under the circumstances and designed to maximize value for the benefit of the Debtors' estates, their creditors, and other parties in interest. The Debtors, with the assistance of their advisors, are engaged in a fulsome marketing and sale process to solicit and develop the highest or otherwise best offer for the Real Property. The Bidding Procedures are designed to build on that robust and extensive marketing and sale process following entry of this Order.

E.      Breakup Fee. Subject to the noticing requirements and objection procedures set forth in this Order, the Breakup Fee is fair, reasonable, and appropriate, including in light of the commitments that have been made and the efforts that have been and will be expended by the Stalking Horse Purchaser. The Breakup Fee is necessary to induce the Stalking Horse Purchaser to pursue the Sale and to be bound by the Stalking Horse Purchase Agreement, and are also reasonable in relation to the Stalking Horse Purchaser's lost opportunities resulting from the time and money spent pursuing the Sale.

F.      Sale Notice. The Sale Notice is reasonably calculated to provide all interested parties with timely and proper notice of the Auction, including the date, time, and place of the Auction (if one is held) and the Bidding Procedures and certain dates and deadlines related thereto, and no other or further notice of the Auction shall be required.

G.      Good Faith Negotiation of Bidding Procedures and Stalking Horse Purchase Agreement. The Bidding Procedures and the Stalking Horse Purchase Agreement were each negotiated in good faith and at arm's-length among the Debtors and the Stalking Horse Purchaser. The Stalking Horse Purchase Agreement represents the highest or otherwise best offer that the Debtors have received to date for the Real Property. The process for selecting the Stalking Horse Purchaser was fair and appropriate under the circumstances and in the best interests of the Debtors' estates.

H.      <u>Business Justification</u>. The Debtors have demonstrated a compelling and sound business justification for the Bankruptcy Court to enter this Order and, thereby: (i) approve the Bidding Procedures as contemplated by the Motion and the Stalking Horse Purchase Agreement; (ii) authorize the Breakup Fee under the terms and conditions set forth in the Stalking Horse Purchase Agreement and the Bidding Procedures; (iii) set the dates of the Bid Deadline, Auction (if needed), Sale Hearing and other deadlines set forth in the Motion and the Bidding Procedures; and (iv) approve the noticing procedures and the forms of notice. Such compelling and sound business justification, as set forth in the Motion and on the record at the Hearing, are incorporated herein by reference and, among other things, form the basis for the findings of fact and conclusions of law set forth herein.

**NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED:**

1.      All objections, statements, and reservations of rights to the relief granted herein that have not been withdrawn with prejudice, waived, or settled are overruled and denied on the merits with prejudice.

**I.      Important Dates and Deadlines.**

2.      The following dates and deadlines regarding the Sale are hereby established, subject to the right of the Debtors, to modify the following dates (with the prior written consent of the Stalking Horse Purchaser), provided notice is given in accordance with the terms of this Order:

| Event or Deadline | Date and Time |
|---|---|
| Qualified Bid Deadline | May 5, 2025, at 4:00 p.m. (prevailing Central Time) |
| Auction (if applicable) | The Auction will be held on May 9, 2025, at 10:00 a.m. (prevailing Central Time) via remote video[4] |

---

[4] If the Debtors decide to hold a live, in-person Auction, Qualified Bidders shall still have the ability to submit Bids remotely.

| Event or Deadline | Date and Time |
|---|---|
| Sale Objection Deadline | May 12, 2025, at 4:00 p.m. (prevailing Central Time) |
| Sale Hearing | May 15, 2025, at 1:00 p.m. (prevailing Central Time) |
| Outside Closing Date | June 30, 2025[5] |

3.      ***Successful Bidder***. The Debtors shall present the results of the Auction (if any) or otherwise present any Successful Bidders (as defined in the Bidding Procedures) to the Court at the Sale Hearing.

**II.      The Bidding Procedures.**

4.      The Bidding Procedures, which are incorporated by reference as though fully set forth herein, are hereby approved, and the Debtors are authorized to solicit bids and conduct an Auction, if necessary, on the terms set forth in the Bidding Procedures. The Bidding Procedures shall govern the submission, receipt, and analysis of all bids, and any party desiring to submit a bid on the Real Property must do so strictly in accordance with the terms of the Bidding Procedures and this Order. The Debtors are authorized to take all actions as are reasonably necessary or appropriate to implement the Bidding Procedures.

5.      Each bidder participating at an Auction (if any) shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale, as set forth in the Bidding Procedures, and an Auction (if any) shall be transcribed or recorded.

6.      Pursuant to the Bidding Procedures, including any applicable consultation or consent rights therein, the Debtors may (a) determine which Qualified Bid is the highest or otherwise best offer for the Real Property, (b) at any time prior to entry of an Order of the Court

---

[5] The Debtors cannot modify the Outside Closing Date without the consent of the Stalking Horse Purchaser, as set forth in the Stalking Horse Purchase Agreement. The Debtors shall consult with the Stalking Horse Purchaser prior to modifying the date of the Auction, the Cure Objection Deadline, or the Sale Objection Deadline.

approving the applicable Successful Bid, reject any Bid (other than the Stalking Horse Purchase Agreement) that the Debtors determine is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code or the Bidding Procedures, or (iii) contrary to the best interests of the Debtors' estates and their creditors, and (c) prior to conclusion of an Auction (if any), impose such other terms and conditions upon Qualified Bidders as the Debtors determine to be in the best interests of the Debtors' estates in these chapter 11 cases. Notwithstanding the foregoing, the Debtors shall not impose any terms and conditions upon the Stalking Horse Purchaser that are inconsistent with, or in addition to those contained in, the Stalking Horse Purchase Agreement (except as required at the Auction (if any) for the Stalking Horse Purchaser to become the Successful Bidder).

7.      If the Auction is cancelled, then the Debtors shall file a notice with the Court of such election within two (2) business days of the determination of such election by the Debtors. The deadline to object to the Sale shall be May 12, 2025, at 4:00 p.m. (prevailing Central Time).

8.      Other than any Breakup Fee approved for the Stalking Horse Purchaser as provided herein, no person or entity shall be entitled to any expense reimbursement, break-up fees, "topping," termination, or other similar fee or payment, and by submitting a bid, such person or entity is deemed to have waived their right to request or to file with this Court any request for expense reimbursement or any fee of any nature in connection with such bid, whether by virtue of section 503(b) of the Bankruptcy Code or otherwise.

9.      Notwithstanding anything to the contrary herein or in the Bidding Procedures, (a) TBK Bank, SSB ("TBK") shall be entitled to credit bid pursuant to section 363(k) of the Bankruptcy Code, (b) in the event TBK submits a credit bid, TBK shall be automatically deemed a Potential Bidder and a Qualified  Bidder without regard for any conditions precedent or other

requirements in the Bidding Procedure with respect to same, and (c) TBK shall be automatically entitled to participate in the Auction (if any). If TBK submits a credit bid or any other bid, TBK and its affiliates will be prohibited from communicating with the Consultation Parties about any other Potential Bidders and/or their bids; *provided, however*, and for the avoidance of doubt, nothing contained herein or in the Bidding Procedures will prohibit TBK and its affiliates from communicating with the Consultation Parties about any other subject.

### III.    The Breakup Fee.

10.     The Breakup Fee as set forth in the Stalking Horse Purchase Agreement is hereby approved. The Debtors are authorized without further Court action to pay any Breakup Fee to the Stalking Horse Purchaser ***solely*** (i) in the event that a Successful Bid (as defined in the Bidding Procedures) from a party other than the Stalking Horse Purchaser is accepted by the Debtors and approved by the Court and (ii) from the proceeds of closing of such alternative Successful Bid. For the avoidance of doubt, the Breakup Fee shall be deemed a cost of sale.

### IV.    Sale Notice and Related Relief.

11.     The Sale Notice, substantially in the form attached hereto as **Exhibit 3**, is hereby approved. Within three (3) business days after entry of this Order, the Debtors shall serve the Bidding Procedures and the Sale Notice upon the Notice Parties. In addition, within five (5) business days after entry of this Order, the Debtors will publish the Sale Notice, with any modifications necessary for ease of publication, on the case-specific website maintained by Stretto to provide notice to any other potential interested parties. No publication notice shall be required under the circumstances of these cases.

12.     Nothing in this Order or the Bidding Procedures shall be deemed a waiver of any rights, remedies, or defenses that any party (including the Debtors, the Debtors' lenders, the

Stalking Horse Purchaser, or any other prospective purchaser) has or may have under applicable bankruptcy and non-bankruptcy law or any rights, remedies or defenses of the Debtors with respect thereto, including seeking relief from the Court with regard to the Auction, the Bidding Procedures, the Sale, and any related items (including, if necessary, to seek an extension of the Bid Deadline).

13.    In addition to TBK's prepetition debt with respect to the Real Property, TBK shall be entitled to seek recovery of all other amounts due and owing with respect to the Real Property, including interest, fees, attorneys' fees, costs and charges authorized under section 506 of the Bankruptcy Code (the "TBK Section 506 Claim").

14.    In the event the Court enters a Sale Order, such order shall provide that (a) all amounts owed to TBK with respect to the Real Property (including TBK's prepetition debt and the TBK Section 506 Claim) shall be paid at closing and (b) in the event of any delay in payment of such amounts to TBK, any such unpaid amounts shall be held in escrow by the title company pending further order of the Court.

15.    All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

16.    The Debtors are authorized to take all actions necessary or appropriate to effectuate the relief granted pursuant to this Order in accordance with the Motion.

17.    The requirements set forth in Bankruptcy Local Rule 9013-1 and the Procedures for Complex Chapter 11 Cases in the Southern District of Texas are satisfied by the contents of the Motion.

18.    Notwithstanding Bankruptcy Rule 6004(h), this Order shall be immediately effective and enforceable upon entry hereof.

19.    The Court retains exclusive jurisdiction and power with respect to all matters

arising from or related to the implementation of this Order.


Dated: _____, 2025

_____
CHRISTOPHER M. LOPEZ
UNITED STATES BANKRUPTCY JUDGE

**Exhibit 1**

**Bidding Procedures**

**IN THE UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |
|---|---|
| In re:<br><br>Kal Freight Inc., *et al.*,<br><br>　　　　　　　　Debtors.[1] | Chapter 11<br><br>Case No. 24-90614 (CML)<br><br>(Jointly Administered) |

**BIDDING PROCEDURES FOR THE SALE OF THE DEBTORS' REAL PROPERTY AND ANY RELATED PERSONAL PROPERTY AND IMPROVEMENTS THERETO**

On December 5, 2025, the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of Texas (the "Court").

On [___], 2025, the Court entered the *Order (I) Approving Bidding Procedures for the Sale of the Debtors' Assets, (II) Approving Breakup Fee, and (III) Scheduling Certain Dates with Respect Thereto, (IV) Approving the Form and Manner of Notice Thereof* [Docket No. [_]] (the "Bidding Procedures Order"),[2] by which the Court approved the following procedures (the "Bidding Procedures").

These Bidding Procedures set forth the process for a potential auction (the "Auction") for the sale or sales (any such sale, a "Sale") of some or all of the assets of the Debtors (the "Property").

---

**Copies of the Bidding Procedures Order or other documents related thereto are available upon request to Stretto by calling (855) 933-3437 or +1 (714) 788-8331 (international) or visiting the Debtors' restructuring website at https://cases.stretto.com/KalFreight**

---

**Assets to be Auctioned**

These Bidding Procedures set forth the terms by which prospective bidders, if any, may qualify for and participate in an Auction, thereby competing to make the highest or otherwise best offer or combination of offers which in the aggregate will make the highest or otherwise best offer

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification numbers, are: KAL Freight Inc. (0249); KAL Aviation LLC (2600); KAL Partz Inc. (0139); KAL Trailers & Leasing Inc. (0840); and KVL Tires Inc. (0320). The location of the Debtors' service address in these Chapter 11 cases is 10156 Live Oak Ave., Fontana, CA 92335.

[2] All capitalized terms used but not immediately defined shall have the meanings ascribed to them elsewhere in these Bidding Procedures or the Bidding Procedures Order.

to purchase some or all of the Debtors' Property. The Debtors may consider bids from multiple bidders (including multiple bids submitted by the same bidder) in any combination for the Real Property.

The following is a table setting forth key dates and deadlines with respect to the Sale process:

| Event or Deadline | Date and Time |
|---|---|
| Qualified Bid Deadline | May 5, 2025, at 4:00 p.m. (prevailing Central Time) |
| Auction (if applicable) | The Auction will be held on May 9, 2025, at 10:00 a.m. (prevailing Central Time) via remote video[3] |
| Sale Objection Deadline | May 12, 2025, at 4:00 p.m. (prevailing Central Time) |
| Sale Hearing | May 15, 2025, at 1:00 p.m. (prevailing Central Time) |
| Outside Closing Date | June 30, 2025[4] |

## I.   Public Announcement of Auction.

Within three (3) business days after entry of the Bidding Procedures Order, the Debtors shall serve on the Notice Parties a notice of the Auction and Sale (the "Sale Notice"). Within five (5) business days after entry of the Bidding Procedures Order, the Debtors shall publish the Sale Notice, with any modifications necessary for ease of publication, on the case-specific website maintained by Stretto to provide notice to any other potential interested parties.

## II.   Potential Bidder Requirements.

To participate in the bidding process or otherwise be considered for any purpose hereunder, a person or entity (other than the Stalking Horse Purchaser) interested in purchasing some or all of the Debtors' Property (a "Potential Bidder") must deliver or have previously delivered to the Debtors the following documents (collectively, the "Preliminary Bid Documents"):

- an executed confidentiality agreement (a "Confidentiality Agreement") in form and substance acceptable to the Debtors;

- a non-binding written indication of interest specifying, among other things, with respect to any proposed Sale, the identity of the Real Property to be acquired, the

---

[3] If the Debtors decide to hold a live, in-person Auction, Qualified Bidders shall still have the ability to submit Bids remotely.

[4] The Debtors cannot modify the Outside Closing Date without the consent of the Stalking Horse Purchaser, as set forth in the Stalking Horse Purchase Agreement. The Debtors shall consult with the Stalking Horse Purchaser prior to modifying the date of the Auction, the Cure Objection Deadline, or the Sale Objection Deadline.

amount and type of consideration to be offered, and any other material terms to be included in a bid by such party;

- preliminary proof by the Potential Bidder of its financial capacity to close the proposed Sale (which may include current audited or verified financial statements of, or verified financial commitments ("Financial Statements") obtained by, the Potential Bidder (or, if the Potential Bidder is an entity formed for the purpose of acquiring the property to be sold, the party that will bear liability for a breach) as well as an overview of any recent transactions), the adequacy of which must be reasonably acceptable to the Debtors;

- identity of the Potential Bidder, including its legal name, jurisdiction and form of organization, and details regarding the ownership and capital structure of the Potential Bidder, as well as the identity of any controlling persons, significant direct or indirect equity or debt investors, and/or guarantors of such entity, and any known connections the Potential Bidder has to the Debtors or their advisors, any statutory committee appointed in these cases (if any) or its advisors, or any creditor or equity security interest holder of the Debtors;

- a list with the names and contact information for any financial, legal and other advisors the Potential Bidder has engaged to assist in connection with the proposed Sale; and

- a description of the nature and extent of any due diligence the Potential Bidder wishes to conduct.

The Debtors, in their reasonable discretion, may agree to waive some or all of the Potential Bidder requirements set forth above. Each Potential Bidder shall comply with all reasonable requests for information and access by the Debtors or their advisors regarding the ability of such Potential Bidder, as applicable, to consummate a proposed Sale. Promptly after a Potential Bidder delivers Preliminary Bid Documents, the Debtors shall (a) determine and notify each Potential Bidder as to whether such Potential Bidder has submitted acceptable Preliminary Bid Documents and (b) provide copies of any such notices to the following parties (each a "Consultation Party" and, collectively, the "Consultation Parties") (i) counsel to the official committee of unsecured creditors: Brown Rudnick LLP Attn: Robert J. Stark (rstark@brownrudnick.com); Bennet S. Silverberg (bsilverberg@brownrudnick.com); Kane Russell Coleman Logan PC Attn: Kyle Woodard (kwoodard@krcl.com); Joseph M. Coleman (jcoleman@krcl.com); (ii) counsel to Triumph Commercial Finance, LLC and TBK Bank, SSB: Sussman Shank LLP Attn: Howard M. Levine (hlevine@sussmanshank.com); Josh G. Flood (jflood@sussmanshank.com); Jackson Walker L.L.P. Attn: Michael S. Held (mheld@jw.com); J. Machir Stull (mstull@jw.com); (iii) counsel to Daimler Truck Financial Services USA LLC: Foley & Lardner LLP Attn: Joseph S. harper (jharper@foley.com); Stephen A. McCartin (tmccartin@foley.com); Thomas C. Scannell (tscannell@foley.com); Cooksey Toolen Gage Duffy Woog Attn: Kim P. Gage (kgage@cookseylaw.com); and (iv) counsel to Banc of America Leasing & Capital, LLC: Reed Smith, LLP Attn: Christopher O. Rivas (crivas@reedsmith.com); Marsha A. Houston (mhouston@reedsmith.com) ; Shayna A. Jackson (sjackson@reedsmith.com).

Notwithstanding anything herein to the contrary, if any Consultation Party becomes a Potential Bidder, such party will no longer be considered a Consultation Party.

Other than the Stalking Horse Purchaser, only those Potential Bidders that have submitted acceptable Preliminary Bid Documents to the reasonable satisfaction of the Debtors and their advisors, after consultation with the Consultation Parties, may submit bids to purchase the Debtors' Property. The Debtors reserve the right to work with any Potential Bidder to cure any deficiencies in the Preliminary Bid Documents.

## III.   **Obtaining Due Diligence Access**.

Only Potential Bidders that have submitted acceptable Preliminary Bid Documents to the reasonable satisfaction of the Debtors and their advisors shall be eligible to receive information and access to the Debtors' electronic data room and to additional non-public, non-privileged information regarding the Debtors. For the avoidance of doubt, the Stalking Horse Purchaser is eligible to receive information and access to the Debtors consistent with the terms of the Stalking Horse Purchase Agreement. All information requests must be directed to the real estate advisor, Keen-Summit Capital Partners LLC, Attn: Harold Bordwin (hbordwin@keen-summit.com), Heather Milazzo (hmilazzo@keen-summit.com), Chris Mahoney (cmahoney@keen-summit.com). The Debtors will provide to each Potential Bidder (including the Stalking Horse Purchaser) reasonable due diligence information, as requested by such Potential Bidder in writing, as soon as reasonably practicable after such request, and the Debtors shall post substantially all written due diligence provided to any Potential Bidder to the Debtors' electronic data room. Potential Bidders will not, directly or indirectly, contact or initiate or engage in discussions in respect of matters relating to the Debtors or a potential transaction with any customer, supplier, or contractual counterparty of the Debtors without the prior written consent of the Debtors. The due diligence period will end on the Bid Deadline (as defined herein).

In connection with the provision of due diligence information to Potential Bidders, the Debtors shall not furnish any confidential information relating to the Debtors or a potential transaction to any person except a Potential Bidder or such Potential Bidder's duly authorized representatives to the extent provided in an applicable Confidentiality Agreement.

The Debtors and their advisors shall coordinate all reasonable requests for additional information and due diligence access from Potential Bidders; *provided* that the Debtors may decline to provide such information to Potential Bidders who, in the Debtors' reasonable business judgment have not established, or who have raised doubt, that such Potential Bidders intend in good faith to, or have the capacity to, consummate any Sale. For any Bidder who is a competitor or customer of the Debtors or is affiliated with any competitors or customers of the Debtors, the Debtors reserve the right to withhold or modify any diligence materials that the Debtors determine are commercially sensitive or otherwise inappropriate for disclosure to such bidder.

> **Keen-Summit Capital Partners LLC, Attn: Harold Bordwin (hbordwin@keen-summit.com), Heather Milazzo (hmilazzo@keen-summit.com), Chris Mahoney (cmahoney@keen-summit.com), shall coordinate all requests for additional information and due diligence access on behalf of the Debtors.**

### A.      Communications with Potential Bidders (including Qualified Bidders).

Notwithstanding anything to the contrary in these Bidding Procedures, all substantive direct communications, including any diligence requests, with Potential Bidders and Qualified Bidders shall be through the Debtors' real estate advisor, Keen-Summit Capital Partners LLC, Attn: Harold Bordwin (hbordwin@keen-summit.com), Heather Milazzo (hmilazzo@keen-summit.com), Chris Mahoney (cmahoney@keen-summit.com)(via email shall be acceptable).

### B.      Due Diligence from Potential Bidders (including Qualified Bidders).

Each Potential Bidder (including any Qualified Bidder) shall comply with all reasonable requests for additional information and due diligence access requested by the Debtors or their advisors regarding the ability of such Potential Bidder (including any Qualified Bidder) to consummate its contemplated Sale. Failure by a Potential Bidder (including any Qualified Bidder, but excluding the Stalking Horse Purchaser) to comply with such reasonable requests for additional information and due diligence access may be a basis for the Debtors, after consultation with the Consultation Parties, to determine that such bidder is no longer a Qualified Bidder or that a bid made by such bidder is not a Qualified Bid.

### C.      <u>No Communications Among Potential Bidders.</u>

There must be no communications between or amongst Potential Bidders, or between Potential Bidders and the Consultation Parties, unless the Debtors have previously authorized such communication in writing. Should any Potential Bidder attempt to communicate directly with another Potential Bidder or the Consultation Parties, such Potential Bidder or the Consultation Parties, as applicable shall immediately inform, in writing, the Debtors' counsel and the Debtors' investment banker. The Debtors reserve the right, in their reasonable business judgment and upon consultation with the Consultation Parties, to disqualify any Potential Bidders that have communications between and amongst themselves without the prior consent of the Debtors. The Debtors further reserve their right, in their reasonable business judgment to disqualify any Potential Bidders that have communications with a Consultation Parties.

## IV.     <u>Breakup Fee; Bid Protections.</u>

Recognizing the Stalking Horse Purchaser will expend time, energy and resources, and that the Stalking Horse Purchaser provides a floor bid with respect to the Real Property that it offers to purchase, the Debtors are authorized (pursuant to the Bidding Procedures Order) to provide the following bidding protections to the Stalking Horse Purchaser.

- The Debtors have agreed to pay the Breakup Fee to the Stalking Horse Purchaser, upon the terms set forth in the Stalking Horse Purchase Agreement and the Bidding Procedures Order.

- Any Bid submitted on or before the Bid Deadline by a party or parties other than the Stalking Horse Purchaser must be in an amount that is sufficient to pay the Breakup Fee and result in additional consideration to the Debtors' estates in the amount of at least $85,000 (as compared to the Purchase Price offered by the Stalking Horse Purchaser), after payment of the Breakup Fee. For the avoidance of doubt, any Bid submitted on or before the Bid Deadline must be at least $3,400,000.

## V.    <u>Bid Requirements</u>.

To be selected to acquire the Real Property or to be eligible to participate in the Auction, if applicable, a Potential Bidder (other than the Stalking Horse Purchaser) must deliver to the parties set forth in Section VII below a written, irrevocable, and binding offer for purchase of the Real Property (the "<u>Bid</u>") that must be determined by the Debtors in their business judgment, after consultation with the Consultation Parties, to satisfy each of the following conditions (collectively, the "<u>Bid Requirements</u>"):

- **Identity**: Each Bid must fully disclose the identity of each entity and each entity's shareholders, partners, investors, and ultimate controlling entities that will be bidding for or purchasing the applicable Property or otherwise participating in connection with such Bid, and the complete terms of any such participation, along with sufficient evidence that the Potential Bidder is legally empowered to complete the transactions on the terms contemplated by the parties. Each Bid must also include contact information for the specific person(s) whom Debtors' counsel and investment banker should contact regarding such Bid;

- **Identity of Property and Purchase Price**: Each Bid must clearly state which of the Real Property the Potential Bidder seeks to acquire and which liabilities of the applicable Debtor the Potential Bidder agrees to assume. Each Bid must clearly set forth the purchase price to be paid, including cash and non-cash components, if any, including any assumption of liabilities (collectively, the "<u>Purchase Price</u>"). The Purchase Price should be a single point value in U.S. Dollars for the total enterprise value of the Real Property the Potential Bidder seeks to acquire on a cash-free, debt-free basis; *provided* that the Potential Bidder shall include an allocation of such Purchase Price among the Real Property the Potential Bidder seeks to acquire;

- **Markup of the Purchase Agreement**: Each Bid must be accompanied by executed transaction documents, including a draft purchase agreement, and a markup of the Stalking Horse Purchase Agreement, including the exhibits, schedules and ancillary agreements related thereto, and any other related material documents integral to such Bid pursuant to which the Potential Bidder proposes to effectuate the proposed Sale, along with copies that are marked to reflect any amendments and modifications from the form purchase agreement provided to such Potential Bidder, which amendments and modifications may not be materially more burdensome than

the provisions in the Stalking Horse Purchase Agreement, or otherwise inconsistent with these Bidding Procedures. The Debtors, in their reasonable business judgment, after consultation with the Consultation Parties, will determine whether any such amendments and modifications are materially more burdensome;

- **Committed Financing**: Each Bid must include committed financing, documented to the Debtors' reasonable satisfaction, after consultation with the Consultation Parties, that demonstrates the Potential Bidder has received sufficient debt and equity funding commitments to satisfy such Potential Bidder's Purchase Price and other obligations under its Bid, including the identity and contact information of the specific person(s) or entity(s) responsible for such committed financing whom Debtors' counsel and investment banker should contact regarding such committed financing. Such funding commitment shall not be subject to any internal approval, syndication requirements, diligence or credit committee approvals, and shall have covenants and conditions reasonably acceptable to the Debtors. The Debtors may in their reasonable business judgment and after consultation with the Consultation Parties waive this condition on a case-by-case basis;

- **Pro Forma Capital Structure**: Each Bid must include a description of the Potential Bidder's pro forma capital structure;

- **Contingencies; No Financing or Diligence Outs**: Any Bid shall not be conditioned on the obtaining or the sufficiency of financing, any internal approval, or on the outcome or review of due diligence, and each Bid must identify with particularity each and every condition to closing, including the executory contracts and unexpired leases for which assumption and assignment is required. The Potential Bidders are expected to have completed all of their due diligence by the Bid Deadline, including all business, legal, accounting, and other confirmatory diligence. The extent and nature of any remaining due diligence should be set forth in a specific list attached to each Bid;

- **As-Is, Where-Is**: Each Bid must include a written acknowledgement and representation that the Potential Bidder: (i) has had an opportunity to conduct any and all due diligence prior to making its offer; (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Real Property in making its Bid; and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the completeness of any information provided in connection therewith, except as expressly stated in the Potential Bidder's proposed purchase agreement;

- **Authorization**: Each Bid must contain evidence that the Potential Bidder has obtained authorization or approval from its shareholders and/or its board of managers or directors, as applicable, with respect to the submission of its Bid and the consummation of the Sale contemplated by such Bid;

- **Adequate Assurance of Future Performance**: Each Bid must (i) identify the Contracts to be assumed and assigned in connection with the proposed Sale, (ii) provide for the payment of all Cure Costs related to such Contract by the Potential Bidder, and (iii) demonstrate, in the Debtors' reasonable business judgment, that the Potential Bidder can provide adequate assurance of future performance under all such Contracts;

- **Compliance with Bankruptcy Code and Non-Bankruptcy Law; Acknowledgment**: Each Bid must comply in all respects with the Bankruptcy Code and any applicable non-bankruptcy law. Each Bid must also include a written acknowledgment that the Bidder agrees to all of the terms of the Sale set forth in these Bidding Procedures and that it has not engaged in any collusion, coordination, or unfair competitive practices with respect to its Bid;

- **Irrevocable**: A Potential Bidder's Bid must be binding and irrevocable unless and until the Debtors accept a higher Bid and such Potential Bidder is not selected as the Backup Bidder (as defined herein);

- **No Fees**: Each Potential Bidder presenting a Bid or Bids will bear its own costs and expenses (including legal fees) in connection with the proposed Sale, and by submitting its Bid is agreeing to refrain from and waive any assertion or request for a breakup fee, transaction fee, termination fee, expense reimbursement, or any similar type of payment or reimbursement on any basis, including under section 503(b) of the Bankruptcy Code;

- **Joint Bids**: The Debtors will be authorized to approve joint Bids in their reasonable discretion on a case-by-case basis;

- **Adherence to Bidding Procedures**: By submitting its Bid, each Potential Bidder is agreeing to abide by and honor the terms of these Bidding Procedures and agrees not to submit a Bid or seek to reopen the Sale process or the Auction (if held) after conclusion of the selection of the Successful Bidder (as defined herein). By submitting its Bid, each Potential Bidder is agreeing to comply in all respects with the Bankruptcy Code and any applicable non-bankruptcy law;

- **Consent to Jurisdiction**: Each Potential Bidder must submit to the jurisdiction of the Court and waive any right to a jury trial in connection with any disputes relating to the Debtors' qualification of Bids, the Auction (if held), the construction and enforcement of these Bidding Procedures, the Sale documents, and consummation of a Sale (or Sales) (including confirmation of chapter 11 plan in connection therewith), as applicable;

- **Backup Bid**: Each Bid must provide that the Potential Bidder will serve as a Backup Bidder if the Potential Bidder's Bid is the next highest or otherwise best Bid, ready to close the Sale on the terms stated in the next highest or otherwise best Bid within two business days of the failure of the Successful Bidder to close;

- **Expected Closing Date**: Each Bid must state the Potential Bidder's expected date of closing of the Sale; *provided*, such closing date may be extended pursuant to the terms of an asset purchase agreement; and

Only Bids fulfilling all of the preceding requirements contained in this section may, at the Debtors' reasonable discretion, be deemed to be "Qualified Bids," and only those parties submitting Qualified Bids may, at the Debtors' reasonable discretion, be deemed to be "Qualified Bidders."

Only Bids fulfilling all of the preceding requirements contained in this section may, at the Debtors' reasonable discretion, after consultation with the Consultation Parties, be deemed to be "Qualified Bids," and only those parties submitting Qualified Bids may, at the Debtors' reasonable discretion, after consultation with the Consultation Parties, be deemed to be "Qualified Bidders." All information disclosed by any Potential Bidder in connection with all of the preceding requirements will promptly be made available by the Debtors to the Consultation Parties; *provided* that any confidential financing and/or equity commitment documents received from any such Potential Bidder shall only be shared with the Consultation Parties on a "professionals' eyes only" basis.

No later than one (1) business day following the Bid Deadline, the Debtors shall determine, after consultation with the Consultation Parties, which Potential Bidders are Qualified Bidders and will notify the Potential Bidders whether Bids submitted constitute Qualified Bids, which enable such Qualified Bidders to participate in the Auction (if held). Any Bid that is not deemed a Qualified Bid shall not be considered by the Debtors; *provided*, *however*, that if the Debtors receive a Bid prior to the Bid Deadline that does not satisfy the requirements of a Qualified Bid, the Debtors shall provide the Potential Bidder with the opportunity to remedy any deficiencies prior to the Bid Deadline. The Debtors may accept a single Qualified Bid or multiple Bids for non-overlapping material portions of the Real Property such that, if taken together in the aggregate, would otherwise meet the standards for a single Qualified Bid (in which event those multiple bidders will be treated as a single Qualified Bidder for purposes of selecting the Successful Bidder; *provided* that the Debtors also reserve the right, in consultation with the Consultation Parties, to conduct more than one Sale process or Auction with respect to non-overlapping material portions of the Real Property).

For the avoidance of doubt, the Stalking Horse Purchaser shall be deemed to be a Qualified Bidder, the Stalking Horse Purchase Agreement shall be deemed a Qualified Bid, and the Stalking Horse Purchaser may participate in the Auction (if any) with respect to the Real Property.

## VI.    Bid Deadline.

Binding Bids must be received (via email shall be acceptable) by (a) the Debtors' counsel, Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Boulevard, 13th Floor, Los Angeles, California 90067, Attn.: Richard M. Pachulski (rpachulski@pszjlaw.com) and Teddy Kapur (tkapur@pszjlaw.com); and (b) the Debtors' real estate advisor, Keen-Summit Capital Partners LLC, Attn: Harold Bordwin (hbordwin@keen-summit.com), Heather Milazzo (hmilazzo@keen-summit.com), Chris Mahoney (cmahoney@keen-summit.com), in each case so as to be **actually received** no later than **5:00 p.m. (prevailing Central Time) on May 5, 2025** (the "Bid Deadline").

## VII.   **Evaluation of Qualified Bids**.

Prior to the Auction (if held), the Debtors and their advisors will evaluate Qualified Bids and identify the Qualified Bid(s) that is, in the Debtors' reasonable business judgment, after consultation with the Consultation Parties, the highest or otherwise best Bid (the "Starting Bid"). The Starting Bid shall include the amount provided for in the Stalking Horse Purchase Agreement, *plus* the amount of the Breakup Fee, *plus* $85,000. In addition, prior to the selection of the Successful Bidder, the Debtors may, in the Debtors' reasonable business judgment, engage in negotiations with bidders with respect to their Bids. For the avoidance of doubt, the Debtors may, after consultation with the Consultation Parties, select more than one Qualified Bid to collectively serve as the Starting Bid in an Auction (if held) if each such Qualified Bid contemplates the purchase of different Property. In conducting the evaluation of the Qualified Bids, the Debtors will take into consideration the following non-exclusive factors:

- the amount of the Purchase Price of the Qualified Bid;

- the value to be provided to the Debtors under the Bid, including the net economic effect upon the Debtors' estates, taking into account the Breakup Fee;

- the proposed changes or modifications to the Stalking Horse Purchase Agreement delivered in connection with such Qualified Bid and the comparative favorability of the terms set forth in such proposed purchase agreement versus the Stalking Horse Purchase Agreement;

- the assets and liabilities excluded from the Qualified Bid and any executory contracts or leases or other liabilities proposed to be assumed;

- any benefit to the Debtors' bankruptcy estates from any assumption of liabilities or waiver of liabilities;

- the certainty of a Qualified Bid leading to a confirmed chapter 11 plan;

- the transaction structure and execution risk, including conditions to, timing of, and certainty of closing; termination provisions; availability of financing and financial wherewithal to meet all commitments; and required governmental or other approvals; and

- any other factors the Debtors may, consistent with their fiduciary duties, reasonably deem relevant.

Promptly after determination of the Starting Bid and prior to the Auction, the Debtors will (a) notify the Stalking Horse Purchaser and (b) distribute a copy of the Starting Bid to each Qualified Bidder who has submitted a Qualified Bid with respect to such Property.

If any Bid is determined by the Debtors not to be a Qualified Bid, the Debtors will refund such Qualified Bidder's Good Faith Deposit within five (5) business days after the Bid Deadline.

**VIII.** **No Qualified Bids**.

If no Qualified Bids other than the Stalking Horse Purchase Agreement are received by the Bid Deadline, then the Debtors, after consultation with the Consultation Parties, may cancel the Auction, and may decide, in the Debtors' reasonable business judgment, to designate the Stalking Horse Purchase Agreement as the Successful Bid, and pursue entry of the Sale Order approving a Sale of the Debtors' Property to the Stalking Horse Purchaser pursuant to the Stalking Horse Purchase Agreement. The Debtors shall file notice of any cancellation of the Auction and designation of the Stalking Horse Purchase Agreement as the Successful Bid with the Court, within two business days of the determination of such election by the Debtors.

**IX.** **Auction**.

If one or more Qualified Bids are received by the Bid Deadline with respect to any applicable non-overlapping Property, then the Debtors shall conduct the Auction with respect to such Property. The Auction will be held on **May 9, 2025, at 10:00 a.m. (prevailing Central Time)**, via videoconference or such other form of remote communication arranged by counsel to the Debtors, or such later time or other place as the Debtors determine, after consultation with the Consultation Parties, in which case the Debtors shall timely notify all Qualified Bidders of such later time or other place, and file a notice of the change on the Court's docket for these chapter 11 cases.[5]

The Auction will be conducted in accordance with the following procedures (the "Auction Procedures"):

- except as otherwise provided herein, the Auction will be conducted openly;

- only Qualified Bidders, including the Stalking Horse Purchaser, shall be entitled to bid at the Auction;

- the Qualified Bidders, including the Stalking Horse Purchaser, shall appear at the Auction via remote video or through duly authorized representatives via remote video at the Auction;

- only the following parties shall be permitted to attend the Auction: authorized representatives of each of the Qualified Bidders (including the Stalking Horse Purchaser), the Debtors, the Consultation Parties, and their respective advisors;

- bidding at the Auction will begin at the applicable Starting Bid;

- Bids at the Auction, including any Bids by the Stalking Horse Purchaser, must be made in minimum increments of such amount as the Debtors determine and announce at or prior to the Auction, after consultation with the Consultation Parties,

---

[5] If the Debtors decide to hold a live, in-person Auction, Qualified Bidders shall still have the ability to submit Bids remotely.

of additional value (including after payment of the Breakup Fee to the Stalking Horse Purchaser);

- each Qualified Bidder will be permitted a reasonable time to respond to previous bids at the Auction, as determined by the Debtors in consultation with the Consultation Parties;

- the bidding will be transcribed or recorded to ensure an accurate recording of the bidding at the Auction;

- no Qualified Bidders (or their respective representatives) may communicate with one another, collude, or otherwise coordinate for purposes of participating in the Auction, and each Qualified Bidder will be required to confirm on the record of the Auction that (i) it has not engaged in any collusion, coordination, or unfair competitive practices with respect to the bidding or the Sale and (ii) its Bid represents an irrevocable, binding, good faith, and bona fide offer to purchase some or all of the Real Property identified in such Bid if such Bid is selected as the Successful Bid; *provided*, *however*, that two or more Qualified Bidders may coordinate to the extent they wish to provide a combined bid if the Debtors, after consultation with the Consultation Parties, approve such coordination in their reasonable discretion;

- the Auction will not close unless and until all Qualified Bidders have been given a reasonable opportunity to submit an overbid at the Auction to the then-prevailing highest bid, subject to the Debtors' right, in consultation with the Consultation Parties, to require last and final bids to be submitted on a "blind" basis;

- the Debtors reserve the right, in their reasonable business judgment, after consultation with the Consultation Parties, to adjourn the Auction one or more times to, among other things, (i) facilitate discussions between the Debtors and Qualified Bidders, (ii) allow Qualified Bidders to consider how they wish to proceed, and (iii) provide Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in their reasonable business judgment, after consultation with the Consultation Parties, may require that the Qualified Bidder has sufficient internal resources or has received sufficient non-contingent debt and/or equity funding commitments to consummate the proposed transaction at the prevailing amount; and

- the Auction will be governed by such other Auction Procedures as may be announced by the Debtors and their advisors, after consultation with the Consultation Parties, from time to time on the record at the Auction; *provided* that such other Auction Procedures are (i) not inconsistent with the Bidding Procedures Order, the Stalking Horse Purchase Agreement, the Bankruptcy Code, or any other order of the Court, (ii) disclosed orally or in writing to all Qualified Bidders, and (iii) determined by the Debtors, after consultation with the Consultation Parties, to further the goal of attaining the highest or otherwise best offer for the applicable Property.

For the avoidance of doubt, nothing in the Auction Procedures (if an Auction is held) will prevent the Debtors from exercising their respective fiduciary duties under applicable law (as reasonably determined in good faith by the Debtors).

## X.    <u>Acceptance of the Successful Bid</u>.

The Auction shall continue until only one Qualified Bid is the highest or otherwise best bid. The Auction shall continue until only one Qualified Bid is the highest or otherwise best bid to purchase some or all of the Real Property in the Debtors' reasonable business judgment (after consultation with the Consultation Parties) and in a manner consistent with the exercise of their fiduciary duties and outlined below in further detail (a "<u>Successful Bid</u>"), and that further bidding is unlikely to result in a different Successful Bid or Successful Bids that would be acceptable to the Debtors, at which point, the Auction will be closed. When determining the highest or otherwise best Qualified Bid, as compared to other Qualified Bids, the Debtors may consider the following factors in addition to any other factors that the Debtors deem appropriate: (a) the amount and nature of the total consideration; (b) the likelihood of the Qualified Bidder's ability to close a Sale and the timing thereof; (c) the net economic effect of any changes to the value to be received by each of the Debtors' estates from the Sale contemplated by the Bid Documents; and (d) the tax consequences of such Qualified Bid.

For the avoidance of doubt, the Debtors may select more than one Qualified Bid to collectively serve as a Successful Bid if each such Qualified Bid contemplates the purchase of different Property. The Qualified Bidder or Qualified Bidders having submitted the Successful Bid or Successful Bids will be deemed the "<u>Successful Bidder</u>" or "<u>Successful Bidders</u>," with respect to the applicable Property. The Debtors shall promptly file notice of the Successful Bid(s) and the Successful Bidder(s) with the Court. The Debtors shall present the results of the Auction at a hearing (the "<u>Sale Hearing</u>") and shall seek Court approval to enter into a binding purchase agreement or other definitive documentation with the Successful Bidder(s) on the terms of the Successful Bid(s) (the order approving such entry, the "<u>Sale Order</u>"). For the avoidance of doubt, the Sale Order shall deem the Debtors' selection of the Successful Bid(s) final and, subject to the designation of the Backup Bid, the Debtors shall not solicit or accept any further bids or offers to submit a bid after such selection; *provided* that, notwithstanding anything to the contrary in these Bidding Procedures, nothing in these Bidding Procedures shall require the board of directors, board of managers, or such similar governing body of any Debtor to take or refrain from taking any action that would be inconsistent with applicable law or its fiduciary obligations under applicable law.

Each Successful Bidder and the Debtors shall, as soon as commercially reasonable and practicable, complete and sign all agreements, contracts, instruments, or other documents evidencing and containing the terms upon which each such Successful Bid was made.

## XI.    <u>Designation of Backup Bidder</u>.

The Qualified Bidder or Qualified Bidders with the second highest or otherwise best bid(s) or combination(s) of bids (each, a "<u>Backup Bid</u>") to purchase any or all of the applicable Property (each, a "<u>Backup Bidder</u>") will be determined by the Debtors at the conclusion of the Auction and will be announced at that time to all the Qualified Bidders participating in the Auction. Each

Backup Bidder shall be required to keep its Qualified Bid open and irrevocable until the closing of the transaction with the applicable Successful Bidder or, in the case of the Stalking Horse Purchaser, until the earlier of (i) 7 days after the Sale Hearing or (ii) May 22, 2025. The Backup Bidder's good faith deposit (if any) shall be held in escrow until the closing of the transaction with the applicable Successful Bidder. If for any reason a Successful Bidder fails to consummate the purchase of such Property within the time permitted after the entry of the Sale Order, then the Backup Bidder will automatically be deemed to have submitted the Successful Bid for such Property, and the Backup Bidder shall be deemed a Successful Bidder for such Property and shall be required to consummate the Sale with the Debtors as soon as is commercially practicable without further order of the Court; *provided* that the Debtors shall file a notice with the Court.

## XII.   Approval of Sale.

The Debtors will present the results of the Auction to the Court for approval at the Sale Hearing, at which certain findings will be sought from the Court regarding the Auction, including, among other things, that: (a) the Auction was conducted, and the Successful Bidder or Successful Bidders were selected, in accordance with the Bidding Procedures; (b) the Auction was fair in substance and procedure; (c) the Successful Bid or Successful Bids were Qualified Bids as defined in the Bidding Procedures; and (d) consummation of any Sale(s) as contemplated by the Successful Bid(s) in the Auction will provide the highest or otherwise best offer for the Debtors and the Debtors' Property and is in the best interests of the Debtors and their estates.

The Sale Hearing is presently scheduled to commence on **May 15, 2025**, at **1:00 p.m. (prevailing Central Time)**, or as soon thereafter as counsel may be heard, before the Honorable Christopher M. Lopez, United States Bankruptcy Court for the Southern District of Texas.

## XIII.  Return of Good Faith Deposit.

The good faith deposit of a Successful Bidder (including, without limitation, the "Deposit" under and as defined in the Stalking Horse Purchase Agreement) shall, upon consummation of any Sale, be credited to the purchase price paid for the applicable Property. If a Successful Bidder fails to consummate the Sale, then the good faith deposit (if any) shall be forfeited to, and retained irrevocably by, the Debtors, and the Debtors specifically reserve the right to seek all available damages from the defaulting Successful Bidder.

The good faith deposit (including, without limitation, the "Deposit" under and as defined in the Stalking Horse Purchase Agreement) of any Qualified Bidders that are not Successful Bidders or Backup Bidders will be returned within two (2) business days after the Auction or upon the permanent withdrawal of the applicable proposed Sale, and the good faith deposit (including, without limitation, the "Deposit" under and as defined in the Stalking Horse Purchase Agreement) of any Backup Bidders will be returned within two (2) business days after the consummation of the applicable Sale or upon the permanent withdrawal of the applicable proposed Sale.

Each good faith deposit shall be held in interest free escrow and at no time shall be deemed property of the Debtors' estates absent further order of the Court, except as otherwise provided herein.

XIV.  **Reservation of Rights**.

The Debtors reserve their rights to modify these Bidding Procedures in their reasonable business judgment as long as not inconsistent with the Stalking Horse Purchase Agreement, after consultation with the Consultation Parties, in a manner consistent with the exercise of their fiduciary duties, and in any manner that will best promote the goals of the bidding process, or impose, at or before the Auction (if held), additional customary terms and conditions on the sale of some or all of the Debtors' Property, including, without limitation: (a) extending the deadlines set forth in these Bidding Procedures; (b) adjourning the Auction; (c) modifying the Auction Procedures or adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction; (d) canceling the Auction; (e) rejecting any or all Bids or Qualified Bids; and (f) adjusting the applicable minimum overbid increment, including by requesting that Qualified Bidders submit last or final bids on a "blind" basis. For the avoidance of doubt, and subject to the termination provisions of the Stalking Horse Purchase Agreement, the Debtors reserve the right at any point prior to the selection of the Successful Bidder, and after consultation with the Consultation Parties, to terminate the Sale processes contemplated hereunder with respect to any or all of the Debtors' Property and seek to sell any or all Property pursuant to section 363(b) of the Bankruptcy Code.

XV.  **Consent to Jurisdiction.**

All Qualified Bidders at the Auction will be deemed to have consented to the core jurisdiction of the Court and waived any right to a jury trial in connection with any disputes relating to any Sale, the Auction, and the construction and enforcement of these Bidding Procedures, any written indications of interest, any Preliminary Bid Documents, or any Bid documents, as applicable, and consented to the entry of a final order or judgment in any way related to these Bidding Procedures, the bid process, the Auction, the Sale Hearing, or the construction and enforcement of any agreement or any other document relating to a Sale if it is determined that the Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

Any parties raising a dispute relating to these Bidding Procedures must request that such dispute be heard by the Court on an expedited basis.

XVI.  **Fiduciary Out**.

Notwithstanding anything to the contrary in these Bidding Procedures, nothing in these Bidding Procedures or the Bidding Procedures Order shall require a Debtor or the board of directors, board of managers, or similar governing body of a Debtor, after consulting with counsel, to take any action or to refrain from taking any action related to any sale transaction to the extent taking or failing to take such action would be inconsistent with applicable law or its fiduciary obligations under applicable law.

Further, notwithstanding anything to the contrary in these Bidding Procedures, through the date of the Auction (if held), nothing in these Bidding Procedures or the Bidding Procedures Order shall diminish the right of the Debtors and their respective directors, officers, employees, investment bankers, attorneys, accountants, consultants, and other advisors or representatives to:

(a) consider, respond to, and facilitate alternate proposals for sales or other restructuring transactions involving any or all of the Debtors' Property (each an "Alternate Proposal"); (b) provide access to non-public information concerning the Debtors to any entity or enter into confidentiality agreements or nondisclosure agreements with any entity; (c) maintain or continue discussions or negotiations with respect to Alternate Proposals; (d) otherwise cooperate with, assist, participate in, or facilitate any inquiries, proposals, discussions, or negotiation of Alternate Proposals; and (e) enter into or continue discussions or negotiations with holders of claims against or equity interests in a Debtor or any other party in interest in these chapter 11 cases (including the United States Trustee), or any other entity regarding Alternate Proposals.

.

## **Exhibit 2**

**(Stalking Horse Purchase Agreement)**

## PURCHASE AND SALE AGREEMENT

**THIS PURCHASE AND SALE AGREEMENT** (the **"Agreement"**) is made and entered into as of March 26, 2025, by and between Lovejot Aulakh, Sukhbir Aulakh, and Harnek Kang (collectively, the **"Buyer"**), on the one hand, and Kal Freight Inc. (the **"Seller"** and, together with Buyer, the **"Parties"**).

## RECITALS

WHEREAS Seller is a debtor and debtor in possession under Case No. 24-90614 (CML) (the **"Case"**) in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the **"Bankruptcy Court"**).

WHEREAS Buyer wishes to acquire from Seller all of Seller's right, title and interest in and to that certain real property located in San Joaquin County, California and which consists of (i) approximately 2.43 acres of land more particularly described on **Exhibit "A"** attached hereto and incorporated herein by this reference, and (ii) an approximately 24,743 square foot, two-story building, together with all other buildings, structures, improvements and fixtures located on the real property described on **Exhibit "A,"** and all easements, rights of way, and other rights and interests which are appurtenant thereto (collectively, the **"Real Property"**).

WHEREAS Seller wishes to sell to Buyer**,** pursuant to Sections 363 of Chapter 11 of Title 11 of the United States Code (the **"Bankruptcy Code"**), the Real Property, all at the price, on the other terms and subject to the conditions specified in detail below.

**NOW, THEREFORE,** for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

1.      Purchase and Sale of Real Property. On the Closing Date, as hereinafter defined, in consideration of the covenants and obligations of Buyer hereunder, and subject to the conditions hereinafter set forth, Seller shall sell, assign, transfer, convey and deliver to Buyer, free and clear of liens, claims, encumbrances and other interests to the extent provided in the Approval Order (as defined in Section 8, below), and Buyer shall purchase from Seller such right, title and interest in and to the Real Property.

2.      Consideration.

2.1      Purchase Price.

2.1.1   The cash consideration to be paid by Buyer to Seller for the Real Property shall be $3,250,000.00 (the **"Purchase Price"**).

2.1.2   The Purchase Price shall be paid as follows:

(a)      Concurrently with the mutual execution and delivery of this Agreement, Buyer shall deposit into an escrow (the **"Escrow"**) with Chicago Title (the **"Escrow Holder"**) an amount equal to $325,000.00 (the **"Deposit"**) in immediately available, good funds (funds delivered in this manner are referred to herein as **"Good Funds"**), pursuant to mutually

agreeable escrow instructions. In turn, the Escrow Holder shall immediately deposit the Deposit into an interest-bearing account. The Deposit shall become nonrefundable and shall be disbursed by Escrow Holder to Seller upon the termination of the transaction contemplated by this Agreement by reason of Buyer's material default of any obligation hereunder (a **"Buyer Default Termination"**), it being agreed that Seller shall not have the right to so terminate this Agreement and retain the Deposit by reason of Buyer's default unless Buyer has failed to cure the applicable default within three (3) business days following receipt of written notice thereof from Seller. At the Closing, the Deposit shall be credited and applied toward payment of the Purchase Price. If the Deposit becomes nonrefundable by reason of a Buyer Default Termination, the Seller shall, in addition to any other remedies to which Seller may be entitled under applicable law, be entitled to receive the Deposit for its own account. If the transaction contemplated herein terminates (A) by reason of Seller's material default under this Agreement, it being agreed that Buyer shall not have the right to so terminate this Agreement unless Seller has failed to cure the applicable default within three (3) business days following receipt of written notice thereof from Buyer, or (B) by reason of the failure of a condition to Buyer's obligations hereunder (the failure of which is not itself the result of a material default by Buyer hereunder), or (C) pursuant to Section 8 in circumstances where such termination was not itself the result of a material default by Buyer hereunder, the Escrow Holder shall return to Buyer the Deposit (together with all interest accrued thereon), but less an amount equal to half of the Escrow Holder's escrow fees and charges.

(b)     On the Closing Date, (A) the Seller shall retain the Deposit to be credited and applied toward payment of the Purchase Price, and (B) Buyer shall pay and deliver to the Seller, in Good Funds, the balance of the Purchase Price.

## 2.2     Assumed Liabilities; Environmental Release And Indemnification

2.2.1     Effective as of the Closing Date, subject only to the express representations and warranties of Seller set forth in Section 5 of this Agreement or in any document delivered by Seller at Closing, Buyer shall assume all liabilities and obligations of Seller: (i) arising in connection with the ownership, use or operation of the Real Property, whether occurring before, during or after Seller's period of ownership, and (ii) with respect to any environmental liabilities (whether now existing or hereafter arising) under federal, state and local law relating to or arising in connection with the Real Property (including, without limitation, administrative or civil fines or penalties for violations of environmental laws, or remediation or response costs for contamination). Buyer and anyone claiming by, through or under Buyer hereby waives any right to recover from and fully and irrevocably releases Seller and Seller's employees, officers, directors, representatives, agents, servants, attorneys, affiliates, parent, subsidiaries, successors and assigns, and all persons, firms, corporations and organizations (including but not limited to Keen-Summit Capital Partners LLC) on its behalf (collectively, "**Released Parties**") of and from any and all claims, responsibility and/or liability that it may now have or hereafter acquire against any of the Released Parties for any costs, loss, liability, damage, expenses, demand, action or cause of action arising from or related to: (1) any defects (patent or latent), errors or omissions in the Real Property or the environmental condition or any environmental matters affecting the Real Property, including, without limitation, geologic conditions and subsurface soil and water conditions, whether the same are the result of any Released Party's actions, omissions or negligence; and (2) any other conditions, including, without limitation, physical conditions affecting the Real Property, whether the same are the result of any Released Party's actions, omissions or negligence, and

whether arising based on events that occurred before, during, or after Seller's period of ownership of the Real Property. This release includes claims of which Buyer is presently unaware or which Buyer does not presently suspect to exist which, if known by Buyer, would materially affect Buyer's release to Seller. In this connection and to the extent permitted by law, Buyer hereby agrees, represents and warrants that Buyer realizes and acknowledges that factual matters now unknown to it may have given or may hereafter give rise to causes of action, claims, demands, debts, controversies, damages, costs, losses and expenses relating to the environmental condition of or environmental matters affecting the Real Property, including, without limitation, geologic conditions and subsurface soil and water conditions, which are presently unknown, unanticipated and unsuspected, and any other conditions, including, without limitation, physical conditions affecting the Real Property, and Buyer further agrees, represents and warrants that the waivers and releases herein have been negotiated and agreed upon in light of that realization and that Buyer nevertheless hereby intends to release, discharge and acquit the Released Parties from any such unknown causes of action, claims, demands, debts, controversies, damages, costs, losses and expenses relating to or arising in connection with the environmental condition of or environmental matters affecting the Real Property (including, without limitation, geologic conditions and subsurface soil and water conditions), and any other conditions, including, without limitation, physical conditions affecting the Real Property.

      2.2.2   In addition to the assumption of liability set forth in Section 2.2(a) above and the release in favor of Seller and other Released Parties set forth in Section 2.2(b) above, from and after the Closing Date, Buyer shall indemnify, defend (with counsel satisfactory to Seller), protect and save and hold the Released Parties harmless of, from and against any and all costs, loss, liability, damages, expenses (including, without limitation, all court costs and reasonable attorneys' fees), claims, demands, fines, penalties, violations, actions, proceedings, liens, or causes of action ("**Losses**") arising from or in any way relating to: (1) any defects (patent or latent), errors or omissions in the Real Property and the environmental condition of the Real Property (or any portion thereof) or any Hazardous Substances (as defined below) which are present in, on, at, about, around or under the Real Property (or any portion thereof), including, without limitation, any Losses imposed or arising under CERCLA, the RCRA (both as defined below) or any other applicable federal, state, or local law or regulation, whether the same are the result of any Released Party's actions, omissions or negligence; and (2) any other conditions, including, without limitation, physical conditions affecting the Real Property, whether the same are the result of any Released Party's actions, omissions or negligence, and whether arising based on events that occurred before, during, or after Seller's period of ownership of the Real Property. For purposes of this Agreement, "Hazardous Substances" means any hazardous, toxic or dangerous waste, substance or material, pollutant or contaminant, as defined for purposes of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (42 U.S.C. Section 6901 et seq.), as amended ("**CERCLA**"), or the Resource Conservation and Recovery Act (42 U.S.C. Sections 6901 et seq.), as amended ("**RCRA**"), or any substance which contains gasoline, diesel fuel or other petroleum hydrocarbons, or polychlorinated biphenyls.

      2.2.3   Buyer acknowledges that Buyer had the opportunity to consult with independent legal counsel of Buyer's selection and Buyer is granting the release and indemnity described in this Section 2.2 above of its own volition and after appropriate consultation. The release and indemnity described in this Section 2.2 above does not apply to the express representations and warranties of Seller set forth in Section 5 of this Agreement or in any document

delivered by Seller at Closing. The provisions of this Section 2.2 shall survive the Closing or termination of this Agreement.

3.  <u>Closing Transactions</u>.

  3.1  <u>Closing</u>. The Closing of the transactions provided for herein (the **"Closing"**) shall take place virtually or at such other place and in such other manner as the Parties may mutually agree upon in writing.

  3.2  <u>Closing Date</u>. The Closing shall be held on or before the date which is three (3) business days following entry of the Approval Order (as defined in Section 8, below) (the "**Closing Date**"); provided, however, if Seller's Closing Conditions and Buyer's Closing Conditions (as such terms are defined below) have not been satisfied or waived in writing by Seller or Buyer, respectively, on or prior to June 30, 2025, then this Agreement shall terminate, the Deposit shall be returned to Buyer, and neither Buyer nor Seller shall have any further duty, obligation, or liability under this Agreement to the other except those that specifically survive the termination of this Agreement. Alternatively, the Parties may mutually agree to an extended Closing Date. Until this Agreement is either terminated or the Parties have agreed upon an extended Closing Date, the Parties shall diligently continue to work to satisfy all conditions to Closing and the transaction contemplated herein shall close as soon as such conditions are satisfied or waived.

  3.3  <u>Seller's Deliveries to Buyer at Closing</u>. On the Closing Date, Seller shall make the following deliveries to Buyer:

   3.3.1  A Quitclaim Deed(s) duly executed and acknowledged by Seller, pursuant to which Seller quitclaims to Buyer Seller's right, title and interest in and to the Real Property (the **"Quitclaim"**).

   3.3.2  A statement under Section 1445 of the Internal Revenue Code with respect to the Real Property (the **"FIRPTA Statement"**).

  3.4  <u>Buyer's Deliveries to Seller at Closing</u>. On the Closing Date, Buyer shall (i) cause Escrow Holder to deliver the Deposit (together with all interest accrued thereon) to be delivered to Seller, and (ii) deliver to Seller the balance of the Purchase Price in Good Funds as required pursuant to Section 2.1 and cause to be paid and satisfied all such other amounts to be paid by Buyer at the Closing under the other terms and provisions of this Agreement.

  3.5  <u>Closing Costs; Transfer Taxes; Certain Prorations</u>. Any sales, purchase, transfer, stamp, documentary stamp, recording, use or similar taxes under the laws of the State of California or any subdivision of such state, which may be payable by reason of the sale of the Real Property and/or the recordation of the Quitclaim under this Agreement shall be borne and timely paid by Buyer. Real estate taxes and assessments and utilities shall be prorated between Seller and Buyer as of the Closing Date, with Seller bearing all amounts attributable to the period up to the Closing Date and Buyer bearing all amounts attributable to the period from and after the Closing Date. Buyer will pay all closing costs, including, without limitation, the cost of the Escrow Holder.

3.6     Possession. Right to possession of the Real Property shall transfer to Buyer on the Closing Date. Seller shall transfer and deliver to Buyer on the Closing Date such keys and other similar items as Buyer may reasonably require to obtain occupancy and control of the Real Property.

4.     Conditions Precedent to Closing.

4.1     Conditions to Seller's Obligations. Seller's obligation to make the deliveries required of Seller at the Closing Date and otherwise consummate the transaction contemplated herein shall be subject to the satisfaction or waiver by Seller of each of the following conditions (collectively, "**Seller's Closing Conditions**"):

4.1.1     All of the representations and warranties of Buyer contained herein shall continue to be true and correct at the Closing in all material respects.

4.1.2     Buyer shall have delivered, or shall be prepared to deliver to Seller at the Closing, all cash and other documents required of Buyer to be delivered at the Closing.

4.1.3     No action, suit or other proceedings shall be pending before any court, tribunal or governmental authority seeking or threatening to restrain or prohibit the consummation of the transactions contemplated by this Agreement, or seeking to obtain substantial damages in respect thereof, or involving a claim that consummation thereof would result in the violation of any law, decree or regulation of any governmental authority having appropriate jurisdiction.

4.1.4     Buyer shall have substantially performed or tendered performance of each and every material covenant on Buyer's part to be performed which, by its terms, is required to be performed at or before the Closing.

4.1.5     The Bankruptcy Court shall have entered the Approval Order, in substantially the form and content attached hereto and in accordance with Section 8 below, and the Approval Order shall not have been reversed or stayed as of the Closing Date.

4.2     Conditions to Buyer's Obligations. Buyer's obligation to make the deliveries required of Buyer at the Closing, and to otherwise close the transaction contemplated herein, shall be subject to the satisfaction or waiver by Buyer of each of the following conditions (collectively, "**Buyer's Closing Conditions**"):

4.2.1     Seller shall have substantially performed or tendered performance of each and every covenant on Seller's part to be performed which, by its terms, is capable of performance before the Closing.

4.2.2     All representations and warranties of Seller contained herein shall continue to be true and correct at the Closing in all material respects.

4.2.3     Seller shall have executed and be prepared to deliver to Buyer the Quitclaim and the FIRPTA Statement.

4.2.4    Seller shall have delivered, or shall be prepared to deliver to Buyer at the Closing, all other documents required of Seller to be delivered at the Closing.

4.2.5    No action, suit or other proceedings shall be pending before any court, tribunal or governmental authority seeking or threatening to restrain or prohibit the consummation of the transactions contemplated by this Agreement, or seeking to obtain substantial damages in respect thereof, or involving a claim that consummation thereof would result in the violation of any law, decree or regulation of any governmental authority having appropriate jurisdiction.

4.2.6    The Bankruptcy Court shall have entered the Approval Order in substantially the form and content attached hereto and in accordance with Section 8 below, and the Approval Order shall not have been reversed or stayed as of the Closing Date.

4.3    Termination. If any of the above conditions is neither satisfied nor waived on or before the date by which the condition is required to be satisfied, a Party who is not then in default hereunder may terminate this Agreement by delivering to the other written notice of termination. Any waiver of a condition shall be effective only if such waiver is stated in writing and signed by the waiving Party; *provided, however*, (i) that the consent of a Party to the Closing shall constitute a waiver by such Party of any conditions to Closing not satisfied as of the Closing Date, and (ii) Buyer shall conclusively be deemed to have waived the right to terminate this Agreement based upon the failure of the condition set forth in Section 4.2.6 above in the event that Buyer fails to deliver written notice of termination to Seller by reason of such failure by the date specified therein for the satisfaction thereof.

5.    Seller's Representations and Warranties. Seller hereby makes the following representations and warranties to Buyer:

5.1    Power of Seller. Upon obtaining the Approval Order, Seller will have the power and authority to execute, deliver and perform this Agreement and all writings relating hereto.

5.2    Authorization of Seller. This Agreement has been duly executed and delivered by Seller, and subject to the Seller's obtaining the Approval Order, the execution and delivery of this Agreement, the consummation of the transaction herein contemplated, and the performance of, fulfillment of and compliance with the terms and conditions hereof by Seller and assuming due and valid authorization, execution and delivery of this Agreement by Buyer, and upon execution and delivery by Seller, this Agreement will constitute a valid and binding obligation of Seller, enforceable against Seller in accordance with its terms, does not and will not: (i) violate any statute, law, rule or regulation, or any order, writ, injunction or decree of any court or governmental authority; or (ii) violate or conflict with or constitute a default under any agreement, instrument or writing of any nature to which Seller is a Party or by which Seller or its assets or properties may be bound.

5.3    The representations and warranties of Seller in this Section 5 shall survive for a period of ninety (90) days after the Closing Date.

6.    Buyer's Warranties and Representations. In addition to the representations and warranties contained elsewhere in this Agreement, Buyer hereby makes the following representations and warranties to Seller:

6.1    Power of Buyer. Buyer has all requisite power to execute, deliver and perform this Agreement and all writings relating hereto.

6.2    Authorization of Buyer. This Agreement has been duly executed and delivered by Buyer, and subject to the Seller's obtaining the Approval Order, the execution and delivery of this Agreement, the consummation of the transaction herein contemplated, and the performance of, fulfillment of and compliance with the terms and conditions hereof by Seller and assuming due and valid authorization, execution and delivery of this Agreement by Seller, and upon execution and delivery by Seller, this Agreement will constitute a valid and binding obligation of Buyer, enforceable against Buyer in accordance with its terms does not and will not: (i) violate any statute, law, rule or regulation, or any order, writ, injunction or decree of any court or governmental authority; or (ii) violate or conflict with or constitute a default under any agreement, instrument or writing of any nature to which Buyer is a Party or by which Buyer or their assets or properties may be bound.

6.3    The representations and warranties of Buyer in this Section 6 shall survive the Closing Date.

7.    AS-IS. BUYER SPECIFICALLY ACKNOWLEDGES AND AGREES THAT, EXCEPT ONLY AS EXPRESSLY PROVIDED IN THE DOCUMENTS DELIVERED BY SELLER IN CONNECTION WITH CLOSING PURSUANT TO SECTION 3.3 ABOVE, SELLER IS SELLING AND BUYER IS PURCHASING THE REAL PROPERTY ON AN "AS IS AND WITH ALL FAULTS" BASIS AND THAT BUYER IS NOT RELYING ON ANY REPRESENTATIONS OR WARRANTIES OF ANY KIND WHATSOEVER, EXPRESS OR IMPLIED, FROM SELLER OR THEIR REPRESENTATIVES AS TO ANY MATTERS CONCERNING THE REAL PROPERTY, INCLUDING, WITHOUT LIMITATION: (i) the quality, nature, adequacy and physical condition of the Real Property, including, but not limited to, the structural elements, foundation, roof, appurtenances, access, landscaping, parking facilities and the electrical, mechanical, HVAC, plumbing, sewage, and utility systems, facilities and appliances, (ii) the quality, nature, adequacy, and physical condition of soils, geology and any groundwater, (iii) the existence, quality, nature, adequacy and physical condition of utilities serving the Real Property, (iv) the development potential of the Real Property and the use, habitability, merchantability, or fitness, suitability, value or adequacy of the Real Property for any particular purpose, (v) the zoning or other legal status of the Real Property or any other public or private restrictions on use of the Real Property, (vi) the compliance of the Real Property with any applicable codes, laws, regulations, statutes, ordinances, covenants, conditions and restrictions of any governmental or quasi-governmental entity or of any other person or entity, including, without limitation, under CERCLA or RCRA, (vii) the presence of Hazardous Substances on, under or about the Real Property or the adjoining or neighboring property, (viii) the quality of any labor and materials used in any structures or other improvements comprising part of the Real Property, (ix) the condition of title to the Real Property, (x) the economics of the operation of the Real Property, and (xi) any matter or thing affecting or relating to the Real Property or this Agreement not expressly stated in this Section 7. Buyer hereby specifically acknowledges that Buyer has

carefully reviewed this Section and has had the opportunity to discuss its import with legal counsel and that the provisions of this Section are a material part of this Agreement. This Section 7 shall survive the Closing or termination of this Agreement and shall be incorporated into the Quitclaim.

8.      <u>Bankruptcy Court Approvals</u>. Promptly following the mutual execution and delivery of this Agreement by the Parties, Seller shall make a motion (the "**Sale Motion**") for an order from the Bankruptcy Court in the form and content attached as Exhibit "B" hereto and incorporated herein by this reference (the "**Approval Order**"). Following the filing of the Sale Motion, Seller shall use reasonable, good faith efforts to obtain the Approval Order and Buyer shall cooperate in all reasonable respects in such efforts. Both Buyer's and Seller's obligations to consummate the transactions contemplated in this Agreement which the Buyer and Seller may hereafter enter into shall be conditioned upon the Bankruptcy Court's entry of the Approval Order. If the Bankruptcy Court refuses to issue the Approval Order to approve Buyer as the purchaser of the Real Property at the hearing on the Sale Motion, then this transaction shall automatically terminate and the Seller and the Buyer shall be relieved of any further liability or obligation hereunder; provided, however, any such termination shall not affect the respective Parties' rights with respect to the disposition of the Deposit set forth in Section 2.1.2(a) above. Upon entry of the Approval Order in accordance with the provisions of this Section 8 (such entry date being referred to herein as the "**Sale Approval Date**"), the condition set forth in this Section 8 shall conclusively be deemed satisfied.

9.      <u>Breakup Fee; Liquidated Damages</u>. If (i) this Agreement is terminated pursuant to Section 4.2.6; (ii) the Bankruptcy Court approves a third party as the purchaser of the Real Property at the hearing on the Sale Motion (or any subsequent sale); and (iii) such alternative sale closes, then, subject to the approval of the Bankruptcy Court (which Seller shall seek through the Approval Order), Seller shall pay to Buyer (solely from the proceeds of such alternative sale), a fee of two percent (2%) of the Purchase Price (the "**Breakup Fee**"), by wire transfer of immediately available funds no later than five (5) business days after such sale closing. The Parties agree that the Breakup Fee is not a penalty, but is liquidated damages in a reasonable amount that will compensate Buyer in circumstances in which the Breakup Fee is payable, which amount would otherwise be impossible to calculate with precision, and that the Breakup Fee shall be Buyer's sole and exclusive remedy with respect to such termination. The provisions of this Section 9 shall survive the termination of this Agreement.

10.     <u>Miscellaneous</u>.

10.1    <u>Attorneys' Fees</u>. In the event that either Party hereto brings an action or other proceeding to enforce or interpret the terms and provisions of this Agreement, the prevailing Party in that action or proceeding shall be entitled to have and recover from the non-prevailing Party all such fees, costs and expenses (including, without limitation, all court costs and reasonable attorneys' fees) as the prevailing Party may suffer or incur in the pursuit or defense of such action or proceeding.

10.2    <u>Notices</u>. Unless otherwise provided herein, any notice, tender, or delivery to be given hereunder by any Party to the other may be effected by personal delivery in writing, by overnight delivery by a nationally recognized express courier service or by registered; or certified mail, postage prepaid, return receipt requested; or via confirmed facsimile or email

transmission, and shall be deemed communicated as of the date of receipt. Mailed notices shall be addressed as set forth below, but each Party may change its address by written notice in accordance with this Section 10.2.

|  |  |
|---|---|
| To Seller: | Kal Freight, Inc. |
|  | c/o Development Specialists, Inc. |
|  | 333 South Grand Avenue, Suite 4100 |
|  | Los Angeles, California 90071 |
|  | Attn: Bradley D. Sharp |
|  | Email: bsharp@dsiconsulting.com |
|  |  |
| With a copy to: | Pachulski Stang Ziehl & Jones LLP |
|  | Los Angeles, CA 90067 |
|  | 10100 Santa Monica Blvd., 13th Floor |
|  | Attn: Teddy Kapur, Esq. |
|  | Facsimile: (310) 201-0760 |
|  | Email: tkapur@pszjlaw.com |
|  |  |
| To Buyer: | Lovejot Aulakh |
|  | 3817 Vernazza Ct. |
|  | Manteca, CA 95337 |
|  | Telephone: (209) 597-2649 |
|  | Email: intermodalsolutions@yahoo.com |

10.3    Entire Agreement; No Third Party Beneficiaries. This Agreement and the Exhibits hereto constitute the entire agreement and supersede all prior agreements and understandings, both written and oral, among the Parties with respect to the subject matter hereof and thereof and supersede and cancel all prior agreements, negotiations, correspondence, undertakings, understandings and communications of the Parties, oral and written, with respect to the subject matter hereof, and are not intended to confer upon any person or entity other than the Parties hereto and thereto any rights or remedies hereunder. Any oral representations or modifications concerning this Agreement or any such other document shall be of no force and effect excepting a subsequent modification in writing, signed by the Party to be charged.

10.4    Modification. This Agreement may be modified, amended or supplemented only by a written instrument duly executed by all the Parties hereto.

10.5    Closing Date. All actions to be taken on the Closing pursuant to this Agreement shall be deemed to have occurred simultaneously, and no act, document or transaction shall be deemed to have been taken, delivered or effected until all such actions, documents and transactions have been taken, delivered or effected.

10.6    Severability. Should any term, provision or paragraph of this Agreement be determined to be illegal or void or of no force and effect, the balance of the Agreement shall survive.

10.7    Captions. All captions and headings contained in this Agreement are for convenience of reference only and shall not be construed to limit or extend the terms or conditions of this Agreement.

10.8    Further Assurances. Each Party hereto will execute, acknowledge and deliver any further assurance, documents and instruments reasonably requested by any other Party for the purpose of giving effect to the transactions contemplated herein or the intentions of the Parties with respect thereto; provided that nothing herein shall be deemed to require any Party to execute or deliver any such further assurance, document or instrument to the extent that the same could in any material way increase the burdens, obligations or liabilities otherwise imposed upon such Party by this Agreement.

10.9    Waiver. No waiver of any of the provisions of this Agreement shall be deemed, or shall constitute, a waiver of other provisions, whether or not similar, nor shall any waiver constitute a continuing waiver. No waiver shall be binding unless executed in writing by the Party making the waiver.

10.10    Brokerage Obligations. Except for Keen - Summit Capital Partners, LLC (the "**Seller Broker**"), which Seller has engaged in connection with this transaction, Seller represents and warrants that, such Party has incurred no liability to any real estate broker or other broker or agent with respect to the payment of any commission regarding the consummation of the transaction contemplated hereby. It is agreed that other than the fees or commissions payable to the Seller Broker (which shall be paid by the Seller to the Seller Broker pursuant to a separate agreement with Seller Broker), if any claims for commissions, fees or other compensation, including, without limitation, brokerage fees, finder's fees, or commissions are ever asserted against Seller in connection with this transaction, all such claims shall be handled and paid by the Party whose actions form the basis of such claim and such Party shall indemnify, defend (with counsel reasonably satisfactory to the Party entitled to indemnification), protect and save and hold the other harmless from and against any and all such claims or demands asserted by any person, firm or corporation in connection with the transaction contemplated hereby. The indemnity obligations set forth in this Section 10.10 shall survive Closing.

10.11    Payment of Fees and Expenses. Except as provided in Section 10.1 above, each Party shall be responsible for, and shall pay, all of its own fees and expenses, including those of its counsel, incurred in the negotiation, preparation and consummation of the Agreement and the transaction described herein.

10.12    Survival. Except as otherwise expressly set forth herein, the respective representations, warranties, covenants and agreements of Seller and Buyer herein shall not survive the Closing or termination of this Agreement. The respective representations, warranties, covenants and agreements of Seller and Buyer expressly set forth in this Agreement to survive the Closing or termination of this Agreement shall survive the Closing or termination of this Agreement for the periods, if any, as expressly stated herein and otherwise indefinitely.

10.13    Assignments. This Agreement shall not be assigned by any Party hereto without the prior written consent of the other Party hereto, which consent the Parties may grant or withhold in their sole and absolute discretion; provided, however, without in any way releasing or

relieving Buyer of any obligation or liability under this Agreement, Buyer shall have the right to assign this Agreement to an entity under common ownership of or control with Buyer upon written notice of such assignment delivered to Seller at least ten (10) days prior to the Closing Date. The provisions of this Section 10.13 shall survive Closing.

10.14    Binding Effect. Subject to the provisions of Section 10.13, above, this Agreement shall bind and inure to the benefit of the respective heirs, personal representatives, successors, and assigns of the Parties hereto. For the avoidance of doubt, the liquidating trust or similar entity created by that certain Second Amended and Restated Combined Disclosure and Plan of Liquidation of Kal Freight Inc. and Its Affiliated Debtors Under Chapter 11 of the Bankruptcy Code [Docket No. 777] (as the same may be subsequently amended or restated) is and will be a successor in interest to the Seller.

10.15    In addition, the provisions of Sections 2.2(a) and (b) shall inure to the benefit of and be enforceable by each of the Released Parties, whether or not such Released Parties are signatories to this Agreement.

10.16    Applicable Law. This Agreement shall be governed by and construed in accordance with the laws of Texas, except that the laws of the jurisdiction in which the Real Property is located shall govern and apply to the Quitclaim and its legal effect.

10.17    Good Faith. All Parties hereto agree to do all acts and execute all documents required to carry out the terms of this Agreement and to act in good faith with respect to the terms and conditions contained herein before and after Closing.

10.18    Construction. In the interpretation and construction of this Agreement, the Parties acknowledge that the terms hereof reflect extensive negotiations between the Parties and that this Agreement shall not be deemed, for the purpose of construction and interpretation, drafted by either Party hereto.

10.19    Counterparts. This Agreement may be signed in counterparts. The Parties further agree that this Agreement may be executed by the exchange of facsimile signature pages provided that by doing so the Parties agree to undertake to provide original signatures as soon thereafter as reasonable in the circumstances.

10.20    Time is of the Essence. Time is of the essence in this Agreement, and all of the terms, covenants and conditions hereof.

10.21    Bankruptcy Court Jurisdiction. THE PARTIES AGREE THAT IF ANY DISPUTE ARISES OUT OF OR IN CONNECTION WITH THIS AGREEMENT OR ANY OF THE DOCUMENTS EXECUTED HEREUNDER OR IN CONNECTION HEREWITH, THE BANKRUPTCY COURT SHALL HAVE EXCLUSIVE PERSONAL AND SUBJECT MATTER JURISDICTION AND SHALL BE THE EXCLUSIVE VENUE TO RESOLVE ANY AND ALL DISPUTES RELATING TO THE TRANSACTION CONTEMPLATED BY THIS AGREEMENT. SUCH COURT SHALL HAVE SOLE JURISDICTION OVER SUCH MATTERS AND THE PARTIES AFFECTED THEREBY AND BUYER AND SELLER EACH HEREBY CONSENT AND SUBMIT TO SUCH JURISDICTION.

10.22    Waiver of Consequential Damages; Jury Trial Waiver. THE PARTIES WAIVE THE RIGHT TO SEEK PUNITIVE, CONSEQUENTIAL, SPECIAL AND INDIRECT DAMAGES IN ANY ACTION, PROCEEDING OR COUNTERCLAIM BROUGHT WITH RESPECT TO ANY MATTER ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT AND/OR ANY DOCUMENT OR INSTRUMENT CONTEMPLATED HEREIN OR RELATED HERETO. IN ADDITION, TO THE EXTENT PERMITTED BY APPLICABLE LAW, EACH PARTY TO THIS AGREEMENT WAIVES ANY RIGHT TO TRIAL BY JURY IN ANY ACTION, MATTER OR PROCEEDING REGARDING THIS AGREEMENT OR ANY PROVISION HEREOF.

10.23    Interpretation and Rules of Construction. In this Agreement, except to the extent that the context otherwise requires:

10.23.1 when a reference is made in this Agreement to an Article, Section, Exhibit or Schedule, such reference is to an Article or Section of, or an Exhibit or a Schedule to, this Agreement unless otherwise indicated;

10.23.2 the headings and captions used in this Agreement are for reference purposes only and do not affect in any way the meaning or interpretation of this Agreement;

10.23.3 whenever the words "include," "includes" or "including" are used in this Agreement, they are deemed to be followed by the words "without limitation";

10.23.4 the words "hereof," "herein" and "hereunder" and words of similar import, when used in this Agreement, refer to this Agreement as a whole and not to any particular provision of this Agreement;

10.23.5 all terms defined in this Agreement have the defined meanings when used in any certificate or other document made or delivered pursuant hereto, unless otherwise defined therein;

10.23.6 the definitions contained in this Agreement are applicable to the singular as well as the plural forms of such terms;

10.23.7 any law defined or referred to herein or in any agreement or instrument that is referred to herein means such law or statute as from time to time amended, modified or supplemented, including by succession of comparable successor laws;

10.23.8 references to a person are also to its permitted successors and assigns; and

10.23.9 the use of "or" is not intended to be exclusive unless expressly indicated otherwise.

10.24    Seller's Post-Closing Breach. After the Closing, Buyer's sole remedy for a breach by Seller of an obligation that survives Closing shall be for Buyer to bring an action resulting from any such breach within ninety (90) days after the Closing Date. If for any reason Buyer does not bring an action within such time period, Buyer shall be deemed to have forever

waived any and all claims against Seller. Further, Seller's maximum liability for any breach of this Agreement after the Closing shall be limited to Ten Thousand and 00/100 Dollars ($10,000.00).

[REMAINDER OF PAGE INTENTIONALLY BLANK]

**In Witness Whereof**, Buyer and Seller have executed this Asset Purchase Agreement as of the day and year first above written.

**BUYER:**

*Lovejot Aulakh*

_____

**By:**
**Name: <u>Lovejot Aulakh</u>**
       **Title: <u>President</u>**


**SELLER:**

_____

**By:** _____
 **Name:** _____
      **Title:** _____

**In Witness Whereof**, Buyer and Seller have executed this Asset Purchase Agreement as of the day and year first above written.

**BUYER:**

_____

**By:** _____

  **Name:** _____

    **Title:** _____

**SELLER:**

Kal Freight, Inc.
_____

**By:** _____

**Name:** Bradley Sharp
_____

  **Title:** CRO
_____

**EXHIBIT A**

Legal Description

**For APN/Parcel ID(s): 163-260-46**

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF STOCKTON, COUNTY OF SAN JOAQUIN, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

PARCEL ONE:

PARCEL 2, AS SHOWN ON THAT CERTAIN PARCEL MAP, RECORDED IN BOOK 26 OF PARCEL MAPS, AT PAGE 85, FILED AUGUST 16, 2017, SAN JOAQUIN COUNTY RECORDS.

PARCEL TWO:

NON-EXCLUSIVE EASEMENTS, APPURTENANT TO PARCEL ONE HEREINABOVE, AS SET FORTH AND MORE PARTICULARLY DESCRIBED IN THAT CERTAIN EASEMENT AGREEMENT FOR RECIPROCAL ACCESS, UTILITIES AND MAINTENANCE, DATED JULY 14, 2017 AND RECORDED AUGUST 16, 2017 AS INSTRUMENT NO. 2017-093723, OF OFFICIAL RECORDS, SUBJECT TO THE TERMS, CONDITIONS, AND RESTRICTIONS SET FORTH IN SUCH AGREEMENT PERTAINING TO THE USE OR EXERCISE OF SUCH EASEMENTS.

PARCEL THREE:

NON-EXCLUSIVE EASEMENTS, APPURTENANT TO PARCEL ONE HEREINABOVE, AS SET FORTH AND MORE PARTICULARLY DESCRIBED IN THAT CERTAIN EASEMENT AGREEMENT FOR ACCESS AND MAINTENANCE, DATED JULY 14, 2017 AND RECORDED AUGUST 16, 2017 AS INSTRUMENT NO. 2017-093724, OF OFFICIAL RECORDS, SUBJECT TO THE TERMS, CONDITIONS, AND RESTRICTIONS SET FORTH IN SUCH AGREEMENT PERTAINING TO THE USE OR EXERCISE OF SUCH EASEMENTS.

PARCEL FOUR:

NON-EXCLUSIVE EASEMENTS, APPURTENANT TO PARCEL ONE HEREINABOVE, AS SET FORTH AND MORE PARTICULARLY DESCRIBED IN THAT CERTAIN EASEMENT AGREEMENT FOR ACCESS AND MAINTENANCE, DATED SEPTEMBER 21, 2017 AND RECORDED SEPTEMBER 22, 2017 AS INSTRUMENT NO. 2017-110134, OF OFFICIAL RECORDS, SUBJECT TO THE TERMS, CONDITIONS, AND RESTRICTIONS SET FORTH IN SUCH AGREEMENT PERTAINING TO THE USE OR EXERCISE OF SUCH EASEMENTS.

**<u>Exhibit 3</u>**

**(Form of Sale Notice)**

**IN THE UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |
|---|---|
| In re:<br><br>Kal Freight Inc., *et al.*,<br><br>                    Debtors.[1] | Chapter 11<br><br>Case No. 24-90614 (CML)<br><br>(Jointly Administered) |

**NOTICE OF AUCTION FOR THE SALE OF THE DEBTORS' REAL PROPERTY AND ANY RELATED PERSONAL PROPERTY AND IMPROVEMENTS THERETO FREE AND CLEAR OF ANY AND ALL CLAIMS, INTERESTS, AND ENCUMBRANCES**

        **PLEASE TAKE NOTICE** that the above-captioned debtors and debtors in possession (collectively, the "Debtors") are soliciting offers for a transaction or transactions, any of which may include the purchase of some or all of the Debtors' Property and assumption of certain liabilities of the Debtors, consistent with the bidding procedures (the "Bidding Procedures")[2] approved by the United States Bankruptcy Court for the Southern District of Texas (the "Court") by entry of an order on [●] [Docket No. [●]] (the "Bidding Procedures Order"). **All interested bidders should carefully read the Bidding Procedures and Bidding Procedures Order**. To the extent that there are any inconsistencies between this notice and the Bidding Procedures or the Bidding Procedures Order, the Bidding Procedures or the Bidding Procedures Order, as applicable, shall govern in all respects.

> **Copies of the Bidding Procedures Order or other documents related thereto, including the Stalking Horse Purchase Agreement or an exhibit identifying the Real Property, as applicable, are available upon request to Stretto by calling (855) 933-3437 or +1 (714) 788-8331 (international) or visiting the Debtors' restructuring website at https://cases.stretto.com/KalFreight**

        **PLEASE TAKE FURTHER NOTICE** that the Bid Deadline is **May 5, 2025**, at **5:00 p.m. (prevailing Central Time)**, and that any person or entity who wishes to participate in the Auction must comply with the participation requirements, bid requirements, and other requirements set forth in the Bidding Procedures.

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification numbers, are: KAL Freight Inc. (0249); KAL Aviation LLC (2600); KAL Partz Inc. (0139); KAL Trailers & Leasing Inc. (0840); and KVL Tires Inc. (0320). The location of the Debtors' service address in these Chapter 11 cases is 10156 Live Oak Ave., Fontana, CA 92335.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures Order or the Bidding Procedures, as applicable.

**PLEASE TAKE FURTHER NOTICE** that the Debtors intend to conduct the Auction, at which time they will consider proposals submitted to the Debtors and their professionals, by and pursuant to the Bidding Procedures as set forth in the Bidding Procedures Order, beginning on **May 9, 2025**, at **10:00 a.m. (prevailing Central Time)** via videoconference or such other form of remote communication arranged by counsel to the Debtors.

**PLEASE TAKE FURTHER NOTICE** that the Debtors expect to seek approval of any Sales at the Sale Hearing, which is presently scheduled to commence on **May 15, 2025**, at **1:00 p.m. (prevailing Central Time)**, or as soon thereafter as counsel may be heard, before the Honorable Christopher M. Lopez in the United States Courthouse, 515 Rusk Street, Houston, Texas 77002.

<strong>CONSEQUENCES OF FAILING TO TIMELY MAKE AN OBJECTION</strong>

**ANY PARTY OR ENTITY WHO FAILS TO TIMELY MAKE AN OBJECTION TO A SALE ON OR BEFORE THE SALE OBJECTION DEADLINE IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO SUCH SALE, INCLUDING WITH RESPECT TO THE TRANSFER OF THE SELLING DEBTORS' PROPERTY FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, EXCEPT AS SET FORTH IN THE STALKING HORSE PURCHASE AGREEMENT.**

## NO SUCCESSOR OR TRANSFEREE LIABILITY

The Sale Order is expected to provide, among other things, that the Successful Bidder from the Sale will have no responsibility for, and the Real Property will be sold free and clear of, any successor liability, including the following:

To the greatest extent allowable by applicable law, the Successful Bidder shall not be deemed, as a result of any action taken in connection with the Stalking Horse Purchase Agreement (in the case where the Stalking Horse Purchaser is the Successful Bidder) or a separate purchase agreement entered into with the Successful Bidder (if the Stalking Horse Purchaser is not the Successful Bidder), the consummation of the Sale, or the transfer or operation of the Real Property, to (a) be a legal successor, or otherwise be deemed a successor to the Debtors (other than with respect to any obligations as an assignee under the Assigned Contracts arising after the effective date); (b) have, de facto or otherwise, merged with or into the Debtors; or (c) be an alter ego or mere continuation or substantial continuation of the Debtors, in the case of each of (a), (b), and (c), including, without limitation, within the meaning of any foreign, federal, state or local revenue law, pension law, the Employee Retirement Income Security Act, the Consolidated Omnibus Budget Reconciliation Act, the WARN Act (29 U.S.C. §§ 2101 et seq.), the Fair Labor Standard Act, Title VII of the Civil Rights Act of 1964 (as amended), the Age Discrimination and Employment Act of 1967 (as amended), the Federal Rehabilitation Act of 1973 (as amended), the National Labor Relations Act (29 U.S.C. § 151, et seq.), environmental liabilities, debts, claims or obligations, any liabilities, debts or obligations of or required to be paid by the Debtors for any taxes of any kind for any period, labor, employment, or other law, rule or regulation (including without limitation filing requirements under any such laws, rules or regulations), or under any products liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine.

All rights of any party to set off any claims, debts, or obligations owed by or to the Successful Bidder in connection with the assets shall be extinguished on the effective date pursuant to the Sale Order. Other than as expressly set forth in the Stalking Horse Purchase Agreement (or another Successful Bidder's purchase agreement, as applicable) with respect to assumed liabilities, the Successful Bidder shall not have any responsibility for (a) any liability or other obligation of the Debtors or related to the assets or (b) any claims (as such term is defined by section 101(5) of the Bankruptcy Code) against the Debtors or any of their predecessors or affiliates. To the greatest extent allowed by applicable law, the Successful Bidder shall have no liability whatsoever with respect to the Debtors' (or their predecessors' or affiliates') respective businesses or operations or any of the Debtors' (or their predecessors' or affiliates') obligations based, in whole or part, directly or indirectly, on any theory of successor or vicarious liability of any kind or character, or based upon any theory of antitrust, environmental, successor or transferee liability, de facto merger or substantial continuity, labor and employment or products liability, whether known or unknown as of the effective date, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated, including liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Real Property prior to the effective date.

**PLEASE TAKE FURTHER NOTICE** that the Debtors reserve the right, after consultation with the Consultation Parties and in their reasonable business judgment and subject to the exercise of their fiduciary duties, to modify the Bidding Procedures and/or to terminate discussions with any Potential Bidders at any time, to the extent not materially inconsistent with the Bidding Procedures.

**PLEASE TAKE FURTHER NOTICE** that copies of the Bidding Procedures Motion, Bidding Procedures, and Bidding Procedures Order, as well as all related exhibits, are available free of charge upon request to Stretto by calling (855) 933-3437 or +1 (714) 788-8331 (international) or visiting the Debtors' restructuring website at https://cases.stretto.com/KalFreight, or for a fee via PACER by visiting http://www.txs.uscourts.gov.

Dated: March [], 2025

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/*

Teddy M. Kapur (SBT 24046186)
Maxim B. Litvak (SBT 24002482)
Benjamin L. Wallen (SBT 24102623)
700 Louisiana Street, Suite 4500
Houston, TX 77002
Telephone: (713) 691-9385
Facsimile: (713) 691-9407
tkapur@pszjlaw.com
sgolden@pszjlaw.com
bwallen@pszjlaw.com

-and-

Richard M. Pachulski (admitted *pro hac vice*)
Jeffrey W. Dulberg (admitted *pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
rpachulski@pszjlaw.com
jdulberg@pszjlaw.com

*Counsel to the Debtors and Debtors in Possession*