IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| MOUNTAIN EXPRESS OIL COMPANY, *et al.*, | Case No. 23-90147 |
| Debtors. | (Jointly Administered) |

**SUB-TENANT THE ALLIANCE TENANTS LP'S OBJECTION TO DEBTORS' EMERGENCY THIRD OMNIBUS MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTORS TO REJECT CERTAIN UNEXPIRED LEASES, SUBLEASES, FUEL SUPPLY AGREEMENTS AND RELATED CONTRACTS**

Karma Alliance, Inc. and Jubilee Alliance, Inc. ("Alliance Tenants") sublease numerous commercial properties with gas stations and convenience stores from Debtors. Debtors seek to reject leases relating to 8 of these properties in their *Emergency Third Omnibus Motion for Entry of an Order (I) Authorizing the Debtors to Reject Certain Unexpired Leases, Subleases, Fuel Supply Agreements and Related Contracts Pursuant to 11 U.S.C. § 365, and (II) Granting Related Relief*, [Dkt. 767] ("Third Omnibus Motion" or "Motion"). Because Debtors have failed to provide information required by the Federal Rules of Bankruptcy Procedure, the Alliance Tenants request that the Court deny the Third Omnibus Motion, or in the alternative that the Court disallow any rejection until Debtors cure the deficiencies in the Motion.

## BACKGROUND

The Alliance Tenants have operated numerous gas stations and convenience stores in Arkansas since 2019. Jubilee Alliance entered leases with Debtors in January 2019. Karma Alliance entered leases with Debtors in October 2019. All leases for terms of ten years, with options to extend the leases twice for five years each, for a total term of twenty years. The

Alliance Tenants thus expected to hold the properties for twenty years, and they paid a purchase price for the businesses on the basis of that expectation.

At the time that the Alliance Tenants entered these leases, Debtors were the owners of the properties. Shortly after the leases were signed, Debtors sold the properties to and began leasing the properties from AR Global. The leases with the Alliance Tenants were assigned to AR Global. The Alliance Tenants consented to these assignments, as they were informed of the transfer and were assured that their rights and obligations after assignment would not change.

The Alliance Tenants have, without fail, paid rent timely, and adhered to all contractual obligations under all their leases with Debtors. The Alliance Tenants have invested considerable time, energy, and money skill into the properties, using their skill and experience to keep the properties well-run and profitable.

On July 11, 2023, Debtors filed their Third Omnibus Motion requesting that the Court allow it to reject 16 leases with the Alliance Tenants as well as multiple other leases. Eight of the leases relate to possession of the properties, while eight are Settlement Agreements, under which Debtors reimburse tenants for all credit card transaction while offsetting amounts due for fuel supplied by Debtors. *See* Exhibit A (listing leases with Alliance Tenants subject to rejection); Exhibit B (listing all leases subject to rejection).

The Motion suffers from the same defects as Debtors' *Emergency First Omnibus Motion for Entry of an Order Authorizing the Debtors to Reject Certain Unexpired Leases, Subleases and Related Contracts Pursuant to 11 U.S.C. § 365* ("First Omnibus Motion") [Dkt. 295], filed nearly three months earlier. In their First Omnibus Motion, Debtors sought to reject leases related to 28 properties belonging to the "Necessity Landlords," who were parties to 27 of the 28 leases. The Necessity Landlords objected to that Motion, arguing that 1) there was no true

emergency, 2) Debtors had failed to provide any exit plan for the properties, which was dangerous in such a highly regulated industry; 3) that cooperation among Landlords, the Committee, and sub-tenants would lead to a better way forward; and 4) that Debtors had failed to provide any information on the economic and financial situation of each of the Leases. *See* Necessity Landlords' Objection [Dkt. 310] at 7-12. The Court did not rule on the Objection, as the Necessity Landlords and the Debtors reached a Stipulated Agreement that rendered any objections moot. Dkt. 672.

Because the Third Omnibus Motion suffers from the same defects as the First, the Alliance Tenants make many of the same observations and same arguments as the Necessity Landlords. Unlike the Necessity Landlords, however, the Alliance Tenants are not in a position to negotiate a Stipulated Agreement with Debtors. They thus ask the Court to consider, and in some cases re-consider, the objections below and asks that the interests of the Alliance Tenants, and those in similar positions, be considered in fashioning any relief or order.

## OBJECTION

The Alliance Tenants object to the Third Omnibus Motion on five grounds:

> 1) that the Motion does not meet the requirements;
>
> 2) that Debtors have premised their Motion on promises it has not fulfilled;
>
> 3) that Debtors have not shown that rejection of any leases would benefit their estate;
>
> 4) that the Court need not consider the Motion on an emergency basis; and
>
> 5) that multiple parties, including the Alliance Tenants, would be prejudiced by the relief requested in the Motion.

Each of these bases for objection is discussed in detail below.

1. **Debtors' Third Omnibus Motion Does Not Meet the Requirements of Bankruptcy Rule 6006(f).**

Debtors have provided the Alliance Tenants with no information related to the rejection of Debtors' leases with the Alliance Tenants. Federal Rule of Bankruptcy Procedure 6006, which governs "Omnibus Motions," provides:

> (f) A motion to reject . . . multiple executory contracts or unexpired leases that are not between the same parties shall:
> [. . .]
> (3) specify the terms, including the curing of defaults, for each requested assumption or assignment; [and]
> (4) specify the terms, including the identity of each assignee and the adequate assurance of future performance by each assignee, for each requested assigment . . . .

Fed. R. Bankr. P. 6006(f). Debtors have not met the requirements of this Rule.

Debtors have stated only that "AR Global consents to the relief sought in the Motion as applicable to the leases between it and the Debtors and the parties expect to reach an agreed form of order with respect to such leases." Motion ¶ 2. The Alliance Tenants understand that AR Global, as the owner of the properties subleased by the Alliance Tenants, is a potential assignee of those leases. However, the Court should not allow Debtors to proceed on nothing more than a vague reference to a potential assignee.

If AR Global is in fact the assignee, Debtors still owe the Alliance Tenants a specification of "the terms . . . for each requested assumption or assignment" and "adequate assurance of future performance by each assignee." Fed. R. Bankr. P. 6006(f)(3)-(4). The Motion contains no terms and such assurances, and Debtors have been provided no information beyond what they have gleaned from the Motion itself.

The Alliance Tenants are left in a position of deep uncertainty. They do not know how to continue performing its own obligations under the leases, which require careful planning.

Significantly, the Alliance Tenants operate under Settlement Agreements with Debtors which require that end month, Debtors pay the Alliance Tenants for any amounts paid to the Alliance Tenants' stores via credit card, while offsetting the amount of fuel purchased from the Debtors for that time period.  Debtors' Motion leaves unclear whether Debtors or any assignee will honor even this basic agreement.  Debtors should not be allowed to simply walk away without reimbursing the Alliance Tenants for a month of credit card sales.

The Court should therefore deny the Motion or order that Debtors fulfill their obligations under Rule 6006(f)(4).

### 2. Debtors Have Not Fulfilled the Promises Made in Their Own Motion.

Debtors have made had no communications Fwith the Alliance Tenants.  Yet they stated in their Motion that they would communicate with all the "Dealers" who operated properties subject to the potentially rejected leases:

> The Debtors will work with each of the Dealers, in advance of the targeted Rejection Date of July 31, 2023, to gradually reduce deliveries under the applicable Fuel Supply Agreements to minimize any unsold fuel retained in the storage tanks at each location as of such date.  The Debtors will also work with each Dealer to provide appropriate contact information at the AR Global to assist with the turnover of the premises.

Motion ¶ 18.  Debtors have done none of this.  The Alliance Tenants have received no information or communication whatsoever from Debtors.  Debtors in fact have leases with Debtors which Debtors do not—at least for the time being—seek to reject, and thus have ample opportunity to communicate with the Alliance Tenants about the potentially rejected leases.  They have not taken any of these opportunities.

As pointed out by the Necessity Landlords in their objection to the First Omnibus Motion, the lack of any plan is not only frustrating for the Alliance Tenants and other lessees but

also dangerous because of the need for regular oversight of the Underground Storage Tanks, or USTs:

> Each of the USTs requires specialized and regular service, maintenance, and oversight. . . . These USTs pose significant environmental hazards if not properly maintained and serviced. The Debtors cannot simply walk out on their regulatory and environmental responsibilities without communicating any kind of plan or process for doing so. That is, however, exactly what the Debtors intend to do . . . .

Necessity Landlord Objection, ¶ 17.

Debtors have that requested emergency relief based on their promise to work with Dealers, including the Alliance Tenants, on turning over premises. They have not fulfilled their promise, and therefore the Court should hold that they are not entitled to the relief they seek. The Court should deny Debtors' Third Omnibus Motion, or order that Debtors develop a plan allowing the Alliance Tenants and other Dealers to continue to provide the "regular service, maintenance, and oversight" of the properties that they have been providing.

### 3. Debtors Have Not Shown That Rejection of Its Leases With The Alliance Tenants Would Benefit the Debtors' Estate.

Debtors assert that have made their decision to reject the leases "in the exercise of their business judgment." Mot. ¶ 19. Yet Debtors have provided no information or evidence to this Court that would substantiate such assertion.

In applying the business judgment rule to a motion to reject unexpired leases, "the Court must determine whether rejection will benefit the Debtors' estates." *In re Old Carco LLC*, 406 B.R. 180, 192–93 (Bankr. S.D.N.Y. 2009). With no information or evidence relating to the leases, this Court cannot make any determination whatsoever. That is why a bankruptcy trustee, "in seeking to reject an executory contract, *must support the motion with evidence*—usually in the form of a declaration or affidavit—demonstrating that rejection of the contract falls within

the proper exercise of the Trustee's business judgment." *In re MF Glob. Holdings Ltd.*, 466 B.R. 239, 242 (Bankr. S.D.N.Y. 2012) (emphasis added).

Debtors have not supported their motion with any evidence whatsoever. Moreover, they have not even provided any reasoned basis for their judgment about the leases. They have provided no information relating to individual leases, and about the entire set of leases the Debtors only assert that "Debtors . . . believe that the . . . 43 sites governed by this Motion are . . . unprofitable or barely profitable. . . ." Mot. ¶ 17. They have provided no support for this "belief." They have also ignored the very significant distinction between "unprofitable" leases, the rejection of which *would* help benefit the Debtors' estates, and "barely profitable" leases, the rejection of which would *not* benefit the Debtors' estates.

Moreover, it is far from clear that, due to the risks of abandonment, rejection of leases in the absence of meaningful plans will benefit the Debtors. As the Necessity Landlords pointed out:

> It bears mentioning as well that, because of the Debtors' indemnity obligations under the Leases, any problems arising from abandonment of the USTs could result in a substantial liability for the Debtors and their estates . . . .

Necessity Landlords' Objection ¶ 17.

In light of the lack of evidentiary support for Debtors' assertion that it has exercised its business judgment, the Court should deny the Motion or Order that Debtors provide the Court with information relating to the profitability of individual lease agreements.

**4.     There is No Emergency.**

Debtors' have filed their Third Omnibus Motion on an Emergency Basis. There is, however, no emergency. As far as the Alliance Tenants are aware, the assertions of the Necessity Landlords in their objection still hold true:

> There is no emergency here. The Debtors defaulted on the Leases in January 2023 at the latest, prompting the Necessity Landlords to send multiple demand letters and finally bring state court actions against the Debtors to enforce the terms of the Leases.  During the entire timespan, the Debtors' subtenants have occupied the properties and presumably continued to pay the Debtors rent, while the Debtors remitted nothing to the Necessity Landlords.  Operations continue and presumably the Debtors and operators have been in compliance with all regulatory and leasing requirements.  The Debtors have not notified the Necessity Landlords of any issues. . . . Nothing new or immediate has been occasioned by the Debtors' bankruptcy filing.  The Necessity Landlords are not aware of any new or immediate issues.

Necessity Landlords' Objection ¶ 20.  As far as the Alliance Tenants' properties are concerned, the Alliance Tenants have "occupied the properties and . . . continue to pay the Debtors rent." *Id.* And now, as was also the case a few months ago, Debtors have cited no "new or immediate issues" requiring emergency consideration of their Motion.

In fact, Debtors' claim of emergency for the Third Omnibus Motion has even less support.  By Debtors' own admission, the leases in question are not the cause of its lack of profitability, and Debtors only argue that they "believe that the remaining 43 sites governed by this Motion are . . . unprofitable or barely profitable. . . ." Mot. ¶ 17.  Performance under a profitable lease can hardly be called an emergency.

The Debtors have provided only a thin justification for an emergency filing, and they've provided no information that would enable the Court to fashion an appropriate remedy for any emergency.  The Court can and should refuse to make any determination on the Motion on an emergency timeline, and it should order the Debtors to provide information that would enable the Court and all interested parties to fashion an appropriate remedy.

### 5. Livelihoods of Numerous Parties-in-Interest are at Stake.

Debtors are simply wrong when they state that "[e]mergency relief is appropriate under the circumstances because entry of the Order will not prejudice any party-in-interest to the Chapter 11 cases." Mot. ¶ 29.  Perhaps Debtors' mistaken belief that rejection of the leases will

prejudice any individuals has prevented it from formulating plans for the properties subject to the leases, from working with the Alliance Tenants and other subtenants to ensure orderly transitions for the properties, and from following the Rules of Bankruptcy Procedure referred to above.

Entry of an Order in the form requested by Debtors could in fact upset the livelihoods of numerous individuals. The Alliance Tenants have poured years of time, effort, and capital into the properties that are subject to the potentially rejected leases. Numerous individuals who work with and for the Alliance Tenants would be affected by the termination of their business, or by the disorganized, poorly planned transition that would likely result if the Court approves the Third Omnibus Motion as filed.

The Alliance Tenants are aware that the negative consequences for particular lessees cannot, by themselves, be decisive for the Court in its determination whether to grant the Third Omnibus Motion. The Court can, however, can easily prevent or at least mitigate many negative consequences by requiring that Debtors work with the Alliance Tenants and other parties-in-interest to develop appropriate transition plans.

## RESERVATION OF RIGHTS

The Alliance Tenants reserve all rights to supplement and to amend their objection to the Third Omnibus Motion prior to or at any hearing held on the Motion, in the event that the Alliance Tenants' objections raised herein are not resolved or to further address the Third Omnibus Motion and other related motions and issues.

## CONCLUSION AND REQUEST FOR RELIEF

For the foregoing reasons, the Alliance Tenants ask that this Court deny Debtors' Third Omnibus Motion in its entirety, or at least as it relates to lease agreements between Debtors and the Alliance Tenants. In the alternative, the Alliance Tenants ask that this Court delay ruling on

the Debtors' Third Omnibus Motion until Debtors have 1) identified assignees of rejected leases and provided adequate assurance of future performance by each assignee, pursuant to Federal Rule of Bankruptcy Procedure 6006(f); 2) communicate with and work with the Alliance Tenants and other subtenants to assure a proper turnover of all premises; and 3) provide evidence that rejection of the Alliance Tenants' leases would benefit the Debtors' estate.

Submitted to the Court this 28th day of July, 2023.

**KREVOLIN & HORST, LLC**

*/s/ Ricardo A. Gib*
Ricardo A. Gilb
Texas Bar No. 24120849
Jessica G. Cino*
*application pro hac vice pending

1201 W. Peachtree Street, NW
One Atlantic Center, Suite 3250
Atlanta, Georgia 30309
(404) 888-9700
(404) 888-9577 (facsimile)
gilb@khlawfirm.com
*Attorney for Jubilee Alliance, Inc.
and for Karma Alliance, Inc.*

## **CERTIFICATE OF SERVICE**

I certify that on July 28, 2023, I caused a copy of the foregoing document to be served via the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District.

*/s/ Ricardo A. Gilb*
Ricardo A. Gilb

KH778798.DOCX 3