IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 23-90147-11 |
| | § | JOINTLY ADMINISTERED |
| MOUNTAIN EXPRESS OIL COMPANY, | § | HOUSTON, TEXAS |
| ET AL, | § | MONDAY, |
| | § | JULY 10, 2023 |
| DEBTORS. | § | 1:00 P.M. TO 1:13 P.M. |

**<u>MOTION HEARING</u>**

BEFORE THE HONORABLE DAVID R. JONES
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:                    SEE NEXT PAGE

**(Recorded via CourtSpeak.)**

<u>TRANSCRIPTION SERVICE BY</u>:

JUDICIAL TRANSCRIBERS OF TEXAS, LLC
935 Eldridge Road, #144
Sugar Land, TX 77478
281-277-5325
www.judicialtranscribers.com

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

APPEARANCES:

FOR THE DEBTOR:                    LUGENBUHL WHEATON
                                   Benjamin W. Kadden, Esq.
                                   601 Poydras St., Ste. 2775
                                   New Orleans, LA  70130
                                   504-568-1990

                                   PACHULSKI STANG ZIEHL
                                   & JONES, LLP
                                   Benjamin L. Wallen, Esq.
                                   440 Louisiana St., Ste. 900
                                   Houston, TX  77002
                                   713-691-9385

FOR 5401 EAST LLOYD, LLC:          TRAN SINGH, LLP
                                   Susan Tran, Esq.
                                   2502 La Branch Street
                                   Houston, TX  77004
                                   832-975-7300

FOR THE OFFICIAL COMMITTEE
OF UNSECURED CREDITORS:            MCDERMOTT WILL & EMERY, LLP
                                   Charles R. Gibbs, Esq.
                                   2501 North Harwood St.
                                   Suite 1900
                                   Dallas, TX  75201
                                   214-295-8063

1          **HOUSTON, TEXAS; MONDAY, JULY 10, 2023; 1:00 P.M.**

2          THE COURT:  All right.  And good afternoon,

3    everyone.  This is Judge Jones.  The time is 1:00 o'clock

4    Central, today is July the 10th, 2023.  This is the docket for

5    Houston, Texas.

6          On the 1:00 o'clock docket, we have the jointly

7    administered cases under Case Number 23-90147, Mountain

8    Express Oil Company.

9          Folks, please don't forget to record your electronic

10   appearance.  It's a quick trip to my website.  You can do that

11   at any time prior to the conclusion of this afternoon's

12   hearing, but it is the way that we note your official

13   appearance this afternoon.

14         If you did choose to speak, if you're in the

15   courtroom, please come to the lectern, so that you can both be

16   seen and be heard.

17         If you are on -- if you are participating by

18   GoToMeeting -- ah, I'll try to leave everything open until we

19   hear some background noise.  But if I do that, then you'll

20   need to hit five star in order to be heard.

21         We are recording this afternoon using CourtSpeak.

22   We'll have the audio up on the docket shortly after the

23   conclusion of the hearing.

24         All right.  Who is taking the lead this afternoon

25   for the Debtors?  Mr. Kadden.

1      MR. KADDEN:  Good afternoon, Your Honor.  Benjamin

2  Kadden, here with me today is Ben Wallen, on behalf of

3  Mountain Express.

4      THE COURT:  All right.  Do you want to just take a

5  couple of minutes and tell me where we are?

6      MR. KADDEN:  Yes, Your Honor.

7      So, over the course of the last two weeks, with the

8  help of the New York dealer's new counsel, we have

9  successfully completed all of the compliance inspections.

10      THE COURT:  Okay.

11      MR. KADDEN:  And then, with the help of M&Y Pump

12  last Thursday and Friday, each of the six stores were put back

13  onto the Phillips 66 credit card system, the black boxes were

14  restored, so that we're now in a position to both sell fuel

15  and track fuel sales and collect inventory.

16      There have been deliveries made, I think, to four of

17  the six over the weekend, and all six are back regularly

18  scheduled deliveries today.  So I guess, Your Honor, from the

19  standpoint of getting back into compliance, that's the good

20  news part.

21      The bad news part is that we still believe that

22  there is in excess of $500,000 of fuel that was in the tanks

23  at the time that the credit card systems were switched and

24  that was fuel that was an asset of the estate because these

25  are stores that sell on a commission basis.

1         And at Your Honor's suggestion, we have worked to

2    segregate these costs associated with this issue and we're

3    looking at probably a million dollars between the fuel

4    inventory that was taken, lost profits for all the time, and

5    considerable time and effort and an unnecessary amount of

6    hassle.

7         Now, fortunately, their new counsel has helped to

8    get them back on a good path.  But what I would like to come

9    out of this hearing with is a hearing for us to prove up our

10   entitlement to compensatory sanctions sometime in mid-to-late

11   August.

12        The Debtor is running a sales process and I want to

13   be mindful of allowing Mr. Healy and the other professionals

14   the opportunity to focus on that sales process and not be

15   focused on dealing with questions from me to prepare for an

16   evidentiary hearing.

17        THE COURT:  All right.  So I just want to make sure

18   I understand.  So you think, as we sit here today, the

19   continuing wrongful acts have stopped and that now we're

20   dealing with simply trying to figure out the harm caused by

21   the acts in the first place.  Is that where we are?

22        MR. KADDEN:  Yes, Your Honor.

23        THE COURT:  All right.  Ms. Tran.

24        MS. TRAN:  Your Honor, I -- we would not oppose --

25        THE COURT:  Can I ask you to come up?  Just because

1    everyone won't be able to hear you or see you.

2              MS. TRAN:  Sorry, Your Honor.

3              Your Honor, we would not be opposed to a setting in

4    August.

5              And my clients are -- I believe we're in compliance.

6    We've been working with the Debtors over the last two weeks to

7    make sure that we're -- everything is in order.

8              THE COURT:  Okay.  Have we been able to get our

9    hands around why it happened in the first place?

10             MS. TRAN:  Your Honor, there seems to be a

11   disconnect.  From my discussions with my clients, you know,

12   they're very apologetic for the disconnection.  And you know,

13   they were trying to do what they thought was best and, you

14   know, they're very sorry about that.

15             But they did dis -- they did initially disconnect

16   the credit card machines because there was inconsistent fuel

17   deliveries.  And Mr. Kadden says that they received $500,000

18   of fuel delivery, but for us, that never happened.  They

19   actually had to purchase third-party fuel, which is why they

20   disconnected the credit card machines in the first place.  So

21   that's something that I think we still need to figure out what

22   happened there.

23             We do have the purchases for the third-party fuel

24   and the receipts showing that there was no fuel that was

25   delivered.  So I think an evidentiary hearing might --

1          THE COURT:  Okay.  I just want to make sure I

2     understand.

3          So the Debtors think that a significant amount of

4     fuel was delivered and you believe that it just wasn't.

5          MS. TRAN:  That's right, Your Honor.

6          THE COURT:  I mean, it's been my experience in

7     dealing with these things there are tickets signed when

8     anything goes onsite.

9          Am I wrong about that, Mr. Kadden?

10         MR. KADDEN:  Your Honor, yes, that would be the

11    focus of the evidentiary hearing, would be both delivery

12    tickets, but in addition to the credit card system, they also

13    have what's been referred to as "black boxes" that track

14    what's in the ground at any given time.

15         THE COURT:  Right.

16         MR. KADDEN:  And so the numbers that I've been

17    provided are based on what was being tracked at the time that

18    the credit card system was going offline and what was

19    delivered.  And you know, we will be prepared to put on

20    evidence --

21         THE COURT:  I got it.

22         MR. KADDEN:  -- as to what was delivered.

23         THE COURT:  I'm just trying to figure out how much

24    time you need for discovery, is what I'm really trying to work

25    my way through.

1        Committee have views on this, Mr. Gibbs?

2        MR. GIBBS:  Good afternoon, Your Honor.  Chuck Gibbs

3   with McDermott, Will & Emery, counsel for the Committee.

4        We're supportive of the suggested resolution of

5   leaving this to an evidentiary hearing as to the extent of the

6   damages.  Obviously, the Committee is vitally interested in

7   recovering assets of the estate.  We're happy to hear of the

8   progress made and the cessation of wrongful behavior.  But I

9   can't really weigh in on how long it's going to take the

10   litigants to get ready, but we'll go with whatever the Court

11   says.

12        THE COURT:  All right.  I got it.

13        MR. GIBBS:  Thank you.

14        THE COURT:  So, Ms. Tran, let me -- I want to -- I

15   want your clients to listen to me.

16        What you all did was wrong.  And if I didn't trust

17   your lawyer, there would be marshals in here today, and I

18   don't wish that on anybody.  That's not the country we live

19   in, that's not the way people ought to treat one another.  But

20   don't put me in that position.  If you want something, you

21   come ask me.  You don't self-help.  Okay?

22        All right.  So, if everybody would look at their

23   calendars.  Today is July the 10th.  And I'll find a day, but

24   I just don't think 30 days is enough for you to work your way

25   back through all these things and figure out -- you know,

1    figure out what you're doing.  You're going to have to have --

2    my guess is you're going to end up having competing experts,

3    to some degree.  But if you want a hearing, you know, middle

4    to end of August, I'll find a time for you.

5            I just -- what I don't want to do -- because these

6    folks are all going to come back -- I don't want to give you a

7    date and then you all show up and say we're not ready.  That's

8    -- I just want to make sure we only do this once.

9            MR. KADDEN:  Well, Your Honor, the reason for, I

10   guess what I'll call an "expedited schedule" is that this

11   Debtor is being crushed by dealers not taking their financial

12   and performance obligations seriously.  We had $1.6 million in

13   rent bounce in July.  This is creating significant liquidity

14   issues.

15           And to the extent that my clients are correct and

16   they've absconded with $500,000 worth of fuel, that's

17   something that we need to take immediate action on because of

18   liquidity concerns.  And fortunately/unfortunately for me --

19           THE COURT:  Let me stop you --

20           MR. KADDEN:  I'm sorry.

21           THE COURT:  -- right there.  No, no, no.

22           You know, the liquidity issue caused by other

23   people, I could care less about.  That's another hearing,

24   another day.

25           If these folks took $500,000 worth of fuel -- and I

1    don't know whether they did or not -- $500,000 is the least of

2    their problems.  And that's why I want to make sure that

3    everybody has got ample opportunity to take whatever discovery

4    is needed to -- I want to make sure that due process is

5    served.

6              And again, if you all tell me that you can be ready

7    in August, fine by me.

8              But what I may end up doing to these folks if they

9    don't reach a resolution with the Debtors and if they did

10   what's alleged to have been done, I'm not going to shortcut

11   the process.

12             So tell me, Ms. Tran --  I mean, this is, in large

13   part, your clients.  I want to make sure that you have enough

14   time to get ready and that you have -- I want to see your best

15   case because, again, you know me.  If they did what's alleged,

16   I'm going to be incredibly harsh.  Now, if they didn't do

17   what's alleged to have been done, then I'm going to go equally

18   the other way.  So I just want to make sure that you have

19   enough time to get to the truth.

20             MS. TRAN:  Yes, Your Honor.  I think we probably

21   would need more time than just the end of August.  We do have

22   -- we do have a lot of the receipts that we can --

23             THE COURT:  Okay.

24             MS. TRAN:  -- share with Mr. Kadden and that's --

25             THE COURT:  Why don't we --

11

1          MS. TRAN:  -- that's fine --

2          THE COURT:  -- do this?

3          MS. TRAN:  -- but --

4          THE COURT:  Let's see.  I have all day on September

5     the 6th, if that would work.

6          MR. KADDEN:  That's fine, Your Honor.

7          THE COURT:  Mr. Kadden?

8          And Mr. Gibbs, does that work for you?

9          MR. GIBBS:  Yes, Your Honor.

10         THE COURT:  Ms. Tran?

11         MS. TRAN:  I will actually be out of town, Your

12    Honor.

13         THE COURT:  Okay.

14         MS. TRAN:  Can we do the following week, if

15    possible?

16         THE COURT:  How about the 12th?

17       (Participants confer)

18         MR. KADDEN:  That would work for me, Your Honor.

19         THE COURT:  All right.  Then we'll reserve the whole

20    day on September the 12th.  Let's start -- you folks will come

21    in the night before, is that -- okay.  So let's just start at

22    9:00 o'clock, so hopefully we get it done in a day.

23         I would like for you to exchange Witness and Exhibit

24    Lists by close of business on the 7th.

25         Can you do that if you're going to be out of town

12

1      that week, Ms. Tran?

2             MS. TRAN:  You know, I take my computer everywhere I

3      go.

4             THE COURT:  Okay.  All right.  So Witness and

5      Exhibit Lists exchanged on the 7th.

6             Is the Committee going to put on any additional

7      witnesses or just tag along with the presentation?

8             MR. GIBBS:  We'll tag along, Your Honor.  I don't --

9      we don't anticipate putting on any witnesses.

10            THE COURT:  All right.

11            MR. GIBBS:  But we haven't really coordinated that

12     fully with the Debtors yet.

13            THE COURT:  All right.  Thank you.

14            And I know all three of you.  Do I need -- do I need

15     any scheduling orders or can you all just work backwards and

16     work together?

17            MR. KADDEN:  No, Your Honor.  I think we will play

18     nicely.

19            THE COURT:  All right.  And again, folks, you listen

20     to your lawyer, number one.  But you -- if you did what

21     Mr. Kadden alleged has been done, you don't want to bring this

22     back to me.  If you didn't do it, then give every scrap of

23     paper that supports your position to Ms. Tran and let her

24     fight for you.  And then come back and show me what you did.

25            Okay?  All right.  Any questions?

1     MS. TRAN:  No.

2     THE COURT:  All right.  Then I'll note the

3  appearance and compliance with my order.  We've set an

4  evidentiary hearing all day on the 12th.

5     Is there anything else that we need to address this

6  afternoon?

7     MR. KADDEN:  No, Your Honor.

8     THE COURT:  All right.  And if you've got other

9  issues out there, then I'm here.  But these folks, it's their

10 day, their issues.  They're not going to be affected by what

11 anyone else did or didn't do.

12    MR. KADDEN:  Understood.

13    THE COURT:  Okay?

14    MR. KADDEN:  I have no doubt we will be in front of

15 you soon with a couple of different issues, but that will come

16 for that day.

17    THE COURT:  All right.  Thank you.

18    Then we'll be adjourned until 2:00 o'clock.

19    MR. KADDEN:  All right.  Thank you, Your Honor.

20    THE COURT OFFICER:  All rise.

21    (Proceedings concluded at 1:13 p.m.)

22

23

24

25                    *  *  *  *  *

14

1        I certify that the foregoing is a correct transcript

2    to the best of my ability produced from the electronic sound

3    recording of the proceedings in the above-entitled matter.

4    /S./  MARY D. HENRY

5    CERTIFIED BY THE AMERICAN ASSOCIATION OF

6    ELECTRONIC REPORTERS AND TRANSCRIBERS, CET**337

7    JUDICIAL TRANSCRIBERS OF TEXAS, LLC

8    JTT TRANSCRIPT #67496

9    DATE FILED:  JULY 31, 2023