**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| In re:<br><br>MOUNTAIN EXPRESS OIL COMPANY, et al.,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 23-90147 (DRJ)<br><br>(Jointly Administered)<br><br>**Related Docket Nos. 536, 701** |
|---|---|

**NOTICE OF SUCCESSFUL BID FOR THE SALE OF SUBSTANTIALLY ALL OF DEBTORS' ASSETS**

**PLEASE TAKE NOTICE** that on May 14, 2023, the Debtors filed their *Debtors' Emergency Motion for Entry of Orders (A)(I) Authorizing Asset Purchase Agreement for Sale of Substantially All of Debtors Assets, (II) Approving Bid Procedures for Sale of Debtors Assets, (III) Approving Bid Protections, (IV) Scheduling Certain Dates with Respect Thereto, (V) Approving the Form and Manner of Notice Thereof, and (VI) Approving Contract Assumption and Assignment Procedures; (B) Approving (I) Sale of Certain Assets Free and Clear of All Liens, Claims, Encumbrances, and Other Interests, and (II) Assumption and Assignment of Certain Contracts and Leases; and (C) Granting Related Relief* [Docket No. 536] (the "Bid Procedures & Sale Motion").

**PLEASE TAKE NOTICE** that on June 22, 2023, the Court entered the *Order (I) Approving Bid Procedures for Sale of the Debtors' Assets, (II) Approving Bid Protections, (III) Scheduling Certain Dates with Respect Thereto, (IV) Approving the Form and Manner of Notice Thereof, and (V) Approving Contract Assumption and Assignment Procedures* [Docket No. 701] (the "Bid Procedures Order"), approving the Bid Procedures[2] and establishing, among other things, procedures to solicit Qualifying Bids, Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases, and scheduling the Auction and Sale Hearing.

**PLEASE TAKE FURTHER NOTICE** that following the conclusion of the Auction, which commenced on August 2, 2023, and concluded on August 4, 2023, pursuant to the terms of the Bid Procedures, the Debtors hereby file this *Notice of Successful Bid for the Sale of Substantially All of Debtors' Assets* (the "Successful Bid") to set forth the identity of the Successful Bidder (defined below) and summarize the terms of the Successful Bid. The Successful Bid is set forth in the Letter of Intent by GPM Investments, LLC, *et al.* (the "Successful Bidder"), attached hereto as Exhibit A (the "LOI"),[3] and incorporated herein by reference. The Sale referenced in the LOI with the Successful Bidder is subject to definitive documentation and Court approval.

---

1 A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at www.kccllc.net/mountainexpressoil. The location of Debtor Mountain Express Oil Company's principal place of business and the Debtors' service address in these Chapter 11 Cases is 3650 Mansell Road, Suite 250, Alpharetta, GA 30022.

2 Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Bid Procedures Order or, as applicable, the Bid Procedures attached thereto.

3 The Debtors will file an executed version when available.

**PLEASE TAKE FURTHER NOTICE** that at the Sale Hearing on August 7, 2023, at 2:00 p.m. (Central Time), the Debtors will ***not*** seek approval of the sale contemplated by the LOI, nor to assume and assign any unexpired leases or executory contracts pursuant to the LOI. Parties will continue to have the right to object to (or amend their previously filed objections to) the Sale and Adequate Assurance in connection with a future hearing, to be separately noticed, at which the Debtors expect to seek approval of the transaction contemplated by the LOI.

Dated: August 4, 2023

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Michael D. Warner*

Michael D. Warner (TX Bar No. 00792304)
Steven W. Golden (TX Bar No. 24099681)
440 Louisiana Street, Suite 900
Houston, TX 77002
Telephone: (713) 691-9385
Facsimile: (713) 691-9407
mwarner@pszjlaw.com
sgolden@pszjlaw.com

-and-

Jeffrey N. Pomerantz (admitted *pro hac vice*)
Jeffrey W. Dulberg (admitted *pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
jpomerantz@pszjlaw.com
jdulberg@pszjlaw.com

*Counsel to the Debtors and Debtors in Possession*

## CERTIFICATE OF SERVICE

I hereby certify that on August 4, 2023, a true and correct copy of the above and foregoing has been served on all parties that are registered to receive electronic transmission through this Court's CM/ECF filing system in these cases.

*/s/ Michael D. Warner*
Michael D. Warner

# EXHIBIT A

STRICTLY CONFIDENTIAL
FOR DISCUSSION PURPOSES ONLY

8565 Magellan Parkway, Ste 400, Richmond, Virginia 23227 Phone: (804) 730-1568 Fax: (804) 559-3285

August 4, 2023

Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, California 90067
Attn.: Jeffrey Pomerantz (jpomerantz@pszjlaw.com)
Jeffrey Dulberg (jdulberg@pszjlaw.com)

Raymond James & Associates, Inc.
Attn: Scott Garfinkel (scott.garfinkel@raymondjames.com)
Roger Woodman (roger.woodman@raymondjames.com)
Jake Wainwright (jake.wainwright@raymondjames.com)

Counsel to the Official Committee of Unsecured Creditors, McDermott Will & Emery LLP
Attn: Maris J. Kandestin (mkandestin@mwe.com)
Chuck Gibbs (crgibbs@mwe.com)
Marcus Helt (mhelt@mwe.com)

Counsel to the DIP Agent, Greenberg Traurig, LLP
Attn: John D. Elrod, Esq. (elrodj@gtlaw.com)
Shari Heyen, Esq. (heyens@gtlaw.com)

Gentlemen:

On behalf of GPM Investments, LLC, its subsidiaries and affiliated entities (collectively, "GPM"), we are delighted to provide this revised proposal with regard to a potential asset acquisition (the "Transaction") by GPM of substantially all or certain, as set forth below, of the assets which comprise the bankruptcy estates of Mountain Express Oil Company and its affiliated entities (collectively, the "Company") in connection with the pending cases filed by the Company in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Court") pursuant to chapter 11 of title 11 of the United States Code (as amended, the "Bankruptcy Code") on March 18, 2023, including, without limitation, certain real estate interests, leases, licenses and improvements owned or leased by the Company, including all fixtures, equipment and inventory, and all assets and businesses relating to any and all of the foregoing, including certain or all, as set forth below, of the trademarks and other intellectual property rights of the Company (collectively, the "Business"). As noted below, immediately upon execution of the definitive Agreement and issuance of the Order by the Bankruptcy Court, and following the Bankruptcy Court's rejection of the Oak Street leases as set forth below, we are prepared to deliver to the Company the sum of $13.5 million of the below proceeds, to be utilized by the Company in accordance with the

Approved Budget (as defined below) (the "Advanced Proceeds"). The acquisition would include GPM's affiliate, GPM Petroleum, LLC ("GPMP"), a subsidiary of GPM Petroleum LP ("GPM Petroleum"), acquiring the supplier based intangible and other rights associated with the wholesale distribution of fuel to the stores comprising part of the Business. The acquisition would also include pre-closing accrued but unpaid incentive payments under the existing fuel supply agreements with ExxonMobil. **We believe that our proposal will allow the Company to execute an orderly winding-down of the Business while allowing for continued employment of a majority of the Company's employees. Additionally, we believe that our proposal will provide the opportunity for the hundreds of the Company's dealers to continue to operate their small businesses at the stations and provide for employment of their thousands of employees, as opposed to causing the creditors, employees, the dealers' small businesses, and other Company stakeholders to be subject to a Chapter 7 liquidation.**

***About GPM Investments, LLC***

GPM Investments, LLC is wholly owned by ARKO Corp., a Fortune 500 company that is publicly traded on NASDAQ (NASDAQ: ARKO) with a market cap of approximately $1 billion.

GPM is the sixth largest convenience store chain in the United States and one of the largest motor fuel distributors in the United States, operating and/or supplying over 3,700 convenience stores, cardlock locations and independent gas stations in more than 30 states. GPM sells branded gas at most of its locations and also has stores that sell unbranded gas under GPM's proprietary fuel brands such as fas fuel®. GPM's annual fuel volume is over 2 billion gallons.

GPM is headquartered in Richmond, Virginia, and employs approximately 14,000 employees. Since 2013, GPM has successfully acquired and integrated approximately 1,300 c-store locations, approximately 1,850 dealer locations, and approximately 300 cardlock sites through 24 acquisitions. GPM's long-term business plan is to continue its growth through a smart but aggressive acquisition strategy.

***Dedicated Acquisitions Team Enabling Fast Track Closings***

GPM has a team of professionals on hand dedicated to acquisitions and who through experience have developed efficient standardized processes which enable GPM to fast track closing large-scale acquisitions. Our experienced management team has a proven capability to close and integrate acquisitions. Given this core expertise, we expect to close this Transaction in an expedited and efficient timeframe.

***Valuation, Consideration and Inventory***

Under our proposal, GPM proposes for the Company to receive consideration at closing of approximately $49 million as follows (collectively, the "Valuation"):

- fuel and usable, merchandise inventory (in each case, to the extent owned by the Company) for each company-operated leased location in which GPM becomes a tenant and with respect to fuel inventory only, any consignment sites where GPM becomes the fuel supplier, as set forth below, at

cost, together with non-defaulted current collectable accounts receivables of the Company, which valuation FTI has estimated in the aggregate to be approximately $13 million; plus

- the twenty-three (23) travel centers that comprise part of the Business, together with all assets to the extent related thereto (collectively, the "Travel Centers"), subject to consent for the applicable leases to be assigned to and assumed by GPM at closing and to such leases being amended in the manner set forth below, together with the non-controlled fuel supply/consignment agreements which are assigned to and assumed by GPM as set forth below (which agreements are for supplying approximately 119 million gallons of fuel per year per annum at a rate of approximately 5 cents per gallon, in each case as FTI has indicated), collectively for approximately $15.25 million in the aggregate; plus
- $18.75 million which, simultaneously with being paid by GPM to the Company, will be paid and/or credited to GPM by affiliates of Blue Owl Real Estate Capital, LLC ("Oak Street"), and Oak Street will additionally defer rent payments until closing of the Transaction (estimated to be approximately $12 million-$17 million, and subject to an outside date to be agreed upon by the parties); plus
- $2 million for an assignment of any and all funds received on account of pre-closing accrued and unpaid subtenant rent from the subleases with Brothers/GSS and Imperial, which amount collectively FTI has advised is approximately $5.6 million currently, plus another $1.4 million per month on a going forward basis, provided that the Company has not collected, forgiven, or waived or released its rights to such amounts.

Our proposed Transaction will exclude the following assets, which may be retained for the benefit of the DIP lenders (collectively, the "Excluded Assets"):

- all owned real estate (which we understand from Raymond James has been valued at approximately $3 million); plus
- any and all claims and causes of action of the Company arising prior to the commencement of the Company's bankruptcy cases.

In addition, for the avoidance of doubt, the Company would retain any and all of its cash on hand and funds in bank accounts, and the Company has represented that the Company is not holding any dealer deposits in segregated accounts.

The Advanced Proceeds would be utilized by the Company pursuant to the approved budget through October 31, 2023 attached hereto as **Exhibit A** (the "Approved Budget"). The Approved Budget will include budgeted amounts for the Company's operating costs and professional fees, as well as provide for the payment of Georgia post-petition taxes. Any available savings/excess cash flow will inure to the benefit of the Company's DIP lenders, after payment of the $1 million portion of the transaction fee owed to Raymond James on account of the closing of the Transaction that it has agreed to defer.

***Assumptions***

***Existing Leases***

Acquisition of the Travel Centers, other leases, inventory and accounts receivables to be acquired with respect to each of the leased locations (GPM will also receive all of the Company's interests in the equipment located at such locations) will be subject to GPM entering into new leases with the applicable landlords as follows:

***Oak Street Leases***

With respect to the leases with Oak Street (whose stores represent approximately 55% of the controlled portfolio and whose total rent is approximately 70% of total rent for the whole portfolio), GPM has reached an agreement in principle with Oak Street pursuant to which such leases would be required to be rejected by the Company in the bankruptcy effective as of the entering into of the definitive Agreement and issuance of the Order by the Bankruptcy Court. Oak Street and the Company will then enter into new, short-term lease arrangements which shall not exceed ninety (90) days and shall be automatically terminated as of the closing of the Transaction. Oak Street will agree to defer rent payments over the term of such new short term leases. As of closing, GPM and Oak Street will enter into new arrangements for these locations.

***All Sites Other Than Those Leased from Affiliates of Oak Street***

With respect to the leases with each of these respective landlords other than Oak Street, the Order shall provide that such leases shall be rejected by the Company in the bankruptcy as of August 31, 2023, unless alternative arrangements are reached as set forth below. GPM and such landlords would then enter into new lease arrangements effective as of closing as follows:

- GPM would enter into new leases with the landlords for a term of no less than 15 years from the closing with six (6) five-year renewal options.
- GPM would, based on the preliminary financial information provided by the Company, propose to adjust the rent under the new lease arrangements from and after closing of the Transaction, such that such rental amount would be on a 2:1 store-level EBITDA rent coverage ratio based on available historical financial information. Additionally, the landlords will cease collecting rent until closing of the Transaction. Such accrued and unpaid rent (as such rent is adjusted to amounts set forth above) will be payable on a pro rata basis over the following fifteen (15) years of the lease terms under each such lease.
- In each of the fourth and seventh month following the closing, GPM would review actual cumulative financial results of each location over the initial three month and initial six month periods following the closing and calculate the 2:1 coverage ratio based on such results. Such periodic reviews will be necessary to account for seasonal adjustments. The rent under each such lease would then be readjusted on a going forward basis to conform to such 2:1 coverage ratio, and to the extent such revised rent amount (which would be based on actual prior results of financial operations) is less than the rent amount actually paid by GPM over the prior period, GPM would

receive a credit against going forward rent in the amount of the difference between what GPM would have paid in rent during the prior period based on such going forward rental adjustment and the amount of rent GPM actual paid over such period.

- Between the 12th and 13th month following the closing, GPM will, based on actual results of financial operations over the period since the closing, notify the respective landlords of the permanent rent adjustment amount on a going forward basis, which rent adjustment will be a 2:1 coverage ratio based on such results. The rent under such respective lease would thenceforth be permanently adjusted to such rent amount, subject to the escalations provided in the respective leases.

- In addition to the foregoing, each of the respective landlords will be required to assume and pay for any required Capex payments in order to bring the stores back to operating condition/going concern condition, and will further assume all pre-closing environmental and other liabilities and obligations related to the stores, in each case which are not retained by the bankruptcy estate, provided that any such Capex payments made by the respective landlords will be added to rent.

Any such landlord who does not accept the foregoing terms or does not reach another agreement acceptable to GPM will be notified that its leases with the Company will be rejected effective August 31, 2023.

***Dealer Agreements***

GPM's acquisition/assignment of each of the applicable dealer agreements will be subject to GPM's review of such agreement as well as the historical financials relating to such agreement.

***Structure; Assumption of Liabilities; Excluded Liabilities***

The Transaction would be structured as a free and clear asset acquisition of the Business pursuant to an Asset Purchase Agreement to be negotiated between GPM and the Company (the "Agreement"), which shall contain customary representations, warranties, covenants and other provisions in the context of a sale pursuant to section 363 of the Bankruptcy Code. As you know, we previously provided our comments to the draft Asset Purchase Agreement provided in the Company's virtual deal room ("VDR") and provided the proposed Exhibit 2.6(d) previously provided, which will be an exhibit to the definitive Agreement, provided that such comments and Exhibit 2.6(d) will be modified to reflect the proposed Transaction referenced above and payment due at closing. Please note that the draft asset purchase agreement is still being reviewed by specialists with our outside counsel, and is therefore subject to further comment therefrom. In addition, any missing disclosure schedules and exhibits to be attached to the Agreement will need to be reviewed by our team. Notice of the proposed sale (both actual and notice by publication) shall be acceptable to GPM in its sole discretion.

In the event GPM is the winning bidder in accordance with the bid procedures, the definitive Agreement shall be approved by the Bankruptcy Court pursuant to an order (the "Order") to be entered pursuant to Sections 363 or 365, as applicable, of the Bankruptcy Code and applicable portions of Titles 18 and 28 of the United States Code (i) authorizing the sale of the Business to GPM; (ii) approving the Agreement and the transactions contemplated thereby; (iii) approving, with specific findings of fact in support thereof, the

sale of the Business to GPM free and clear of all liens, mortgages, pledges, claims, charges, security interests, hypothecations or encumbrance of any nature whatsoever to the fullest extent permitted by applicable law and consented to by GPM and pursuant to Section 363(f) of the Bankruptcy Code, including, without limitation, free and clear of (A) any fixed or contingent, liquidated or unliquidated, disclosed or undisclosed liability, obligation or claim against the Company or its estate or any of its predecessors or affiliates, whether based upon successor or vicarious liability or otherwise, and whether any of such items are known or unknown as of the applicable closing date, (B) any violation or alleged violation of any environmental laws, or (C) liabilities under any pension, ERISA, tax, employment, labor, antidiscrimination laws or regulations, any products liability law, tort law, pending or threatened litigation, security interests, warranties, interests of any kind, known or unknown, liquidated or unliquidated, whether now existing or arising in the future, or debts of any kind or nature, all of which, if any, shall be retained by the Company and its estate, except as otherwise expressly provided in the Agreement or Order; (iv) finding, with specific findings of fact in support thereof, that GPM is a good-faith purchaser entitled to the protections of Section 363(m) of the Bankruptcy Code; (v) providing that Bankruptcy Rule 6004(g) is waived and there will be no stay of execution of the Order under Rule 62(a) of the Federal Rules of Civil Procedure as incorporated by Bankruptcy Rule 7062; (vi) finding, with specific findings of fact in support thereof, that the Order is final pursuant to Rule 54(b) as incorporated by Bankruptcy Rules 7054(a) and 9014(c); (vii) retaining jurisdiction of the Bankruptcy Court to interpret and enforce the terms and provisions of the Agreement and the Order; and (viii) finding that the Order is final upon entry by the Bankruptcy Court (subject to the expiration of applicable appeal periods). Subject to the funding of the Advanced Proceeds to the Company, which funding will be irrevocable and non-refundable, the Order would further include full releases against GPM, Oak Street, and each of their respective affiliates, successors and/or assigns, and each of its and their respective current or former officers, directors, members, partners, equity holders, and managers, from and against any and all losses, claims, damages, liabilities, judgments and costs and expenses (including reasonable attorneys' fees and expenses), whether arising or pleaded at law or in equity, under contract, statute, tort or otherwise, whether known or unknown, whether accrued, potential, inchoate, liquidated, contingent or actual, whether asserted or that might have been asserted, which the Company and/or any claimant under the bankruptcy may now have, has ever had or may hereafter have against such persons, in respect of or arising out of any matter, act, omission, cause or event relating to the Company, the assets to be acquired thereunder, or the Business, excluding any obligations of the parties under the Transaction.

***Deposit***

In the event our proposal is accepted, GPM and Oak Street will be prepared to submit the $13.5 million cash deposit, which will constitute the Advanced Proceeds.

***Estimated Time to Sign and Close***

Subject to GPM having access to the Company's records and information requested by GPM in order to, *inter alia*, apply for and obtain all required licenses and permits to operate the Business, GPM would strive to close within 60-90 days of the execution and delivery of the definitive Agreement.

Additionally, in order to efficiently move toward closing of the Transaction, the Company shall agree to use its commercially reasonable efforts to have the DIP lenders provide a conflict waiver so that Greenberg Traurig LLP can represent GPM on securities matters related to the Transaction.

***Approval and Necessary Consents***

Senior management has approved GPM submitting this proposal. The Transaction will be subject to approval by GPM's board of managers and the Board of ARKO Corp.

GPM will further need to obtain all other required governmental permits and authorizations in order to consummate the Transaction, and the timing of obtaining such permits and authorizations would depend on the applicable regulatory agencies. We believe that the approval and notification process will proceed efficiently given GPM's extensive experience with the processes required.

***Capital Sources***

As of today, GPM has more than $800 million between cash on hand, cash equivalents, and available lines of credit for acquisitions. Also as was publicly announced, on May 3, 2021, GPM entered into an agreement with Oak Street Real Estate Capital, LLC ("Oak Street") for Oak Street to acquire real estate assets from and/or on behalf of GPM and its affiliates and to lease those assets to GPM and its affiliates, and on May 2, 2023 this commitment was extended through September 30, 2024 and amended to provide availability of up to $1.5 billion for new transactions entered into after May 2, 2023. Accordingly, **no financing contingency will be required**.

***Employees***

GPM would be interested in hiring the Company's operations-level, field and certain other employees, subject to GPM's normal hiring process and background-checking procedure. GPM's acquisition on-boarding process will facilitate a smooth transition for all such employees.

***Contacts***

All correspondence with GPM shall be directed to:

GPM Investments, LLC
Attn: Arie Kotler, CEO
8565 Magellan Parkway
Suite 400
Richmond, VA 23227
Ph: 804-730-1568 x1171
Fax: 240-525-5520
e-mail: ak@gpminvestments.com

GPM Investments, LLC
Attn: Maury Bricks, General Counsel
8565 Magellan Parkway
Suite 400
Richmond, VA 23227
Ph: 804-730-1568 x1109
Fax: 804-559-3285
mbricks@gpminvestments.com

***Other Assumptions***

This proposal is not intended to constitute a binding and enforceable contract and may be withdrawn for any or no reason. The terms of this proposal are proprietary to GPM and may not be shared with any third

parties other than financial and legal advisors assisting the Company in this transaction or as required by the Bankruptcy Court.

**NOTWITHSTANDING ANYTHING SET FORTH HEREIN TO THE CONTRARY, THE TERMS OF THIS PROPOSAL AND ANY AND ALL DISCUSSIONS BETWEEN THE PARTIES WITH RESPECT TO THE SUBJECT MATTER HEREOF, SHALL BE NON-BINDING AND SHALL NOT IN ANY WAY OBLIGATE ANY PARTY HERETO TO PERFORM ANY TRANSACTION OUTLINED OR DESCRIBED HEREIN, OR ANY OTHER TRANSACTION, OR TO CONTINUE THEIR DISCUSSIONS WITH RESPECT HERETO OR THERETO. SUCH PARTIES SHALL ONLY BECOME LEGALLY BOUND WITH RESPECT TO ANY SUCH TRANSACTION IF AND WHEN THEY EXECUTE AND DELIVER DEFINITIVE TRANSACTION DOCUMENTS WHICH ARE MUTUALLY ACCEPTABLE TO THE PARTIES TO SUCH DEFINITIVE TRANSACTION DOCUMENTS.**

As we hope is obvious from the foregoing, we are enthusiastic about the prospect of acquiring the Business. We look forward to receiving your response as soon as possible. Please feel free to contact Arie Kotler at (313) 779-0906 with any questions or comments.

Very truly yours,

GPM INVESTMENTS, LLC

By: ____________________
Arie Kotler
CEO

By: ____________________
Maury Bricks
General Counsel

STRICTLY CONFIDENTIAL
FOR DISCUSSION PURPOSES ONLY

# Exhibit A
## Approved Budget

| 14 Week Cash Flow<br>Mountain Express Oil<br>($ in 000s) | Week 1<br>Forecast<br>28-Jul-23 | Week 2<br>Forecast<br>4-Aug-23 | Week 3<br>Forecast<br>11-Aug-23 | Week 4<br>Forecast<br>18-Aug-23 | Week 5<br>Forecast<br>25-Aug-23 | Week 6<br>Forecast<br>1-Sep-23 | Week 7<br>Forecast<br>8-Sep-23 | Week 8<br>Forecast<br>15-Sep-23 | Week 9<br>Forecast<br>22-Sep-23 | Week 10<br>Forecast<br>29-Sep-23 | Week 11<br>Forecast<br>6-Oct-23 | Week 12<br>Forecast<br>13-Oct-23 | Week 13<br>Forecast<br>20-Oct-23 | Week 14<br>Forecast<br>27-Oct-23 | Total<br>14-Week Period<br>WE 07/28 - WE 10/27 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Operating Receipts | | | | | | | | | | | | | | | |
| Net Fuel Profit | $ 1,634 | $ 1,634 | $ 1,634 | $ 1,634 | $ 1,634 | $ 1,571 | $ 1,404 | $ 1,404 | $ 1,404 | $ 1,404 | $ 1,388 | $ 1,373 | $ 1,373 | $ 1,373 | $ 20,854 |
| Rent Income | 1 | 2,232 | 1,045 | 64 | 1 | 1,007 | 204 | 53 | 3 | - | 1,991 | 1 | 54 | 1 | 6,657 |
| Net Retail Supporting Operations | 149 | 149 | 149 | 149 | 149 | 149 | 149 | 149 | 149 | 149 | 149 | 149 | 149 | 149 | 2,086 |
| Other Receipts | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Operating Receipts** | **$ 1,784** | **$ 4,015** | **$ 2,828** | **$ 1,846** | **$ 1,784** | **$ 2,808** | **$ 1,757** | **$ 1,606** | **$ 1,556** | **$ 1,553** | **$ 3,528** | **$ 1,524** | **$ 1,577** | **$ 1,524** | **$ 29,600** |
| Operating Disbursements | | | | | | | | | | | | | | | |
| Rent Expense | - | (1,802) | - | - | - | - | - | - | - | - | - | - | - | - | (1,802) |
| Payroll & Benefits | (141) | (1,164) | (141) | (1,434) | (141) | (1,164) | (141) | (1,164) | (141) | (1,164) | (141) | (1,034) | (141) | (1,164) | (8,749) |
| Vendor Disbursements | (1,140) | (802) | (1,140) | (818) | (649) | (802) | (941) | (618) | (489) | (949) | (802) | (941) | (610) | (449) | (11,500) |
| Utilities & Insurance | (8) | (529) | (19) | (8) | (8) | (529) | (19) | (8) | (9) | - | (529) | (19) | (8) | (8) | (1,681) |
| Tax | - | (838) | (838) | (1,238) | (1,299) | (1,299) | (973) | (973) | (973) | (973) | (973) | (973) | (973) | (973) | (12,952) |
| Other Operating Disbursements | (8) | (8) | (8) | (8) | (8) | (8) | (8) | (8) | (8) | (8) | (8) | (8) | (8) | (8) | (109) |
| **Total Operating Costs** | **$ (2,298)** | **$ (4,241)** | **$ (2,750)** | **$ (3,254)** | **$ (2,899)** | **$ (3,800)** | **$ (2,087)** | **$ (2,629)** | **$ (1,575)** | **$ (2,698)** | **$ (2,254)** | **$ (2,979)** | **$ (1,737)** | **$ (2,597)** | **$ (35,809)** |
| **Operating Cash Flow** | **$ (514)** | **$ (226)** | **$ 78** | **$ (1,287)** | **$ (1,115)** | **$ (992)** | **$ (230)** | **$ (1,023)** | **$ (19)** | **$ (1,137)** | **$ 1,267** | **$ (1,455)** | **$ (160)** | **$ (1,074)** | **$ (6,309)** |
| Restructuring Related | | | | | | | | | | | | | | | |
| Restructuring Fees | (1,137) | (1,583) | (772) | (784) | (713) | (763) | (822) | (732) | (732) | (1,387) | (741) | (741) | (741) | (1,141) | (12,711) |
| Employee Retention | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| DIP Interest & Fees | - | (258) | - | - | - | - | - | - | - | - | - | - | - | - | (258) |
| Other Restructuring Related | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Restructuring Related** | **$ (1,137)** | **$ (1,841)** | **$ (772)** | **$ (788)** | **$ (713)** | **$ (763)** | **$ (822)** | **$ (732)** | **$ (732)** | **$ (1,387)** | **$ (741)** | **$ (741)** | **$ (741)** | **$ (1,141)** | **$ (13,069)** |
| **Net Cash Flow** | **$ (1,651)** | **$ (2,067)** | **$ (694)** | **$ (1,992)** | **$ (1,828)** | **$ (1,155)** | **$ (1,052)** | **$ (1,756)** | **$ (751)** | **$ (2,524)** | **$ 526** | **$ (2,196)** | **$ (901)** | **$ (2,215)** | **$ (19,457)** |
| Cash (Unrestricted) | | | | | | | | | | | | | | | |
| Beginning Balance | $ 7,969 | $ 6,318 | $ 4,251 | $ 8,057 | $ 6,065 | $ 5,037 | $ 3,882 | $ 7,318 | $ 5,574 | $ 4,823 | $ 6,798 | $ 7,324 | $ 5,128 | $ 4,226 | $ 7,969 |
| Net Cash Flow | (1,651) | (2,067) | (694) | (1,992) | (1,828) | (1,155) | (1,052) | (1,756) | (751) | (2,524) | 526 | (2,196) | (901) | (2,215) | (19,457) |
| (+/-) DIP Draws / (Repayments) | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| (+) Incremental Funding Need for Operations | - | - | 4,500 | - | - | - | 4,500 | - | - | 4,500 | - | - | - | - | 13,500 |
| **Ending Unrestricted Cash Balance** | **$ 6,318** | **$ 4,251** | **$ 8,057** | **$ 6,065** | **$ 5,037** | **$ 3,882** | **$ 7,318** | **$ 5,574** | **$ 4,823** | **$ 6,798** | **$ 7,324** | **$ 5,128** | **$ 4,226** | **$ 2,012** | **$ 2,012** |
| Tax Escrow | | | | | | | | | | | | | | | |
| Beginning Balance | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - | $ - |
| (+/-) DIP Draws / (Repayments) | 3,000 | - | - | - | - | - | - | - | - | - | - | - | - | - | 3,000 |
| (-) Tax Payments | (3,000) | - | - | - | - | - | - | - | - | - | - | - | - | - | (3,000) |
| **Ending Tax Escrow Balance** | **$ -** | **$ -** | **$ -** | **$ -** | **$ -** | **$ -** | **$ -** | **$ -** | **$ -** | **$ -** | **$ -** | **$ -** | **$ -** | **-** | **$ -** |
| DIP | | | | | | | | | | | | | | | |
| Beginning DIP Balance | $ 43,850 | $ 46,850 | $ 46,850 | $ 51,350 | $ 51,350 | $ 51,350 | $ 51,350 | $ 55,850 | $ 55,850 | $ 55,850 | $ 60,350 | $ 60,350 | $ 60,350 | 60,350 | $ 43,850 |
| (+/-) DIP Draws / (Repayments) | 3,000 | - | - | - | - | - | - | - | - | - | - | - | - | - | 3,000 |
| (+) Incremental Funding Need for Operations | - | - | 4,500 | - | - | - | 4,500 | - | - | 4,500 | - | - | - | - | 13,500 |
| **Ending DIP Balance Excl. Roll-Up** | **$ 46,850** | **$ 46,850** | **$ 51,350** | **$ 51,350** | **$ 51,350** | **$ 51,350** | **$ 55,850** | **$ 55,850** | **$ 55,850** | **$ 60,350** | **$ 60,350** | **$ 60,350** | **$ 60,350** | **60,350** | **$ 60,350** |