UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | § <br> § **Chapter 7** <br> § **(previously Chapter 11)** |
| **Mountain Express Oil Company,** *et al.*, | § <br> § **Case No. 23-90147 (DRJ)** |
| Debtors.[1] | § <br> § **Jointly Administered** |

**CHAPTER 7 TRUSTEE'S EMERGENCY MOTION FOR APPROVAL OF SALE OF ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES UNDER 11 U.S.C. § 363(B) AND (F)**

> **Emergency relief has been requested. Relief is requested not later than September 29, 2023.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

**TO THE HONORABLE DAVID R. JONES,**
**UNITED STATES BANKRUPTCY JUDGE:**

Janet Northrup (the "Trustee"), chapter 7 trustee of Mountain Express Oil Company and affiliated debtors (collectively, the "Debtors"), files this *Emergency Motion for Approval of Sale of Assets Free and Clear of Liens, Claims, Interests, and Encumbrances Pursuant to 11 U.S.C. § 363(b) and (f)* (the "Motion"). In support of the Motion, the Trustee further states as follows:

**Preliminary Statement**

1. The Trustee seeks approval of a transaction (the "Sale Transaction") pursuant to the terms set forth in the Motion and attached proposed order, which has been agreed to by the Trustee, Schierl Sales Corp. and its affiliates (together, "Schierl"), and the DIP Lenders (the

---

[1] A complete list of each of the Debtors in these chapter 7 cases may be obtained on the Court's website at www.ecf.txsb.uscourts.gov. The location of Debtor Mountain Express Oil Company's principal place of business and the Debtors' service address in these chapter 7 cases is 3650 Mansell Road, Suite 250, Alpharetta, GA 30022.

1

14202150

"Agreed Order"). The Sale Transaction would result in the immediate sale of all right, title and interest of the estates in and to all of the following assets relating to the twenty-five (25) convenience stores sold by Schierl to Mountain Express Oil Company ("MEX") pursuant to that certain Purchase and Sale Agreement dated January 27, 2022, as amended (the "PSA"):

> **Purchased Assets:** (i) the registered trademarks consisting of "The Store," "Impact Rewards," and "Aromas Beverage Bar" and all other registered and unregistered tradenames, trademarks, logos, service marks, copyrights, intellectual property rights, and all goodwill associated therewith; (ii) all contract rights, including but not limited to the Transition Services Agreement (as defined below) and all other leasehold interests and franchise rights; (iii) all assignable permits and licenses; and (iv) all books, records, customer and vendor information, data and files of any kind for the twenty-five convenience stores sold to MEX under the PSA (collectively, the "Purchased Assets").

2. As part of the Sale Transaction and as described more fully herein, the Trustee also seeks that the Transition Services Agreement (as defined below) be rejected and terminated as of the date of the Court's entry of the Agreed Order.

## Request for Emergency Consideration

3. Under the circumstances, it is critical that the Trustee obtain immediate relief. The Sale Transaction settles all possible claims by Schierl against the estates and permits the estates and Schierl to proceed unburdened by the Transition Services Agreement. Further, because Schierl is currently operating the locations which assets are subject to the Sale Transaction, it is unlikely the estates could obtain a greater sales price from another bidder.

4. The DIP Lenders were involved in negotiating the Sale Transaction, and the DIP Lenders support the relief requested.

## Nature of the Motion

5. By this Motion, the Trustee seeks authority to enter into a sale transaction for the Purchased Assets, pursuant to the terms set forth in the Motion and Agreed Order attached hereto.

6.	If approved, the Sale Transaction will resolve any and all possible claims by Schierl or its affiliates against the estates. The Court's approval of the Sale Transaction will also result in rejection and termination of the Transition Services Agreement.

7.	Due the need for expedited relief and given the extreme unlikelihood that any party would propose a higher offer for the Purchased Assets if given the chance, the Trustee requests entry of the proposed Agreed Order no later than September 29, 2023.

## Jurisdiction and Venue

8.	This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. § 1408.

9.	The statutory bases for relief are section 363 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 9013-1 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Local Rules").

## Background

### A.	The Bankruptcy Cases

10.	On March 18, 2023 (the "Petition Date"), the Debtors filed these jointly administered chapter 11 cases. The Debtors operated their business and managed their properties as debtors and debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code until the Trustee was appointed on August 17, 2023.

11.	On April 4, 2023, the Office of the United States Trustee for the Southern District of Texas (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee").

12. After months of the Debtors attempting to sell their assets, on August 16, 2023, First Horizon Bank, as Administrative Agent for the DIP Loans (the "DIP Agent") filed the *DIP Agent's Emergency Motion to Appoint Chapter 11 Trustee, or in the Alternative, Convert These Chapter 11 Case to Case Under Chapter 7*. [Docket No. 1280].

13. On August 17, 2023, following the Court's *Order Directing the Appointment of a Chapter 11 Trustee* [Docket No. 1284], the United States Trustee filed a *Notice of Appointment of Chapter 11 Trustee* [Docket No, 1286], and appointed Janet Northrup to serve as the Chapter 11 Trustee in these cases.

14. Ultimately, on August 24, 2023 (the "Conversion Date"), upon its own motion and the Chapter 11 Trustee's request, the Court converted these cases to cases under chapter 7 of the Bankruptcy Code. [Docket No. 1397]. Thereafter, Janet Northrup was also appointed the Chapter 7 Trustee in each of the Debtors' cases. The Trustee is in possession of the assets of the bankruptcy estates and is operating the businesses pursuant to the terms of an Order authorizing operations in Chapter 7 [Docket No. 1421].

**B.     The Transition Service Agreement**

15. Schierl, as Seller, and MEX, as Purchaser, entered into a certain Purchase and Sale Agreement dated January 27, 2022 (the "PSA") for the sale of twenty-five (25) convenience stores (the "Stores"), real estate related to the Stores, intellectual property, and other assets (collectively, "PSA Assets").

16. The sale under the PSA closed on or about March 31, 2022, and simultaneously with the closing, the parties entered into the Transition Service Agreement as of March 31, 2022 (as amended from time to time, the "TSA").

17. The TSA provided that Schierl would continue to operate the Stores for an initial period of ninety (90) days, at which time the TSA would be terminated and MEX would take over

4

operations of the Stores. However, MEX never gave notice under the TSA to take over operations of the Stores and Schierl continues to operate the Stores. Schierl requests that the TSA be rejected and terminated so that Schierl may discontinue operation of the Stores on behalf of MEX.

### C. The Proposed Sale

18. Through negotiations between Schierl, the Trustee, and the DIP Agent were without collusion, in good faith and from arm's-length bargaining positions, and Schierl has offered the Trustee a cash purchase price of $1 million (the "Cash Price") for all right, title and interest of the estates in and to all of the following assets relating to the Stores:

> (i) the registered trademarks consisting of "The Store," "Impact Rewards," and "Aromas Beverage Bar," and all other registered and unregistered tradenames, trademarks, logos, service marks, copyrights, intellectual property rights, and all goodwill associated therewith; (ii) all contract rights (including but not limited to the TSA) and all other leasehold interests and franchise rights; (iii) all assignable permits and licenses; and (iv) all books, records, customer and vendor information, data and files of any kind (collectively, the "Purchased Assets").

19. The Trustee represents and warrants that it has good and marketable title to the Purchased Assets described above. Except for the foregoing warranty of title, Schierl accepts the Purchased Assets "**AS IS, WHERE IS, with all faults**" and without warranty of any kind.

20. As part of the Sale Transaction, Schierl will release all claims they may have against the estates (the "Release" and together with the Cash Price, the "Purchase Price").

21. As part of the Sale Transaction, the TSA will be rejected and terminated pursuant to 11 U.S.C. § 365(a) as of the date of entry of the Agreed Order so that Schierl may discontinue operation of the Stores on behalf of MEX.

### Relief Requested and Authority

22. The Trustee requests the authority to sell the Purchased Assets to Schierl for the Purchase Price, free and clear of all liens, claims, interests and encumbrances with any such liens, claims, interests or encumbrances attaching to proceeds, subject to the provisions of the Final DIP

Financing Order and cash collateral orders entered in these cases, and pursuant to the terms set forth in the Agreed Order attached hereto. The Trustee understands that the DIP Lenders consent to the relief requested.

### A. The Sale of the Purchased Assets is an Exercise of the Trustee's Sound Business Judgment

23. The Trustee seeks approval of the sale of the Purchased Assets pursuant to section 363(b) of the Bankruptcy Code. Section 363(b) of the Bankruptcy Code provides, "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate …." 11 U.S.C. § 363(b)(1).

24. Bankruptcy Code section 363(b) does not specify a standard for determining when it is appropriate for a court to authorize the use, sale, or lease of property of the estate; however, bankruptcy courts have required that the authorization for such use, sale, or lease of property of the estate out of the ordinary course of business be based upon sound business justification. *See Institutional Creditors of Continental Air Lines, Inc. v. Continental Air Lines, Inc., et al. (In re Continental Air Lines, Inc.)*, 780 F.2d 1223, 1226 (5th Cir. 1986) ("[F]or a debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside of the ordinary course of business."); *see also In re Asarco*, 650 F. 3d 593, 601 (5th Cir. 2011); *In re Cowin*, No. 13-30984, 2014 WL 1168714, at *38 (Bankr. S.D. Tex. Mar. 21, 2014). Once the trustee articulates a valid business justification, "[t]he business judgment rule is a presumption that in making the business decision the directors of a corporation acted on an informed bases, in good faith and in the honest belief that the action was in the best interests of the company." *In re S.N.A. Nut Co.,* 86 B.R. 98 (Bankr. N.D. Ill. 1995); *see also In re Integrated Res., Inc.*, 147 B.R. 650, 656

(Bankr. S.D.N.Y. 1992); *In re Johns-Manville Corp.*, 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) ("… a presumption of reasonableness attaches to a Debtor's management decisions.").

25. Since her appointment, the Trustee and her counsel have worked to understand the potential value of the Purchased Assets and the universe of offers to purchase the Debtors' assets. In consultation with her counsel, the Trustee believes that Schierl's offer currently constitutes the highest and best offer for the Purchased Assets, and that it is extremely unlikely that any other entity would propose a higher offer in an auction.

  B. **The Court May Authorize the Sale Free and Clear of All Liens**

26. The Trustee submits that the Court may authorize the sale of the Purchased Assets free and clear of all liens, claims, interests and encumbrances, with such liens, claims and encumbrances attaching to proceeds.

27. Section 363(f) of the Bankruptcy Code allows the Trustee to sell the Purchased Assets free and clear of any interest in the Purchased Assets if:

  (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;

  (2) such entity consents;

  (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

  (4) such interest is in bona fide dispute; or

  (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

28. In evaluating such a sale, a court must balance the need for flexibility with the concerns of affected creditors. *In re Terrace Gardens Park P'ship*, 96 B.R. 707, 715 (Bankr. W.D. Tex. 1989). The Court must also determine that creditors' lien rights are adequately protected and

that the offered price is the highest price obtainable under the circumstances in the particular case. *Id.*; *In re Beker Indus. Corp.*, 63 B.R. 474, 477–78 (Bankr. S.D.N.Y. 1986).

29. The Trustee submits that all liens on the Purchased Assets shall be retained on the proceeds received for sale of the Purchased Assets under any order approving such sale.

30. Accordingly, the Trustee requests that the Court enter an order substantially in the form attached hereto and for such other relief as is just.

[*Signature Page to Follow*]

14202150

Dated: September 25, 2023

Respectfully Submitted,

By: */s/ Joshua W. Wolfshohl*
**PORTER HEDGES LLP**
Joshua W. Wolfshohl (TX Bar No. 24038592)
Megan Young-John (TX Bar No. 24088700)
1000 Main St., 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6000
Facsimile: (713) 226-6248
jwolfshohl@porterhedges.com
myoung-john@porterhedges.com

- and -

*s/ Wayne Kitchens*
Wayne Kitchens
SBN 11541110
Heather Heath McIntyre
SBN 24041076
Total Energies Tower
1201 Louisiana Street, Suite 2800
Houston, Texas 77002
Phone: 713-759-0818
Fax: 713-759-6834
Email:  wkitchens@hwa.com
         hmcintyre@hwa.com

*Proposed Counsel for the*
*Chapter 7 Trustee, Janet Northrup*

## CERTIFICATE OF SERVICE

This will certify that a true and correct copy of the foregoing document was forwarded by electronic transmission to all registered ECF users appearing in the case on September 19, 2023.

*/s/ Joshua W. Wolfshohl*
Joshua W. Wolfshohl

9

14202150