

**COMMERCIAL LEASE**

**THIS COMMERCIAL LEASE** ("Lease") is made this 15th day of February 2023 ("Effective Date") by and between **MEX RE-SW-LA LLC**, a Wyoming limited liability company, having a mailing address of 3650 Mansell Road, Suite 250, Alpharetta, Georgia 30022 ("Landlord"), **GSS HOLDINGS LA LLC**, a Louisiana limited liability company, and **SUKHRANJAN MULTANI**, an individual resident of the State of Louisiana, both having a mailing address of 11398 Wellington Lane, Hammond, Louisiana 70403 (hereinafter jointly, severally and collectively, "Tenant").

**W I T N E S S E T H**:

**WHEREAS**, Landlord has a leasehold interest in the real properties as listed on **Exhibit A** attached hereto (hereinafter, the "Premises"); and

**WHEREAS**, Tenant desires to operate a business on the Premises and the parties hereto wish to enter into this Lease for the rental of such Premises on the terms specified herein.

**NOW THEREFORE**, in consideration of the mutual undertakings contained herein, the sufficiency of which is hereby acknowledged, the parties agree as follows:

1.    **PREMISES.**  Landlord, in consideration of the covenants and agreements to be performed by Tenant, and upon the terms and conditions contained in this Lease, does hereby lease, demise, let and deliver to Tenant, and Tenant, in consideration of the covenants and agreements to be performed by Landlord and upon the terms and conditions contained in this Lease, does hereby lease from Landlord, the Premises, including all of the property, improvements, and related gas and convenience store equipment located inside the convenience store on the Premises, to have and to hold for the Term and Tenant acknowledges receipt and delivery of complete and exclusive possession thereof.

2.    **TERM OF LEASE.**   The Term of this Lease with respect to each Premises location shall begin on the commencement date shown for each Premises location on **Exhibit A** ("Commencement Date") and shall continue until April 1, 2033 ("Term").  Tenant shall have the option to extend the Term for an additional five (5) year term with at least sixty (60) days' prior written notice to Landlord, prior to the expiration of the then existing Term, and upon approval of Landlord which shall not be unreasonably withheld. The extended Term shall be on the same terms and conditions as set forth in this Lease, except

Store # LA (38) Brothers

as otherwise specifically stated herein. At the end of the initial Term or any extension or renewal thereof, the Term shall automatically renew each month on a month-to-month basis thereafter unless either party gives written notice of non-renewal to the other party no less than thirty (30) days prior to the expiration of the initial Term or the then existing extended term, or unless sooner terminated as otherwise hereinafter provided. Upon exercise and approval of such option to extend the Term of this Lease, the term of the Fuel Supply Agreement (defined below) applicable to and encumbering the Premises shall also be extended concurrently herewith.  The commencement and enforcement of this Lease is expressly contingent upon the termination of any existing lease agreement encumbering the Premises.

**3.      MONTHLY RENTAL FEES; SECURITY DEPOSIT.**

3.1      Base Rent.  Tenant agrees to pay Landlord a total monthly base rental amount equal to the sum of Nine Hundred Ninety Thousand Six Hundred Forty-Six and 65/100 Dollars ($990,646.65) (the "Base Rent"), payable in such specific amounts as shown for each Premises location on **Exhibit B** attached hereto beginning on the Commencement Date.  Said Base Rent shall for each Premises location adjust every twelve (12) months during the Term and shall increase every twelve (12) months by an amount equal to two percent (2%) of the then effective Base Rent for each twelve (12) month period and for each Premises location commencing with the Base Rent due as of April 1, 2024; the Base Rent and the Base Rent as adjusted hereunder being hereinafter referred to as the "Minimum Monthly Rent."

3.2      Percentage Rent.  In addition to the payment of Minimum Monthly Rent, Tenant shall, commencing January 1, 2023, for each of the Premises locations listed on **Exhibit C-1** attached hereto, and commencing April 1, 2024, for each of the Premises locations listed on **Exhibit C-2** attached hereto, pay to Landlord, without setoff, deduction, prior notice, or demand, except as otherwise set forth herein, an amount, if any, equal to  one percent (1%) (the "Percentage Rent Rate") of all of Tenant's Gross Sales (as defined in Section 3.2(b)) for each calendar month (or partial month) for such Premises location (hereinafter referred to as "Percentage Rent"). As it relates to Percentage Rent:

(a) Percentage Rent shall become due and payable in each calendar month on the fifteenth (15th) day of the month immediately following the calendar month during which Gross Sales for such month occur, and thereafter shall be paid monthly on all additional Gross Sales made during the remainder of the Term, such payments to be made by ACH draft in the same manner as Minimum Monthly Rent but concurrently with the submission by Tenant to Landlord of the written statement of monthly Gross Sales as provided for in Section 3.2(e).

(b) "Gross Sales" means the retail price of all goods, services, wares, and merchandise sold, charged, derived, originated, made, placed, ordered, and/or filled at or from the

Store # LA (38) Brothers

convenience stores located at the Premises adjusted to deduct Gross Sales Adjustments (as defined in Section 1.02(c)). Gross Sales excludes lottery, money orders and taxes. Gross Sales does not include sales price of any motor fuel sales which sales are contracted for and subject to the terms of the Fuel Supply Agreement.  Gross Sales shall include, without limitation: merchandise, goods, and/or services sold, leased, licensed, ordered, placed, filled, or otherwise transferred in or from the convenience stores at the Premises by Tenant, its subtenants, licensees, and concessionaires, whether for cash or on credit, whether made by store personnel, by approved vending machines, or through kiosks, terminals, or stations connected to Tenant's website, and whether made pursuant to mail, telephone, catalogue, facsimile, internet, electronic, computer, or any other method of placing orders, whether now existing or hereafter developed. All sales and/or revenue originating at the Premises shall be considered Gross Sales, even though bookkeeping and payment of the account may be transferred to another place for collection and even though actual filling and/or delivery of the merchandise may be made from a place other than the Premises.

       (c) "Gross Sales Adjustments" means the following items: (i) any exchange of merchandise between stores of Tenant or affiliates where such exchange is made solely for the convenient operation of Tenant's business and not for the purpose of consummating a sale made in, at, or from the Premises; (ii) returns to manufacturers; (iii) cash or credit refunds to customers on transactions otherwise included in Gross Sales but not in excess of the original selling price; (iv) amounts collected and paid by Tenant for any sales, excise, or similar tax imposed by any duly constituted governmental authority, provided such tax is both added to the selling price as separate and distinct amount in addition to the regular price of Tenant's merchandise and paid to the taxing authority by Tenant (but not by any vendor of Tenant). No value added tax, franchise tax, capital stock tax, income, gross receipts, or similar tax based upon income, profits, or gross receipts shall be deducted from Gross Sales.

       (d) Reporting of Gross Sales.  In addition to the reporting requirements of Section 8.3, below, Tenant shall: (i) not later than the fifteenth (15th) day after the close of each calendar month, deliver to Landlord a written statement certified to Landlord by Tenant, showing Gross Sales made in such calendar month. Such statements shall itemize all major elements of Gross Sales. If Tenant fails to prepare and deliver any statement of Gross Sales required hereunder within the time or times specified above, then Landlord shall have the right, in addition to the other rights and remedies set forth in this Lease, to collect One Thousand Dollars ($1,000) from Tenant on the 15th day of the month immediately following the month for which the Gross Sales report was not delivered to Landlord, which sum shall be deemed liquidated damages for lost rent, administrative costs, and overhead expenses resulting from such failure. Landlord reserves the right, at Landlord's option, to adjust Percentage Rent billings when actual Gross Sales reports are received. Upon receipt of not less than five (5) days' prior written request therefor, Tenant agrees to furnish to Landlord a copy of Tenant's state and local sales and use tax returns solely with respect to the Premises, if required in the state where the Premises is located. Tenant shall accurately

DocuSign Envelope ID: B37AE740-3610-495D-9E94-DF721330B3ED

record all sales in accordance with generally accepted accounting principles consistently applied and maintain sufficient original records that accurately summarize all transactions relating to the Premises.

### 4. RENTAL PAYMENTS AND FEES.

4.1     Rental.  Tenant agrees to pay Landlord the Minimum Monthly Rent, in electronic form (ACH) to Landlord's bank account, or in any other manner as designated by Landlord in writing to Tenant, promptly on the first (1st) day of each month during the Term hereof.  Tenant shall provide Landlord with such banking information and authorizations as needed for the payment of rent in ACH form. There shall be a One Hundred Dollar ($100.00) fee for any bounced ACH draft.  In the event of a bounced ACH draft, Tenant shall either (a) provide documented proof of funds in the ACH draft account on file in order to clear a redraft; or (b) wire the funds directly to Landlord.

4.2     Rental Proration.  In the event the commencement date of this Lease is any day other than the first day of a calendar month, the first month's rental shall be prorated.

4.3     Late Fees.  Tenant agrees to pay Landlord, promptly at the times and in the manner herein specified, all amounts due, without deduction, setoff, abatement, counterclaim or defense. If any amount due is not received by Landlord on or before five (5) days following the date on which it is due, Tenant shall pay Landlord a late charge equal to five percent (5%) of the amount of such past due payment, notwithstanding the date on which such payment is actually paid to Landlord.  Failure for Tenant to pay any amounts due hereunder on or before the due date constitutes a default hereunder, however, Landlord's election to accept amounts due after the due date shall not operate as a waiver or modification of the amounts due or payment terms for any subsequent months.

4.4     Administrative Fees.  Tenant shall pay an annual $100.00 administrative fee per Premises location payable to Landlord upon the inception of the initial term of this Lease, and on each anniversary date thereafter during the remaining term or any extended term thereof.  Tenant shall pay a $200.00 monthly administrative fee payable to Landlord on the first day of each month during the initial term and any extended term of this Lease.

4.5     Merchandise Inventory.  Tenant agrees to purchase from Landlord the existing merchandise inventory currently held at the Premises for resale to the public at a price equal to seventy-five percent (75%) of the retail price of such inventory as determined as provided herein.  Such payment to be made to Landlord immediately following the count and retail pricing of such inventory by an independent third party contracted by Landlord; provided, however, there shall be deducted from such payment the amount of the Concession as provided in Section 38, below. Landlord and Tenant hereby acknowledge that there has already been conducted inventory counts, pricing, and payment for such

Store # LA (38) Brothers

inventory at those Premises locations as listed on **Exhibit E** attached hereto.

**5.      UTILITIES, COMMON AREA MAINTENANCE, TAXES AND OTHER AMOUNTS.**

5.1      Utilities. Tenant shall bear responsibility for and pay all utility bills, including, but not limited to, water charges, sewer, gas, electricity, fuel, telephone, light and heat for the leased Premises.  Tenant shall also bear responsibility for and pay all charges for garbage collection services or other sanitary services rendered to the leased Premises or used by Tenant in connection therewith.  If Tenant fails to pay any of said utility bills, charges for garbage collection or other sanitary services or other amounts due, Landlord may pay same and such payment may be added to the rent next due.

5.2      Taxes.  Tenant shall pay all Taxes relating to the Premises to the Landlord on a monthly basis, with one/twelfth (1/12) of the total amount of annual taxes (based on the immediately prior tax year), and Landlord shall make the payments to the taxing agencies when such payments are due.  Landlord shall give the Tenant a notice annually stating the amount of monthly tax payments payable to Landlord under this Section. "Taxes" means all federal, state, local, governmental, special district and special service area taxes, charges, assessments and any other government charges, surcharges and levies, general and special, ordinary or extraordinary, including business license fees or charges (including interest thereon whenever same may be payable in installments) which Landlord shall pay or be obligated to pay arising out of the use, occupancy,  management, repair or replacement of the Premises, any appurtenance thereto or any property, fixtures or equipment thereon.

5.3      Premises Insurance.  Landlord shall at all times during the Term of this Lease procure and maintain in full force and effect an All-Risk Premises Insurance Policy on the Premises, which shall include flood insurance if the Premises is in a flood zone, and on all improvements constructed thereon and any additions or alterations thereto or replacements thereof.  Said policy shall contain a Replacement Cost Endorsement, insuring against perils therein specified, in an amount equal to not less than one hundred percent (100%) of the replacement cost of all improvements on the Premises, exclusive of foundation and excavation costs, the proceeds of which shall be payable to Landlord and any designated mortgagee in accordance with their respective interests therein.  The cost of such insurance shall be billed to Tenant on a monthly basis, which shall be paid at the same time and by the same method as the monthly rent.

**6.      USE OF PREMISES AND TECHNOLOGY.**

6.1      Use of Premises. Tenant may use the Premises and the improvements thereon only for the operation of a gas station and convenience store for the sale of gasoline and other petroleum products and ancillary products associated therewith and normally found in a gas station

convenience store and as otherwise permitted by this Lease including incidental products and food, but in all cases subject to the limitations set forth in this Lease and in all cases subject to and in compliance with all local, state and federal laws and regulations. Tenant shall be responsible for obtaining and keeping valid and active all licenses and permits necessary and proper for and associated with said uses. Tenant shall not encumber the Premises or otherwise enter into any service or supply agreements which, by their terms, seek to encumber the Premises or exceed or extend beyond the scope of the uses granted or the time periods provided by this Lease without the prior express written permission of Landlord. Tenant shall not enter into any agreements related to or directly for the provision of internet or network connectivity or support services or financial services on or at the Premises without the express prior written consent of Landlord. The Premises shall not be used by Tenant for any purpose not expressly provided herein unless Landlord agrees in writing to such additional use. The Premises shall not be used for any illegal purpose, or in any manner so as to create any nuisance or trespass, or in any manner to vitiate the insurance or increase the rate of insurance on the Premises. Tenant shall not commit or allow any waste or nuisance upon the leased Premises, and shall maintain the Premises in a clean, neat, orderly, and attractive condition.

6.2    Use of Technology.  Dealer shall use such electronic software reporting systems for conducting market surveys, electronic measurement, tracking, and reporting of fuel and merchandise inventory levels, and recording and reporting of fuel and merchandise sales and all other sales conducted at the Locations as directed by Supplier; current systems may include, but are not limited to, Black Box, Opis, JBOX, Wireless Guardian, and Price Advantage technology ("Reporting Systems"). Dealer shall be responsible for all applicable monthly charges and fees for the use of such Reporting Systems, with such monthly charges and expenses to be paid via electronic fund transfers (EFT / ACH) from Dealer's account, and Dealer agrees, further, to defend, indemnify and hold the Supplier, its subsidiaries, divisions, affiliates, Dealers and employees harmless from any and all claims, injuries, damages, losses or suits including attorney fees, arising out of or in connection with the use of such Reporting Systems.

7.    **OPERATION OF THE PREMISES.**  During the Term of the Lease, Tenant shall:

(a)  keep the Premises, buildings, equipment, fixtures, rest rooms, sidewalks, approaches, and driveways in good condition, properly lighted, clean, safe, sanitary, and free of trash, rubbish, and other debris;

(b)  keep the approaches, driveways, and service areas uncluttered and free of parked vehicles, trailers, and other obstructions, including ice and snow, at all times;

(c)  not engage in or permit any improper act or conduct on the Premises detrimental to Tenant, Landlord, or any member of the public; and

(d)  comply with all laws, ordinances, rules, or regulations of constituted public authority

Store # LA (38) Brothers

applicable to the use and occupancy of the Premises, use of the equipment and the conduct of the business.

**8.      MOTOR FUEL SUPPLY, REPORTING AND OTHER AGREEMENTS.**

8.1      Commensurate with the execution and commencement of this Lease, Tenant has entered into one or more motor fuel supply agreement(s) with an affiliated entity of Landlord (collectively, the "Fuel Supply Agreement") applicable to the Premises and of even date herewith and.  Tenant hereby agrees that is must comply with all terms and conditions set forth in such Fuel Supply Agreement, including without limitation, compliance with OPIS. In the event the Landlord chooses to enter into a supply agreement for the delivery of motor fuels to the Premises (whether or not such agreement covers other properties owned or managed by Landlord) (the "Transport Agreement"), Tenant must also enter into and comply with all the terms and conditions set forth in such Transport Agreement, and Landlord reserves the right to negotiate any such Transport Agreement and to receive payments under any such Transport Agreement.  Tenant's failure to meet any minimum monthly or annual petroleum sale requirements applicable to Tenant as set forth in the Fuel Supply Agreement or by the Landlord shall constitute a default hereunder. Upon said default, the Landlord may, upon ten (10) days prior written notice, terminate this Lease and regain possession of the Leased Premises, by self-help or otherwise. Tenant shall provide, in addition to the gross sales reports required to be provided to and/or made available for inspection by Landlord pursuant to this Lease, all records and information as Landlord may request from time to time relating to Tenant's retail sale of motor fuels and amounts of motor fuels dispensed at the Leased Premises during the Term.

8.2      Food Royalty.  Tenant recognizes and has been informed of certain prepared food product offerings that can be provided to Tenant by certain affiliates and/or business partners of Landlord (the "Affiliated Food Products") under a separate agreement with such Affiliated Food Products provider for inclusion in and as a part of Tenant's product offerings within the retail business operations at the Premises.  Tenant agrees to pay Landlord a royalty equal to five percent (5%) of all such sales of Affiliated Food Products at the Premises (the "Food Royalty").  The Food Royalty shall be paid monthly and be added to the Minimum Monthly Rent Due for each month hereunder.  Tenant hereby agrees that it shall specifically enter into a food supply agreement for the sale of Brothers Fried Chicken at each Premises location.  Tenant shall, when reporting Gross Sales to Landlord in accordance with Section 3.1(d) above, provide a separate line-item report for Gross Sales of all Affiliated Food Products sales made in such calendar month. Such line-item report shall separately itemize sales for each category or brand of Affiliated Food Products. If Tenant fails to prepare and deliver the foregoing report of sales of Affiliated Food Products as part of its overall reporting of Gross Sales required in Section 3.1(d), above, then Landlord shall have the right, in addition to the other rights and remedies set forth in this Lease and in addition to any other penalties or fees, to collect One Thousand Five Hundred Dollars ($1,500) from

Store # LA (38) Brothers

Tenant on the 15th day of the month immediately following the month for which the Gross Sales report was delivered or was to be delivered to Landlord, which sum shall be deemed liquidated damages for lost rent, administrative costs, and overhead expenses resulting from such failure.

8.3     Financial Reporting/Auditing. During the Term of this Agreement, all operating revenue and expenses incurred in association with the operation of the businesses at the Premises shall be calculated (in accordance with Landlord's audit standards) by Tenant and reported to Landlord on a monthly basis and no later than the fifteenth (15th) day following the end of the calendar month as otherwise provided below.  Landlord shall have the right, from time to time, to cause its accountants, auditors and/or representatives to inspect and audit the financial books and records of Tenant with respect to the business operations at the Premises.  During the Term hereof, Tenant shall fully and promptly pay for all operating expenses of the businesses at the Premises including, without limitation, all vendors, suppliers, support services, water, sewer, gas, heat, light, power, telephone, internet and related services and all other public and private utilities of every kind furnished to the Premises or used by Tenant in association therewith during the Term.  Tenant shall cooperate with Landlord in maintaining records and reporting financial results hereunder and shall cause its accountants and auditors to maintain accurate records of and provide Landlord with a written accounting of all operating revenue and operating expenses on at least a monthly basis during the Term.

9.     **ABANDONMENT OF LEASED PREMISES.**  Tenant agrees not to abandon or vacate the leased Premises during the period of this Lease and agrees to use said Premises only for purposes granted herein until the expiration or termination hereof.  None of the equipment owned by Landlord, including as may be provided for in an accompanying equipment lease, shall be removed from the Premises.

10.     **REPAIRS AND MAINTENANCE.**

10.1     Repairs and Maintenance by Tenant. Landlord gives to Tenant exclusive control of the Premises (exclusive of the fuel islands) and shall be under no obligation to inspect said Premises. Tenant acknowledges that Tenant has had the right to inspect the Premises, including all equipment located thereon, and Tenant accepts the same in their present condition as suited for the intended use by Tenant "AS IS, WITHOUT WARRANTY."  During the Term, Tenant shall, at Tenant's sole cost and expense, maintain in good order and repair the leased Premises, and all equipment, fixtures and other improvements located upon the Premises.  Tenant further agrees to care for the grounds around the building, including the mowing of grass, care of shrubs, and general landscaping. Additionally, Tenant shall be responsible for repairs to the roof, foundation, exterior walls, underground utility and sewer pipes. Tenant agrees to return the Premises and all equipment, fixtures, and other improvements to Landlord, at the expiration or prior to the termination of this Lease, in as good condition and repair as when first received, natural wear and tear and acts of God excepted.  Tenant understands that Tenant is responsible

for any replacement and upgrade to any equipment upon the Premises and any related costs and/or expenses shall be borne by Tenant. In addition to the foregoing, Tenant shall perform and cause to be completed no later than September 1, 2023, the repairs listed on **Exhibit D** attached hereto.  Should Tenant fail to complete such repairs and improvements by September 1, 2023, Landlord may undertake such repairs and/or improvements as have not been completed and case them to completed and charge Tenant therefor.

10.2    Repairs and Maintenance by Landlord.  It is acknowledged that the intent of this paragraph is for the Landlord to have **no** duty to repair or maintain any portion of the Premises, equipment, fixtures, or other improvements located thereon whatsoever except as otherwise provided herein.

10.3    Environmental Management and Inspection Fees. Tenant shall keep in good repair each underground gasoline storage tank ("UST") and underground fuel lines at all Premises locations shown and listed on Exhibit F hereto, except repairs rendered necessary by the acts or omissions of Landlord, its agents, employees and invitees.  For all other Premises locations, Landlord shall keep in good repair each UST and underground fuel lines at such Premises locations, except repairs rendered necessary by the acts or omissions of Tenant, its agents, employees and invitees.  Tenant shall also reimburse Landlord for its monthly environmental management consulting fees incurred by Landlord during the term and any extended term of this lease.  Landlord shall select an environmental firm of its choosing, and nothing contained herein shall be deemed to prohibit Landlord from selecting any other qualified environmental management company to perform environmental management services for Landlord in regard to the Premises, at a cost that is usual and customary in the industry.  Landlord shall be under no obligation to inspect said Premises.  Tenant shall promptly report in writing to Landlord any defective condition known to it which Landlord is required to repair, and failure to so report such defects shall make Tenant responsible to Landlord for any liability incurred by Landlord by reason of such defects. Tenant agrees to engage indemnify, defend, and hold Landlord harmless from all clean-up costs, personal injury, death or property damage claims, and fines or penalties which arise out of or are related to the leakage of petroleum products during the Term of the Lease but not for any matters arising before the inception hereof.  Further, if applicable, Tenant agrees to participate in the applicable state's Petroleum Storage Tank Trust Fund and take all actions necessary to maintain eligibility thereunder.  Tenant shall be liable for the deductible under the applicable state's Storage Tank Trust Fund should a release occur, unless such release is caused by the failure of Landlord to keep the underground gasoline storage tanks and underground fuel lines in good repair, as provided herein.

10.4    Record Keeping. Tenant agrees to provide to Landlord upon demand, or at a minimum, at least annually, copies of all leak detection or other compliance records.  Tenant shall maintain such records for a minimum of three (3) years.

Store # LA (38) Brothers

11. **ENVIRONMENTAL/SOIL COMPLIANCE.** Tenant shall comply with all environmental laws, rules and regulations pertaining to operation of the business on the Premises including all of the requirements pertaining to leak detection and other regulatory compliance issues associated with the use of the underground storage tanks.

12. **DESTRUCTION OF OR DAMAGE TO PREMISES.** If Premises are totally destroyed by storm, fire, lightning, earthquake, or other casualty, this Lease shall terminate.

13. **INDEMNIFICATION OF LANDLORD AGAINST LOSS OR CLAIM.** For and during the Term of this Lease, Tenant shall protect, indemnify, defend, and save harmless Landlord from and against all claims, demands, liability, losses, or costs, whether from injury to persons or loss of life or damage to property occurring on or within the Premises and arising in any manner, directly or indirectly, out of the use and occupancy of the Premises by Tenant. Tenant shall, at Tenant's expense, provide and keep in force for the benefit of Landlord comprehensive general liability insurance covering each Premises location and the businesses to be operated thereon, in which each insurance policy or policies Landlord, as well as Tenant, shall be named as an insured. The said policy or policies of insurance shall provide for limits of liability for bodily injury of not less than $1,000,000.00 single limit coverage for each accident or occurrence, and not less than $250,000.00 for property damage. Said policy shall include any "dram shop" or liquor liability coverage in the event Tenant sells alcoholic beverages at the Premises. Tenant shall furnish to Landlord evidence of such insurance policies within fifteen (15) days of the date hereof and at such other times as Landlord may require. Tenant shall defend, indemnify, and save harmless Landlord from and against all claims, demands, liabilities, losses, or costs to which Landlord may be subjected for or by reason of any person, firm, or corporation seeking to hold or holding Landlord liable or in any way responsible for the debts or obligations incurred in any manner in connection with the conduct and operation of the business conducted on the Premises.

14. **GOVERNMENTAL ORDERS.** Tenant agrees that, at Tenant's own expense, Tenant will promptly comply with all requirements of any legally constituted public authority made necessary by reason of Tenant's occupancy of said Premises.

15. **CONDEMNATION.** If the whole of the leased Premises, or such portion thereof as will make the Premises unusable for the purposes herein leased, shall be condemned by any legally constituted authority for any public use or purpose, then in either of said events, the Term hereby granted shall cease from the date when possession thereof is taken by public authorities, and rental shall be computed and paid as of said date. Each party may make a claim against the condemning authority for their respective interests in the property.

Store # LA (38) Brothers

DocuSign Envelope ID: D37AF749-3C19-40ED-9E94-DE721330B2EB

16.     **ASSIGNMENT, SUBLETTING AND CHANGE OF CONTROL.**  Tenant shall not assign or sublet this Lease or any interest hereunder, or sublet the Premises or any part thereof, or permit the use of the Premises by any party other than Tenant without the prior written consent of Landlord.  Landlord grants Tenant a one-time assignment of the Lease to each of Tenant's dealer/operators at each Premises location.  No such assignment or sublease shall have the effect of releasing Tenant from this Lease.  For each request for assignment or sublease by Tenant that is approved by Landlord, Tenant agrees to be responsible for and reimburse Landlord for it's attorney's fees associated with the review, approval and documentation thereof.  Tenant acknowledges that Landlord has relied both on the business experience and creditworthiness of Tenant and upon the particular purposes for which Tenant intends to use the Premises in entering into this Lease.  Without the prior written consent of Landlord: (i) no direct or indirect Transfer of an interest in Tenant (whether by stock, partnership interest or otherwise, voluntarily or by operation of law) shall occur; (ii) no direct or indirect interest in Tenant shall be pledged, encumbered, hypothecated or assigned as collateral for any obligation of Tenant; and (iii) no change of Control of Tenant shall occur (each of items (i) through (iii) are hereinafter referred to as a "Transfer").  As used herein and for purposes hereof, the term "Control" shall mean with respect to an entity that is a corporation, limited liability company, partnership or other entity, the right to exercise, directly or indirectly, more than fifty percent (50%) of the voting rights attributable to the ownership interests of the entity, with respect to any non-publicly traded company, and more than ten percent (10%) ownership, or management control, with respect to a publicly traded company. Landlord hereby agrees that any rental income derived from any approved sublease by Tenant shall be the property of Tenant hereunder.

17.     **DEFAULT.**  It is mutually agreed that in the event Tenant (i) becomes insolvent, (ii) is generally unable to pay, or fails to pay, its debts as they become due, (iii) files, or has filed against it, a petition for voluntary or involuntary bankruptcy or pursuant to any other insolvency law, (iv) makes or seeks to make a general assignment for the benefit of its creditors, or (v) applies for, or consents to, the appointment of a trustee, receiver, or custodian for a substantial part of its property or business; or (vi) if Tenant violates or is in default of any other agreements between Landlord and Tenant; Landlord, at its option, may provide ten (10) days' notice of said default and the right to cure said event of default, and if Tenant has not cured said default within said period, Landlord may:

(a)  terminate this Lease by written notice to Tenant whereupon this Lease shall terminate immediately, and possession of the Premises shall immediately be returned to Landlord;

(b)  not terminate this Lease and enter the Premises and take possession thereof and relet the Premises or any portion thereof on such terms as Landlord deems appropriate.  Any rent from any reletting shall be applied to any indebtedness other than rent owing to Landlord, second to Landlord's attorney's fees and brokerage fees and other expenses of exercising its rights, and third, to the rent due.  Tenant agrees to pay any deficiency within ten (10) days of demand by Landlord therefor; or

Store # LA (38) Brothers

(c)  pursue separately or concurrently, any and all other remedies allowed by law or in equity.

Any notice provided in this paragraph may be given by Landlord or its attorney.  Upon Lease termination by Landlord, Tenant will at once surrender possession of the Premises to Landlord and remove all of Tenant's effects therefrom; and Landlord may forthwith re-enter the Premises and repossess itself thereof, and remove all persons and effects therefrom, using such force as may be necessary without being guilty of trespass, forcible entry, detainer, or other tort.  If Tenant refuses to surrender possession immediately, Landlord may institute appropriate legal proceedings and Tenant agrees that Landlord may obtain injunctive relief for removal of Tenant, should Tenant's leasehold become subject to cancellation hereunder.

It is expressly agreed that no termination of this Lease as the result of Tenant's default or breach shall have the effect of releasing Tenant from his obligation to pay the full Minimum Monthly Rent due for the entire period of the then existing Term.

18.    **SIGNS.** Tenant shall not install, paint, display, inscribe, place, or affix any sign, picture, advertisement, notice, lettering, or direction ("Signs") on the exterior of the Premises, the common areas of the building upon the Premises, the interior surface of glass and any other location which could be visible from outside of the Premises without first securing written consent from Landlord therefor. Any Signs permitted by Landlord shall, at all times, conform with all municipal ordinances or other laws, rules, regulations, deed restrictions, and protective covenants applicable thereto.  Tenant shall remove all Signs at the expiration or other termination of this Lease, at Tenant's sole risk and expense, and shall in a good and workman like manner properly repair any damage caused by the installation, existence, or removal of Tenant's Signs.

19.    **QUIET ENJOYMENT.** So long as Tenant complies with all provisions hereof, Tenant shall have quiet enjoyment of the Premises.

20.    **EFFECT OF TERMINATION OF LEASE.**  No termination of this Lease prior to the normal ending thereof, by lapse of time or otherwise, shall affect Landlord's right to collect rent for the full term.

21.    **SUPERIOR LEASEHOLD'S AND MORTGAGEE'S RIGHTS.**  Tenant's rights under this Lease and the Fuel Supply Agreement and its use of the Premises is subordinate to and at all times shall be subject to the terms, provisions and conditions of any superior lease or similar agreement or any leasehold interest superior to this Lease and encumbering the Premises.  Tenant's rights under this Lease shall also be subject to any bona fide mortgage or deed to secure debt, which is now, or may hereafter be, placed upon the Premises by Landlord. Tenant agrees to cooperate with Landlord's efforts to finance or refinance the Premises and to sign or consent to any such financing arrangements, including providing estoppel

Store # LA (38) Brothers

DocuSign Envelope ID: D37AF749-3C19-40ED-9E94-DE721330B3F3

certificates and any other instrument reasonably required. Further, Tenant shall provide financial income statements for the Premises to Landlord, showing the sales, profits and losses, assets and liabilities pertaining to the Premises. Such financial records shall be provided within thirty (30) days after the end of each fiscal quarter and within one hundred (100) days after the end of each fiscal year.

22.     **NO ESTATE IN LAND.** Except as otherwise provided herein, this contract shall create the relationship of Landlord and Tenant between the parties hereto; no estate shall pass out of Landlord. Tenant's interest in the Premises is possessory only, and personal to Tenant, and is not subject to levy or sale, nor assignable by Tenant except by Landlord's prior written consent.

23.     **HOLDING OVER.** If Tenant remains in possession of the Premises after expiration of the Term hereof, with or without Landlord's acquiescence and without any express agreement of the parties, Tenant shall be a Tenant at will at 150% the rental rate in effect at the end of the Lease. There shall be no renewal of this Lease by operation of law.

24.     **ATTORNEY'S FEES AND HOMESTEAD.** Should Landlord retain counsel for the purpose of enforcing, or preventing the breach of, any provision hereof, including the institution of any action or proceeding, to enforce any provision hereof or for damages for any alleged breach of any provision hereof, or for a declaration of such party's rights or obligations hereunder, then, whether such matter is settled by negotiation, or judicial determination, the Landlord shall be entitled to be reimbursed by Tenant for all costs and expenses incurred, including reasonable attorneys' fees. Tenant waives all homestead rights and exemptions which it may have under any law against any obligations owing under this Lease. Tenant hereby assigns to Landlord its homestead and exemption.

25.     **SERVICE OF NOTICE.** Any notices to Tenant required under this Lease, shall be sent by certified mail, overnight delivery to the address first written above or by electronically verifiable means to such email address as provided by Tenant.

26.     **TIME OF ESSENCE.** Time is of the essence of this Lease.

27.     **RIGHTS CUMULATIVE.** All rights, powers, and privileges conferred hereunder upon parties hereto shall be cumulative, including those rights given by law.

28.     **NO WAIVER OF RIGHTS.** All rights, powers, and privileges conferred hereunder upon parties hereto shall be cumulative, including those rights given by law. No failure of Landlord to exercise any power given Landlord hereunder, or to insist upon strict compliance by Tenant with its obligation hereunder, and no custom or practice of the parties at variance with the terms hereof shall constitute a waiver of Landlord's right to demand exact compliance with the terms hereof.

Store # LA (38) Brothers

**29.     LEGALITY OF AGREEMENT.**  In the event any portion or portions of this Lease are declared unconstitutional, illegal, void, or of no force and effect, the balance of this Lease shall remain in full force and effect and enforceable as a binding contract.

**30.     TERMS INCLUSIVE.**  "Landlord" as used in this Lease shall include Landlord, its assigns, and successors.  "Tenant" shall include Tenant, his heirs, and representatives, and if this Lease shall be validly assigned or sublet, shall also include Tenant's assignees or sublessees, as to such assignment or sublease.  "Landlord" and "Tenant" include male and female, singular and plural, and shall also include any corporation, partnership, or individual, as may fit the particular parties.

**31.     LICENSES AND PERMITS.**  During the Term, Tenant shall be responsible to obtain and maintain, at Tenant's sole cost and expense, Tenant's own licenses and/or permits required to operate such a business upon the Premises, including, but not limited to any necessary beer/wine, liquor and lotto licenses. Tenant agrees to acquire from the appropriate authorities, and agrees to maintain, any required and/or necessary permits, licenses and/or qualifications, prior to:

(a)  operating Tenant's business upon the Premises; and/or

(b)  making any improvement, modification or other change to the Premises (said improvement, modification or change may require the prior written consent of Landlord). Tenant shall be responsible for all obligations, claims, and debts of the business upon the Premises arising during the Term. Tenant agrees to indemnify and hold Landlord harmless from all losses, claims, damages, or assessments, including attorney fees and costs, incurred by Tenant or the business operated upon the Premises, for any citation/violation of any permit or license.

Landlord agrees to cooperate and assist Tenant where reasonably possible and appropriate in obtaining such licenses and permits.

**32.     ENTIRE AGREEMENT.**  This document contains the entire agreement between the parties hereto and supercedes and replaces any and all other prior agreements, either verbal or written, by, between, or among the parties hereto and no representations, inducements, promises, or agreements, oral or otherwise, between the parties, not embodied herein, shall be of any force or effect.

**33.     ELECTRONIC TRANSMISSION AND SIGNATURE.**   This Lease may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement.  A signed copy of this Lease delivered by facsimile, email or other means of Electronic Transmission and/or with Electronic Signatures shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

Store # LA (38) Brothers

DocuSign Envelope ID: D37AF749-3C19-40ED-9E94-DE721330B3EB

(a) "Electronic Transmission" means any form of communication not directly involving the physical transmission of paper, including the use of, or participation in, one or more electronic networks or databases (including one or more distributed electronic networks or databases), that creates a record that may be retained, retrieved, and reviewed by a recipient thereof and that may be directly reproduced in paper form by such a recipient through an automated process.

(b) "Electronic Signature" has the meaning provided in the Georgia Electronic Records and Signatures Act, O.C.G.A. § 10-12-1 et seq.

**34.     ALTERATIONS.**  Tenant shall not make any alterations, additions, or improvements to the Premises without Landlord's prior written consent.  Tenant shall promptly remove any alterations, additions, or improvements constructed in violation of this paragraph upon Landlord's written request. All approved alterations, additions, and improvements will be accomplished in a good and workmanlike manner, in conformity with all applicable laws and regulations, and by a contractor approved by Landlord, free from any liens or encumbrances.  Landlord may require Tenant to remove any alterations, additions or improvements (whether or not made with Landlord's consent) at the termination of this Lease and to restore the Premises to its prior condition, all at Tenant's expense.  All alterations, additions and improvements which Landlord has not required Tenant to remove shall become Landlord's property and shall be surrendered to Landlord upon the termination of this Lease, except that Tenant may remove any of Tenant's machinery or equipment which can be removed without material damage to the Premises. Tenant shall repair, at Tenant's expense, any damage to the Premises caused by the removal of any such machinery or equipment.

**35.     ADDITIONAL PROVISIONS.**

35.1     Acknowledgement of Risks.  Without limiting the other terms and conditions of this Lease, Tenant specifically acknowledges and further agrees that:

(a) There are inherent risks in the operation of a business at the Premises and Tenant is willing and able to bear such risks, including, without limitation, the loss of any investment in the Premises or such business upon termination of this Lease;

(b) upon termination of this Lease for any reason, Landlord shall have the right to use the Premises as it deems appropriate, including, but not limited to selling the Premises, operating a similar or other business upon the Premises, converting the Premises to any other use Landlord deems appropriate or leasing the Premises to a new lessee;

Store # LA (38) Brothers

(c) Landlord has no obligation to lease the Premises to any new lessee, whether or not prospective lessee is willing to purchase Tenant's inventory, trade fixtures, or equipment;

(d) Any improvements, fixtures or equipment are not or cannot be removed in accordance with the provisions of the Lease shall become the sole and entire property of Landlord upon termination of this Lease;

(e) Landlord has no obligation to reimburse Tenant for any losses which Tenant might suffer in the operation of Tenant's business at the Premises or due to the termination of this Lease; and

(f) Landlord has no obligation to purchase any of Tenant's inventory, equipment or trade fixtures, or to reimburse Tenant for any sums invested by Tenant to improve the Premises or the business operated by Tenant on the Premises; provided, however, should this Lease be terminated prior to the end of any Term hereof, Landlord agrees to purchase the merchandise inventory held in the store on the Premises for resale to the public.

35.2   Personalty Removed Upon Lease Termination.  At the termination or expiration of the Lease Term, Tenant shall surrender the Demised Premises on the same condition as it was in upon delivery or possession thereto under this Lease, reasonable wear and tear excepted, and shall deliver all keys to locks to Landlord.  Before surrendering the Demised Premises, Tenant shall remove prior to the expiration of the Lease Term, all its personal property, trade fixtures, alterations, additions and decorations and shall promptly repair any damage caused thereby.  Tenant's obligations to perform under this provision shall survive the expiration of the Lease Term.  If Tenant fails to remove its property upon the termination or expiration of the Term, such property shall be deemed abandoned and shall become the property of Landlord.

35.3   Background Check.  This Lease is contingent upon Tenant passing a background check.

**36.   CROSS-DEFAULTS**. Any default by Tenant under the terms of this Lease shall likewise constitute a default of Tenant, as customer, Tenant, or otherwise, under the terms of any and all other agreements between these same parties, including without limitation, other leases, motor fuel supply or commissioned sales agreements, purchase and /or sale agreement and other contracts, whether or not pertaining to the Premises, or other Premises or locations or to the sale or purchase for resale of motor fuels or other products. This provision shall also apply to any agreements with Landlord's affiliated entities and related parties including, but not limited to, Mountain Express Oil Company, a Georgia corporation and its subsidiaries.  In the event Tenant is a tenant of a third-party landlord at the Premises, and Landlord has acquired the written consent to this provision from such landlord by way of a separate document or

Store # LA (38) Brothers

16

agreement, default by Tenant hereunder shall likewise constitute a default under the terms of the lease between Tenant and such landlord and a default under the lease shall be a default under this Lease.

**37.    SALE OF BUSINESS/GOODWILL SPLIT.** Notwithstanding anything to contrary in this Lease, Tenant agrees as follows: Tenant shall provide Landlord with written notice of the availability for sale of this Lease and Tenant's business being operated and conducted at any Premises location or all such Premises locations pursuant thereto ("Business") or any offers received by Tenant to purchase the Business at any or all such Premises locations.  Any such sale of the of the Business shall be subject to, and Tenant must first obtain the approval of Landlord therefor, in writing and in Landlord's sole and absolute discretion, and as otherwise provided in this Lease.  Tenant further agrees that, notwithstanding anything to the contrary contained in this Lease, Landlord shall have the absolute and unfettered right to seek and obtain offers to purchase the Business which, if accepted by Landlord and such offeror, Tenant hereby consents to such sale and hereby agrees to cooperate and assist Landlord in consummating such sale of the Business. In the event Landlord sells the Business at all of the Premises locations prior to March 15, 2024, Landlord agrees to remit to Tenant a check in the amount of Six Million and 00/100 Dollars ($6,000,000.00).  Tenant and Landlord further agree that, upon any sale of the Business after March 15, 2024, whether originated by Tenant or by Landlord, Tenant and Landlord shall each be paid, at the closing of such sale of the Business, one-half (50%) of any and all payments received in respect of net sales proceeds, exclusive of any proceeds received for payment of any inventory at such Premises locations. Landlord and Tenant further agree that, effective upon the closing of the sale of the Business in accordance herewith, this Lease, with respect to Tenant, and the commensurate Fuel Supply Agreement shall immediately terminate and be of no further force or effect and neither Landlord nor Tenant shall have any further obligations each to the other pursuant thereto except as otherwise specifically provided in this Lease or the Fuel Supply Agreement.

**38. CONCESSION.**  Landlord agrees to give Tenant the following concessions (collectively, the "Concession") to be credited against Tenant's inventory payment to be made pursuant to Section 4.5, the equipment and repairs for which each concession is given Tenant agrees to purchase, install, and complete no later than October 1, 2023:

- A concession for all fuel pump repairs at the Premises locations in the amount of Two Hundred Fifty Thousand and 00/100 Dollars ($250,000.00).
- A concession for repairs at Store #3079A and Store #4097 in the amount of Five Hundred Fifty Thousand and 00/100 Dollars ($550,000.00).
- A concession for the replacement of four (4) fuel pump dispensers and five (5) dual passports in the amount of Two Hundred Thousand and 00/100 Dollars ($200,000.00).
- A concession for necessary repairs at all Premises locations in the amount of Five Hundred Seventy-Six Thousand and 00/100 Dollars ($576,000.00).

Store # LA (38) Brothers

DocuSign Envelope ID: D37AF749-3C19-40ED-9E94-DF721330B3E9

- A concession for the Premises locations listed on Exhibit E in the amount of Three Hundred Thirty-Three Thousand Three Hundred Thirty-Four and 00/100 Dollars ($333,334.00).
- A deduction from the foregoing amounts in the amount of Two Hundred Thousand and 00/100 Dollars ($200,000.00) in payment of the security deposit due for the Premises locations exclusive of the Premises locations listed on Exhibit E and payable pursuant to Section 16 and Schedule 8 of the Fuel Supply Agreement.

The foregoing total Concession amount being equal to the amount of Eighty-Five Thousand Four Hundred Sixty-Six and 70/100 Dollars ($85,466.70) per Premises location exclusive of those Premises locations listed on Exhibit E for a total Concession amount equal to One Million Seven Hundred Nine Thousand Three Hundred Thirty-Four and 00/100 Dollars ($1,709,334.00).

**39.    RIGHT OF FIRST OFFER**.  Landlord agrees to provide Tenant with written notice of the availability of any of Landlord's businesses operated at and leases for such properties located in the State of Louisiana, other than the Premises locations (each an "Other Business"), for sale and offer such Other Business to Tenant on such terms and conditions as Landlord would offer the sale of same to any third party as determined by Landlord in its sole and absolute discretion, prior to marketing said Business to any third party. Tenant shall have ten (10) days from the date of Landlord's notice offering such Other Business to respond in writing to such offer. If Landlord has not received a written response by the end of said ten  (10) day period or if Tenant declines to accept Landlord's offer or makes a counteroffer which Landlord shall reject, in writing, as unacceptable in Landlord's sole and absolute discretion, Landlord shall thereafter be free to market the Other Business and sell such Other Business for not less than the counter-offer submitted or offer rejected by Tenant, as the case may be. If Tenant and Landlord agree on terms for the sale of the Business, but are subsequently unable, in good faith, to consummate an agreement with respect thereto acceptable to both Tenant and Landlord, Landlord shall thereafter be free to market the Business and sell the Business on such terms and conditions as Landlord shall determine, in its sole and absolute discretion, without any further obligation to offer said Business again to Tenant.

**40.    NON-CONVENIENCE STORE LEASES AT THE PREMISES LOCATIONS.**  The parties agree that Tenant shall act as landlord for the tenants occupying the leased space at the Premises locations that are not a part of the convenience store, and shall collect and keep the rent for such locations.

*[signatures on the following page]*

Store # LA (38) Brothers

DocuSign Envelope ID: D37AF749-3C10-40ED-9E94-DE721330B3E8

**IN WITNESS WHEREOF**, the parties have hereunto placed their hands on the day and year first written above.

<div style="margin-left:40%">

**LANDLORD:**

**MEX RE-SW-LA LLC**,

a Wyoming limited liability company

By: **MOUNTAIN EXPRESS OIL COMPANY,**

a Georgia corporation,

its Manager

By: _____

Turjo Wadud, CEO

Date: _____2/22/2023_____

**TENANT:**

**GSS HOLDINGS LA LLC,**

a Louisiana limited liability company

By: _____

Sukhranjan Multani, Manager

_____

Sukhranjan Multani, Individually

Date: _____2/20/2023_____

</div>

Store # LA (38) Brothers

DocuSign Envelope ID: D37AF749-3C19-40ED-9E94-DE721330B3F9

**EXHIBIT A**

**Premises Address and Commencement Dates**

| Store # | Commencement Date | Address |
|---|---|---|
| 3066A | 2/8/23 | 1675 Gause Blvd, Slidell, LA 70458 |
| 3069A | 3/8/23 | 2850 Belle Chasse Hwy, Gretna, LA 70056 |
| 3074A | 3/8/23 | 4101 S Claiborne, New Orleans, LA 70125 |
| 3075A | 3/8/23 | 4115 Airline Dr., Metairie, LA 70001 |
| 3077A | 3/15/23 | 4520 Jefferson Hwy, Metairie, LA 70121 |
| 3078A | 3/15/23 | 4662 General Degaulle Dr., New Orleans, LA 70131 |
| 3079A | 8/1/23 | 468 Lapalco Blvd, Gretna, LA 70056 |
| 4080 | 3/15/223 | 4940 Groom Road, Baker, LA 70714 |
| 3082A | 3/8/23 | 5310 Flannery Rd., Baton Rouge, LA 70814 |
| 4083 | 2/8/23 | 5701 Crowder Blvd, New Orleans, LA 70127 |
| 4089 | 2/9/23 | 1600 Manhattan Blvd, Harvey, LA 70058 |
| 4090 | 2/10/23 | 1227 Veterans Blvd, Kenner, LA 70062 |
| 4092 | 2/9/23 | 1944 Belle Chase Hwy, Gretna, LA 70056 |
| 4093 | 2/8/23 | 3659 Lapalco Blvd, Harvey, LA 70058 |
| 3094A | 2/10/223 | 2901 Hwy 90, Avondale (Westwego), LA 70094 |
| 4095 | 2/9/23 | 2000 Carol Sue Ave, Gretna, LA 70056 |
| 4097 | 8/1/23 | 2701 Canal Street, New Orleans, LA 70199 |
| 3098A | 3/8/23 | 300 Lee Drive, Baton Rouge, LA 70808 |
| 3099A | 3/15/23 | 2000 Earhart Blvd. Ste. A, New Orleans, LA 70113 |
| 4111 | 3/15/23 | 1000 Franklin Blvd, Gretna, LA 70053 |
| 4062 | 11/30/2022 | 1200 Westbank Expressway, Westwego, LA 70094 |
| 4063 | 11/30/2022 | 123 Terry Pkwy, Terrytown, LA 70056 |
| 4067 | 11/30/2022 | 1926 Newton St, New Orleans, LA 70114 |
| 4071 | 11/30/2022 | 3049 Loyola Dr, Kenner, LA 70065 |
| 4073 | 11/30/2022 | 3622 General Degaulle, New Orleans, LA 70114 |
| 4076 | 11/30/2022 | 4408 S I-10 Service Rd W, Metairie, LA 70001 |
| 4081 | 11/30/2022 | 502 Terry Pkwy, Terrytown, LA 70056 |
| 4084 | 11/30/2022 | 798 Jean Lafitte Blvd, Lafitte, LA 70067 |
| 4085 | 11/30/2022 | 8692 River Rd, Westwego, LA 70094 |
| 4088 | 11/30/2022 | 2698 Barataria Blvd., Marrero, LA 70072 |
| 4091 | 11/30/2022 | 3528 S I-10 Service Rd W, Metairie, LA 70001 |
| 4064 | 12/13/2022 | 1308 Jefferson Davis, New Orleans, LA 70125 |
| 4065 | 12/13/2022 | 13289 Old Hammond Hwy, Baton Rouge, LA 70816 |
| 4068 | 12/13/2022 | 2601 General DeGaulle Drive, New Orleans, LA 70114 |

Store # LA (38) Brothers

| 4070 | 12/13/2022 | 2900 Hwy 90, Avondale, LA 70094 |
| 4072 | 12/13/2022 | 3441 Manhattan Blvd, Harvey, LA 70058 |
| 4086 | 12/13/2022 | 9000 Westbank Expressway, Woodville, LA 70094 |
| 4087 | 12/13/2022 | 9410 Greenwell Springs, Baton Rouge, LA 70814 |

Store # LA (38) Brothers

**EXHIBIT B**

**Premises Base Rent**

| Store # | Address | BASE RENT | |
| | | Monthly Rent | Annual Rent |
|---|---|---|---|
| 3066A | 1675 Gause Blvd, Slidell, LA 70458 | $ 12,479 | $ 149,753 |
| 3069A | 2850 Belle Chasse Hwy, Gretna, LA 70056 | $ 8,003 | $ 96,037 |
| 3074A | 4101 S Claiborne, New Orleans, LA 70125 | $ 20,491 | $ 245,893 |
| 3075A | 4115 Airline Dr., Metairie, LA 70001 | $ 13,221 | $ 158,654 |
| 3077A | 4520 Jefferson Hwy, Metairie, LA 70121 | $ 11,228 | $ 134,740 |
| 3078A | 4662 General Degaulle Dr., New Orleans, LA 70131 | $ 3,772 | $ 45,266 |
| 3079A | 468 Lapalco Blvd, Gretna, LA 70056 | $ 7,253 | $ 87,036 |
| 4080 | 4940 Groom Road, Baker, LA 70714 | $ 25,123 | $ 301,470 |
| 3082A | 5310 Flannery Rd., Baton Rouge, LA 70814 | $ 14,376 | $ 172,518 |
| 4083 | 5701 Crowder Blvd, New Orleans, LA 70127 | $ 26,158 | $ 313,896 |
| 4089 | 1600 Manhattan Blvd, Harvey, LA 70058 | $ 43,542 | $ 522,501 |
| 4090 | 1227 Veterans Blvd, Kenner, LA 70062 | $ 43,704 | $ 524,453 |
| 4092 | 1944 Belle Chase Hwy, Gretna, LA 70056 | $ 14,214 | $ 170,572 |
| 4093 | 3659 Lapalco Blvd, Harvey, LA 70058 | $ 49,143 | $ 589,712 |
| 3094A | 2901 Hwy 90, Avondale (Westwego), LA 70094 | $ 19,900 | $ 238,805 |
| 4095 | 2000 Carol Sue Ave, Gretna, LA 70056 | $ 26,129 | $ 313,545 |
| 4097 | 2701 Canal Street, New Orleans, LA 70199 | $ 1,250 | $ 15,000 |
| 3098A | 300 Lee Drive, Baton Rouge, LA 70808 | $ 13,900 | $ 166,795 |
| 3099A | 2000 Earhart Blvd. Ste. A, New Orleans, LA 70113 | $ 14,251 | $ 171,011 |
| 4111 | 1000 Franklin Blvd, Gretna, LA 70056 | $ 37,141 | $ 445,696 |
| 4063 | 123 Terry Parkway, Terrytown, LA 70056 | $ 36,883 | $ 442,598 |
| 4081 | 502 Terry Parkway, Terrytown, LA 70056 | $ 40,025 | $ 480,295 |
| 4067 | 1926 Newton St, New Orleans, LA 70114 | $ 29,895 | $ 358,743 |
| 4088 | 2698 Barataria Blvd, Marrero, LA 70072 | $ 3,100 | $ 37,200 |
| 4084 | 798 Jean Lafitte Blvd, Lafitte, LA 70067 | $ 28,805 | $ 345,667 |
| 4076 | 4408 I-10 Service Road, Metairie, LA 70003 | $ 11,875 | $ 142,500 |
| 4091 | 3528 I-10 Service Road, Metairie, LA 70001 | $ 7,150 | $ 85,800 |
| 4071 | 3049 Loyola Drive, Kenner, LA, 70065 | $ 80,008 | $ 960,096 |
| 4085 | 8692 River Road, Westwego, LA 70094 | $ 29,790 | $ 357,483 |
| 4062 | 1200 Westbank Expressway, Westwego, LA 70094 | $ 51,289 | $ 615,467 |
| 4073 | 3622 General Degaulle, New Orleans, LA 70114 | $ 68,218 | $ 818,614 |
| 4064 | 1308 Jefferson Davis, New Orleans, LA 70125 | $ 27,968 | $ 355,616 |
| 4065 | 13289 Old Hammond Hwy, Baton Rouge, LA 70816 | $ 15,797 | $ 189,564 |

Store # LA (38) Brothers

| 4068 | 2601 General DeGaulle Drive, New Orleans, LA 70114 | $ | 38,895 | $ | 466,740 |
|------|----------------------------------------------------|---|--------|---|---------|
| 4070 | 2900 Hwy 90, Avondale, LA 70094 | $ | 28,848 | $ | 346,176 |
| 4072 | 3441 Manhattan Blvd, Harvey, LA 70058 | $ | 29,733 | $ | 332,796 |
| 4086 | 9000 Westbank Expressway, Woodville, LA 70094 | $ | 41,611 | $ | 499,332 |
| 4087 | 9410 Greenwell Springs, Baton Rouge, LA 70814 | $ | 15,477 | $ | 185,724 |
|      | **TOTAL** | $ | **990,646.65** | | |

Store # LA (38) Brothers

DocuSign Envelope ID: D37AF749-3C19-40ED-9E94-DE721330B3E9

**EXHIBIT C-1**

**Percentage Rent Premises Locations (first group)**

| Store # | Address |
|---------|---------|
| 4062 | 1200 Westbank Expressway, Westwego, LA 70094 |
| 4063 | 123 Terry Pkwy, Terrytown, LA 70056 |
| 4067 | 1926 Newton St, New Orleans, LA 70114 |
| 4071 | 3049 Loyola Dr, Kenner, LA 70065 |
| 4073 | 3622 General Degaulle, New Orleans, LA 70114 |
| 4076 | 4408 S I-10 Service Rd W, Metairie, LA 70001 |
| 4081 | 502 Terry Pkwy, Terrytown, LA 70056 |
| 4084 | 798 Jean Lafitte Blvd, Lafitte, LA 70067 |
| 4085 | 8692 River Rd, Westwego, LA 70094 |
| 4088 | 2698 Barataria Blvd., Marrero, LA 70072 |
| 4091 | 3528 S I-10 Service Rd W, Metairie, LA 70001 |
| 4064 | 1308 Jefferson Davis, New Orleans, LA 70125 |
| 4065 | 13289 Old Hammond Hwy, Baton Rouge, LA 70816 |
| 4068 | 2601 General DeGaulle Drive, New Orleans, LA 70114 |
| 4070 | 2900 Hwy 90, Avondale, LA 70094 |
| 4072 | 3441 Manhattan Blvd, Harvey, LA 70058 |
| 4086 | 9000 Westbank Expressway, Woodville, LA 70094 |
| 4087 | 9410 Greenwell Springs, Baton Rouge, LA 70814 |

Store # LA (38) Brothers

**EXHIBIT C-2**

**Percentage Rent Premises Locations (second group)**

| Store # | Address |
|---------|---------|
| 4080 | 4940 Groom Road, Baker, LA 70714 |
| 4083 | 5701 Crowder Blvd, New Orleans, LA 70127 |
| 4089 | 1600 Manhattan Blvd, Harvey, LA 70058 |
| 4090 | 1227 Veterans Blvd, Kenner, LA 70062 |
| 4092 | 1944 Belle Chase Hwy, Gretna, LA 70056 |
| 4093 | 3659 Lapalco Blvd, Harvey, LA 70058 |
| 4095 | 2000 Carol Sue Ave, Gretna, LA 70056 |
| 4097 | 2701 Canal Street, New Orleans, LA 70199 |
| 4111 | 1000 Franklin Blvd, Gretna, LA 70056 |

Store # LA (38) Brothers

DocuSign Envelope ID: D37AF749-2C19-40ED-9E94-DE72133082E9

**EXHIBIT D**

**REPAIRS AND IMPROVEMENTS**

Store 4088:   4 new dispensers and 5 dual passports

Store # LA (38) Brothers

**EXHIBIT E**

**Previously Counted Inventory Premises Locations**

| | |
|---|---|
| 4063 | 123 Terry Parkway, Terrytown, LA 70056 |
| 4081 | 502 Terry Parkway, Terrytown, LA 70056 |
| 4067 | 1926 Newton St, New Orleans, LA 70114 |
| 4088 | 2698 Barataria Blvd, Marrero, LA 70072 |
| 4084 | 798 Jean Lafitte Blvd, Lafitte, LA 70067 |
| 4076 | 4408 I-10 Service Road, Metairie, LA 70003 |
| 4091 | 3528 I-10 Service Road, Metairie, LA 70001 |
| 4071 | 3049 Loyola Drive, Kenner, LA, 70065 |
| 4085 | 8692 River Road, Westwego, LA 70094 |
| 4062 | 1200 Westbank Expressway, Westwego, LA 70094 |
| 4073 | 3622 General Degaulle, New Orleans, LA 70114 |
| 4064 | 1308 Jefferson Davis, New Orleans, LA 70125 |
| 4065 | 13289 Old Hammond Hwy, Baton Rouge, LA 70816 |
| 4068 | 2601 General DeGaulle Drive, New Orleans, LA 70114 |
| 4070 | 2900 Hwy 90, Avondale, LA 70094 |
| 4072 | 3441 Manhattan Blvd, Harvey, LA 70058 |
| 4086 | 9000 Westbank Expressway, Woodville, LA 70094 |
| 4087 | 9410 Greenwell Springs, Baton Rouge, LA 70814 |

Store # LA (38) Brothers

**EXHIBIT F**

**Wholesale Fuel Premises Locations**

| Store # | Address |
|---------|---------|
| 3066A | 1675 Gause Blvd, Slidell, LA 70458 |
| 3069A | 2850 Belle Chasse Hwy, Gretna, LA 70056 |
| 3074A | 4101 S Claiborne, New Orleans, LA 70125 |
| 3075A | 4115 Airline Dr., Metairie, LA 70001 |
| 3077A | 4520 Jefferson Hwy, Metairie, LA 70121 |
| 3078A | 4662 General Degaulle Dr., New Orleans, LA 70131 |
| 3079A | 468 Lapalco Blvd, Gretna, LA 70056 |
| 3082A | 5310 Flannery Rd., Baton Rouge, LA 70814 |
| 3094A | 2901 Hwy 90, Avondale (Westwego), LA 70094 |
| 3098A | 300 Lee Drive, Baton Rouge, LA 70808 |
| 3099A | 2000 Earhart Blvd. Ste. A, New Orleans, LA 70113 |

Store # LA (38) Brothers