UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | Chapter 7 |
| | § | (Previously Chapter 11) |
| MOUNTAIN EXPRESS OIL COMPANY, | § | Case No. 23-90147 (DRJ) |
| *et al.* | § | |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |

**MOTION FOR SUBSTANTIVE CONSOLIDATION OF THE CHAPTER 7 ESTATES
OF MOUNTAIN EXPRESS OIL COMPANY, ET AL.**

> **If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ within twenty-one days from the date this motion was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk within twenty-one days from the date this motion was filed. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

Janet Northrup (the "Trustee"), chapter 7 trustee of Mountain Express Oil Company ("MEX") and affiliated debtors (collectively, with MEX, the "Debtors"),[1] files this Motion for

---

[1] The following chapter 11 cases are jointly administered pursuant to the Joint Administration Order [Docket No. 33]: Mountain Express Oil Company [Case No. 23-90147]; 1200 Wego LLC [Case No. 23-90170]; 1227 Veterans, LLC [Case No. 23-90173]; 1308 Jefferson Davis LLC [Case No. 23-90183]; 13289 Old Hammond Highway LLC [Case No. 23-90244]; 1600 Manhattan Blvd, LLC [Case No. 23-90186]; 2601 Gen. Degaulle LLC [Case No. 23-90191]; 2698 Barataria Blvd LLC [Case No. 23-90197]; 2701 Canal Street LLC [Case No. 23-90199]; 2850 Belle Chasse Hgwy LLC [Case No. 23-90203]; 300 Lee Drive LLC [Case No. 23-90167]; 3049 Loyola Drive LLC [Case No. 23-90208]; 4115 Airline Hgwy., LLC [Case No. 23-90209]; 4408 S. I[1]10 Service Road LLC [Case No. 23-90212]; 4520 Jefferson Highway LLC [Case No. 23-90215]; 4662 GDD LLC [Case No. 23-90219]; 4915 Westbank Expwy LLC [Case No. 23-90222]; 4940 Groom Road, L.L.C. [Case No. 23-90226]; 5310 Flannery Road, LLC [Case No. 23-90232]; 798 Jean Lafitte, L.L.C. [Case No. 23- 90169]; 8692 River Road, LLC [Case No. 23-90233]; 9410 Greenwell Springs, LLC [Case No. 23-90238]; Alabama Terminal Property, LLC [Case No. 23- 90221]; Avondale Brothers No 128 LLC [Case No. 23-90247]; Avondale Investments, L.L.C. [Case No. 23-90251]; B&T Petroleum LLC [Case No. 23- 90225]; Brothers Belle Chasse, L.L.C. [Case No. 23-90257]; Brothers Carol Sue, LLC [Case No. 23-90262]; Brothers Expressway, Inc. [Case No. 23-90150]; Brothers I-10 Service Road, Inc. [Case No. 23-90154]; Brothers Petroleum, L.L.C. [Case No. 23-90267]; Brothers Stonebridge, Inc. [Case No. 23-90158]; Brothers Terry Parkway, Inc. [Case No. 23-90159]; Consolidated HR Services LLC [Case No. 23-90228]; Crowder Brothers, LLC [Case No. 23-90280]; Exxon General Degaulle, LLC [Case No. 23-90282]; Gause Operation, L.L.C. [Case No. 23- 90284]; Jamie Boulevard, LLC [Case No. 23-90286]; Lapalco Brothers No. 125, LLC [Case No. 23-90274]; Madison Auto Truck Plaza and Lucky Dollar Casino, LLC [Case No. 23-90218]; MEX Fuels LLC [Case No. 23-90234]; MEX Fuels NE LLC [Case No. 23-90235]; MEX Fuels NE-IL LLC [Case No. 23-90237]; MEX Fuels NE-IN LLC [Case No. 23-90240]; MEX Fuels NE-KY LLC [Case No. 23- 90242]; MEX Fuels NE-NJ LLC [Case No. 23-90245]; MEX Fuels NE-NY LLC [Case No. 23-90248]; MEX Fuels NE-OH LLC [Case No. 23-90249]; MEX Fuels NW LLC [Case No. 23-90250]; MEX Fuels NW-IA LLC [Case No. 23-90254]; MEX Fuels

14187776

Substantive Consolidation (the "Motion").

## I. SUMMARY OF MOTION

1. The Trustee seeks to substantively consolidate the bankruptcy estates of Debtors, effective as of the Debtors' Petition Date (March 18, 2023), pursuant to section 105 of the Bankruptcy Code and this Court's equitable powers.

---

NW-MO LLC [Case No. 23-90256]; MEX Fuels SE LLC [Case No. 23-90258]; MEX Fuels SE-GA LLC [Case No. 23-90265]; MEX Fuels SE-MS LLC [Case No. 23-90269]; MEX Fuels SE-TN LLC [Case No. 23-90276]; MEX Fuels SW LLC [Case No. 23-90283]; MEX Fuels SW-LA LLC [Case No. 23- 90288]; MEX Fuels SW-OK LLC [Case No. 23-90289]; MEX North Alabama, LLC [Case No. 23-90214]; MEX RE Holdings LLC [Case No. 23-90165]; MEX RE-NE LLC [Case No. 23-90174]; MEX RE-NE-IN LLC [Case No. 23-90187]; MEX RE-NE-NJ LLC [Case No. 23-90188]; MEX RE-NE-NY LLC [Case No. 23- 90189]; MEX RE-NE-NY-LI LLC [Case No. 23-90196]; MEX RE-NE-OH LLC [Case No. 23-90201]; MEX RE-NE-PA LLC [Case No. 23-90205]; MEX RE-NW LLC [Case No. 23-90213]; MEX RE-NW-IA LLC [Case No. 23-90217]; MEX RE[1]NW-KS LLC [Case No. 23-90223]; MEX RE-NW-MN LLC [Case No. 23-90230]; MEX RE-NW-MO LLC [Case No. 23-90236]; MEX RE-NW-ND LLC [Case No. 23-90241]; MEX RE-NW-WI LLC [Case No. 23-90253]; MEX RE-SE LLC [Case No. 23-90259]; MEX RE-SE-AL LLC [Case No. 23-90260]; MEX RE-SE-FL LLC [Case No. 23-90261]; MEX RE-SE-GA LLC [Case No. 23-90263]; MEX RE-SE[1]MS LLC [Case No. 23-90268]; MEX RE-SE-NC LLC [Case No. 23-90271]; MEX RE-SE-SC LLC [Case No. 23-90272]; MEX RE-SE-TN LLC [Case No. 23- 90273]; MEX RE-SW LLC [Case No. 23-90275]; MEX RE-SW-AR LLC [Case No. 23-90277]; MEX RE-SW-LA LLC [Case No. 23-90278]; MEX RE-SW-OK LLC [Case No. 23-90279]; MEX RE-SW-TX LLC [Case No. 23-90281]; Mississippi MEX Company, LLC [Case No. 23-90211]; Mountain Express Baking and Coffee Co. [Case No. 23-90285]; Mountain Express Ethanol Company [Case No. 23-90207]; Mountain Express Oil Company Southeast, LLC [Case No. 23- 90210]; Newton Brothers, Inc. [Case No. 23-90164]; South Claiborne Operation LLC [Case No. 23-90287]; Spartan Tank Management LLC [Case No. 23-90204]; Star Mountain Express, LLC [Case No. 23-90146]; Texas MEX Limited Company, LLC [Case No. 23-90145]; Webster P II L.L.C. [Case No. 23-90172]; WebsterP L.L.C. [Case No. 23-90168]; West Hill Ranch Group LLC [Case No. 23-90176]; WHRG Retail Ops LLC [Case No. 23-90148]; WHRG TC LLC [Case No. 23-90180]; WHRG TC-NE LLC [Case No. 23-90184]; WHRG TC-NE-PA LLC [Case No. 23-90190]; WHRG TC-NW LLC [Case No. 23-90193]; WHRG TC-NW-IA LLC [Case No. 23-90195]; WHRG TC-NW-KS LLC [Case No. 23-90149]; WHRG TC-NW-MO LLC [Case No. 23-90153]; WHRG TC-NW-ND LLC [Case No. 23-90156]; WHRG TC-NW-WY LLC [Case No. 23-90160]; WHRG TC-SE LLC [Case No. 23-90162]; WHRG TC-SE-AL LLC [Case No. 23-90171]; WHRG TC-SE-SC LLC [Case No. 23-90179]; WHRG TC-SW LLC [Case No. 23-90155]; WHRG TC-SW-AR LLC [Case No. 23-90181]; WHRG TC-SW-LA LLC [Case No. 23-90182]; WHRG-LA, LLC [Case No. 23-90161]; WHRG-LA2, LLC [Case No. 23-90200]; WHRGOPS NE LLC [Case No. 23-90185]; WHRGOPS NE-NY LLC [Case No. 23-90192]; WHRGOPS NE-NY-LI LLC [Case No. 23-90194]; WHRGOPS NE-PA LLC [Case No. 23-90198]; WHRGOPS NW LLC [Case No. 23-90202]; WHRGOPS NW-IA LLC [Case No. 23-90206]; WHRGOPS NW-IA[1]WIA LLC [Case No. 23-90216]; WHRGOPS NW-KS LLC [Case No. 23-90220]; WHRGOPS NW-MI LLC [Case No. 23-90224]; WHRGOPS NW-MO LLC [Case No. 23-90227]; WHRGOPS NW-MO-NMO LLC [Case No. 23-90229]; WHRGOPS NW-WI LLC [Case No. 23-90231]; WHRGOPS NW-WI-NWI LLC [Case No. 23-90239]; WHRGOPS SE LLC [Case No. 23-90243]; WHRGOPS SE[1]AL-NORTH LLC [Case No. 23-90246]; WHRGOPS SE-MS LLC [Case No. 23- 90252]; WHRGOPS SE-MS-JACKSON LLC [Case No. 23-90255]; WHRGOPS SE-SC LLC [Case No. 23-90264]; WHRGOPS SE-TN LLC [Case No. 23-90266]; WHRGOPS SE-TN-WTN LLC [Case No. 23-90270]; WHRGOPS SW LLC [Case No. 23-90151]; WHRGOPS SW-AR LLC [Case No. 23-90152]; WHRGOPS SW[1]AR-NWAR LLC [Case No. 23-90157]; WHRGOPS SW-OK LLC [Case No. 23- 90163]; WHRGOPS SW-OK-OKC LLC [Case No. 23-90166]; WHRGOPS SW[1]TX LLC [Case No. 23-90175]; WHRGOPS SW-TX-DALLAS LLC [Case No. 23- 90177]; WHRGOPS SW-TX-STX LLC [Case No. 23-90178].

14187776

## II.   JURISDICTION

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This adversary is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O). The Court has constitutional authority to enter final orders on the relief requested.

## III.   BACKGROUND

3. On March 18, 2023 (the "Petition Date"), the Debtors filed these jointly administered chapter 11 cases. The Debtors operated their business and managed their properties as debtors and debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code until a Chapter 11 Trustee was appointed on August 17, 2023.

4. On April 4, 2023, the Office of the United States Trustee for the Southern District of Texas (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee").

5. After months of the Debtors attempting to sell their assets, on August 16, 2023, First Horizon Bank, as Administrative Agent for the DIP Loans (the "DIP Agent") filed the *DIP Agent's Emergency Motion to Appoint Chapter 11 Trustee, or in the Alternative, Convert These Chapter 11 Case to Case Under Chapter 7*. [Docket No. 1280].

6. On August 17, 2023, following the Court's *Order Directing the Appointment of a Chapter 11 Trustee* [Docket No. 1284], the United States Trustee filed a *Notice of Appointment of Chapter 11 Trustee* [Docket No, 1286], and appointed Janet Northrup to serve as the Chapter 11 Trustee in these cases.

7. Ultimately, on August 24, 2023 (the "Conversion Date"), upon its own motion and the Chapter 11 Trustee's request, the Court converted these cases to cases under chapter 7 of the Bankruptcy Code. [Docket No. 1397]. Thereafter, Janet Northrup was also appointed the

Chapter 7 Trustee in each of the Debtors' cases. The Trustee is in possession of the assets of the bankruptcy estates and is operating the businesses pursuant to the terms of an Order authorizing operations in Chapter 7 [Docket No. 1421].

8. MEX, a Georgia corporation, is the ultimate parent of the other 143 Debtor entities and is privately held. Healy Declaration, ¶ 18. Lamar Frady and Turjo Wadud each own 48.5% of MEX and West Hill Ranch Investors, LLC, owns 3% of MEX. The address for each owner is listed as 3650 Mansell Road, Suite 250, Alpharetta, GA 30022.

9. It is believed that MEX and the Debtor subsidiaries had common officers and directors prior to the Petition Date, and MEX and the Debtor subsidiaries engaged Michael Healy as their chief restructuring officer in connection with their chapter 11 cases.

10. Both pre- and post-petition, the Debtors engaged in intercompany transactions and transfers of funds among various Bank Accounts ("Intercompany Transactions"). As described in the *Declaration of Michael Healy in Support of Debtors' Chapter 11 Petitions and First Day Relief* (the "Healy Declaration"), "Intercompany Transactions may exist that reflect intercompany receivables and payables ("Intercompany Claims") made in the ordinary course of business between and among Debtors. These Intercompany Claims include those arising from transfers from the respective main accounts for West Hill Ranch Group and/or MEX to individual retail accounts, when interim funding for retail related operations (for particular locations and/or particular expenses) is needed." Healy Declaration, ¶¶ 58-59.

11. Additionally, MEX routinely paid the salaries, expenses, and losses of the subsidiary Debtors. Likewise, there is a substantial overlap of creditors between the Debtors, in part, because the Debtors were subject to "fuel purchase contracts with stringent minimum purchasing requirements." Healy Declaration, ¶ 6. This made the Debtors' business as a whole

4

dependent on maintaining a certain number of leased properties, even though those properties were leased by purportedly separate Debtor entities. *See* Healy Declaration, ¶ 35 ("[Pachulski Stang Ziehl & Jones LLP] informed [Kirkland & Ellis, counsel to Oak Street] that relinquishing a substantial number of properties from the A&R Oak Street MLAs would decimate the Debtors' business, cause it to default under its Fuel Supply Agreements and prevent the Debtors from continuing to operate as a going concern.").

12. Finally, prior to the Petition Date, MEX and the Prepetition Guarantors[2] had approximately $176.5 million in in outstanding principal under the Prepetition Loan Facility and, as security for such borrowings, granted to First Horizon Bank, for the benefit of itself and the Prepetition Lenders,[3] a security interest in and continuing lien (the "Prepetition Liens") on substantially all of their assets and property, including inventory and equipment (with certain exceptions set forth in the Prepetition Loan Documents) and all proceeds, products, accessions, rents, and profits thereof (collectively, the "Prepetition Collateral"). Healy Declaration, ¶ 22. Each of the Prepetition Guarantors is a wholly owned subsidiary of MEX and is a Debtor in these chapter 7 cases. Healy Declaration, ¶ 22. Pursuant to the Prepetition Loan Documents, the obligations of the Prepetition Guarantors to guarantee the full payment and performance of the Prepetition Borrower are secured by substantially all of the personal property assets of each of the Prepetition Guarantors. Healy Declaration, ¶ 22. After the Petition Date, the Prepetition Liens were "rolled up" into a debtor-in-possession financing facility and an additional $46.9

---

[2] Mountain Express Baking and Coffee Co.; Mountain Express Ethanol Company; Alabama Terminal Property, LLC; Spartan; Mountain Express Oil Company Southeast, LLC; MEX North Alabama, LLC; Mississippi MEX Company, LLC; B&T Petroleum LLC; Texas MEX Limited Company, LLC; Star Mountain Express, LLC; and West Hill Ranch Group LLC (collectively, the "Prepetition Guarantors").

[3] The certain lenders as defined in, and designated from time to time pursuant to, the *First Amended and Restated Credit Agreement* dated as of March 12, 2020 (the "Prepetition Credit Agreement").

14187776

million was loaned to the Debtors. In total, Prepetition Lenders have claims exceeding $215 million and liens on substantially all of the Debtors' assets.

13. As shown through the Debtors' failed process to sell assets of the business, during the sale process, the Debtors were unable to provide customary due diligence materials or otherwise disentangle their assets and liabilities. For example, "the Debtors lacked complete and current financial statements (most recent audited financial statements were for the period ending December 31, 2021); The Debtors were unable to generate accurate and current store level profit and loss statements, fuel gallon and margin data, and in-store financials (such as inventory levels, product pricing, food sales and, payroll expense), among other issues; The Debtors lacked complete historical information about store level environmental and zoning compliance; The Debtors were missing leases, contracts, and other agreements integral to the management of the business; The Debtors did not maintain detailed, store-level accounting on unamortized fuel branding discounts and rebates provided by major oil companies and related store-specific "imaging" liabilities." Debtors' Post-Auction Status Report [Docket No. 1194], ¶ 17.

14. Despite a provision of post-petition cash totaling approximately $46.9 million, the Debtors could not provide complete, accurate diligence information to potential bidders or otherwise run a fulsome, successful Auction. Instead, the Debtors spent not less than $48 million since the Petition Date in an unsuccessful attempt to disentangle their assets and liabilities to provide some semblance of due diligence materials to provide prospective bidders.

15. It appears that the Debtors lack fundamental corporate controls or fulsome financial records, such that it is nearly impossible to ascertain an accurate, complete picture of the Debtors' assets, liabilities, and financial condition on an entity-by-entity basis. Moreover, the

Trustee has learned in communications with a multitude of creditors and contract counter-parties that the Debtors generally held themselves out to creditors as being a single entity.

### IV.    LEGAL BASIS FOR SUBSTANTIVE CONSOLIDATION

16.    Although there is no "universally accepted legal standard for when substantive consolidation is appropriate[,]" courts have developed two standards in determining whether substantive consolidation is appropriate: (1) a "more traditional" multi-factor test (with factors similar to those of piercing the corporate veil) and (2) a balancing of harm test. *In re ADPT DFW Holdings, LLC*, 574 B.R. 87, 93-94 (Bankr. N.D. Tex. 2017); *see also* 2 COLLIER at ¶ 105.09.

17.    Courts consider the following factors under the multi-factor test: (1) the presence or absence of consolidated financial statements; (2) the unity of interests and ownership between the various corporate entities; (3) the existence of parent and intercorporate guaranties on loans; (4) the degree of difficulty in segregating and ascertaining individual assets and liabilities; (5) the transfer of assets without formal observance of corporate formalities; (6) the commingling of assets and business functions; (7) the profitability of consolidation at a single physical location; (8) the parent corporation owns all or a majority of the capital stock of the subsidiary; (9) the parent and subsidiary have common officers and directors; (10) the parent finances the subsidiary; (11) the parent is responsible for incorporation of the subsidiary; (12) the subsidiary has grossly inadequate capital; (13) the parent pays salaries, expenses, or losses of the subsidiary; (14) the subsidiary has substantially no business except with the parent; (15) the subsidiary has essentially no assets except for those conveyed by the parent; (16) the parent refers to the subsidiary as a department or division of the parent; (17) the directors or officers of the subsidiary do not act in interests of the subsidiary, but take directions from the parent; and (18)

the formal legal requirements of the subsidiary as a separate and independent corporation are not observed. *See id.* at 94-95.

18.  The multi-factor test can be boiled down to two critical factors: "(1) whether creditors dealt with the entities as a single economic unit and did not rely on their separate identity in extending credit; or (2) whether the affairs of the debtors are so entangled that consolidation would benefit all creditors." *ADPT*, 574 B.R. at 95-96; *see also In re Owens Corning*, 419 F.3d 195, 205 (3d Cir. 2005) (distilling the multi-factor test into two critical factors). Of the various factors, there is no specific formula that is determinative. *Id.* at 87. Rather, "courts pick and choose elements out of this laundry list of factors, focusing on which factors they believe to be most important." *Id.*

19.  Under the harm balancing test, the Trustee must only show that (1) there is substantial identity between the entities to be consolidated; and (2) consolidation is necessary to avoid some harm or to realize some benefit." *Id.* at 100-101 (analyzing case law and citing, *e.g.*, *In re First Nat'l Bank of El Dorado v. Giller (In re Giller)*, 962 F.2d 796 (8th Cir. 1992) *and Eastgroup Props. v. S. Motel Ass'n, Ltd.*, 935 F.2d 245 (11th Cir. 1991)). Upon this showing, "a presumption arises that creditors have not relied solely on the credit of one of the entities involved" and the burden then shifts to an objecting creditor to show that "(1) it had relied on the separate credit of one of the entities to be consolidated; and (2) it would be prejudiced by substantive consolidation." *Id.* If an objecting creditor makes the required showing, the Court may still order substantive consolidation "if it determines that the demonstrated benefits of consolidation 'heavily' outweigh the harm." *Id.* at 101.

20.  In this case, substantive consolidation is appropriate whether analyzing under the multi-factor test or the harm balancing test.

14187776

21. Under the multi-factor test, substantive consolidation is appropriate because:

- There is a unity of interests and ownership between the various corporate entities, which are substantially all ultimate subsidiaries of MEX. Additionally, because of the subleases between Debtors and of the minimum purchase requirements under the fuel supply agreements, there was a clear unity of interests among the Debtors;

- The Debtors appear to have failed to observe corporate formalities and otherwise observe corporate distinctions between and among each entity;

- There are extensive intercorporate guaranties on loans, as evidenced by the liens held by the Prepetition Lenders, which likely far exceed the collective value of the Debtors' assets;

- It would be difficult to segregate and ascertain the individual assets and liabilities, as shown by the massive administrative expenses and unsuccessful production of financial statements or due diligence materials during the chapter 11 cases;

- MEX is the ultimate parent of the other 143 Debtor entities and was controlled by Lamar Frady and Turjo Wadud up until the Petition Date;

- The Debtor entities have common central office space at 3650 Mansell Road, Suite 250, Alpharetta, GA 30022;

- The Debtor entities have common employees;

- The Debtor entities have commingled their debts, assets and business functions, as evidenced by the difficulty and expense of disentangling their financials, by the existence of the leases and subleases between Debtor entities, and by the shared purchasing under the fuel supply agreements;

- The Debtor entities provided or paid for certain services to or for the benefit of each other;

- The Debtor subsidiaries primary business direct business relationships were with MEX or other Frady and Waddud entities, such as the non-debtor Adelphi entities; and

- The Debtor subsidiaries were grossly undercapitalized, had no revenue generating operations, and were financed primarily by MEX and/or other MEX/debtor subsidiaries.

22. Under the harm-balancing test, substantive consolidation is appropriate because: (1) there is a substantial identity between the Debtor entities, and (2) consolidation is necessary

14187776

to both avoid harm and provide a benefit to creditors. Given the intercompany guaranties, failures to recognize corporate separateness, unity of interests, and gross undercapitalization of the subsidiaries, most creditors would have reasonably treated any of the Debtor subsidiaries as being the same entity as the parent, MEX, itself. So, even in the unlikely event that there ultimately are sufficient assets to pay unsecured creditors (or even chapter 11 administrative expenses), it would be inequitable for some creditors to receive a windfall by sheer luck that they dealt with a Debtor entity that happened to be more capitalized than its affiliates, when those creditors likely did not rely on that Debtor entity's separate credit.

23. Most importantly, however, it is very unlikely that there will be any assets available for distribution to anyone but the DIP Agent, whose claims exceed an aggregate $218.5 million and are secured by substantially all of assets of the Debtors' collective estates. Consolidation is therefore necessary to avoid the harm of more fees expended in a futile effort to disentangle the Debtors, and necessary to provide a benefit of a quicker liquidation, and greater overall distribution.

24. Accordingly, whether the Court applies the harm-balancing test or the traditional multi-factor test, the Debtors should be substantive consolidated with one another.

## V.  PRAYER

25. The Trustee respectfully requests that the Court order the substantive consolidation of the bankruptcy estates of the Debtors, effective as of March 18, 2023, and grant such other relief to which the Trustee may be entitled.

14187776

**Dated: October 6, 2023.**

          Respectfully submitted,

          **Porter Hedges LLP**

By:   */s/ Joshua W. Wolfshohl*
       Joshua W. Wolfshohl
       State Bar No. 24038592
       Megan Young-John
       State Bar No. 24088700
       1000 Main Street, 36th Floor
       Houston, Texas 77002
       (713) 226-6000
       (713) 228-1331 (fax)
       jwolfshohl@porterhedges.com

       **Counsel for the Trustee**

14187776

## CERTIFICATE OF SERVICE

      This will certify that a true and correct copy of the foregoing document was forwarded by electronic transmission to all registered ECF users appearing in the case on October 6, 2023.

      */s/ Joshua W. Wolfshohl*
      Joshua W. Wolfshohl

14187776