**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re:<br><br>MOUNTAIN EXPRESS OIL COMPANY, et al.,<br><br>Debtors. [1] | Chapter 7<br><br>Case No. 23-90147 (EVR)<br><br>(Jointly Administered) |

**COVER SHEET TO FINAL APPLICATION OF**
**RAYMOND JAMES & ASSOCIATES, INC. FOR ALLOWANCE**
**OF COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT**
**OF EXPENSES INCURRED AS INVESTMENT BANKER FOR THE DEBTORS**
**FOR THE PERIOD FROM MARCH 18, 2023 TO AND INCLUDING AUGUST 16, 2023**

**Chapter 7 Final Fee Application Coversheet Pursuant to the**
**Court Procedures of the Honorable Eduardo V. Rodriguez**

| | | |
|---|---|---|
| **Name of applicant:** | | **Raymond James & Associates, Inc.** |
| **Applicant's professional role in case:** | | Chapter 11 Debtors' Investment Banker |
| **Indicate whether this is an interim or final application:** | | Final Application |
| **Date Order of Appointment Signed** | | 05/25/2023. Docket No. 457 |
| | **Beginning of Period** | **Ending of Period** |
| **Total period covered in application** | 03.18.23 | 08.16.23 |
| **Time periods covered by any prior applications** | 03.18.23 | 06.30.23 |
| **Total amounts awarded in all prior applications** | | $4,290,000.00 |
| **Amount of retainer received in the case** | | $5,281.21 |

---

[1] A complete list of each of the Debtors in these chapter 7 cases may be obtained for a fee at the Court's website at http://ecf.txsb.uscourts.gov. A login identification and password to the Court's Public Access to Court Electronic Records ("PACER") are required to access this information and can be obtained through the PACER Service Center at http://www.pacer.psc.uscourts.gov. The location of Debtor Mountain Express Oil Company's principal place of business and the Debtors' service address in these chapter 7 cases is 3650 Mansell Road, Suite 250, Alpharetta, GA 30022.

| Name of applicant: | Raymond James & Associates, Inc. |
|---|---|
| Total fees applied for in this application and in all prior applications (including any retainer amounts applied or to be applied) | $4,770,000.00 |
| Total fees applied for in this application (including any retainer amounts to be applied) | $4,770,000.00 |
| Total professional fees requested in this application[2] | $4,770,000.00 |
| Total professional hours covered by this application | 2,403.5[3] |
| Average hourly rate for professionals | N/A |
| Total paraprofessional hours covered by this application | N/A |
| Average hourly rate for paraprofessionals | N/A |
| Reimbursable expenses sought in this application | $83,005.70 |
| Application Cost | $0.00 |
| Total of other payments paid to Secured Claimants | Unknown |
| Total of other payments paid to Administrative | Unknown |
| Estimated Total for distribution to Priority Unsecured | Unknown |
| Expected % dividend to be paid to Priority Unsecured | Unknown |
| Estimated total for distribution to General Unsecured | Unknown |
| Expected % dividend to be paid to General Unsecured | Unknown |
| Expected amount to be paid to all pre-petition creditors | Unknown |
| Receipts to date | Unknown |
| Disbursements to date | Unknown |
| Current balance in the Trustee's accounts | Unknown |

---

[2] For the avoidance of doubt, although Raymond James incurred legal expenses in connection with services provided by professionals at Sidley Austin LLP, Raymond James submits that those amounts constitute reimbursable expenses, not professional fees, for purposes of this Final Application.

[3] Raymond James maintained time records of its professional services rendered for the Debtors in one-half hour increments on a daily basis, as required by the order approving Raymond James' retention; however, per the fee structure approved in that retention order and as more fully set forth in this Final Application, Raymond James is not compensated on an hourly basis.

Dated: November 15, 2023                    **RAYMOND JAMES & ASSOCIATES, INC.**

                                            */s/ Geoffrey Richards*
                                            _____
                                            Geoffrey Richards
                                            880 Carillon Parkway
                                            St. Petersburg, FL 33716
                                            Tel. 727-567-1000
                                            geoffrey.richards@raymondjames.com

                                            *Former Investment Banker to the Debtors*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |
|---|---|
| In re: | Chapter 7 |
| MOUNTAIN EXPRESS OIL COMPANY, et al., | Case No. 23-90147 (EVR) |
| Debtors. [1] | (Jointly Administered) |

## FINAL APPLICATION OF
## RAYMOND JAMES & ASSOCIATES, INC. FOR ALLOWANCE
## OF COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT
## OF EXPENSES INCURRED AS INVESTMENT BANKER FOR THE DEBTORS
## FOR THE PERIOD FROM MARCH 18, 2023 TO AND INCLUDING AUGUST 16, 2023

**THIS APPLICATION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE APPLICATION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE APPLICATION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE APPLICATION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE APPLICATION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

**THERE WILL BE AN ELECTRONIC HEARING ON THIS APPLICATION ON FEBRUARY 15, 2024 VIA GOTOMEETING, AS PREVIOUSLY ORDERED BY THE COURT. [2]**

**TO PARTICIPATE IN THE HEARING, AUDIO COMMUNICATION WILL BE BY USE OF THE COURT'S DIAL-IN FACILITY. YOU MAY ACCESS THE FACILITY AT (832) 917-1510. ONCE CONNECTED, YOU WILL BE ASKED TO ENTER THE CONFERENCE ROOM NUMBER. JUDGE RODRIGUEZ'S CONFERENCE ROOM NUMBER IS 999-276. VIDEO COMMUNICATION WILL BE BY USE OF THE GOTOMEETING PLATFORM. CONNECT VIA THE FREE GOTOMEETING APPLICATION OR CLICK THE LINK ON JUDGE RODRIGUEZ'S HOMEPAGE. THE MEETING CODE**

---

[1] A complete list of each of the Debtors in these chapter 7 cases may be obtained for a fee at the Court's website at http://ecf.txsb.uscourts.gov. A login identification and password to the Court's Public Access to Court Electronic Records ("PACER") are required to access this information and can be obtained through the PACER Service Center at http://www.pacer.psc.uscourts.gov. The location of Debtor Mountain Express Oil Company's principal place of business and the Debtors' service address in these chapter 7 cases is 3650 Mansell Road, Suite 250, Alpharetta, GA 30022.

[2] This Final Application is filed in accordance with the dates and deadlines set forth in the *Stipulation Regarding Scheduling Deadlines and Hearing in Connection with Chapter 11 Final Fee Applications and Reserve Distribution Motion* [Docket No. 1632] (the "Scheduling Order"), as approved by the Court.

IS "JUDGERODRIGUEZ". CLICK THE SETTINGS ICON IN THE UPPER RIGHT CORNER AND ENTER YOUR NAME UNDER THE PERSONAL INFORMATION SETTING.

Raymond James & Associates, Inc. ("Raymond James"), former investment banker to the above-captioned debtors (the "Debtors"), by this final fee application (this "Final Application") requests entry of an order, pursuant to sections 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2016-1 and 9013-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Southern District of Texas (the "Local Rules"), (a) granting final allowance of compensation for professional services rendered to the Debtors during the period from March 18, 2023 to and including August 16, 2023 (the "Final Application Period") in the aggregate amount of $4,770,000.00, (b) granting final allowance of Raymond James's expenses incurred during the Final Application Period in connection with such services in the amount of $83,005.70, (c) authorizing and directing payment of all such allowed compensation and expenses, less any amounts previously paid on account of such compensation and expenses,[3] and (d) granting such other or further relief as may be just and proper under the circumstances. In support of this Final Application, Raymond James submits a proposed order, attached hereto as **Exhibit A**. In further support of this Final Application, Raymond James respectfully states as follows:

## JURISDICTION AND VENUE

1.        This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of Texas*, dated May 24, 2012.

---

[3] Of the amounts of compensation and reimbursement of expenses sought to be approved on a final basis herein, Raymond James has previously received and applied $2,864,867.37 and $8,413.84, respectively, as more fully detailed below.

2.      This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2) and Article III of the United States Constitution. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## **BACKGROUND**

3.      On March 18, 2023 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

4.      On April 4, 2023, the Office of the United States Trustee for the Southern District of Texas (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "UCC") [Docket No. 202].

5.      On April 14, 2023, the Debtors submitted the *Application for Entry of an Order (I) Authorizing the Retention and Employment of Raymond James & Associates, Inc. as Investment Banker for the Debtors, Effective as of the Petition Date and (II) Granting Related Relief* [Docket No. 288] (the "RJA Retention Application").

6.      On April 25, 2023, the Court entered the *Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, and 507, Bankruptcy Rules 2002, 4001, 6004, and 9014, and Local Rule 4001-1 (I) Authorizing the Debtors to Use Cash Collateral and Obtain Post-Petition Financing, (II) Granting Liens and Providing Super-Priority Administrative Expense Status, (III) Granting Adequate Protection, and (IV) Granting Related Relief* [Docket No. 332] (the "Final DIP Order"), authorizing the Debtors to obtain post-petition financing on a superpriority, senior secured basis in the form of a multi-draw term loan facility in the aggregate principal amount of $209.5 million, including $171.6 million of rolled-up prepetition senior secured obligations and $38.9 million of new money financing.

7.     On May 25, 2023, the Court entered the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* [Docket No. 408] (the "Compensation Procedures Order").

8.     On May 25, 2023, the Court entered the *Order (I) Authorizing the Employment and Retention of Raymond James & Associates, Inc. as Investment Banker for the Debtor, Effective as of the Petition Date and (II) Granting Related Relief* [Docket No. 457] (the "RJA Retention Order").

9.     On June 7, 2023, the Debtors submitted the *Monthly Fee Statement of Raymond James & Associates, Inc. for the Financing Fee Approved Pursuant to the Final DIP Order* [Docket No. 492] (the "Monthly Fee Statement").

10.    On July 19, 2023 the Court entered *Order Approving Second Amendment to Senior Secured, Super-Priority Debtor-in-Possession Credit Agreement* [Docket No. 1044] (the "Incremental DIP Order").

11.    On July 26, 2023, the Debtors submitted the *First Interim Application of Raymond James & Associates, Inc. for Compensation for Services and Reimbursement of Expenses as Investment Banker to the Debtors for the Period from March 18, 2023 through June 30, 2023* [Docket No. 1100] (the "Interim Fee Application").

12.    On August 17, 2023, the Debtors filed a *Certificate of No Objection to First Interim Application of Raymond James & Associates, Inc. for Compensation for Services and Reimbursement of Expenses as Investment Banker to the Debtors for the Period from March 18, 2023 through June 30, 2023* [Docket No. 1290].

13.    On August 24, 2023, the Court entered the *Order Authorizing the Withdrawal of Raymond James & Associates, Inc. as Investment Banker for the Debtors* [Docket No. 1391],

pursuant to which the Court approved the withdrawal of Raymond James as investment banker to the Debtors, retroactive to the conclusion of the hearing held on August 16, 2023 at 4:00 p.m. (Central Time). That same day, the Court also entered the *Order (I) Converting the Chapter 11 Cases, (II) Rejecting All Unexpired Leases of Non-Residential Real Property, (III) Terminating All Fuel Supply Contracts, and (IV) Granting Related Relief Signed* [Docket No. 1397].

14.     On September 19, 2023, the Court entered the *Order Allowing First Interim Compensation and Reimbursement of Expenses of Raymond James & Associates, Inc. for the Period from March 18, 2023 through June 30, 2023* [Docket No. 1496] (the "Interim Fee Order").

15.     A detailed description of the Debtors' businesses, capital structure and the events leading to the commencement of the chapter 11 cases (the "Chapter 11 Cases") is set forth in the Declaration of *Michael Healy, Chief Restructuring Officer of the Debtors, in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 57] (the "First Day Declaration").[4] Additional detail regarding the evolution and developments of the Chapter 11 Cases is set forth in the *Final Fee Application of Pachulski Stang Ziehl & Jones LLP for Allowance of Compensation for Services Rendered and Reimbursement of Expenses Incurred as Counsel to the Debtors for the Period from July 1, 2023 through August 16, 2023* [Docket No. 1721] (the "PSZJ Final Application").

## SUMMARY OF SERVICES RENDERED

16.     During the Final Application Period, Raymond James provided extensive professional services to the Debtors that were necessary and appropriate to the administration of the bankruptcy process. The following paragraphs summarize the significant professional services

---

[4] Capitalized terms used but not immediately defined have the meanings given to them elsewhere in this Application, in the First Day Declaration, or the RJA Retention Application, as applicable.

provided by Raymond James both during the Final Application Period and in the period leading up to the Petition Date.[5]

17.     Commencing in February 2023, Raymond James provided investment banking services initially focused on potential financing alternatives in an effort to address the Debtors' near-term liquidity concerns. However, Raymond James's services quickly evolved into a restructuring focus when the Debtors received a default notice from their largest landlord. After receiving the notice of default, the Debtors, via Raymond James, Pachulski Stang Ziehl & Jones LLP ("PSZJ") and FTI Consulting, Inc. ("FTI") (collectively, the "Debtors' Advisors"), attempted to engage with the landlord to discuss the Debtors' current business plan and address any concerns. The Debtors' Advisors requested a thirty-day extension of the time to cure the alleged defaults to facilitate these discussions and avoid a bankruptcy filing. The landlord's willingness to have these discussions was conditioned upon numerous demands, including that the Debtors release more than 150 properties from their respective Master Lease Agreements. Such an action would have been detrimental to the Debtors' business and likely would have resulted in breaches of the Debtors' Oil Company Agreements and certain Fuel Supply Agreements. Raymond James's negotiations with the landlord, on behalf of the Debtors, did not yield any actionable solutions, and the Debtors prepared for a chapter 11 filing.

18.     Raymond James assisted in the drafting of first day motions and declarations, and led conversations with and certain presentations to the prepetition senior secured lenders ("Lenders") and their counsel, Greenberg Traurig, LLP ("Greenberg"), highlighting restructuring options and the possible need for post-petition financing. Concurrently, to prepare to market the business for sale in chapter 11, the Raymond James team developed a teaser, buyer-list,

---

[5] The professional services that Raymond James provided prior to the commencement of these case provides additional context for the transaction-based fees that became payable during the Final Application Period.

confidential information presentation, and populated a virtual data room with approximately 12,000 documents including site level attributes, financial information, and dealer agreements.

19.     As the Debtors prepared to file for chapter 11, Raymond James held multiple conversations with the Lender Advisors (defined below) and First Horizon Bank, (the "Agent") regarding the liquidity needs of the Debtors in the context of chapter 11 given the imminent expiration of the notice period under the landlord default notices. Conversations and negotiations were also held with landlords regarding forbearance and possible default waivers, but ultimately the landlords sought to impose restrictions on the Debtors that were too onerous. With bankruptcy preparation accelerating and the Lenders unwilling to provide debtor-in-possession ("DIP") financing, in anticipation of a chapter 11 filing, the Raymond James team contacted multiple third-party lenders, though no parties were interested in providing DIP financing with a junior lien. On March 18, 2023, the Debtors filed the Chapter 11 Cases without DIP financing.

20.     Following the initial outreach and further discussions with Greenberg, Alvarez & Marsal Holdings, LLC (collectively, the "Lender Advisors"), and the Agent, Raymond James notified the Agent of its intent to explore priming DIP loan options, re-initiating conversations with 12 potential lenders that were previously contacted, and contacting eight additional lenders. Inclusive of all potential lenders contacted, 14 of the 20 parties declined to provide proposals for a priming DIP loan. Raymond James held discussions with the six remaining potential lenders, ultimately procuring multiple term sheets. The Lenders rejected the priming DIP loan option and instead negotiated an agreement on a DIP loan on terms that ultimately were acceptable to the Debtors.[6]

---

[6] Additional detail regarding the Debtors' efforts to obtain postpetition financing, including the services provided by Raymond James in connection therewith, and the results of those efforts are set forth in the *Declaration of Geoffrey Richards in Support of Emergency Motion of Debtors for Entry of Interim and Final Orders Pursuant to 11 U.S.C. §§*

21.     Following a series of cash collateral hearings and extensive negotiations, the Lenders agreed to provide $114.4 million of DIP financing on an interim basis to fund a four-month sale process. In connection with the financing, the Raymond James team negotiated with the Agent and Lender Advisors certain sale process milestones that would be required pursuant to the funding.

22.     In April 2023, the UCC was formed, and Raymond James held multiple video meetings and calls with Province, LLC and McDermott Will & Emery LLP (collectively, the "UCC Advisors"), to keep them informed of developments in the sale process and the Chapter 11 Cases. With urging from the Raymond James team, the UCC Advisors encouraged the Lenders to extend the sale process to five months. The sale process extension coupled with the Debtors' poor performance required additional funding from the Lenders, who were initially reluctant to increase their commitment amount. Raymond James again re-engaged with third party lenders and obtained multiple term sheets after protracted negotiations, leading the Lenders to provide additional funding, resulting in a cumulative $209.5 million of DIP financing, including $171.6 million of rolled-up prepetition senior secured obligations and $38.9 million of new money financing (the "DIP Financing").

23.     In June 2023, the Company required additional funding from the Lenders to fund operational expenses and pay post-petition taxes. The Raymond James team presented to the Lenders on multiple occasions, providing updates on the sale process in order to educate the Lenders as they considered funding the incremental amounts. Ultimately, the Lenders provided an additional $9.0 million of incremental DIP financing (the "Incremental DIP Financing").

---

*105, 361, 362, 363, 364, and 507, Bankruptcy Rules 2002, 4001, 6004, and 9014, and Local Rule 4001-2 (I) Authorizing the Debtors to Use Cash Collateral and Obtain Post-Petition Financing, (II) Granting Liens and Providing Super-Priority Administrative Expense Status, (III) Granting Adequate Protection, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief [Docket No. 106] (the "Richards DIP Declaration").*

24.     In addition to their efforts to obtain funding for the Debtors, the Raymond James team also conducted a robust marketing process to sell the Debtors' assets. In March 2023, the Raymond James team launched the marketing process, contacting 142 parties, consisting of 103 strategic buyers and 39 financial buyers. The Raymond James team developed multiple illustrative timelines and key milestones to fit within the funding and timing constraints imposed by the Lenders to comply with the terms under the DIP financing credit agreements and related amendments.

25.     As the sale process commenced and prospective buyers began conducting diligence on the Debtors' assets, the Raymond James team identified multiple inconsistencies in the Debtors' data and expended significant effort and resources to try to address those issues and respond to detailed diligence requests from prospective buyers. Raymond James held over 200 calls with 54 different parties and facilitated hundreds of diligence requests, including onsite diligence, management meetings, and chaperoning discussions between prospective buyers and other constituents (i.e., real estate counterparties, fuel suppliers, etc.).

26.     Raymond James received indications of interest ("IOIs") from nine (9) parties vying to be designated as Stalking Horse bidders for the business starting May 8, 2023. Raymond James reviewed, analyzed and presented these IOIs to key constituents. The Lenders acknowledged five (5) parties as potentially acceptable, and after continued diligence requests and conversations with the Raymond James team, on June 6, 2023, three (3) of the five (5) buyers submitted letters of intent to become a stalking horse. Raymond James worked collaboratively with each of the bidders to refine their respective bids and marked asset purchase agreements ahead of the July 21 definitive bid deadline, but ultimately reached the bid deadline with no actionable stalking horse agreement. On July 21, 2023, the Company received a total of 16 starting bids for a

variety of packages of the Debtors' assets. While the bids in totality indicated significant interest in the Company, none of the bids were Qualified Bids (as defined in the *Order (I) Approving Bid Procedures for Sale of the Debtors' Assets, (II) Approving Bid Protections, (III) Scheduling Certain Dates with Respect thereto, (IV) Approving the Form and Manner of Notice thereof, and (V) Approving Contract Assumption and Assignment Procedures* [Docket No. 701]). As a result, Raymond James collaboratively worked with each of the bidders prior to the scheduled auction date of August 2, 2023, and continued to work with each bidder and the Debtors' landlords until the conclusion of the auction on August 4, 2023. Seven (7) of the 16 parties attended the auction at Raymond James's offices in New York City, where Raymond James, along with the Debtors' Advisors, worked with each of the bidders in an effort to deem such bids as "Qualified Bids", and held multiple discussions with the key constituents over the course of the auction. A bidder was ultimately declared the winner, and Raymond James was prepared to testify in support of a contested sale at the sale hearing on August 7, 2023. The Lenders and the UCC objected to the sale to the winning bidder, and Judge Jones ordered the parties into mediation.

27.     Raymond James engaged in mediation discussions almost daily for ten (10) days, while simultaneously negotiating with the winning bidder in an attempt to modify their bid into a structure the Lenders and UCC would accept. Mediation efforts were unsuccessful, and the case was subsequently converted from chapter 11 to a chapter 7 liquidation with an appointed trustee (the "Chapter 7 Trustee").

## **TERMS OF RAYMOND JAMES'S RETENTION**

28.     The RJA Retention Order approved the payment of the following fees and expenses to Raymond James, as set forth in greater detail in that certain amended and restated engagement

letter agreement by and between the Debtors and Raymond James, dated as of March 17, 2023 (the "Engagement Letter"), as amended by the RJA Retention Order:[7]

    a.    *Monthly Advisory Fee and Database Expense Amount.*  Beginning April 1, 2023 and on the first business day of every month thereafter during the term of the Engagement Letter, the Debtors shall pay Raymond James an amount equal to $150,000 (the "Advisory Fee"). The first two Advisory Fees received by Raymond James prior to the Petition Date shall be credited in full against any Transaction Fee.

    b.    *Financing Transaction Fee.*  If, during the Term or during the twelve (12) months following any termination of the Engagement Letter (the "Tail Period"), any Financing Transaction is agreed upon and subsequently closes (the "Financing Transaction Closing"), whether on a stand-alone basis or to consummate any other Transaction, the Debtors shall pay Raymond James immediately and directly out of the proceeds of the placement, at the Financing Transaction Closing of each Financing Transaction as a cost of sale of each Financing Transaction, a non-refundable cash transaction fee (the "Financing Transaction Fee") equal to the greater of:

        (A)   $1,750,000 (the "Minimum Financing Transaction Fee"), and

        (B)   the sum of (1) two percent (2.0%) of the Proceeds of all first lien senior secured notes and bank debt raised, and (2) three percent (3.0%) of the Proceeds of any second lien or junior debt capital raised, and (3) five percent (5.0%) of equity or equity-linked securities raised.  Provided, however, that to the extent the Financing Transaction includes an uncommitted accordion or similar credit feature, the Financing Transaction Fee for such accordion or similar feature shall be payable upon the commitment of such credit facility or its funding irrespective of the date of such commitment or funding.

Notwithstanding the foregoing, the Minimum Financing Transaction Fee shall not apply to any debtor-in-possession financing.[8]

    c.    *Restructuring Transaction Fee.*  If, during the Term or during the Tail Period, either (i) one or more Forbearances is/are entered into between the Debtors and its secured lenders that have on or more Forbearance Periods aggregating more than twelve (12) months, or (ii) any Restructuring Transaction is agreed

---

[7] To the extent there is any inconsistency between the summary of the fee structure set forth herein and the terms of the Engagement Letter, as amended by the RJA Retention Order, the terms of the Engagement Letter, as amended by the RJA Retention Order, shall control.

[8] The RJA Retention Order expressly provides that Raymond James "shall be entitled to . . .(a) a Financing Fee equal to $4,190,000 in connection with the financing approved pursuant to [the Final DIP Order]; [and] (b) an additional Financing Fee in connection with any new Proceeds received or committed[.]" RJA Retention Order ¶ 4.

upon and subsequently closes, or any amendment to or other changes in the instruments or terms pursuant to which any Existing Obligations were issued or entered into becomes effective (as applicable, a "Restructuring Transaction Closing"), regardless of when such Restructuring Transaction Closing occurs, the Debtors shall pay Raymond James a non-refundable cash transaction fee of $2,500,000 (the "Restructuring Transaction Fee"). The Debtors shall pay the Restructuring Transaction Fee, as a cost of the Restructuring Transaction to Raymond James upon the earlier of (1) the closing of each Restructuring Transaction or (2) the date on which any amendment to or other changes in the instruments or terms pursuant to which any Existing Obligations were issued or entered into became effective.

d.  *Business Combination Transaction Fee.* If, during the Term or during the Tail Period, any Business Combination Transaction closes (the "Business Combination Closing" and together with any Financing Transaction Closing or Restructuring Transaction Closing, each a "Closing") or is agreed upon and subsequently closes (regardless of when such Business Combination Closing occurs), the Debtors shall pay Raymond James immediately and directly out of the proceeds at the Business Combination Closing, as a cost of sale of such Business Combination Transaction, a non-refundable cash transaction fee (the "Business Combination Transaction Fee" and together with any Financing Fee, Restructuring Fee or Forbearance Fee, each a "Transaction Fee") equal to the greater of (A) $3,500,000 and (B) two and one-fourth percent (2.25%) of "Transaction Value".

e.  *Alternative Transaction.* Notwithstanding the foregoing, if in lieu of a Business Combination Transaction, during the Term or during the Tail Period, any Alternative Transaction closes (the "Alternative Transaction Closing") or is agreed upon and subsequently closes (regardless of when the Alternative Transaction occurs), Raymond James will be paid a customary advisory fee for transactions of similar size and nature (but in no event less than $3,500,000), as mutually agreed upon by the Parties (the "Alternative Transaction Fee") and any reference to a "Business Combination Transaction" in the Engagement Letter (other than under Section I(e)(i) thereof) will be deemed to refer to such Alternative Transaction. Should one or more Alternative Transactions be agreed upon or close within the Term or the Tail Period that, together with the previously agreed-upon or closed Alternative Transaction, constitutes in the aggregate a Business Combination Transaction, an additional fee will be payable to the extent that the Business Combination Transaction Fee is greater than the previously paid Alternative Transaction Fee, provided, however, that in no event shall the total Alternative Transaction Fees be greater than the Business Combination Transaction Fee. As used in the Engagement Letter, "Alternative Transaction" means any transaction or series or combination of transactions outside of the Debtors' ordinary course of business, other than a Business Combination Transaction, with any Interested Party or Interested Party's securityholders or affiliates, including (i) the sale or transfer of less than a

majority voting or economic interest in the Debtors' securities (including preferred securities and debt), other than pursuant to a Financing Transaction or Restructuring Transaction, or (outside of the ordinary course of the Debtors' business) less than a majority of the consolidated fair market value of the business, revenues, income or assets of the Debtors or any of their divisions, and/or (ii) a spin-off or split-off, a joint venture, a strategic alliance or partnership, or a licensing agreement or arrangement, other than pursuant to a Financing Transaction or Restructuring Transaction.[9]

f.   *Expenses*. Raymond James is entitled to reimbursement for all expenses reasonably incurred in connection with entering into and performing the services pursuant to the Engagement Letter (including, without limitation, the fees and disbursements of its outside legal counsel, other than any attorneys' fees or expenses incurred in defending against any formal objections to Raymond James's fee applications).

## SUMMARY OF FEES AND EXPENSES REQUESTED IN THIS FINAL APPLICATION

29.    Through this Final Application, Raymond James requests entry of an order (a) granting final allowance of compensation for professional services to the Debtors during the Final Application Period in the amount of $4,770,000.00, (b) granting final allowance of Raymond James's expenses incurred during the Final Application Period in connection with such services in the amount of $83,005.70, (c) authorizing and directing payment of all such allowed compensation and expenses, less any amounts previously paid on account of such compensation and expenses, and (d) granting such other or further relief as may be just and proper under the circumstances.

30.    During the Final Application Period, certain monthly Advisory Fees and Financing Fees became payable to Raymond James pursuant to the terms of the Engagement Letter, as modified by the RJA Retention Order.

---

[9] With respect to the Restructuring Transaction Fee, Business Combination Fee, and Alternative Transaction Fees, the RJA Retention Order provides that "Raymond James shall be entitled to . . . a Restructuring Transaction Fee *or* a Business Combination Transaction Fee *or* an Alternative Transaction Fee(s)." RJA Retention Order ¶ 4 (emphasis in original). Furthermore, If a single Transaction constitutes more than one of a Restructuring Transaction, a Business Combination Transaction and an Alternative Transaction, then Raymond James shall only be paid the greatest of the applicable Transaction Fee.

31.     With respect to the monthly Advisory Fees, Raymond James earned $600,000 during the Final Application Period on account of four (4) Advisory Fees, commencing with the May 1, 2023 Advisory Fee and ending with the August 1, 2023 Advisory Fee.[10]

32.     With respect to the Financing Fees, Raymond James earned a total of $4,170,000 consisting of (a) a net Financing Fee in the amount of $3,990,000 on account of the DIP Financing approved by this Court in the Final DIP Order (the "Net DIP Financing Fee") and (b) a Financing Fee in the amount of $180,000 on account of the Incremental DIP Financing approved by this Court in the Incremental DIP Order (the "Incremental DIP Financing Fee"), each as described in more detail below.

33.     Regarding the Net DIP Financing Fee, pursuant to paragraph 4 of the RJA Retention Order, Raymond James earned a $4,190,000 Financing Fee on account of the DIP Financing.[11] Pursuant to the Engagement Letter, however, certain prepetition Advisory Fees in the amount of $200,000 (the "Advisory Fee Credit") are to be credited against a Transaction Fee. Raymond James credited the Advisory Fee Credit against the $4,190,000 Financing Fee. Accordingly, the Net DIP Financing Fee is $3,990,000 (i.e., $4,190,000 minus $200,000).

34.     Regarding the Incremental DIP Financing Fee, the Incremental DIP Order authorized the Debtors to obtain post-petition financing on a superpriority, senior secured basis in the form of a multi-draw term loan facility in the aggregate principal amount of $218.5 million,

---

[10] Raymond James's April 1, 2023 Advisory Fee was paid prior to the commencement of these cases, along with two additional Advisory Fees, which were credited against the Financing Fee earned in connection with the DIP Financing, as described in further detail herein.

[11] As noted above, the RJA Retention Order provides that Raymond James "shall be entitled to a Financing Fee equal to $4,190,000 in connection with the financing approved pursuant to [the Final DIP Order]."

which provided an additional $9 million in new money financing. Therefore, the Incremental DIP Financing Fee equals $180,000 (i.e., 2% of 9 million).[12]

35.    In sum, the total compensation that became payable to Raymond James during the Final Application Period is as follows:

| | |
|---|---|
| Advisory Fees (x4) | $600,000.00 |
| Net DIP Financing Fee | $3,990,000.00 |
| Incremental DIP Financing Fee | $180,000.00 |
| **Total Postpetition Fees** | **$4,770,000.00** |

36.    The services for which compensation is requested by Raymond James performed during the Final Application Period on behalf of the Debtors are described in the "Summary of Services Rendered" section above. Additionally, although Raymond James, in line with market convention, does not bill by the hour, Raymond James maintained time records of its professional services rendered for the Debtors in one-half hour increments on a daily basis, as required by the RJA Retention Order. These time records, attached hereto as **Exhibit B**, contain reasonably detailed descriptions of the services performed by Raymond James during the Final Application Period and the individuals who provided those services.

37.    The fees charged by Raymond James have been billed in accordance with the Engagement Letter and the RJA Retention Order and are comparable to those fees charged by Raymond James for professional services rendered in connection with similar bankruptcy cases and non-bankruptcy matters. Attached hereto as **Exhibit C** are copies of the invoices Raymond James issued to the Debtors for the Financing Fees and monthly Advisory Fees. Raymond James submits that such fees are reasonable based upon the customary compensation charged by similarly

---

[12] As explained above, any Financing Fee payable to Raymond James on account of a Financing Transaction involving first lien senior secured DIP financing, such as the Incremental DIP Financing, equals two percent (2.0%) of the proceeds, because the $1,750,000 Minimum Financing Transaction Fee shall not apply to any debtor-in-possession financing.

skilled practitioners in comparable bankruptcy cases and non-bankruptcy matters in the competitive national investment banking market.

38.     As set forth in the RJA Retention Order, Raymond James has "agreed to carve out the last $750,000 of all Carve-Out amounts that would otherwise be paid to Raymond James" on account of the Net DIP Financing Fee, "and such amounts shall instead be reserved for . . . the payment of allowed expenses and claims in accordance with the Bankruptcy Code."   RJA Retention Order ¶ 7.  Otherwise, there is no agreement or understanding between Raymond James and any other person, other than members of the firm, for the sharing of compensation to be received for services rendered in these bankruptcy cases.

39.     Raymond James also incurred certain necessary expenses during the Final Application Period for which it is entitled to reimbursement under the Engagement Letter, as amended by the RJA Retention Order. Raymond James's total expenses incurred during the Final Application Period in connection with its services to the Debtors are $83,005.70. **Exhibit D** attached hereto contains reasonably detailed descriptions of the actual and necessary costs and expenses that Raymond James incurred in the performance of professional services to the Debtors during the Final Application Period. As required by the RJA Retention Order, attached hereto as **Exhibit E** are copies of the invoices and supporting time records relating to the legal expenses incurred by Raymond James in connection with its performance of professional services to the Debtors during the Final Application Period. Such expenses relate to legal services provided in connection with, among other things, Raymond James's retention, including the RJA Retention Application, multiple declarations in support thereof, and the resolution of certain formal and informal comments and objections thereto, and the Richards DIP Declaration in support of the DIP

Financing. No such expenses were incurred in defending against any formal objections to Raymond James's fee applications.

## SUMMARY OF HOW PROFESSIONAL FEES AND EXPENSES WERE PAID DURING THE CHAPTER 11 PHASE OF THESE CASES

40.     Throughout the chapter 11 phase of these cases, Raymond James's fees and expenses were paid pursuant to the procedures and terms set forth in the Compensation Procedures Order, the Final DIP Order, and the RJA Retention Order.

41.     The Compensation Procedures Order established general procedures for the payment of 80% of fees and 100% of expenses incurred by estate professionals upon the filing of a monthly fee statement (each a "Fee Statement") and the passing of an objection deadline with respect to each such Fee Statement. The Compensation Procedures Order further required the periodic filing of interim fee applications with the Court, including for the approval of the remaining 20% of fees contained in a Fee Statement for the applicable period. However, the RJA Retention Order authorized the Debtors to pay monthly Advisory Fees to Raymond James each month when required under the Engagement Letter without a prior Fee Statement or fee application, subject to review and approval in any subsequent interim or final fee applications. RJA Retention Order ¶ 6.

42.     In order to fund the Debtors' estates ongoing obligations to pay professional fees to professionals retained by the Debtors and the UCC, the Final DIP Order contained certain features that are customary in complex chapter 11 cases. One feature contemplated the Debtors transferring, on a weekly basis, to a PSZJ trust account (the "PSZJ Trust Account") an amount sufficient to cover the budgeted professional fees and expenses for that week. *See* Final DIP Order ¶ 17.  Accordingly, the amounts in the PSZJ Trust Account were to be used exclusively to pay the fees and expenses of the Debtors' and UCC's professionals and could not be accessed by

the Debtors or any other party in interest for any purpose. Thereafter, as payment of the fees became due to the Debtors' and UCC's professionals pursuant to the terms of the Compensation Order (i.e., the fees and expenses contained within the Fee Statements and interim fee applications filed by such professionals), PSZJ would transfer funds out of the PSZJ Trust Account to the professionals to pay such fees and expenses.[13]

43.     Another relevant feature of the Final DIP Order is that the Lenders' and Agents' liens, claims, and security interests are all subject to, among other things, the right of payment of certain parties (the "Carve-Out"). *See* Final DIP Order ¶ 17(d). With respect to Raymond James, the Carve-Out applies to (a) any amounts that may become due to Raymond James as a Transaction Fee incurred on or after the Petition Date and prior to the "Carve-Out Trigger Date" (as defined in the Final DIP Order) and approved and allowed by a final order of the Court and (b) the reasonable fees and expenses actually incurred, and approved and allowed by a final order of the Court pursuant to sections 326, 328, 330, or 331 of the Bankruptcy Code, by Raymond James and/or certain other of the Debtors' professionals after the Carve-Out Trigger Date in an aggregate sum not to exceed $400,000.00. *See id.*[14]

44.     The RJA Retention Order grants Raymond James certain additional rights and protections with respect to the payment of its fees and expenses. For example, as noted above, the

---

[13] As set forth in further detail in the *Motion of Former Counsel for the Debtors for Entry of an Order Authorizing the Payment of Estate Professionals' Fees Pursuant to Final DIP Order and Professional Fee Order* [Docket No. 1519] and the PSZJ Final Application, both of which are scheduled to be heard concurrently herewith, as of August 24, 2023, the PSZJ Trust Account contained $5,116,118.18. Of this amount, $30,000.00 is set aside for payment of Raymond James's fees and expenses, to the extent allowed under the Compensation Procedures Order, the Interim Fee Order, or pursuant to an order granting this Final Application. As part of the relief requested herein, Raymond James requests that the Court authorize and direct immediate distribution of that $30,000.00 from the PSZJ Trust Account to Raymond James on account of any unpaid fees and/or expenses of Raymond James that are approved in any order granting this Final Application.

[14] Per the express terms of the Final DIP Order, the Carve-Out rights survived the conversion of these cases from chapter 11 to chapter 7. *See* Final DIP Order ¶ 34 ("The provisions of this Final DIP Order and any actions taken pursuant hereto shall survive entry of any order which may be entered . . . converting the Chapter 11 Cases to chapter 7 cases[.]").

RJA Retention Order provides that "Debtors are authorized to pay the monthly Advisory Fee to Raymond James each month when required under the Engagement Letter without a prior fee application[.]" RJA Retention Order ¶ 6. Additionally, it provides that the Debtors shall "escrow for the sole benefit of Raymond James at the time of consummation of any Transaction(s) the amount(s) of the Transaction Fee(s) and Raymond James's expenses." *Id.* ¶ 9.

45. The RJA Retention Order further provides that "Raymond James's post-petition compensation, expense reimbursements and payments earned pursuant to the provisions of the Engagement Letter (and all attachments thereto) shall be entitled to the benefits of any 'carve-outs' for professional fees and expenses in effect pursuant to one or more financing orders entered by the Bankruptcy Court," such as the Final DIP Order Carve-Out described above. *Id.* ¶ 8. However, as set forth in the RJA Retention Order and noted above, "Raymond James has agreed to carve out the last $750,000 of all Carve-Out amounts that would otherwise be paid to Raymond James under the Final DIP Order on account of any Financing Fee Raymond James has earned in connection with the DIP Financing approved pursuant to the Final DIP Order, and such amounts shall instead be reserved for . . . the payment of allowed expenses and claims in accordance with the Bankruptcy Code." *Id.* ¶ 7.

46. In accordance with the procedures set forth in the Compensation Procedures Order, Raymond James filed a Monthly Fee Statement on June 7, 2023 and the Interim Fee Application on July 26, 2023. On September 19, 2023, the Court entered the Interim Fee Order, approving, on an interim basis, payment of (a) the $3,990,000 Net DIP Financing Fee, (b) monthly Advisory Fees totaling $300,000 on account of the May 1, 2023 Advisory Fee and the June 1, 2023 Advisory Fee, and (c) actual and necessary expenses incurred by Raymond James in the amount of $3,132.63 (i.e., $8,413.84 of actual and necessary expenses incurred, less application of Raymond James'

$5,281.21 expense retainer). Additionally, in accordance with the Final DIP Order and the RJA Retention Order, additional monthly Advisory Fees totaling $300,000 were disbursed to Raymond James from the PSZJ Trust Account on account of the July 1, 2023 Advisory Fee and the August 1, 2023 Advisory Fee without a prior Fee Statement or fee application.

47.    As of the date of this Final Application, Raymond James received a total of $2,864,867.37 in fees and $8,413.84[15] in reimbursement of expenses, pursuant to provisions of the Bankruptcy Code, the RJA Retention Order, the Compensation Procedures Order, the Interim Fee Order, and the Final DIP Order, as set forth in more detail below:

| Fees | Earned | Paid | Outstanding |
|---|---|---|---|
| May 1, 2023 Advisory Fee | $150,000.00 | $150,000.00 | $0.00 |
| June 1, 2023 Advisory Fee | $150,000.00 | $150,000.00 | $0.00 |
| Net DIP Financing Fee | $3,990,000.00 | $2,264,867.37 | $1,725,132.63 |
| July 1, 2023 Advisory Fee | $150,000.00 | $150,000.00 | $0.00 |
| August 1, 2023 Advisory Fee | $150,000.00 | $150,000.00 | $0.00 |
| Incremental DIP Financing Fee | $180,000.00 | $0.00 | $180,000.00 |
| **Total** | **$4,770,000.00** | **$2,864,867.37** | **$1,905,132.63** |

---

[15] As noted above, this $8,413.84 is comprised of application of Raymond James' $5,281.21 expense retainer and an additional $3,132.63 cash disbursement to Raymond James by the Debtors pursuant to the Interim Fee Order.

| Expenses | Incurred | Paid | Outstanding |
|---|---|---|---|
| Actual and Necessary Expenses in Interim Fee Application | $8,413.84 | $8,413.84 | $0.00 |
| Additional Actual and Necessary Expenses Incurred in Final Application Period | $74,591.86 | $0.00 | $74,591.86 |
| **Total** | **$83,005.70** | **$8,413.84** | **$74,591.86** |

## BASIS FOR RELIEF REQUESTED

48.     Section 328(a) of the Bankruptcy Code allows a professional to obtain prior court approval of the terms of its retention. *See* 11 U.S.C. § 328(a). Under section 328(a) of the Bankruptcy Code, a professional may avoid uncertainty by obtaining: (a) advance court approval of compensation terms agreed to with the estate; and (b) a court's finding that such terms are "reasonable" in advance of the professional's providing related services. *See In re Nat'l Gypsum Co.*, 123 F.3d 861, 862–63 (5th Cir. 1997). Section 328(a) of the Bankruptcy Code explicitly contemplates court approval of contingent fees. *See* 11 U.S.C. § 328(a) ("The trustee . . . with the court's approval, may employ or authorize the employment of a professional person . . . on any reasonable terms and conditions of employment, including . . . on a fixed or percentage fee basis, or on a contingent fee basis.").

49.     If a court has entered an order authorizing a professional's employment that "expressly and unambiguously states specific terms and conditions (*e.g.*, specific hourly rates or contingency fee arrangements) that are being approved pursuant to the first sentence of Section 328(a)," the court is constrained to apply only the "improvident" standard of section 328(a) in any later review of such professional's requested compensation. *Zolfo, Cooper & Co. v. Sunbeam-Oster Co., Inc.*, 50 F.3d 253, 261 (3d Cir. 1995).

50.     Under the section 328(a) standard, a bankruptcy court wishing to render a previously approved fee arrangement "improvident" must find that there have been "developments

not capable of being anticipated at the time of the fixing of the terms and conditions" of the

engagement. 11 U.S.C. § 328(a). It is not enough that developments in a case are simply

unforeseen. *Daniels v. Barron (In re Barron)*, 225 F.3d 583, 585 (5th Cir. 2000).

51.     Moreover, section 330 of the Bankruptcy Code provides that a court may award a

professional employed under section 327 of the Bankruptcy Code "reasonable compensation for

actual, necessary services rendered . . . and reimbursement for actual, necessary expenses."

11 U.S.C. § 330(a)(1). Section 330 of the Bankruptcy Code also sets forth the following non-

exclusive criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be
> awarded to . . . [a] professional person, the court shall consider the
> nature, the extent, and the value of such services, taking into account
> all relevant factors, including –
>
> > A. the time spent on such services;
> >
> > B. the rates charged for such services;
> >
> > C. whether the services were necessary to the administration
> > of, or beneficial at the time at which the service was rendered
> > toward the completion of, a case under this title;
> >
> > D. whether the services were performed within a reasonable
> > amount of time commensurate with the complexity,
> > importance, and nature of the problem, issue, or task
> > addressed;
> >
> > E. with respect to a professional person, whether the person
> > is board certified or otherwise has demonstrated skill and
> > experience in the bankruptcy field; and
> >
> > F. whether the compensation is reasonable based on the
> > customary compensation charged by comparably skilled
> > practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3). *See also In re XO Commc'ns, Inc.*, 398 B.R. 106, 113 (Bankr. S.D.N.Y.

2008) (stating that, "in considering a transaction fee, courts recognize that certain of these factors

do not apply, such as 'time spent' or the 'rates charged'") (quoting *In re Intelogic Trace, Inc.*, 188

B.R. 557, 559 (Bankr. W.D. Tex. 1995)) ("When we examine 'success fees,' some of these considerations drop away, such as the 'time spent' or the 'rates charged.'").

52.     Here, the RJA Retention Order approved the compensation of Raymond James under section 328(a) of the Bankruptcy Code as to all parties except the U.S. Trustee, which retained the right to review the compensation of Raymond James based on the reasonableness standard of section 330 of the Bankruptcy Code.

53.     Each component of the compensation earned by Raymond James during the Final Application Period was earned under the terms of the Court-approved Engagement Letter, as modified by the RJA Retention Order. Raymond James submits that the services it performed on behalf of the Debtors, as summarized above and as more fully described in the time records submitted by Raymond James, were necessary for and beneficial to the Debtors' estates. Moreover, the services provided by Raymond James were consistently performed in a timely, expert, and considered manner commensurate with the complexity and importance of the issues involved. Accordingly, approval of the compensation for professional services and reimbursement of the expenses sought herein is warranted.

## **RESERVATION OF RIGHTS**

54.     In addition to the Advisory Fees and Financing Fees described herein, the RJA Retention Order provides that "Raymond James shall be entitled to . . . a Restructuring Transaction Fee *or* a Business Combination Transaction Fee *or* an Alternative Transaction Fee(s)." RJA Retention Order ¶ 4 (emphasis in original). Raymond James' entitlement to any such Transaction Fee is contingent on the closing of certain Transactions (or the satisfaction of certain other conditions), as described more fully in the Engagement Letter, during the Term *or* during the Tail Period (i.e., the twelve (12) months following any termination of the Engagement Letter).

Furthermore, the RJA Retention Order provides that the Debtors shall "escrow for the sole benefit of Raymond James at the time of consummation of *any* Transaction(s) the amount(s) of the Transaction Fee(s) and Raymond James's expenses." *Id.* ¶ 9 (emphasis added). Accordingly, Raymond James hereby reserves its right to (a) seek allowance of any such contingent Restructuring Transaction Fee, Business Combination Transaction Fee, or Alternative Transaction Fee(s) upon the closing of any applicable Transaction(s) (or the satisfaction of other sufficient conditions set forth in the Engagement Letter), and/or (b) require that the proceeds of any future Transaction(s) be escrowed to satisfy any allowed, unpaid Transaction Fees or expenses of Raymond James, including the Net DIP Financing Fee or the Incremental DIP Financing, as applicable, regardless of whether Raymond James seeks allowance of any Transaction Fee(s) in connection with such Transaction(s).

*[Remainder of Page Intentionally Left Blank]*

**WHEREFORE**, Raymond James respectfully requests that the Court enter an order (a) granting final allowance of compensation for professional services rendered to the Debtors during the Final Application Period in the aggregate amount of $4,770,000.00, (b) granting final allowance of Raymond James's expenses incurred during the Final Application Period in connection with such services in the amount of $83,005.70, (c) authorizing and directing payment of all such allowed compensation and expenses, less any amounts previously paid on account of such compensation and expenses, and (d) granting such other or further relief as may be just and proper under the circumstances.

Dated: November 15, 2023

**RAYMOND JAMES & ASSOCIATES, INC.**

*/s/ Geoffrey Richards*

Geoffrey Richards
880 Carillon Parkway
St. Petersburg, FL 33716
Tel. 727-567-1000
geoffrey.richards@raymondjames.com

*Former Investment Banker to the Debtors*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on November 15, 2023, I caused a copy of the foregoing document to be served via the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Michael D. Warner*
Michael D. Warner