IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In Re: | § | Case No. 23-90147 |
| | § | Jointly Administered |
| | § | |
| Mountain Express Oil Company, *et al* | § | (Chapter 7) |
| | § | |
| Debtors. | § | |

**FIRST INTERIM APPLICATION FOR COMPENSATION AND FOR REIMBURSEMENT OF EXPENSES BY HUGHES WATTERS ASKANASE, LLP AS ATTORNEYS FOR TRUSTEE FOR
<u>AUGUST 25, 2023 THROUGH NOVEMBER 30, 2023</u>**

THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU.  IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE.  IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY.  YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN TWENTY-ONE (21) DAYS OF THE DATE THIS WAS SERVED ON YOU.  YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED.  IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU.  IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING.  UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

TO THE HONORABLE EDUARDO V. RODRIGUEZ, U. S, BANKRUPTCY JUDGE:

## FEE APPLICATION COVER SHEET

| | | |
|---|---|---|
| Name of Applicant: | | Hughes Watters Askanase, LLP |
| Applicant's professional role in case: | | General Counsel for the Chapter 7 Trustee |
| Indicate whether this is an interim or final application: | | Interim |
| Date Order of Appointment Signed: | | 10/30/23 [ECF No. 1605] |
| | Beginning of Period | Ending of Period |
| Total period covered in application: | 08/25/23 | 11/30/23 |
| Time period covered by any prior applications:[1] | n/a | n/a |
| Total amounts awarded in all prior applications: | | n/a |
| Amount of retainer received in the case | | $0 |
| Total fees applied for in this application and in all prior applications (including any retainer amounts applied or to be applied): | | $326,677.50 |
| Total fees applied for in this application (including any retainer amounts to be applied) | | $326,677.50 |
| Total professional fees requested in this application: | | $317,025.00 |
| Total professional hours covered by this application: | | 436.2 |
| Average hourly rate for professionals: | | $726.79 |
| Total paraprofessional fees requested in this application: | | $9,652.50 |
| Total paraprofessional hours covered by this application: | | 42.9 |
| Average hourly rate for paraprofessionals: | | $225.00 |
| Reimbursable expenses sought in this application: | | $948.01 |
| Application Cost (estimated; not included in above fees): | | $15,000 |
| Total of other payments paid to Secured Claimants | | $0 |
| Total of other payments paid to Administrative Claimants | | $860,621.11[2] |
| Estimated Total for distribution to Priority Unsecured Creditors: | | Undetermined[3] |
| Expected % dividend to be paid to Priority Unsecured Creditors: | | Undetermined – see FN 3 |
| Estimated total for distribution to General Unsecured Creditors: | | Undetermined – see FN 3 |
| Expected % dividend to be paid to General Unsecured Creditors: | | Undetermined – see FN 3 |
| Expected amount to be paid to all pre-petition creditors | | Undetermined – see FN 3 |
| Receipts to date (in Chapter 7 case) as of November 30, 2023 | | $4,381,717.86 |
| Disbursements to date (in Chapter 7 case) as of November 30, 2023 | | $860,621.11 |
| Current balance in the Trustee's accounts as of November 30, 2023 | | $3,521,096.75 |

---

[1] HWA submitted a first and final fee application as counsel for the Chapter 11 Trustee, which was approved (docket nos. 1493 and 1688). The time and fees in that application are <u>not</u> reflected in this summary, as this is HWA's first interim application as counsel for the Chapter 7 Trustee.

[2] See Category Report attached hereto as Exhibit B.

[3] Distributions are unknown at this time. The Trustee is evaluating potential chapter 5 causes of action and continuing her investigation for possible sale of assets. Based on possible future recoveries, estimations are not available at this time.

2

COMES NOW, Hughes Watters Askanase, LLP ("**Applicant**" or "**HWA**"), and respectfully submits its *First Interim Application for Compensation and for Reimbursement of Expenses by Hughes Watters Askanase, LLP as Attorneys for Trustee for August 25, 2023 through November 30, 2023* (the "**Application**"). The total amount for which the Court's approval is sought is compensation of $326,677.50 in professional and paraprofessional fees and $948.01 in reimbursement of expenses for the period covered by this Application, totaling $327,625.51.[4] In support of the Application, Applicant respectfully shows as follows:

## Background

**A.    The Debtors' Bankruptcy Cases and the Appointment of the Chapter 7 Trustee.**

1.    On or about March 18, 2023 (the "**Petition Date**"), Mountain Express Oil Company and affiliated debtors (collectively the "**Debtors**") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code and thereby commenced these bankruptcy cases. On March 20, 2023, the Court ordered joint administration of the cases (docket no. 33). From the Petition Date until August 17, 2023, the Debtors operated their businesses as debtors in possession under Chapter 11 of the Bankruptcy Code. On that date, the Court ordered the appointment of a Chapter 11 trustee, and Janet S. Northrup was appointed (docket no. 1284).

2.    On August 24, 2023, after a status conference requested by the Chapter 11 trustee, the cases were converted to Chapter 7. Thereafter, Janet S. Northrup was appointed as the Chapter 7 Trustee (the "**Trustee**") in the jointly administered cases (docket no. 1398), and currently serves as Trustee of the jointly administered estates (the "**Estates**").

---

[4] This amount is less than the total shown on the invoices attached as Exhibit A because HWA was awarded $5,175.00 for preparation of its first and final fee application as Chapter 11 counsel for the Trustee [docket nos. 1493 and 1688]. Those hours and fees are shown on the attached invoices, as the work was performed during the Application Period. HWA has been paid for those hours and fees, and thus amounts have credited to the amounts sought in this Application.

3

**B.     The Employment of HWA as Attorneys for the Trustee.**

4.     On September 1, 2023, the Trustee filed her *Trustee's Application to Employ Counsel* (docket no. 1443).  On October 30, 2023, the Court entered its *Order Authorizing Employment of Counsel,* which approved the employment of HWA as general bankruptcy counsel to the Trustee effective as of August 24, 2023 (docket no. 1605; the "**HWA Employment Order**").

5.     HWA has performed legal services as general counsel to the Trustee pursuant to the HWA Employment Order and the Trustee's requests.  All of the services rendered by HWA were performed for and on behalf of the Trustee and not on behalf of any committee, creditor, or other person.

6.     HWA is a law firm composed of attorneys duly licensed to practice law before the courts of the State of Texas, the United States District Court for the Southern District of Texas, and other relevant courts.  HWA's offices are located at TotalEnergies Tower, 1201 Louisiana Street, 28th Floor, Houston, Texas 77002.

7.     HWA has made the disclosures required by law and has no agreement or understanding with any other person with respect to sharing the compensation to be allowed HWA for services rendered in the case.

8.     If HWA is not allowed compensation as requested herein, such denial would have the effect of HWA having provided, without compensation, valuable services, expertise, and experience to the Trustee and would undermine the intent of § 330 of the Bankruptcy Code.  *See Matter of Baldwin United Corp.,* 36 B.R. 401 (Bankr. S.D. Ohio 1984); *In re Wilson Foods Corp.,* 36 B.R. 317 (Bankr. W.D. Okla. 1984).

C. **The Fees and Expenses Requested.**

9. On September 11, 2023, the Court entered the *Second Stipulation and Agreed Order (A) Authorizing the Use of Cash Collateral, (B) Providing Adequate Protection, and (C) Modifying the Automatic Stay* (the "**Cash Collateral Order**"). [docket no. 1464], which *inter alia* established a "carve-out" from the secured parties' cash collateral for payment of the professionals retained by the Trustee in the Case. *See* Cash Collateral Order ¶2.

10. On October 30, 2023, the Court entered its *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Trustee* (docket no. 1607; the "**Interim Fee Order**").

11. On November 14, 2023, pursuant to the Interim Fee Order, HWA filed its *First Monthly Fee Statement of Hughes Watters Askanase, LLP for Allowance of Compensation for Services Rendered as Counsel for Janet S. Northrup, Chapter 7 Trustee for the Period of August 25, 2023 through September 30, 2023* (docket no. 1715; the "**First Monthly Fee Statement**"). No objection was made to the First Monthly Fee Statement, and, therefore, the Trustee has distributed fees in the amount of $111,636.00 and expenses in the amount of $165.82 totaling $111,801.82 to HWA pursuant to the Interim Fee Order.

12. On November 17, 2023, pursuant to the Interim Fee Order, HWA filed its *Second Monthly Fee Statement of Hughes Watters Askanase, LLP for Allowance of Compensation for Services Rendered as Counsel for Janet S. Northrup, Chapter 7 Trustee for the Period October 1, 2023, through October 31, 2023* (docket no. 1737; the "**Second Monthly Fee Statement**"). No objection was made to the Second Monthly Fee Statement, and, therefore, the Trustee has distributed fees in the amount of $82,560.00 and expenses in the amount of $646.50 totaling $83,206.50 to HWA pursuant to the Interim Fee Order.

13. On December 11, 2023, pursuant to the Interim Fee Order, HWA filed its *Third Monthly Fee Statement of Hughes Watters Askanase, LLP for Allowance of Compensation for Services Rendered as Counsel for Janet S. Northrup, Chapter 7 Trustee for the Period November 1, 2023, through November 30, 2023* (docket no. 1800; the "**Third Monthly Fee Statement**"). No objection was made to the Third Monthly Fee Statement, and, therefore, the Trustee has distributed fees in the amount of $71,286.00 and expenses in the amount of $135.69 totaling $71,421.69 to HWA pursuant to the Interim Fee Order.

14. The First Monthly Fee Statement, Second Monthly Fee Statement, and Third Monthly Fee Statement, which comprise this Application, can be summarized as follows:

| **Task** | **Thru September 2023** | **October 2023** | **November 2023** | **Totals** |
|---|---|---|---|---|
| Task 1 – General Administration | $19,860.00 | $15,802.50 | $630.00 | $36,292.50 |
| Task 2 – Asset Analysis and Recovery | $58,627.50 | $42,715.00 | $19,470.00 | $120,812.50 |
| Task 3 – Asset Sales | $12,110.00 | $10,335.00 | $1,372.50 | $23,817.50 |
| Task 4 – Chapter 5 Avoidance Actions | $210.00 | $8,120.00 | $1,017.50 | $9,347.50 |
| Task 5 – Tax Matters | $3,452.50 | $140.00 | $140.00 | $3,732.50 |
| Task 7 – Claims Administration, Analysis and Objections | $1,045.00 | $1,475.00 | $560.00 | $3,080.00 |
| Task 8 – Employment Applications | $4,735.00 | $3,495.00 | $2,760.00 | $10,990.00 |
| Task 11 – Creditor Matters | $0.00 | $0.00 | $2,852.50 | $2,852.50 |
| Task 12 – Relief From Stay Proceedings | $862.50 | $2,072.50 | $8,390.00 | $11,325.00 |
| Task 14 – Employee Benefits/Pensions | $2,017.50 | $70.00 | $0.00 | $2,087.50 |
| Task 15 – Insurance Matters | $2,362.50 | $527.50 | $752.50 | $3,642.50 |
| Task 16 – Abandonment | $1,162.50 | $0.00 | $1,702.50 | $2,865.00 |
| Task 18 – Use of Cash Collateral | $5,277.50 | $2,472.50 | $1,400.00 | $9,150.00 |
| Task 21 – Landlords | $0.00 | $0.00 | $310.00 | $310.00 |
| Task 23 – Monthly Operating Reports | $560.00 | $1,375.00 | $1,330.00 | $3,265.00 |
| Task 29 – Executory Contracts | $0.00 | $775.00 | $0.00 | $775.00 |
| Task 30 - Litigation | $8,070.00 | $7,925.00 | $37,915.00 | $53,910.00 |
| Task 32 – Fee Applications | $19,192.50 | $5,900.00 | $8,505.00 | $33,597.50 |

6

| Task | Thru September 2023 | October 2023 | November 2023 | Totals |
|---|---|---|---|---|
| Totals | $139,545.00 | $103,200.00 | $89,107.50 | $331,852.50 |

15.     Pursuant to the Interim Fee Order, this Application seeks payment for HWA's professional services rendered and out-of-pocket expenses incurred from August 25, 2023, through November 30, 2023 (the "**Application Period**").  HWA rendered a total of 479.1 hours of professional and paraprofessional services on behalf of the Trustee during the Application Period, for which compensation is now sought.[5]  Attached as **Exhibit A** are the detailed statements of the services performed by HWA for the Estates.  Included in **Exhibit A** are statements reflecting the hours spent on the case and the hourly rate of each participating attorney, law clerk, and legal assistant.

16.     As shown in detail in **Exhibit A**, after credit for amounts previously approved by the Court (docket nos. 1493 and 1688), HWA's professional fees of $326,677.50 and expenses of $948.01 for the Application Period total $327,625.51.  Included in **Exhibit A** are statements reflecting the hours spent on the case and the hourly rate of each participating attorney, law clerk, and legal assistant.  **Exhibit A** also includes the details of expenses advanced during the representation.  All of HWA's services rendered were for and on behalf of the Trustee.  No agreement or understanding exists between HWA and any other person with respect to sharing any compensation awarded to HWA in connection with its representation of the Trustee in the case.

---

[5] HWA was awarded $5,175.00 for preparation of its first and final fee application as Chapter 11 counsel for the Trustee (docket nos. 1493 and 1688).  Those hours and fees are shown on Exhibit A, as the work was performed during the Application Period.  HWA has been paid for those hours and fees, and thus amounts have credited to the amounts sought in this Application.

**Summary of Major Tasks**

17. <u>General Background</u>.  After months of the Debtors attempting to sell their assets, First Horizon Bank as Administrative Agent filed an emergency motion to appoint a chapter 11 trustee, or alternatively, to convert the Debtors' cases to chapter 7 (docket no. 1280).  The Chapter 11 Trustee was appointed in this case on August 17, 2023.  Immediately upon her appointment, the Chapter 11 Trustee was faced with a liquidity crisis that threatened the Debtors' continued operations during the following days.  Prior to appointment of the Chapter 11 Trustee, Judge Marvin Isgur served as mediator in the hopes of resolving disputes among the Debtors' various constituents and formulating a path forward designed to keep the Debtors alive as going concerns.  The Chapter 11 Trustee and her professionals continued to work with Judge Isgur as mediator and the various case constituents in these efforts.  However, after days of efforts to continue as going concerns, the Chapter 11 Trustee requested a status conference.  On August 24, 2023, the Chapter 11 Trustee reported to the Court, and the cases were converted to Chapter 7 proceedings (docket no. 1397).

18. The Trustee is operating the Chapter 7 Estates on a limited basis pursuant to the Court's *Order Granting Trustee's Emergency Motion for Authority to Operate Pursuant to 11 U.S.C. § 721 as of August 24, 2023* (docket no. 1421).

19. The Trustee is using cash collateral pursuant to the *Second Stipulation and Agreed Order (A) Authorizing the Use of Cash Collateral, (B) Providing Adequate Protection, and (C) Modifying the Automatic Stay,* Cash Collateral Order at Docket No. 1464.

20. The legal services performed by Applicant can be summarized by project as follows:

21. **Task 1.   General Administration (52.8 hours; $36,292.50).**  General case administration includes matters not allocable to particular tasks, but which nonetheless must be performed to ensure the case proceeds properly.  Time in this category includes overall case

management, issues with Debtors' books and records, and conferring with the Trustee to keep the Trustee informed as to case status. During the Application Period, work with the Debtors' records included obtaining access to and securing records in a data room. HWA also conferred as necessary with special counsels to ensure proper allocation of work and division of labor, and to ensure that all Estate professionals were aware of developments. During the Application Period, HWA conferred with the Debtors' Chapter 11 professionals and representatives of the secured lender regarding wind down issues after conversion of the case and cessation of most operations, reviewed voluminous records for required reporting, responded to general inquiries from parties-in-interest and potential buyers, and reviewed general case filings. Discussions with the Trustee, other Estate professionals, and constituents commonly overlapped a wide variety of issues, and are therefore not capable of being segregated into one of the more specific Task categories below.

22.  HWA also researched and prepared a motion to designate Debtors' representative, which was granted (docket nos. 1508 and 1524); a motion to limit notice, which was approved (docket nos. 1578 and 1729); and the schedules required after conversion of the case, including the disclaimer regrading preparation of same by the Trustee (docket no. 1544). Applicant prepared for, attended and questioned the Debtors' representative at the first meeting of creditors pursuant to 11 U.S.C. §341, and a status conference covering a number of open matters (docket no. 1609). During the Application Period, HWA began investigation and work on possible substantive consolidation of the Debtors' bankruptcy estates.

23.  **Task 2. Asset Analysis and Recovery (180.0 hours; $120,812.50)**. Asset analysis and recovery includes fees incurred for the identification of potential Estate assets and the evaluation of whether further action should be taken in connection therewith. The majority of Applicant's time was spent in this Task Category during the Application Period. As would be expected with a case

of this magnitude, in light of the number of Debtors and number of locations operated by those Debtors, the inquiries from parties-in-interest and potential buyers, and the information to be reviewed regarding potential assets, are voluminous and often complex. Applicant attended as expeditiously as possible to these matters, while coordinating with other Estate professionals to a proper division of labor with respect to the issues raised.

24. Among the matters requiring attention during the Application Period were analysis of contracts that may benefit the Estates (including whether the contracts could be assumed and assigned), retention of key employees to assist in the location and investigation of potential assets, review of leases and lease payments potentially due to Debtor(s), investigation of potential environmental liability and issues regarding underground tanks and transfer of ownership of same, preparation of a bill of sale for the tanks, development of procedures for removal of lottery and ATM equipment and other personal property not owned by any Debtor but at Debtors' locations, consolidation of multiple bank accounts of the various Debtors and turnover of same (including communications regarding possible discrepancies in statements and amounts turned over), removal of personal property of an Estate so the leased premises could be surrendered, analysis of claims of constructive trust on non-Debtor funds allegedly co-mingled with Debtor funds, disposition of perishable inventory at various Debtor locations, development of procedures to obtain and retain records necessary for future investigation of assets (including 465 boxes in two office locations, bank statements, and relocation of servers), review of records and analysis of fuel receipts (including claimed right of setoff by Exxon) and reconciliation of credit card receipts, investigation of tobacco as collateral and regulatory issues surrounding tobacco on site at Debtors' locations, turnover of professional files for the Estates and cash found in safes, negotiations for a possible agreement to

operate, maintain and service certain properties to ensure the value of same did not decline, and consideration of factors impacting potential sales of assets.

25. For a number of potential real estate assets, Applicant reviewed title reports and additional information regarding potential ownership by Debtor(s) of undisclosed property, unrecorded deeds, deeds recorded post-petition, and title disputes, with much of the work focused on properties in Wisconsin, Michigan and North Dakota. HWA made inquiries to and demands on title companies to cease recording deeds post-petition as violations of the automatic stay, and drafted a complaint against the transferee. In light of the facts discovered to date, the Trustee determined to request a status hearing, and Applicant prepared the emergency motion requesting it (docket no. 1543). The motion was granted (docket no. 1556), and HWA prepared a witness and exhibit list for the hearing (docket no. 1563), reviewed those of other parties and determined whether objections were required. After initial investigation, Applicant also began negotiations with an auctioneer for a possible auction of the properties, and coordinated with the secured creditor regarding its request for the establishments of reserves if auction is held.

26. **Task 3. Asset Sales (35.0 hours; $23,817.50).** During the Application Period, Applicant reviewed and analyzed purchase offers and counter-offers, sales contracts, and values of personal and real assets, including intellectual property and vehicles. A sale of trademarks, certain contract rights, permits, and books and records was approved by the Court (docket nos. 1499 and 1507), for a sales price of $1 million. HWA also conferred and negotiated with parties-in-interest regarding possible sales and sale procedures, including coordinating with landlords for possible on-site auctions, and review and negotiation of contract with auctioneer. The application to employ the auctioneer and sell certain personal property and vehicles was scheduled for hearing, and HWA prepared a proffer of the Trustee's testimony and the witness and exhibit list, and attended and

presented the motion to the Court (docket nos. 1545, 1549 and 1551). The motion was approved by the Court (docket no. 1561), and the auction grossed more than $106,000. In light of the relatively low value of some assets, HWA prepared and obtained Court approval of a process for the sale of assets with de minimus value (docket nos. 1536 and 1750). During the Application Period, HWA also began work for a contract and procedure to auction certain real estate.

27. **Task 4. Chapter 5 Avoidance Actions (13.3 hours; $9,347.50).** HWA performed a preliminary review and investigation of potential preference claims against trade vendors, and negotiated with potential special counsel regarding an engagement letter for a contingent fee arrangement for further investigation and prosecution of claims. Applicant also investigated potential claims based on unauthorized post-conversion and post-petition transfers, prepared a complaint to avoid the post-petition transfers of Wisconsin and Michigan properties (adversary no. 23-03231), prepared for and attended the status conference in that adversary, and conferred with parties regarding possible mediation.[6]

28. **Task 5. Tax Matters (5.0 hours; $3,732.50).** Applicant communicated with proposed tax and forensic accountants, reviewed proposals for services, and corresponded with Debtors' representatives, and the Estates' accountants and professionals as necessary as to tax and tax compliance issues.

29. **Task 7. Claims Administration, Analysis and Objections (4.9 hours; $3,080.00).** Applicant reviewed claims as necessary for potential issues (including issues relating to whether claims were based on pre-conversion or post-conversion goods or services), and responded to inquiries from claimants. HWA also prepared a motion to establish a bar date for certain

---

[6] The majority of HWA's services in the chapter 5 litigation related to the Wisconsin and Michigan Properties are included in Task 30 – Litigation.

administrative tax claims and Chapter 11 claims (docket no. 1547), and worked on a proposed stipulation regarding credit card receipt claims.

30. **Task 8.  Employment Applications (15.4 hours; $10,990.00).**  Applicant reviewed, analyzed and negotiated two engagement letters, and prepared an application to employ accountant (docket nos. 1546 and 1681).  HWA also prepared the application for its employment as counsel for the Trustee (docket nos. 1443 and 1605), an application to employ special litigation counsel on a contingent fee basis (docket nos. 1505 and 1608), special ERISA counsel (docket nos. 1537 and 1662), special litigation counsel (docket no. 1799), and a fee examiner (docket nos. 1759 and 1815).

31. **Task 11.  Creditor Matters (3.7 hours; $2,852.50).**  Applicant reviewed and analyzed the security interests alleged to be held by certain creditors, and multiple requests by alleged creditors regarding operations.  HWA worked with various creditor interest groups for resolution of issues raised by creditors, including matters covered by other Task Categories.

32. **Task 12.  Relief From Stay Proceedings (15.9 hours; $11,325.00).**  Applicant reviewed, analyzed and made recommendations to the Trustee on multiple motions for relief from the automatic stay, including one filed by Ford Motor Credit (docket no. 1526).  Applicant worked with parties-interest for possible stipulations on relief from the stay, coordinated with special counsel regarding appropriate division of labor for handling, and communicated with secured creditors after the stay was lifted regarding alleged missing collateral.  HWA also communicated with parties regarding ongoing violations of the automatic stay, analyzed damages sustained as a result, and prepared an emergency motion for contempt and to show cause (docket no. 1683).  Applicant prepared the Trustee's witness and exhibit list for the motion (docket nos. 1689 and 1690), prepared for the hearing, coordinated with witnesses for presentation of testimony, and reviewed pleadings

and documents filed by opposing parties (docket nos. 1691 and 1704). HWA also negotiated and drafted a proposed stipulation for resolution of the motion (docket no. 1748).

33. **Task 14. Employee Benefits/Pensions (2.8 hour; $2,087.50).** Applicant worked on a key employee retention plan, and coordinated with special ERISA counsel and Debtors' representatives for winddown of the 401k plan.

34. **Task 15. Insurance Matters (5.0 hours; $3,642.50).** Applicant communicated with the Debtors' insurers and reviewed policies regarding outstanding claims, policies in effect, premiums due, and possible cancellation, with special attention to the directors' and officers' policy. HWA made recommendations to the Trustee after analysis. HWA also responded to requests for information from one of the insurers. A proposed stipulation was drafted.

35. **Task 16. Abandonment (3.9 hours; $2,865.00).** After analyzing certain assets, it was determined that they were of no or minimal value to the Estates. HWA communicated with in-house counsel for the New Orleans Saints professional football team, and prepared a notice of intent to abandon the New Orleans Saints sponsorship contract (docket no. 1484). Applicant also communicated with the secured creditor regarding possible abandonment of certain inventory at the gas station and convenience store locations, to allow the creditor to liquidate the collateral on its own.

36. **Task 18. Use of Cash Collateral (12.6 hours; $9,150.00).** In this case, many of the assets of the Estates appear to constitute cash collateral securing claims. Applicant reviewed operational information and corresponded extensively with secured creditors, the Debtors' representatives, and parties-in-interest as to the use of cash collateral, including reviewing the budgets in place during the Chapter 11 proceeding, and the need for cash collateral to address emergency expenses. As would be anticipated, given the number of Debtors and the number of

operation locations, these communications were almost daily. Applicant worked with the secured lender for the preparation of budgets for the ongoing use of cash collateral and negotiated a *Second Stipulation and Agreed Interim Order* for the use of cash collateral (docket no. 1464), and negotiated for a carve out of sale proceeds in the event a sale of the real estate and other asset recoveries can be accomplished.

37. **Task 21. Landlords (0.4 hour; $310.00).** HWA communicated with parties-in-interest regarding storage of the Debtors' property.

38. **Task 23. Monthly Operating Reports (4.9 hours; $3,265.00).** Applicant conferred with Trustee, accountants for the Estate, and Debtors' representatives regarding the information to be contained in monthly operating reports, reviewed multiple spreadsheets (and revisions to same) and responses to requests. Monthly Operating Reports were filed at docket nos. 1778, 1801, 1802, and 1804 – 1806.

39. **Task 29. Executory Contracts – Investigation, Assumption, and Rejection (1.0 hour; $775.00).** Applicant communicated with parties-in-interest regarding executory lease and franchise agreement issues, and reviewed and analyzed proposed stipulations.

40. **Task 30. Litigation (74.7 hours; $53,910.00).** Applicant spent considerable time investigating, prosecuting and resolving litigation claims. Among the matters requiring attention were initial analysis of potential claims against officers and directors, review of cases and adversary proceedings previously filed and being prosecuted or defended by Debtors, and work on notices for examinations under Bankruptcy Rule 2004 (docket no. 1474). Given the number of Debtors and the wide-ranging pre-petition operations, it is not surprising there is extensive litigation. HWA reviewed and analyzed settlement proposals for resolution of The Kase Group litigation, negotiated the settlement documents, and prepared and obtained Court approval of a motion to compromise under

FED. R. BANKR. P. 9019 (docket nos. 1686 and 1791). HWA also worked extensively on the avoidance litigation (which overlapped the automatic stay violation litigation to some extent; see Task 12), including preparation of an emergency motion for contempt, analysis of damage claims, preparation of witness and exhibit lists for hearings and attendance at preliminary show cause hearing, review of answers filed by defendants, work on a proposed stipulation and agreed order, preparation of lis pendens notices. Applicant prepared for and participated in a settlement conference.

41. **Task 32. Fee Applications (47.8 hours; $28,422.50).**[7] Applicant communicated with representatives of the secured lender and with a potential fee examiner regarding employment of a fee examiner. Applicant also prepared the *Motion for an Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Trustee* (docket no. 1477), which was approved by the Court (docket no. 1607). HWA obtained information from the Debtors' representative for, and prepared and filed, first and final fee applications for the Chapter 11 Trustee and for itself as counsel for the Chapter 11 Trustee, including the calculations required by the Court (docket nos. 1493 and 1570), which were approved (docket nos. 1688 and 1706). HWA's fee application as counsel for the Chapter 11 Trustee was set for hearing, and HWA prepared for and attended the hearing. HWA also prepared and filed monthly fee statements (docket nos. 1715, 1737, and 1800). During the Application Period, HWA reviewed multiple fee applications filed by Chapter 11 professionals, and filed objections to some of them (docket nos. 1509 – 1511 and 1550).

---

[7] These hours and fees reflect the reduction noted above.

**The *First Colonial* Factors**

42.     Except as noted above, HWA has not received any payments for fees or expenses during the Application Period.  The Estates currently holds cash collateral sufficient to pay the fees and expenses requested herein pursuant to the Cash Collateral Order.

43.     The Fifth Circuit in *In re First Colonial Corp. of America*, 544 F.2d 1291 (5th Cir.), *cert. denied*, 97 S. Ct. 1696 (1977), described certain factors which should be considered in compensating attorneys in Chapter 7 cases and instructive here.  Those factors are discussed in the following paragraphs.

44.     <u>Time and labor required and novelty and difficulty of the questions involved</u>.  As reflected in Exhibit A, the Applicant's professionals and paraprofessionals have expended a total of 479.1 hours on the case during the Application Period, for which compensation is now sought.  The blended hourly rate for the attorneys is $726.79.  HWA has devoted the time necessary to efficiently attend to the procedures, correspondence, and pleadings involved in the case.

45.     <u>Reputation of attorneys</u>.  The attorneys involved in the case have regularly appeared before the Courts of the Southern District.  These attorneys have significant experience in bankruptcy law including reorganizations and liquidations and have regularly represented Chapter 7 debtors and Chapters 7 trustees in both large and small cases for many years.  Therefore, HWA's attorneys are well qualified to represent the Trustee in the case.

46.     <u>Skill required</u>.  The preceding paragraphs reflect the skill required by the case.  An elevated degree of skill has been required and employed by HWA in the representation of the Trustee for the reasons indicated.

47.     <u>Preclusion of other employment</u>.  HWA was precluded from engaging in other employment only to the extent of the 479.1 hours in the case during this Application Period.

48. <u>Undesirability of the Case</u>.  A Chapter 7 case is only undesirable to the extent that HWA's compensation is always contingent upon the availability of sufficient assets with which to compensate HWA for its fees and expenses incurred.

49. <u>Results obtained</u>.  HWA has efficiently attended to the matters as described above, with recoveries for the Estates as noted above.

50. <u>Time limitations imposed by the case</u>.  HWA's attorneys have been available at all times to meet the Trustee's needs as they have arisen.  There were a number of matters requiring immediate attention of counsel, particularly with respect to issues related to the operation of certain gas and convenience store locations, and the ongoing stay violations by certain parties.

51. <u>Customary charges for the services rendered</u>.  The hourly rates of HWA's attorneys are described at the end of **Exhibit A**.  The rates charged are commensurate with the abilities of the persons involved and are on the low end of the rates customarily charged in this district for excellent legal counsel.

52. <u>Contingent nature of the fee</u>.  Any fees to be paid to HWA in any Chapter 7 case are dependent on the availability of assets and/or recovery of voidable transfers.  Representation of a bankruptcy Trustee is always of a contingent nature because of the uncertainty concerning the existence of sufficient assets for liquidation.  HWA was not, however, hired on a percentage contingency agreement, but at the regular hourly rates of the professionals doing the work, subject to available funds.

53. <u>Nature and length of professional relationship with client</u>.  HWA has represented the Trustee in many Chapter 7 cases over the past several years and has a close working relationship with her.  Since 2007, the Trustee is of counsel to HWA, but not a partner in HWA.

54. <u>Awards in similar cases</u>. This Court is familiar with the size of fee awards in cases similar to this case. The Court may wish to consider that awards of similar or larger fees have been made in other cases over the past years in this district.

55. <u>Economic administration of the Estates</u>. In its representation of the Trustee, HWA has sought to conserve the Estates and believes that the fees and expenses requested herein were reasonable and necessary in light of the circumstances at the time.

56. HWA believes the compensation and reimbursement of expenses sought herein are reasonable and represent work that was necessary for proper administration of the Estates.

57. HWA, in compliance with FED. R. BANKR. P. 2016, hereby states that: (i) no compensation previously received has been shared with any other entity; and (ii) no agreement or understanding exists between HWA and any other entity for the sharing of compensation received or to be received for services rendered in connection with the case. HWA did not receive any pre- or post-employment retainer in this matter and is holding no funds belonging to the Trustee or the Debtors.

58. HWA has submitted this Application to the Trustee for review prior to filing it, and she has no objection to it.

## Conclusion

WHEREFORE, HWA prays that this Court, after notice and any hearing, enter an Order (i) authorizing the payment of compensation to HWA for its professional and paraprofessional fees of $326,677.50 and expenses of $948.01 which total $327,625.51 incurred during this Application Period, such payment being a priority administrative expense under § 507(a)(2) of the Bankruptcy Code; and (ii) granting such other and further relief to which HWA may be entitled.

Dated:  January 17, 2024.

Respectfully submitted,

*/s/ Heather Heath McIntyre*
Wayne Kitchens        TBN 11541110
wkitchens@hwa.com
Heather McIntyre        TBN 24041076
hmcintyre@hwa.com
Hughes Watters Askanase, LLP
1201 Louisiana, 28th Floor
Houston, Texas 77002
Telephone:  (713) 759-0818
Facsimile:  (713) 759-6834
**ATTORNEYS FOR CHAPTER 7 TRUSTEE, JANET S. NORTHRUP**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served on (i) all parties receiving ECF notice in the case, and (ii) all parties listed on the attached "Master Service List" by electronic transmission or first class, U.S. mail, postage prepaid as indicated on January 17, 2024.

*/s/ Heather Heath McIntyre*
Heather Heath McIntyre