# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 7 (Previously Chapter 11) |
| Mountain Express Oil Company, *et al.*, | Case No. 23-90147 (DRJ) |
| Debtors. | Jointly Administered |

## TIME AND WATER, LLC'S *EMERGENCY* MOTION FOR ENTRY OF AN ORDER DIRECTING THE TRUSTEE TO EXECUTE A CORRECTIVE DEED

THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

EMERGENCY RELIEF HAS BEEN REQUESTED.  RELIEF IS REQUESTED NOT LATER THAN ON OR BEFORE JANUARY 24, 2024. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.

Time and Water, LLC ("T&W"), by and through its undersigned counsel, files this *Emergency Motion For Entry Of An Order Directing The Trustee To Execute A Corrective Deed* (the "Motion").  In support of the Motion, T&W respectfully states as follows:

## RELIEF REQUESTED

1.     T&W seeks entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), directing Janet S. Northrup, the Chapter 7 Trustee (the "Trustee") of

the jointly administered bankruptcy estates of Mountain Express Oil Company, et al. (collectively "MEX" or "Debtors"), to execute a corrective deed on behalf of seller/debtor WebsterP, LLC ("WebsterP" or the "Seller") with respect to certain real property located at 2193 Highway 532 Minden, Louisiana 71055 (the "Property").

## JURISDICTION AND VENUE

2.      The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).[1]

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory and other bases for the relief requested in this Motion is section 105(a) of title 11 of the United States Code (the "Bankruptcy Code").

## BACKGROUND

**1.  The Bankruptcy Filing, Chapter 7 Conversion, and Trustee Appointment**

1.      On March 18, 2023 (the "Petition Date"), the Debtors filed these jointly administered chapter 11 cases. The Debtors operated their business and managed their properties as debtors and debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code until the Chapter 11 Trustee was appointed on August 17, 2023.

2.      MEX is the Borrower under that certain First Amended and Restated Credit Agreement dated as of March 12, 2020 (the "Prepetition Credit Agreement"), among MEX (the "Prepetition Borrower"), certain of the other Debtors (the "Prepetition Guarantors"), certain

---

[1] T&W agrees to the Court's jurisdiction for purposes of this Motion only. This Motion is not intended to be, and shall not be construed as, (i) an admission as to the jurisdiction of this Court and/or a waiver to contest the jurisdiction of this Court with respect to any other matter unrelated to the Motion involving T&W (on the one hand) and the Trustee and Debtors or their estates (on the other hand), or (ii) a waiver of the right to trial by jury in this Court or any other court in any proceeding with respect to any other matter unrelated to the Motion involving T&W (on the one hand) and the Trustee and Debtors or their estates (on the other hand).

lenders (the "Prepetition Lenders"), and First Horizon Bank (in its capacity as administrative agent and a lender, the "Prepetition Agent") with respect to a secured term loan and revolving credit facility (the "Prepetition Loan Facility").

3.      Pursuant to interim and final orders entered by the Court on March 23, 2023 and April 25, 2023, respectively, the Debtors were authorized to obtain postpetition financing, consisting of senior secured super-priority, multi-draw term loans in the aggregate maximum principal amount of $37,850,000 from certain lenders (collectively, the "DIP Lenders"), under a facility (the "DIP Facility") administered by the Prepetition Agent, as administrative agent and a lender (the "DIP Agent") [Docket Nos. 117 & 332]. On July 19, 2023, the Court entered an order approving an amendment to increase the maximum principal amount under the DIP Facility to $46,850,000 [Docket No. 1044].

4.      On August 17, 2023, following the Court's Order Directing the Appointment of a Chapter 11 Trustee [Docket No. 1284], the United States Trustee filed a Notice of Appointment of Chapter 11 Trustee [Docket No, 1286], and appointed Janet S. Northrup to serve as the chapter 11 trustee in these cases.

5.      Ultimately, on August 24, 2023 (the "Conversion Date"), upon its own motion and the Chapter 11 Trustee's request, the Court converted these cases to cases under chapter 7 of the Bankruptcy Code [Docket No. 1397]. Thereafter, Janet Northrup was also appointed the Chapter 7 Trustee [Docket No. 1398].

6.      On August 26, 2023, the Trustee filed a motion seeking authority to operate the Debtors' businesses on a limited basis, in order to preserve and protect assets of the Debtors' estates, to preserve and protect the Debtors' records, all in order to preserve the value of the Debtors' assets and protect the interest of the Debtors' creditors and stakeholders ("Motion to

Operate") [Docket No. 1407].   The Court entered an order granting the Motion to Operate on August 29, 2023 [Docket No. 1421].

**2.   The Sale of the Property from Seller to T&W**

7.      On or around March 31, 2022, WebsterP (*i.e.*, the Seller) sold the Property to T&W for $500,000 (the "Sale"). *See* **Exhibit B** (Declaration of Neil Lansing ("Lansing Declaration" or "Lansing Decl."), ¶¶ 6 & 8).

8.      Fidelity National Title Insurance Company (the "Title Company") acted as the escrow and closing agent, as well as issuer of the Title Policy (as defined below), for the Sale. Lansing Decl. ¶ 4.

9.      The Sale is evidenced by a number of customary real estate closing documents (collectively, the "Transaction Documents"), including:

- that certain Act of Sale, dated as of March 28, 2022 and recorded on April 18, 2022, by and between WebsterP, as seller, and T&W, as purchaser (the "Deed"), attached as Annex 1 to the Lansing Declaration;

- the ALTA/NSPS Land Title Survey prepared by American Surveying & Mapping, Inc., Michael O. Cook, PLS No. 4879, dated March 16, 2022, last revised March 31, 2022, Job No. 22-0319.1, (the "Survey"), attached as Annex 2 to the Lansing Declaration;

- the ALTA Owner's Policy of Title Insurance, issued by the Title Company on April 18, 2022 to T&W, Policy No. LA252201023J (the "Title Policy"), attached as Annex 3 to the Lansing Declaration;

- the Owner's Title Affidavit, dated as of March 30, 2022, executed by Dennis Kirk, in his capacity as Manager of WebsterP (the "Seller's Title Affidavit"), attached as Annex 4 to the Lansing Declaration;

- the Affidavit and Indemnity Agreement, dated as of April __, 2022, executed by Clair F. White, in her capacity as manager of WebsterP (the "Affidavit and Indemnity Agreement"), attached as Annex 5 to the Lansing Declaration;

- the 1099-S Real Estate Transaction Form ("Form 1099-S"), attached as Annex 6 to the Lansing Declaration;

- the Company Resolutions of WebsterP, authorizing the sale (the "Resolutions"), attached as Annex 7 to the Lansing Declaration;

- the Buyer/Seller Disbursement Statement (the "Closing Statement"), dated March 31, 2022, showing the disbursements to WebsterP from T&W, attached as Annex 8 to the Lansing Declaration;

- T&W's account activity summary showing withdrawals on April 4, 2022 for the wire transfer to the Title Company (the "Wire Confirmation #1"), attached as Annex 9 to the Lansing Declaration; and

- the April 5, 2022 notification of wire transfer credit to MEX from the Title Company into an account controlled by the Prepetition Agent in connection with the closing of the Sale (the "Wire Confirmation #2"; and together with Wire Confirmation #1, the "Wire Confirmations"), attached as Annex 10 to the Lansing Declaration.

10. Upon the closing of the Sale, T&W owned and operated the Property, including having invested hundreds of thousands of dollars into repairs, environmental remediation and other

capital expenditures related to the Property. *See* **Exhibit C** (Declaration of Turjo Wadud ("Wadud Declaration" or "Wadud Decl."), ¶ 4).

### 3. T&W Selling the Property & Discovering Title Defect

11.     Given that T&W (a) relied on the Debtors to supply fuel to the Property, (b) rented the Property to MEX (who defaulted on its lease obligations), and (c) is owed money by the Seller as a result, T&W began contemplating strategic alternatives for the Property. Wadud Decl. ¶ 5. One of those alternatives was a sale of the Property. Wadud Decl. ¶ 5.

12.     October 27, 2023, T&W entered into a confidential purchase agreement (subject to completion of due diligence) to sell the Property to a third-party buyer (the "Buyer"). Wadud Decl. ¶ 6.

13.     In connection with the pending sale, T&W learned through the Buyer's diligence process that a small sliver of the Property (the "Sliver Parcel") was never properly conveyed to T&W when T&W purchased the Property in 2022. Lansing Decl. ¶¶ 9-10.

14.     Not only does the Seller's Title Affidavit set forth that the Seller owned and was conveying the entirety of the Property to T&W, the Title Policy insures T&W from any defects in title to the whole Property, including the Sliver Parcel. *See* Lansing Decl. at Annexes 3 & 4.

### 4. The Trustee's Refusal to Execute the Corrective Deed

15.     Upon discovering the Seller's failure to deed the entirety of the Property to T&W, T&W (through its real estate counsel, Mr. Neil Lansing) asked the Trustee (through her counsel) to execute a corrective deed to ensure the Sliver Parcel was correctly and properly conveyed to T&W. Lansing Decl. ¶ 12.  This request was made on December 11, 2023.  Lansing Decl. ¶ 12.

16.     The Trustee's counsel said that they would need to check with the Trustee's special counsel, who also happens to be counsel to the Prepetition Agent (who has threatened litigation

against the owners of T&W and the former principals of the Debtors for months). Lansing Decl. ¶ 12.

17.     In a series of subsequent email exchanges with undersigned counsel, the Trustee's special counsel requested documentation related to the Sale, which T&W quickly provided. Lansing Decl. ¶ 13.  T&W furnished the Trustee with the Transaction Documents, including the Survey, the Affidavit and Indemnity Agreement, the Seller's Title Affidavit, the Title Policy, the Deed, the Closing Statement, and the Wire Confirmations showing that T&W paid $500,000 to the Seller. Wadud Decl. 7.

18.     Notwithstanding T&W providing this information to special counsel for the Trustee (which was also in the Trustee's possession from the outset), the Trustee has inexplicably refused to execute a corrective deed that is consistent with, and required by, the Transaction Documents (including the Affidavit and Indemnity Agreement and the Seller's Title Affidavit) and Title Policy to convey the Sliver Parcel.

19.     Specifically, the Affidavit and Indemnity Agreement provides that the Seller (a debtor) "is the lawful owner in fee simple title" of the entire Property, including the Sliver Parcel. Moreover, the Seller must "pay, discharge, satisfy or *remove any defects*, liens, encumbrances, adverse claims or other matters, if any," with respect to "the assertion or enforcement or attempted assertion or enforcement thereof or of any rights existing or hereinafter arising or which may be claimed to exist under, or by reason of, or in consequence of, or growing out of any defects, liens, encumbrances, adverse claims or other matters any defects, liens, encumbrances, adverse claims or other matters. . . ."  ¶¶ 1, 3.  This would include any assertion by the Trustee that the Seller still owns Property.

20.     Additionally, the Seller must indemnify and hold harmless the Title Company for defending title to the Property and enforcing the Affidavit and Indemnity Agreement.  Thus, the Trustee has an obligation to correct the title and pay the costs of the Title Company (and T&W) for having to clear up the title to the Property.    Indeed, the Seller (a debtor) owns no interest in the Property (or the Sliver Parcel), and as demonstrated by the Transaction Documents, sold the entire Property to T&W in March 2022.  Thus, there is no legal basis on which the Trustee is entitled to withhold her signature from a corrective deed to properly convey the Sliver Parcel that is rightfully owned by T&W.

### BASIS FOR RELIEF REQUESTED

*21.*     Pursuant to Section 105(a) of the Bankruptcy Code, the Court is authorized to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. §105(a).  The purpose of Section 105(a) is "to assure the bankruptcy courts power to take whatever action is appropriate or necessary in aid of the exercise of their jurisdiction." 2 COLLIER ON BANKRUPTCY ¶ 105.01 (16th 2023).   "[T]he overriding consideration in bankruptcy . . . is that equitable principles govern", *see In re NWFX Inc.*, 864 F.2d 588, 590 (8th Cir. 1988), and bankruptcy courts have broad equitable powers to order relief pursuant to Section 105(a) of the Bankruptcy Code. *See, e.g., River Hills Assocs., Ltd. v. River Hills Apartments Fund (In re River Hills Apartments Fund)*, 813 F.2d 702, 707 (5th Cir. 1987).

22.     T&W submits that it is appropriate for the Court to use its powers under Section 105(a) to grant the Motion directing the Trustee to execute a corrective deed that would convey the entirety of the Property to T&W as was set forth in the Transaction Documents, including the Seller's Title Affidavit and the Title Policy.  Authorizing and directing the Trustee to execute a corrective deed not only would satisfy the Seller's obligations under the Transaction Documents (including the Affidavit and Indemnity Agreement and the Seller's Title Affidavit), but it would

also alleviate the Debtors' estates from liabilities a contravening position (i.e., WebsterP owns the Sliver Parcel not conveyed) would entail, particularly in this Chapter 7 bankruptcy case.

23.     If the relief described herein is not granted, the Debtors' estates would be required to pay taxes, maintain the Sliver Parcel, and face liability for environmental contamination and any other liabilities (*e.g.*, slip and falls, other accidents, etc.) that may occur on or at the Sliver Parcel that was erroneously never conveyed from WebsterP to T&W.  Additionally, estate resources would continue to be expended needlessly on continuing litigation of this simple and straightforward correction of an erroneous exclusion of the Sliver Parcel from the Property's legal description in the Deed.

### **REQUEST FOR EMERGENCY CONSIDERATION**

24.     T&W respectfully requests that the Court set an emergency hearing on the Motion on or before January 24, 2024, and (ii) approve the Proposed Order.

25.     Emergency consideration of the Motion is requested because T&W has an impending sale transaction for the Property with the third-party Buyer. Despite numerous attempts over the past several weeks to resolve the corrective deed issues out of court and having provided the Trustee (through her special counsel, who is also counsel to the Prepetition Agent) with the Transaction Documents demonstrating that T&W paid the Seller $500,000 for the Property, the Trustee has refused to execute a simple corrective deed.  Her refusal to do so is jeopardizing the closing of the sale to the Buyer because the Buyer has told to T&W that it will immediately walk away from the transaction if it does not close by January 24, 2024.  T&W will suffer immediate and irreparable harm if the sale transaction with the Buyer cannot be completed due to the Trustee's refusal to correct a defect in the deed and title that the Seller (a debtor) swore did not exist when the transaction closed in 2022—well before these bankruptcy cases were filed.

26.     Absent an order directing the Trustee to execute a corrective deed, the transaction with the Buyer cannot be consummated.  T&W will suffer damages (based on the Trustee's refusal at the direction of the Prepetition Agent) and will have no choice but to institute proceedings against the Title Company under the Title Policy, who will then separately bring an action in this Court (or elsewhere) to enforce the Seller's obligation to deliver title and have a corrective deed issued, which will result in the Title Company bringing an action against the estate and causing further unnecessary costs/expenses to the estate and the Title Company.  The costs and expenses of that litigation will be reimbursable by the Debtors' estates under the Title Policy, meaning that there will be substantial losses incurred by the estate with respect to a very obvious and easily correctable defect in title that is holding up a transaction the rightful owner, T&W, has negotiated with a third party.

27.     In addition, given the Trustee's position, the Seller (a debtor) will continue to incur unnecessary costs with respect to the Property, including taxes, insurance, environmental cleanup, costs and potential liability if an accident or incident were to occur on the portion of the Property that was sold (but not properly conveyed) by the Seller to T&W.[2]  Those expenses and risks could be substantial, and liabilities that should not be borne by a Chapter 7 estate based on refusal to execute a corrective deed.

## <u>CONCLUSION</u>

For the foregoing reasons, T&W respectfully requests that this Court grant the relief requested in the Motion in its entirety, enter the Proposed Order directing the Trustee to execute a corrective deed, and grant such other and further relief as the Court may deem just and proper.

---

[2] Of note, T&W is owed millions of dollars by the Debtors, including certain amounts with respect to the Property.

Dated: January 19, 2024                    Respectfully Submitted,

_/s/ Michael Fishel_

**KING & SPALDING LLP**
Michael Fishel (Texas Bar No. 24082998)
110 Louisiana
Suite 4100
Houston, TX 77002
Telephone: (713) 276-7369
Email: mfishel@kslaw.com

-and-

Thaddeus D. Wilson (_pro hac vice_ admission to be
requested)
Britney K. Baker (_pro hac vice_ admission to be
requested)
**KING & SPALDING LLP**
1180 Peachtree Street, NE
Suite 1600
Atlanta, Georgia 30309
Tel: (404) 572-4600
Fax: (404) 572-5100
E-mail: thadwilson@kslaw.com
          bbaker@kslaw.com

_Counsel for Time and Water, LLC_

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Motion was served on January 19, 2024 on all parties entitled to receive service through the Court's ECF system.

*/s/ Michael Fishel*

**KING & SPALDING LLP**
Michael Fishel (Texas Bar No. 24082998)
110 Louisiana
Suite 4100
Houston, TX 77002
Telephone: (713) 276-7369
Email: mfishel@kslaw.com

*Counsel for Time and Water, LLC*

## Exhibit A

Proposed Order

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 7 |
| | (Previously Chapter 11) |
| **Mountain Express Oil Company**, *et al.*, | Case No. 23-90147 (DRJ) |
| Debtors. | Jointly Administered |

**ORDER**
**DIRECTING THE TRUSTEE TO EXECUTE A CORRECTIVE DEED**

Upon the motion ("Motion")[1] of Time and Water, LLC ("T&W"), for entry of an order directing Janet S. Northrup, the Chapter 7 Trustee (the "Trustee") of the jointly administered bankruptcy estates of Mountain Express Oil Company, et al. (collectively "MEX" or "Debtors"), to execute a corrective deed with respect to certain property located in Minden, Louisiana (the "Property"); and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and this matter being a core proceeding within the meaning of 28 U.S.C. § 157(b)(2); and the Court being able to issue a final order consistent with Article III of the United States Constitution; and venue being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and appropriate notice of and opportunity for a hearing on the Motion having been given; and the relief requested in the Motion being in the best interests of the Debtors' estates, their creditors and other parties in interest; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

---

[1] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to them in the Motion.

1.      The Motion is hereby granted.

2.      The Trustee is authorized and directed to execute a corrective deed within 1 business day of entry of this Order and take all such actions as are necessary or appropriate to implement the terms of this Order.

3.      The Trustee is directed to pay the legal costs and expenses of T&W for having to bring the Motion.

4.      This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this order.

Houston, Texas
Dated: _____, 2024

_____
UNITED STATES BANKRUPTCY JUDGE

## **Exhibit B**

Lansing Declaration

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |
|---|---|
| In re: | Chapter 7 |
|  | (Previously Chapter 11) |
| Mountain Express Oil Company, *et al.*, | Case No. 23-90147 (DRJ) |
| Debtors. | Jointly Administered |

## DECLARATION OF NEIL LANSING

I, Neil Lansing, declare as follows based on my personal knowledge:

1.      I am above the age of twenty-one years, a resident of Alpharetta, Georgia, and fully competent to make this declaration ("Declaration").

2.      I am the former General Counsel of the Debtors, and my law practice involves commercial real property transactions.

3.      I was involved with the documentation of the sale (the "Sale") of the property located at 2193 Highway 532 Minden, Louisiana 71055 (the "Property") from Debtor WebsterP L.L.C., a Louisiana limited liability company ("WebsterP") to Time and Water, LLC ("T&W").

4.      I coordinated with Fidelity National Title Insurance Company (the "Title Company"), who acted as the escrow and closing agent, as well as issuer of the Title Policy, in connection with the sale of the Property and am familiar with the terms and conditions of the Sale.

5.      This Declaration is made in connection with T&W's *Emergency Motion For Entry Of An Order Directing The Trustee To Execute A Corrective Deed* (the "Motion")[1] filed contemporaneously with this Declaration.

---

[1] All capitalized terms used but not defined herein shall have the meanings given them in the Motion.

6.      The Sale closed on or around March 31, 2022.

7.      The following Transaction Documents are true and correct copies of such documents referenced in the Motion.

| Annex 1. | Deed |
| Annex 2. | Survey |
| Annex 3. | Title Policy |
| Annex 4. | Seller's Title Affidavit |
| Annex 5. | Affidavit and Indemnity Agreement |
| Annex 6. | Form 1099-S |
| Annex 7. | Resolutions |
| Annex 8. | Closing Statement |
| Annex 9. | Wire Confirmation #1 |
| Annex 10. | Wire Confirmation #2 |

8.      T&W paid WebsterP $500,000.00 in exchange for the Property at the closing as demonstrated by the Closing Statement and Wire Confirmations.

9.      In connection with T&W's contemplated sale of the Property to a third party (the "Buyer"), it was brought to my attention that, notwithstanding that WebsterP had sold the entirety of the Property to T&W, the Deed recorded by the Title Company did not convey the entirety of the Property to T&W.

10.      A small sliver of the Property—although acquired by T&W from WebsterP—was not included in the legal description for the Property in the Deed, which sliver is part of the property located at 2193 Highway 532 Minden, Louisiana 71055.  This was an error in the closing documentation that, in my experience, is easily correctable with what is known as a corrective deed that would set out the full legal description for the Property, including the sliver parcel.

11.     For T&W to sell the Property to the Buyer (or any buyer), a corrective deed must be executed by the Trustee so that T&W can convey the entirety of the property it acquired from WebsterP.

12.     On December 11, 2023, I personally raised the need for a corrective deed with the Trustee's counsel, who indicated to me that the Trustee was willing to execute a corrective deed subject to agreement from counsel to the Debtors' lenders (who I understand also represents the Trustee as special counsel in these bankruptcy cases) on December 21, 2023.

13.     In a series of subsequent email exchanges with King & Spalding LLP, the Trustee's special counsel requested documentation related to the Sale, which T&W quickly provided.

I declare, under penalty of perjury, that the foregoing statements made by me are true and correct, to the best of my knowledge, information, and belief.


Date: January 19, 2024

Neil Lansing

## **Annex 1**

Deed

HOLLI VINING
WEBSTER PARISH CLERK OF COURT
#595810
E-RECORDED 04/18/2022 AT 8:38 AM - 11 PAGES

E-RECORDED WITH WEBSTER PARISH CLERK OF COURT ON 04/18/2022 AT 8:38 AM - PAGE I OF 11

## UNITED STATES OF AMERICA

STATE OF LOUISIANA

PARISH OF WEBSTER

Return to:
Katrina Haynes
First National Financial Title Services, LLC
3301 Windy Ridge Parkway, Suite 300
Atlanta, GA 30339
770-916-4353
File No. LA252201023J

### ACT OF SALE

**BE IT KNOWN** that on this 28th day of March, 2022, before me, the undersigned Notary Public, duly commissioned and qualified in and for the County of Fulton, State of Georgia, therein residing, and in the presence of the witnesses hereinafter undersigned, personally came and appeared:

**WEBSTERP L.L.C.**, a Louisiana limited liability company successor by Dubberly I-20, L.L.C., a Louisiana Limited Liability Company (by virtue of Conveyance from Dubberly, L.L.C.), a limited liability company, recorded June 20, 2002, whose taxpayer identification number is 27-0742539, and whose business mailing address is 2439 Manhattan Blvd., Suite 401, Harvey, Louisiana 70058, appearing through Dennis Kirk, its Manager, duly authorized to appear herein pursuant to that certain Authority Document attached hereto and made a part hereof (the "**Seller**").

**BE IT KNOWN** that on this 28th day of March, 2022, before me, the undersigned Notary Public, duly commissioned and qualified in and for the County of Fulton, State of Georgia, therein residing, and in the presence of the witnesses hereinafter undersigned, personally came and appeared:

**TIME AND WATER LLC**, a Georgia limited liability company, whose certificate of formation was duly recorded with the Secretary of State of Georgia on May 6, 2020, whose taxpayer identification number is 85-1111988, and whose business mailing address is c/o 1899 Powers Ferry Road, Suite 440, Atlanta, Georgia 30339, appearing through Turjo Wadud, its Authorized Representative ("**Purchaser**").

The Seller declares that it does, by these presents, grant, bargain, sell, convey, transfer, assign, set over, abandon and deliver, with all legal warranties and with full substitution and subrogation in and to all the rights and actions of warranty which it has or may have against all preceding owners and vendors unto the hereinafter named Purchaser, here present, accepting and purchasing for itself, its heirs and assigns, and acknowledging due delivery and possession thereof, the hereinafter described property (the "**Property**"):

A tract of land in the Southwest Quarter of the Southwest Quarter of Section 4, Township 18 North, Range 8 West, Webster Parish, Louisiana, for the starting point for the North line of the plat of land, from the Northeast Corner of Southwest

E-RECORDED WITH WEBSTER PARISH CLERK OF COURT ON 04/18/2022 AT 8:38 AM - PAGE 2 OF 11

Quarter of Southwest Quarter of Section 4, Township 18 North, Range 8 West, run South 85 yards to South ditch of Gerren Road, thence run 25 degrees South of West 150 yards; thence along center of said road in a Northwest direction to the Northwest Corner of the Southwest Quarter of the Southwest Quarter of Section 4, Township 18 North, Range 8 West, including all of the land south of said Gerren Road and being the North line of said property described, except that part North of said line Gerren Road,

LESS AND EXCEPT the east 105.00 feet of the land herein described, as per that deed recorded in Book 462, Page 607, under Registry Number 257736 and in Book 288, Page 379 under Registry Number 157557 of the Conveyance Records of Webster Parish, Louisiana, the said Gerren Road now known as Webster Parish Road 135 (Camp Smoke House Road),

LESS AND EXCEPT that tract conveyed to the State of Louisiana, through the Department of Highways, by Order of Expropriation, dated May 14, 1958, recorded in Conveyance Book 289, Page 51, Registry Number 21235, and

Less and Except One certain parcel of land identified as Parcel No. 3-1 on a plat of survey by Charles G. Coyle, III, RLS, dated November 7, 2016, which parcel was transferred to the State of Louisiana, Department of Transportation and Development by Order of Expropriation recorded May 25, 2017, at File No. 565999.

together with all its component parts and together with all present and future rights, ways, privileges, servitudes and appurtenances thereunto belonging or in any manner appertaining.

TO HAVE AND TO HOLD THE said Property unto said Purchaser, its heirs, successors and assigns forever. And Seller, for itself and for its successors and assigns does hereby covenant with said Purchaser, its heirs, successors and assigns, that it has full ownership of the Property; that it has full power, authority and right to convey the same; that the Property is free from all encumbrances except (a) liens for current taxes, real estate taxes, assessments, governmental charges or levies not yet due and payable; (b) any mineral or mineral rights leased, granted or retained by current or prior owners and all appurtenant surface rights, including servitudes, for the exploration, development, production and removal of said oil, gas, water and other minerals; (c) Right-of-way in favor of Louisiana Power & Light Company recorded in Conveyance Book 174, Page 368, Records of Webster Parish, Louisiana; (d) Grant of right-of-way for public highways permitting the Department of Highways to enter upon properties beyond its right-of-way in order to excavate, construct and maintain thereon lateral drains or channel changes as may be required for the proper and adequate drainage of the highway, set forth in deed recorded under Registry Number 138954 in Conveyance Book 258, Page 531, Records of Webster Parish, Louisiana; (e) Electrical right-of-way in favor of Louisiana Power & Light Company recorded in Conveyance Book 269, Page 10, Records of Webster Parish, Louisiana; (f) Oil, Gas & Mineral Lease recorded in Conveyance Book 277, Page 605, Records of Webster Parish, Louisiana; (g) Right-of-way in favor of Louisiana Power & Light Company recorded under Registry Number 159106 in Conveyance Book 292, Page 121, Records of Webster Parish, Louisiana; (h) Right-of-way permit

E-RECORDED WITH WEBSTER PARISH CLERK OF COURT ON 04/18/2022 AT 8:38 AM - PAGE 3 OF 11

in favor of Louisiana Power & Light Company recorded under Registry Number 205236 in Conveyance Book 364, Page 897, Records of Webster Parish, Louisiana; (i) Right-of-way permit in favor of Louisiana Power & Light Company recorded under Registry Number 215240 in Conveyance Book 380, Page 382, Records of Webster Parish, Louisiana; (j) Right-of-way permit in favor of Louisiana Power & Light Company recorded under Registry Number 221800 in Conveyance Book 390, Page 909, Records of Webster Parish, Louisiana; (k) Right-of-way permit in favor of Louisiana Power & Light Company recorded under Registry Number 223673 in Conveyance Book 394, Page 2, Records of Webster Parish, Louisiana; (l) Oil, Gas & Mineral Lease recorded under Registry Number 286461 in Conveyance Book 536, Page 49, Records of Webster Parish, Louisiana; and (m) Mineral Deed executed by Dubberly I-20, LLC in favor of Fireside Oil and Gas, Inc. recorded November 28, 2006 under File No. 491916 in Conveyance Book 1031, Page 200, records of Webster Parish, Louisiana.

The sale of the Property is made and accepted for and in consideration of the price and sum of Five Hundred Thousand and 00/100 Dollars ($500,000.00) cash, paid to Seller in ready and current money, receipt of which is hereby acknowledged in full acquittance and discharge therefor.

All State, City and Parish taxes up to and including the taxes for the calendar year 2021 are paid as per researches annexed hereto (collectively "**Taxes**"). Purchaser bears full liability for the payment of all taxes for the calendar year 2022 and after.

The designation of the parties to this instrument in either the plural or singular shall be applied to, and mean either number, and whenever a pronoun is used it shall be construed to represent either singular or plural, as the case may demand.

This document may be executed in several counterparts and by different parties hereto on separate counterparts, each of which counterparts, when executed and delivered, shall be deemed to be an original, and all of which counterparts, taken together, shall constitute one and the same instrument.

[Signature Page to Follow]

THUS DONE AND PASSED effective as of the 28th day of March, 2022, in the County of Fulton, State of Georgia in the presence of the undersigned competent witnesses, who have hereunto signed their names with the appearers and me, Notary, after due reading of the whole.

WITNESSES:                                              SELLER:

                                                        **WEBSTERP L.L.C.**

By: Shandon H                                           By: Dennis Kirk
Print: Shando Hubbard                                   Print: Dennis Kirk
                                                        Its: Manager
By:
Print: Neil Kansling

                            NOTARY PUBLIC
                            Carrie Kennedy
                            Printed Name

My Commission Expires: September 28, 2025

E-RECORDED WITH WEBSTER PARISH CLERK OF COURT ON 04/18/2022 AT 8:38 AM - PAGE 4 OF 11

THUS DONE AND PASSED effective as of the 28th day of March, 2022, in the County of Fulton, State of Georgia in the presence of the undersigned competent witnesses, who have hereunto signed their names with the appearers and me, Notary, after due reading of the whole.

WITNESSES:

By: _____
Print: _Neil Lansing_

By: _Shandon Hubbard_
Print: _____

PURCHASER:
**TIME AND WATER LLC**

By: _____
Printed: Turjo Wadud, Member


_____
**NOTARY PUBLIC**

_Carrie Kennedy_
Printed Name

My Commission Expires: _9/28/25_

E-RECORDED WITH WEBSTER PARISH CLERK OF COURT ON 04/18/2022 AT 8:38 AM · PAGE 5 OF 11

E-RECORDED WITH WEBSTER PARISH CLERK OF COURT ON 04/18/2022 AT 8:38 AM - PAGE 6 OF 11

STATE OF GEORGIA
COUNTY OF FULTON

## COMPANY RESOLUTIONS

The undersigned, being the Manager of WEBSTERP L.L.C., a Louisiana limited liability company (the "Company"), hereby adopts the following resolutions by unanimous written consent, in lieu of a meeting, pursuant to applicable law:

WHEREAS, the Company has entered into that certain Purchase and Sale Agreement, ("PSA") for the purchase and sale of property (the "Property") provided for on Exhibit A attached hereto and made a part hereof by this reference.

NOW, THEREFORE, BE IT RESOLVED, that the Company proceed with the purchase and sale of the Property under and upon the terms as specified in the Agreement.

BE IT FURTHER RESOLVED, that DENNIS KIRK is hereby authorized and directed, in his capacity as the Manager of the Company, to take all acts on behalf of the Company to implement the foregoing resolution as he deems necessary or appropriate, as conclusively evidenced by the taking of such actions by the Manager, including but not limited to the execution and delivery of closing statements, affidavits, assignments, certifications, deeds (with or without warranty), bills of sale, amendments and any other documents, notices or instruments of any kind or nature whatsoever in connection with the consummation of the transaction referenced herein.

BE IT FURTHER RESOLVED, that any and all actions heretofore taken by the Authorized Representative or any member of the Company consistent with the foregoing resolutions are hereby approved, ratified and confirmed in all respects.

These Resolutions may be executed in any number of counterparts. It shall not be necessary for more than one member to execute any one counterpart, provided that each member shall have executed at least one counterpart, in which event all of said counterparts together shall be one and the same document. These Resolutions shall be delivered to the Company for inclusion in its records.

The undersigned hereby agrees that in lieu of an original written signature the facsimile or the electronically transmitted signature on this document will constitute a valid original signature to this document and can be relied upon for enforcement purposes.

These Resolutions shall be effective as of March 30, 2022.

**WEBSTERP L.L.C.,** a Louisiana limited liability company

By: _____ (SEAL)
    Dennis Kirk
    Manager

E-RECORDED WITH WEBSTER PARISH CLERK OF COURT ON 04/18/2022 AT 8:38 AM - PAGE 7 OF 11

**EXHIBIT A**

2193  Highway 532, Minden, LA 71055

E-RECORDED WITH WEBSTER PARISH CLERK OF COURT ON 04/18/2022 AT 8:38 AM - PAGE 8 OF 11

E-RECORDED WITH WEBSTER PARISH CLERK OF COURT ON 04/18/2022 AT 8:38 AM - PAGE 9 OF 11

STATE OF GEORGIA
COUNTY OF FULTON

## COMPANY RESOLUTIONS

The undersigned, being a Member of TIME AND WATER, LLC, a Georgia limited liability company (the "Company"), hereby adopts the following resolutions by unanimous written consent, in lieu of a meeting, pursuant to applicable law:

WHEREAS, the Company has entered into that certain Purchase and Sale Agreement ("PSA") for the purchase and sale of property (the "Property") provided for on Exhibit A attached hereto and made a part hereof by this reference.

NOW, THEREFORE, BE IT RESOLVED, that the Company proceed with the purchase and sale of the Property under and upon the terms as specified in the Agreement.

BE IT FURTHER RESOLVED, that TURJO WADUD is hereby authorized and directed, in his capacity as a Member of the Company, to take all acts on behalf of the Company to implement the foregoing resolution as he deems necessary or appropriate, as conclusively evidenced by the taking of such actions by the Member, including but not limited to the execution and delivery of closing statements, affidavits, assignments, certifications, deeds (with or without warranty), bills of sale, amendments and any other documents, notices or instruments of any kind or nature whatsoever in connection with the consummation of the transaction referenced herein.

BE IT FURTHER RESOLVED, that any and all actions heretofore taken by the Authorized Representative or any member of the Company consistent with the foregoing resolutions are hereby approved, ratified and confirmed in all respects.

These Resolutions may be executed in any number of counterparts. It shall not be necessary for more than one member to execute any one counterpart, provided that each member shall have executed at least one counterpart, in which event all of said counterparts together shall be one and the same document. These Resolutions shall be delivered to the Company for inclusion in its records.

The undersigned hereby agrees that in lieu of an original written signature the facsimile or the electronically transmitted signature on this document will constitute a valid original signature to this document and can be relied upon for enforcement purposes.

These Resolutions shall be effective as of March 30, 2022.

TIME AND WATER, LLC

By: _____ (SEAL)
        Turjo Wadud, Member

E-RECORDED WITH WEBSTER PARISH CLERK OF COURT ON 04/18/2022 AT 8:38 AM - PAGE 10 OF 11

# EXHIBIT A

2193 Highway 532, Minden, LA 71055

E-RECORDED WITH WEBSTER PARISH CLERK OF COURT ON 04/18/2022 AT 8:38 AM - PAGE 11 OF 11

## **Annex 2**

Survey



SEE SHEET 2 FOR SURVEY DRAWING



**<u>Annex 3</u>**

Title Policy

# ALTA OWNER'S POLICY OF TITLE INSURANCE

Issued By:



Policy Number:

**LA252201023J**

**Any notice of claim and any other notice or statement in writing required to be given to the Company under this Policy must be given to the Company at the address shown in Section 18 of the Conditions.**

## COVERED RISKS

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B, AND THE CONDITIONS, FIDELITY NATIONAL TITLE INSURANCE COMPANY, a Florida corporation (the "Company") insures, as of Date of Policy and, to the extent stated in Covered Risks 9 and 10, after Date of Policy, against loss or damage, not exceeding the Amount of Insurance, sustained or incurred by the Insured by reason of:

1.  Title being vested other than as stated in Schedule A.

2.  Any defect in or lien or encumbrance on the Title.  This Covered Risk includes but is not limited to insurance against loss from

    (a) A defect in the Title caused by

        (i)    forgery, fraud, undue influence, duress, incompetency, incapacity, or impersonation;

        (ii)   failure of any person or Entity to have authorized a transfer or conveyance;

        (iii)  a document affecting Title not properly created, executed, witnessed, sealed, acknowledged, notarized, or delivered;

        (iv)   failure to perform those acts necessary to create a document by electronic means authorized by law;

        (v)    a document executed under a falsified, expired, or otherwise invalid power of attorney;

        (vi)   a document not properly filed, recorded, or indexed in the Public Records including failure to perform those acts by electronic means authorized by law; or

        (vii)  a defective judicial or administrative proceeding.

    (b) The lien of real estate taxes or assessments imposed on the Title by a governmental authority due or payable, but unpaid.

    (c) Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land. The term "encroachment" includes encroachments of existing improvements located on the Land onto adjoining land, and encroachments onto the Land of existing improvements located on adjoining land.

3.  Unmarketable Title.

4.  No right of access to and from the Land.

5.  The violation or enforcement of any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to

    (a) the occupancy, use, or enjoyment of the Land;

    (b) the character, dimensions, or location of any improvement erected on the Land;

    (c) the subdivision of land; or

    (d) environmental protection

    if a notice, describing any part of the Land, is recorded in the Public Records setting forth the violation or intention to enforce, but only to the extent of the violation or enforcement referred to in that notice.

6.  An enforcement action based on the exercise of a governmental police power not covered by Covered Risk 5 if a notice of the enforcement action, describing any part of the Land, is recorded in the Public Records, but only to the extent of the enforcement referred to in that notice.

**Copyright American Land Title Association.  All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use.  All other uses are prohibited.  Reprinted under license from the American Land Title Association.



**FIDELITY NATIONAL TITLE INSURANCE COMPANY**          **OWNER'S POLICY NO. LA252201023J**

7. The exercise of the rights of eminent domain if a notice of the exercise, describing any part of the Land, is recorded in the Public Records.

8. Any taking by a governmental body that has occurred and is binding on the rights of a purchaser for value without Knowledge.

9. Title being vested other than as stated in Schedule A or being defective

   (a) as a result of the avoidance in whole or in part, or from a court order providing an alternative remedy, of a transfer of all or any part of the title to or any interest in the Land occurring prior to the transaction vesting Title as shown in Schedule A because that prior transfer constituted a fraudulent or preferential transfer under federal bankruptcy, state insolvency, or similar creditors' rights laws; or

   (b) because the instrument of transfer vesting Title as shown in Schedule A constitutes a preferential transfer under federal bankruptcy, state insolvency, or similar creditors' rights laws by reason of the failure of its recording in the Public Records

       (i) to be timely, or

       (ii) to impart notice of its existence to a purchaser for value or to a judgment or lien creditor.

10. Any defect in or lien or encumbrance on the Title or other matter included in Covered Risks 1 through 9 that has been created or attached or has been filed or recorded in the Public Records subsequent to Date of Policy and prior to the recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

The Company will also pay the costs, attorneys' fees, and expenses incurred in defense of any matter insured against by this Policy, but only to the extent provided in the Conditions.

IN WITNESS WHEREOF, FIDELITY NATIONAL TITLE INSURANCE COMPANY has caused this policy to be signed and sealed by its duly authorized officers.

**Fidelity National Title Insurance Company**

By:

_____
Michael J. Nolan, President

**First Title of Louisiana, LLC**
**8550 United Plaza Blvd, Suite 205**
**Baton Rouge, LA 70809**

Countersigned By:

Attest:

_____
Marjorie Nemzura, Secretary

_____
Authorized Officer or Agent
Daniel A. Reed

SEAL

**Copyright American Land Title Association.  All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use.  All other uses are prohibited.  Reprinted under license from the American Land Title Association.

**FIDELITY NATIONAL TITLE INSURANCE COMPANY**                    **OWNER'S POLICY NO. LA252201023J**

## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1. (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to

   (i)   the occupancy, use, or enjoyment of the Land;

   (ii)  the character, dimensions, or location of any improvement erected on the Land;

   (iii) the subdivision of land; or

   (iv)  environmental protection;

   or the effect of any violation of these laws, ordinances, or governmental regulations.  This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.

   (b) Any governmental police power.  This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.

2. Rights of eminent domain.  This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3. Defects, liens, encumbrances, adverse claims, or other matters

   (a) created, suffered, assumed, or agreed to by the Insured Claimant;

   (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;

   (c) resulting in no loss or damage to the Insured Claimant;

   (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9 and 10); or

   (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.

4. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as shown in Schedule A, is

   (a) a fraudulent conveyance or fraudulent transfer; or

   (b) a preferential transfer for any reason not stated in Covered Risk 9 of this policy.

5. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

**Copyright American Land Title Association.  All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use.  All other uses are prohibited.  Reprinted under license from the American Land Title Association.



**FIDELITY NATIONAL TITLE INSURANCE COMPANY**                **OWNER'S POLICY NO. LA252201023J**

## SCHEDULE A

Name and Address of Title Insurance Company:   First Title of Louisiana, LLC
8550 United Plaza Blvd, Suite 205
Baton Rouge, LA 70809

Address Reference:  2193 Highway 532, Minden, LA 71055

| Date of Policy | Amount of Insurance | Premium |
|---|---|---|
| April 18, 2022 at 08:38 AM | $500,000.00 | $2,345.20 |

1.   Name of Insured:

Time and Water LLC, a Georgia limited liability company

2.   The estate or interest in the Land that is insured by this policy is:

Fee Simple

3.   Title is vested in:

Time and Water LLC, a Georgia limited liability company (by virtue of Act of Sale from WebsterP L.L.C., a Louisiana limited liability company successor by Dubberly I-20, L.L.C., a Louisiana Limited Liability Company, dated March 28, 2022, recorded April 18, 2022, in Registry No. 595810, Webster Parish, Louisiana).

4.   The Land referred to in this policy is described as follows:

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF

**THIS POLICY VALID ONLY IF SCHEDULE B IS ATTACHED**

**END OF SCHEDULE A**

**Copyright American Land Title Association.  All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use.  All other uses are prohibited.  Reprinted under license from the American Land Title Association.



**FIDELITY NATIONAL TITLE INSURANCE COMPANY**     **OWNER'S POLICY NO. LA252201023J**

## EXHIBIT "A"
Legal Description

A tract of land in the Southwest Quarter of the Southwest Quarter of Section 4, Township 18 North, Range 8 West, Webster Parish, Louisiana, for the starting point for the North line of the plat of land, from the Northeast Corner of Southwest Quarter of Southwest Quarter of Section 4, Township 18 North, Range 8 West, run South 85 yards to South ditch of Gerren Road, thence run 25 degrees South of West 150 yards; thence along center of said road in a Northwest direction to the Northwest Corner of the Southwest Quarter of the Southwest Quarter of Section 4, Township 18 North, Range 8 West, including all of the land south  of said Gerren Road and being the North line of said property described, except  that part North of said line Gerren Road,

LESS AND EXCEPT the east 105.00 feet of the land herein described, as per that deed recorded in Book 462, Page 607, under Registry Number 257736 and in Book 288, Page 379 under Registry Number 157557 of the Conveyance Records of Webster Parish, Louisiana, the said Gerren Road now known as Webster Parish Road 135 (Camp Smoke House Road); and,

LESS AND EXCEPT that tract conveyed to the State of Louisiana, through the Department of Highways, by Order of Expropriation, dated May 14, 1958, recorded in Conveyance Book 289, Page 51, Registry Number 21235

Less and Except One certain parcel of land identified as Parcel No. 3-1 on a plat of survey by Charles G. Coyle, III, RLS, dated November 7, 2016, which parcel was transferred to the State of Louisiana, Department of Transportation and Development by Order of Expropriation recorded May 25, 2017, at File No. 565999.

**Copyright American Land Title Association.  All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use.  All other uses are prohibited.  Reprinted under license from the American Land Title Association.

AMERICAN LAND TITLE ASSOCIATION

FIDELITY NATIONAL TITLE INSURANCE COMPANY      **OWNER'S POLICY NO. LA252201023J**

# SCHEDULE B
# EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees or expenses that arise by reason of:

1. Intentionally deleted.

2. All taxes for the fiscal year 2022 and subsequent years, not yet due and payable.

3. Intentionally deleted.

4. Intentionally deleted.

5. Intentionally deleted.

6. Intentionally deleted.

7. Intentionally deleted.

8. No insurance is afforded as to the exact amount of acreage contained in the property described herein.

9. Intentionally deleted.

10. Intentionally deleted.

11. Any right, interest or claim that may exist, arise or be asserted under or pursuant to the Perishable Agricultural Commodities Act of 1930, as amended, 7 USC 499a et seq., the Packers and Stockyard Act of 1921, as amended, 7 USC 181 et seq., or any similar state laws.

12. Right-of-way in favor of Louisiana Power & Light Company recorded in Conveyance Book 174, Page 368, Records of Webster Parish, Louisiana.

13. Grant of right-of-way for public highways permitting the Department of Highways to enter upon properties beyond its right-of-way in order to excavate, construct and maintain thereon lateral drains or channel changes as may be required for the proper and adequate drainage of the highway, set forth in deed recorded under Registry Number 138954 in Conveyance Book 258, Page 531, Records of Webster Parish, Louisiana.

14. This item intentionally deleted.

15. This item intentionally deleted.

16. This item intentionally deleted.

17. Right-of-way permit in favor of Louisiana Power & Light Company recorded under Registry Number 205236 in Conveyance Book 364, Page 897, Records of Webster Parish, Louisiana.

18. Right-of-way permit in favor of Louisiana Power & Light Company recorded under Registry Number 215240 in Conveyance Book 380, Page 382, Records of Webster Parish, Louisiana.

19. Right-of-way permit in favor of Louisiana Power & Light Company recorded under Registry Number 221800 in Conveyance Book 390, Page 909, Records of Webster Parish, Louisiana.

**Copyright American Land Title Association.  All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use.  All other uses are prohibited.  Reprinted under license from the American Land Title Association.

AMERICAN
LAND TITLE
ASSOCIATION

**FIDELITY NATIONAL TITLE INSURANCE COMPANY**                    **OWNER'S POLICY NO. LA252201023J**

## SCHEDULE B
## EXCEPTIONS FROM COVERAGE
(continued)

20.  Right-of-way permit in favor of Louisiana Power & Light Company recorded under Registry Number 223673 in Conveyance Book 394, Page 2, Records of Webster Parish, Louisiana.

21.  Oil, Gas & Mineral Lease recorded under Registry Number 286461 in Conveyance Book 536, Page 49, Records of Webster Parish, Louisiana.

22.  Mineral Deed executed by Dubberly I-20, LLC in favor of Fireside Oil and Gas, Inc. recorded November 28, 2006 under File No. 491916 in Conveyance Book 1031, Page 200, records of Webster Parish, Louisiana.

23.  Location and Operation Agreement between Miletello's Pitstop, LLC and LSM Gaming, Inc. recorded October 13, 2009 under File No. 515532 in Mortgage Book 722, Page 735, records of Webster Parish, Louisiana.

24.  ALTA/NSPS Land Title Survey prepared by American Surveying & Mapping, Inc., Michael O. Cook, PLS No. 4879, dated March 16, 2022, last revised March 31, 2022, Job No. 22-0319.1, discloses the following

      a. Overhead power lines in northwest corner of.
      b. Overhead power lines in southwest corner of.
      c. Electric cabinet on east side of existing building.
      d. Gas valves and underground tank manholes near west side gas pumps.
      e. Sewer access site near south property line.

**END OF SCHEDULE B**

**Copyright American Land Title Association.  All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use.  All other uses are prohibited.  Reprinted under license from the American Land Title Association.



**FIDELITY NATIONAL TITLE INSURANCE COMPANY**          **OWNER'S POLICY NO. LA252201023J**

## CONDITIONS

**1. DEFINITION OF TERMS**

The following terms when used in this policy mean:

(a)  "Amount of Insurance":  The amount stated in Schedule A, as may be increased or decreased by endorsement to this policy, increased by Section 8(b), or decreased by Sections 10 and 11 of these Conditions.

(b)  "Date of Policy":  The date designated as "Date of Policy" in Schedule A.

(c)  "Entity":  A corporation, partnership, trust, limited liability company, or other similar legal entity.

(d)  "Insured":  The Insured named in Schedule A.

   (i)   The term "Insured" also includes

   (A)   successors to the Title of the Insured by operation of law as distinguished from purchase, including heirs, devisees, survivors, personal representatives, or next of kin;

   (B)   successors to an Insured by dissolution, merger, consolidation, distribution, or reorganization;

   (C)   successors to an Insured by its conversion to another kind of Entity;

   (D)   a grantee of an Insured under a deed delivered without payment of actual valuable consideration conveying the Title

   (1)   if the stock, shares, memberships, or other equity interests of the grantee are wholly-owned by the named Insured,

   (2)   if the grantee wholly owns the named Insured,

   (3)   if the grantee is wholly-owned by an affiliated Entity of the named Insured, provided the affiliated Entity and the named Insured are both wholly-owned by the same person or Entity, or

   (4)   if the grantee is a trustee or beneficiary of a trust created by a written instrument established by the Insured named in Schedule A for estate planning purposes.

   (ii)   With regard to (A), (B), (C), and (D) reserving, however, all rights and defenses as to any successor that the Company would have had against any predecessor Insured.

(e)  "Insured Claimant":  An Insured claiming loss or damage.

(f)  "Knowledge" or "Known":  Actual knowledge, not constructive knowledge or notice that may be imputed to an Insured by reason of the Public Records or any other records that impart constructive notice of matters affecting the Title.

(g)  "Land":  The land described in Schedule A, and affixed improvements that by law constitute real property.  The term "Land" does not include any property beyond the lines of the area described in Schedule A, nor any right, title, interest, estate, or easement in abutting streets, roads, avenues, alleys, lanes, ways, or waterways, but this does not modify or limit the extent that a right of access to and from the Land is insured by this policy.

(h)  "Mortgage":  Mortgage, deed of trust, trust deed, or other security instrument, including one evidenced by electronic means authorized by law.

(i)  "Public Records":  Records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without Knowledge.  With respect to Covered Risk 5(d), "Public Records" shall also include environmental protection liens filed in the records of the clerk of the United States District Court for the district where the Land is located.

(j)  "Title":  The estate or interest described in Schedule A.

(k)  "Unmarketable Title":  Title affected by an alleged or apparent matter that would permit a prospective purchaser or lessee of the Title or lender on the Title to be released from the obligation to purchase, lease, or lend if there is a contractual condition requiring the delivery of marketable title.

**2. CONTINUATION OF INSURANCE**

The coverage of this policy shall continue in force as of Date of Policy in favor of an Insured, but only so long as the Insured retains an estate or interest in the Land, or holds an obligation secured by a purchase money Mortgage given by a purchaser from the Insured, or only so long as the Insured shall have liability by reason of warranties in any transfer or conveyance of the Title.  This policy shall not continue in force in favor of any purchaser from the Insured of either (i) an estate or interest in the Land, or (ii) an obligation secured by a purchase money Mortgage given to the Insured.

**3. NOTICE OF CLAIM TO BE GIVEN BY INSURED CLAIMANT**

The Insured shall notify the Company promptly in writing (i) in case of any litigation as set forth in Section 5(a) of these Conditions, (ii) in case Knowledge shall come to an Insured hereunder of any claim of title or interest that is adverse to the Title, as insured, and that might cause loss or damage for which the Company may be liable by virtue of this policy, or (iii) if the Title, as insured, is rejected as Unmarketable Title.  If the Company is prejudiced by the failure of the Insured Claimant to provide prompt notice, the Company's liability to the Insured Claimant under the policy shall be reduced to the extent of the prejudice.

**4. PROOF OF LOSS**

In the event the Company is unable to determine the amount of loss or damage, the Company may, at its option, require as a condition of payment that the Insured Claimant furnish a signed proof of loss.  The proof of loss must describe the defect, lien, encumbrance, or other matter insured against by this policy that constitutes the basis of loss or damage and shall state, to the extent possible, the basis of calculating the amount of the loss or damage.

**Copyright American Land Title Association.  All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use.  All other uses are prohibited.  Reprinted under license from the American Land Title Association.

AMERICAN
LAND TITLE
ASSOCIATION

Printed:  08.29.23 @ 04:17 PM

**FIDELITY NATIONAL TITLE INSURANCE COMPANY**                    **OWNER'S POLICY NO. LA252201023J**

(continued)

**5.  DEFENSE AND PROSECUTION OF ACTIONS**

   (a)  Upon written request by the Insured, and subject to the options contained in Section 7 of these Conditions, the Company, at its own cost and without unreasonable delay, shall provide for the defense of an Insured in litigation in which any third party asserts a claim covered by this policy adverse to the Insured.  This obligation is limited to only those stated causes of action alleging matters insured against by this policy.  The Company shall have the right to select counsel of its choice (subject to the right of the Insured to object for reasonable cause) to represent the Insured as to those stated causes of action.  It shall not be liable for and will not pay the fees of any other counsel.  The Company will not pay any fees, costs, or expenses incurred by the Insured in the defense of those causes of action that allege matters not insured against by this policy.

   (b)  The Company shall have the right, in addition to the options contained in Section 7 of these Conditions, at its own cost, to institute and prosecute any action or proceeding or to do any other act that in its opinion may be necessary or desirable to establish the Title, as insured, or to prevent or reduce loss or damage to the Insured.  The Company may take any appropriate action under the terms of this policy, whether or not it shall be liable to the Insured.  The exercise of these rights shall not be an admission of liability or waiver of any provision of this policy.  If the Company exercises its rights under this subsection, it must do so diligently.

   (c)  Whenever the Company brings an action or asserts a defense as required or permitted by this policy, the Company may pursue the litigation to a final determination by a court of competent jurisdiction, and it expressly reserves the right, in its sole discretion, to appeal any adverse judgment or order.

**6.  DUTY OF INSURED CLAIMANT TO COOPERATE**

   (a)  In all cases where this policy permits or requires the Company to prosecute or provide for the defense of any action or proceeding and any appeals, the Insured shall secure to the Company the right to so prosecute or provide defense in the action or proceeding, including the right to use, at its option, the name of the Insured for this purpose.  Whenever requested by the Company, the Insured, at the Company's expense, shall give the Company all reasonable aid (i) in securing evidence, obtaining witnesses, prosecuting or defending the action or proceeding, or effecting settlement, and (ii) in any other lawful act that in the opinion of the Company may be necessary or desirable to establish the Title or any other matter as insured.  If the Company is prejudiced by the failure of the Insured to furnish the required cooperation, the Company's obligations to the Insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such cooperation.

   (b)  The Company may reasonably require the Insured Claimant to submit to examination under oath by any authorized representative of the Company and to produce for examination, inspection, and copying, at such reasonable times and places as may be designated by the authorized representative of the Company, all records, in whatever medium maintained, including books, ledgers, checks, memoranda, correspondence, reports, e-mails, disks, tapes, and videos whether bearing a date before or after Date of Policy, that reasonably pertain to the loss or damage.  Further, if requested by any authorized representative of the Company, the Insured Claimant shall grant its permission, in writing, for any authorized representative of the Company to examine, inspect, and copy all of these records in the custody or control of a third party that reasonably pertain to the loss or damage.  All information designated as confidential by the Insured Claimant provided to the Company pursuant to this Section shall not be disclosed to others unless, in the reasonable judgment of the Company, it is necessary in the administration of the claim.  Failure of the Insured Claimant to submit for examination under oath, produce any reasonably requested information, or grant permission to secure reasonably necessary information from third parties as required in this subsection, unless prohibited by law or governmental regulation, shall terminate any liability of the Company under this policy as to that claim.

**7.  OPTIONS TO PAY OR OTHERWISE SETTLE CLAIMS; TERMINATION OF LIABILITY**

In case of a claim under this policy, the Company shall have the following additional options:

   (a)  To Pay or Tender Payment of the Amount of Insurance.

      To pay or tender payment of the Amount of Insurance under this policy together with any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment or tender of payment and that the Company is obligated to pay.

      Upon the exercise by the Company of this option, all liability and obligations of the Company to the Insured under this policy, other than to make the payment required in this subsection, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation.

   (b)  To Pay or Otherwise Settle With Parties Other Than the Insured or With the Insured Claimant.

     (i)  To pay or otherwise settle with other parties for or in the name of an Insured Claimant any claim insured against under this policy.  In addition, the Company will pay any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment and that the Company is obligated to pay; or

     (ii)  to pay or otherwise settle with the Insured Claimant the loss or damage provided for under this policy, together with any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment and that the Company is obligated to pay.

      Upon the exercise by the Company of either of the options provided for in subsections (b)(i) or (ii), the Company's obligations to the Insured under this policy for the claimed loss or damage, other than the payments required to be made, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation.

**8.  DETERMINATION AND EXTENT OF LIABILITY**

This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the Insured Claimant who has suffered loss or damage by reason of matters insured against by this policy.

**Copyright American Land Title Association.  All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use.  All other uses are prohibited.  Reprinted under license from the American Land Title Association.



**FIDELITY NATIONAL TITLE INSURANCE COMPANY**    **OWNER'S POLICY NO. LA252201023J**

(continued)

(a) The extent of liability of the Company for loss or damage under this policy shall not exceed the lesser of

   (i) the Amount of Insurance; or

   (ii) the difference between the value of the Title as insured and the value of the Title subject to the risk insured against by this policy.

(b) If the Company pursues its rights under Section 5 of these Conditions and is unsuccessful in establishing the Title, as insured,

   (i) the Amount of Insurance shall be increased by Ten percent (10%), and

   (ii) the Insured Claimant shall have the right to have the loss or damage determined either as of the date the claim was made by the Insured Claimant or as of the date it is settled and paid.

(c) In addition to the extent of liability under (a) and (b), the Company will also pay those costs, attorneys' fees, and expenses incurred in accordance with Sections 5 and 7 of these Conditions.

**9. LIMITATION OF LIABILITY**

(a) If the Company establishes the Title, or removes the alleged defect, lien, or encumbrance, or cures the lack of a right of access to or from the Land, or cures the claim of Unmarketable Title, all as insured, in a reasonably diligent manner by any method, including litigation and the completion of any appeals, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused to the Insured.

(b) In the event of any litigation, including litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals, adverse to the Title, as insured.

(c) The Company shall not be liable for loss or damage to the Insured for liability voluntarily assumed by the Insured in settling any claim or suit without the prior written consent of the Company.

**10. REDUCTION OF INSURANCE; REDUCTION OR TERMINATION OF LIABILITY**

All payments under this policy, except payments made for costs, attorneys' fees, and expenses, shall reduce the Amount of Insurance by the amount of the payment.

**11. LIABILITY NONCUMULATIVE**

The Amount of Insurance shall be reduced by any amount the Company pays under any policy insuring a Mortgage to which exception is taken in Schedule B or to which the Insured has agreed, assumed, or taken subject, or which is executed by an Insured after Date of Policy and which is a charge or lien on the Title, and the amount so paid shall be deemed a payment to the Insured under this policy.

**12. PAYMENT OF LOSS**

When liability and the extent of loss or damage have been definitely fixed in accordance with these Conditions, the payment shall be made within thirty (30) days.

**13. RIGHTS OF RECOVERY UPON PAYMENT OR SETTLEMENT**

(a) Whenever the Company shall have settled and paid a claim under this policy, it shall be subrogated and entitled to the rights of the Insured Claimant in the Title and all other rights and remedies in respect to the claim that the Insured Claimant has against any person or property, to the extent of the amount of any loss, costs, attorneys' fees, and expenses paid by the Company. If requested by the Company, the Insured Claimant shall execute documents to evidence the transfer to the Company of these rights and remedies. The Insured Claimant shall permit the Company to sue, compromise, or settle in the name of the Insured Claimant and to use the name of the Insured Claimant in any transaction or litigation involving these rights and remedies.

   If a payment on account of a claim does not fully cover the loss of the Insured Claimant, the Company shall defer the exercise of its right to recover until after the Insured Claimant shall have recovered its loss.

(b) The Company's right of subrogation includes the rights of the Insured to indemnities, guaranties, other policies of insurance, or bonds, notwithstanding any terms or conditions contained in those instruments that address subrogation rights.

**14. ARBITRATION**

Either the Company or the Insured may demand that the claim or controversy shall be submitted to arbitration pursuant to the Title Insurance Arbitration Rules of the American Land Title Association ("Rules"). Except as provided in the Rules, there shall be no joinder or consolidation with claims or controversies of other persons. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the Insured arising out of or relating to this policy, any service in connection with its issuance or the breach of a policy provision, or to any other controversy or claim arising out of the transaction giving rise to this policy. All arbitrable matters when the Amount of Insurance is Two Million and No/100 Dollars ($2,000,000) or less shall be arbitrated at the option of either the Company or the Insured. All arbitrable matters when the Amount of Insurance is in excess of Two Million and No/100 Dollars ($2,000,000) shall be arbitrated only when agreed to by both the Company and the Insured. Arbitration pursuant to this policy and under the Rules shall be binding upon the parties. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court of competent jurisdiction. **(NOT VALID IN THE STATE OF LOUISIANA)**

**15. LIABILITY LIMITED TO THIS POLICY; POLICY ENTIRE CONTRACT**

(a) This policy together with all endorsements, if any, attached to it by the Company is the entire policy and contract between the Insured and the Company. In interpreting any provision of this policy, this policy shall be construed as a whole.

(b) Any claim of loss or damage that arises out of the status of the Title or by any action asserting such claim shall be restricted to this policy.

(c) Any amendment of or endorsement to this policy must be in writing and authenticated by an authorized person, or expressly incorporated by Schedule A of this policy.

**Copyright American Land Title Association. All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.




**FIDELITY NATIONAL TITLE INSURANCE COMPANY**          **OWNER'S POLICY NO. LA252201023J**

(continued)

(d)  Each endorsement to this policy issued at any time is made a part of this policy and is subject to all of its terms and provisions.  Except as the endorsement expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsement, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance.

**16.  SEVERABILITY**

In the event any provision of this policy, in whole or in part, is held invalid or unenforceable under applicable law, the policy shall be deemed not to include that provision or such part held to be invalid, but all other provisions shall remain in full force and effect.

**17.  CHOICE OF LAW; FORUM**

(a)  Choice of Law:  The Insured acknowledges the Company has underwritten the risks covered by this policy and determined the premium charged therefor in reliance upon the law affecting interests in real property and applicable to the interpretation, rights, remedies, or enforcement of policies of title insurance of the jurisdiction where the Land is located.

Therefore, the court or an arbitrator shall apply the law of the jurisdiction where the Land is located to determine the validity of claims against the Title that are adverse to the Insured and to interpret and enforce the terms of this policy.  In neither case shall the court or arbitrator apply its conflicts of law principles to determine the applicable law.

(b)  Choice of Forum:  Any litigation or other proceeding brought by the Insured against the Company must be filed only in a state or federal court within the United States of America or its territories having appropriate jurisdiction.

**18.  NOTICES, WHERE SENT**

Any notice of claim and any other notice or statement in writing required to be given to the Company under this policy must be given to the Company at:

Fidelity National Title Insurance Company
P.O. Box 45023
Jacksonville, FL 32232-5023
Attn:  Claims Department

**END OF CONDITIONS**

**Copyright American Land Title Association.  All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use.  All other uses are prohibited.  Reprinted under license from the American Land Title Association.




## ENDORSEMENT - ALTA 3.1-06         ZONING - COMPLETED STRUCTURE

Issued By:

 **Fidelity National Title**®
Insurance Company

Attached to Policy Number:

**LA252201023J**

Charge:  $351.78

1. The Company insures against loss or damage sustained by the Insured in the event that, at Date of Policy,

   a. according to applicable zoning ordinances and amendments, the Land is not classified Zone No Zoning;

   b. the following use or uses are not allowed under that classification:

      Fuel station, Convenience Store, Restaurant, and Casino

   c. There shall be no liability under paragraph 1.b. if the use or uses are not allowed as the result of any lack of compliance with any conditions, restrictions, or requirements contained in the zoning ordinances and amendments, including but not limited to the failure to secure necessary consents or authorizations as a prerequisite to the use or uses.  This paragraph 1.c. does not modify or limit the coverage provided in Covered Risk 5.

2. The Company further insures against loss or damage sustained by the Insured by reason of a final decree of a court of competent jurisdiction either prohibiting the use of the Land, with any existing structure, as specified in paragraph 1.b. or requiring the removal or alteration of the structure, because, at Date of Policy, the zoning ordinances and amendments have been violated with respect to any of the following matters:

   a. Area, width, or depth of the Land as a building site for the structure

   b. Floor space area of the structure

   c. Setback of the structure from the property lines of the Land

   d. Height of the structure, or

   e. Number of parking spaces.

3. There shall be no liability under this endorsement based on:

   a. the invalidity of the zoning ordinances and amendments until after a final decree of a court of competent jurisdiction adjudicating the invalidity, the effect of which is to prohibit the use or uses;

   b. the refusal of any person to purchase, lease or lend money on the Title covered by this policy.

**Copyright American Land Title Association.  All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use.  All other uses are prohibited.  Reprinted under license from the American Land Title Association.



Attached to Policy No. LA252201023J

This endorsement is issued as part of the policy.  Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance.  To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls.  Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

**Fidelity National Title Insurance Company**

Dated:  April 18, 2022

Countersigned By:

_____

Daniel A. Reed
Authorized Officer or Agent

**Copyright American Land Title Association.  All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use.  All other uses are prohibited.  Reprinted under license from the American Land Title Association.

AMERICAN
LAND TITLE
ASSOCIATION

# ENDORSEMENT - ALTA 17.2-06                    **UTILITY ACCESS**

Issued By:

 Fidelity National Title®
Insurance Company

Attached to Policy Number:

**LA252201023J**

Charge:  $250.00

The Company insures against loss or damage sustained by the Insured by reason of the lack of a right of access to the following utilities or services:

☑ Water service              ☐ Natural gas service          ☑ Telephone service

☑ Electrical power service   ☐ Sanitary sewer               ☐ Storm water drainage

either over, under or upon rights-of-way or easements for the benefit of the Land because of:

(1)  a gap or gore between the boundaries of the Land and the rights-of-way or easements;

(2)  a gap between the boundaries of the rights-of-way or easements ; or

(3)  a termination by a grantor, or its successor, of the rights-of-way or easements.

This endorsement is issued as part of the policy.  Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance.  To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls.  Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

**Fidelity National Title Insurance Company**

Dated:  April 18, 2022

Countersigned By:

_____
Daniel A. Reed
Authorized Officer or Agent

**Copyright American Land Title Association.  All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use.  All other uses are prohibited.  Reprinted under license from the American Land Title Association.



# ENDORSEMENT - ALTA 17-06

# ACCESS AND ENTRY

Issued By:



Attached to Policy Number:

**LA252201023J**

Charge:  $150.00

The Company insures against loss or damage sustained by the Insured if, at Date of Policy (i) the Land does not abut and have both actual vehicular and pedestrian access to and from Louisiana State Highway 532 (the "Street"), (ii) the Street is not physically open and publicly maintained, or (iii) the Insured has no right to use existing curb cuts or entries along that portion of the Street abutting the Land.

This endorsement is issued as part of the policy.  Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance.  To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls.  Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

**Fidelity National Title Insurance Company**

Dated:  April 18, 2022

Countersigned By:

_____
Daniel A. Reed
Authorized Officer or Agent

**Copyright American Land Title Association.  All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use.  All other uses are prohibited.  Reprinted under license from the American Land Title Association.

**ENDORSEMENT - ALTA 18-06**                                                    **SINGLE TAX PARCEL**

---

Issued By:



Attached to Policy Number:

**LA252201023J**

Charge:  $75.00

The Company insures against loss or damage sustained by the Insured by reason of the Land being taxed as part of a larger parcel of land or failing to constitute a separate tax parcel for real estate taxes.

This endorsement is issued as part of the policy.  Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance.  To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls.  Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

**Fidelity National Title Insurance Company**

Dated:  April 18, 2022

Countersigned By:



Daniel A. Reed
Authorized Officer or Agent

---

**Copyright American Land Title Association.  All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use.  All other uses are prohibited.  Reprinted under license from the American Land Title Association.

# ENDORSEMENT - ALTA 19.1-06

# CONTIGUITY - SINGLE PARCEL

Issued By:



Attached to Policy Number:

**LA252201023J**

Charge:  $135.00

The Company insures against loss or damage sustained by the Insured by reason of:

1. the failure of the Land to form a contiguous parcel; or

2. the presence of any gaps, strips, or gores separating the contiguous boundary lines described above.

This endorsement is issued as part of the policy.  Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance.  To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls.  Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

**Fidelity National Title Insurance Company**

Dated:  April 18, 2022

Countersigned By:



Daniel A. Reed
Authorized Officer or Agent

**Copyright American Land Title Association.  All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use.  All other uses are prohibited.  Reprinted under license from the American Land Title Association.

# ENDORSEMENT - ALTA 25-06

# SAME AS SURVEY

Issued By:



Attached to Policy Number:

**LA252201023J**

Charge: $100.00

The Company insures against loss or damage sustained by the Insured by reason of the failure of the Land as described in Schedule A to be the same as that identified on the ALTA/NSPS Land Title Survey prepared by American Surveying & Mapping, Inc., Michael O. Cook, PLS No. 4879, dated March 16, 2022, last revised March 31, 2022, Job No. 22-0319.1.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

**Fidelity National Title Insurance Company**

Dated: April 18, 2022

Countersigned By:



Jeff Yearwood
Authorized Officer or Agent

**Copyright American Land Title Association. All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

# ENDORSEMENT - ALTA 26-06

## SUBDIVISION

Issued By:



Attached to Policy Number:

**LA252201023J**

Charge: $50.00

The Company insures against loss or damage sustained by the Insured by reason of the failure of the Land to constitute a lawfully created parcel according to the subdivision statutes and local subdivision ordinances applicable to the Land.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

**Fidelity National Title Insurance Company**

Dated: April 18, 2022

Countersigned By:

_____

Daniel A. Reed
Authorized Officer or Agent

**Copyright American Land Title Association. All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

# ENDORSEMENT - ALTA 35.1-06

## MINERALS AND OTHER SUBSURFACE SUBSTANCES - IMPROVEMENTS

Issued By:


Insurance Company

Attached to Policy Number:

**LA252201023J**

Charge:  $250.00

1.  The insurance provided by this endorsement is subject to the exclusion in Section 4 of this endorsement; and the Exclusions from Coverage, the Exceptions from Coverage contained in Schedule B, and the Conditions in the policy.

2.  For purposes of this endorsement only, "Improvement" means a building, structure located on the surface of the Land, and any paved road, walkway, parking area, driveway, or curb, affixed to the Land at Date of Policy and that by law constitutes real property, but excluding any crops, landscaping, lawn, shrubbery, or trees.

3.  The Company insures against loss or damage sustained by the Insured by reason of the enforced removal or alteration of any Improvement, resulting from the future exercise of any right existing at Date of Policy to use the surface of the Land for the extraction or development of minerals or any other subsurface substances excepted from the description of the Land or excepted in Schedule B.

4.  This endorsement does not insure against loss or damage (and the Company will not pay costs, attorneys' fees, or expenses) resulting from:

    a.  contamination, explosion, fire, flooding, vibration, fracturing, earthquake or subsidence; or

    b.  negligence by a person or an Entity exercising a right to extract or develop minerals or other subsurface substances.

This endorsement is issued as part of the policy.  Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance.  To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls.  Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

**Fidelity National Title Insurance Company**

Dated:  April 18, 2022

Countersigned By:

Daniel A. Reed
Authorized Officer or Agent

**Copyright American Land Title Association.  All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use.  All other uses are prohibited.  Reprinted under license from the American Land Title Association.

## ENDORSEMENT - ALTA 39-06               **POLICY AUTHENTICATION**

Issued By:



|  |
|---|
| Attached to Policy Number: |
| **LA252201023J** |

Charge:  $0.00

When the policy is issued by the Company with a policy number and Date of Policy, the Company will not deny liability under the policy or any endorsements issued with the policy solely on the grounds that the policy or endorsements were issued electronically or lack signatures in accordance with the Conditions.

This endorsement is issued as part of the policy.  Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance.  To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls.  Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

**Fidelity National Title Insurance Company**

Dated:  April 18, 2022

Countersigned By:

_____
Daniel A. Reed
Authorized Officer or Agent

**Copyright American Land Title Association.  All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use.  All other uses are prohibited.  Reprinted under license from the American Land Title Association.



## ENDORSEMENT - SE 91        DELETION OF ARBITRATION

Issued By:



Attached to Policy Number:

**LA252201023J**

Charge:  $0.00

The policy is hereby amended by deleting Paragraph 14 of the Conditions, relating to Arbitration.

This endorsement is issued as part of the policy.  Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance.  To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls.  Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

**Fidelity National Title Insurance Company**

Dated:  April 18, 2022

Countersigned By:

_____
Daniel A. Reed
Authorized Officer or Agent

## **Annex 4**

Seller's Title Affidavit

## OWNER'S TITLE AFFIDAVIT

STATE OF GEORGIA
COUNTY OF FULTON

The undersigned deponent, DENNIS KIRK (the "Deponent"), having personally appeared before the undersigned notary public and having been duly sworn according to law, deposes and says under oath as follows:

1. Deponent is the Manager of WEBSTERP L.L.C., a Louisiana limited liability company ("Seller").

2. In such capacity, the Deponent has personal knowledge of the facts sworn to in this affidavit and such facts are true and correct. Deponent is over the age of 18 years and is mentally competent.

3. Seller is the owner of certain real estate, a description of which is set forth on **Exhibit A** attached hereto and made a part hereof (the "Property").

4. There are no loan deeds, security deeds, trust deeds, mortgages, liens, taxes, or special or general assessments of any nature whatsoever unpaid or unsatisfied against the Property and no easements, agreements or other encumbrances affecting the title to the Property except as set forth on **Exhibit B** attached hereto and made a part hereof.

5. Except as set forth on **Exhibit C** attached hereto, Seller is in open, notorious, continuous and exclusive possession of the Property and there are no lessees, tenants or other parties with rights of possession with respect to the Property. The lines and corners of the Property are clearly marked and there are no disputes concerning the locations of the lines or corners.

6. There are no suits, judgments, bankruptcies, liens, or executions pending against Seller in any court whatsoever that could in any way affect the title to the Property or constitute a lien thereon except as set forth on **Exhibit B** attached hereto and made a part hereof.

7. No work, labor, services, improvements, materials, or repairs have been made by or on behalf of Seller to the Property within the last ninety-five (95) days immediately preceding the date hereof, or, if any work, improvements and repairs have been made by or on behalf of Seller, the same are complete and there are no unpaid bills incurred for labor, services and materials used in making improvements or repairs on the Property by or on behalf of Seller for the services of architects, surveyors or engineers employed by or on behalf of Seller or its management company with respect thereto.

8. No portion of the Property is used in such a way is to be subject to the Perishable Agricultural Commodities Act, the Packers and Stockyard Act of 1921, or any similar state laws, OR any sellers and/or suppliers from whom the Owner has purchased perishable agricultural commodities, all such sellers/suppliers have either been paid in full or will be

paid in the ordinary course of business, Owner has not received any notice of any claim from any such sellers/suppliers which claims a right of lien under the Perishable Agricultural Commodities Act (restaurant, café, grocery, butcher shop or like uses).

9. This affidavit is made to induce TIME AND WATER LLC, a Georgia limited liability company ("Buyer") to purchase the Property and to induce the title insurance company to issue its policies insuring Buyer and to induce the attorney certifying title so to certify.

(Deponent's Signature and Notary Acknowledgement Follow)

**DEPONENT:**

Certified, sworn to and subscribed before me this ___30___ day of March, 2022.

_____
Notary Public
My Commission Expires: 4/20/25

_____
(NOTARIAL SEAL)

_____
Dennis Kirk
Manager of WebsterP L.L.C., a Louisiana limited liability comapny

CARRIE KENNEDY
MY COMMISSION EXPIRES
NOTARY
PUBLIC
SEPTEMBER 29, 2025
COBB COUNTY, GEORGIA

# EXHIBIT A

2193  Highway 532, Minden, LA 71055

**EXHIBIT B**
**ENCUMBRANCES**

None.

# EXHIBIT C

See attached.

## **Annex 5**

Affidavit and Indemnity Agreement

## AFFIDAVIT AND INDEMNITY AGREEMENT

STATE OF LOUISIANA

COUNTY/PARISH OF CADDO

BE IT KNOWN, that on this __ day of April, 2022;

BEFORE ME, the undersigned Notary Public, duly commissioned and qualified within and for the above County/Parish and State, and in the presence of the undersigned, competent witnesses, personally came and appeared:

**WebsterP L.L.C.**, herein represented by its duly undersigned authorized representative, Clair F. White, manager

who after being first duly sworn, did declare and covenant as follows:

It is the lawful owner in fee simple title of the property described on the attached Exhibit "A".

Affiant further declares and covenants:

That, there are no unpaid bills for material furnished or labor performed on said premises, for the period of more than four months immediately prior to this date, that could form the basis of a mechanic's or laborman's lien thereon.

There are no outstanding contracts unpaid or due for improvements to or on said property.

No one is in possession of said premises under lease, contract, crop rental or other instrument, which would prevent giving possession of said property except:

### - NONE -

There are no judgments against Affiant, nor are there any suits pending, proceedings in bankruptcy, or other proceedings in the District Court of the United States or State of Louisiana to which the said Affiant is a party.

That, there are no outstanding chattel mortgages or unpaid purchase price liens for any heating, plumbing, electric or other equipment attached to said real estate.

No Federal Restraint Warrant, Income Tax Lien, either by the Federal Government or the State of Louisiana, is in effect against this Affiant.

There are no outstanding unrecorded instruments that would affect title to the above described premises at this date except:

### - NONE -

There are no easements, servitudes, rights-of-way, or other matters affecting the above described property that are not of record.

Affiant, for itself and its assigns, does hereby covenant and agree:

1.      To forever fully protect, defend and save Baton Rouge Title Company, Inc. and Fidelity National Title Insurance Company (hereinafter collectively referred to as the "Company") harmless from and against any defects, liens, encumbrances, adverse claims or other

matters, if any, created by Affiant and first appearing in the public records or attaching subsequent to but prior to the date the insured under the policy acquires record title to the subject property, and from any and all loss, cost, damages, attorneys' fees and expenses of every kind and nature which it may suffer, expend or incur under or by reason of, or in consequence of the Policy on account of, or in consequence of, or growing out of any defects, liens, encumbrances, adverse claims or other matters, if any, as set forth in this Paragraph 1, or on account of the assertion or enforcement or attempted assertion or enforcement thereof or of any rights existing or hereinafter arising or which may be claimed to exist under, or by reason of, or in consequence of, or growing out of any defects, liens, encumbrances, adverse claims or other matters, if any, as set forth in this Paragraph 1;

2.      To provide for the defense, at its own expense, on behalf and for the protection of the Company and the insured against loss or damage under the Policy (but without prejudice to the right of the Company to defend if it so elects) in all litigation consisting of actions or proceedings based on such defects, liens, encumbrances, adverse claims or other matters, if any, as set forth in Paragraph 1 which may be asserted or attempted to be asserted, established or enforced in, to, upon, against or in respect to the land or any part thereof, or interest therein; and

3.      To pay, discharge, satisfy or remove any defects, liens, encumbrances, adverse claims or other matters, if any, as set forth in Paragraph 1 when called upon by the Company to do so but in no event later than sixty (60) days after the receipt of notice in writing and mailed to the undersigned at the address set forth above.

Affiant further declares that the purpose of this Affidavit and Indemnity Agreement is to induce the Company to issue an ALTA owners and/or mortgagee title insurance policy without the standard exceptions. Affiant agrees to indemnify and hold the Company harmless against any and all loss or damage including attorney's fees and court costs in defending said matters and enforcing this agreement which the Company shall sustain by reason of any facts that are not declared in this affidavit specifically including, but not limited to, any materialman or laborman's liens, or both, that may be filed against said property arising from work performed or contracted before this date. Affiant recognizes that this Affidavit and Indemnity Agreement was relied upon by the Company to issue the ALTA owners and/or mortgagee title insurance policy.

Nothing contained herein shall be construed so as to obligate the Company to issue its Policy in the form requested. However, should the Company issue any such Policy, it will do so in reliance upon the declarations of Affiant, and the issuance of such Policy shall be the consideration for the above declarations by Affiant.

Affiant agrees in the event that any lien created by or through Affiant is filed, to promptly pay or remove any such lien by bonding the same at no cost to the Company.

THUS DONE AND SIGNED at my office in the City of Sheveport, State of Louisiana, on the date first hereinabove written, in the presence of the undersigned competent witnesses and me, Notary, after due reading of the whole.

WITNESSES:

Printed Name:   Linda Gage-White

Charlotte Davis
Printed Name:   Charlotte Davis

WebsterP L.L.C.,

By:
    Clair F. White, manager
    Duly Authorized Representative

Notary Public

Printed Name:   Lauri Vosbury

My Commission Expires:

(Seal)

LAURI VOSBURY #078078
NOTARY PUBLIC
CADDO, SHREVEPORT, LOUISIANA
MY COMMISSION IS FOR LIFE

# EXHIBIT "A"
## Legal Description

A tract of land in the Southwest Quarter of the Southwest Quarter of Section 4, Township 18 North, Range 8 West, Webster Parish, Louisiana, for the starting point for the North line of the plat of land, from the Northeast Corner of Southwest Quarter of Southwest Quarter of Section 4, Township 18 North, Range 8 West, run South 85 yards to South ditch of Gerren Road, thence run 25 degrees South of West 150 yards; thence along center of said road in a Northwest direction to the Northwest Corner of the Southwest Quarter of the Southwest Quarter of Section 4, Township 18 North, Range 8 West, including all of the land south  of said Gerren Road and being the North line of said property described, except  that part North of said line Gerren Road,

LESS AND EXCEPT the east 105.00 feet of the land herein described, as per that deed recorded in Book 462, Page 607, under Registry Number 257736 and in Book 288, Page 379 under Registry Number 157557 of the Conveyance Records of Webster Parish, Louisiana, the said Gerren Road now known as Webster Parish Road 135 (Camp Smoke House Road); and,

LESS AND EXCEPT that tract conveyed to the State of Louisiana, through the Department of Highways, by Order of Expropriation, dated May 14, 1958, recorded in Conveyance Book 289, Page 51, Registry Number 21235

Less and Except

One certain parcel of land identified as Parcel No. 3-1 on a plat of survey by Charles G. Coyle, III, RLS, dated November 7, 2016, which parcel was transferred to the State of Louisiana, Department of Transportation and Development by Order of Expropriation recorded May 25, 2017, at File No. 565999.

Tract 2

Begin at the Northeast Corner of the Southeast Quarter of the Southeast Quarter (SE/4 of SE/4) of Section 5, Township 18 North, Range 8 West, Webster Parish, Louisiana, and run North 89 degrees 30 minutes West 106 feet to an existing iron pin; then run South 9 degrees 00 minutes West 300.0 feet to a set 5/8" iron rod for the point of beginning; then continue South 9 degrees 00 minutes West 60.67 feet to an existing iron pin; thence run South 8 degrees 57 minutes 26 seconds West 344.1 feet to an existing concrete monument; thence run South 48 degrees 59 minutes 18 seconds West 87.07 feet to an existing concrete monument; thence run North 88 degrees 08 minutes 43 seconds West 424.60 feet to an existing concrete monument; thence run North 71 degrees 24 minutes 45 seconds West 129.05 feet to a set 5/8" iron rod; thence run North 407.98 feet to a set 5/8" iron rod; thence run South 89 degrees 30 minutes East 675.49 feet to the point of beginning, containing 6.55 acres, more or less, together with all improvements located thereon and all rights thereto belonging, and being the same property shown and designated on plat of survey prepared by Paul W. Culpepper, Registered Land Surveyor, dated June 10, 1999, and Revised on June 17, 1999. (Including all Fixtures, Equipment, and personal Property used in connection therewith).

Less and Except

One certain parcel of land identified as Parcel No. 3-1 on a plat of survey by Charles G. Coyle, III, RLS, dated November 7, 2016, which parcel was transferred to the State of Louisiana, Department of Transportation and Development by Order of Expropriation recorded May 25, 2017, at File No. 565999.

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by Fidelity National Title Insurance Company.  This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I-Requirements; Schedule B, Part II-Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright American Land Title Association.  All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use.  All other uses are prohibited.  Reprinted under license from the American Land Title Association.


AMERICAN
LAND TITLE
ASSOCIATION

**<u>Annex 6</u>**

Form 1099-S

## 1099-S REAL ESTATE TRANSACTION FORM

1.  Filer Name:                                    Mountain Express Oil Company

2.  Closing Date:                                  March 30, 2022

3.  Seller's Name:                                 WebsterP L.L.C.

4.  Seller's Tax Identification No.:               27-0742539

5.  Sellers' Street Address:                       2439 Manhattan Blvd., Suite 401,
                                                   Harvey, Louisiana 70058

6.  Gross Proceeds:                                $500,000.00

7.  Address of Property conveyed:                  2193 Highway 532, Minden, LA 71055

8.  Check here if Seller received or will receive property or services as part of the
    consideration:  _N/A_

This is important tax information and is being furnished to the Internal Revenue Service.
If you are required to file a return, a negligence penalty or other sanction will be imposed
on you if this item is required to be reported and the IRS determines that it has not been
reported. You are required by law to provide us with your correct taxpayer identification
number. If you do not provide us with your correct taxpayer identification number, you
may be subject to civil or criminal penalties imposed by law. Your signature hereon will
serve to acknowledge your receipt of a copy of this form.

Under penalties of perjury, I certify that the number shown on this statement is Seller's
correct taxpayer identification number.


                                                   **SELLER:**

                                                   WEBSTERP L.L.C. a Louisiana limited
                                                   liability company


                                                   By: _Dennis Kirk_ (SEAL)
                                                   Dennis Kirk, Member

Date: _3/30/2022_

## **<u>Annex 7</u>**

Resolutions

STATE OF GEORGIA
COUNTY OF FULTON

## COMPANY RESOLUTIONS

The undersigned, being the Manager of WEBSTERP L.L.C., a Louisiana limited liability company (the "Company"), hereby adopts the following resolutions by unanimous written consent, in lieu of a meeting, pursuant to applicable law:

WHEREAS, the Company has entered into that certain Purchase and Sale Agreement, ("PSA") for the purchase and sale of property (the "Property") provided for on Exhibit A attached hereto and made a part hereof by this reference.

NOW, THEREFORE, BE IT RESOLVED, that the Company proceed with the purchase and sale of the Property under and upon the terms as specified in the Agreement.

BE IT FURTHER RESOLVED, that DENNIS KIRK is hereby authorized and directed, in his capacity as the Manager of the Company, to take all acts on behalf of the Company to implement the foregoing resolution as he deems necessary or appropriate, as conclusively evidenced by the taking of such actions by the Manager, including but not limited to the execution and delivery of closing statements, affidavits, assignments, certifications, deeds (with or without warranty), bills of sale, amendments and any other documents, notices or instruments of any kind or nature whatsoever in connection with the consummation of the transaction referenced herein.

BE IT FURTHER RESOLVED, that any and all actions heretofore taken by the Authorized Representative or any member of the Company consistent with the foregoing resolutions are hereby approved, ratified and confirmed in all respects.

These Resolutions may be executed in any number of counterparts. It shall not be necessary for more than one member to execute any one counterpart, provided that each member shall have executed at least one counterpart, in which event all of said counterparts together shall be one and the same document. These Resolutions shall be delivered to the Company for inclusion in its records.

The undersigned hereby agrees that in lieu of an original written signature the facsimile or the electronically transmitted signature on this document will constitute a valid original signature to this document and can be relied upon for enforcement purposes.

These Resolutions shall be effective as of March 30, 2022.

**WEBSTERP L.L.C.,** a Louisiana limited
liability company

By: _____ (SEAL)
    Dennis Kirk
    Manager

# EXHIBIT A

2193  Highway 532, Minden, LA 71055

## **Annex 8**

Closing Statement



**Fidelity National Title Ins Co.**
3301 Windy Ridge Parkway, Suite 300
Atlanta, GA 30339
Phone: (770)850-9600

## BUYER/SELLER DISBURSEMENT STATEMENT

| | |
|---|---|
| **Settlement Date:** | March 31, 2022 |
| **Order Number:** | A213723ATL |
| **Escrow Agent:** | Fidelity National Title Insurance Company |
| **Buyer:** | Time & Water LLC |
| **Seller:** | WebsterP, LLC |
| **Property:** | 2193 & 2198 Highway 532, Minden, LA 71055, Webster Parish |

| | Buyer | | Seller | |
|---|---|---|---|---|
| | Debit | Credit | Debit | Credit |
| **Purchase Price** | | | | |
| Purchase Price | 500,000.00 | | | 500,000.00 |
| **Title/Escrow Charges - Fidelity National Title** | | | | |
| Owner's Policy Premium    Coverage: $500,000.00 | 2,345.20 | | | |
| Endorsements | 1,361.78 | | | |
| Escrow Fee | 1,000.00 | | 1,000.00 | |
| Out of Pocket Expense | 250.00 | | | |
| **Recording Fees and Taxes** | | | | |
| Recording Fees and Recording Service Fees | 750.00 | | | |
| **Other Disbursements** | | | | |
| Survey to American Surveying & Mapping Inc. | | | 7,075.00 | |
| Zoning to American Surveying & Mapping Inc. | | | 375.00 | |
| PCA Report to American Surveying & Mapping Inc. | 3,250.00 | | | |
| **Subtotals** | 508,956.98 | 0.00 | 8,450.00 | 500,000.00 |
| **Balance Due FROM Buyer** | | 508,956.98 | | |
| **Balance Due TO Seller** | | | 491,550.00 | |
| **Totals** | 508,956.98 | 508,956.98 | 500,000.00 | 500,000.00 |

## SIGNATURE PAGE TO BE ATTACHED TO THE FOLLOWING DOCUMENT:

Statement

**BUYER(S):**

This Closing Statement may be executed in multiple counterparts, each of which shall be deemed an original and all of which shall constitute one agreement and the signatures of any party to any counterpart shall be deemed to be a signature to, and may be appended to any other counterpart. To facilitate execution and delivery of this Closing Statement, the parties may execute and exchange counterparts of the signature pages hereof by email or telecopier services.

Seller and Buyer understand that Escrow Agent has assembled this information representing the transaction from the best information available from other sources and cannot guarantee the accuracy thereof, except for the title fees. Each of the undersigned parties hereby approve this Closing Statement and authorize Escrow Agent to make expenditures and disbursements as shown and by execution below acknowledges receipt of a copy of this Closing Statement. The stipulations above shall survive the closing.

Escrow Agent is released from and shall have no liability, obligation or responsibility with respect to (a) withholding of funds pursuant to Section 1445 of the Internal Revenue Code of 1986, as amended, (b) advising the parties as to the requirements of such Section or (c) determining whether the transferor is a foreign person under such Section, acting as the Qualified Substitute or otherwise making any inquiry concerning compliance with such Section for any party to the transaction.

Buyer confirms it has full authority to direct the application and disbursement of proceeds received from any person or entity not a Lender or party to the Closing.

In order to close this transaction, Escrow Agent relies on tax reports and other information provided by third parties, governmental agencies, Buyer and Seller. In some instances, the calculation of transfer taxes, intangible taxes or ad valorem taxes, may differ from the local assessment offices' calculation. Purchaser and Seller understand and agree that Escrow Agent shall have no responsibility for collection or re-proration of any taxes after the closing date.

Time & Water LLC

BY: _____

# SIGNATURE PAGE
(Continued)

**SELLER(S):**

This Closing Statement may be executed in multiple counterparts, each of which shall be deemed an original and all of which shall constitute one agreement and the signatures of any party to any counterpart shall be deemed to be a signature to, and may be appended to any other counterpart. To facilitate execution and delivery of this Closing Statement, the parties may execute and exchange counterparts of the signature pages hereof by email or telecopier services.

Seller and Buyer understand that Escrow Agent has assembled this information representing the transaction from the best information available from other sources and cannot guarantee the accuracy thereof, except for the title fees. Each of the undersigned parties hereby approve this Closing Statement and authorize Escrow Agent to make expenditures and disbursements as shown and by execution below acknowledges receipt of a copy of this Closing Statement. The stipulations above shall survive the closing.

Escrow Agent is released from and shall have no liability, obligation or responsibility with respect to (a) withholding of funds pursuant to Section 1445 of the Internal Revenue Code of 1986, as amended, (b) advising the parties as to the requirements of such Section or (c) determining whether the transferor is a foreign person under such Section, acting as the Qualified Substitute or otherwise making any inquiry concerning compliance with such Section for any party to the transaction.

In order to close this transaction, Escrow Agent relies on tax reports and other information provided by third parties, governmental agencies, Buyer and Seller. In some instances, the calculation of transfer taxes, intangible taxes or ad valorem taxes, may differ from the local assessment offices' calculation. Purchaser and Seller understand and agree that Escrow Agent shall have no responsibility for collection or re-proration of any taxes after the closing date.

WebsterP, LLC

BY: _____
    Dennis Kirk
    DocuSigned by:
    682937B3527846F...

**<u>Annex 9</u>**

Wire Confirmation #1

**March 31 to April 29, 2022**

## Your Activity

Time and Water, LLC Account No. ▮▮▮▮▮▮

## Activity Summary

### Deposits

| Type | This Statement | Year to Date |
|------|----------------|--------------|
| Deposits | | |
| Total Deposits | | |

### Withdrawals

| Type | This Statement | Year to Date |
|------|----------------|--------------|
| Debit Card | | |
| Withdrawals | | |
| Total Withdrawals | | |

### Income

| Type | This Statement | Year to Date |
|------|----------------|--------------|
| Interest - Taxable | | |
| Interest at RJ Bank Deposit Program | | |
| Total Income | | |

## Activity Detail



| Date | Activity Category | Activity Type | Description (Symbol or CUSIP) | Check/ Deposit Code | Quantity | Price | Amount | Cash Balance | Additional Detail |
|------|-------------------|---------------|------------------------------|---------------------|----------|-------|--------|--------------|-------------------|
| 04/04/2022 | Withdrawal | Withdrawal | Cash | | | | $(508,956.98) | | *WIRE TO Fidelity National Tit |
| 04/04/2022 | Withdrawal | Withdrawal | Cash | | | | $(25.00) | | WIRE FEE |

210KC134-24-001   3KG/2N2M

## **Annex 10**

Wire Confirmation #2

Secure Email Encryption Service  

---

Notification of Wire Transfer Credit ↰ ↰

---

WT **Wire Transfer <WireTransfer@firsthorizon.com>**
04/05/2022 02:56:24 PM GMT
To: "DENISE.JONES@MTNEXPRESSOIL.COM" <DENISE.JONES@MTNEXPRESSOIL.COM>



## WIRE TRANSFER NOTIFICATION CREDIT

Please save this email as confirmation of your recent wire transfer. If you believe this transaction to be in error or fraudulent, please contact (866) 340-9473 immediately.

| | | | |
|---|---|---|---|
| TRANSACTION NUMBER: | 2022040500002276 | REPORT DATE: | 2022/04/05 |
| STATUS: | COMPLETE | COMPLETION TIME: | 2022/04/05 10:54:54 |
| | | CREDIT: | 491,550.00  USD |

CREDIT PARTY
ACCOUNT NUMBER:
NAME:                     MOUNTAIN EXPRESS OIL COMPANY
ADDRESS:                  5333 BELLS FERRY RD STE 201
                          ACWORTH GA 30102 US

ORDERING PARTY
ORDERING CUSTOMER ACCOUNT:   ▮
ORDERING CUSTOMER:           FIDELITY NATIONAL TITLE INS. CO
ORDERING CUSTOMER ADDRESS:   5540 CENTERVIEW DRIVE STE 403
                             RALEIGH NC 27606

ORDERING BANK:
ORDERING BANK ADDRESS:
ORDERING REFERENCE #:

RECEIVING PARTY (BENEFICIARY CUSTOMER)
RECEIVER NAME:            MOUNTAIN EXPRESS OIL COMPANY
RECEIVER ADDRESS:
ACCOUNT ID:              ▮
RECEIVING BANK:

DEBIT PARTY
ACCOUNT NUMBER:          ▮
NAME:                    CITY NATIONAL BANK
ADDRESS:                 LOS ANGELES, CA

SENDING PARTY
SENDER NAME:
SENDER BANK:
SENDER BANK ADDRESS:
SENDER REFERENCE #:      2022040500003466

ORIGINATOR TO BENEFICIARY INFORMATION:
FN:A213723ATL PROCEEDS LINDEN LA 21
93 HWY 532 PROPADDR:2193& 2198 HIG
HWAY 532, MINDEN, LA 71055

BANK TO BANK INFORMATION:

CONFIDENTIALITY NOTICE – The information transmitted by this email is intended only for the person or entity to whom it is addressed. It contains information that is privileged, confidential, and protected by law from use or disclosure. If you received this in error, notify the sender by email at WireTransferDepartment@firsthorizon.com, and delete this email from your computer. Any action in reliance on its content, is strictly prohibited.

**<u>Exhibit C</u>**

Wadud Declaration

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re:<br><br>Mountain Express Oil Company, *et al.*,<br><br>Debtors. | Chapter 7<br>(Previously Chapter 11)<br><br>Case No. 23-90147 (DRJ)<br><br>Jointly Administered |

---

### DECLARATION OF TURJO WADUD

I, Turjo Wadud, declare as follows based on my personal knowledge:

1.      I am above the age of twenty-one years, a resident of Alpharetta, Georgia, and fully competent to make this declaration ("Declaration").

2.      I am a Member and manager of Time and Water, LLC ("T&W").

3.      This Declaration is made in connection with T&W's *Emergency Motion For Entry Of An Order Directing The Trustee To Execute A Corrective Deed* (the "Motion")[1] filed contemporaneously with this Declaration.

4.      Upon closing of the sale (the "Sale") of the property located at 2193 Highway 532 Minden, Louisiana 71055 (the "Property") from Debtor WebsterP L.L.C., a Louisiana limited liability company ("WebsterP") to T&W, T&W owned and operated the Property, including having invested hundreds of thousands of dollars into repairs, environmental remediation and other capital expenditures related to the Property.

5.      Given that T&W (a) relied on the Debtors to supply fuel to the Property, (b) rented the Property to MEX (who defaulted on its lease), and (c) is owed money by WebsterP as a result,

---

[1] All capitalized terms used but not defined herein shall have the meanings given them in the Motion.

T&W began contemplating strategic alternatives for the Property. One of those alternatives was a sale of the Property.

6.      On October 27, 2023, T&W entered into a confidential purchase agreement (subject to completion of due diligence) to sell the Property to a third-party buyer (the "Buyer").

7.      In an effort to obtain the Trustee's signature to a corrective deed needed to complete the sale of the Property to the Buyer, T&W furnished the Trustee with the Transaction Documents, including the Survey, the Seller's Title Affidavit, the Title Policy, the Deed, the Closing Statement, and the Wire Confirmations showing that T&W paid $500,000 to WebsterP.

I declare, under penalty of perjury, that the foregoing statements made by me are true and correct, to the best of my knowledge, information, and belief.

Date: January 19, 2024

Turjo Wadud