IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In Re: | § | Case No. 23-90147 |
| | § | Jointly Administered |
| | § | |
| Mountain Express Oil Company, *et al* | § | (Chapter 7) |
| | § | |
| Debtors. | § | Judge Eduardo V. Rodriguez |

**TRUSTEE'S MOTION PURSUANT TO FEDERAL
RULE OF BANKRUPTCY PROCEDURE 9019 FOR ORDER (I)
APPROVING STIPULATION AND AGREED ORDER; (II) PROVIDING MUTUAL
RELEASES BETWEEN THE CHAPTER 7 TRUSTEE AND EXXONMOBIL
OIL CORPORATION; AND (III) RESOLVING ADMINISTRATIVE CLAIMS**

> **This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing.**
>
> **Represented parties should act through their attorney.**

1. Janet Northrup (the "Trustee"), chapter 7 trustee of Mountain Express Oil Company ("Mountain Express") and affiliated debtors (collectively, the "Debtors"), files this *Trustee's Motion Pursuant to Federal Rule of Bankruptcy Procedure 9019 for Order (I) Approving Stipulation and Agreed Order; (II) Providing Mutual Releases Between the Chapter 7 Trustee and ExxonMobil Oil Corporation; and (III) Resolving Administrative Claims* (the "Motion") and shows:

## SUMMARY

2. By this Motion, the Trustee respectfully request approval and entry of the attached *Stipulation and Agreed Order on ExxonMobil Oil Corporation's Administrative Expense Claims*

1

(the "Stipulation and Agreed Order") entered into by the Trustee, on behalf of the Debtors' estates (the "Estates"), and ExxonMobil Oil Corporation ("ExxonMobil"). The Stipulation and Agreed Order (i) resolves the assertion of possible claims against the Estates and the assertion of possible actions for turnover by the Trustee, and (ii) provides $2,736,039.14 to the Estates.

3.  Specifically, the proposed Stipulation and Agreed Order resolves the claims of the Estates against ExxonMobil and claims of ExxonMobil against the Estates, the claims of each arising out of or relating to certain franchise and fuels supply agreements (as explained below) (collectively, the "Claims"), by providing for (i) ExxonMobil's payment to the Trustee of $2,736,039.14; and (ii) modification of the stay to permit ExxonMobil to apply (through setoff) Post-petition Credit Card Receipts (as defined below) and pay the FFA Fees (as defined below) in the total amount of $666,857.37 (the "Payment of FFA Fees") in full and final satisfaction of any administrative, priority, or secured claim (exclusive of any pre-petition setoff right) that ExxonMobil has asserted or could assert against the Debtors or the Estates.

## JURISDICTION AND VENUE

4.  The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding under 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. § 1408.

5.  The legal predicates for the relief requested herein are sections 105 and 363 of title 11 of the United States Code (the "Bankruptcy Code"), rules 6004 and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules"). This Court has constitutional authority to enter a final order with respect to this Motion.

**BACKGROUND**

6. On March 18, 2023 (the "Petition Date"), each of the Debtors, including Mountain Express, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors operated their business and managed their properties as debtors and debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code until Janet Northrup was appointed to serve as the chapter 11 Trustee on August 17, 2023.

7. On August 24, 2023 (the "Conversion Date"), upon its own motion and the Chapter 11 Trustee's request, the Court converted these cases to cases under chapter 7 of the Bankruptcy Code. Thereafter, Janet Northrup was appointed the Chapter 7 Trustee in each of the Debtors' cases. The Trustee is in possession of the assets of the Estates.

8. As of the Petition Date, Mountain Express and ExxonMobil were parties to: (i) that certain Brand Incentive Program Agreement dated as of April 6, 2016 (the "BIP Agreement"); (ii) that certain ExxonMobil Oil Corporation Branded Wholesaler PMPA Franchise Agreement dated as of September 1, 2020 (the "PMPA"), which operated as a combination of a franchise agreement and a retail fuel supply agreement; and (iii) that certain ExxonMobil Oil Corporation Unbranded Fuels Sales Agreement Formula-Based Business dated as of September 1, 2022 (the "UFSA" and together with the BIP Agreement and PMPA, the "Fuel and Franchise Agreements"), which operated as a wholesale fuel supply agreement.

9. Pursuant to the PMPA, ExxonMobil held Mountain Express's credit card receivables generated from fuel sales (the "Credit Card Receipts").

10. The Debtor continued to operate its business as a debtor-in-possession during the period when this case was in chapter 11 between the Petition Date and Conversion Date.

11. The Conversion Order provided for the rejection of executory contracts and unexpired leases to which the Debtors were parties, including the Fuel and Franchise Agreements, as of the Conversion Date

## THE CLAIMS

12. Pursuant to the Fuel and Franchise Agreements, ExxonMobil was entitled to (i) amounts for fuel purchases, credit card processing fees, and site experience fees, (ii) costs of debranding sites, (iii) underlift fees, and (iv) amounts for mystery shop services (collectively, the "FFA Obligations").

13. Following the Petition Date, Mountain Express continued purchasing and selling fuel subject to the Fuel and Franchise Agreements, and Mountain Express generated post-petition Credit Card Receipts, which ExxonMobil currently holds in the amount of $3,402,896.51 (the "Post-petition Credit Card Receipts").

14. ExxonMobil asserts that Mountain Express owes fees for post-petition FFA Obligations in the following amounts (the "FFA Fees"):

(i) $395,077.57 in post-petition fuel purchases, credit card processing fees, and site experience fees;

(ii) $84,630.00 for costs of debranding seven sites determined for debranding prior to the Chapter 7 conversion;

(iii) $186,789.80 for post-petition underlift fees; and

(iv) $360.00 for post-petition mystery shop services.

## RELIEF REQUESTED

15. Since the Conversion Date, the Trustee and ExxonMobil have engaged in extensive negotiations regarding their respective Claims. Based on these negotiations and information exchanged between the parties, the parties reached a resolution of their disputes as

4

set forth in the Stipulation and Agreed Order. By this Motion, the Trustee seeks entry of the Stipulation and Agreed Order.

### SUMMARY OF THE PROPOSED STIPULATION AND AGREED ORDER

16. The terms of the Stipulation and Agreed Order are summarized as follows:

(a) Any stay pursuant to 11 U.S.C. §362, any other provision of the Bankruptcy Code or any order of this Court shall be modified to permit ExxonMobil to apply Post-petition Credit Card Receipts and pay the FFA Fees in the following amounts totaling $666,857.37 (the "Payment of FFA Fees"):

   (i) $395,077.57 in post-petition fuel purchases, credit card processing fees, and site experience fees;

   (ii) $84,630.00 for costs of debranding seven sites determined for debranding prior to the Chapter 7 conversion;

   (iii) $186,789.80 for post-petition underlift fees; and

   (iv) $360.00 for post-petition mystery shop services.

(b) Within ten business days of the entry of the Stipulation and Agreed Order, ExxonMobil shall deliver to the Trustee $2,736,039.14 from the Post-petition Credit Card Receipts (the "Payment of the Credit Card Receipts"), which is the balance of the Post-petition Credit Card Receipts after deducting for the Payment of the FFA Fees.

(c) The Payment of the FFA Fees granted to ExxonMobil by the Stipulation and Agreed Order shall be in full and final satisfaction of any administrative, priority, or secured claim (exclusive of any pre-petition setoff right) that ExxonMobil has asserted or could assert against the Debtors or their estates. All remaining amounts included in any claim that ExxonMobil has asserted or could assert against the Debtors or their

        estates, other than the $666,857.37 for the Payment of FFA Fees (and any other amounts subject to a pre-petition setoff right), shall be treated as general unsecured claims until and unless they are disallowed for any reason.

(d)    Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, 9024, or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, the Stipulation and Agreed Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution of effectiveness of the Stipulation and Agreed Order as provided in such rules. The Stipulation and Agreed Order shall be valid, binding, and enforceable on all parties in interest and fully effective immediately upon entry. The Trustee and ExxonMobil shall each be authorized and empowered to take all actions necessary to implement the relief granted in the Stipulation and Agreed Order.

17.    The Trustee has analyzed the Fuel and Franchise Agreements, documents identifying the outstanding FFA Fees, and the Claims; discussed these matters with her counsel, counsel for ExxonMobil and counsel for the DIP Agent; and has taken all such actions that are, in her best business judgment, necessary and appropriate to evaluate the value and validity of the Claims. Based upon this analysis and the actions taken, it is the Trustee's best business judgment that settling the Claims on the terms outlined herein and in the Stipulation and Agreed Order is in the best interest of the Estates, its creditors, and other parties-in-interest. It is the Trustee's conclusion that the benefits of the proposed settlement outweigh the costs and risks inherent in litigating the Claims. The Trustee and ExxonMobil have conducted extensive arms-length negotiations to reach the agreement contained in the Stipulation and Agreed Order. In the exercise of her best business judgment, the Trustee believes that the Stipulation and Agreed Order is fair

and reasonable and in the best interest of the Estates, and that it is well within a reasonable range of outcomes of litigation and any expected recovery to the Estates from the Claims.

## BASIS FOR RELIEF

**(a)   Settlements Are Favored in Bankruptcy and the Debtors' Business Judgment Is Given Significant Deference.**

18.   Bankruptcy Rule 9019(a) provides, in relevant part:

> On Motion by the [debtor in possession] and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States Trustee . . . and indenture trustee as provided in Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a).

19.   "To minimize litigation and expedite the administration of a bankruptcy estate, compromises are favored in bankruptcy." *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) (internal quotations omitted); *see also Will v. Nw. Univ. (In re Nutraquest, Inc.)*, 434 F.3d 639, 644 (3d Cir. 2006) ("[s]ettlements are favored [in bankruptcy]"). Settlements are considered a "normal part of the process of reorganization" and a "desirable and wise method[] of bringing to a close proceedings otherwise lengthy, complicated, and costly." *Rivercity v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 599, 602 (5th Cir. 1980) (citations omitted) (decided under the Bankruptcy Act).

20.   Pursuant to Bankruptcy Rule 9019(a), a bankruptcy court may, after appropriate notice and a hearing, approve a compromise or settlement so long as the proposed settlement is fair, reasonable, and in the best interest of the debtor's estate. *See In re Age Ref. Inc.*, 801 F.3d 530, 540 (5th Cir. 2015). Ultimately, approval of a compromise is within the "sound discretion" of the bankruptcy court. *United States v. AWECO, Inc. (In re AWECO, Inc.)*, 725 F.2d 293, 297 (5th Cir. 1984); *see also Jackson Brewing Co.*, 624 F.2d at 602–03 (same).

21. Generally, the role of the bankruptcy court is not to decide the issues in dispute when evaluating a settlement. *Watts v. Williams*, 154 B.R. 56, 59 (S.D. Tex. 1993). Instead, the court should determine whether the settlement as a whole is fair and equitable. *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968).[1]

22. Further, the Bankruptcy Code authorizes the use and disposition of property outside the ordinary course of business with court approval and a valid business reason. Specifically, the Bankruptcy Code authorizes a debtor in possession to "use, sell, or lease, other than in the ordinary course of business, property of the estate," after notice and a hearing. 11 U.S.C. § 363(b)(1).

23. It is well established in this jurisdiction that a debtor may use property of the estate outside the ordinary course of business if there is a good business reason for doing so. *See, e.g., ASARCO, Inc. v. Elliot Mgmt. (In re ASARCO, L.C.C.)*, 650 F.3d 593, 601 (5th Cir. 2011) ("[F]or the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors, and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business.") (quoting *In re Cont'l Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986)); *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1308 (5th Cir. 1985) (holding that the standard to assume a lease is the business judgment standard).

24. "Great judicial deference is given to the [debtor's] exercise of business judgment." *GBL Holding Co., Inc. v. Blackburn/Travis/Cole, Ltd. (In re State Park Bldg. Grp., Ltd.)*, 331 B.R. 251, 254 (Bankr. N.D. Tex. 2005). "As long as [the decision] appears to enhance a debtor's estate,

---

[1] Additionally, under section 105(a) of the Bankruptcy Code, a court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." Here, authorizing the Trustee to proceed with the Stipulation and Agreed Order falls squarely within the spirit and letter of Bankruptcy Rule 9019, as well as the Bankruptcy Code's preference for compromise. Therefore, to the extent necessary, section 105(a) relief is appropriate under the circumstances and would best harmonize the settlement processes contemplated by the Bankruptcy Code.

court approval of a debtor-in-possession's decision . . . should only be withheld if the debtor's judgment is clearly erroneous, too speculative, or contrary to the provisions of the Bankruptcy Code." *Richmond Leasing Co.*, 762 F.2d at 1309.

**(b)     The Settlement Satisfies the Three-Factor Test Courts in the Fifth Circuit Employ to Analyze Proposed Settlements.**

27.     The Fifth Circuit has established a three-factor balancing test under which bankruptcy courts are to analyze proposed settlements. The factors a court must consider in determining whether a compromise is "fair, equitable, and within the best interest of the estate are: '(1) the probability of success in litigating the claim subject to settlement, with due consideration for the uncertainty in fact and law; (2) the complexity and likely duration of litigation and any attendant expense, inconvenience, and delay; and (3) all other factors bearing on the wisdom of the compromise.'" *In re Roqumore*, 393 B.R. 474, 479 (Bankr. S.D. Tex. 2008) (citing the factors set forth by the court in *Jackson Brewing*); *see also Age Ref. Inc.*, 801 F.3d at 540 (same).

28.     Under the rubric of the third factor referenced above, the Fifth Circuit has specified two additional factors that bear on the decision to approve a proposed settlement. First, the court should consider "the paramount interest of creditors with proper deference to their reasonable views." *Conn. Gen. Life Ins. Co. v. United Cos. Fin. Corp. (In re Foster Mortg. Corp.)*, 68 F.3d 914, 917 (5th Cir. 1995); *see also Age Ref. Inc.*, 801 F.3d at 540 (noting the *Foster Mortgage* factors). "While the desires of the creditors are not binding, a court 'should carefully consider the wishes of the majority of the creditors.'" *Foster Mortg. Corp.,* 68 F.3d at 917 (quoting *In re Transcontinental Energy Corp.*, 764 F.2d 1296, 1299 (9th Cir. 1985)). Second, the court should consider the "extent to which the settlement is truly the product of arms-length bargaining, and

9

not of fraud or collusion." *Age Ref. Inc.*, 801 F.3d at 540; *Foster Mortg. Corp.*, 68 F.3d at 918 (citations omitted).

        **a.**    **The Stipulation and Agreed Order Represents the Best Outcome for the Estates.**

23.    With respect to "the probability of success in litigating the claim subject to settlement," the Trustee does not believe there would be any greater recovery by the Estates if the Claims were fully litigated. ExxonMobil appears to have valid setoff rights for postpetition administrative claims, and the Stipulation and Agreed Order grants to ExxonMobil no more than the amount claimed for setoff. Therefore, it is in the best interest of the Estates to avoid the uncertainty in pursuing and defending such claims for setoff. Pursuant to the Stipulation and Agreed Order, a portion of the Post-petition Credit Card Receipts will be applied to resolve the FFA Fees and to resolve any postpetition administrative claim ExxonMobil may have arising from the FFA Fees. Thus, the Trustee believes, in her sound business judgment, that the Stipulation and Agreed Order is a favorable outcome for the Estates.

        **b.**    **Litigation Over the Claims Will Cause Delay and Result in Unnecessary Costs to the Estates.**

24.    With respect to "the complexity and likely duration of litigation and any attendant expense, inconvenience, and delay," potential litigation with ExxonMobil likely would be costly and time consuming. Indeed, the disputes at issue could require significant time and expense, including costly discovery to obtain the facts necessary to ascertain the validity and merits of the FFA Fees asserted at a time when the Trustee and her advisors should be focused on pursuing other claims and winding up the Estates.

        **c.**    **The Stipulation and Agreed Order Is in the Best Interests of Creditors.**

25.    The Stipulation and Agreed Order is in the best interests of creditors. As noted, the Stipulation and Agreed Order avoids costly litigation, and the Stipulation and Agreed Order will

allow the Trustee to focus on the many other issues outstanding in these bankruptcy cases. The Stipulation and Agreed Order, therefore, maximizes the value of the Estates by avoiding the expense of litigation and by allowing the Debtors' cases to move forward. Also, the Stipulation and Agreed Order arises out of arms-length, good faith negotiations among the Trustee and ExxonMobil. Finally, as noted, given ExxonMobil's seemingly valid setoff right, the Trustee would be unlikely to recover any amount greater than that proposed in the Stipulation and Agreed Order, and in fact, would likely net a lesser amount given the attendant time and legal fees required to pursue the Post-petition Credit Card Receipts outside of the Stipulation and Agreed Order.

26. Based on the foregoing considerations, the Trustee respectfully submits that the Stipulation and Agreed Order is a fair and reasonable compromise that is in the best interest of the Estates. Accordingly, the Trustee respectfully requests that the Court authorize the Trustee to enter into and implement the terms of the Stipulation and Agreed Order, as such action is a reasonable exercise of the Trustee's business judgement and in the best interest of the Estates.

### WAIVER OF BANKRUPTCY RULE 6004(a) AND 6004(h)

27. To implement the foregoing successfully, the Trustee requests that the Court enter an order providing that notice of the relief requested herein satisfied Bankruptcy Rule 6004(a) and that the Trustee has established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

### NOTICE

28. Notice of this Motion will be given to: (i) the United States Trustee; (ii) First Horizon Bank, the Administrative Agent via counsel; (iii) Neil Lansing, the person responsible for performing all acts of the Debtors under the Bankruptcy Code; (iv) parties requesting notice; and (v) the 20 largest unsecured creditors scheduled by the Debtors. The Trustee submits that,

11

under the circumstances, and pursuant to the Court's *Amended Order Granting Trustee's Motion to Limit Notice* [Docket No. 1816], no other or further notice is required.

## NO PRIOR REQUEST

29.     No prior motion for the relief requested herein has been made to this Court or any other court.

## CONCLUSION

30.     This Motion and all prior communications between and among the Trustee and ExxonMobil and their respective representatives and counsel are subject to Rule 408 of the Federal Rules of Evidence.

31.     The Trustee respectfully requests that this Court enter an order substantially in the form attached hereto that authorizes and approves the Stipulation and Agreed Order and any such other relief as the Court may deem just and proper.

*[Remainder of page intentionally blank]*

Dated: January 19, 2024

Respectfully Submitted,

By: /s/ Joshua W. Wolfshohl
**PORTER HEDGES LLP**
Joshua W. Wolfshohl (TX Bar No. 24038592)
Megan Young-John (TX Bar No. 24088700)
1000 Main St., 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6000
Facsimile: (713) 226-6248
jwolfshohl@porterhedges.com
myoung-john@porterhedges.com

**ATTORNEYS FOR**
**JANET S. NORTHRUP, CHAPTER 7 TRUSTEE**