```
 1              IN THE UNITED STATES BANKRUPTCY COURT

 2             FOR THE SOUTHERN DISTRICT OF TEXAS

 3                      HOUSTON DIVISION

 4   IN RE:                      §    CASE NO. 23-90147-11
                                 §    JOINTLY ADMINISTERED
 5   MOUNTAIN EXPRESS OIL COMPANY, §   HOUSTON, TEXAS
     ET AL,                       §    WEDNESDAY,
 6                                §    AUGUST 23, 2023
          DEBTORS.                §    12:00 P.M. TO 12:36 P.M.
 7
                    STATUS CONFERENCE (VIA ZOOM)
 8
              BEFORE THE HONORABLE DAVID R. JONES
 9                 UNITED STATES BANKRUPTCY JUDGE

10

11

12

           APPEARANCES:                    SEE NEXT PAGE
13

14                  (Recorded via CourtSpeak)

15

16

17

18

19

20
                    TRANSCRIPTION SERVICE BY:
21
              JUDICIAL TRANSCRIBERS OF TEXAS, LLC
22                 935 Eldridge Road, #144
                    Sugar Land, TX 77478
23                    281-277-5325
                 www.judicialtranscribers.com
24

25     Proceedings recorded by electronic sound recording;
          transcript produced by transcription service.
```

1                        **APPEARANCES (VIA ZOOM)**:

2


3   FOR THE US TRUSTEE:          PORTER HEDGES, LLP
                                 Joshua Wolfshohl, Esq.
4                                1000 Main, 36th Floor
                                 Houston, TX  77002
5                                713-226-6000

6   FOR BFM ENTERPRISES:         LOCKE LORD, LLP
                                 Simon Mayer, Esq.
7                                600 Travis, Ste. 2800
                                 Houston, TX  77002
8                                713-226-1507

9   FOR EXXON/MOBIL:             JACKSON WALKER, LLP
                                 Deborah Williamson, Esq.
10                               Bruce Ruzinsky, Esq.
                                 1401 McKinney, Ste. 1900
11                               Houston, TX  77010
                                 713-752-4100
12
    FOR SASS PETROLEUM:          FOLEY & LARDNER
13                               John Melko, Esq.
                                 Sharon Beausoleil, Esq.
14                               1000 Louisiana, Ste. 2000
                                 Houston, TX  77002
15                               713-276-5727

16  FOR MARATHON PETROLEUM CO.:  PLATT CHEEMA RICHMOND, PLLC
                                 Mark Platt, Esq.
17                               1201 N. Riverfront Blvd.
                                 Suite 150
18                               Dallas, TX  75207
                                 214-559-2700
19
    FOR ISS MOTOR FUEL I, LLC:   GRAY REED & MCGRAW, LLP
20                               Jason Brookner, Esq.
                                 1601 Elm Street, Ste. 4600
21                               Dallas, TX  75201
                                 469-320-6132
22

23

24

25

1                    **APPEARANCES (CONT'D) (VIA ZOOM):**

2

3    FOR THE OFFICIAL COMMITTEE OF
     UNSECURED CREDITORS:           MCDERMOTT WILL & EMERY, LLP
4                                   Charles Gibbs, Esq.
                                    2501 North Harwood St.
5                                   Suite 1900
                                    Dallas, TX  75201
6                                   214-295-8063

7    FOR A GROUP OF OPERATORS:      HALL ESTILL
                                    Larry Ball, Esq.
8                                   100 North Broadway, Ste. 2900
                                    Oklahoma City, OK  73102
9                                   405-553-2828

10

11   (Please also see Electronic Appearances.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1       **HOUSTON, TEXAS; WEDNESDAY, AUGUST 23, 2023; 12:00 P.M.**

2            THE COURT:  Good afternoon, everyone.  This is

3  Judge Jones.  The time is 12:00 noon.  Today is August the

4  23rd, 2023.  This is the Docket for Houston, Texas.  On the

5  noon docket we have the jointly administered cases under

6  Case No. 23-90147, Mountain Express Oil Company.

7            Folks, please don't forget to record your

8  electronic appearance.  It's a quick trip to the website, a

9  couple of mouse clicks.  You can do that at any time prior

10  to the conclusion of today's hearing, but it is the way we

11  note your official appearance.

12       (Electronic noise.)

13            THE COURT:  Somebody's got me on a speaker.  If

14  you'd mute me, please.

15            All right.  For those of you in the courtroom, if

16  you do rise to speak --

17       (Electronic noise.)

18            THE COURT:  Mr. Gibbs, it tells me that that's

19  you.

20       (Electronic noise.)

21            THE COURT:  So what I'm going to do is I've muted

22  you, and so, ah, yeah.  So when you come back in, if you'd

23  hit five star then I'll unmute you again.  I just -- I've

24  just now lost you in the 120 folks who are listening.

25            Let me just pick right back up.  For those of you

1  in the courtroom, if you do rise to speak, if you would

2  please come to the lectern to speak?  It's the only place we

3  have both the camera and a microphone and I want you to both

4  be seen and be heard.

5          For those of you who are on GoToMeeting, again, I

6  have activated the hand-raising feature.  If you choose to

7  speak, haven't already done so, five star.  I will get you

8  unmuted.  You can, of course, change your mind at any time.

9          Either way, first time that you do speak, if you

10  would, please state your name and who you represent.  That

11  serves as a good point of reference for the court reporter

12  in the event that a transcript is made.

13          Finally, we are recording this afternoon using

14  CourtSpeak.  We'll have the audio up on the Docket available

15  for your download shortly after the conclusion of the

16  hearing this after.

17          And with that, Mr. Wolfshohl?

18          MR. WOLFSHOHL:  Thank you, Your Honor.  Joshua

19  Wolfshohl on behalf of the Chapter 11 Trustee, and

20  Ms. Northrup is in the courtroom, as well, Your Honor.

21          THE COURT:  Good afternoon.

22          MR. WOLFSHOHL:  Are we going to take other

23  appearances, or do you want me to go ahead and proceed?

24          THE COURT:  I'll take appearances.  That's what

25  the appearance sheets are.

1        MR. WOLFSHOHL:  That's right, which I did not sign

2    up on.  But I guess I'm here, right?

3        THE COURT:  We know you're here.

4        MR. WOLFSHOHL:  All right, Judge.  So let me -- I

5    can't sit here today and tell you that we are completely

6    done.  You probably assumed that from me not filing

7    anything.

8        I want to tell you some good news because I

9    haven't yet done that in this case yet.

10        THE COURT:  All right.

11        MR. WOLFSHOHL:  I think we are going to get over

12    the finish line on a deal, the structure of which has been

13    outlined and has been the subject of extensive negotiations

14    with Judge Isgur's assistance.

15        There are some big issues in the drafting that I

16    think -- I think will get resolved.  I was in the hall

17    speaking about them to people just before I walked in here.

18        THE COURT:  Okay.

19        MR. WOLFSHOHL:  But the good news I want to

20    provide Your Honor is that assuming this deal takes and

21    assuming if we can get it over the finish line because I am

22    going to ask you for another hearing.  I know I keep doing

23    that, but the deal that we are going to go forward with

24    results in, I believe, eventually saving all of the

25    non-executive jobs at the company.

1        THE COURT:  All right.

2        MR. WOLFSHOHL:  It doesn't necessarily -- it

3   doesn't involve all of the leases, but my understanding is

4   that the buyer will be offering jobs to everyone.  It may be

5   that the jobs are not jobs that they want to take.  But the

6   intent --

7        THE COURT:  Sure.  Free choice.

8        MR. WOLFSHOHL:  -- is to offer jobs to everyone.

9        THE COURT:  I got that.

10       MR. WOLFSHOHL:  With respect -- this is another

11  important point 'cause I wanted to tell you a couple of good

12  things.  With respect to the locations that they are not

13  going to take, the intent is to free up through the process

14  very quickly those landlords so that instead of having all

15  motions to lift stay with Agreed Orders and et cetera for

16  the next several months, we're trying to make it so that

17  those landlords can either mitigate or people that we bring

18  to the table to potentially allow for assumption and

19  assignment to acquire locations that our purchaser doesn't

20  want, or that our purchaser just doesn't have as part of

21  this package, so that we can actually keep those locations

22  open, if possible.

23       THE COURT:  But are we deferring at that point?

24  Are we giving any deference to the landlords' wishes?

25       MR. WOLFSHOHL:  We are going to reject.

1          THE COURT:  Okay.  Fine by me.

2          MR. WOLFSHOHL:  And we're basically -- my

3  anticipation is some of them will say great, I don't ever

4  want to hear from you again.

5          THE COURT:  Sure.

6          MR. WOLFSHOHL:  Some of them might say, if you've

7  got somebody that's interested in coming in, that'd be

8  great, too.  Or some of the, you know, might have people

9  already in place, so.

10          THE COURT:  The Debtor is going to step out of the

11  middle of it and let the landlords control their own

12  destiny?

13          MR. WOLFSHOHL:  Exactly, other than to the extent

14  that we might bring people to the table and say, okay, the

15  Debtor's fuel and the Debtor's inventory is here, let's

16  create a turnkey situation where we can --

17          THE COURT:  But that's still the landlord's

18  decision, right?

19          MR. WOLFSHOHL:  It's the landlord's decision.

20          THE COURT:  All I'm after is free choice.

21          MR. WOLFSHOHL:  That's right.  And that's the idea

22  behind this, Your Honor.

23          THE COURT:  So what are we doing with -- 'cause

24  you're reading the Docket just like I am.  What are we doing

25  with folks who don't have gas?

1          MR. WOLFSHOHL:  This is part of trying to resolve

2     that problem.

3          THE COURT:  So what you're working on resolves

4     that?

5          MR. WOLFSHOHL:  It resolves it as to some

6     locations.  We don't have cash to provide all the gas.  The

7     idea is that we're going to move quickly enough to be able

8     to transition this to --

9          THE COURT:  To somebody who has the ability to

10    accept the gas?

11         MR. WOLFSHOHL:  That's right, Your Honor.  And I

12    don't know that we're going to be able to resolve every

13    single one of those problems.

14         THE COURT:  I got it, but people -- you know,

15    look, I'm not suggesting that there aren't -- that no one is

16    suffering.  I'm not suggesting that at all.

17         But at some point -- and I've bent over backwards

18    to give everybody an opportunity, you know?  You weren't

19    here, but my gut instinct was to simply just tear it all

20    apart last week.  That was my gut instinct.  I didn't do it

21    'cause everybody stood up and asked me not to.

22         But we're coming back around to my gut instinct.

23    So we need to get this done.  We need to recognize those

24    folks who haven't been able to get gas, and you know, they

25    need to have that opportunity.  I mean, they need to have

1  the opportunity to survive.

2          Now you've benefited from the fact that a lot of

3  the people that have filed the motions have done it in

4  absolutely the wrong way.  They haven't contacted the

5  Trustee, they haven't reached out Mr. Alonzo for a hearing.

6  They just kind of took matters into their own hands, which I

7  don't react well to.

8          MR. WOLFSHOHL:  Right.

9          THE COURT:  So you've benefited somewhat from

10  that, but people are going to correct that and at the end of

11  the day, there's somebody out there who is just trying to

12  make a living and we need to recognize that and we need to

13  find some way to let those folks get that.

14          I don't know what the answer is on every single

15  one, but I do want attention paid to every single person.

16          MR. WOLFSHOHL:  So Your Honor -- and that's -- I

17  take what you're saying very seriously.

18          THE COURT:  Sure.

19          MR. WOLFSHOHL:  I get probably four or five calls

20  a day from people like that.

21          THE COURT:  Yeah.

22          MR. WOLFSHOHL:  And just in the interest of trying

23  to deal with every single person's bandwidth --

24          THE COURT:  Sure.

25          MR. WOLFSHOHL:  -- we have -- although we probably

1    haven't gotten to sit down and talk about this in detail.

2    We have sort of -- we're trying to separate out what people

3    are doing and we have been communicating through

4    Ms. McIntyre and she's been coordinating trying to get

5    Agreed Orders in place that are temporary.

6              THE COURT:  I am not suggesting that people aren't

7    trying.  And I also am not so naïve to think that there

8    aren't some people who are trying to take advantage of the

9    situation.  You know, you get four phone calls.  I get that

10   times ten.  Of course, they don't come to me.  They come to

11   Mr. Alonzo.

12             MR. WOLFSHOHL:  Right.

13             THE COURT:  You know, I just -- I want people to

14   have the option to control their own future.  And if you've

15   got a deal, you know, great.  Then I want to see the deal.

16   I want to see it quickly 'cause the deal is eroding.

17             And you know that better than anybody.

18             MR. WOLFSHOHL:  We don't have time.

19             THE COURT:  Yeah.

20             MR. WOLFSHOHL:  The -- what you said a second ago

21   about the instinct that you're having, I've had that several

22   times over the last couple of days.

23             THE COURT:  Sure.

24             MR. WOLFSHOHL:  And the fact that we have made

25   enough progress for me to be able to stand up and tell you I

1  think we're going to get there, is the only reason that I'm

2  here telling you that.

3          THE COURT:  I got it.  So what do you think the

4  timing is?  I mean, can I bring you back this afternoon and

5  we have a deal that's done?  I mean, what's -- I'm worried

6  about this.  This is -- I'm losing sleep thinking about this

7  because I can only do so much.

8          MR. WOLFSHOHL:  I understand, Your Honor.

9          THE COURT:  You know, I now have a free afternoon.

10          MR. WOLFSHOHL:  So the ask from the purchaser --

11  and I think given that this is moving and that we haven't

12  completely landed is that we come back to you early

13  afternoon tomorrow.  I've spoken to Judge Isgur about that.

14  I've spoken to all the parties about -- or I don't say all

15  the parties.  I've spoken to the parties that are really

16  involved in the transaction.

17          THE COURT:  Right.

18          MR. WOLFSHOHL:  And that's what we're thinking.

19  You know, I feel like I'm crying wolf because every time I

20  come in here I tell you we're looking at cash.  You know,

21  we're limping along.

22          The truth is, we are limping along, but at any

23  moment it can be a lot different.

24          THE COURT:  I've known you long enough.  You

25  wouldn't ask if you didn't think that it was the right thing

1   to do.  And so until you show me differently, that's where

2   the analysis stops.  You've asked and I got it.

3           But I just want you to understand there are a

4   whole host of competing interests out there and those are

5   starting to become louder and more important.

6           MR. WOLFSHOHL:  Right.

7           THE COURT:  And I want to see those folks

8   addressed or we're just going to stop everything and

9   everybody can fend for themselves, but at least they will

10  control their own destinies.

11          MR. WOLFSHOHL:  I 100 percent agree, Your Honor.

12          THE COURT:  So let me ask -- Mr. Alonzo called me

13  when I was out at the mediation and asked me about time

14  tomorrow -- and I don't know if this is the same thing or

15  something new.

16          MR. WOLFSHOHL:  Okay.

17          THE COURT:  Tomorrow's Docket is one of those

18  that, you know, I should have done a better job of planning

19  way back when, but we've carved out a spot at 4:30.  Was

20  that for this, or was that something different?

21          MR. WOLFSHOHL:  I don't -- that was --

22          THE COURT:  That's actually Mr. Mayer on that.

23          MR. MAYER:  Yes, Your Honor.  That's for our

24  motion to lift stay.

25          THE COURT:  Okay.  Sorry for not remembering that.

1            Does the outcome of whatever it is that

2   Mr. Wolfshohl is working on, does that affect what you do in

3   that motion?

4            MR. MAYER:  Without -- Your Honor, without knowing

5   exactly what --

6            THE COURT:  So you don't know what it is, okay.

7            MR. MAYER:  -- he's working on, I don't know.

8            THE COURT:  Okay.

9            MR. MAYER:  But my is probably not, but I just

10  don't have enough information right now to --

11           THE COURT:  Okay.

12           MR. WOLFSHOHL:  It certainly might impact how I

13  deal with the motion.  It may not solve his problem, but I

14  mean, I can tell you I've told several people that I've

15  talked to about this that I think the clarity that we have

16  will help dictate how we deal with a lot of these issues.

17           THE COURT:  So let me do this.  I'm looking at the

18  afternoon and the short -- what ought to be the shortest

19  thing -- although they've not agreed on much lately is there

20  is a Final Pretrial in *Bristow* at 4:00.

21           MR. WOLFSHOHL:  Okay.

22           THE COURT:  And so if I set you at 4:15,

23  understanding that it may not be exactly 4:15, Mr. Mayer,

24  that gives you the benefit of understanding where things

25  are.  And then what I will tell you is that once you hear

1  whatever it is that Mr. Wolfshohl is going to say, if you

2  request it, I will absolutely give you some time to talk to

3  the Trustee if there's questions or if you want to say, hey,

4  if I had this tweaked and it changes what I do, or I'll give

5  you that time.  I mean, it wouldn't be fair to just push you

6  right into that hearing without some time to talk to a

7  client or process that information.

8          And I will tell you you'll have your hearing.  I

9  think -- I looked because tomorrow is a travel day, but the

10 flight is not until 9:00 o'clock so you have my full

11 attention as long as it is needed.

12         MR. MAYER:  I appreciate it, Your Honor.  Thank

13 you.

14         THE COURT:  Okay.  All right.  Mr. Wolfshohl, so

15 if we set it at 4:15?

16         MR. WOLFSHOHL:  So --

17         THE COURT:  Or is that not good?

18         MR. WOLFSHOHL:  Look, Judge, I think that 4:15

19 realistically is probably the time we're going to need to be

20 able to package this up and come in front of you.  But that

21 is -- obviously doesn't always align with the cash concerns

22 we have.

23         There is something that is going to help our cash

24 position.  We're working on an agreed turnover with

25 Mr. Ruzinsky and Ms. Williamson.  Our hope is that if we can

1    get a stipulated Order to you today that -- I think they've

2    indicated that it will be difficult to get it funded today,

3    but if we got it to you early enough, perhaps that could get

4    funded today and I'll let them speak to it because I think

5    they're probably on the line.

6              If not, it would be tomorrow and I think that

7    would certainly help us get past tomorrow because obviously

8    4:15 is past wire cutoffs.

9              THE COURT:  Okay.  So let me -- honestly tell me

10   what you need and --

11             MR. WOLFSHOHL:  I kind of think if Mr. Ruzinsky or

12   Ms. Williamson have any input on that, I'd like to hear it

13   'cause --

14             THE COURT:  Well, let's assume that you're not

15   going to get it today.  This is still worst case 'cause I

16   mean while they may have some knowledge, I mean, they don't

17   control it.

18             MR. WOLFSHOHL:  They don't control it.  Correct,

19   Your Honor.

20             MR. WOLFSHOHL:  Can I have one second?

21             THE COURT:  Of course.

22        (Pause in the proceedings.)

23             MR. WOLFSHOHL:  Judge, I think if we get it

24   tomorrow, we're fine and the reality is even if we get an

25   order from you tomorrow, I don't know that we're going to be

1    able to close the transaction and try to come in front of

2    you with -- until Friday.  It's just I don't know how --

3    yeah, let's just -- I think 4:15 is going to be fine, Your

4    Honor.

5            THE COURT:  Again, I mean this.  If you need

6    something sooner, I'll do my best.  It's just a packed

7    afternoon.  But I --

8            MR. WOLFSHOHL:  I understand.

9            THE COURT:  -- if it would -- you know, 4:30 and

10   you have as long as you need.  If you needed a spot at 12:30

11   just on a "what if," with the understanding that I pick up

12   with a number of unresolved complicated issues at

13   1:00 o'clock in several different cases, I'm happy to give

14   you that.

15           But you've got to tell me what you need -- and I'm

16   happy to give you both?

17           MR. WOLFSHOHL:  Why don't we go with 12:30?  And I

18   may contact chambers and ask if we can move it -- or maybe

19   give it to us both, so you have it both on the Docket.

20           Is that better option, Your Honor?

21           THE COURT:  All right.  So we'll have you a hold

22   spot at 12:30 with the understanding that 1:00 or

23   thereabouts, I'm going to -- we're going to punt till the

24   afternoon.

25           MR. WOLFSHOHL:  That's fine.

1        THE COURT:  And then I'll go ahead and give you

2   4:15 with the caveat that I gave Mr. Mayer that once we see

3   where you are, then I'll give him an opportunity to figure

4   out what he wants to do with his motion at 4:30.

5        MR. WOLFSHOHL:  That makes sense.

6        THE COURT:  That work?

7        MR. WOLFSHOHL:  That makes sense.  Yes.

8        THE COURT:  All right.  Ms. Williamson,

9   Mr. Ruzinsky wasn't trying to put you in a spot.  I was just

10  trying to understand worst case.

11        MS. WILLIAMSON:  I appreciate that, Your Honor.

12        THE COURT:  Anything you wanted -- you have the

13  opportunity now to be Mr. Wolfshohl's guardian angel.  I

14  mean, he would welcome any help he can get.

15        MS. WILLIAMSON:  Well, Your Honor, I can briefly

16  describe, I think, the negotiations that we are undertaking.

17  We are trying to do it on a collective basis with a number

18  of the fuel suppliers that collect credit cards.

19        THE COURT:  Sure.

20        MS. WILLIAMSON:  What we're providing -- what

21  we're proposing is that, at least from Valero's perspective,

22  that we basically pay our outstanding fuel amounts so

23  there's no balance due and that includes taxes.  There are

24  certain taxes that we collect for, as well.

25        THE COURT:  Sure.

1    MS. WILLIAMSON:  And that we have what we think is

2  a relatively modest reserve and in our case it's 275,000 and

3  we deliver the rest of -- whatever that balance is to the

4  Trustee.

5    My current calculations is tomorrow that will be

6  about 230,000.  We had already released -- shall we say not

7  quite with authority -- 222,000 earlier this week.

8    So the idea being modest reserve for Valero,

9  release the excess that we have after payment in full of our

10 amounts and continue to do that on a daily basis.

11   THE COURT:  Got it.

12   Mr. Melko, is this going to fall right smack in

13 the middle of what you're worried about?

14   MR. MELKO:  Well, it helps somewhat, first.  But

15 second, we had a very productive meeting with the Trustee

16 and all of her counsel yesterday.  I'll defer to

17 Mr. Wolfshohl whether he wants to talk about that.  We think

18 we may be close to an agreement -- a global agreement with

19 regard to the issues that we've raised.

20   THE COURT:  Terrific.  Then I don't want -- again,

21 I don't want to put the finger on the scale one way or the

22 other.  If you guys are making progress, productivity is

23 great.

24   MR. MELKO:  Yep.  Yes, Your Honor.

25   THE COURT:  So I'll just leave it there.

1         Mr. Ruzinsky, did you -- is your -- the status of

2   your discussion similar to Ms. Williamsons' or something

3   different or a different problem, different solution?

4         MR. RUZINSKY:  They're very similar, Your Honor,

5   although the size of Exxon/Mobil's just the number of

6   stations involved is greater.

7         THE COURT:  Of course.

8         MR. RUZINSKY:  And so the amount of money that

9   we'll have to deliver to the Trustee once we get this set in

10  place here quickly, will be greater and so we'll have -- we

11  have the large holdback with a larger operation.  We'll have

12  larger outstanding amounts that are due, and we've gone

13  over, we've itemized it with the Trustee's counsel, and it's

14  just being folded into address stipulation and agreed order

15  and we're looking forward to having met and submitted it

16  here shortly getting it in place and then wiring funds to

17  the Trustee.

18        THE COURT:  Okay.  All right.  You just, once

19  they've been uploaded, if you would just let Mr. Alonzo know

20  and obviously I'm assuming you're running those by a group

21  of folks who all have expressed an interest in understanding

22  the outcomes, right?

23        MR. RUZINSKY:  That's correct, Your Honor.

24        THE COURT:  All right.  Thank you.

25        Mr. Melko, have you reached a landing place

1  regarding paragraph 7?

2          MR. MELKO:  We have proposed some language which

3  the oil companies rejected.  We understand that the lender

4  -- and I'll let Ms. Beausoleil or Ms. Hine correct me if I'm

5  wrong.  I thought the lender had signed off on it and the

6  Trustee, I believe, had agreed to it.

7          Ms. Beausoleil, can you give the Court a more

8  current update than I have?

9      (No audible response.)

10          THE COURT:  Ms. Beausoleil, if you haven't already

11  done so, five star on your telephone.

12          MR. MELKO:  I see her hand raised.

13          THE COURT:  I do, too, which if she's hit five

14  star, she can just speak.

15          There we go.

16          Ms. Beausoleil?

17          MS. BEAUSOLEIL:  Good afternoon, Your Honor.

18          THE COURT:  Good afternoon.

19          MS. BEAUSOLEIL:  Sharon Beausoleil for SASS

20  Petroleum.

21          My understanding is that the DIP agent had agreed

22  to our language.  The oil supplies have not.  We are in

23  discussions currently with the Trustee regarding the

24  language, as well as our other conversations with the

25  Trustee regarding SASS Petroleum's other issue with the

1  Trustee.

2          I'm not sure -- I mean, at this point we are in

3  negotiations is all I can report on that issue.

4          THE COURT:  Fair enough.  Thank you.

5          Mr. Platt?

6          MR. PLATT:  Yes, Your Honor.  Mark Platt for

7  Marathon Petroleum Company, LP.

8          Mr. Melko is correct that we did not agree with

9  the proposed language because the proposed language

10  essentially served the same function as the insertion of the

11  language that we opposed previously.  And so we simply

12  cannot -- the proposed language proposes frankly that the

13  fuel suppliers take on the risk that to the extent that

14  funds are used by the Trustee that are later somehow

15  determined to be commingled funds, that the fuel suppliers

16  take that risk of somehow being clawed back.

17          And so we simply cannot in good conscious agree to

18  that language.

19          THE COURT:  Okay.

20          MR. PLATT:  And my understand was that the Trustee

21  understood that.

22          THE COURT:  All right.  Mr. Wolfshohl, do you have

23  anything to add on that issue?

24          MR. WOLFSHOHL:  Your Honor, only that I understood

25  their problem with it.  We conveyed that to Mr. Melko and

1  Ms. Beausoleil.  I thought we had gotten to a place where --

2  in connection with the overall transaction that we were

3  discussing that they could get comfortable with just not

4  having it, but I don't want to speak for Ms. Beausoleil and

5  I also am not running point on this particular issue, but I

6  did try to jump into it right before the hearing to try to

7  confirm.

8          And so if we don't have a resolution, we don't

9  have a resolution.  Maybe we just all need to get on a call

10 with each other.  I thought we were getting closer to just

11 not having to -- you know, to SASS not requiring the

12 language and just leaving it as-is as filed on the Docket.

13         THE COURT:  Okay.

14         MR. MELKO:  Your Honor, John Melko, if I can

15 interrupt for a second?

16         THE COURT:  Sure.

17         MR. MELKO:  Just to move things along here -- and

18 this may not have been communicated.  I think given where we

19 believe we are in our negotiations, we're willing to carry

20 things for a day as they are now without the required --

21 without the language that we've been insisting on.

22         I do take slight issue with Mr. Platt's

23 characterization.  It wasn't so much that the oil suppliers

24 would be liable for commingling or mis-spending by the

25 estate.  It would rather be that the funds that they had

1   collected would not lose their separate character.  That's a

2   fairly significant distinction, but we don't want to address

3   that right now.

4         THE COURT:  I got it.  All right.  In that case,

5   may we have that call and we see where we are?  It's one of

6   those things I'm going to resolve if you don't, so.

7         MR. WOLFSHOHL:  No, I understand, Your Honor, and

8   I guess we would carry this to tomorrow?  Is that the --

9         THE COURT:  Yeah, just don't -- I know Mr. Platt

10  won't let me forget, so I'm confident that he will be on and

11  if it slips my mind that he will remind me.

12        MR. PLATT:  Your Honor?

13        THE COURT:  Yes, sir.

14        MR. PLATT:  If I may?  As I understood what

15  Mr. Melko just said that he would be okay with entry of the

16  Order that is Docket No. 1340, but that he would want to

17  reserve the right to re-argue it tomorrow if necessary?

18        MR. MELKO:  That is correct.

19        MR. PLATT:  It does carry for a day.  That's what

20  I understood him to mean that he's okay with the Order as it

21  has been presented, 1340, for today, but reserves the right

22  re-urge his objection tomorrow.

23        THE COURT:  Yeah, Mr. Platt, I heard you -- I

24  heard exactly the same thing.  What I was trying to figure

25  out was if you want an Order for today and part of tomorrow,

1  happy to do that.

2        What I was trying to do is to see if there was one

3  Order, because eventually we've got to deal with through

4  potentially -- potentially next Friday, right?

5        MR. PLATT:  That's right, Your Honor.

6        THE COURT:  Yeah.  So that was all I was trying to

7  do.

8        MR. PLATT:  And just to clarify, Your Honor, the

9  fuel suppliers have been in a position of not being able to

10  supply fuel because of this issue.

11        THE COURT:  Then let's -- so --

12        MR. PLATT:  And so --

13        THE COURT:  -- get me -- well, I'll tell you what.

14  I will take -- I will take 1340 and I'll make it clear that

15  it runs through tomorrow.

16        MR. PLATT:  All right.

17        THE COURT:  And it's subject to Mr. Melko's right

18  to seek a modification for anything past tomorrow.

19        Mr. Melko, would that satisfy you?

20        MR. MELKO:  Yes, Your Honor.

21        THE COURT:  And Mr. Platt, if I do that, will that

22  satisfy you at least as through tomorrow?

23        MR. PLATT:  Yes, as long as it's clear that does

24  not mean that any funds that are transferred from now

25  through the end of the day tomorrow, are subject to some

 1   reservation that they could somehow be clawed back sometime

 2   later.

 3          That's the issue we were trying to avoid.

 4          THE COURT:  I got it.  So it's -- I consider

 5   myself a person of clarity.  If you want to say tomorrow

 6   that I was less than clear, I'll take that criticism, but

 7   give me a shot.

 8          All right?

 9          MR. PLATT:  I believe you were clear, Your Honor.

10          THE COURT:  All right.  So I will get something on

11   the Docket.

12          MR. PLATT:  Okay.

13          THE COURT:  Within 20-30 minutes after we're done.

14          MR. PLATT:  I appreciate that, Your Honor.

15          THE COURT:  All right.

16          MR. MELKO:  Thank you, Your Honor.

17          THE COURT:  Let me ask, Mr. Gibbs, you have been

18   -- ah, I'm sorry.  Mr. Brookner raised his hand.  Let me --

19   Mr. Brookner, I did not mean to ignore you.

20          MR. BROOKNER:  No, Your Honor.  No problem at all.

21   There's a lot going on.  I appreciate it.

22          For the Record, Jason Brookner for ICC Motor

23   Fuel I and several related entities, who are landlords under

24   a master lease for 15 locations in Iowa.  And I am

25   absolutely sympathetic to the Trustee and her counsel's

1  plight right now, but I do want to at least state that time

2  is not our client's friend.

3          THE COURT:  Right.

4          MR. BROOKNER:  We do have that letter from the DNR

5  saying that we're not going to get any fuel as of

6  September 1st at our locations unless they have re-upped

7  acceptable form of announce and responsibility.

8          And so I just want to implore Mr. Wolfshohl and

9  his client to please come back to me as soon as possible

10 because there's only so much that we can do to mitigate and

11 get ready to go forward without something cooperatively or

12 otherwise from the Trustee.

13         MR. WOLFSHOHL:  I understand that, Your Honor.

14         THE COURT:  All right.  Makes perfect sense to me.

15         Thank you, Mr. Brookner.

16         All right.  Mr. Gibbs?

17         MR. BROOKNER:  Thank you, Your Honor.

18         MR. GIBBS:  (No audible response.)

19         THE COURT:  Have you hit five star or do you have

20 me double-muted perhaps?

21     (Pause in the proceedings.)

22         THE COURT:  There you are.  There we go.  Should

23 be live.

24         MR. GIBBS:  Yes, Your Honor.  Chuck Gibbs with

25 McDermott Will & Emery, counsel for the Unsecured Creditors

1    Committee.

2          I actually had tried to raise my hand just to be

3    prepared if Your Honor was going to ask me for anything.

4    But we really don't have anything to add to this

5    conversation today.  We don't really know the terms or the

6    particulars with respect to the transaction that's being

7    discussed or what's moved.  We'll wait to hear with

8    everybody else and be back tomorrow.

9          THE COURT:  And I assume once you've got

10   something, you're going to preview that with --

11         MR. WOLFSHOHL:  Absolutely, Your Honor.  I mean,

12   I'll say it just for Mr. Gibbs' benefit, the terms that I've

13   outlined in conversations have not changed tremendously, but

14   I just want something that I can hand him and say, this is

15   what the deal looks like.

16         We've had some conversations, and I've tried my

17   best to keep Mr. Gibbs, as well as Mr. Hill (phonetic), up-

18   to-speed on things.  It's just -- we haven't landed on

19   anything yet.

20         THE COURT:  No, fair enough.  I'll translate that

21   for you, Mr. Gibbs.  You're not going to like it.

22         MR. WOLFSHOHL:  That I already know.

23         MR. GIBBS:  He knows that.

24         THE COURT:  All right.

25         MR. WOLFSHOHL:  I'm not going to stay up all night

1  thinking it's Christmas morning and something better is

2  going to show up tomorrow.

3          THE COURT:  All right.  Fair enough.

4          I need to ask one question of you, Mr. Wolfshohl.

5  There is time reserved on Friday at 10:30, which was a

6  Status Conference.  I did that a week ago.

7          MR. WOLFSHOHL:  Okay.

8          THE COURT:  My guess is we no longer need that

9  since we're having Status Conferences every day.  Now it may

10 turn out that you may need another hearing on Friday, but --

11         MR. WOLFSHOHL:  We can talk about that tomorrow.

12         THE COURT:  -- we can talk about that tomorrow.

13         MR. WOLFSHOHL:  I think that make sense.

14         THE COURT:  Again, one day at a time.  I just want

15 you -- I want everybody to hear me.  My gut instinct is

16 starting to take over.

17         MR. WOLFSHOHL:  I understand.

18         THE COURT:  So let's either make progress or I

19 know how to end this.  Okay?

20         MR. WOLFSHOHL:  I do, too, Your Honor.

21         THE COURT:  All right.  Again, and I appreciate

22 everybody's hard work.  I genuinely do.  If we can save one

23 job, if we can avoid one station from being boarded up, if

24 we can stop one tank from leaking, if we can, you know, stop

25 somebody from incurring -- one person from incurring a loss,

1   I'm all for it.  But we've also got a bigger picture.

2         MR. WOLFSHOHL:  I 100 percent agree and I wouldn't

3   -- I think you already acknowledged this.  I wouldn't be

4   before you telling you I think there's a chance if I didn't,

5   but --

6         THE COURT:  I got it.

7         MR. WOLFSHOHL:  -- as soon as I don't think

8   there's a chance, I'm going to come and tell you about it.

9         THE COURT:  All right.  So just to recap, you've

10  got a slot tomorrow at 12:30.  You've also got a slot at

11  4:15.

12        And Mr. Mayer, once you hear the outcome of that,

13  if you need some time, your 4:30 can stop late or it can

14  proceed ahead on time -- whatever it turns out to be.

15        MR. MAYER:  Thank you, Your Honor.

16        THE COURT:  I would also ask Mr. Wolfshohl if you

17  -- not that I'm suggesting that you wouldn't, but since you

18  know you have that hearing, the sooner you can give details

19  I think probably makes it a whole lot easier to deal with

20  tomorrow afternoon.

21        MR. WOLFSHOHL:  That makes sense.  Definitely

22  agree, Your Honor.

23        THE COURT:  All right.  Thank you.

24        Did I skip anyone that wanted to voice a concern,

25  raise an issue?

1          (No audible response.)

2               THE COURT:  All right.

3               MR. BALL:  Your Honor?

4               THE COURT:  Yes.

5               MR. BALL:  I had hit five star on my phone.  This

6     is Larry Ball, I represent a group of operators -- some

7     small, some not so small.

8               But there is one question that was raised last

9     week that I feel compelled to raise today, and that is the

10    question of the bar date that is set on Monday.  We are

11    preparing to file a motion to either strike that or move it,

12    but it seems as how fluid this situation is, and that no one

13    really knows what their claims are going to be until we know

14    what this deal is that the parties have been negotiating,

15    that a bar date that close makes no sense at all.

16               THE COURT:  Yeah.

17               MR. BALL:  And that these parties ought not to be

18    spending time putting together claims that at the end of the

19    day may be worthless anyway.  So it seems to me that if that

20    bar date is just not necessary right now.  I will inform the

21    Court that I raised this issue with the Trustee and they

22    have indicated that they would objected to moving the bar

23    date.

24               I have not been able to raise it with the

25    Unsecured Creditors Committee yet.  I have a call in to

1  Mr. Gibbs, but I understand they're working feverishly on

2  other things, so it's not surprising I haven't heard back.

3          But I just wanted to raise that before you.  If

4  you want me to, I'll go ahead and file that emergency

5  motion, but it seems to me that if that's an issue that

6  ought to be pretty easy at this point in the case, given how

7  fluid things are right now.

8          THE COURT:  So Mr. Ball, let me -- just so you and

9  I are on the same page.  Bar dates are always important.  It

10  may be that the date is wrong, but bar dates are always

11  important.  And as easy as it might be to change something

12  and the people who are on this call understand the new date,

13  I have to worry about those folks who aren't on the call.

14          So if you believe the bar date should be moved --

15  and this is not a criticism, if you believe the bar date

16  should be moved because of the current situation, I don't

17  need a lot of education, I don't need a lot of background,

18  but I do need a written motion so that the world can

19  evaluate and criticize every decision I make.

20          MR. BALL:  We'll get it on file this afternoon,

21  Your Honor.

22          THE COURT:  All right.  Thank you.

23          Mr. Wolfshohl?

24          MR. WOLFSHOHL:  The only thing I'm going to say to

25  Mr. Ball is that if he and I can talk beforehand, I want to

1  talk through it.  I'm not 100 percent sure that the Trustee

2  is opposed to it, having sort of reflected on it, and so I'm

3  not sure we'll agree to it, but I do want to talk to him.

4            So if Mr. Ball can call me --

5            MR. BALL:  Okay.

6            THE COURT:  All fine.

7            MR. WOLFSHOHL:  -- today we can talk about it.

8            MR. BALL:  I'll do that.

9            THE COURT:  And Mr. Gibbs, I assume that you have

10  a view on that.  It seems to me that one of your team ought

11  to be on that phone call as well.

12            MR. GIBBS:  Was that directed to me, Your Honor?

13  There was background noise.

14            THE COURT:  It was.  My apologies.  No, I said

15  Mr. Gibbs.  My apologies.  Probably wasn't as loud as it

16  should be.

17            MR. GIBBS:  Okay.  No, no.  We do want to be

18  involved.  I did get a call that I was trying to understand

19  the written transcription of the voice message.  I

20  understood it to be generally what I just heard from

21  Mr. Ball.

22            We're going to take the Trustee's lead on that

23  issue.  Inherently it makes sense.  But it's not -- it

24  wouldn't be something that I think we were prepared to

25  charge up the hill on.

1         THE COURT:  I got it.

2         MR. GIBBS:  So if they can work things out with

3    the Trustee, I'm sure we'll be fine.

4         THE COURT:  Just have that call, and even if we

5    need to do it -- if we need to parse through that, happy to

6    do it, but I do want there to be a record.  I don't want

7    there to be any confusion as to what the bar date is 'cause

8    I do think that it's important.

9         US Trustee have any interest in being in that

10   discussion, or just so long as there's a bar date, that's

11   what you care about?

12        MR. WOLFSHOHL:  I think our position would be that

13   as long as there's a bar date, we're fine with whatever it

14   is.

15        THE COURT:  All right.  Fair enough.  So Mr. Ball,

16   that's helpful to you.  You know who you need to talk to.

17        MR. BALL:  Yes, I do, and I will get on the phone

18   as soon as we get off this.

19        THE COURT:  Terrific.  And thank you as always

20   again because I don't think I know you.  Once you file your

21   motion, if you'd reach out to Mr. Alonso, his text, email

22   all on my website.  He's there to assist you.

23        MR. BALL:  Yes.

24        THE COURT:  He can give you a hearing date if

25   you'll just call beforehand and talk to him.

1          MR. BALL:  I understand, Your Honor.

2          THE COURT:  Okay.

3          MR. BALL:  And I just want to say that I've been

4   working with the Trustee's counsel on the motions to modify

5   that I filed and they've been very helpful and timely.

6          THE COURT:  No, terrific.  I would expect nothing

7   less.  So all good, and again, I'm not -- this is not

8   criticism.  I just -- I can't imagine I would ever modify a

9   bar date without a written motion just on the Record.

10  Again, I want folks to be able to look at and criticize

11  everything I do.  I know I don't always get it right, but

12  everybody deserves to be able to make that decision for

13  themselves.

14         MR. BALL:  Thank you, Your Honor.

15         THE COURT:  All right.  Thank you.

16         Anyone else have an issue that they need to raise

17  or comments they want to make, concerns they want to voice?

18      (No audible response.)

19         THE COURT:  All right.  Then I'll see you tomorrow

20  at 12:30 and Mr. Wolfshohl, let me say this:  I know things

21  are moving.  If things need to move, all I ask is that you

22  try to let as many people know as possible and try to give

23  me as much time so that I can react to it just given my

24  schedule that -- and I'll try to accommodate.

25         MR. WOLFSHOHL:  Understood, Your Honor.

1    Definitely.

2              THE COURT:  All right, terrific.

3              Thank you, everyone.  And we'll be adjourned.

4              I would like to say have a great weekend, but I

5    know I'm going to see you tomorrow no matter what.

6              All right.  So with that, everyone have a good

7    day.

8              MR. WOLFSHOHL:  Thanks, Judge.

9          (Hearing adjourned at 12:36 p.m.)

10                            *  *  *  *  *

11             *I certify that the foregoing is a correct*

12   *transcript to the best of my ability from the electronic*

13   *sound recording of the ZOOM/video/telephonic proceedings in*

14   *the above-entitled matter.*

15   */S/ MARY D. HENRY*

16   *CERTIFIED BY THE AMERICAN ASSOCIATION OF*

17   *ELECTRONIC REPORTERS AND TRANSCRIBERS, CET**337*

18   *JUDICIAL TRANSCRIBERS OF TEXAS, LLC*

19   *JTT TRANSCRIPT #68044*

20   *DATE FILED:  JANUARY 23, 2024*

21

22

23

24

25