```
 1                IN THE UNITED STATES BANKRUPTCY COURT
 2                FOR THE SOUTHERN DISTRICT OF TEXAS
 3                         MCALLEN DIVISION
 4  IN RE:                         §    CASE NO. 23-90147-7
                                   §    MCALLEN, TEXAS
 5  MOUNTAIN EXPRESS OIL COMPANY,  §    MONDAY,
    ET AL,                         §    OCTOBER 23, 2023
 6          DEBTORS.               §    9:00 A.M. TO 9:19 A.M.
 7
              EMERGENCY STATUS CONFERENCE (VIA ZOOM)
 8
          BEFORE THE HONORABLE EDUARDO V. RODRIGUEZ
 9               UNITED STATES BANKRUPTCY JUDGE
10

11

12       APPEARANCES:                      SEE NEXT PAGE
13

14                    (No log notes provided.)
15

16

17

18

19

20                   TRANSCRIPTION SERVICE BY:
21          JUDICIAL TRANSCRIBERS OF TEXAS, LLC
                   935 Eldridge Road, #144
22                  Sugar Land, TX 77478
                       281-277-5325
23               www.judicialtranscribers.com
24
       Proceedings recorded by electronic sound recording;
25        transcript produced by transcription service.
```

JUDICIAL TRANSCRIBERS OF TEXAS, LLC

```
 1                         APPEARANCES (VIA ZOOM):

 2

 3   FOR THE CHAPTER 7 TRUSTEE:     HUGHES WATTERS & ASKANASE
                                    Heather H. McIntyre, Esq.
 4                                  1201 Louisiana, 28th Floor
                                    Houston, TX  77002
 5                                  713-590-4200

 6   THE CHAPTER 7 TRUSTEE:         JANET CASCIATO-NORTHRUP, ESQ.

 7
     FOR MOUNTAIN PORTFOLIO
 8   OWNER WI MI LLC:               KURTZ AND PETERS AND
                                    ASSOCIATES
 9                                  Benjamin Kurtz, Esq.
                                    600 Jefferson Plaza, Ste. 310
10                                  Rockville, MD  20850
                                    833-252-2256
11
                                    NORTON ROSE FULBRIGHT
12                                  Jason Boland, Esq.
                                    Paul Trahan, Esq.
13                                  Maria Mokrzycka, Esq.
                                    1301 McKinney, Ste. 5100
14                                  Houston, TX  77010
                                    713-651-3769
15
                                    SAUL EWING, LLP
16                                  David A. Golin, Esq.
                                    161 North Clark Street
17                                  Suite 4200
                                    Chicago, IL  60601
18                                  312-876-7805

19   FOR SCHIERL SALES CORP.:       MCGUIRE CRADDOCK & STROTHER,
                                    PC
20                                  J. Mark Chevallier, Esq.
                                    500 N. Akard St., Ste. 220
21                                  Dallas, TX  75201
                                    214-954-6800
22
                                    VEDDER PRICE, PC
23                                  Douglas J. Lipke, Esq.
                                    222 North LaSalle St.
24                                  Suite 2600
                                    Chicago, IL  60601
25                                  312-609-7500
```

1          **APPEARANCES (CONT'D) (VIA ZOOM):**

2

3  FOR FIRST HORIZON BANK, AS
   ADMINISTRATIVE AGENT:        GREENBERG TRAURIG, LLP
4                               John D. Elrod, Esq.
                                Terminus 200
5                               3333 Piedmont Road, NE
                                Suite 2500
6                               Atlanta, GA  30305
                                678-553-2259
7
                                GREENBERG TRAURIG, LLP
8                               Shari L. Heyen, Esq.
                                1000 Louisiana Street
9                               Suite 6700
                                Houston, TX  77002
10                              713-374-3500

11
   FOR FIDELITY NATIONAL TITLE
12 INSURANCE COMPANY:           HUSCH BLACKWELL
                                Jameson Watts, Esq.
13                              111 Congress Ave., Ste. 1400
                                Austin, TX  78701
14                              512-370-3458

15
   FOR FORD MOTOR CREDIT
16 COMPANY, LLC:                DEVLIN NAYLOR & TURBYFILL,
                                PLLC
17                              Donald L. Turbyfill, Esq.
                                5120 Woodway, Ste. 9000
18                              Houston, TX  77056
                                713-622-8338
19

20

21

22

23

24

25

**MCALLEN, TEXAS; MONDAY, OCTOBER 23, 2023; 9:00 A.M.**

THE COURT: All right. Good morning, everyone. Today is October 23rd, 2023. It's now 9:00 a.m. I'll take appearances in 23-90147, Mountain Express Oil Company.

Ms. McIntyre?

MS. MCINTYRE: Good morning, Your Honor. Yes, Heather McIntyre of Hughes Watters Askanase for Janet Northrup, Chapter 7 Trustee. And with me also appearing is the Trustee.

THE COURT: Good morning, Ms. Northrup.

Mr. Kurtz?

MR. KURTZ: Good morning, Your Honor. Ben Kurtz for Mountain Portfolio Owner WI MI LLC.

THE COURT: Thank you.

Mr. Chevallier?

MR. CHEVALLIER: Yes, Your Honor. Mark Chevalier and my co-counsel in this matter, Doug Lipke, appearing on behalf of Schierl Sales Corp.

THE COURT: Thank you.

MR. CHEVALLIER: Good morning, Your Honor. Thank you.

THE COURT: Mr. Boland?

MR. BOLAND: Good morning, Judge. Jason Boland, Paul Trahan, and Maria Mokrzycka of Norton Rose Fulbright on behalf of Mountain Portfolio Owner WI MI LLC.

1          THE COURT:  Thank you.
2          MR. BOLAND:  I'm also joined, Your Honor, with our
3 co-counsel, David Golin of the Saul Ewing firm.  We just
4 filed a pro hac vice application for Mr. Golin this past
5 Friday.  With permission, Your Honor, I'd ask that Mr. Golin
6 be allowed to appear pending Your Honor's consideration of
7 that application.
8          THE COURT:  The motion will be granted.
9          Thank you.
10         MR. BOLAND:  Thank you, Judge.
11         MR. GOLIN:  Thank you, Your Honor.
12         THE COURT:  Mr. Elrod?
13         MR. ELROD:  Good morning, Your Honor.  It's John
14 Elrod of Greenberg Traurig on behalf of First Horizon Bank,
15 as Indenture Trustee -- or, excuse me, as Agent.
16         THE COURT:  Thank you.
17         Mr. Watts?
18         MR. WATTS:  Good morning, Your Honor.  Jameson
19 Watts on behalf of Fidelity National Title Insurance
20 Company.
21         THE COURT:  Thank you.
22         Mr. Lipke?
23         MR. LIPKE:  Good morning, Your Honor.
24 Mr. Chevallier announced me.  Douglas Lipke of Vedder Price,
25 Chicago, on behalf of Schierl Sales Corp, admitted pro hac

1 vice.
2          Thank you.
3          THE COURT:  Thank you.
4          Mr. Turbyfill?
5          MR. TURBYFILL:  Donald Turbyfill on behalf of Ford
6 Motor Credit Company.
7          THE COURT:  Thank you.
8          Ms. Heyen?
9          MS. HEYEN:  Good morning, Your Honor.  Shari Heyen
10 of Greenberg Traurig on behalf of First Horizon Bank, the
11 Agent.
12          THE COURT:  Thank you.
13          Do we have any other telephonic appearances I have
14 not called out?
15     (No audible response.)
16          THE COURT:  All right.  Ms. McIntyre, this is the
17 Trustee's Motion for Emergency Status Conference.
18          MS. MCINTYRE:  Yes, Your Honor.  Thank you for the
19 quick Status Conference.
20          The Trustee wants to make the Court aware of some
21 post-petition deeds that were recorded a few weeks ago,
22 purporting to transfer property in the name of the Debtor to
23 a buyer named Mountain Portfolio Owner WI MI LLC.
24          These properties consists of 24 properties, 23 of
25 which are in Wisconsin, one of which is in Michigan.  The

1 Trustee contacted the title company and counsel for the
2 buyer, Kirkland & Ellis, so they are aware that these
3 post-petition deeds were filed. These were filed without
4 the Trustee's authorization or knowledge and without the
5 stay being lifted. As such, the Trustee contends that these
6 violate the automatic stay and are void.
7 As background, based on the Trustee's
8 investigation thus far, it appears that in early 2022,
9 pre-petition, the Debtor or MEX, bought these 24 gas
10 stations from a company named Schierl Sales Corp. -- Schierl
11 is spelled S-C-H-I-E-R-L -- for approximately $69 million.
12 Also pre-petition it appears MEX agreed to sell
13 these Wisconsin/Michigan properties to Blue Owl, which we
14 believe created the affiliate buyer, Mountain Portfolio
15 Owner WI MI LLC for approximately $86 million.
16 Those deeds from the Debtor to the buyer were
17 never recorded pre-petition. I've uploaded an Exhibit List
18 at Docket No. 1563 that shows the 24 deeds in the Debtor's
19 name as of the date of petition. In addition, Exhibits
20 Nos. 24 through 28 are the four post-petition deeds
21 allegedly transferring multiple properties from the Debtor
22 to the buyer. This occurred in September and October of
23 this year -- like I said, just in the past few weeks.
24 Schierl has been operating these properties and
25 the Trustee understands that Schierl is experiencing

1  interference from a company named SQRL, S-Q-R-L.  The
2  Trustee understands that SQRL deed the buyer's proposed
3  operator of these properties and SQRL agents or employees
4  are telling Schierl employees that SQRL owns the properties
5  and will be managing them and this is causing obstruction to
6  the operations and confusion among Schierl's employees.
7            We also understand from Schierl that they need
8  clarity immediately as to who they should be contacting
9  about the operations of the stations and especially about
10 significant capital expenditures needing to be made to
11 winterize the stores for the harsh winter in Wisconsin and
12 Michigan which has already started.
13           Along these lines, the Trustee filed on Friday a
14 complaint, Adversary No. 23-3231.  It shows up at Docket
15 No. 1565 in the main case.  Among the causes of action, the
16 Trustee has asserted under 544(a)(3) that all of these
17 properties are property of the estate because the Trustee
18 took as the bonafide purchaser on the date of petition and
19 all of these properties in the Debtor's name on that date.
20           Given the magnitude of the transfers, the urgency
21 of the current operator needing to have some clarity and
22 address winterizing the stores to preserve value for the
23 estate and the discovery of these significant assets, the
24 Trustee wanted to alert the Court to the situation.  We
25 greatly appreciate the opportunity to do so.

1        The hearing was noticed as an evidentiary hearing
2   and if the Court would like to proceed in that manner, I
3   would offer up Exhibits 1 through 28 into evidence.
4        THE COURT:  Are there any objections to the
5   Trustee's exhibits?
6        MR. BOLAND:  Your Honor, Jason Boland of Norton
7   Rose Fulbright on behalf of Mountain Portfolio Owner WI MI
8   LLC.
9        Your Honor, if it would please the Court, I'd like
10  to maybe perhaps make a brief opening or summary of the
11  Status Conference update for the Court's benefit, as well,
12  before we get into the evidentiary issues primarily because,
13  Your Honor, this was an Emergency Motion for a Status
14  Conference.  There has not been any relief requested in
15  connection with the motion and now, as Ms. McIntyre noted,
16  there is a complaint filed in a separate adversary
17  proceeding and so what I don't want to have happen here is
18  to pre-try certain issues that should belong into the
19  adversary proceeding.
20       But if it would please the Court, maybe just defer
21  the evidentiary aspect of it just to perhaps let me have a
22  chance to give you the benefit of my client's perspective.
23       THE COURT:  Go ahead, Mr. Boland.
24       MR. BOLAND:  Thank you so much, Judge.  And I know
25  Your Honor is relatively new to this case with the recent

1  reassignments.  I can also tell you I'm also very new to
2  this case.  I was retained last week, and so I'm still
3  getting up-to-speed and getting my arms around things, but
4  I've had very collegial and productive conversations with
5  Ms. McIntyre, whom I greatly respect, and I expect those
6  conversations will continue throughout this, Your Honor.
7              And I don't think there's much of a disagreement
8  over some of the basic facts and timeline.  It's really the
9  import of those facts and how it applies.  I think the
10 applicable law is where the parties differ and I think all
11 of that, we anticipate, will be addressed in connection with
12 the adversary proceeding and the pending play and there will
13 undoubtedly be additional factual development that I think
14 is going to occur in connection with that proceeding.
15             Let's take a quick step back, Your Honor.  I would
16 like to take just a minute to either highlight or re-urge
17 some of what Ms. McIntyre said and that's in connection with
18 the Debtors and what they did earlier, prior to conversion
19 of these cases.
20             And as I'm sure Your Honor has heard before, the
21 Debtors were basically in the fuel supply business and what
22 they would do as part of their business model is they would
23 acquire fuel centers and travel centers.  They would sell
24 these properties to third parties and these parties would
25 then lease these properties back to the Debtors.

1        And this was all typically done really as part of
2   the sealed transaction, Your Honor, although there may have
3   been steps or stages in connection with that process.  And
4   that's exactly what happened here.
5        In or around March of 2022, the Debtor -- and
6   that's Mountain Express Oil Company -- they entered into
7   this Purchase and Sale Agreement to acquire certain parcels
8   of real estate and other assets in Wisconsin and Michigan.
9   And in connection with that transaction, Judge, and as a
10  condition to closing, the Debtor entered into a Transition
11  Services Agreement with, as Ms. McIntyre mentioned, Schierl
12  Sales Corp., who would serve as the operator really to
13  effectuate an orderly transition of the operation of the
14  businesses.  And Schierl and its related entities, in fact,
15  were the original owners of the properties that sold the
16  assets to the Debtors in the first instance.
17       Deeds were recorded in connection with that first
18  transaction, what I would call "Leg One" or "Phase One,"
19  Your Honor.  And thereafter contemporaneously in connection
20  with the same transaction, again in late April -- late
21  March, early April, Mountain Express turned around and sold
22  these same assets and same properties to my client, Mountain
23  Portfolio, pursuant to a separate Purchase and Sale
24  Agreement.  So there was really back-to-back Purchase and
25  Sale Agreements and consideration was paid for these assets,

1 Your Honor. Deeds were signed and delivered, but deeds were
2 not recorded, so we did not dispute that.
3       In connection with this same transaction, Judge,
4 the parties entered into a Master Lease Agreement, where my
5 client as the landlord would lease these properties back to
6 Mountain Express as a tenant, and that Master Lease
7 Agreement also provided for and allowed for subleases,
8 pursuant to which Schierl actually remained in possession
9 and operated these assets under that Transition Services
10 Agreement, pursuant to this arrangement.
11       In sum and substance, Your Honor, that is the
12 parties' relationship at a very high level and that
13 relationship, Your Honor, is consistent with what the
14 Debtors explained and testified to this Court in connection
15 with the Chapter 11 proceeding. It's consistent with the
16 sales process that the Debtors ran in connection with the
17 Chapter 11 proceeding. And it's consistent with the
18 Schedules that were filed and sworn under penalty of perjury
19 in connection with this case.
20       And when I say "consistent," Judge, prior to the
21 conversion of these cases, what I mean is that the Debtors
22 never identified these properties as estate assets, nor did
23 they treat them as such.
24       And so, as we all know, the cases were then
25 converted to Chapter 7 in late August, and following the

1  conversion of these cases, Judge, there were several deeds
2  that were filed I believe last month or earlier this month,
3  as Ms. McIntyre mentioned and the Trustee has now asserted
4  that these deeds are property of the estate.  They are, in
5  fact, owned by the Trustee pursuant to the strong arm powers
6  and this past Friday a complaint was filed to adjudicate
7  that very issue and that very dispute.
8             I should end, Your Honor, briefly by just saying
9  that we will and send to respond obviously to the complaint
10 in due course and we may actually be seeking other relief in
11 front of you ourselves related to this aspect of it.
12            But I don't want to get into the weeds too much on
13 the legal aspect of it, but I would want to mention, Your
14 Honor, we obviously disagree with the Trustee's position
15 here.  Under Section 544(a) and the Trustee's strong arm
16 powers, the Trustee, Your Honor, has the rights of a
17 hypothetical bonafide purchaser on the date of the
18 bankruptcy.  We believe under applicable state law here,
19 there was a duty of inquiry and that the Trustee was on
20 constructive notice sufficient as to the true ownership of
21 these properties.
22            I think, Your Honor, the law is also clear that
23 the Trustee's avoidance rights under Section 544 is subject
24 to Section 541(d) and the fundamental tenant bankruptcy law
25 that's defined in a bankruptcy case doesn't expand any

1  property rights beyond that which existed as of the petition
2  date.
3         So that's the sum and substance, Your Honor, of I
4  think the dispute that's here today.  Like I mentioned, it
5  is teed up before Your Honor and I would just add that -- or
6  conclude, I should say, by saying that we do believe a
7  prompt resolution of these issues is in the best interest of
8  all parties, including the estate.
9         We have suggested to the Trustee's counsel that
10 perhaps the parties re-engage with Judge Isgur for a
11 mediation to the extent Your Honor was amenable to that, to
12 the extent Judge Isgur was available.  I know that's under
13 consideration by the Trustee and her counsel.
14         But with that, Your Honor, I would yield the
15 podium.
16         THE COURT:  All right.  Thank you.
17         Ms. McIntyre, now that the adversary complaint's
18 been filed, what relief is the Trustee seeking in the Status
19 Conference?  I'm treating it as a Status Conference only.
20         MS. MCINTYRE:  Okay.  That's right, Your Honor.  I
21 understood it to be a Status Conference and I read the Order
22 to say it was an evidentiary hearing, so I just wanted to be
23 prepared if the Court was wanting to entertain evidence.
24 I'm fine with the Status Conference nature of today's
25 hearing.

1          THE COURT:  Very well.
2          Anybody else wish to address the Court?
3          MR. LIPKE:  Your Honor, Douglas Lipke on behalf of
4 Schierl Sales Corp.  If you could give me a few minutes?
5          THE COURT:  Of course.  Go ahead.
6          MR. LIPKE:  I'd appreciate it.
7          THE COURT:  Go ahead, Mr. Lipke.
8          MR. LIPKE:  Thank you, Your Honor.
9          So Schierl Sales Corp. is a second generation
10 family-owned convenience store operator up in Stevens Point,
11 Wisconsin.  And they sold these, as Ms. McIntyre explained
12 and her pleadings explained, sold the 25 convenient stores
13 -- 24 or 25 convenience stores back in March of 2022 and
14 entered into this Transition Service Agreement where they
15 would continue to operate the stores until Mountain Express
16 could come in and take over operations.  The initial period
17 was 90 days in the agreement -- the Transition Service
18 Agreement.  The next one they asked for another 90 days, MEX
19 did.
20          And then MEX then went dark as they were having
21 their problems and went into an 11.  We didn't hear from
22 them.  And the Schierls are still operating the stores,
23 notwithstanding the fact that under the Transition Service
24 Agreement, they were supposed to be reimbursed for
25 insurance, operating expenses, capital improvements for

1  safety, permits, authorized assistance and the like and as a
2  result of that on a monthly basis they would send a summary
3  to Mountain Express, both pre-petition and post-petition,
4  and they have wracked up approximately $500,000
5  post-petition because they continue to operate both in the
6  11 and the 7.
7        I would suggest that the request of the Trustee is
8  a 7 or with the consent of the Trustee, to maintain the
9  value of these stores, they continue to operate it.  They
10 have to go out-of-pocket with the operating expenses and the
11 capital improvements for safety and things like potholes and
12 now they're going to be having, you know, snow plowing and
13 stuff like that, that's going to go up.
14       So they're -- we're owed a half a million dollar
15 pre-petition and now a half a million dollar post-petition.
16 The big issue they have right now, however, was identified
17 by Ms. McIntyre.  I just think it's important for the Court
18 to know this, even though it's a status hearing, is that
19 Blue Owl's either licensing agent or lessee of these real
20 estate -- of the real estate and the buildings, that's all
21 they own.  They don't own the equipment or the inventory or
22 the personal property, or anything like that, have swooped
23 in to the 25 stores sometimes unannounced, telling employees
24 that they're in charge, they're the owners, and that they're
25 going to be turned over to them, and they want to inspect

1   the facilities without going through corporate in Stevens
2   Point, just showing up and scaring the employees so much so
3   that they -- we have four managing directors, each of which
4   manage districts six to seven stores, two of which last week
5   resigned.  They'd been with the company for 15 years and
6   they resigned because of the -- you know, the harassment or
7   that SQRL said to them that there's going to be a
8   changeover.
9           They also contacted the fuel transport company of
10  Schierl and said that they're going to take over, they'll
11  take over that contract as well because they're going to run
12  the fuel into those stores, that Schierl has their own fuel
13  distribution that they run.
14          So all of a sudden, we find ourselves being owed
15  over a half a million dollars administrative expense
16  post-petition.  We're likely going to file a motion for
17  payment of that, but that's not the key.  The key is that
18  the value of this real estate, which we believe that the
19  Trustee owns because of violation of the automatic stay,
20  which I think is void *ab initio* by the filing of those
21  recorded deeds, which by the way, Judge, our Wisconsin
22  lawyer is the one that discovered that the deeds weren't
23  filed and we reported that to the Trustee and then filed the
24  September 29th filing of the recording of the deeds in
25  violation of the stay, which we reported to the Trustee.

1  We're the ones that found it.
2          And the key is that the value of the Trustee's
3  property is deteriorating very quickly because we can't
4  continue to come out-of-pocket, pay these expenses, and lose
5  these employees if we're going to try to maintain the value
6  of the property that the Trustee owns, I think under the
7  law.
8          Thank you for giving me the time, Your Honor.
9          THE COURT:  You're welcome.
10         MR. LIPKE:  I appreciate it.
11         THE COURT:  You're welcome, Mr. Lipke, and thank
12 you for that update.
13         Anybody else wish to address the Court?
14    (No audible response.)
15         THE COURT:  Ms. McIntyre, anything else we need to
16 take up this morning?
17         MS. MCINTYRE:  I don't have any additional color
18 on this issue, Your Honor.  We just wanted the Court to be
19 aware and to take any direction that the Court wanted in
20 light of these circumstances.
21         THE COURT:  All right.  The Court takes no action,
22 but the adversary proceeding will be prosecuted and
23 adjudicated in due course.
24         I want to thank everybody for their appearances
25 today.  Everybody is excused.

1      Have a wonderful day, everyone.
2         (The parties thank the Court.)
3         THE COURT:  Court's now adjourned.
4         (Proceeding concluded at 9:19 a.m.)
5                    *  *  *  *  *
6         *I certify that the foregoing is a correct*
7 *transcript to the best of my ability produced from the*
8 *electronic sound recording of the ZOOM/telephonic*
9 *proceedings in the above-entitled matter.*
10 */S/ MARY D. HENRY*
11 *CERTIFIED BY THE AMERICAN ASSOCIATION OF*
12 *ELECTRONIC REPORTERS AND TRANSCRIBERS, CET**337*
13 *JUDICIAL TRANSCRIBERS OF TEXAS, LLC*
14 *JTT TRANSCRIPT #68452*
15 *DATE FILED:  APRIL 2, 2024*
16
17
18
19
20
21
22
23
24
25