IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) ) ) | Chapter 7 (Previously Chapter 11) |
| MOUNTAIN EXPRESS OIL COMPANY, *et al.*, | ) ) ) | Case No. 23-90147 (EVR) |
| Debtors.[1] | ) ) ) | (Jointly Administered) |

**MOTION OF JARED SHEIKER FOR RELIEF FROM
THE AUTOMATIC STAY, TO THE EXTENT APPLICABLE, TO PERMIT
INSURERS TO ADVANCE AND/OR REIMBURSE DEFENSE COSTS
AND FEES UNDER DIRECTORS AND OFFICERS INSURANCE POLICIES**

**THIS IS A MOTION FOR RELIEF FROM THE AUTOMATIC STAY. IF IT IS GRANTED, THE MOVANT MAY ACT OUTSIDE OF THE BANKRUPTCY PROCESS. IF YOU DO NOT WANT THE STAY LIFTED, IMMEDIATELY CONTACT THE MOVING PARTY TO SETTLE. IF YOU CANNOT SETTLE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY AT LEAST 7 DAYS BEFORE THE HEARING. IF YOU CANNOT SETTLE, YOU MUST ATTEND THE HEARING. EVIDENCE MAY BE OFFERED AT THE HEARING AND THE COURT MAY RULE.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

**AN ELECTRONIC HEARING WILL BE CONDUCTED ON THIS MATTER ON MAY 14, 2024 AT 1:30 P.M. YOU MAY PARTICIPATE IN THE HEARING BY AN AUDIO AND VIDEO CONNECTION.**

**AUDIO COMMUNICATION WILL BE BY USE OF THE COURT'S DIAL-IN FACILITY. YOU MAY ACCESS THE FACILITY AT 832-917-1510. ONCE CONNECTED, YOU WILL BE ASKED TO ENTER THE CONFERENCE ROOM NUMBER. JUDGE RODRIGUEZ'S CONFERENCE ROOM NUMBER IS 999276. VIDEO COMMUNICATION WILL BE BY USE OF THE GOTOMEETING PLATFORM. CONNECT BY CLICKING THE LINK UNDER "TELEPHONIC AND VIDEO PARTICIPATION" ON JUDGE RODRIGUEZ'S HOME PAGE.**

---

[1] A complete list of each of the Debtors in these Chapter 7 cases may be obtained on the Court's website at www.ecf.txsb.uscourts.gov. The location of Debtor Mountain Express Oil Company's principal place of business and the Debtors' service address in these Chapter 7 Cases is 3650 Mansell Road, Suite 250, Alpharetta, GA 30022.

Jared Sheiker, by and through his undersigned counsel, hereby moves this Court, pursuant to section 362(d)(1) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-1 of the Local Rule of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Southern District of Texas (the "Local Rules"), for entry of an order, in substantially the form as attached to this Motion (the "Proposed Order"), finding that the automatic stay of section 362(a) of the Bankruptcy Code does not apply, or, to the extent it does apply, lifting and modifying the automatic stay to the extent necessary to permit the advancement and/or reimbursement to Sheiker of defense, settlement, and other amounts ("Defense Costs") covered by the AXIS Insurance Company Management Liability Policy, Policy No. P-001-000763425-01 ("the D&O Policy," attached as **Exhibit 1**).

## PRELIMINARY STATEMENT

Jared Sheiker has been personally named as the target of the Chapter 7 Trustee's Motion to Compel a Rule 2004 Examination. (Dkt. 2078.) Sheiker already sat for a 2004 examination on February 14, 2024, and the Trustee's motion merely seeks additional, duplicative, and burdensome questioning of Sheiker.

On December 14, the Trustee served a Notice of Claim ("Notice of Claim," attached as **Exhibit 2**) on Sheiker personally as a former officer of Debtor Mountain Express Oil Company ("MEX" or "the Company"), alleging that he—along with the Debtor's former co-CEOs Turjo Wadud and Lamar Frady—"breached their fiduciary duties, breached their duties of good faith and fair dealing, engaged in self-dealing, converted MEX's assets, and/or engaged in otherwise improper transfers and conveyances." *See* Ex. 2 at 1. The Trustee demanded a "minimum of $250 million in damages" in connection with those claims. *Id*. at 2. Sheiker expects to incur

2

significant legal fees and other expenses in connection with the Trustee's investigation and prosecution of these purported claims.

As a former member of MEX's Board of Directors, Sheiker is covered by MEX's D&O Policy, which is designed to protect him against exactly the kinds of claims the Trustee purports to assert. But in its Notice of Claim, the Trustee baselessly asserted that "fees and expenses relating to the defense of any insured claims should not be paid by any insurers." *See id*. Thus, the Trustee is attempting to bar Sheiker from seeking protection and coverage under the very insurance policies MEX purchased to protect him (and all other directors and officers of the Company) in these situations. The Trustee's position is unfounded and at odds with the settled law of this Court. The automatic stay should be lifted to permit Sheiker to access the D&O Policy to cover his Defense Costs in connection with the Trustee's claims.

## JURISDICTION AND VENUE

The Court has jurisdiction to consider the Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409.

The statutory and legal predicates for the relief sought by this Motion are sections 105(a), 362(d)(1) and 541 of the Bankruptcy Code, Bankruptcy Rule 4001 and Local Rule 4001-1.

## BACKGROUND

**A.   Sheiker Was Appointed to the Debtors' Board of Directors and Insured Under the D&O Policy.**

Pursuant to an agreement between the Debtors and Sheiker's employer, Oak Street, Sheiker was appointed to the MEX's Board of Directors on December 31, 2021. Upon appointment, Sheiker became an insured under the D&O Policy specifically in his capacity as a

3

director of MEX.  *See* Ex. 1. The D&O Policy provides primary Directors & Officers coverage in the amounts of $3 million.  *See id*.

The D&O Policy contractually requires the Insurer to indemnify and advance expenses to the individual insureds, including Sheiker, where they are targeted by claims based on alleged acts or omissions in their capacities with MEX. *See id.* at 19 ("Except as otherwise set forth in this Policy, the Insurer will have the right and duty to defend any covered Claim even if the allegations are groundless, false, or fraudulent.…The Insurer will advance Defense Costs on a current basis.")

"Defense Costs" means "reasonable expenses incurred in investigating, opposing, defending, settling, or appealing covered Claims, whether paid by the Insurer or by the Insured with the Insurer's consent, including attorney and expert fees; court costs; alternative dispute resolution costs; the cost of appeal bonds or release attachment bonds for amounts within the applicable Limit of Insurance, but the Insurer does not have to furnish these bonds; and expenses incurred by an Insured Individual at the Insurer's request, excluding loss of earnings, salaries, benefits, and other compensation paid to any Insured." *Id.* at 3.

Specifically, the D&O Policy provides Sheiker, as a member of MEX's Board of Directors, with coverage for "Loss not indemnified by the Insured Entity that the Insured Individual becomes legally obligated to pay arising from a Claim first made against such Insured Individual during the Policy Period or the Extended Reporting Period, if applicable, for a Wrongful Act" ("Side-A Coverage"). *See* Ex. 1, Claims-Made Coverage § A. The Debtors are also insured under the D&O Policy, but they are only entitled to coverage (i) where they have indemnified an Insured Person for a covered Loss ("Side-B Coverage") or (ii) they incur Loss in

4

connection with a covered claim asserted against the Company and/or Debtors ("Side-C Coverage"). *See id*., Claims-Made Coverage §§ B, C.

The D&O Policy requires the Insurer to pay losses and other covered amounts as they become due. *See id*., at 24. However, should the company face "Financial Impairment"—defined, in part, as the appointment of a trustee to supervise, manage, or liquidate the company—the D&O Policy explicitly subordinates Side-B Coverage and Side-C Coverage to the Side-A Coverage payments due and owing to directors and officers. *See id.*

Further, The D&O Policy explicitly provides that, "bankruptcy or insolvency of any Insured or of any Insured Individual's estate will not relieve the Insurer of the Insurer's obligation under this insurance." *Id.* at 22. Finally, the D&O Policy requires the Debtor not to oppose efforts to seek relief from the automatic stay to seek coverage under the policy, to the extent the stay is applicable:

> In the event of bankruptcy or insolvency of an Insured Entity, the Insureds shall waive and release any automatic stay or injunction in such proceeding that may apply to this Policy or its proceeds, and agree not to oppose or object to any efforts by the Insurer or any Insured to obtain relief from any such stay or injunction.

*Id.*

    **B.**    **The Trustee Has Pursued—and Continues to Pursue—Discovery and Claims Against Sheiker While Baselessly Preventing Him from Accessing Proceeds Available to Him Under the D&O Policy.**

Sheiker resigned from the MEX Board of Directors on January 25, 2023. On March 18, 2023 (as applicable, the "Petition Date"), the Debtors filed petitions for relief under Chapter 11 of the Bankruptcy Code. On August 24, 2023, the case was converted to Chapter 7.

Following the conversion, the Trustee began investigating acts, conduct, assets, liabilities, and the financial condition of the debtor. As part of that purported investigation, on December 14, 2023, counsel for Trustee sent a letter to serve as notice and a demand for

5

damages, alleging that MEX has been harmed by acts, omissions, and other wrongful conduct engaged in by former officers and directors, including Sheiker. The letter further claims that the officers and directors, including Sheiker, breached their fiduciary duties, breached their duties of good faith and fair dealing, engaged in self-dealing, converted MEX's assets, and/or engaged in otherwise improper transfers and conveyances. *See* Ex. 2 at 1.

The letter demands a minimum of $250 million in damages and then states that, "all insurance policies, and the proceeds thereof, are property of MEX's bankruptcy estate pursuant to 11 U.S.C § 541 and are subject to the automatic stay contained in 11 U.S.C. § 362. Accordingly, fees and expenses relating to the defense of any insured claims should not be paid by any insurers." *See* Ex. 2 at 2. Sheiker denies the allegations presented in the Notice of Claim and opposes the Trustee's demand for damages.

Nonetheless, as part of the ongoing cooperation by Sheiker and Oak Street with the Trustee's discovery requests, Sheiker sat for a Rule 2004 examination pursuant to an agreement of the parties on February 14. That day, Sheiker testified both in his personal capacity and as a representative of Oak Street. But counsel to the Trustee surprisingly and suddenly ended Sheiker's February 14 examination—contravening the parties' agreement—and now seeks a *second* Rule 2004 examination of Sheiker, even though Sheiker testified fully and completely to all noticed topics that day, and it was the Trustee's counsel, not Sheiker, who ended the examination early.

By cooperating with the Trustee's Rule 2004 discovery efforts, Sheiker has accrued substantial Defense Costs to date—even as Sheiker maintains that the Trustee's allegations are meritless, as his February 14 testimony made clear. To this point, Sheiker has been cooperative with the Trustee's investigative efforts, but the Trustee's motion to compel an additional

6

deposition reflects the Trustee's dedication to harassing Sheiker through Rule 2004 discovery. The Trustee's continuing investigation only increases the burden upon Sheiker: the Trustee demands that Sheiker testify repeatedly while simultaneously attempting to thwart his access to the funds allotted for his Defense Costs under the D&O Policy.

As such, Sheiker very likely will continue to incur substantial Defense Costs in connection with the Trustee's purported claims. Sheiker believes he is entitled to Side-A Coverage under the MEX D&O Policy for the fees and expenses he has incurred and will continue to incur in connection with these claims.

### C. The Trustee Has Failed to Articulate Any Basis for Continuing to Oppose Sheiker's Coverage Under the D&O Policy.

Sheiker's counsel formally notified counsel for the Trustee on April 12, 2024 of Sheiker's intent to seek relief from the stay with respect to funds available for his Defense Costs under the D&O Policy, and requested a conference on that proposed relief pursuant to L.R. 4001-1(a)(1). *See* Ex. 3, April 12, 2024 B. Kurtz Letter to J. Elrod. Without advising on his availability for the requested conference, the Trustee's counsel indicated that he opposed the relief sought and requested legal authority in support of Sheiker's position. Sheiker's counsel shared legal support for his position (some of which is cited herein) the next business day, and requested that the Trustee's counsel provide support for his position that Sheiker be denied access to proceeds under the D&O Policy. *See* Ex. 4, April 15, 2024 W. Pruitt Email to J. Elrod. Counsel for the Trustee did not respond to that request.

The parties conferred by telephone on April 17, 2024 as required by L.R. 4001-1. Counsel for the Trustee indicated that his position that Sheiker should be prevented from accessing proceeds for his Defense Costs under the D&O Policy was unchanged by Sheiker's request or the legal authority cited by his counsel, and that the Trustee would continue to oppose

7

the requested relief. When asked whether the Trustee intends to pursue any coverage under Side-B or Side-C of the D&O Policy, counsel for the Trustee did not say. When asked (again) for any case law or other authority supporting its position, counsel for the Trustee said this information would be provided separately by email. However, as of the date of this filing, the Trustee has not provided any authority whatsoever to support its position.

Given that the parties could not reach agreement pursuant to L.R. 4001-1, Sheiker's counsel confirmed that Sheiker would file this Motion for the relief requested herein.

## **RELIEF REQUESTED**

Sheiker seeks entry of an order, substantially in the form of the Proposed Order, finding that the automatic stay provided for in section 362(a) of the Bankruptcy Code does not apply, or, to the extent that it does apply, lifting and modifying the automatic stay to permit payments and/or advancements of funds by AXIS that are, or will become, owing to Sheiker in accordance with the terms of the D&O Policy for the reimbursement and payment of his Defense Costs in connection with the pending claims.

## **APPLICABLE AUTHORITY**

**A.     The Automatic Stay Does Not Apply to the Payment of the Defense Costs.**

The automatic stay set forth in Section 362(a) of the Bankruptcy Code prohibits, among other things, "any act to obtain possession of property of the estate … or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Courts in this district have held that "[i]nsurance proceeds that are applied to a claim against directors and officers are not property of the estate, and actions to collect such proceeds are not barred by the automatic stay." *In re NC12, Inc.*, 478 B.R. 820, 837 (Bankr. S.D. Tex. 2012). Courts have explained that "[a]n insurance policy owned by the debtor is generally considered property of the estate. But,

whether the proceeds of a particular insurance policy are property of the estate depends on the nature of the policy." *Id.* (citing *Matter of Edgeworth*, 993 F.2d 51, 55 n. 13 (5th Cir.1993)). "The overriding question when determining whether insurance proceeds are property of the estate is whether the debtor would have a right to receive and keep those proceeds when the insurer paid on a claim. When a payment by the insurer cannot inure to the debtor's pecuniary benefit, then that payment should neither enhance nor decrease the bankruptcy estate." *Edgeworth*, 993 F.2d at 55-56.

Here, the proceeds of the Side-A Coverage under the D&O Policy should *not* be considered property of the estate. The D&O Policy's priority-of-payments provision clarifies that Side-A Coverage claims shall be paid before any Side-B Coverage or Side-C Coverage claims. *See* Ex. 1 at 24. In other words, Sheiker's right to coverage under the D&O Policy exists outside of—and, in fact, supersedes—the Debtors' claims. Under such circumstances, the proceeds of the D&O Policy cannot be considered property of the estate, so the automatic stay does not apply. *See, e.g.*, *NC12, Inc.*, 478 B.R. at 838 ("[t]he directors and officers' liability proceeds are not the kind of proceeds that *Edgeworth* holds may be included as property of the estate."); *In re World Health Alternatives, Inc.*, 369 B.R. 805, 811 (Bankr. D. Del. 2007) (priority-of-payment provision rendered subordinated coverage for debtor so remote that it was not reasonably probable that the trustee would succeed in asserting that proceeds were property of the estate); *In re TierOne Corp.*, 2012 WL 4513554, at *3 (Bankr. D. Neb. Oct. 2, 2012) ("The directors and officers have a right to make claims under the policies and to receive payment of the policy proceeds to the exclusion of the bankruptcy estate since they are the insureds who are first in line," and, therefore, proceeds of the policy were not property of the estate).

Indeed, it is an established principle that bankruptcy should not expand a debtor's rights against others beyond rights that existed at the commencement of the case. *See, e.g., In re Hunt*, 149 B.R. 96, 101 (Bankr. N.D. Tex. 1992) ("The broad provision of § 541(a)(1) does include choses in action and claims by the debtor against others, but it is not intended to expand the debtor's rights against others beyond those that existed at the commencement of the case.") Outside of bankruptcy, the D&O Policy provides Sheiker with direct Side-A Coverage. If the proceeds of that Side-A Coverage under the D&O Policy were deemed property of the Debtors' estates, the Debtors would be granted greater rights in those proceeds than they would have had outside of bankruptcy, contrary to established principles of bankruptcy law. *See In re Laminate Kingdom LLC*, 2008 WL 1766637, at *3 (Bankr. S.D. Fla. Mar. 13, 2008) ("[T]he estate has only a contingent, residual interest in the Policy's proceeds; and, payment of the proceeds in accordance with the [priority of payments provision] does not diminish the protection the Policy affords the estate, as such protection is only available after the [directors' and officers' defense costs] are paid."); *see also In re Downey Fin. Corp.*, 428 B.R. 595, 608 (Bankr. D. Del. 2010). (holding that the policy proceeds were not property of the estate, and explaining "were the Court to hold that the Policy proceeds are property of the estate and, thus, subject to the automatic stay, the trustee would have greater rights in the [Policy proceeds] than the debtor had before filing for bankruptcy.") (internal quotations and citations omitted).

Under these circumstances, the Debtors lack sufficient interest in the proceeds of the D&O Policies for such proceeds to constitute property of the Debtors' estates. Although the Debtors are insured under the D&O Policy, they are only entitled to Side-B Coverage where they have indemnified an Insured Person for a covered Loss, or Side-C Coverage where they incur Loss in connection with a covered claim asserted against the Company and/or Debtors.

*See supra* at 4-5. The Debtors are not honoring their indemnification obligations to the Company's directors and officers, so the Debtors have suffered no losses that might be covered under Side-B of the D&O Policy. Similarly, Mr. Sheiker is not aware of any claims pending against the Debtors that would be covered under Side-C of the D&O Policy. When asked, the Trustee also was unable to identify any such pending claims. Accordingly, the Debtors' rights in the D&O Policy proceeds are contingent and speculative, at best, and AXIS should be permitted to distribute proceeds with respect to the covered Defense Costs of Sheiker.

B.    **Even if the Automatic Stay Applies, Ample Cause Exists to Modify the Stay.**

Even if the proceeds of the D&O Policy were deemed property of the Debtors' estates, the Court should nonetheless modify the automatic stay to permit AXIS to advance any covered Defense Costs to Sheiker. In fact, courts routinely grant such relief under similar circumstances. *See, e.g., In re MF Glob. Holdings Ltd.*, 469 B.R. 177, 192 (Bankr. S.D.N.Y. 2012) ("Courts in this Circuit and other jurisdictions have permitted the advancement of defense costs to a debtor's directors or officers even though the insurance policies provided direct coverage to the debtor"); *Laminate Kingdom*, 2008 WL 1766637, at *4 ("Because of the separate and distinct interests between the directors and officers and the debtor, numerous courts have granted relief from the automatic stay to permit the advancement of defense costs to a debtor's directors and officers–even though the insurance policies also provided direct coverage to [the] debtor."); *Downey*, 428 B.R. at 610 (granting relief from stay for cause in order to permit use of D&O policy proceeds for payment of defense costs); *In re Enron Corp.*, 2002 WL 1008240 (Bankr. S.D.N.Y. May 17, 2002) (granting relief from stay, to the extent applicable, for payment of defense costs); *In re CyberMedica*, Inc., 280 B.R. 12, 18–19 (Bankr. D. Mass.

11

2002) (granting relief from stay because directors and officers would suffer irreparable harm if prevented from exercising their rights to defense payments under D&O policy).

Section 362(d)(1) of the Bankruptcy Code provides, in relevant part, that "on request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section ... for cause." 11 U.S.C. § 362(d)(1). Cause is "a flexible concept and courts often conduct a fact intensive, case-by-case balancing test, examining the totality of the circumstances to determine whether sufficient cause exists to lift the stay." *In re SCO Grp., Inc.*, 395 B.R. 852, 856 (Bankr. D. Del. 2007). In considering whether to grant relief from the stay under this provision, courts consider (1) "[w]hether any great prejudice to either the bankrupt estate or the debtor will result from a lifting of the stay;" (2) "[w]hether the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the debtor;" and (3) "[t]he probability of the creditor prevailing on the merits." *Downey*, 428 B.R. at 609. In weighing the harms under Section 362(d), courts acknowledge that the central purpose of D&O policies is to protect individual directors and officers. *See, e.g., In re First Cent. Fin. Corp.*, 238 B.R. 9, 16 (Bankr. E.D.N.Y. 1999). As described below, these factors strongly weigh in favor of lifting the automatic stay.

The Debtors' estates will suffer no harm or prejudice if the Court grants relief from the automatic stay with respect to the D&O Policy. As described above, the Debtors have no present right to coverage under the D&O Policy. Any litigation against the Debtors is stayed by operation of law, and the Debtors are not providing indemnification to any of the Company's directors and officers. Thus, the Debtors have no current contractual interest in the proceeds of the D&O Policy. By contrast, Sheiker would suffer substantial and potentially irreparable harm if he is denied the ability to receive a coverage position and obtain payment of covered

Defense Costs. Consistent with the purpose of director and officer liability policies, the Debtors purchased the D&O Policies first and foremost to provide insurance coverage to and for the benefit of their officers and directors, including Sheiker. *See MF Glob. Holdings*, 469 B.R. at 192 ("D&O [P]olicies are obtained for the protection of individual directors and officers . . . [i]n essence and at its core, a D&O [P]olicy remains a safeguard of officer and director interests and not a vehicle for corporate protection.") (internal quotations omitted).

Further, the D&O Policy contains express language ensuring that the claims of directors and officers would be paid under its Side-A Coverage. *See* Ex. 1 at 24. Further, the terms of the D&O Policy are clear that MEX's bankruptcy "will not relieve the Insurer of the Insurer's obligation under this insurance" and required MEX (and, therefore, the Trustee, as successor to MEX) "not to oppose or object to any efforts by the Insurer or any Insured to obtain relief from any such [automatic] stay or injunction." *See id.* at 22. Without access to the proceeds allocated to cover his Defense Costs under the D&O Policy, Sheiker "will be prevented from conducting a meaningful defense to the Trustee's claims" with the support of his Side-A Coverage—a right for which Sheiker bargained to survive MEX's bankruptcy under the D&O Policy[2]—and may suffer substantial and irreparable harm as a result. *In re Allied Digital Techs., Corp.*, 306 B.R. 505, 514 (Bankr. D. Del. 2004).

As such, ample cause exists to lift and modify the automatic stay to allow AXIS to (a) reimburse Sheiker for covered Defense Costs that have already been incurred under the D&O

---

[2] Any assertion that the automatic stay release provision in the D&O Policy invalidates Sheiker's right to enforce it misconstrues the relief that Sheiker seeks. Sheiker does not seek to extinguish the Debtors' rights in the D&O Policy by virtue of the bankruptcy; instead, Sheiker merely seeks to preserve his own rights to Side-A Coverage. *See e.g., Downey,* 428 B.R. at 611 (finding that cause existed to lift automatic stay where "the Insureds are not seeking to collect under the Policy's indemnification coverage" but "are trying to collect under Coverage A of the Policy, which provides direct coverage to the Insureds for losses arising from a covered Claim").

13

Policy, and (b) advance future covered Defense Costs unless and until the Defense Costs no longer qualify as Side-A Coverage under the terms of the D&O Policy.

      **C.**    **Permitting the Payment, Reimbursement, and or/ Advancement of Defense Costs is an Appropriate Exercise of the Court's Powers.**

Finally, section 105 of the Bankruptcy Code authorizes this Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

For the reasons stated above, permitting AXIS to pay, reimburse, and/or advance Sheiker's Defense Costs in accordance with and subject to the terms and conditions of the D&O Policy is an appropriate exercise of the Court's powers under these factual circumstances.

## CONCLUSION

For the foregoing reasons, Sheiker respectfully requests that the Court enter the Proposed Order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Houston, Texas
April 19, 2024

| | /s/ John F. Higgins |
|---|---|
| **KIRKLAND & ELLIS LLP** | **PORTER HEDGES LLP** |
| **KIRKLAND & ELLIS INTERNATIONAL LLP** | John F. Higgins |
| Benjamin T. Kurtz (admitted *pro hac vice*) | 1000 Main Street, 36th Floor |
| William T. Pruitt (admitted *pro hac vice*) | Houston, Texas 77002 |
| Ashley L. Surinak (admitted *pro hac vice*) | Telephone:  (713) 226-6000 |
| Evan Ribot (admitted *pro hac vice*) | Facsimile:  (713) 226-6248 |
| 300 North LaSalle | Email:  jhiggins@porterhedges.com |
| Chicago, Illinois 60654 | Telephone:  (713) 226-6000 |
| Telephone:  (312) 862-2000 | |
| Facsimile:  (312) 862-2200 | |
| Email:  benjamin.kurtz@kirkland.com | |
| Email:  ashley.surinak@kirkland.com | |
| Email:  evan.ribot@kirkland.com | |
| Email:  WPruitt@kirkland.com | |

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Steven N. Serajeddini, P.C. (admitted *pro hac vice*)
Joshua Greenblatt, P.C. (admitted *pro hac vice)*
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
Email:  steven.serajeddini@kirkland.com
Email:   josh.greenblatt@kirkland.com

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that a true and correct copy of the foregoing document has been served on counsel of record via electronic mail on this 19th day of April, 2024.

| | |
|---|---|
| | */s/ John F. Higgins* |
| **KIRKLAND & ELLIS LLP** | **PORTER HEDGES LLP** |
| **KIRKLAND & ELLIS INTERNATIONAL LLP** | John F. Higgins |
| Benjamin T. Kurtz (admitted *pro hac vice*) | 1000 Main Street, 36th Floor |
| William T. Pruitt (admitted *pro hac vice*) | Houston, Texas 77002 |
| Ashley L. Surinak (admitted *pro hac vice*) | Telephone:   (713) 226-6000 |
| Evan Ribot (admitted *pro hac vice*) | Facsimile:   (713) 226-6248 |
| 300 North LaSalle | Email:   jhiggins@porterhedges.com |
| Chicago, Illinois 60654 | Telephone:   (713) 226-6000 |
| Telephone:   (312) 862-2000 | |
| Facsimile:   (312) 862-2200 | |
| Email:   benjamin.kurtz@kirkland.com | |
| Email:   ashley.surinak@kirkland.com | |
| Email:   evan.ribot@kirkland.com | |
| Email:   WPruitt@kirkland.com | |

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Steven N. Serajeddini, P.C. (admitted *pro hac vice*)
Joshua Greenblatt, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:   (212) 446-4800
Facsimile:   (212) 446-4900
Email:   steven.serajeddini@kirkland.com
Email:   josh.greenblatt@kirkland.com

**CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule 4001-1(a), the undersigned hereby certifies that the parties conferred by telephone regarding the requested relief on April 17, 2024, and were unable to reach an agreement.

| | |
|---|---|
| | */s/ John F. Higgins* |
| **KIRKLAND & ELLIS LLP** | **PORTER HEDGES LLP** |
| **KIRKLAND & ELLIS INTERNATIONAL LLP** | John F. Higgins |
| Benjamin T. Kurtz (admitted *pro hac vice*) | 1000 Main Street, 36th Floor |
| William T. Pruitt (admitted *pro hac vice*) | Houston, Texas 77002 |
| Ashley L. Surinak (admitted *pro hac vice*) | Telephone:   (713) 226-6000 |
| Evan Ribot (admitted *pro hac vice*) | Facsimile:   (713) 226-6248 |
| 300 North LaSalle | Email:   jhiggins@porterhedges.com |
| Chicago, Illinois 60654 | Telephone:   (713) 226-6000 |
| Telephone:   (312) 862-2000 | |
| Facsimile:   (312) 862-2200 | |
| Email:   benjamin.kurtz@kirkland.com | |
| Email:   ashley.surinak@kirkland.com | |
| Email:   evan.ribot@kirkland.com | |
| Email:   WPruitt@kirkland.com | |

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Steven N. Serajeddini, P.C. (admitted *pro hac vice*)
Joshua Greenblatt, P.C. (admitted *pro hac vice)*
601 Lexington Avenue
New York, New York 10022
Telephone:   (212) 446-4800
Facsimile:   (212) 446-4900
Email:       steven.serajeddini@kirkland.com
Email:       josh.greenblatt@kirkland.com