**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | **CASE NO. 23-90147** |
| **MOUNTAIN EXPRESS OIL COMPANY,** | § | **JOINTLY ADMINISTERED** |
| *et al.,* | § | |
| | § | **CHAPTER 7** |
| | § | |
| Debtors. | § | |

**SECOND INTERIM APPLICATION FOR COMPENSATION AND FOR
REIMBURSEMENT OF EXPENSES BY HUGHES WATTERS ASKANASE, LLP
AS ATTORNEYS FOR TRUSTEE FOR
<u>DECEMBER 1, 2023 THROUGH FEBRUARY 29, 2024</u>**

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN TWENTY-ONE (21) DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

**TO THE HONORABLE EDUARDO V. RODRIGUEZ, CHIEF UNITED STATES BANKRUPTCY JUDGE:**

## FEE APPLICATION COVER SHEET

| | Beginning of Period | Ending of Period |
|---|---|---|
| Name of Applicant: | | Hughes Watters Askanase, LLP |
| Applicant's professional role in case: | | General Counsel for the Chapter 7 Trustee |
| Indicate whether this is an interim or final application: | | Interim |
| Date Order of Appointment Signed: | | 10/30/23 [ECF No. 1605] |
| Total period covered in application: | 12/1/2023 | 2/29/2024 |
| Time period covered by any prior applications:[1] | 8/25/2023 | 11/30/2023 |
| Total amounts awarded in all prior applications: | | $327,625.51 |
| Amount of retainer received in the case: | | $0.00 |
| Total fees applied for in this application and in all prior applications (including any retainer amounts applied or to be applied): | | $590,972.50 |
| Total fees applied for in this application (including any retainer amounts to be applied):[2] | | $264,295.00 |
| Total professional fees requested in this application: | | $264,295.00 |
| Total professional hours covered by this application: | | 390.0 |
| Average hourly rate for professionals: | | $677.68 |
| Total paraprofessional fees requested in this application: | | $0.00 |
| Total paraprofessional hours covered by this application: | | 0.0 |
| Average hourly rate for paraprofessionals: | | $0.00 |
| Reimbursable expenses sought in this application: | | $1,003.91 |
| Application Cost (estimated; not included in above fees): | | $3,000.00 |
| Total of other payments paid to Secured Claimants: | | $0.00 |
| Total of other payments paid to Administrative Claimants: | | $5,731,770.35[3] |
| Estimated Total for distribution to Priority Unsecured Creditors: | | Undetermined[4] |
| Expected % dividend to be paid to Priority Unsecured Creditors: | | Undetermined – see FN 4 |
| Estimated total for distribution to General Unsecured Creditors: | | Undetermined – see FN 4 |
| Expected % dividend to be paid to General Unsecured Creditors: | | Undetermined – see FN 4 |
| Expected amount to be paid to all pre-petition creditors: | | Undetermined – see FN 4 |
| Receipts to date (in Chapter 7 case) as of February 29, 2024: | | $6,380,341.20 |
| Disbursements to date (in Chapter 7 case) as of February 29, 2024: | | $5,731,770.35 |
| Current balance in the Trustee's accounts as of February 29, 2024: | | $3,677,929.94 |

---

[1] HWA submitted a first and final fee application as counsel for the Chapter 11 Trustee, which was approved (Docket Nos. 1493 and 1688). The time and fees in that application are <u>not</u> reflected in this summary, as this is HWA's second interim application as counsel for the Chapter 7 Trustee.

[2] Three November 2023 fee entries totaling $2,170.00 were inadvertently omitted in the November 2023 fee statement and are included in the total fees in this application, as reflected on the *Fourth Monthly Fee Statement of Hughes Watters Askanase, LLP for Allowance of Compensation for Services Rendered as Counsel to Janet S. Northrup, Chapter 7 Trustee for the Period of December 1, 2023 through December 31, 2023*. [Docket No. 1878].

[3] *See* the Monthly Operating Reports and the Category Report attached hereto as **Exhibit "B"**.

[4] Distributions are unknown at this time. The Trustee is evaluating potential chapter 5 causes of action and continuing her investigation for possible sale of assets. Based on possible future recoveries, estimations are not available at this time.

3107177

COMES NOW, Hughes Watters Askanase, LLP ("**Applicant**" or "**HWA**"), and respectfully submits its *Second Interim Application for Compensation and for Reimbursement of Expenses by Hughes Watters Askanase, LLP as Attorneys for Trustee for December 1, 2023 Through February 29, 2024* (the "**Application**"). The total amount for which the Court's approval is sought is compensation of $264,295.00 in professional and paraprofessional fees and $1,003.91 in reimbursement of expenses for the period covered by this Application, totaling $265,298.91. In support of the Application, Applicant respectfully shows as follows:

## Background

**A.     The Debtors' Bankruptcy Cases and the Appointment of the Chapter 7 Trustee.**

1.      On or about March 18, 2023 (the "**Petition Date**"), Mountain Express Oil Company and its affiliated debtors (collectively, the "**Debtors**") each filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

2.      On March 20, 2023, the Court ordered joint administration of the Debtors cases. [Docket No. 33]. From the Petition Date until August 17, 2023, the Debtors operated their businesses as debtors in possession under Chapter 11 of the Bankruptcy Code. On that date, the Court ordered the appointment of Janet S. Northrup as Chapter 11 Trustee (the "**Chapter 11 Trustee**"). [Docket No. 1284].

3.      On August 24, 2023, after a status conference requested by the Chapter 11 Trustee, the cases were converted to Chapter 7. Thereafter, Janet S. Northrup was appointed as the Chapter 7 Trustee (the "**Trustee**") in the jointly administered cases and currently serves as Trustee of the jointly administered estates (the "**Estates**"). [Docket No. 1398].

**B.     The Employment of HWA as Attorneys for the Trustee.**

4.     On September 1, 2023, the Trustee filed her *Trustee's Application to Employ Counsel.* [Docket No. 1443]. On October 30, 2023, the Court entered its *Order Authorizing Employment of Counsel,* which approved the employment of HWA as general bankruptcy counsel to the Trustee effective as of August 24, 2023 (the "**HWA Employment Order**"). [Docket No. 1605].

5.     HWA has performed legal services as general counsel to the Trustee pursuant to the HWA Employment Order and the Trustee's requests. All of the services rendered by HWA were performed for and on behalf of the Trustee and not on behalf of any committee, creditor, or other person.

6.     HWA is a law firm composed of attorneys duly licensed to practice law before the courts of the State of Texas, the United States District Court for the Southern District of Texas, and other relevant courts. HWA's offices are located at TotalEnergies Tower, 1201 Louisiana Street, 28th Floor, Houston, Texas 77002.

7.     HWA has made the disclosures required by law and has no agreement or understanding with any other person with respect to sharing the compensation to be allowed HWA for services rendered in the case.

8.     If HWA is not allowed compensation as requested herein, such denial would have the effect of HWA having provided, without compensation, valuable services, expertise, and experience to the Trustee and would undermine the intent of § 330 of the Bankruptcy Code. *See Matter of Baldwin United Corp.,* 36 B.R. 401 (Bankr. S.D. Ohio 1984); *In re Wilson Foods Corp.,* 36 B.R. 317 (Bankr. W.D. Okla. 1984).

3107177

C. **The Fees and Expenses Requested.**

9. On September 11, 2023, the Court entered the *Second Stipulation and Agreed Order (A) Authorizing the Use of Cash Collateral, (B) Providing Adequate Protection, and (C) Modifying the Automatic Stay* (the "**Cash Collateral Order**") which *inter alia* established a "carve-out" from the secured parties' cash collateral for payment of the professionals retained by the Trustee in the Case. [Docket No. 1464]. See Cash Collateral Order ¶2.

10. On October 30, 2023, the Court entered its *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Trustee* (the "**Interim Fee Order**"). [Docket No. 1607].

11. On January 23, 2024, pursuant to the Interim Fee Order, HWA filed its *Fourth Monthly Fee Statement of Hughes Watters Askanase, LLP for Allowance of Compensation for Services Rendered as Counsel to Janet S. Northrup, Chapter 7 Trustee for the Period of December 1, 2023 through December 31, 2023* (the "**Fourth Monthly Fee Statement**"). [Docket No. 1878]. No objection was made to the Fourth Monthly Fee Statement, and, therefore, the Trustee has distributed fees in the amount of $38,938.00 and expenses in the amount of $51.29 totaling $38,989.29 to HWA pursuant to the Interim Fee Order.

12. On March 18, 2024, pursuant to the Interim Fee Order, HWA filed its *Fifth Monthly Fee Statement of Hughes Watters Askanase, LLP for Allowance of Compensation for Services Rendered as Counsel to Janet S. Northrup, Chapter 7 Trustee for the Period January 1, 2024 through January 31, 2024* (the "**Fifth Monthly Fee Statement**"). [Docket No. 2055]. No objection was made to the Fifth Monthly Fee Statement, and, therefore, the Trustee has distributed fees in the amount of $89,964.00 and expenses in the amount of $654.46 totaling $90,618.46 to HWA pursuant to the Interim Fee Order.

5

3107177

13. On March 21, 2024, pursuant to the Interim Fee Order, HWA filed its *Sixth Monthly Fee Statement of Hughes Watters Askanase, LLP for Allowance of Compensation for Services Rendered as Counsel to Janet S. Northrup, Chapter 7 Trustee for the Period February 1, 2024 through February 29, 2024* (the "**Sixth Monthly Fee Statement**"). [Docket No. 2062]. No objection was made to the Sixth Monthly Fee Statement, and, therefore, the Trustee has distributed fees in the amount of $82,534.00 and expenses in the amount of $298.16 totaling $82,832.16 to HWA pursuant to the Interim Fee Order.

14. The Fourth Monthly Fee Statement, Fifth Monthly Fee Statement, and Sixth Monthly Fee Statement, which comprise this Application, can be summarized as follows:

| **Task** | **December 2023** | **January 2024** | **February 2024** | **Totals** |
|---|---|---|---|---|
| Task 1 – General Administration | $1,690.00 | $217.50 | $5,272.50 | $7,180.00 |
| Task 2 – Asset Analysis and Recovery | $5,622.50 | $21,792.50 | $24,285.00 | $51,700.00 |
| Task 3 – Asset Sales | $3,695.00 | $29,677.50 | $18,497.50 | $51,870.00 |
| Task 4 – Chapter 5 Avoidance Actions | $210.00 | $1,445.00 | $217.50 | $1,872.50 |
| Task 5 – Tax Matters | $0.00 | $1,812.50 | $2,465.00 | $4,277.50 |
| Task 6 – Investigation | $0.00 | $0.000 | $240.00 | $240.000 |
| Task 7 – Claims Administration, Analysis and Objections | $1,235.00 | $1,247.50 | $4,597.50 | $7,080.00 |
| Task 8 – Employment Applications | $1,577.50 | $0.00 | $2,060.00 | $3,637.50 |
| Task 11 – Creditor Matters | $2,807.50 | $72.50 | $602.50 | $3,482.50 |
| Task 12 – Relief From Stay Proceedings | $140.00 | $217.50 | $312.50 | $670.00 |
| Task 13 – Environmental and Regulatory Matters | $0.00 | $240.00 | $0.00 | $240.00 |
| Task 14 – Employee Benefits/Pensions | $0.00 | $725.00 | $362.50 | $1,087.50 |
| Task 15 – Insurance Matters | $0.00 | $610.00 | $457.50 | $1,067.50 |
| Task 16 – Abandonment | $1,055.00 | $507.50 | $240.00 | $1,802.50 |
| Task 18 – Use of Cash Collateral | $280.00 | $6,795.00 | $3,345.00 | $10,420.00 |
| Task 21 – Landlords | $0.00 | $385.00 | $0.00 | $385.00 |
| Task 23 – Monthly Operating Reports | $3,670.00 | $2,175.00 | $217.50 | $6,062.50 |
| Task 30 - Litigation | $15,557.50 | $36,607.50 | $20,070.00 | $72,235.00 |
| Task 32 – Fee Applications | $11,132.50 | $7,927.50 | $19,925.00 | $38,985.00 |
| **Totals** | $48,672.50 | $112,455.00 | $103,167.50 | $264,295.00 |

3107177

15. Pursuant to the Interim Fee Order, this Application seeks payment for HWA's professional services rendered and out-of-pocket expenses incurred from December 1, 2023 through February 29, 2024 (the "**Application Period**"). HWA rendered a total of 390.0 hours of professional and paraprofessional services on behalf of the Trustee during the Application Period, for which compensation is now sought. Attached as **Exhibit "A"** are the detailed statements of the services performed by HWA for the Estates.

16. As shown in detail in **Exhibit "A"**, after credit for amounts previously approved by the Court [Docket Nos. 1493 and 1688], HWA's professional fees of $264,295.00 and expenses of $1,003.91 for the Application Period total $265,298.91. Included in **Exhibit "A"** are statements reflecting the hours spent on the case and the hourly rate of each participating attorney, law clerk, and legal assistant. **Exhibit "A"** also includes the details of expenses advanced during the representation. All of HWA's services rendered were for and on behalf of the Trustee. No agreement or understanding exists between HWA and any other person with respect to sharing any compensation awarded to HWA in connection with its representation of the Trustee in the case.

### Summary of Major Tasks

17. General Background. After months of the Debtors attempting to sell their assets, First Horizon Bank as Administrative Agent filed an emergency motion to appoint a Chapter 11 Trustee, or alternatively, to convert the Debtors' cases to Chapter 7. [Docket No. 1280]. The Chapter 11 Trustee was appointed in this case on August 17, 2023. Immediately upon her appointment, the Chapter 11 Trustee was faced with a liquidity crisis that threatened the Debtors' continued operations during the following days. Prior to appointment of the Chapter 11 Trustee, Judge Marvin Isgur served as mediator in the hopes of resolving disputes among the Debtors' various constituents and formulating a path forward designed to keep the Debtors alive as going concerns. The Chapter 11

3107177

Trustee and her professionals continued to work with Judge Isgur as mediator and the various case constituents in these efforts. However, after days of efforts to continue as going concerns, the Chapter 11 Trustee requested a status conference. On August 24, 2023, the Chapter 11 Trustee reported to the Court, and the cases were converted to Chapter 7 proceedings. [Docket No. 1397].

18. The Trustee is operating the Chapter 7 Estates on a limited basis pursuant to the Court's *Order Granting Trustee's Emergency Motion for Authority to Operate Pursuant to 11 U.S.C. § 721 as of August 24,* 2023. [Docket No. 1421].

19. The Trustee is using cash collateral pursuant to the Cash Collateral Order. [Docket No. 1464].

20. The legal services performed by Applicant can be summarized by project as follows:

21. **Task 1. General Administration (10.9 hours; $7,180.00).** General case administration includes matters not allocable to particular tasks, but which nonetheless must be performed to ensure the case proceeds properly. Time in this category includes overall case management and conferring with the Trustee to keep the Trustee informed as to case status. During the Application Period, Applicant obtained and reviewed Debtors' records, conferred as necessary with special counsels to ensure proper allocation of work and division of labor and to ensure that all Estate professionals were aware of developments. During the Application Period, HWA also conferred with the Debtors' Chapter 11 professionals and representatives of the secured lender regarding continued cessation of most operations, reviewed voluminous records for required reporting, responded to general inquiries from parties-in-interest and potential buyers, and reviewed general case filings. Discussions with the Trustee, other Estate professionals, and constituents commonly overlapped a wide variety of issues, and are therefore not capable of being segregated into one of the more specific Task categories below.

8

3107177

22.     **Task 2. Asset Analysis and Recovery (53.2 hours; $51,700.00)**. Asset analysis and recovery includes fees incurred for the identification of potential Estate assets and the evaluation of whether further action should be taken in connection therewith. As would be expected with a case of this magnitude, in light of the number of Debtors and number of locations operated by those Debtors, the inquiries from parties-in-interest and potential buyers, and the information to be reviewed regarding potential assets, are voluminous and often complex. Applicant attended as expeditiously as possible to these matters, while coordinating with other Estate professionals to a proper division of labor with respect to the issues raised.

23.     Among the matters requiring attention during the Application Period were analysis of contracts that may benefit the Estates, review of leases and lease payments potentially due to Debtor(s), investigation of potential environmental liability and issues regarding underground tanks and transfer of ownership of same, development of procedures for removal of personal property not owned by any Debtor but at Debtors' locations, consolidation of multiple bank accounts of the various Debtors and continued turnover of same (including communications regarding possible discrepancies in statements and amounts turned over), disposition of inventory and equipment at various Debtor locations, recovery and preservation of records necessary for future investigation of assets, review of records and analysis of fuel receipts (including claimed right of setoff by fuel suppliers) and reconciliation of credit card receipts, turnover of professional files for the Estates and recovery and reconciliation of cash safes, and consideration of factors impacting potential sales of assets.

24.     For a number of potential real estate assets, Applicant reviewed title reports and additional information regarding potential ownership by Debtor(s) of undisclosed property, unrecorded deeds, deeds recorded post-petition, and title disputes. Applicant also began negotiations

with an auctioneer for a possible auction of the properties, and coordinated with the secured creditor regarding its request for the establishments of reserves if auction is held.

25. **Task 3. Asset Sales (76.6 hours; $51,870.00).** During the Application Period, Applicant reviewed and analyzed purchase offers and counteroffers, sales contracts, and values of personal and real property assets. Applicant also employed an auctioneer to auction real property [Docket No. 1952], continued investigation into further real estate owned by the Debtors, and coordinated with the auctioneer as necessary. Applicant also reviewed and assessed multiple title reports and deeds for properties to be considered for auction and prepared reports to Trustee as well as prepare real estate terms of sale and carve outs.

26. **Task 4. Chapter 5 Avoidance Actions (2.5 hours; $1,872.50).** HWA performed a preliminary review and investigation of potential preference claims against trade vendors and negotiated with potential special counsel regarding an engagement letter for a contingent fee arrangement for further investigation and prosecution of claims. Applicant also continued to investigate the claims based on unauthorized post-conversion and post-petition transfers with regard to avoid the post-petition transfers of Wisconsin and Michigan properties (Adversary No. 23-03231), prepared for and attended status conferences and hearings, and attended mediation with Judge Marvin Isgur to resolve the adversary proceeding.

27. **Task 5. Tax Matters (5.9 hours; $4,277.50).** Applicant communicated with tax and forensic accountants and corresponded with Debtors' representatives, and the Estates' accountants and professionals as necessary as to tax and tax compliance issues.

28. **Task 6. Investigation (0.3 hours; $240.00).** Applicant conferred with Debtors' prior software provider regarding access to and preservation of records.

3107177

29. **Task 7. Claims Administration, Analysis and Objections (9.7 hours; $7,080.00).** Applicant reviewed proof of claims filed as necessary for potential issues (including issues relating to whether claims were based on pre-conversion or post-conversion goods or services, for claims incorrectly filed, and for evidence of any additional real estate) and responded to inquiries from claimants.

30. **Task 8. Employment Applications (5.0 hours; $3,637.50).** Applicant reviewed, analyzed and negotiated engagement letters, and prepared applications and supplements to employ special counsel for litigation and Chapter 11 fee application objections and an auctioneer for sale of real estate. *See* Docket Nos. 1799, 1847, 1933, and 1972.

31. **Task 11. Creditor Matters (4.6 hours; $3,482.50).** Applicant reviewed and analyzed deeds and documents concerning security interests alleged to be held by certain creditors, and multiple requests by alleged creditors regarding operations and real property. HWA worked with various creditor interest groups for resolution of issues raised by creditors, including matters covered by other Task Categories. HWA also attended status conferences calls with several creditors regarding pending litigation and issues with the Estates' real property.

32. **Task 12. Relief From Stay Proceedings (0.9 hours; $670.00).** Applicant reviewed the order setting hearing on Debtor's show cause motion against multiple parties for violation of the automatic stay. Applicant also reviewed, analyzed and conferred with the Trustee on a proposed motion for relief from the automatic stay for the state of Alabama regarding surety bonds. Applicant also reviewed the status of negotiations on pending stay violations in contested matters, continued working with parties in interest for possible stipulations, and conferred with special counsel and Trustee on proposed settlement offers.

3107177

33. **Task 13. Environmental and Regulatory Matters (0.3 hours; $240.00).** Applicant corresponded with relevant counsel with regard to underground storage tank issues at some of the Estates' real property locations.

34. **Task 14. Employee Benefits/Pensions (1.5 hour; $1,087.50).** Applicant analyzed and corresponded with former employees regarding W-2 and various other tax inquiries related to employees.

35. **Task 15. Insurance Matters (1.4 hours; $1,067.50).** Applicant reviewed and analyzed motions regarding insurance proceeds and responded to requests for information from insurers, as well as reviewed and analyzed coverage stipulations received by insurer's counsel.

36. **Task 16. Abandonment (2.4 hours; $1,802.50).** After analyzing certain assets, it was determined that they were of no or minimal value to the Estates. Applicant communicated with the secured creditor regarding possible abandonment of certain inventory at several gas station and convenience store locations, to allow the creditor to liquidate the collateral on its own. Applicant also communicated and conferred with Trustee regarding issues with trademarks. Applicant also reviewed and conferred with relevant parties with regard to filed motions to compel abandonment. *See* Docket Nos. 1701, 1834, and 1875.

37. **Task 18. Use of Cash Collateral (14.2 hours; $10,420.00).** In this case, many of the assets of the Estates appear to constitute cash collateral securing claims. Applicant reviewed operational information and corresponded extensively with secured creditors and parties-in-interest as to the use of cash collateral, including the need for cash collateral to address expenses. As would be anticipated, given the number of Debtors and the number of operation locations, these communications were almost daily. Applicant worked with the secured lender for the preparation of

3107177

budgets for the ongoing use of cash collateral, negotiated additional stipulations for the use of cash collateral, and negotiated for a carve out for the benefit of creditors. *See* Docket No. 1920.

38. **Task 21. Landlords (0.5 hour; $385.00).** HWA communicated with parties-in-interest regarding issues with rent and ownership of certain real property.

39. **Task 23. Monthly Operating Reports (8.5 hours; $6,062.50).** Applicant conferred with Trustee, accountants for the Estate, and Debtors' representatives regarding the information to be contained in monthly operating reports, reviewed multiple spreadsheets (and revisions to same) and responses to requests. Monthly Operating Reports were filed at Docket Nos. 1778, 1801, 1802, 1804, 1805, 1806, 1900, 1901, and 1902.

40. **Task 30. Litigation (94.3 hours; $72,235.00).** Applicant spent a considerable amount of time investigating, prosecuting and resolving litigation claims. Among the matters requiring attention were initial analysis of potential claims against officers and directors, review of cases and adversary proceedings previously filed and being prosecuted or defended by Debtors, and work on notices for examinations under Bankruptcy Rule 2004. Given the number of Debtors and the wide-ranging pre-petition operations, extensive litigation exists. HWA reviewed and analyzed settlement proposals for resolution of several litigations, negotiated settlements, and prepared motions to compromise under FED. R. BANKR. P. 9019 along with supplemental documents for hearings set on such motions. *See* Docket Nos. 1789, 1791, and 1870.

41. HWA also worked extensively on the avoidance litigation (Adversary No. 23-03231) (the "**WI MI Adversary**") (which overlapped the automatic stay violation litigation to some extent; see Task 12), including preparation of motions, analysis of damage claims, preparation of witness and exhibit lists for hearings. Applicant prepared for and participated in a mediation with Judge Isgur to resolve the WI MI Adversary. After mediation, Applicant negotiated extensively with parties to

the WI MI Adversary, resulting in a heavily negotiated settlement agreement filed with the Court at Docket Nos. 21, 22, and 24 in the WI MI Adversary.

42. Applicant further negotiated the sale of real property that resolved the issues raised by Time and Water, LLC at Docket No. 1866, resulting in a 9019 settlement being filed at Docket No. 2056.

43. **Task 32. Fee Applications (57.7 hours; $38,985.00).** Applicant prepared and filed monthly fee statements for itself as general counsel for the Trustee, including reviewing and editing time entries in multiple HWA invoices to ensure compliance with the Court's rules and procedures. *See* Docket Nos. 1800 and 1878. Applicant also prepared and filed an interim fee application for itself as general counsel for the Trustee with calculations required by the Court, which was approved. *See* Docket Nos. 1858 and 1935. Applicant also reviewed, prepared for and attended hearings set for pending fee applications from various parties in the bankruptcy proceeding. Further, Applicant prepared and negotiated with relevant parties with regard to extension of fee examiner deadlines and extension of fee application objection deadlines.

44. During the Application Period, HWA also reviewed multiple fee applications filed by Chapter 11 professionals and filed related objections. Applicant conferred with special counsel hired to analyze and resolve Chapter 11 professional fee applications and the DIP Agent as to ongoing negotiations and resolutions of Chapter 11 fees, which resulted in approximately $375,000.00 coming into the Estates and a reduction of a fee award by approximately $300,000.00.

## The *First Colonial* Factors

45. Except as noted above, HWA has not received any payments for fees or expenses during the Application Period. The Estates currently hold cash collateral sufficient to pay the fees and expenses requested herein pursuant to the Cash Collateral Order.

46. The Fifth Circuit in *In re First Colonial Corp. of America*, 544 F.2d 129l (5th Cir.), *cert. denied*, 97 S. Ct. l696 (l977), described certain factors which should be considered in compensating attorneys in Chapter 7 cases and instructive here. Those factors are discussed in the following paragraphs.

47. <u>Time and labor required, and novelty and difficulty of the questions involved</u>. As reflected in **Exhibit "A"**, the Applicant's professionals and paraprofessionals have expended a total of 390.0 hours on the case during the Application Period, for which compensation is now sought. The blended hourly rate for the attorneys is $677.68. HWA has devoted the time necessary to efficiently attend to the procedures, correspondence, and pleadings involved in the case.

48. <u>Reputation of attorneys</u>. The attorneys involved in the case have regularly appeared before the Courts of the Southern District. These attorneys have significant experience in bankruptcy law including reorganizations and liquidations and have regularly represented Chapter 7 debtors and Chapters 7 trustees in both large and small cases for many years. Therefore, HWA's attorneys are well qualified to represent the Trustee in the case.

49. <u>Skill required</u>. The preceding paragraphs reflect the skill required by the case. An elevated degree of skill has been required and employed by HWA in the representation of the Trustee for the reasons indicated.

50. <u>Preclusion of other employment</u>. HWA was precluded from engaging in other employment only to the extent of the 390.0 hours in the case during this Application Period.

51. <u>Undesirability of the Case</u>. A Chapter 7 case is only undesirable to the extent that HWA's compensation is always contingent upon the availability of sufficient assets with which to compensate HWA for its fees and expenses incurred.

52. <u>Results obtained</u>. HWA has efficiently attended to the matters as described above, with recoveries for the Estates as noted above.

53. <u>Time limitations imposed by the case</u>. HWA's attorneys have been available at all times to meet the Trustee's needs as they have arisen.

54. <u>Customary charges for the services rendered</u>. The hourly rates of HWA's attorneys are described at the end of **Exhibit "A"**. The rates charged are commensurate with the abilities of the persons involved and are on the low end of the rates customarily charged in this district for excellent legal counsel.

55. <u>Contingent nature of the fee</u>. Any fees to be paid to HWA in any Chapter 7 case are dependent on the availability of assets and/or recovery of voidable transfers. Representation of a bankruptcy Trustee is always of a contingent nature because of the uncertainty concerning the existence of sufficient assets for liquidation. HWA was not, however, hired on a percentage contingency agreement, but at the regular hourly rates of the professionals doing the work, subject to available funds.

56. <u>Nature and length of professional relationship with client</u>. HWA has represented the Trustee in many Chapter 7 cases over the past several years and has a close working relationship with her. Since 2007, the Trustee is of counsel to HWA, but not a partner in HWA.

57. <u>Awards in similar cases</u>. This Court is familiar with the size of fee awards in cases similar to this case. The Court may wish to consider that awards of similar or larger fees have been made in other cases over the past years in this district.

58. <u>Economic administration of the Estates</u>. In its representation of the Trustee, HWA has sought to conserve the Estates and believes that the fees and expenses requested herein were reasonable and necessary in light of the circumstances at the time.

3107177

59. HWA believes the compensation and reimbursement of expenses sought herein are reasonable and represent work that was necessary for proper administration of the Estates.

60. HWA, in compliance with FED. R. BANKR. P. 2016, hereby states that: (i) no compensation previously received has been shared with any other entity; and (ii) no agreement or understanding exists between HWA and any other entity for the sharing of compensation received or to be received for services rendered in connection with the case. HWA did not receive any pre- or post-employment retainer in this matter and is holding no funds belonging to the Trustee or the Debtors.

61. HWA has submitted this Application to the Trustee for review prior to filing it, and she has no objection to it.

## **Conclusion**

WHEREFORE, HWA prays that this Court, after notice and a hearing, enter an Order (i) authorizing the payment of compensation to HWA for its professional and paraprofessional fees of $264,295.00 and expenses of $1,003.91 which total $265,298.91 incurred during this Application Period, such payment being a priority administrative expense under § 507(a)(2) of the Bankruptcy Code; and (ii) granting such other and further relief to which HWA may be entitled.

Dated: May 2, 2024.

Respectfully submitted,

*/s/ Heather Heath McIntyre*
Wayne Kitchens        TBN 11541110
wkitchens@hwa.com
Heather H. McIntyre   TBN 24041076
hmcintyre@hwa.com
Hughes Watters Askanase, LLP
1201 Louisiana, 28th Floor
Houston, Texas 77002
Telephone: (713) 590-4200
Facsimile: (713) 590-4230
**ATTORNEYS FOR JANET S. NORTHRUP, CHAPTER 7 TRUSTEE**

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served on (i) all parties receiving ECF notice in the case, and (ii) all parties listed on the attached "Master Service List" by electronic transmission or first class, U.S. mail, postage prepaid as indicated on May 2, 2024.

*/s/ Heather Heath McIntyre*
Heather Heath McIntyre

3107177