IN THE UNITED SATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 7 |
| | § | (Previously Chapter 11) |
| MOUNTAIN EXPRESS OIL | § | |
| COMPANY *et al.*, | § | Case No. 23-90147 (EVR) |
| | § | |
| Debtors. | § | (Jointly Administered) |

**JANET NORTHRUP, AS CHAPTER 7 TRUSTEE'S OBJECTION TO (I) THE MOTION OF JARED SHEIKER FOR RELIEF FROM THE AUTOMATIC STAY, TO THE EXTENT APPLICABLE, TO PERMIT INSURERS TO ADVANCE AND/OR REIMBURSE DEFENSE COSTS AND FEES UNDER DIRECTORS AND OFFICERS INSURANCE POLICIES AND (II) MOTION TO JOIN IN DEFENDANT JARED SHEIKER'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY, TO THE EXTENT APPLICABLE, TO PERMIT INSURERS TO ADVANCE AND/OR REIMBURSE DEFENSE COSTS AND FEES UNDER DIRECTORS AND OFFICERS INSURANCE POLICIES**

Janet Northrup, as Chapter 7 Trustee (the "Trustee"), by and through undersigned counsel, hereby objects (the "Objection") to the *Motion of Jared Shieker for Relief from the Automatic Stay, to the Extent Applicable, to Permit Insurers to Advance and/or Reimburse Defense Costs and Fees Under Directors and Officers Insurance Policies* [Docket No. 2146] (the "Motion") and the *Motion to Join in Defendant Jared Sheiker's Motion for Relief from the Automatic Stay, to the Extent Applicable, to Permit Insurers to Advance and/or Reimburse Defense Costs and Fees Under Directors and Officers Insurance Policies* [Docket No. 2182] (the "Joinder Motion," and collectively with the Motion, the "Motions"). In support of this Objection, the Trustee respectfully states as follows:

**PRELIMINARY STATEMENT**

1. The AXIS Insurance Company Management Liability Policy, Policy No. P-001-000763425-01 (the "Policy") and the $3 million in proceeds thereof are valuable assets of these bankruptcy estates. Through the Motion, Jared Shieker ("Sheiker"), a former director of the

Debtor who had glaring conflicts of interest in serving on the Debtors' board of directors due to his concurrent employment at Blue Owl Capital, LLC f/k/a Oak Street ("Oak"),[1] seeks to jump to the front of the line to access those proceeds on account of claims that have not yet been asserted. In the Joinder Motion, AXIS seeks similar relief on behalf of two of its insureds, Lamar Frady and Turjo Wadud, the Debtors' former co-CEOs and directors (collectively, with Sheiker, the "Former Ds&Os").

2.  In the Motions, Sheiker and AXIS provide an overly simplistic, cursory review of the law regarding the ownership of the proceeds of the Policy. As this Court and the Fifth Circuit have noted, the issue of whether proceeds are property of the estate is a fact specific inquiry and more complicated than whether an individual insured has coverage under a policy. *See, e.g., Schmidt v. Villarreal (OGA Charters, LLC),* 569 B.R. 105 (Bankr. S.D.Tex. 2017), aff'd 901 F.3d 599 (5th Cir. 2018). Instead, the issue turns on whether the Debtors have coverage under the policy, which is the case here.

3.  Further, Sheiker is an employee of Oak. Oak may have its own insurance or indemnification for Sheiker, who was an Oak employee while he served on the Debtors' board of directors. If Sheiker has other coverage, the terms of the Policy provide that it is an excess policy, rendering stay relief unwarranted at this time.

4.  Additionally, counsel for Sheiker also represents Oak. There is substantial overlap between the fees that counsel will incur for representing Sheiker and what it will incur for representing Oak.[2] Indeed, as noted above, at the time that Sheiker served on MEX's Board, he also served as an Oak employee. Consequently, the information that the Trustee has sought from

---

[1] Oak provided the Debtors with over $800 million in financing through a number of sale leaseback transactions, much of which occurred during Sheiker's tenure on the Debtors' board.

[2] As one example, Sheiker has testified, and will testify, as the corporate representative of Oak in a Rule 2004 exam.

2

Oak and Sheiker has, in many cases, been indistinguishable. For example, while the Trustee served separate subpoenas on Sheiker and Oak, they were represented by the same counsel, who provided the same responses, and who even designated Sheiker as Oak's corporate representative. Further, Sheiker's and Oak's Rule 2004 examinations occurred concurrently. It is therefore difficult, if not impossible, for SHeiker's and Oak's same counsel to distinguish between the time he spent defending Sheiker's deposition and the time he spent defending Oak's (same) deposition. The same is true of Sheiker's and Oak's attempt to prevent the Trustee from continuing the examination. When the Trustee filed a motion to compel their depositions, Sheiker and Oak filed a single response. Again, there is no reasonable way for their shared counsel to distinguish between the time he spent working for Sheiker and the time he spent working for Oak on their shared opposition. Oak is not entitled to coverage under the Policy as it is not an insured. Oak should not get a free ride by having its legal fees relating to its representation paid from the Policy proceeds.

5. Moreover, these chapter 7 cases are still in their early stages. Since the conversion to chapter 7, the Trustee has been focused on securing the Debtors' books and records, selling assets, engaging in litigation unrelated to claims against the Former Ds&Os, investigating potential causes of action, and otherwise taking action to preserve and monetize the remaining assets of the estates. As such, the Trustee has not yet had the opportunity to fully investigate potential claims against the Debtors or claims held by the estates that might implicate the Policy.

6. For these reasons, the bankruptcy estates have a significant interest in the Policy and the proceeds thereof. Cause does not exist to allow the Former Ds&Os to seek reimbursement or advancement of defense costs, much less blanket approval for defense costs, as is sought in the Motions. Therefore, the Trustee requests that the Motions be denied in their entirety.

Alternatively, any relief should be limited to reimbursement of *reasonable* defense costs incurred specifically for the Former Ds&Os (rather than for Oak) following the filing of any litigation against the Former Ds&Os, with any further relief to be subject to further order of this Court after notice and a hearing particularly given questions as to whether and to what extent the Policy may cover any potential claims.³

## BACKGROUND

A.     The Bankruptcy Cases and Conversion to Chapter 7

7.     On March 18, 2023 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. On March 20, 2023, the Court ordered joint administration of the cases [Docket No. 33]. From the Petition Date until August 17, 2023, the Debtors operated their businesses as debtors in possession under Chapter 11 of the Bankruptcy Code. On that date, the Court ordered the appointment of a Chapter 11 trustee, and Janet S. Northrup was appointed as Chapter 11 Trustee [Docket No. 1284].

8.     On August 24, 2023 (the "Conversion Date"), after a status conference requested by the Chapter 11 Trustee, the Court entered the *Order (I) Converting Chapter 11 Cases, (II) Rejecting Leases, (III) Terminating Certain Agreements, and (IV) Granting Related Relief* (the "Conversion Order") [Docket No. 1397]. Thereafter, Janet S. Northrup was appointed as the Chapter 7 Trustee (the "Trustee") in the jointly administered cases [Docket No. 1398].

B.     The Policy

9.     Prior to the Petition Date, the Debtors had in place certain insurance coverage for, among other things, directors and officer liability and corporate liability under the Policy. The

---

³ For example, the Policy appears to exclude claims based on an unsured receiving "any personal profit, remuneration, or financial advantage to which the Insured was not legally entitled." It also excludes claims based on any "deliberately fraudulent or criminal act."

4

Policy provides $3 million of insurance coverage, in the aggregate, for losses on account of these categories. See Ex. A at 4, Policy, Declaration, Item 4.

10. The Policy provides coverage for management and entity liability.[4] Specifically, the Policy provides that:

### A. Directors & Officers Liability Coverage

The Insurer will pay Loss not indemnified by the Insured Entity that the Insured Individual becomes legally obligated to pay arising from a Claim first made against such Insured Individual during the Policy Period or the Extended Reporting Period, if applicable, for a Wrongful Act.

### B. Insured Entity Indemnification Coverage

The Insurer will pay Loss for which the Insured Entity[5] is permitted or required to indemnify an Insured Individual arising from a Claim first made against such Insured Individual during the Policy Period or the Extended Reporting Period, if applicable, for a Wrongful Act.

### C. Insured Entity Liability Coverage

The Insurer will pay Loss that the Insured Entity becomes legally obligated to pay arising from a Claim first made against the Insured Entity during the Policy Period or the Extended Reporting Period, if applicable, for a Wrongful Act.

11. "Wrongful Act" is defined under the Policy as follows:

1. with respect to the MANAGEMENT AND ENTITY LIABILITY COVERAGE PART:

   a. any actual or alleged error, misstatement, misleading statement, act, omission, neglect, or breach of duty by:

      (1) an Insured Individual in his or her capacity as such or in an Outside Position; or

---

[4] These coverages, as the excerpted paragraphs suggest, are commonly referred to as Side A, Side B, and Side C coverage.
[5] "Insured Entity" means the Debtor and its affiliates.

5

>>(2) the Insured Entity, with respect to the Insured Entity Liability Coverage; or
>
>b. any matter claimed against an Insured Individual solely by reason of his or her status as such or in an Outside Position;

Docket No. 2146-1 at 22 of 50.

## ARGUMENT

**I.     The D&O Policy and Proceeds are Property of the Bankruptcy Estates**

12.     The proceeds of the Policy are property of the estates and should be preserved for the benefit of the estates and their creditors. Section 541(a)(1) of the Bankruptcy Code provides that property of the estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). As noted by this Court, the "Supreme Court has interpreted § 541(a)(1) broadly." *In re Allied Digital Techs. Corp.*, 306 B.R. 505, 509 (Bankr. D. Del. 2004).

13.     It is well-settled that director and officer insurance policies are property of the estate. *See In re Louisiana World Expositions, Inc.,* 832 F.2d 1391, 1399 (5th Cir. 1987). However, whether proceeds from a policy are property of a bankruptcy estate is dependent on the type of coverage provided by the policy and who may benefit from the policy. *See generally In re Babcock & Wilcox Co.*, 69 F. App'x 659 (5th Cir. 2003); *In re Equinox Oil Co.*, 300 F.3d 614 (5th Cir. 2002); *In re Vitek, Inc.*, 51 F.3d 530 (5th Cir. 1995); *In re Edgeworth*, 993 F.2d 51 (5th Cir. 1993); *In re Louisiana World Exposition, Inc.*, 832 F.2d 1391 (5th Cir. 1987).

14.     When an insurance policy provides a debtor entity with direct coverage, its proceeds are property of the estate. *See, e.g., In re Sacred Heart Hosp. of Norristown*, 182 B.R. 413, 420 (Bankr. E.D. Pa. 1995) ("Proceeds available for the Debtor's liability exposure are not segregated from the proceeds available to the directors and officers. Thus, the Debtor is indeed

an insured and has a sufficient interest in the Proceeds as a whole to bring them into the estate."). *See also In re Vitek, Inc.*, 51 F.3d 530 (5th Cir. 1995); *In re Metropolitan Mortgage & Secs. Co.*, 325 B.R. 851 (Bankr. E.D. Wash. 2005); *In re Eastwind Group, Inc.*, 303 B.R. 743 (Bankr. E.D. Pa. 2004); *In re Boston Reg'l Med. Ctr., Inc.*, 285 B.R. 87 (Bankr. D. Mass. 2002); *In re Allied Digital Technology Corp.,* 306 B.R. 505, 512 (D. Del. 2004); *In re Beach First Nat'l Bancshares, Inc.,* 451 B.R. 406 (Bankr. D.S.C. 2011).   Conversely, where the insurance policy provides direct coverage **only** to directors and officers of the entity, the proceeds are not part of the estate. However, where, as here, a policy provides both direct coverage to a company, and to its directors and officers, "the proceeds will be property of the estate if depletion of the proceeds would have an adverse effect on the estate to the extent the policy actually protects the estate's other interests from diminution."  *See Allied Digital Technology Corp.,* 306 B.R. at 512; *see also In re Beach First Nat'l Bancshares, Inc.,* 451 B.R. at 409 (citing to *In re Petters Co., Inc.,* 419 B.R. 369, 377 (Bankr. D. Minn. 2009) ("explaining the reasoning for including cash proceeds in the bankruptcy estate, stating that when defense costs of other insureds exhaust policy limits, the estate is increasingly exposed to third-party claims and will be unable to collect insurance proceeds to satisfy any claim of the debtor").

15. Critically, under the facts present here, there is a substantial risk that if the Policy is used to pay directors and officers, such use will result in insufficient coverage of the Debtors. Given that risk, the proceeds are property of the estate and any attempts to obtain the proceeds are prohibited under the automatic stay.  *See Houston v. Edgeworth (In re Edgeworth)*, 993 F.2d 51, 56 (5th Cir. 1993) ("no secondary impact has been alleged upon Edgeworth's estate, which might have occurred if, for instance, the policy limit was insufficient to cover appellants' claims or competing claims to proceeds."); *see also OGA Charters*, 569 B.R. at 131.

16. The Debtors' bankruptcy estates have an interest in the Policy. In addition to the Former Ds&Os, the Debtors also are Insureds under the Policy under the Side C coverage. Accordingly, any funds advanced under the Policy for defense costs for the Former Ds&Os depletes the $3 million of insurance available to the estates to pay a Loss arising from other Claims *or* Claims that the Trustee may assert against other insureds (*i.e.*, directors and officers) for the benefit of the estates and creditors.[6] If these defense costs diminish or exhaust the Policy limits, the Trustee would be forced to use other assets of these estates to satisfy such potential Claims.

17. *OGA Charters* is on point. In that case, the Court was asked to determine, in the context of an automobile accident, whether the proceeds of a liability policy were property of the estate. While the Court found that the trustee did not have a legally cognizable claim to the policy, it nonetheless found that the policy was property of the estate under the secondary impact exception, which "arises when the proceeds of a debtor-owned insurance policy 'fail to satisfy all claims.'" 569 B.R. at 131. The Court ruled that the proceeds were property of the estate because the claims against the policy exceeded the amount of proceeds.[7] *Id.* at 132. Here too, the claims against the Policy (which the Debtors' claim register shows exceeds $3.316 **billion**) well exceed the Policy's $3 million in proceeds.

18. The authorities cited by the Movants are inapposite. In support of his Motion, Sheiker primarily relies on *Collins v. Sydow (In re NC12, Inc.),* 478 B.R. 820 (Bankr. S.D. Tex.

---

[6] As one measure of the potential magnitude of causes of action the Trustee or other parties may assert, the Debtors' claims register shows that there are **over $3.316 billion** in claims. While the Trustee has not commenced the claims reconciliation process, $3 million will clearly not be sufficient to cover these claims, particularly given the request for payment of defense costs by Sheiker and AXIS.

[7] In so ruling, the Court considered two prior Fifth Circuit opinions. First, the Court considered the *Louisiana World Exposition*, which held that insurance proceeds were not property of the estate because (unlike here) the policy did not provide coverage to the Debtor. Second, the Court considered *In re Edgeworth,* 993 F.2d 51 (5th Cir. 1993), where the Fifth Circuit held that several medical malpractice plaintiffs could sue for insurance proceeds because their claims did not raise a question about whether the proceeds were sufficient to cover all claims.

8

2012*) and *Edgeworth*. But *NC12* involves a different type of insurance policy and *Edgeworth* supports the Trustee's position.

19. Specifically, *NC12* involved an insurance policy that, unlike the Policy here, did not have Side C coverage. That is a material difference because the debtors in *NC12* had no current interest in the insurance policies or the proceeds thereof, while the Debtor has such an interest here.

20. In *Edgeworth,* the Fifth Circuit noted that "[t]he overriding question when determining whether insurance proceeds are property of the estate is whether the debtor would have a right to receive and keep those proceeds when the insurer paid on a claim." Here, considering the Side C coverage, the Debtors clearly have that right. Accordingly, the court's reasoning *Edgeworth* supports the Trustee's position.

21. The other decisions cited by Sheiker are distinguishable. In *Allied Digital*, the Court found that all covered claims against the debtor had already been adjudicated or were barred by the applicable statute of limitations. *Allied Digital*, 306 B.R. at 512-513. Similarly, in *In re Downey Fin. Corp*., 428 B.R. 595, 608 (Bankr. D. Del. 2010), the court found that because there were no covered claims pending against the debtor any (because such claims had been dismissed or withdrawn), the debtor no longer enjoyed any direct entity coverage. *Downey Fin. Corp.*, 428 B.R. at 605. As such, the Court found in both cases that the applicable insurance policy's entity coverage no longer protected the estate's other assets from diminution. Here, neither Sheiker nor AXIS has made any showing that the time period for claims to be asserted has expired, or that claims implicating the entity coverage have not been asserted.

**II.     Cause Does Not Exist to Lift the Stay to Reimburse/Advance Defense Costs to the Former Ds&Os**

22. Since the Policy and the proceeds thereof constitute property of the estates, they are protected by the automatic stay imposed by section 362 of the Bankruptcy Code. Under the current circumstances, cause does not exist to justify lifting the stay under section 362(d) of the Bankruptcy Code.

23. The inquiry into whether sufficient cause exists to lift the stay is fact intensive and is determined on a case-by-case basis by the totality of the circumstances. *Downey Fin. Corp.*, 428 B.R. 595, 608-09. In conducting this inquiry, the Court should consider: "1. Whether any great prejudice to either the bankrupt estate or the debtor will result from a lifting of the stay; 2. Whether the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the debtor; and 3. The probability of the creditor prevailing on the merits." *Id.* Consideration of these factors in the present case demonstrates that there is no cause to lift the stay.

24. *First*, there is a risk of serious prejudice to the bankruptcy estates if the Motions are granted. If the stay is lifted to permit the Former Ds&Os to access the proceeds of the Policy, the Trustee has serious concerns that a race to the proceeds of the Policy will commence to the detriment of the estates and their creditors.

25. *Second*, this risk to the bankruptcy estates overwhelmingly outweighs any hardship to the Former Ds&Os.

26. On the one hand, the risk to the bankruptcy estates is material. Given the magnitude of the claims, it is already clear that the estates will not recover all the funds to which they are entitled. If the Motions are granted, it is a certainty that Movants will quickly spend the

$3 million in available proceeds, making them difficult, if not impossible, to recover in any subsequent litigation.

27. On the other hand, the Former D&Os have substantial funds to address any potential litigation. For one, it is undisputed that, while serving as officers and directors, Lamar Frady and Turjo Wadud caused the Debtors to transmit over $10 million to side companies for which they were the sole owners. For example, Gina Zamarelli, who was originally hired in the Fall of 2022 to serve as the Debtors' CFO, testified:

> Q: And when MEX engaged in those sale-leaseback transactions, money was being syphoned off to Mr. Frady and Mr. Wadud's side companies, correct?
> A: With each of the closings, yes.
> Q: So while MEX was in financial distress, its owners were taking money to their side companies, correct?
> A: On any of the closing statements I saw, there was always a line item for that, yeah.

Moreover, counsel for West Hill Ranch, which owned 3% of Debtor Mountain Express Oil Company, concluded that Mr. Frady and Mr. Wadud syphoned at least $14 million to themselves.

28. Moreover, Sheiker is employed by Oak, which is a multi-billion dollar REIT that certainly has cash and insurance to cover any claims that may be asserted against him. And, presumably, Mr. Sheiker has sufficient funds as well given that, during his Rule 2004 examination, he could not even recall whether his bonuses were over $1 million.

29. *Third*, the Former Ds&Os make no showing as to whether they may prevail on the merits in his legal disputes. To the contrary, taking the Trustee's allegations as true, these former directors and officers appear to have violated fiduciary duties and/or received voidable transfers. For these reasons, along with the early stage of these chapter 7 proceedings, this factor cuts in favor of the Trustee.

30. As all three factors weigh in favor of the Trustee, the Court should deny the

Motions.

### III. If the Former Ds&Os Have Other Insurance Coverage, the Policy Serves as Excess Coverage.

31. The Policy provides that if the Former Ds&Os have other insurance, then the Policy shall serve as excess coverage:

> **Other Insurance**
>
> If there is any other valid and collectible insurance available to the Insured that applies to Loss covered under this Policy, this insurance shall be excess over such other insurance, except when the other insurance is specifically written excess of this Policy.
>
> Docket No. 2146-1 at p. 31 of 50.

This provision mandates that the Former Ds&Os, including Sheiker, use other coverage before accessing the proceeds of the Policy.

32. The Trustee has diligently sought information on whether such insurance exists. In his February 14, 2024 Rule 2004 Exam, Sheiker claimed not to recall whether Oak had insurance coverage that would cover his service on the Debtors' board. On April 17, 2024, the Trustee's counsel asked Sheiker's (and Oak's) counsel whether additional coverage exists. Sheiker's counsel stated that they were unaware of whether additional coverage exists. On May 6, 2024, the Trustee's counsel again asked Sheiker's counsel whether additional coverage existed. As of this date, Sheiker's counsel has not responded definitively, as indicated in the email below:

> **From:** Pruitt, William T. <wpruitt@kirkland.com>
> **Sent:** Monday, May 6, 2024 9:51 PM
> **To:** Elrod, John (Shld-Atl-FinInst) <ElrodJ@gtlaw.com>; Kurtz, Benjamin T. <bkurtz@kirkland.com>; Rosenwasser, Steven J. (Shld-ATL-LT) <Steven.Rosenwasser@gtlaw.com>; Heyen, Shari L. (Shld-Hou-Bky) <Shari.Heyen@gtlaw.com>
> **Cc:** Ribot, Evan <evan.ribot@kirkland.com>; Greenblatt, Josh <josh.greenblatt@kirkland.com>
> **Subject:** RE: Request to confer
>
> John,
>
> My clients are still assessing the availability and applicability of their insurance and indemnity coverages. In any event, the possible existence of other coverage is not relevant to our pending motion for relief from the automatic stay, and you have failed to provide us any authority to the contrary since our April 17 conference.
>
> Best,
> Will
>
> **William T. Pruitt**
>
> **KIRKLAND & ELLIS LLP**
> 333 West Wolf Point Plaza
> Chicago, IL 60654
> T +1 312 862 3280   M +1 312 860 3280
> F +1 312 862 2200
>
> william.pruitt@kirkland.com
>
> **From:** ElrodJ@gtlaw.com <ElrodJ@gtlaw.com>
> **Sent:** Monday, May 6, 2024 3:14 PM
> **To:** Pruitt, William T. <wpruitt@kirkland.com>; Kurtz, Benjamin T. <bkurtz@kirkland.com>; Steven.Rosenwasser@gtlaw.com; Shari.Heyen@gtlaw.com
> **Cc:** Ribot, Evan <evan.ribot@kirkland.com>; Greenblatt, Josh <josh.greenblatt@kirkland.com>
> **Subject:** RE: Request to confer
>
> Will,
>
> Good afternoon. I am following up on a question I asked during our call on April 17, and which your side has not answered. Does Mr. Sheiker have other insurance coverage or has your other client Oak Street agreed to indemnify him? Please respond no later than 12 pm CT tomorrow. Thank you.
>
> Best regards,
>
> **John D. Elrod**
> Shareholder
>
> Greenberg Traurig, LLP
> Terminus 200 | 3333 Piedmont Road NE | Suite 2500 | Atlanta, GA 30305
> T +1 678.553.2259  |  F +1 678.553.2269  |  C +1 404.751.7286
> ElrodJ@gtlaw.com  |  www.gtlaw.com  |  View GT Biography

Whether or not other insurance exists will impact Sheiker's ability to access the Policy proceeds at this time. Accordingly, Sheiker (and Wadud and Frady) should be compelled to answer this question prior to the Court's decision on the Motions.

13

**IV.     The Payments Provision of the Policy is an Unenforceable Ipso Facto Clause.**

33.     Sheiker relies on the Payments provision of the Policy to argue that the Debtors' rights to the proceeds are subordinate to Sheiker's rights.   However, the Payments provision expressly provides that the Debtors' rights are subordinated in the event of a bankruptcy. Accordingly, it is an ipso facto clause that is not enforceable in bankruptcy.

34.     An ipso facto clause is a contractual or other provision that results in a loss of property rights or the elimination or limitation of obligations that existed prior to the commencement of a bankruptcy which loss, elimination or limitation occurs by reason of the debtor's bankruptcy.  *See* BLACK'S LAW DICTIONARY 834 (7th ed. 1999); *Northrop Grumman Tech. Servs. v. Shaw Group Inc. (In re IT Group, Inc.)*, 302 B.R. 483, 487 (D. Del. 2003) (citing 11 U.S.C. § 365(e)(1)); *Bonneville Power Admin. v. Mirant Corp. (In re Mirant Corp.)*, 440 F.3d 238, 240 n.1 (5th Cir. 2007).  Ipso facto clauses are not enforceable in bankruptcy.  *See* 11 U.S.C. § 365(e)(1).

35.     Because the Payments provision cited by Sheiker purports to strip away contractual property rights of the Debtors to the Proceeds, it is not enforceable.

**V.      Alternatively, Any Relief Must Be Limited**

36.     If the Court is inclined to grant some relief to Sheiker and AXIS, the Trustee submits that such relief should be strictly limited to reimbursement of the former directors and officers' *reasonable* defense costs incurred following the filing of a lawsuit, rather than blanket approval of past and future costs incurred in connection with any and all actions that might be asserted as requested in the Motions.  In light of the significance of the Policy and the risk of a depletion of estate assets, the Former Ds&Os should be required to file an application for reimbursement of such defense costs subject to section 330 of the Bankruptcy Code.  Courts that

have granted stay relief under similar circumstances have required movants seeking payment of defense costs to submit applications for court approval. *See, e.g., In re Laminate Kingdom LLC*, 2008 Bankr. LEXIS 1594 (Bankr. S.D. Fla. 2008).

37. Additionally, as argued above, Oak should not be permitted to have its counsel's costs covered from the Policy. Any relief should specifically require that Oak cannot be reimbursed for the fees and expenses of its counsel.

38. Prior to the filing of Sheiker's Motion, the Trustee's counsel conferred with Sheiker's counsel regarding limited relief in favor of Sheiker. Sheiker's counsel was unwilling to discuss relief of this nature.

**WHEREFORE**, the Trustee respectfully requests that the Court deny the Motions or, alternatively, limit any relief to reimbursement of reasonable costs incurred following the filing of any lawsuit against the Former Ds&Os.

Respectfully submitted this 7th day of May, 2024.

**GREENBERG TRAURIG, LLP**

*/s/ John D. Elrod*
Shari L. Heyen
Texas Bar No. 09564750
*Shari.Heyen@gtlaw.com*
1000 Louisiana St., Suite 1700
Houston, Texas 77002
Telephone:   (713) 374-3564
Facsimile:   (713) 374-3505

– and –

John D. Elrod (admitted *pro hac vice*)
ElrodJ@gtlaw.com
3333 Piedmont Road, NE, Suite 2500
Atlanta, Georgia 30305
Telephone:   (678) 553-2259
**SPECIAL LITIGATION COUNSEL FOR JANET NORTHRUP, AS CHAPTER 7 TRUSTEE**

**CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing document has been served upon the parties eligible to receive notice through the Court's ECF facilities by electronic mail on May 7, 2024.

                                        */s/ John D. Elrod*
                                        John D. Elrod