IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 23-90147 |
| MOUNTAIN EXPRESS OIL COMPANY, | § | JOINTLY ADMINISTERED |
| *et al.*, | § | |
| Debtors. | § | CHAPTER 7 |

**THIRD INTERIM APPLICATION FOR COMPENSATION AND FOR REIMBURSEMENT OF EXPENSES BY HUGHES WATTERS ASKANASE, LLP AS ATTORNEYS FOR TRUSTEE FOR MARCH 1, 2024 THROUGH MAY 31, 2024**

THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN TWENTY-ONE (21) DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

TO THE HONORABLE EDUARDO V. RODRIGUEZ, CHIEF UNITED STATES BANKRUPTCY JUDGE:

# FEE APPLICATION COVER SHEET

| | | |
|---|---|---|
| Name of Applicant: | | Hughes Watters Askanase, LLP |
| Applicant's professional role in case: | | General Counsel for the Chapter 7 Trustee |
| Indicate whether this is an interim or final application: | | Interim |
| Date Order of Appointment Signed: | | 10/30/23 [ECF No. 1605] |
| | Beginning of Period | Ending of Period |
| Total period covered in application: | 3/1/2024 | 5/31/2024 |
| Time period covered by any prior applications:[1] | 8/25/2023 | 2/29/2024 |
| Total amounts awarded in all prior applications: | | $592,924.42 |
| Amount of retainer received in the case: | | $0.00 |
| Total fees applied for in this application and in all prior applications (including any retainer amounts applied or to be applied): | | $813,900.00 |
| Total fees applied for in this application (including any retainer amounts to be applied): | | $222,927.50 |
| Total professional fees requested in this application: | | $215,817.50 |
| Total professional hours covered by this application: | | 327.9 |
| Average hourly rate for professionals: | | $658.18 |
| Total paraprofessional fees requested in this application: | | $7,110.00 |
| Total paraprofessional hours covered by this application: | | 31.6 |
| Average hourly rate for paraprofessionals: | | $225.00 |
| Reimbursable expenses sought in this application: | | $1,003.91 |
| Application Cost (estimated; not included in above fees): | | $3,000.00 |
| Total of other payments paid to Secured Claimants: | | $0.00 |
| Total of other payments paid to Administrative Claimants: | | $6,549,520.12[2] |
| Estimated Total for distribution to Priority Unsecured Creditors: | | Undetermined[3] |
| Expected % dividend to be paid to Priority Unsecured Creditors: | | Undetermined – see FN 4 |
| Estimated total for distribution to General Unsecured Creditors: | | Undetermined – see FN 4 |
| Expected % dividend to be paid to General Unsecured Creditors: | | Undetermined – see FN 4 |
| Expected amount to be paid to all pre-petition creditors: | | Undetermined – see FN 4 |
| Receipts to date (in Chapter 7 case) as of May 31, 2024: | | $38,024,875.63 |
| Disbursements to date (in Chapter 7 case) as of May 31, 2024: | | $12,281,290.47 |
| Current balance in the Trustee's accounts as of May 31, 2024: | | $27,763,794.04 |

---

[1] HWA submitted a first and final fee application as counsel for the Chapter 11 Trustee, which was approved (Docket Nos. 1493 and 1688). The time and fees in that application are <u>not</u> reflected in this summary, as this is HWA's third interim application as counsel for the Chapter 7 Trustee.

[2] *See* the Monthly Operating Reports attached hereto as **Exhibit "B"**.

[3] Distributions are unknown at this time. The Trustee is evaluating potential chapter 5 causes of action and continuing her investigation for possible sale of assets. Based on possible future recoveries, estimations are not available at this time.

COMES NOW, Hughes Watters Askanase, LLP ("**Applicant**" or "**HWA**"), and respectfully submits its *Third Interim Application for Compensation and for Reimbursement of Expenses by Hughes Watters Askanase, LLP as Attorneys for Trustee for March 1, 2024 Through May 31, 2024* (the "**Application**"). The total amount for which the Court's approval is sought is compensation of $222,927.50 in professional and paraprofessional fees and $809.16 in reimbursement of expenses for the period covered by this Application, totaling $223,736.66. In support of the Application, Applicant respectfully shows as follows:

## Background

**A.     The Debtors' Bankruptcy Cases and the Appointment of the Chapter 7 Trustee.**

1.     On or about March 18, 2023 (the "**Petition Date**"), Mountain Express Oil Company and its affiliated debtors (collectively, the "**Debtors**") each filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

2.     On March 20, 2023, the Court ordered joint administration of the Debtors cases. [Docket No. 33]. From the Petition Date until August 17, 2023, the Debtors operated their businesses as debtors in possession under Chapter 11 of the Bankruptcy Code. On that date, the Court ordered the appointment of Janet S. Northrup as Chapter 11 Trustee (the "**Chapter 11 Trustee**"). [Docket No. 1284].

3.     On August 24, 2023, after a status conference requested by the Chapter 11 Trustee, the cases were converted to Chapter 7. Thereafter, Janet S. Northrup was appointed as the Chapter 7 Trustee (the "**Trustee**") in the jointly administered cases and currently serves as Trustee of the jointly administered estates (the "**Estates**"). [Docket No. 1398].

**B.**     **The Employment of HWA as Attorneys for the Trustee.**

4.     On September 1, 2023, the Trustee filed her *Trustee's Application to Employ Counsel.* [Docket No. 1443]. On October 30, 2023, the Court entered its *Order Authorizing Employment of Counsel,* which approved the employment of HWA as general bankruptcy counsel to the Trustee effective as of August 24, 2023 (the "**HWA Employment Order**"). [Docket No. 1605].

5.     HWA has performed legal services as general counsel to the Trustee pursuant to the HWA Employment Order and the Trustee's requests. All of the services rendered by HWA were performed for and on behalf of the Trustee and not on behalf of any committee, creditor, or other person.

6.     HWA is a law firm composed of attorneys duly licensed to practice law before the courts of the State of Texas, the United States District Court for the Southern District of Texas, and other relevant courts. HWA's offices are located at TotalEnergies Tower, 1201 Louisiana Street, 28th Floor, Houston, Texas 77002.

7.     HWA has made the disclosures required by law and has no agreement or understanding with any other person with respect to sharing the compensation to be allowed HWA for services rendered in the case.

8.     If HWA is not allowed compensation as requested herein, such denial would have the effect of HWA having provided, without compensation, valuable services, expertise, and experience to the Trustee and would undermine the intent of § 330 of the Bankruptcy Code. *See Matter of Baldwin United Corp.,* 36 B.R. 401 (Bankr. S.D. Ohio 1984); *In re Wilson Foods Corp.,* 36 B.R. 317 (Bankr. W.D. Okla. 1984).

C.     **The Fees and Expenses Requested.**

9.      On September 11, 2023, the Court entered the *Second Stipulation and Agreed Order (A) Authorizing the Use of Cash Collateral, (B) Providing Adequate Protection, and (C) Modifying the Automatic Stay* (the "**Cash Collateral Order**") which *inter alia* established a "carve-out" from the secured parties' cash collateral for payment of the professionals retained by the Trustee in the Case. [Docket No. 1464]. See Cash Collateral Order ¶2.

10.     On October 30, 2023, the Court entered its *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Trustee* (the "**Interim Fee Order**"). [Docket No. 1607].

11.     On May 6, 2024, pursuant to the Interim Fee Order, HWA filed its *Seventh Monthly Fee Statement of Hughes Watters Askanase, LLP for Allowance of Compensation for Services Rendered as Counsel to Janet S. Northrup, Chapter 7 Trustee for the Period of March 1, 2024 Through March 31, 2024* (the "**Seventh Monthly Fee Statement**"). [Docket No. 2186]. No objection was made to the Seventh Monthly Fee Statement, and, therefore, the Trustee has distributed fees in the amount of $39,904.00 and expenses in the amount of $141.32 totaling $40,045.32 to HWA pursuant to the Interim Fee Order.

12.     On May 23, 2024, pursuant to the Interim Fee Order, HWA filed its *Eighth Monthly Fee Statement of Hughes Watters Askanase, LLP for Allowance of Compensation for Services Rendered as Counsel to Janet S. Northrup, Chapter 7 Trustee for the Period April 1, 2024 Through April 30, 2024* (the "**Eighth Monthly Fee Statement**"). [Docket No. 2225]. No objection was made to the Eighth Monthly Fee Statement, and, therefore, the Trustee has distributed fees in the amount of $93,810.00 and expenses in the amount of $27.52 totaling $93,837.52 to HWA pursuant to the Interim Fee Order.

13. On June 24, 2024, pursuant to the Interim Fee Order, HWA filed its *Ninth Monthly Fee Statement of Hughes Watters Askanase, LLP for Allowance of Compensation for Services Rendered as Counsel to Janet S. Northrup, Chapter 7 Trustee for the Period May 1, 2024 Through May 31, 2024* (the "**Ninth Monthly Fee Statement**"). [Docket No. 2286]. No objection was made to the Ninth Monthly Fee Statement, and, therefore, the Trustee has distributed fees in the amount of $44,628.00 and expenses in the amount of $640.32 totaling $45,268.32 to HWA pursuant to the Interim Fee Order.

14. The Seventh Monthly Fee Statement, Eighth Monthly Fee Statement, and Ninth Monthly Fee Statement, which comprise this Application, can be summarized as follows:

| Task | March 2024 | April 2024 | May 2024 | Totals |
|---|---|---|---|---|
| Task 1 – General Administration | $530.00 | $1,590.00 | $4,455.00 | $6,575.00 |
| Task 2 – Asset Analysis and Recovery | $11,310.00 | $15,812.50 | $8,212.50 | $35,335.00 |
| Task 3 – Asset Sales | $7,600.00 | $22,442.50 | $9,287.50 | $39,330.00 |
| Task 4 – Chapter 5 Avoidance Actions | $145.00 | $145.00 | $435.00 | $725.00 |
| Task 5 – Tax Matters | $870.00 | $1,872.50 | $3,410.00 | $6,152.50 |
| Task 7 – Claims Administration, Analysis and Objections | $2,450.00 | $7,095.00 | $2,102.50 | $11,647.50 |
| Task 12 – Relief From Stay Proceedings | $72.50 | $0.00 | $145.00 | $217.50 |
| Task 13 – Environmental and Regulatory Matters | $0.00 | $2,480.00 | $530.00 | $3,010.00 |
| Task 15 – Insurance Matters | $0.00 | $0.00 | $885.00 | $885.00 |
| Task 18 – Use of Cash Collateral | $3,065.00 | $5,552.50 | $7,935.00 | $16,552.50 |
| Task 23 – Monthly Operating Reports | $380.00 | $2,755.00 | $1,232.50 | $4,367.50 |
| Task 30 - Litigation | $16,495.00 | $49,555.00 | $13,222.50 | $79,272.50 |
| Task 32 – Fee Applications | $6,962.50 | $7,962.50 | $3,882.50 | $18,807.50 |
| **Totals** | $49,880.00 | $117,262.50 | $55,785.00 | $222,927.50 |

15. Pursuant to the Interim Fee Order, this Application seeks payment for HWA's professional services rendered and out-of-pocket expenses incurred from March 1, 2024 through

May 31, 2024 (the "**Application Period**"). HWA performed a total of 359.5 hours of professional and paraprofessional services on behalf of the Trustee during the Application Period, for which compensation is now sought. Attached as **Exhibit "A"** are the detailed statements of the services performed by HWA for the Estates.

16. As shown in detail in **Exhibit "A"**, after credit for amounts previously approved by the Court [Docket Nos. 1493 and 1688], HWA's professional fees of $222,927.50 and expenses of $809.16 for the Application Period total $223,736.66. Included in **Exhibit "A"** are statements reflecting the hours spent on the case and the hourly rate of each participating attorney, law clerk, and legal assistant. **Exhibit "A"** also includes the details of expenses advanced during the representation. All of HWA's services rendered were for and on behalf of the Trustee. No agreement or understanding exists between HWA and any other person with respect to sharing any compensation awarded to HWA in connection with its representation of the Trustee in the case.

### Summary of Major Tasks

17. <u>General Background</u>. After months of the Debtors attempting to sell their assets, First Horizon Bank as Administrative Agent filed an emergency motion to appoint a Chapter 11 Trustee, or alternatively, to convert the Debtors' cases to Chapter 7. [Docket No. 1280]. The Chapter 11 Trustee was appointed in this case on August 17, 2023. Immediately upon her appointment, the Chapter 11 Trustee was faced with a liquidity crisis that threatened the Debtors' continued operations during the following days. Prior to appointment of the Chapter 11 Trustee, Judge Marvin Isgur served as mediator in the hopes of resolving disputes among the Debtors' various constituents and formulating a path forward designed to keep the Debtors alive as going concerns. The Chapter 11 Trustee and her professionals continued to work with Judge Isgur as mediator and the various case constituents in these efforts. However, after days of efforts to

continue as going concerns, the Chapter 11 Trustee requested a status conference. On August 24, 2023, the Chapter 11 Trustee reported to the Court, and the cases were converted to Chapter 7 proceedings. [Docket No. 1397].

18. The Trustee is operating the Chapter 7 Estates on a limited basis pursuant to the Court's *Order Granting Trustee's Emergency Motion for Authority to Operate Pursuant to 11 U.S.C. § 721 as of August 24,* 2023. [Docket No. 1421].

19. The Trustee is using cash collateral pursuant to the Cash Collateral Order. [Docket No. 1464].

20. The legal services performed by Applicant can be summarized by project as follows:

21. **Task 1. General Administration (13.1 hours; $6,575.00).** General case administration includes matters not allocable to particular tasks, but which nonetheless must be performed to ensure the case proceeds properly. Time in this category includes overall case management and conferring with the Trustee to keep the Trustee informed as to case status. During the Application Period, Applicant obtained and reviewed Debtors' records, conferred as necessary with special counsels to ensure proper allocation of work and division of labor and to ensure that all Estate professionals were aware of developments. During the Application Period, Applicant also conferred with the Debtors' Chapter 11 professionals and representatives of the secured lender on various outstanding matters, drafted multiple production demands and reviewed voluminous records for required reporting and accounting, responded to general inquiries from parties-in-interest and potential buyers, and reviewed general case filings and amendments. Discussions with the Trustee, other Estate professionals, and constituents commonly overlapped a wide variety of issues, and are therefore not capable of being segregated into one of the more specific Task

categories below.

22.     **Task 2. Asset Analysis and Recovery (59.4 hours; $35,335.00)**. Asset analysis and recovery includes fees incurred for the identification of potential Estate assets and the evaluation of whether further action should be taken in connection therewith. As would be expected with a case of this magnitude, in light of the number of Debtors and number of locations operated by those Debtors, the inquiries from parties-in-interest and potential buyers, and the information to be reviewed regarding potential assets, are voluminous and often complex. Applicant attended as expeditiously as possible to these matters, while coordinating with other Estate professionals to a proper division of labor with respect to the issues raised.

23.     Among the matters requiring attention during the Application Period were continued analysis of contracts that may benefit the Estates, review of leases and lease payments potentially due to Debtor(s) and/or other parties-in-interest, further investigation into open issues regarding underground tanks and preparation of proper documents for transfer of ownership of same, continued consolidation of multiple bank accounts of the various Debtors and preparation of demands for turnover of same, review and disposition of inventory, equipment, and other property at various Debtor locations, further analysis, recovery, preservation, and access of records necessary for future investigation of assets, continued review of records and analysis of fuel receipts, preparation and demand for turnover of professional files for the Estates, and conferred with the Trustee and other Estate professionals on preparation of de minimis sales procedures. During the Application Period, Applicant also received and reviewed various correspondence regarding potential unclaimed property, funds, and intellectual property of the Estates, attended to further inquiry and possible recovery of same, and conferred with the accountant on examination of possible retrieval of an Employee Retention Tax Credit ("**ERTC**").

24. For a number of potential real estate assets, Applicant conducted various public record searches throughout the United States, identified and reviewed relevant title reports and additional information regarding possible ownership of undisclosed Debtor property, conferred with the Trustee and Estate professionals on same, and responded to various inquiries from potential buyers. Applicant also continued to coordinate with the auctioneer for preparation of auctioning of the various Debtors' properties and continued to organize with the secured creditor regarding its request for the establishment of reserves from the auction.

25. **Task 3. Asset Sales (64.8 hours; $39,330.00).** During the Application Period, Applicant reviewed and analyzed purchase offers and counteroffers, sales contracts, and values of personal and real property assets, coordinated with the Trustee and the auctioneer as necessary to conduct various auctions, reviewed and assessed multiple title reports, deeds for properties, and possible issues to be considered for auction, prepared reports to Trustee, and negotiated and prepared real estate terms of sales, deeds, purchase and sale agreements, and other closing and real estate transactional documents.

26. During this Application Period, Applicant also continued to investigate the real property records of various counties where the Debtors operated to identify possible undisclosed real property, prepared and filed multiple Notices of Additional Real Estate [*See* Docket Nos. 2057, 2128, and 2153], further assessed valuation of Debtors' intellectual property and discussed with the Trustee and Estate professionals possible transfers on same, and investigated possible tenant rights as to auction and sale of Debtors' real property subjected to active leases.

27. **Task 4. Chapter 5 Avoidance Actions (1.0 hours; $725.00).** During the Application Period, Applicant conferred and negotiated with potential special counsel on possible

investigation and prosecution of prospective preference claims on a contingency fee basis and analyzed Debtor bank accounts for possible claims from post-conversion activity.

28.     **Task 5. Tax Matters (9.1 hours; $6,152.50).** During the Application Period, Applicant communicated with tax and forensic accountants and corresponded with Debtors' representatives, and the Estates' accountants and professionals as necessary as to completion and filing of taxes, tax assessments and holdbacks, completion of certain tax forms, possible tax compliance issues, demand and turnover of accounting records, and investigation and potential recovery of ERTCs.

29.     **Task 7. Claims Administration, Analysis and Objections (26.9 hours; $11,647.50).** During the Application Period, Applicant reviewed proof of claims and applications for administrative claims and expenses filed as necessary for potential issues (including issues relating to whether claims were based on pre-conversion or post-conversion goods or services, for claims incorrectly filed, and for evidence of any additional real estate) and conferred with the Trustee on same, responded to inquiries from claimants, requested withdrawal of claims from certain claimants, negotiated, reviewed and prepared agreed orders with certain other claimants, and prepared a motion for chapter 11 administrative claim procedures and deadlines.

30.     **Task 12. Relief From Stay Proceedings (0.3 hours; $217.50).** During the Application Period, Applicant conferred with the Trustee regarding a pending motion for relief from the automatic stay and objections on same.

31.     **Task 13. Environmental and Regulatory Matters (3.8 hours; $3,010.00).** During the Application Period, Applicant assessed and corresponded with Estate professional regarding possible environmental concerns relating to underground storage tanks at certain of the Estate's real property locations.

32. **Task 15. Insurance Matters (1.2 hours; $885.00).** During the Application Period, Applicant reviewed and analyzed coverage stipulations received by insurer's counsel and attended hearings on same.

33. **Task 18. Use of Cash Collateral (25.9 hours; $16,552.50).** In this case, many of the assets of the Estates appear to constitute cash collateral securing claims. During the Application Period, Applicant reviewed operational information, prepared reports, and corresponded extensively with secured creditors and parties-in-interest as to the use of cash collateral, including the need for cash collateral to address expenses. As would be anticipated, given the number of Debtors and the number of operation locations, these communications were almost daily. During the Application Period, Applicant also worked with the secured lender for the preparation of budgets for the ongoing use of cash collateral, negotiated additional stipulations for the use of cash collateral, prepared a motion and notice for the interim use of cash collateral, prepared and attended hearing on same, and conferred with the Trustee on all related matters. *See* Docket Nos. 2175, 2248, and 2249.

34. **Task 23. Monthly Operating Reports (6.3 hours; $4,367.50).** During the Application Period, Applicant conferred with Trustee, accountants for the Estate, and Debtors' representatives regarding the information to be contained in monthly operating reports, reviewed and revised multiple spreadsheets for analysis on reports, and responded to relevant inquiries and requests on same. Monthly Operating Reports were filed at Docket Nos. 2011, 2111, 2176, and 2212.

35. **Task 30. Litigation (110.6 hours; $79,272.50).** During the Application Period, Applicant spent a considerable amount of time investigating, prosecuting and resolving litigation claims. Among the matters requiring attention were continued analysis of potential claims against

officers and directors, further review of cases and adversary proceedings previously filed and being prosecuted or defended by the Debtors, and further preparation of notices for examinations under Bankruptcy Rule 2004. Given the number of Debtors and the wide-ranging pre-petition operations, extensive litigation exists. Applicant conducted preliminary discovery, reviewed and analyzed settlement proposals for resolution of several litigation matters, negotiated settlements and compromises, prepared motions for same under FED. R. BANKR. P. 9019, along with preparation of supplemental documents and attendance for hearings set on such motions, and reviewed filed objections on same. *See* Docket Nos. 2056, 2071, 2090, and 2108.

36. During the Application Period, Applicant also worked extensively on avoidance litigation (Adversary No. 23-03231) (the "**WI MI Adversary**"), including preparation of motions, analysis of damage claims, preparation of witness and exhibit lists for hearings, multiple attendance of such hearings, and negotiating and preparing a compromise with the parties involved in the WI MI Adversary, which required extensive conciliation with and review from each party in interest and included a second mediation with Judge Isgur. Thereafter, Applicant attended several conferences and further negotiations with the parties to bring forth an amended settlement agreement that was approved by the Court and resulted in approximately $23,250,000.00 coming into the Estates, prior to any reductions. *See* Docket Nos. 2066, 2175, 2183, 2189, and 2190.

37. **Task 32. Fee Applications (37.1 hours; $18,807.50).** During the Application Period, Applicant prepared and filed monthly fee statements for itself as general counsel for the Trustee, which included reviewing and editing time entries in multiple HWA invoices to ensure compliance with the Court's rules and procedures, and prepared and filed monthly notices of requests for interim compensation for the Trustee. *See* Docket Nos. 2055, 2062, 2154, 2155, 2156, 2186, 2188, 2219 and 2225. Applicant also prepared and filed interim fee applications for the

Trustee and itself as general counsel for the Trustee with calculations required by the Court, which were approved. *See* Docket Nos. 2178, 2187, 2234, and 2240. Applicant also reviewed and revised interim fee applications for Estate professionals and accountants. Further, Applicant continued to review fee statements and applications from various parties in the bankruptcy proceeding and attended to objections and orders on same.

### The *First Colonial* Factors

38. Except as noted above, HWA has not received any payments for fees or expenses during the Application Period. The Estates currently hold cash collateral sufficient to pay the fees and expenses requested herein pursuant to the Cash Collateral Order.

39. The Fifth Circuit in *In re First Colonial Corp. of America*, 544 F.2d 1291 (5th Cir.), *cert. denied*, 97 S. Ct. 1696 (1977), described certain factors which should be considered in compensating attorneys in Chapter 7 cases and instructive here. Those factors are discussed in the following paragraphs.

40. <u>Time and labor required, and novelty and difficulty of the questions involved</u>. As reflected in **Exhibit "A"**, the Applicant's professionals and paraprofessionals have expended a total of 359.5 hours on the case during the Application Period, for which compensation is now sought. The blended hourly rate for the attorneys is $620.10. HWA has devoted the time necessary to efficiently attend to the procedures, correspondence, and pleadings involved in the case.

41. <u>Reputation of attorneys</u>. The attorneys involved in the case have regularly appeared before the Courts of the Southern District. These attorneys have significant experience in bankruptcy law including reorganizations and liquidations and have regularly represented Chapter 7 debtors and Chapters 7 trustees in both large and small cases for many years. Therefore, HWA's attorneys are well qualified to represent the Trustee in the case.

42. <u>Skill required</u>. The preceding paragraphs reflect the skill required by the case. An elevated degree of skill has been required and employed by HWA in the representation of the Trustee for the reasons indicated.

43. <u>Preclusion of other employment</u>. HWA was precluded from engaging in other employment only to the extent of the 359.5 hours in the case during this Application Period.

44. <u>Undesirability of the Case</u>. A Chapter 7 case is only undesirable to the extent that HWA's compensation is always contingent upon the availability of sufficient assets with which to compensate HWA for its fees and expenses incurred.

45. <u>Results obtained</u>. HWA has efficiently attended to the matters as described above, with recoveries for the Estates as noted above, including the recovery of $23,250,000.00 for the benefit of the Estates.

46. <u>Time limitations imposed by the case</u>. HWA's attorneys have been available at all times to meet the Trustee's needs as they have arisen.

47. <u>Customary charges for the services rendered</u>. The hourly rates of HWA's attorneys are described at the end of **Exhibit "A"**. The rates charged are commensurate with the abilities of the persons involved and are on the low end of the rates customarily charged in this district for excellent legal counsel.

48. <u>Contingent nature of the fee</u>. Any fees to be paid to HWA in any Chapter 7 case are dependent on the availability of assets and/or recovery of voidable transfers. Representation of a bankruptcy Trustee is always of a contingent nature because of the uncertainty concerning the existence of sufficient assets for liquidation. HWA was not, however, hired on a percentage contingency agreement, but at the regular hourly rates of the professionals doing the work, subject to available funds.

49.     <u>Nature and length of professional relationship with client</u>. HWA has represented the Trustee in many Chapter 7 cases over the past several years and has a close working relationship with her. Since 2007, the Trustee is of counsel to HWA, but not a partner in HWA.

50.     <u>Awards in similar cases</u>. This Court is familiar with the size of fee awards in cases similar to this case. The Court may wish to consider that awards of similar or larger fees have been made in other cases over the past years in this district.

51.     <u>Economic administration of the Estates</u>. In its representation of the Trustee, HWA has sought to conserve the Estates and believes that the fees and expenses requested herein were reasonable and necessary in light of the circumstances at the time.

52.     HWA believes the compensation and reimbursement of expenses sought herein are reasonable and represent work that was necessary for proper administration of the Estates.

53.     HWA, in compliance with FED. R. BANKR. P. 2016, hereby states that: (i) no compensation previously received has been shared with any other entity; and (ii) no agreement or understanding exists between HWA and any other entity for the sharing of compensation received or to be received for services rendered in connection with the case. HWA did not receive any pre- or post-employment retainer in this matter and is holding no funds belonging to the Trustee or the Debtors.

54.     HWA has submitted this Application to the Trustee for review prior to filing it, and she has no objection to it.

## Conclusion

WHEREFORE, HWA prays that this Court, after notice and a hearing, enter an Order (i) authorizing the payment of compensation to HWA for its professional and paraprofessional fees of $222,927.50 and expenses of $809.16 which total $223,736.66 incurred during this Application

Period, such payment being a priority administrative expense under § 507(a)(2) of the Bankruptcy Code; and (ii) granting such other and further relief to which HWA may be entitled.

Dated: July 26, 2024.

            Respectfully submitted,

            */s/ Wayne Kitchens*
            Wayne Kitchens  TBN 11541110
            wkitchens@hwa.com
            Heather H. McIntyre TBN 24041076
            hmcintyre@hwa.com
            Abdiel Lopez-Castro TBN 24140125
            alopezcastro@hwa.com
            Hughes Watters Askanase, LLP
            1201 Louisiana, 28th Floor
            Houston, Texas 77002
            Telephone: (713) 590-4200
            Facsimile: (713) 590-4230
            **ATTORNEYS FOR JANET S. NORTHRUP, CHAPTER 7 TRUSTEE**

## CERTIFICATE OF SERVICE

  I hereby certify that a true and correct copy of the foregoing document was served on (i) all parties receiving ECF notice in the case, and (ii) all parties listed on the attached "Master Service List" by electronic transmission or first class, U.S. mail, postage prepaid as indicated on July 26, 2024.

            */s/ Wayne Kitchens*
            Wayne Kitchens