IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re:<br>MOUNTAIN EXPRESS OIL COMPANY, *et al.*,<br>Debtors.[1] | Chapter 7 (Converted)<br><br>Case No. 23-90147 (EVR)<br><br>(Jointly Administered) |
| TILTON SUNOCO OPERATIONS, INC., a/k/a 6801 TILTON RD INC., d/b/a SUNOCO – TILTON, d/b/a AK AUTO & TIRE REPAIR; TABERNACLE SUNOCO OPERATIONS, INC., d/b/a SUNOCO – 1528 ROUTE 206; MEDFORD SUNOCO OPERATIONS, INC., d/b/a SUNOCO – 500 STOKES ROAD MEDFORD; VOORHEES SUNOCO OPERATIONS, INC., d/b/a SUNOCO – 3 HADDONFIELD-BERLIN ROAD, VOORHEES; PITMAN SUNOCO OPERATIONS, INC., d/b/a SUNOCO – PITMAN, d/b/a RANGEL AUTO REPAIR; and TUCKERTON SUNOCO OPERATIONS, INC., a/k/a FAMS PETRO LLC, d/b/a SUNOCO – TUCKERTON,<br>　　　Plaintiffs,<br><br>v.<br><br><br>MOUNTAIN PORTFOLIO OWNER NJ, LLC,<br>　　Defendant. | <br><br><br><br><br><br><br><br><br>Adversary No. _____ |

## PLAINTIFFS' COMPLAINT FOR PRELIMINARY INJUNCTION AND DECLARATORY RELIEF PURSUANT TO 11 U.S.C. § 105 AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 7065

---

[1] A complete list of each of the Debtors in these Chapter 7 cases may be obtained on the Court's website at www.ecf.txsb.uscourts.gov. The location of Debtor Mountain Express Oil Company's principal place of business and the Debtors' service address in these Chapter 11 cases is 3650 Mansell Road, Suite 250, Alpharetta, GA 30022.

---

Plaintiffs Tilton Sunoco Operations, Inc., a/k/a 6801 Tilton Rd Inc., d/b/a Sunoco – Tilton, d/b/a AK Auto & Tire Repair, Tabernacle Sunoco Operations, Inc., d/b/a Sunoco – 1528 Route 206, Medford Sunoco Operations, Inc., d/b/a Sunoco – 500 Stokes Road Medford, Voorhees Sunoco Operations, Inc., d/b/a Sunoco – 3 Haddonfield-Berlin Road, Voorhees, Pitman Sunoco Operations, Inc., d/b/a Sunoco – Pitman, d/b/a Rangel Auto Repair, and Tuckerton Sunoco Operations, Inc., a/k/a Fams Petro LLC, d/b/a Sunoco – Tuckerton (altogether, "Plaintiffs") file this *Plaintiffs' Complaint for Preliminary Injunction and Declaratory Relief Pursuant to 11 U.S.C. § 105 and Federal Rule of Bankruptcy Procedure 7065* (the "Complaint") against non-debtor Defendant Mountain Portfolio Owner NJ, LLC, and respectfully state as follows:

## I.     JURISDICTION AND VENUE

1.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b), and this is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.     Venue for this adversary proceeding is proper pursuant to 28 U.S.C. §§ 1408 and 1409(a). This adversary proceeding is related to the above-styled bankruptcy cases that are pending in this district (hereinafter, the "Cases").

3.     Pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure and Rule 7008-1 of the Bankruptcy Local Rules for the Southern District of Texas, Plaintiffs consent to the entry of final orders or judgment by the Court in connection with this adversary proceeding if it is determined that, absent consent of the parties, the Court cannot enter final orders or judgments consistent with Article III of the United States Constitution.

4.     This adversary proceeding is commenced pursuant to Rules 7001 *et seq.* of the Federal Rules of Bankruptcy Procedure.

## II.   THE PARTIES

5.      Plaintiff Tilton Sunoco Operations, Inc., a/k/a 6801 Tilton Rd Inc., d/b/a Sunoco – Tilton, d/b/a AK Auto & Tire Repair ("Tilton Sunoco") is a New Jersey corporation with its principal place of business in New Jersey.

6.      Plaintiff Tabernacle Sunoco Operations, Inc., d/b/a Sunoco – 1528 Route 206 ("Tabernacle Sunoco") is a New Jersey corporation with its principal place of business in New Jersey.

7.      Plaintiff Medford Sunoco Operations, Inc., d/b/a Sunoco – 500 Stokes Road Medford ("Medford Sunoco") is a New Jersey corporation with its principal place of business in New Jersey.

8.      Plaintiff Voorhees Sunoco Operations, Inc., d/b/a Sunoco – 3 Haddonfield-Berlin Road, Voorhees ("Voorhees Sunoco") is a New Jersey corporation with its principal place of business in New Jersey.

9.      Plaintiff Pitman Sunoco Operations, Inc., d/b/a Sunoco – Pitman, d/b/a Rangel Auto Repair ("Pitman Sunoco") is a New Jersey corporation with its principal place of business in New Jersey.

10.     Plaintiff Tuckerton Sunoco Operations, Inc., a/k/a Fams Petro LLC, d/b/a Sunoco – Tuckerton ("Tuckerton Sunoco") is a New Jersey corporation with its principal place of business in New Jersey.

11.     Defendant Mountain Portfolio Owner NJ, LLC ("Mountain Portfolio") is a Delaware limited liability company. Mountain Portfolio can be served through its registered agent United Agent Group Inc., 1521 Concord Pike, Suite 201, Wilmington, DE 19803.

### III.    FACTUAL BACKGROUND

12.    Plaintiffs Tilton Sunoco, Tabernacle Sunoco, Medford Sunoco, Voorhees Sunoco, Pitman Sunoco, and Tuckerton Sunoco (together, "Plaintiffs") each operate one of six Sunoco fuel stations and convenience stores (the "Locations"). Plaintiffs Tilton Sunoco and Pitman Sunoco also operate auto repair shops associated with their two Locations.

13.    On or about April 4, 2022, the Plaintiffs each entered commercial leases with Mountain Express Oil Company ("MEX").

14.    Tilton Sunoco and MEX entered into the Commercial Lease (the "Tilton Lease"), a true and correct copy of which is attached as **Exhibit A**, covering the real property located at 6801 Tilton Rd., Egg Harbor, NJ. The Tilton Lease term began on April 4, 2022, continues for five years with an option to extend the term for two additional five-year terms, and then automatically renews each month on a month-to-month basis unless either party gives written notice of non-renewal to the other no less than 60 days prior to the end of the initial term or the then existing extended term. *See* Tilton Lease, at 1. Thus, the initial term of the Tilton Lease ends on April 3, 2027, and automatically renews each month unless a party provides 60 days' notice of non-renewal. *See id*. The initial term has not expired, and no notice of non-renewal has been submitted. The monthly rent under the Tilton Lease was $1,900 per month for the first year, with 3 percent annual increases for the term of the Tilton Lease. *See id*. at 1-2. The Tilton Lease also entitles Tilton Sunoco to ten (10) days' notice of and opportunity to cure any default. *See id.* at 5. To date, Tilton Sunoco has not received any such notice and opportunity to cure.

15.    Tabernacle Sunoco and MEX entered into the Commercial Lease (the "Tabernacle Lease"), a true and correct copy of which is attached as **Exhibit B**, covering the real property located at 1528 Route 206, Tabernacle, NJ. The Tabernacle Lease term began on April 4, 2022,

continues for five years with an option to extend the term for two additional five-year terms, and then automatically renews each month on a month-to-month basis unless either party gives written notice of non-renewal to the other no less than 60 days prior to the end of the initial term or the then existing extended term. *See* Tabernacle Lease, at 1. Thus, the initial term of the Tabernacle Lease ends on April 3, 2027, and automatically renews each month unless a party provides 60 days' notice of non-renewal. *See id*. The initial term has not expired, and no notice of non-renewal has been submitted. The monthly rent under the Tabernacle Lease was $1,950 per month for the first year, with 3 percent annual increases for the term of the Tabernacle Lease. *See id*. at 1-2. The Tabernacle Lease also entitles Tabernacle Sunoco to ten (10) days' notice of and opportunity to cure any default. *See* Tabernacle Lease, at 5. To date, Tabernacle Sunoco has not received any such notice and opportunity to cure.

16.     Medford Sunoco and MEX entered into the Commercial Lease (the "Medford Lease"), a true and correct copy of which is attached as **Exhibit C**, covering the real property located at 500 Stokes Road, Medford, NJ. The Medford Lease term began on April 4, 2022, continues for five years with an option to extend the term for two additional five-year terms, and then automatically renews each month on a month-to-month basis unless either party gives written notice of non-renewal to the other no less than 60 days prior to the end of the initial term or the then existing extended term. *See* Medford Lease, at 1. Thus, the initial term of the Medford Lease ends on April 3, 2027, and automatically renews each month unless a party provides 60 days' notice of non-renewal. *See id*. The initial term has not expired, and no notice of non-renewal has been submitted. The monthly rent under the Medford Lease was $1,750 per month for the first year, with 3 percent annual increases for the term of the Medford Lease. *See id*. at 1-2. The Medford Lease also entitles Medford Sunoco to ten (10) days' notice of and opportunity to cure

any default. *See* Medford Lease, at 5. To date, Medford Sunoco has not received any such notice and opportunity to cure.

17.     Voorhees Sunoco and MEX entered into the Commercial Lease (the "Voorhees Lease"), a true and correct copy of which is attached as **Exhibit D**, covering the real property located at 3 Haddonfield Berlin Rd., Voorhees, NJ. The Voorhees Lease term began on April 4, 2022, continues for five years with an option to extend the term for two additional five-year terms, and then automatically renews each month on a month-to-month basis unless either party gives written notice of non-renewal to the other no less than 60 days prior to the end of the initial term or the then existing extended term. *See* Voorhees Lease, at 1. Thus, the initial term of the Voorhees Lease ends on April 3, 2027, and automatically renews each month unless a party provides 60 days' notice of non-renewal. *See id.* The initial term has not expired, and no notice of non-renewal has been submitted. The monthly rent under the Voorhees Lease was $1,850 per month for the first year, with 3 percent annual increases for the term of the Voorhees Lease. *See id.* at 1-2. The Voorhees Lease also entitles Voorhees Sunoco to ten (10) days' notice of and opportunity to cure any default. *See* Voorhees Lease, at 5. To date, Voorhees Sunoco has not received any such notice and opportunity to cure.

18.     Pitman Sunoco and MEX entered into the Commercial Lease (the "Pitman Lease"), a true and correct copy of which is attached as **Exhibit E**, covering the real property located at 101 N. Woodbury Road, Pitman, NJ. The Pitman Lease term began on April 4, 2022, continues for five years with an option to extend the term for two additional five-year terms, and then automatically renews each month on a month-to-month basis unless either party gives written notice of non-renewal to the other no less than 60 days prior to the end of the initial term or the then existing extended term. *See* Pitman Lease, at 1. Thus, the initial term of the Pitman Lease

ends on April 3, 2027, and automatically renews each month unless a party provides 60 days' notice of non-renewal. *See id.* The initial term has not expired, and no notice of non-renewal has been submitted. The monthly rent under the Pitman Lease was $1,800 per month for the first year, with 3 percent annual increases for the term of the Pitman Lease. *See id.* at 1-2. The Pitman Lease also entitles Pitman Sunoco to ten (10) days' notice of and opportunity to cure any default. *See* Pitman Lease, at 5. To date, Pitman Sunoco has not received any such notice and opportunity to cure.

19.     Tuckerton Sunoco and MEX entered into the Commercial Lease (the "Tuckerton Lease"), a true and correct copy of which is attached as **Exhibit F**, covering the real property located at 1520 Route 539, Tuckerton, NJ. The Tuckerton Lease term began on April 4, 2022, continues for five years with an option to extend the term for two additional five-year terms, and then automatically renews each month on a month-to-month basis unless either party gives written notice of non-renewal to the other no less than 60 days prior to the end of the initial term or the then existing extended term. *See* Tuckerton Lease, at 1. Thus, the initial term of the Tuckerton Lease ends on April 3, 2027, and automatically renews each month unless a party provides 60 days' notice of non-renewal. *See id.* The initial term has not expired, and no notice of non-renewal has been submitted. The monthly rent under the Tuckerton Lease was $1,850 per month for the first year, with 3 percent annual increases for the term of the Tuckerton Lease. *See id.* at 1-2. The Tuckerton Lease also entitles Tuckerton Sunoco to ten (10) days' notice of and opportunity to cure any default. *See* Tuckerton Lease, at 5. To date, Tuckerton Sunoco has not received any such notice and opportunity to cure.

20.     Together, Plaintiffs employ roughly 32 full-time and 7 part-time employees for the Locations. Each of the Locations is stocked with inventory owned by Plaintiffs, with an estimated

value of more than $1.5 million.

21.     The six Locations are owned by Mountain Portfolio, which, upon information and belief, had master leases with MEX and/or one or more debtor-entities (collectively, the "Primary Lease"). To be clear, Plaintiffs are sub-tenants to the Locations, pursuant to the Tilton Lease, Tabernacle Lease, Medford Lease, Voorhees Lease, Pitman Lease, and Tuckerton Lease (altogether, the "Leases").

22.     On March 18, 2023 (the "Petition Date"), MEX and certain related entities (the "Debtors") filed voluntary petitions under chapter 11 of the Bankruptcy Code.

23.     During the Cases, Plaintiffs remained current on their obligations under their respective Leases. In fact, Plaintiffs are current on their rent and obligations under the Leases through and including August 2023.

24.     On August 24, 2023 (the "Conversion Date"), the Cases were converted to Chapter 7. Pursuant to the *Order (I) Converting the Chapter 11 Cases, (II) Rejecting Leases, (III) Terminating Certain Agreements, and (IV) Granting Related Relief* [Doc. No. 1397, in the Main Bankruptcy Case] (the "Conversion Order"), the Primary Lease with the Debtors for the Locations was deemed rejected and terminated, the Leases were deemed rejected.[2]

25.     The Court did *not* order that the Leases be deemed terminated as of the Conversion Date to preserve the rights of subtenant operators under Section 365(h) of the Bankruptcy Code.

26.     Plaintiffs continue to operate the Locations, which remain stocked with Plaintiffs' own inventory. Since the Conversion Date, Plaintiffs have set aside the monthly rent due on the

---

[2] *See* Conversion Order, at ¶ 2 ("All unexpired leases of non-residential real property of the Debtors' estates to which the Debtor is a lessee **are deemed rejected and terminated** as of the entry of this Order. All unexpired leases of non-residential real property of the Debtors' estates to which the Debtor is a lessor **are deemed rejected** as of the entry of this Order.") (emphasis added).

Locations. Plaintiffs, who had previously remitted rent to MEX pursuant to the Leases, did not know where to send the monthly rent that came due September 2023 and later. To date, Plaintiffs have set aside roughly $144,000 for rent for the six Locations, which accrued from September 2023 through October 2024.

27.     On February 5, 2024, Mountain Portfolio sent a Notice to Vacate and Demand for Possession for each of the Locations. There was no opportunity to cure the default. In fact, Plaintiffs have since offered to remit rent to Mountain Portfolio, which in turn refused to accept the rent.

28.     On May 28, 2024, Mountain Portfolio filed six eviction lawsuits in various counties in New Jersey where the Locations sit. The eviction lawsuits were removed to federal court on federal question grounds and then remanded. Several of the eviction lawsuits are now set for trial in New Jersey state courts, the first of which is set on October 10, 2024.

29.     Eviction or locking out of Plaintiffs from the Locations, without sufficient notice, would irreparably harm Plaintiffs' ability to operate their businesses (including their ability to continue to employ the individuals that work at the Locations), their reputation, business relationships, and good-will. Moreover, the premature eviction of locking out of Plaintiffs will interfere with their existing contracts and obligations, resulting in further and unnecessary damages.

### COUNT I – DECLARATORY JUDGMENT

30.     The factual allegations in paragraphs 14 through 31 are incorporated herein for all purposes as if expressly restated.

31.     Section 365(h)(1)(A) of the Bankruptcy Code provides in pertinent part:

> If the trustee rejects an unexpired lease of real property under which the debtor is the lessor and …(ii) if the term of such lease has commenced, the lessee may retain

its rights under such lease (including rights such as those relating to the amount and timing of payment of rent and other amounts payable by the lessee and any right of use, possession, quiet enjoyment, subletting, assignment, or hypothecation) that are in or appurtenant to the real property for the balance of the term of such lease and for any renewal or extension of such rights to the extent that such rights are enforceable under applicable nonbankruptcy law.

11 U.S.C. § 365(h)(1)(A)(ii).

32.     As described above, the Leases were rejected, but not terminated, pursuant to the Conversion Order. The term of the Leases had commenced as of the Petition Date; therefore, Plaintiffs, as lessees, are entitled to retain their rights under the Leases, including the right of use and possession of the Locations, for the balance of the term of the Leases and any renewals to the extent such rights are enforceable under applicable nonbankruptcy law.

33.     Plaintiffs, therefore, seeks a declaration that: (i) the terms of the Leases continue in full force and effect for the duration of the Leases; and (ii) Plaintiffs may retain possession and use of the Locations until the end of the term of the Leases.

34.     Declaratory relief is necessary to determine Plaintiffs' rights under the rejected Leases, to ensure that Plaintiffs' possession and use of the Locations remains undisturbed, to preserve Plaintiffs' business operations, reputation, relationships, good-will, and existing contracts. Additionally, declaratory relief is necessary to avoid the immediate termination of roughly 39 employees working at the Locations, and to protect Plaintiffs from the wrongful seizure of its inventory valued at approximately $1.5 million.

## COUNT II – PRELIMINARY INJUNCTION

35.     All of the preceding paragraphs are incorporated herein for all purposes as if expressly restated.

36.     Until the Court makes a final determination of Plaintiffs' rights under 11 U.S.C. § 365(h), a preliminary injunction is necessary to preserve the status quo and prevent further and

unnecessary harm to Plaintiffs.

37.     Section 105(a) of the Bankruptcy Code provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).

38.     While Section 105 is interpreted liberally, the statute's powers must be exercised in a manner that is consistent with the Bankruptcy Code. *See In re Zale Corp.*, 62 F.3d 746, 760 (5th Cir. 1995). A temporary injunction of third-party actions may be proper under unusual circumstances. *Id.* at 761. A bankruptcy court has broader authority under Section 105 of the Bankruptcy Code to grant a stay than it does under the automatic stay provisions of Section 362. *See In re Neuman*, 71 B.R. 567, 571 (S.D.N.Y. 1987) ("The fact that the automatic stay may not apply does not mean that the Bankruptcy Court is without power to issue an injunction.").

39.     "The four prerequisites to issuance of a preliminary injunction are: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) that the threatened injury to the movant outweighs the threatened harm an injunction may cause the party opposing the motion; and (4) that the granting of the injunction will not disserve the public interest." *SAS Overseas Consultants v. Benoit*, No. CIV.A. 99-1663, 2000 WL 140611, at 4 (E.D. La. Feb. 7, 2000) (citing *In re Zale Corp.,* 62 F.3d at 764).

40.     The first element is satisfied because Plaintiffs have a substantial likelihood of success on the merits based on the plain reading of Section 365(h) and the Leases, which give Plaintiffs the ability to retain possession of the Locations and their rights under the Leases under the current circumstances.

41.     The second element is also satisfied because Plaintiffs will suffer irreparable harm if the Court does not grant a preliminary injunction. Without the preliminary injunction, Plaintiffs may be evicted or locked out of the Locations with very little notice. If that were to occur, Plaintiffs' business, reputation, relationships, good-will, and existing contracts would be jeopardized. Moreover, Plaintiffs' roughly 39 employees would need to be terminated with little or no notice, and Plaintiffs could potentially have $1.5 million in inventory improperly seized.

42.     Additionally, the third element is satisfied because there is little or no harm to Mountain Portfolio in imposing a preliminary injunction. Mountain Portfolio's rights will be preserved, and Plaintiffs will continue to maintain the Locations and pay rent while the Court determines Plaintiffs' rights under the Leases.

43.     Finally, the fourth element is satisfied because the injunction will serve the public interest, which would benefit from this Court's interpretation of its own order, from the orderly transfer of possession of gas stations and convenience stores, and from the uninterrupted employment of Plaintiffs' employees.

44.     Based on the forgoing, Plaintiffs ask that the Court enter a preliminary injunction enjoining Mountain Portfolio from evicting or locking out Plaintiffs from the Locations until the Court determines Plaintiffs' rights under the Leases.

## **<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiffs Tilton Sunoco Operations, Inc., a/k/a 6801 Tilton Rd Inc., d/b/a Sunoco – Tilton, d/b/a AK Auto & Tire Repair, Tabernacle Sunoco Operations, Inc., d/b/a Sunoco – 1528 Route 206, Medford Sunoco Operations, Inc., d/b/a Sunoco – 500 Stokes Road Medford, Voorhees Sunoco Operations, Inc., d/b/a Sunoco – 3 Haddonfield-Berlin Road, Voorhees, Pitman Sunoco Operations, Inc., d/b/a Sunoco – Pitman, d/b/a Rangel Auto Repair, and Tuckerton Sunoco

Operations, Inc., a/k/a Fams Petro LLC, d/b/a Sunoco – Tuckerton, respectfully request that this Court: (i) following notice and hearing, enter a preliminary injunction, enjoining Defendant Mountain Portfolio Owner NJ, LLC from evicting or locking out Plaintiffs from the Locations, as long as Plaintiffs continue to pay rent according to the Leases; and (ii) enter a declaratory judgment that (a) the terms of the Leases remain enforceable and (b) Plaintiffs may retain possession of the Locations until the expiration of the term of the Leases.

Dated: October 8, 2024

Respectfully submitted:

KEAN MILLER LLP

By:     */s/ Lloyd A Lim*
      Lloyd A. Lim
      Texas State Bar No. 24056871
      Lloyd.Lim@keanmiller.com
      Rachel Thompson Kubanda
      Texas State Bar No. 24093258
      Rachel.Kubanda@keanmiller.com
      Michelle V. Friery
      Texas State Bar No. 24040934
      Michelle.Friery@keanmiller.com
      KEAN MILLER LLP
      711 Louisiana Street, Suite 1800
      Houston, Texas 77002
      Telephone: (713) 844-3000
      Telecopier: (713) 844-3030

      ***Attorneys for Plaintiffs***