IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 23-90147 |
| MOUNTAIN EXPRESS OIL COMPANY, | § | JOINTLY ADMINISTERED |
| *et al.,* | § | |
| Debtors. | § | CHAPTER 7 |

**FOURTH INTERIM APPLICATION FOR COMPENSATION AND FOR REIMBURSEMENT OF EXPENSES BY HUGHES WATTERS ASKANASE, LLP AS ATTORNEYS FOR TRUSTEE FOR JUNE 1, 2024 THROUGH AUGUST 31, 2024**

THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN TWENTY-ONE (21) DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

TO THE HONORABLE EDUARDO V. RODRIGUEZ, CHIEF UNITED STATES BANKRUPTCY JUDGE:

# FEE APPLICATION COVER SHEET

| | | |
|---|---|---|
| Name of Applicant: | | Hughes Watters Askanase, LLP |
| Applicant's professional role in case: | | General Counsel for the Chapter 7 Trustee |
| Indicate whether this is an interim or final application: | | Interim |
| Date Order of Appointment Signed: | | 10/30/23 [ECF No. 1605] |
| | Beginning of Period | Ending of Period |
| Total period covered in application: | 6/1/2024 | 8/31/2024 |
| Time period covered by any prior applications:[1] | 8/25/2023 | 5/31/2024 |
| Total amounts awarded in all prior applications: | | $816,661.08 |
| Amount of retainer received in the case: | | $0.00 |
| Total fees applied for in this application and in all prior applications (including any retainer amounts applied or to be applied): | | $931,115.00 |
| Total fees applied for in this application (including any retainer amounts to be applied): | | $117,215.00 |
| Total professional fees requested in this application: | | $115,690.00 |
| Total professional hours covered by this application: | | 192.5 |
| Average hourly rate for professionals: | | $600.99 |
| Total paraprofessional fees requested in this application: | | $1,525.00 |
| Total paraprofessional hours covered by this application: | | 12.2 |
| Average hourly rate for paraprofessionals: | | $125.00 |
| Reimbursable expenses sought in this application: | | $401.85 |
| Application Cost (estimated; not included in above fees): | | $3,000.00 |
| Total payments paid to Secured Claimants as of August 31, 2024: | | $21,956,991.75[2] |
| Total payments paid to Administrative Claimants as of August 31, 2024: | | $6,656,666.19[2] |
| Estimated Total for distribution to Priority Unsecured Creditors: | | Undetermined[3] |
| Expected % dividend to be paid to Priority Unsecured Creditors: | | Undetermined[3] |
| Estimated total for distribution to General Unsecured Creditors: | | Undetermined[3] |
| Expected % dividend to be paid to General Unsecured Creditors: | | Undetermined[3] |
| Expected amount to be paid to all pre-petition creditors: | | Undetermined[3] |
| Receipts to date (in Chapter 7 case) as of August 31, 2024: | | $44,489,660.42 |
| Disbursements to date (in Chapter 7 case) as of August 31, 2024: | | $35,510,806.70 |
| Current balance in the Trustee's accounts as of August 31, 2024: | | $11,999,062.60 |

---

[1] HWA submitted its First and Final Fee Application as counsel for the Chapter 11 Trustee, which the Court approved (Docket Nos. 1493 and 1688). The fees and expenses in that application are not reflected in this summary, as this is HWA's interim application as counsel for the Chapter 7 trustee.
[2] See Monthly Operating Reports attached hereto as **Exhibit "B"**.
[3] Distributions are unknown at this time. The Trustee is evaluating potential chapter 5 causes of action and continuing her investigation for possible recovery of assets. Based on possible future recoveries, estimations are not available at this time.

2

3108953

COMES NOW, Hughes Watters Askanase, LLP ("**Applicant**" or "**HWA**"), and respectfully submits its *Fourth Interim Application for Compensation and for Reimbursement of Expenses by Hughes Watters Askanase, LLP as Attorneys for Trustee for June 1, 2024 Through August 31, 2024* (the "**Application**"). The total amount for which the Court's approval is sought is compensation of $117,215.00 in professional and paraprofessional fees and $401.85 in reimbursement of expenses for the period covered by this Application, totaling $117,616.85. In support of the Application, Applicant respectfully shows as follows:

## Background

**A.     The Debtors' Bankruptcy Cases and the Appointment of the Chapter 7 Trustee.**

1.     On or about March 18, 2023 (the "**Petition Date**"), Mountain Express Oil Company and its affiliated debtors (collectively, the "**Debtors**") each filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

2.     On March 20, 2023, the Court ordered joint administration of the Debtors cases. [Docket No. 33]. From the Petition Date until August 17, 2023, the Debtors operated their businesses as debtors-in-possession under Chapter 11 of the Bankruptcy Code. On that date, the Court ordered the appointment of Janet S. Northrup as the Chapter 11 Trustee (the "**Chapter 11 Trustee**"). [Docket No. 1284].

3.     On August 24, 2023, after a status conference requested by the Chapter 11 Trustee, the cases were converted to Chapter 7. Thereafter, Janet S. Northrup was appointed as the Chapter 7 Trustee (the "**Trustee**") in the jointly administered cases and currently serves as Trustee of the jointly administered estates (the "**Estates**"). [Docket No. 1398].

**B.     The Employment of HWA as Attorneys for the Trustee.**

3108953

4. On September 1, 2023, the Trustee filed her *Trustee's Application to Employ Counsel.* [Docket No. 1443]. On October 30, 2023, the Court entered its *Order Authorizing Employment of Counsel,* which approved the employment of HWA as general bankruptcy counsel to the Trustee effective as of August 24, 2023 (the "**HWA Employment Order**"). [Docket No. 1605].

5. HWA has performed legal services as general counsel to the Trustee pursuant to the HWA Employment Order and the Trustee's requests. All of the services rendered by HWA were performed for and on behalf of the Trustee and not on behalf of any committee, creditor, or other person.

6. HWA is a law firm composed of attorneys duly licensed to practice law before the courts of the State of Texas, the United States District Court for the Southern District of Texas, and other relevant courts. HWA's offices are located at TotalEnergies Tower, 1201 Louisiana Street, 28th Floor, Houston, Texas 77002.

7. HWA has made the disclosures required by law and has no agreement or understanding with any other person with respect to sharing the compensation to be allowed HWA for services rendered in the case.

8. If HWA is not allowed compensation as requested herein, such denial would have the effect of HWA having provided, without compensation, valuable services, expertise, and experience to the Trustee and would undermine the intent of § 330 of the Bankruptcy Code. *See Matter of Baldwin United Corp.,* 36 B.R. 401 (Bankr. S.D. Ohio 1984); *In re Wilson Foods Corp.,* 36 B.R. 317 (Bankr. W.D. Okla. 1984).

**C.    The Fees and Expenses Requested.**

9.     On September 11, 2023, the Court entered the *Second Stipulation and Agreed Order (A) Authorizing the Use of Cash Collateral, (B) Providing Adequate Protection, and (C) Modifying the Automatic Stay* (the "**Cash Collateral Order**") which *inter alia* established a "carve-out" from the secured parties' cash collateral for payment of the professionals retained by the Trustee in the Case. [Docket No. 1464]. See Cash Collateral Order ¶2.

10.    On October 30, 2023, the Court entered its *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Trustee* (the "**Interim Fee Order**"). [Docket No. 1607].

11.    On July 31, 2024, pursuant to the Interim Fee Order, HWA filed its *Tenth Monthly Fee Statement of Hughes Watters Askanase, LLP for Allowance of Compensation for Services Rendered as Counsel to Janet S. Northrup, Chapter 7 Trustee for the Period of June 1, 2024 Through June 30, 2024* (the "**Tenth Monthly Fee Statement**"). [Docket No. 2318]. No objection was made to the Tenth Monthly Fee Statement, and, therefore, the Trustee has distributed fees in the amount of $46,480.00 and expenses in the amount of $109.14 totaling $46,589.14 to HWA pursuant to the Interim Fee Order.

12.    On May 23, 2024, pursuant to the Interim Fee Order, HWA filed its *Eleventh Monthly Fee Statement of Hughes Watters Askanase, LLP for Allowance of Compensation for Services Rendered as Counsel to Janet S. Northrup, Chapter 7 Trustee for the Period July 1, 2024 Through July 31, 2024* (the "**Eleventh Monthly Fee Statement**"). [Docket No. 2358]. No objection was made to the Eleventh Monthly Fee Statement, and, therefore, the Trustee has distributed fees in the amount of $27,996.00 and expenses in the amount of $135.47 totaling $28,131.47 to HWA pursuant to the Interim Fee Order.

13. On September 11, 2024, pursuant to the Interim Fee Order, HWA filed its *Twelfth Monthly Fee Statement of Hughes Watters Askanase, LLP for Allowance of Compensation for Services Rendered as Counsel to Janet S. Northrup, Chapter 7 Trustee for the Period August 1, 2024 Through August 31, 2024* (the "**Twelfth Monthly Fee Statement**"). [Docket No. 2369]. No objection was made to the Twelfth Monthly Fee Statement, and, therefore, the Trustee has distributed fees in the amount of $19,296.00 and expenses in the amount of $157.24 totaling $19,453.24 to HWA pursuant to the Interim Fee Order.

14. The Tenth Monthly Fee Statement, Eleventh Monthly Fee Statement, and Twelfth Monthly Fee Statement, which comprise this Application, can be summarized as follows:

| Task | June 2024 | July 2024 | August 2024 | Totals |
|---|---|---|---|---|
| Task 1 – General Administration | $3,680.00 | $705.00 | $215.00 | $4,600.00 |
| Task 2 – Asset Analysis and Recovery | $7,975.00 | $5,482.50 | $3,570.00 | $17,027.50 |
| Task 3 – Asset Sales | $22,797.50 | $5,340.00 | $4,512.50 | $32,650.00 |
| Task 4 – Chapter 5 Avoidance Actions | $1,740.00 | $362.50 | $217.50 | $2,320.00 |
| Task 5 – Tax Matters | $4,477.50 | $2,357.50 | $2,320.00 | $9,155.00 |
| Task 7 – Claims Administration, Analysis and Objections | $4,030.00 | $3,560.00 | $2,182.50 | $9,772.50 |
| Task 8 – Employment Applications | $392.50 | $145.00 | $290.00 | $827.50 |
| Task 12 – Relief From Stay Proceedings | $0.00 | $865.00 | $570.00 | $1435.00 |
| Task 13 – Environmental and Regulatory Matters | $937.50 | $0.00 | $0.00 | $937.50 |
| Task 15 – Insurance Matters | $0.00 | $0.00 | $0.00 | $0.00 |
| Task 16 – Asset Abandonment | $0.00 | $0.00 | $72.50 | $72.50 |
| Task 18 – Use of Cash Collateral | $4,250.00 | $507.50 | $2,827.50 | $7,585.00 |
| Task 23 – Monthly Operating Reports | $290.00 | $1,232.50 | $215.00 | $1,737.50 |
| Task 30 - Litigation | $4,865.00 | $4,312.50 | $3,217.50 | $12,395.00 |
| Task 32 – Fee Applications | $2,665.00 | $10,125.00 | $3,910.00 | $16,700.00 |
| **Totals** | **$58,100.00** | **$34,995.00** | **$24,120.00** | **$117,215.00** |

15. Pursuant to the Interim Fee Order, this Application seeks payment for HWA's professional services rendered and out-of-pocket expenses incurred from June 1, 2024 through

6

3108953

August 31, 2024 (the "**Application Period**"). HWA performed a total of 204.7 hours of professional and paraprofessional services on behalf of the Trustee during the Application Period, for which compensation is now sought. Attached as **Exhibit "A"** are the detailed statements of the services performed by HWA for the Estates.

16. As shown in detail in **Exhibit "A"**, after credit for amounts previously approved by the Court [Docket Nos. 1493 and 1688], HWA's professional fees of $117,215.00 and expenses of $401.85 for the Application Period total $117,616.85. Included in **Exhibit "A"** are statements reflecting the hours spent on the case and the hourly rate of each participating attorney, law clerk, and legal assistant. **Exhibit "A"** also includes the details of expenses advanced during the representation. All of HWA's services rendered were for and on behalf of the Trustee. No agreement or understanding exists between HWA and any other person with respect to sharing any compensation awarded to HWA in connection with its representation of the Trustee in the case.

## Summary of Major Tasks

17. General Background. After months of the Debtors attempting to sell their assets, First Horizon Bank as Administrative Agent filed an emergency motion to appoint a Chapter 11 Trustee, or alternatively, to convert the Debtors' cases to Chapter 7. [Docket No. 1280]. The Chapter 11 Trustee was appointed in this case on August 17, 2023. Immediately upon her appointment, the Chapter 11 Trustee was faced with a liquidity crisis that threatened the Debtors' continued operations during the following days. Prior to appointment of the Chapter 11 Trustee, Judge Marvin Isgur served as mediator in the hopes of resolving disputes among the Debtors' various constituents and formulating a path forward designed to keep the Debtors alive as going concerns. The Chapter 11 Trustee and her professionals continued to work with Judge Isgur as mediator and the various case constituents in these efforts. However, after days of efforts to continue as going concerns, the

3108953

Chapter 11 Trustee requested a status conference. On August 24, 2023, the Chapter 11 Trustee reported to the Court, and the cases were converted to Chapter 7 proceedings. [Docket No. 1397].

18. The Trustee is operating the Chapter 7 Estates on a limited basis pursuant to the Court's *Order Granting Trustee's Emergency Motion for Authority to Operate Pursuant to 11 U.S.C. § 721 as of August 24,* 2023. [Docket No. 1421].

19. The Trustee is using cash collateral pursuant to the Cash Collateral Order. [Docket No. 1464].

20. The legal services performed by Applicant can be summarized by project as follows:

21. **Task 1. General Administration (6.7 hours; $4,600.00).** General case administration includes matters not allocable to particular tasks, but which nonetheless must be performed to ensure the case proceeds properly. Time in this category includes overall case management and conferring with the Trustee to keep the Trustee informed as to case status. During the Application Period, Applicant obtained and reviewed Debtors' records, conferred as necessary with special counsel to confirm proper allocation of work and division of labor, and ensured that all Estate professionals were aware of developments. Applicant also conferred with counsel for the secured lender on various outstanding matters, reviewed records for required reporting and accounting, responded to general inquiries from parties-in-interest and potential buyers, and reviewed general case filings and amendments. Discussions with the Trustee, other Estate professionals, and constituents commonly overlapped a wide variety of issues, and are therefore not capable of being segregated into one of the more specific Task categories below. Applicant further prepared and filed a Notice to correct the primary Debtor's Employer Identification Number with the Court. [Docket No. 2333].

3108953

22. **Task 2. Asset Analysis and Recovery (36.3 hours; $17,027.50)**. Asset analysis and recovery includes fees incurred for the identification of potential Estate assets and the evaluation of whether further action should be taken in connection therewith. As would be expected with a case of this magnitude, in light of the number of Debtors and number of locations operated by those Debtors, the inquiries from parties-in-interest and potential buyers, and the information to be reviewed regarding potential assets, are voluminous and often complex. Applicant attended as expeditiously as possible to these matters, while coordinating with other Estate professionals to a proper division of labor with respect to the issues raised.

23. Among the matters requiring attention during the Application Period were the continued analysis of leases and lease payments potentially due to the Debtor and/or other parties-in-interest, further investigation into open issues regarding underground tanks and preparation of proper documents for transfer of ownership of same, further analysis, recovery, preservation, and access of Debtor's records, including the preparation and execution of a subpoena, continued review and analysis of records, accounting, fuel receipts, and miscellaneous claims, preparation and demand for turnover of professional files for the Estates, and continued discussions with the Trustee, Estate professionals, and other parties-in-interest as necessary to effectuate analysis and/or recovery of Estate assets.

24. Applicant also continued to research and assess potential unclaimed property, received and reviewed correspondence regarding same, and attended to further inquiry and possible recovery of same. For a number of potential real estate assets, Applicant continued to conduct various public record searches throughout the United States, identified and reviewed relevant title reports and additional information regarding possible ownership of undisclosed Debtor property,

conferred with the Trustee and Estate professionals on same, and responded to various inquiries from potential buyers.

25. **Task 3. Asset Sales (53.4 hours; $32,650.00).** During the Application Period, Applicant continued to review and analyze purchase offers, counteroffers, sales contracts, title reports, deeds, payoff statements, valuations of personal and real property assets, bills of sales, HUDs, and auction reports, continued to confer and coordinate with the Trustee, Estate professionals, and parties-in-interest as necessary, reviewed and assessed possible liens and other issues to be considered for auction, sale, transfer, and/or closing of Estate property, prepared reports for the Trustee, and continued to discuss, negotiate, and prepare real estate terms of sales, deeds, purchase and sale agreements, and other closing and real estate transactional documents. Applicant also continued to investigate the real property records of various counties where the Debtors operated to identify possible undisclosed real property, prepared and filed a de minimis sale report [Docket Nos. 2294] and a motion to pay administrative expenses [Docket No. 2277], and received and responded to inquiries from interested buyers of Estate property.

26. **Task 4. Chapter 5 Avoidance Actions (3.2 hours; $2,320.00).** During the Application Period, Applicant conferred with Estate professionals on the investigation and possible prosecution of prospective preference claims, analyzed Debtors' bank accounts for possible claims from post-conversion activity, and responded to parties-in-interest on various inquiries regarding possible claims and transfers of Estate assets.

27. **Task 5. Tax Matters (13.1 hours; $9,155.00).** During the Application Period, Applicant reviewed incoming correspondence addressed to the Debtor for property and tax issues, continued further demand to third-parties on access and turnover of accounting records, and conferred with Estate professionals and parties-in-interest as necessary regarding the completion and

10

filing of taxes, possible tax liabilities and compliance issues, and the continued review of accounting records.

28. **Task 7. Claims Administration, Analysis and Objections (18.0 hours; $9,772.50).** During the Application Period, Applicant reviewed proof of claims and applications for administrative claims and expenses filed as necessary for potential issues (including issues relating to whether claims were based on pre-conversion or post-conversion goods or services, for claims incorrectly filed, and for evidence of any additional real estate) and conferred with the Trustee on same, reviewed multiple withdrawals of claims, responded to inquiries from claimants as necessary, prepared and filed a limited objection to a creditor's request for immediate payment of its administrative claim and prepared for hearing on same, negotiated, reviewed and prepared agreed orders with certain claimants, and prepared and filed a motion for chapter 11 administrative claim procedures and deadlines and prepared and filed a notice of same. [Docket Nos. 2309, 2325, 2329, and 2364].

29. **Task 8. Employment Applications (1.1 hours; $827.50).** During the Application Period, Applicant reviewed proposed applications and entered orders for employment of certain Estate professionals related to litigation. [Docket Nos. 2278, 2321, and 2353].

30. **Task 12. Relief From Stay Proceedings (2.6 hours; $1,435.00).** During the Application Period, Applicant conferred with the Trustee and a party-in-interest regarding a motion for relief from the automatic stay, possible objection, entry into a stipulation and agreed order on same, and prepared and filed a motion on same. [Docket No. 2347 and 2350].

31. **Task 13. Environmental and Regulatory Matters (1.2 hours; $937.50).** During the Application Period, Applicant continued to assess possible environmental concerns relating to underground storage tanks at certain of the Estate's real property locations, conferred with the United

States Trustee, Estate professionals, and parties-in-interest on same, and negotiated a stipulation and agreed order on same with the Texas Commission on Environmental Quality.

32.     **Task 15. Insurance Matters (0.2 hours; $0.00).** During the Application Period, Applicant attended to the retrieval, review, and analyzation of insurance policies.

33.     **Task 16. Asset Abandonment (0.1 hours; $72.50).** During the Application Period, Applicant reviewed a notice of abandonment.

34.     **Task 18. Use of Cash Collateral (10.7 hours; $7,585.00).** In this case, many of the assets of the Estates appear to constitute cash collateral securing claims. During the Application Period, Applicant continued to review operational information, prepared reports, and corresponded extensively with secured creditors and parties-in-interest as to the use of cash collateral, including the need for cash collateral to address expenses. As would be anticipated, given the number of Debtors and the number of operation locations, these communications were frequent. Applicant also worked with the secured lender for the preparation of budgets for the ongoing use of cash collateral, negotiated use of cash collateral, prepared a motion and notice for the interim use and distribution of cash collateral, prepared and attended hearings on same, and conferred with the Trustee and Estate professionals as necessary on all related matters. [Docket Nos. 2248 and 2249].

35.     **Task 23. Monthly Operating Reports (2.5 hours; $1,737.50).** During the Application Period, Applicant conferred with Trustee and Estate professionals regarding the information to be contained in monthly operating reports, reviewed and revised multiple spreadsheets for analysis on reports, and responded to relevant inquiries and requests on same. [Docket Nos. 2279, 2311, and 2343].

36.     **Task 30. Litigation (16.3 hours; $12,395.00).** During the Application Period, Applicant continued the investigation, prosecution, and resolution of pending litigation claims and

possible additional litigation claims. Given the number of Debtors and the wide-ranging pre-petition operations, extensive litigation exists. Applicant also continued to review and analyze settlement proposals for resolution of the avoidance litigation (Adversary No. 23-03231) (the "**WI MI Adversary**"), continued negotiations on settlement/compromise of same, and prepared a 9019 motion for resolution of the WI MI Adversary. [Docket No. 2290].

37. **Task 32. Fee Applications (39.3 hours; $16,700.00).** During the Application Period, Applicant prepared and filed monthly fee statements for itself as general counsel for the Trustee, which included reviewing and editing time entries in multiple HWA invoices to ensure compliance with the Court's rules and procedures, and prepared and filed monthly notices of requests for interim compensation for the Trustee. [Docket Nos. 2282, 2286, 2312, 2318, 2357, and 2358]. Applicant also prepared and filed interim fee applications for the Trustee and itself as general counsel for the Trustee with calculations required by the Court, which were approved. [Docket Nos. 2308, 2314, 2331, and 2345]. Applicant also reviewed and revised interim fee statements and interim applications for compensation of Estate professionals.

## The *First Colonial* Factors

38. Except as noted above, HWA has not received any payments for fees or expenses during the Application Period. The Estates currently hold cash collateral sufficient to pay the fees and expenses requested herein pursuant to the Cash Collateral Order.

39. The Fifth Circuit in *In re First Colonial Corp. of America*, 544 F.2d 1291 (5th Cir.), *cert. denied*, 97 S. Ct. 1696 (1977), described certain factors which should be considered in compensating attorneys in Chapter 7 cases and instructive here. Those factors are discussed in the following paragraphs.

40. <u>Time and labor required, and novelty and difficulty of the questions involved</u>. As reflected in **Exhibit "A"**, the Applicant's professionals and paraprofessionals have expended a total of 204.7 hours on the case during the Application Period, for which compensation is now sought. The blended hourly rate for the attorneys is $600.99. HWA has devoted the time necessary to efficiently attend to the procedures, correspondence, and pleadings involved in the case.

41. <u>Reputation of attorneys</u>. The attorneys involved in the case have regularly appeared before the Courts of the Southern District. These attorneys have significant experience in bankruptcy law including reorganizations and liquidations and have regularly represented Chapter 7 debtors and Chapters 7 trustees in both large and small cases for many years. Therefore, HWA's attorneys are well qualified to represent the Trustee in the case.

42. <u>Skill required</u>. The preceding paragraphs reflect the skill required by the case. An elevated degree of skill has been required and employed by HWA in the representation of the Trustee for the reasons indicated.

43. <u>Preclusion of other employment</u>. HWA was precluded from engaging in other employment only to the extent of the 204.7 hours in the case during this Application Period.

44. <u>Undesirability of the Case</u>. A Chapter 7 case is only undesirable to the extent that HWA's compensation is always contingent upon the availability of sufficient assets with which to compensate HWA for its fees and expenses incurred.

45. <u>Results obtained</u>. HWA has efficiently attended to the matters as described above, with recoveries for the Estates as noted above.

46. <u>Time limitations imposed by the case</u>. HWA's attorneys have been available at all times to meet the Trustee's needs as they have arisen.

47. <u>Customary charges for the services rendered</u>. The hourly rates of HWA's attorneys are described at the end of **Exhibit "A"**. The rates charged are commensurate with the abilities of the persons involved and are on the low end of the rates customarily charged in this district for excellent legal counsel.

48. <u>Contingent nature of the fee</u>. Any fees to be paid to HWA in any Chapter 7 case are dependent on the availability of assets and/or recovery of voidable transfers. Representation of a bankruptcy Trustee is always of a contingent nature because of the uncertainty concerning the existence of sufficient assets for liquidation. HWA was not, however, hired on a percentage contingency agreement, but at the regular hourly rates of the professionals doing the work, subject to available funds.

49. <u>Nature and length of professional relationship with client</u>. HWA has represented the Trustee in many Chapter 7 cases over the past several years and has a close working relationship with her. Since 2007, the Trustee is of counsel to HWA, but not a partner in HWA.

50. <u>Awards in similar cases</u>. This Court is familiar with the size of fee awards in cases similar to this case. The Court may wish to consider that awards of similar or larger fees have been made in other cases over the past years in this district.

51. <u>Economic administration of the Estates</u>. In its representation of the Trustee, HWA has sought to conserve the Estates and believes that the fees and expenses requested herein were reasonable and necessary in light of the circumstances at the time.

52. HWA believes the compensation and reimbursement of expenses sought herein are reasonable and represent work that was necessary for proper administration of the Estates.

53. HWA, in compliance with Fed. R. Bankr. P. 2016, hereby states that: (i) no compensation previously received has been shared with any other entity; and (ii) no agreement or

3108953

understanding exists between HWA and any other entity for the sharing of compensation received or to be received for services rendered in connection with the case. HWA did not receive any pre- or post-employment retainer in this matter and is holding no funds belonging to the Trustee or the Debtors.

54. HWA has submitted this Application to the Trustee for review prior to filing it, and she has no objection to it.

### Conclusion

WHEREFORE, HWA prays that this Court, after notice and a hearing, enter an Order (i) authorizing the payment of compensation to HWA for its professional and paraprofessional fees of $117,215.00 and expenses of $401.85 which total $117,616.85 incurred during this Application Period, such payment being a priority administrative expense under § 507(a)(2) of the Bankruptcy Code; and (ii) granting such other and further relief to which HWA may be entitled.

Dated: October 17, 2024.

Respectfully submitted,

*/s/ Heather Heath McIntyre*
Wayne Kitchens          TBN 11541110
wkitchens@hwa.com
Heather H. McIntyre   TBN 24041076
hmcintyre@hwa.com
Abdiel Lopez-Castro   TBN 24140125
alopezcastro@hwa.com
Hughes Watters Askanase, LLP
1201 Louisiana, 28th Floor
Houston, Texas 77002
Telephone: (713) 590-4200
Facsimile: (713) 590-4230
**ATTORNEYS FOR CHAPTER 7 TRUSTEE, JANET S. NORTHRUP**

3108953

**CERTIFICATE OF SERVICE**

  I hereby certify that a true and correct copy of the foregoing document was served on (i) all parties receiving ECF notice in the case, and (ii) all parties listed on the attached "Master Service List" by electronic transmission or first class, U.S. mail, postage prepaid as indicated on October 17, 2024.

              */s/ Heather Heath McIntyre*
              Heather Heath McIntyre

3108953