## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>MOUNTAIN EXPRESS OIL COMPANY, *et al.*,[1]<br><br>      Debtors. | Case No. 23-90147 (EVR)<br><br>Jointly Administered<br><br>(Chapter 7) |

### CHAPTER 7 TRUSTEE'S MOTION PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019 FOR AN ORDER APPROVING COMPROMISE OF CLAIMS AGAINST BLUE OWL CAPITAL INC. AND JARED SHEIKER

**This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing. Represented parties should act through their attorney.**

**TO THE HONORABLE EDUARDO V. RODRIGUEZ, CHIEF UNITED STATES BANKRUPTCY JUDGE:**

Janet S. Northrup, the Chapter 7 Trustee (the "Trustee") of the jointly-administered bankruptcy estates of Mountain Express Oil Company ("MEX") and its debtor affiliates (collectively, the "Debtors"), moves (this "Motion") for entry of an order, substantially in the form of the proposed order attached hereto as **Exhibit A** (the "Proposed Order"), pursuant to section 105(a) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") and

---

[1]    A complete list of each of the Debtors in these Chapter 7 Cases may be obtained on the Court's website at www.ecf.txsb.uscourts.gov. The location of Debtor Mountain Express Oil Company's principal place of business was 3650 Mansell Road, Suite 250, Alpharetta, GA 30022.

Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), approving the Compromise (as defined below) by and among the Trustee, Blue Owl Capital Inc. f/k/a Oak Street Real Estate Capital, LLC ("<u>Blue Owl</u>"), and Jared Sheiker ("<u>Sheiker</u>," and together with the Trustee and Blue Owl, the "<u>Parties</u>").  In support of the Motion, the Trustee respectfully moves as follows:

<div align="center">

**<u>JURISDICTION AND VENUE</u>**

</div>

1.      The United States Bankruptcy Court for the Southern District of Texas (the "<u>Court</u>") has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). The Trustee consents to entry of a final order under Article III of the United States Constitution.

2.      Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicates for the relief requested herein are section 105 of the Bankruptcy Code and Bankruptcy Rule 9019.

<div align="center">

**<u>BACKGROUND</u>**

</div>

4.      Prior to the Debtors' March 17, 2023 bankruptcy filing (the "<u>Petition Date</u>"), Blue Owl and MEX executed a Program Agreement pursuant to which Blue Owl agreed to finance up to one billion dollars in sale-leaseback transactions.  Thereafter, MEX and Blue Owl participated in over fifty (50) sale-leaseback transactions involving over 250 properties with an aggregate value exceeding eight hundred million dollars.

5.      Pursuant to these transactions, Blue Owl or its affiliates became MEX's largest landlord under various leases (the "<u>Leases</u>").

6.      On December 31, 2021, pursuant to the Program Agreement, Blue Owl appointed Sheiker, a Blue Owl Vice President and Principal, to MEX's Board.

<div align="center">

2

</div>

7.      Prior to the Petition Date, Blue Owl issued various default notices under the Leases.

8.      Since her appointment, the Trustee and her counsel have conducted, and continue to conduct, an extensive investigation of the reasons for MEX's demise.  As a result of that investigation, the Trustee has identified various claims against Blue Owl, its affiliates, and Sheiker including, without limitation, claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, civil conspiracy, fraudulent transfers, and preferences.

9.      The Trustee made demand on Blue Owl, its affiliates, and Sheiker, each of whom denied any wrongdoing and all liability.

10.      To resolve the claims asserted by the Trustee, the Parties agreed to mediate before the Honorable Harlin DeWayne Hale (Ret.).  The Parties participated in an in-person mediation with Judge Hale on December 17, 2024 in Dallas, Texas.  The mediation continued in the weeks following that date.

11.      As a result of the mediation, the Parties reached a settlement (the "Compromise") as set forth in the attached Settlement and Release, dated January 30, 2025 (the "Settlement Agreement").[2]  A true and correct copy of the Settlement Agreement is attached as Exhibit 1 to the Proposed Order.

## SUMMARY OF THE SETTLEMENT AGREEMENT

12.      The terms of the Settlement Agreement are summarized as follows:[3]

| Court Approval (Settlement Agreement ¶ 7(a)) | The Parties acknowledge and agree that this Settlement Agreement is subject to Court approval in the Bankruptcy Case. |
|---|---|

---

[2]      All otherwise undefined terms in this Motion have the meanings set forth in the Settlement Agreement.

[3]      The summary of the Settlement Agreement set forth herein is not intended to replace, supplement, or amend any of the terms set forth in the Settlement Agreement attached as Exhibit 1 to the Proposed Order.  In the event of an inconsistency between this summary and the Settlement Agreement, the terms of the Settlement Agreement and Release shall control.

| | |
|---|---|
| **Settlement Payment** (*Id.*, ¶ 1) | Within ten (10) calendar days of the Court approval of the Settlement Agreement, Blue Owl and Sheiker agree to pay to the Trustee a total of $15,000,000.00 (the "<u>Settlement Payment</u>") in exchange for the release set forth in the Settlement Agreement. |
| **Conditional Right to Limited Return of Settlement Amount** (*Id.*, ¶ 2) | In the event the Trustee obtains a recovery from Lamar Frady ("<u>Frady</u>"), Turjo Wadud ("<u>Wadud</u>"), or any entity owned or controlled by Frady or Wadud in whole or in part (including, but not limited to, Illuminous Consulting, LLC, InDepth Services Company, Time & Water, LLC, 4Court Holdings, LLC, 4Court Consulting, LLC, 4Court Solutions, LLC, 4Court Leasing, LLC, 4Court Imaging, LLC, AR Brinkley 2102 Hwy 49 LLC, Adelphi, LLC, Adelphi Transport, LLC, Adelphi Field Services, LLC, Adelphi Environmental Services, LLC, Spartan Security, LLC, Hamdan Freight, LLC, Golden Gallons, LLC, LTE Capital, LLC, LTE Assets, LLC, Red Mountain Fuels Transport, LLC, 3 Pillars Development, LLC, White Pearl Wall Street, LLC, or Winston Property Ventures) through a judgment, settlement (pre-suit or after a lawsuit is filed), or otherwise (a "<u>Frady/Wadud Recovery</u>"), the Trustee shall be required to provide 20% of the net proceeds of the Frady/Wadud Recovery to Blue Owl within ten (10) calendar days of receipt (the "<u>Clawback</u>"). Subject to Paragraph 2(c) of the Settlement Agreement, the Trustee's obligation to provide Blue Owl with the Clawback shall cease if and when the Trustee provides Blue Owl/Sheiker with a total of $4,000,000.00. |
| **Limited, Qualified Right to Seek Insurance Proceeds** (*Id.*, ¶ 3) | Blue Owl and Sheiker shall be permitted to seek funds pursuant to the AXIS Insurance Company Management Liability Policy, Policy No. P-001-000763425-01 (the "<u>MEX D&O Insurance Policy</u>"). In the event that Blue Owl and/or Sheiker obtain any funds from the MEX D&O Insurance Policy, such funds shall be credited toward the Clawback.<br><br>The Trustee shall retain the right to object to any attempt by Blue Owl or Sheiker to obtain proceeds from the MEX D&O Insurance Policy. |
| **Releases** (*Id.*, ¶ 4) | The Settlement Agreement contemplates mutual releases to the extent set forth in paragraph 4 of the Settlement Agreement. Nothing in the release or Settlement Agreement shall in any way prejudice any claim of the Debtors to personal property owned by them which is or was located at real property formerly leased by any of the Blue Owl Releasees to the Debtors, or release, modify, impact, or waive any claims, causes of action, liabilities, obligations, or damages that First Horizon Bank, as |

| | | |
|---|---|---|
| | | DIP-Agent, and the lenders under the debtor-in-possession credit agreement may have against Blue Owl. |
| **Cooperation** (*Id.*, ¶ 11) | | Blue Owl and Sheiker shall provide reasonable cooperation to the Trustee with respect to any claims the Trustee may bring against Frady, Wadud, or any entity that either of them owns or controls in whole or in part. |

## RELIEF REQUESTED

13.     By this Motion, the Trustee seeks approval of the Settlement Agreement and releases embodied therein by and among the Parties.

## BASIS FOR RELIEF

14.     Bankruptcy Rule 9019(a) provides, in relevant part:

> On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, … and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a).

15.     The United States Supreme Court has recognized that compromises and settlements are "a normal part of the process of reorganization." *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *see also Rivercity v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 599, 602 (5th Cir. 1980) (citations omitted) ("Compromises are . . . desirable and wise methods of bringing to a close proceeding otherwise lengthy, complicated, and costly").

16.     Accordingly, a bankruptcy court may, in its discretion, approve settlements in accordance with Bankruptcy Rule 9019(a). *See In re De La Fuente*, 409 B.R. 842, 845 (Bankr. S.D. Tex. 2009). Bankruptcy courts should approve a settlement when it "is fair and equitable and in the best interest of the estate." *In re Cajun Elec. Power Coop., Inc.*, 119 F.3d 349, 355 (5th

Cir. 1997) (quoting Fed. R. Bankr. P. 9019(a)); *see also In re Age Refin. Inc.*, 801 F.3d 530, 540 (5th Cir. 2015).

17.     In deciding whether the settlement of a controversy is "fair and equitable," the Court must make a well-informed decision, comparing the terms of the compromise with the likely rewards of litigation. *See Cajun Elec.*, 119 F.3d at 355. The Court may consider the following factors:

    a.    the probability of success in the litigation, with due consideration for the uncertainty in fact and law;

    b.    the complexity and likely duration of the litigation and any attendant expenses, inconvenience and delay; and

    c.    all other factors bearing on the wisdom of the compromise.

*Id.* at 356. The Court should also consider the best interest of the creditors, with "proper deference to their reasonable views[,]" and "the extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion." *Id.* (internal citation omitted).

18.     It is unnecessary for the Court to conduct a mini-trial before approving a settlement. *Id.* The Court need only make itself aware of "relevant facts and law so that [it] can make an informed and intelligent decision." *Id.* "The settlement need not result in the best possible outcome for the debtor, but must not fall beneath the lowest point in the range of reasonableness." *In re Idearc Inc.*, 423 B.R. 138, 182 (Bankr. N.D. Tex. 2009) (internal citation and quotation marks omitted).

19.     Here, approval of the Settlement Agreement, which is a product of extensive, arms-length bargaining between the Parties and which is the result of the mediation conducted by the Honorable Harlin Hale, is fair, equitable and in the best interest of the Debtors' estate. The relevant factors weigh heavily in favor of approving the Settlement Agreement.

### a. Probability of Success in Litigation

20.     The issues underlying the Trustee's claims against Blue Owl and Sheiker are fact intensive, complex, and involve equitable considerations.  The Trustee's claims involve issues of both Georgia state law and bankruptcy law, including state law claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, civil conspiracy, fraudulent transfer, and preference claims.  Moreover, while the Trustee believes in the strength of the claims asserted, Blue Owl and Sheiker believe equally in the strength of their defenses.  In any event, any such litigation would result in uncertainty for all parties, and would result in substantial expense, inconvenience, and delay that would arise from litigating such issues.  As such, this factor weighs strongly in favor of approving the Settlement Agreement.

### b. Complexity and Likely Duration of the Litigation

21.     As described above, the issues underlying the claims against Blue Owl, its affiliates, and Sheiker, are fact intensive, complex, and involve equitable considerations, and any litigation would likely extend for years considering appeals.  The cost and protracted duration of this litigation would significantly lessen the amount the Trustee might ultimately recover, if successful, after litigating the claims to a final judgment.  Litigating the issues involved with the claims would require the Trustee to expend significant time and resources, and doing so would likely involve months (if not years) of discovery requests and depositions, expensive expert analysis, and potentially lengthy appeals, all of which would incur substantial litigation costs.  Ultimately, the Settlement Agreement avoids the expense, inconvenience, and delay of litigating the claims and provides an expeditious, cost-effective resolution of the claims while also injecting significant funds into the Debtors' estate.  Therefore, this second factor also weighs in favor of approving the Settlement Agreement.

### c.  All Other Factors Bearing on the Wisdom of the Compromise.

22.     The Settlement Agreement meets all other factors that bear on approval of the Compromise, as it benefits the creditors' interests and is truly the product of arms-length bargaining, as evidenced by the protracted mediation conducted by Judge Hale.  The Compromise will provide the Trustee with substantial funds that will increase distributions to holders of allowed claims.  Further, there is no reasonable basis for concern that the Settlement Agreement was the product of fraud or collusion.  Indeed, as stated above, the Compromise is the result of the mediation led by Judge Hale and extensive arms-length negotiations by the Parties represented by competent counsel.  Thus, the Settlement Agreement provides a fair resolution in light of the legal and economic risks to the Parties.

23.     Based on the foregoing considerations, the Trustee respectfully submits that the Settlement Agreement represents a fair and reasonable compromise that is in the best interest of the Debtors' estate, the estate's creditors, and all parties in interest and, therefore, should be approved.

### NOTICE

24.     Notice of this Motion will be provided to any party entitled to notice pursuant to Bankruptcy Rule 2002.

### NO PRIOR REQUEST

25.     No prior request for the relief sought herein has been made by the Trustee to this or any other court.

### CONCLUSION

**WHEREFORE**, the Trustee respectfully requests that the Court enter an order, substantially in the form of the Proposed Order, granting the relief requested in the Motion and such

other and further relief as may be just and proper.

Dated: January 30, 2025

<div style="margin-left: 40%;">

**GREENBERG TRAURIG, LLP**

By: */s/ John D. Elrod*
Shari L. Heyen
Texas Bar No. 09564750
*Shari.Heyen@gtlaw.com*
1000 Louisiana St., Suite 1700
Houston, Texas 77002
Telephone:   (713) 374-3564
Facsimile:   (713) 374-3505

– and –

Steven J. Rosenwasser (admitted *pro hac vice*)
*Steven.Rosenwasser@gtlaw.com*
John D. Elrod (admitted *pro hac vice*)
*ElrodJ@gtlaw.com*
Terminus 200, Suite 2500
3333 Piedmont Road, NE
Atlanta, Georgia 30305
Telephone:   (678) 553-2259
Facsimile:   (678) 553-2269

**SPECIAL LITIGATION COUNSEL FOR THE CHAPTER 7 TRUSTEE**

</div>

## CERTIFICATE OF SERVICE

I hereby certify that on January 30, 2025, I caused a true and correct copy of the foregoing to electronically filed with the Clerk of Court and served upon all parties registered to receive CM/ECF notices of electronic filing in this case.

<div style="margin-left: 40%;">

*/s/ John D. Elrod*
John D. Elrod

</div>

**<u>Exhibit A</u>**

**Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | Case No. 23-90147 (EVR) |
| MOUNTAIN EXPRESS OIL COMPANY, *et al.*,[1] | Jointly Administered |
| Debtors. | (Chapter 7) |

**ORDER GRANTING CHAPTER 7 TRUSTEE'S MOTION PURSUANT TO
FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019 FOR AN
ORDER APPROVING COMPROMISE OF CLAIMS AGAINST
BLUE OWL CAPITAL INC. AND JARED SHEIKER**

Upon the *Chapter 7 Trustee's Motion Pursuant To Federal Rule Of Bankruptcy Procedure 9019 For An Order Approving Compromise Of Claims Against Blue Owl Capital, Inc. And Jared Sheiker* (the "Motion")[2] [Dkt. No. ____]; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. 157 and §§ 1334(b); and the Court having found that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that the Trustee consents to entry of a final order under Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having determined that the relief requested in the Motion is in the best interests of the Trustee, the Debtors, the Debtors' estate, the Debtors' creditors, and other parties in interest; and it appearing that proper and adequate notice of the Motion has been given, under the circumstances, and that no other or further notice is necessary; and upon the record herein; and after due

---

[1]   A complete list of each of the Debtors in these Chapter 7 Cases may be obtained on the Court's website at www.ecf.txsb.uscourts.gov. The location of Debtor Mountain Express Oil Company's principal place of business was 3650 Mansell Road, Suite 250, Alpharetta, GA 30022.

[2]   Capitalized terms not defined herein shall have the meaning set forth in the Motion or the Settlement Agreement, as applicable.

deliberation thereon; and good and sufficient cause appearing therefore,

1.      The Motion is GRANTED as set forth herein.

2.      The Trustee is authorized to enter into the Settlement Agreement, attached hereto as Exhibit 1.

3.      The Settlement Agreement attached hereto as Exhibit 1 is hereby APPROVED.

4.      The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

5.      The Parties (as defined in the Motion) are authorized to take all actions necessary or appropriate to effectuate the relief granted in this Order.

6.      This Court shall retain jurisdiction over any and all matters arising from the interpretation, implementation, or enforcement of this Order.

Dated: February _____, 2025

_____
THE HONORABLE EDUARDO V. RODRIGUEZ
UNITED STATES BANKRUPTCY JUDGE

## **Exhibit 1**

**Settlement Agreement**

## SETTLEMENT AND RELEASE

This Settlement and Release (the "Agreement") is entered into by and between Janet Northrup, as Chapter 7 Trustee (the "Trustee") for the bankruptcy estate (the "Estate") of Mountain Express Oil Company and its affiliated debtors (collectively, the "Debtors"), on the one hand, and Blue Owl Capital Inc. ("Blue Owl") and Jared Sheiker ("Sheiker"), on the other hand. The Trustee, Blue Owl, and Sheiker are each individually a "Party" and collectively the "Parties".

WHEREAS, the Trustee alleges that, among other things, Sheiker breached his fiduciary duties and statutory duties to Mountain Express Oil Company ("MEX");

WHEREAS, the Trustee alleges that, among other things, Blue Owl aided and abetted Sheiker in his breaches of fiduciary duties, breached its contracts with MEX, and is required to return certain rental and other payments under applicable bankruptcy laws (throughout this Agreement, the Trustee's allegations and claims against Sheiker and Blue Owl are the "Claims");

WHEREAS, Sheiker and Blue Owl deny the Trustee's Claims and deny that they engaged in any wrongdoing whatsoever;

WHEREAS, the Parties participated in a mediation on December 17, 2024, with the Honorable Harlan Hale (Ret.) in Dallas, Texas (the "Mediation") and, with the assistance of the mediator, continued their settlement negotiations for several weeks thereafter; and

WHEREAS, the Trustee, Sheiker, and Blue Owl seek to avoid the time, expense and disruption associated with litigating the Claims and have therefore agreed to resolve the Claims through this Agreement.

NOW, THEREFORE, in consideration of the above premises and mutual covenants and agreements hereinafter set forth, the Parties agree as follows:

1.  <u>Consideration:</u> Within ten (10) calendar days of the United States Bankruptcy Court for the Southern District of Texas (Houston Division) entering an order approving the terms of this Agreement in MEX's bankruptcy proceeding (Case No. 23-90147-H2-7) (the "Bankruptcy Proceeding"), Blue Owl and Sheiker shall pay the Trustee Fifteen Million Dollars and No Cents ($15,000,000.00) (the "Settlement Amount"). The Settlement Amount shall be wired to the Trustee using wire instructions that the Trustee shall provide, which shall include bank account wiring information and a W-9 form. The Trustee may make a distribution of some or all of the Settlement Amount to creditors holding allowed claims against the Debtors' Estate at any time subject to compliance with the Bankruptcy Code or prior orders of the Court.

2.  <u>Right to Limited Return of the Consideration:</u>

    a.  In the event the Trustee obtains a recovery from Lamar Frady ("Frady"), Turjo Wadud ("Wadud"), or any entity owned or controlled by Frady or Wadud in whole or in part (including, but not limited to, Illuminous Consulting, LLC, InDepth

Services Company, Time & Water, LLC, 4Court Holdings, LLC, 4Court Consulting, LLC, 4Court Solutions, LLC, 4Court Leasing, LLC, 4Court Imaging, LLC, AR Brinkley 2102 Hwy 49 LLC, Adelphi, LLC, Adelphi Transport, LLC, Adelphi Field Services, LLC, Adelphi Environmental Services, LLC, Spartan Security, LLC, Hamdan Freight, LLC, Golden Gallons, LLC, LTE Capital, LLC, LTE Assets, LLC, Red Mountain Fuels Transport, LLC, 3 Pillars Development, LLC, White Pearl Wall Street, LLC, or Winston Property Ventures) through a judgment, settlement (pre-suit or after a lawsuit is filed), or otherwise (a "Frady/Wadud Recovery"), the Trustee shall be required to provide 20% of the net proceeds of the Frady/Wadud Recovery to Blue Owl within ten (10) calendar days of receipt (the "Clawback"). For purposes of this Agreement, "net proceeds" shall refer to the proceeds that remain after deducting fees, costs, and expenses, including, but not limited to, attorneys' fees and Trustee's commissions; provided, however, that the Trustee's general counsel's fees shall *not* be excluded when determining the amount of net proceeds.

b.      Subject to Paragraph 2(c) below, the Trustee's obligation to provide Blue Owl with the Clawback shall cease if and when the Trustee provides Blue Owl/Sheiker with a total of Four Million Dollars and No Cents ($4,000,000.00). For clarity, the Clawback is limited to a total of Four Million Dollars collectively to Blue Owl and Sheiker (not Four Million to Blue Owl and an additional Four Million to Sheiker).

c.      Blue Owl and Sheiker shall be permitted to seek funds pursuant to the AXIS Insurance Company Management Liability Policy, Policy No. P-001-000763425-01 (the "MEX D&O Insurance Policy"). In the event that Blue Owl and/or Sheiker obtain any funds from the MEX D&O Insurance Policy, such funds shall be credited toward the Clawback. Thus, by way of hypothetical examples:

*      If Blue Owl and/or Sheiker obtain $1 million from the MEX D&O Insurance Policy, then they are entitled to receive up to $3 million from the Wadud/Frady Recovery.

*      If Blue Owl and/or Sheiker obtain $2 million from the MEX D&O Insurance Policy, then they are entitled to up to $2 million from the Wadud/Frady Recovery.

*      If Blue Owl and/or Sheiker did not obtain any funds from the MEX D&O Insurance Policy, then they are entitled to up to $4 million from the Wadud/Frady Recovery.

The Trustee shall retain the right to object to any attempt by Blue Owl or Sheiker to obtain proceeds from the MEX D&O Insurance Policy.

In the event that Blue Owl or Sheiker obtain any funds from the MEX D&O Insurance Policy, directly or indirectly (*e.g.*, the MEX D&O Insurance Policy proceeds are paid toBlue Owl's or Sheiker's counsel directly), the party receiving the funds, directly or indirectly, shall notify the Trustee, in writing, of the amount of such funds      it/he received within ten (10) calendar days of receipt.

d.    Nothing in this term or any other term of this Agreement shall provide or afford Blue Owl or Sheiker with the right to participate in, affect, comment on, or otherwise be involved in any litigation the Trustee may bring against Frady, Wadud, or any other person or entity. Blue Owl and Sheiker acknowledge and agree that they will have no decision-making authority with respect to any litigation the Trustee may bring against Frady, Wadud, or any other person or entity.

e.    The Trustee shall have sole and absolute discretion to decide, among other things, (i) whether to assert claims against Frady, Wadud, or any company either of them owns or controls in whole or in part; (ii) what claims to assert in any such litigation; (iii) when and how to litigate those claims; (iv) whether to dismiss any claims; and (v) whether to accept any settlement and, if so, the amount thereof. Nothing in this term or this Agreement requires the Trustee to assert any claims against Frady, Wadud, or any company that either of them owns or controls in whole or in part or to continue such claims if they are asserted. Further, the Trustee's decisions on all matters relating to Frady, Wadud, and any company either of them owns or controls in whole or in part can be for any reason or for no reason at all.

f.    Notwithstanding the foregoing, in connection with the Clawback, Blue Owl and/or Sheiker have the right to request, and the Trustee shall provide, non-privileged and non-confidential information related to the status and timing of any claims brought by the Trustee against Frady, Wadud or any company that either of them owns or controls in whole or in part; provided, however, that such requests shall be limited to no more than three (3) requests per calendar year.

3.    <u>Cooperation</u>: Blue Owl and Sheiker shall provide reasonable cooperation to the Trustee with respect to any claims the Trustee may bring against Frady, Wadud, or any entity that either of them owns or controls in whole or in part. Such cooperation shall include, but not be limited to, (i) up to ten cumulative hours of informal interviews with Sheiker and/or other witnesses virtually or, if requested by the Trustee, in person (any in-person interview shall be at a reasonable location of Blue Owl/Sheiker's choosing); provided, however, that each individual witness shall be required to interview for a maximum of three hours (other than Sheiker, who shall be required to interview for a maximum of four hours), that Blue Owl's counsel may participate in each interview, and that Blue Owl's Executive Officers[1] shall not be required to interview; (ii) reasonable requests for information; (iii) the provision of documents; provided, however, that the production thereof does not cause an undue burden; and (iv) if requested, deposition, hearing, and/or trial testimony (if trial testimony is requested, Blue Owl and Sheiker shall provide such testimony in person); provided, however, that nothing in this cooperation provision shall require any of Blue Owl's Executive Officers to be deposed (in the event that the Trustee seeks to depose a Blue Owl Executive Officer, the Trustee shall request the deposition and, if Blue Owl opposes, the dispute, if any, shall be resolved by the applicable Court. Nothing in this

---

[1] For the avoidance of doubt, Blue Owl's nine Executive Officers are identified at https://www.blueowl.com/our-team.

Agreement shall be construed as favoring or disfavoring such a deposition if requested). Blue Owl and Sheiker's cooperation shall be at their own cost. Blue Owl and Sheiker acknowledge and agree that, when seeking cooperation, the Trustee is seeking truthful and accurate information and testimony regardless of whether that information supports or undermines the Trustee's claims. The Trustee acknowledges and agrees that if Blue Owl and/or Sheiker provide truthful information that undermines the Trustee's claims (no Party is representing or acknowledging that such information exists), it shall not constitute a breach of this Agreement and shall not impact Blue Owl or Sheiker's right to obtain the Clawback. The Parties hereto and their respective counsel agree that any information shared by Blue Owl and/or Sheiker pursuant to this Paragraph 3 shall be used solely for the purpose of assisting the Trustee in pursuing claims against any person or entity (other than Sheiker and/or the Blue Owl Releasees, as defined herein) for the benefit of the estate and shall not be used by First Horizon Bank and/or Trustee's counsel in connection with any claims First Horizon Bank (or any other party represented by Trustee's counsel) may assert against the Blue Owl Releasees and/or Sheiker.

4.   Releases:

a.   In exchange for the good and valuable consideration described herein, and subject to subpart (d) below, the Trustee and the Estate hereby completely, fully, and forever release, acquit, and discharge Blue Owl, as well as its predecessors, assignors, successors, assigns, direct and indirect subsidiaries, affiliates, partners, limited partners, general partners, principals, management companies, fund advisors, officers, directors, managers and employees (the "Blue Owl Releasees")[2], from all past and present claims, liabilities, demands, obligations, actions, and causes of action they may have against the Blue Owl Releasees, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, asserted or unasserted, direct or indirect, assertable directly or derivatively, choate or inchoate, reduced to judgment or otherwise, secured or unsecured, in contract, tort, law, equity, or otherwise pursuant to any theory of law. This release expressly includes any claims for direct damages, compensatory damages, punitive damages, attorney's fees, expenses of litigation, penalties, interest, sanctions, and consequential damages of any nature whatsoever, whether based on tort, contract, equity, quasi-contract, restitution, detrimental reliance, or any other theory of recovery or responsibility. This release does not apply to any claim for breach of this Agreement.

b.   In exchange for the good and valuable consideration described herein, and subject to subpart (d) below, the Trustee and the Estate hereby completely, fully, and

---

[2] The Blue Owl Releasees expressly includes Oak Street Real Estate Capital. Notwithstanding anything to the contrary in this Agreement, the Blue Owl Releasees do not include (i) Barry Bierenbaum, Gail Bierenbaum, Wadud, Frady, or Hunter Smith; (ii) any entity Barry Bierenbaum, Gail Bierenbaum, Wadud, Frady, or Hunter Smith own, in whole or in part, directly or indirectly; or (iii) any Trust for which Barry Bierenbaum, Gail Bierenbaum, Wadud, Frady, or Hunter Smith is a trustee or beneficiary. In the event of a conflict between this footnote and any other term in this Agreement, this footnote shall govern.

forever release, acquit, and discharge Sheiker from all past and present claims, liabilities, demands, obligations, actions, and causes of action they may have against Sheiker, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, asserted or unasserted, direct or indirect, assertable directly or derivatively, choate or inchoate, reduced to judgment or otherwise, secured or unsecured, in contract, tort, law, equity, or otherwise pursuant to any theory of law. This release expressly includes any claims for direct damages, compensatory damages, punitive damages, attorney's fees, expenses of litigation, penalties, interest, sanctions, and consequential damages of any nature whatsoever, whether based on tort, contract, equity, quasi-contract, restitution, detrimental reliance, or any other theory of recovery or responsibility. This release does not apply to any claim for breach of this Agreement.

c.   In exchange for the good and valuable consideration described herein, the Blue Owl Releasees and Sheiker hereby completely, fully and forever release, acquit, and discharge the Trustee and the Estate, as well as their parents, subsidiaries, predecessors, successors, officers, attorneys, managing directors, and employees (the "Trustee Releasees"), from all past and present claims, liabilities, demands, obligations, actions, and causes of action Blue Owl and/or Sheiker may have against the Trustee Releasees, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, asserted or unasserted, direct or indirect, assertable directly or derivatively, choate or inchoate, reduced to judgment or otherwise, secured or unsecured, in contract, tort, law, equity, or otherwise pursuant to any theory of law. This release expressly excludes all proofs of clam and administrative expense claims filed by the Blue Owl Releasees and Sheiker in the Bankruptcy Proceeding. This release expressly includes any claims for direct damages, compensatory damages, punitive damages, attorney's fees, expenses of litigation, penalties, interest, sanctions, and consequential damages of any nature whatsoever, whether based on tort, contract, equity, quasi-contract, restitution, detrimental reliance, or any other theory of recovery or responsibility. This release does not apply to any claim for breach of this Agreement.

d.   Nothing in this release or this Agreement shall in any way prejudice any claim of the Debtors to personal property owned by them which is or was located at real property formerly leased by any of the Blue Owl Releasees to the Debtors, or release, modify, impact, or waive any claims, causes of action, liabilities, obligations, or damages that First Horizon Bank, as DIP-Agent, and the lenders under the debtor-in-possession credit agreement may have against Blue Owl.

5.   <u>Taxes</u>: The Trustee shall be solely responsible for filing and paying all local, state, and federal tax obligations, if any, arising out of its receipt of the payment referenced in Paragraph 1 above. Blue Owl shall be solely responsible for filing and paying all local,

state, and federal tax obligations, if any, arising out of its receipt of the Clawback payment referenced in Paragraph 2 above.

6.   <u>No Admission of Liability</u>: This Agreement is not intended to constitute and shall not constitute any admission of wrongdoing. Blue Owl and Sheiker expressly deny that the Trustee's Claims have merit. The Parties stipulate, acknowledge, and agree that the fact of this Agreement and the terms herein do not constitute, and shall not be used as, evidence of any wrongdoing by Blue Owl or Sheiker. As stated above, Blue Owl and Sheiker executed this Agreement solely to avoid the time, cost, and disruption of litigating the Claims.

7.   <u>Court Approval</u>:

   a.   The Trustee shall file a Rule 9019 Motion or other appropriate motion (the "Approval Motion") in the Bankruptcy Proceeding seeking approval of this Agreement and the terms herein.

   b.   In the event the Court does not approve this Agreement, the Parties shall participate in a second mediation of the Claims with Judge Hale within twenty (20) days of the Court's Order. To avoid any potential statute of limitation issues, the Parties agree that all statute of limitations are tolled from December 23, 2024, until (i) the Court in the Bankruptcy Proceeding approves this Agreement or (ii) if the Court in the Bankruptcy Proceeding does not approve this Agreement, ten (10) days after the second mediation if such mediation fails. If the second mediation is successful, the tolling shall remain in place until (i) the Court in the Bankruptcy Proceeding approves the new settlement agreement or (ii) ten (10) days after the Court in the Bankruptcy Proceeding rejects any new settlement agreement.

8.   <u>Review</u>: The Parties acknowledge and agree that they have carefully reviewed, studied, and thought over the terms of this Agreement; that they had the opportunity to consult with counsel before executing this Agreement; and that all questions concerning this Agreement have been answered to their satisfaction. The Parties further acknowledge and agree that they knowingly and voluntarily signed this Agreement after deliberate consideration and review of all its terms and provisions. The Parties agree that they were not coerced, pressured, or forced in any way to accept the terms of this Agreement and that the decisions to accept the terms of this Agreement were entirely their own. The Parties further acknowledge that no promises or inducements to execute this Agreement have been offered or made except those which are specifically set out in this Agreement.

9.   <u>Severability</u>: If any provision of this Agreement is held to be illegal or unenforceable, such provision shall be limited or eliminated to the minimum extent necessary so that the remainder of this Agreement will continue in full force and effect and be enforceable.  The Parties agree to negotiate in good faith an enforceable substitute provision for any invalid or unenforceable provision that most nearly achieves the intent of such provision; provided, however, that if no agreement is reached, this Agreement shall remain in full force and

effect and the Parties can litigate solely over an enforceable substitute that can be implemented and, if so, the terms thereof.

10. <u>Drafting:</u> The Parties have mutually participated in the drafting of this Agreement. In the event any dispute, disagreement, or controversy arises regarding this Agreement, the Parties are to be considered joint authors and no provision shall be interpreted against any Party because of authorship.

11. <u>Forum Selection/Choice of Law:</u> The Parties agree that this Agreement shall be governed by Texas law. The Parties further agree that any litigation arising out of or relating to this Agreement shall only be brought in the Bankruptcy Court presiding over MEX's bankruptcy; provided, however, that if jurisdiction is lacking in that Court, the litigation shall be in the applicable State or Federal court in Houston, Texas.

12. <u>Counterparts.</u> This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall be deemed one and the same instrument.

13. <u>Electronic Signatures:</u> The Parties agree that scanned or electronic signatures shall be treated as, and effective as, original signatures.

14. <u>Authority:</u> Each signatory below represents and warrants that he/she has the authority to sign this Agreement on behalf of, and to bind, the Party for whom he/she is signing.

15. <u>Entire Agreement.</u> This Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof and supersedes all prior and contemporaneous oral and written agreements and discussions. The Parties acknowledge and agree that they have not relied on any statements, promises or representations other than those that are set forth in this Agreement. This Agreement cannot be modified or amended orally; rather, to be valid, any modification or amendment of this Agreement must be through a written document executed by the Parties.

16. <u>Effective Date:</u> The "Effective Date" shall be the date that this Agreement is executed by both Parties.

IN WITNESS WHEREOF, the undersigned have executed this Agreement as of the dates set forth below.

[signatures next page]

-7-

_Janet Northrup_

**Janet Northrup, as Chapter 7 Trustee**

Date: 1/26/25

**Blue Owl Capital Inc.**

By: _____

Its: _____

Date: _____


_____

**Jared Sheiker**

Date: _____

-8-

**Janet Northrup, as Chapter 7 Trustee**

Date:_____

**Blue Owl Capital Inc.**

By: _____
Its: _____Chief Legal Officer and General Counsel

Date:_____January 28, 2025_____

**Jared Sheiker**

Date: _____

_____
**Janet Northrup, as Chapter 7 Trustee**

Date:_____

**Blue Owl Capital Inc.**

By: _____
Its: _____

Date:_____

_____
**Jared Sheiker**

Date: January 29, 2025
_____

-8-