IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Case No. 23-90147 |
| | § | |
| MOUNTAIN EXPRESS OIL COMPANY, | § | Chapter 11 |
| | § | |
| DEBTOR. | § | JOINTLY |
| | § | ADMINISTERED |

## MOTION TO INTERPRET CONVERSION ORDER

VM Petro Holding Corp. ("VM Petro"), as successor in interest to Varun Inc. ("Varun"), VM Estate Corp. ("VME"), and Manoj Narang ("Narang" together with VM Petro and VME, "Movants") file this *Motion to Interpret Conversion Order* (the "Motion"). A dispute has arisen concerning the scope and effect of this Court's *Order (i) Converting Chapter 11 Cases, (ii) Rejecting Leases, (iii) Terminating Certain Agreements, and (iv) Granting Related Relief* [Doc. No. 1397] (the "Conversion Order"). This dispute can only be resolved by this Court interpreting whether its Conversion Order applies to applies to commercial leases that were never property of the Debtor's bankruptcy estate (the "Estate"). Movants assert that the Conversion Order does not apply to such leases, and, therefore, seek a ruling that the VM Petro Commercial Leases (as defined below) were not terminated by the Conversion Order. In support of its Motion, Movants would state the following.

### I.   JURISDICTION

1.      This Court has jurisdiction over this matter pursuant to 11 U.S.C. § 105 and 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(1).

### II.   BACKGROUND

2.      Movants are in the business of operating and owning gas stations, convenience stores, and repair shops throughout Nassau, New York and Suffolk, New York.

3.      Mustamed Associates Inc. ("Mustamed") is the title owner, and landlord, of two of these locations: (i) 100 Crooked Hill Road Commack, New York 11725 (the "Commack Location"); and (ii) 3089 Middle Country Road, Lake Grove, NY 11755 (the "Lake Grove Location").

4.      On or about April of 2003, Narang purchased a gasoline/fuel station business located at the Commack Location. Mustamed entered into a lease with Narang's entity, Varun (the "Mustamed-Varun Lease").[1] The Mustamed-Varun Lease allowed for assignment and subleasing to any entity wholly owned by Narang. Importantly, however, the Mustamed-Varun Lease required written consent from Mustamed to assign the lease to any other entity.

5.      On July 1, 2013, Varun subleased the entire premises to VM Petro, an entity wholly owned by Narang (the "Varun-VM Petro Sublease").[2] The Varun-VM Petro Sublease was subject to the terms of the Mustamed-Varun Lease.

6.      On or about November of 2008, Narang purchased a gasoline/fuel station business located at the Lake Grove Location. Mustamed entered into a lease with Narang's entity, VME (the "Mustamed-VME Lease").[3] The Mustamed-VME Lease allowed for assignment and subleasing to any entity wholly owned by Narang. Importantly, however, the Mustamed-Varun Lease required written consent from Mustamed to assign the lease to any other entity.

7.      In July 2013, VME subleased the entire premises to VM Petro (the "VME-VM Petro Sublease").[4] The VME-VM Petro Sublease was subject to the terms of the Mustamed-VME Lease.

---

[1] A copy of the Mustamed-Varun Lease is attached as **Exhibit A**.
[2] A copy of the Varun-VM Petro Sublease is attached as **Exhibit B**.
[3] A copy of the Mustamed-VME Lease is attached as **Exhibit C**.
[4] A copy of the VME-VM Petro Sublease is attached as **Exhibit D**.

8.      On or about 2013, Varun merged with VM Petro. Through this merger, Varun was dissolved, and VM Petro took over all of Varun's businesses and assumed ownership of its assets— thereby making VM Petro its successor in interest.

9.      In February 2022, Narang, through his multiple entities, sold all of his gas station businesses to Mountain Express Oil Company ("Mountain Express" or "Debtor"). As part of the sale, certain leasehold interests owned by Narang's entities were intended to be assigned to Mountain Express. The Mustamed-Varun Lease and the Mustamed-VME Lease (together, the "VM Petro Commercial Leases") were to be assigned by VM Petro to MEX RE-NY-LI LLC, a wholly owned subsidiary of Mountain Express (the "VM Petro-MEX Assignment").[5] A Master Assignment was executed, but its effectiveness was contingent upon obtaining consent from the owners or landlords of the respective properties. However, the VM Petro-MEX Assignment was never consummated or completed as Mustamed never consented to the assignments related to the Commack and Lake Grove locations.

10.      More specifically, a term of the VM Petro-MEX Assignment was that, in the event that the assignment requires consent of the landlord under any particular lease, such consent must be given within sixty (60) days of the execution of the assignment. As set forth above, the Mustamed-Varun Lease and the Mustamed-VME Lease both require consent from the landlord, Mustamed. Mustamed never consented to the VM Petro-MEX Assignment; therefore, such Assignment was never consummated.

11.      On March 18, 2023, Mountain Express and Mex RE-NY-LI, LLC filed voluntary petitions for relief under Chapter 11 of Title 11 of the United State Code (the "Bankruptcy Code"),

---

[5] A copy of the VM Petro-MEX Assignment is attached as **Exhibit E**.

which initiated in the above-styled and numbered case (the "Case"). Those cases, along with cases for several other entities, were jointly administered in this Case.

12.     As part of its bankruptcy filing, Mountain Express filed Schedule G, which listed all its leasehold interests. Mountain Express erroneously listed the VM Petro Commercial Leases.

13.     On April 24, 2024, Movants, on behalf of and with the consent of Mountain Express, filed a Third Amended Schedule G for Mountain Express [Doc. No. 2162], and a Second Amended Schedule G for Mex RE-NY-LI [Doc. No. 2163] (together the "Amended Schedules").

14.     A representative of the Debtors signed the Amended Schedules. Through the above amendments, the VM Petro Commercial Leases were intentionally removed from the Debtors' Schedules. This demonstrates that the Debtors acknowledge that the VM Petro Commercial Leases were never property of the Estate.[6]

15.     On August 24, 2023, this Court entered Conversion Order which states: "All unexpired leases of non-residential real property of the Debtors' estates to which the Debtor is a lessee are deemed rejected and terminated as of the entry of this Order. All unexpired leases of non-residential real property of the Debtors' estates to which the Debtor is a lessor are deemed rejected as of the entry of this Order."

16.     Mustamed is currently taking the position that the VM Petro Commercial Leases were terminated pursuant to the Conversion Order. Mustamed takes this position despite the fact that neither of the Debtors are a party to the VM Petro Commercial Leases. Movants, therefore, have no choice but to bring this Motion to clarify that the Conversion Order does not apply to affect leases that are not property of the Estate.

---

[6] A copy of the email correspondence regarding the amendment of the schedules is attached hereto as **Exhibit F**.

### III.   ARGUMENT

17.     Section 541(a) of the Bankruptcy Code establishes that the commencement of a bankruptcy case creates an estate, which includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a). Courts have consistently interpreted the definition of "property of the estate" broadly to include virtually all conceivable interests of the debtor in property. This includes tangible and intangible property, causes of action, and other forms of property. *Westmoreland Human Opportunities, Inc. v. Walsh*, 246 F.3d 233 (3rd Cir. 2001). The intent behind this broad definition is to ensure that anything of value held by the debtor is brought into the estate for equitable distribution among creditors. *In re Klemkowski*, 664 B.R. 681 (Bankr. D. 2024).

18.     While the definition of property of the estate is broad, it necessarily only includes property in which the debtor has an interest. *See* 11 U.S.C. § 541(a) (defining property of the estate as "all legal or equitable interests **of the debtor** in property as of the commencement of the case . . ."). By definition, if the debtor has no interest in property, then such is not property of the estate.

19.     In the present matter, a dispute has arisen between Movants and Mustamed as to whether the Conversion Order affects the VP Petro Commercial Leases. Mustamed maintains that the VP Petro Commercial Leases were property of the Estate; thus, such Leases were rejected and terminated by the Conversion Order. Movants maintain that VP Petro Commercial Leases were never part of the Estate; thus, were not impacted by the Conversion Order.

20.     While it is true that Movants attempted to assign the VP Petro Commercial Leases to Debtors, the assignment was never completed because Mustamed did not consent to the VM Petro-MEX Assignment. Mustamed's consent was necessary under the terms of the VP Petro

Commercial Leases. Because Mustamed failed to provide consent, the VM Petro-MEX Assignment was never consummated; therefore, the VP Petro Commercial Leases remained property of Movants.

21.     Restated, the VP Petro Commercial Leases never become property of the Estate because the Debtors were never a party to the Leases. Because the VP Petro Commercial Leases were not property of the Estate, they could not have been affected by the Conversion Order, which by its own terms only applies to leases to which the Debtor was a party.

22.     This position is further bolstered by the fact that the Debtors themselves signed off on Amended Schedules, which removed the VP Petro Commercial Leases from Schedule G. Restated, because Debtors do not claim an interest in the VM Petro Commercial Leases, the Conversion Order did not affect a termination of such Leases.

## IV.     CONCLUSION

**WHEREFORE, PREMISES CONSIDERED**, Movants respectfully request that this Court enter an order stating the VP Petro Commercial Leases were never property of the Estate and thus were not affected by the Conversion Order and other relief to which they may be entitled.

KEAN MILLER LLP

Date: September 9, 2025

By:     */s/ Lloyd A. Lim*
      Lloyd A. Lim
      Texas State Bar No. 24056871
      Lloyd.Lim@keanmiller.com
      Rachel T. Kubanda
      Texas State Bar No. 24093258
      Rachel.Kubanda@keanmiller.com
      711 Louisiana Street, Suite 1800
      Houston, Texas 77002
      Telephone: (713) 844-3000

      ***Attorneys for Movants***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on September 9, 2025, a copy of the foregoing document served to all parties entitled to receive notices through the Court's electronic notification system as permitted by Local Rules of the U.S. Bankruptcy Court for the Southern District of Texas.

*/s/ Lloyd A. Lim*
Lloyd A. Lim