United States Bankruptcy Court
Southern District of Texas

**ENTERED**

October 29, 2025

Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO: 23-90147** |
| **MOUNTAIN EXPRESS OIL COMPANY,** | § | |
| | § | |
| Debtor. | § | |
| | § | |
| | § | **CHAPTER 7** |
| | § | |

## <u>MEMORANDUM OPINION</u>

Mr. Lamar Frady and Mr. Turco Wadud, former co-chief executive officers of debtor Mountain Express Oil Company and members of the debtor's board of directors, filed the instant motion for relief from the automatic stay to permit an insurer to advance and/or reimburse defense costs and fees under the AXIS Insurance Company Management Liability Policy, Policy No. P-001-000763425-01, which is a management and entity liability insurance policy which covers directors and officers, Mountain Express Oil, Inc. indemnification and liability. At the conclusion of a hearing conducted on September 24, 2025 on Mr. Lamar Frady and Mr. Turco Wadud's motion for stay relief, the Court ordered briefing on two issues: (i) does the bankruptcy estate in this case have an interest in the proceeds under the AXIS Insurance Company Management Liability Policy, which provides that the insurer shall pay "Loss" and: (ii) whether a certain priority of payment provision contained in the policy is enforceable in bankruptcy.

For the reasons stated herein, the Court finds that the automatic stay is inapplicable in this matter because although the AXIS Insurance Company Management Liability Policy, Policy No. P-001-000763425-01 and Policy No. P-001-000763425-02 are property of the Debtor's bankruptcy estate, the Debtors' bankruptcy estate has no demonstrated interest in the proceeds of the AXIS Insurance Company Management Liability Policy, Policy No. P-001-000763425-01 and

Policy No. P-001-000763425-02, and therefore AXIS Insurance Company is permitted to evaluate coverage and make payments under the terms of the AXIS Insurance Company Management Liability Policy, Policy No. P-001-000763425-01 and Policy No. P-001-000763425-02 to or for the benefit of Mr. Lamar Frady and Mr. Turco Wadud.

## I.  FINDINGS OF FACT

This Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, which is made applicable to adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7052.  To the extent that any finding of fact constitutes a conclusion of law, it is adopted as such.  To the extent that any conclusion of law constitutes a finding of fact, it is adopted as such.  This Court made certain oral findings and conclusions on the record.  This Memorandum Opinion supplements those findings and conclusions.  If there is an inconsistency, this Memorandum Opinion controls.

### A.  Background

1. On March 18, 2023, (the "*Petition Date*") Mountain Express Oil Company and certain of its affiliated entities ("*Debtors*") filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code[1] initiating this bankruptcy case.[2]

2. On August 24, 2023, the case was converted to Chapter 7 and Janet Northrup, was appointed Chapter 7 Trustee (the "*Trustee*").[3]

3. On August 26, 2025, Mr. Lamar Frady and Mr. Trudo Wadud ("*Movants*") filed the instant "Motion Of Lamar Frady And Turjo Wadud For Relief From The Automatic Stay, To The Extent Applicable, To Permit Insurers To Advance And/Or Reimburse Defense Costs And Fees Under Directors And Officers Insurance Policies"[4] ("*Motion for Relief*").

4. On September 17, 2025, Trustee filed her "Chapter 7 Trustee's Objection To The Motion Of Lamar Frady And Turjo Wadud For Relief From The Automatic Stay, To The Extent

---

[1] Any reference to "Code" or "Bankruptcy Code" is a reference to the United States Bankruptcy Code, 11 U.S.C., or any section (i.e.§) thereof refers to the corresponding section in 11 U.S.C.
[2] ECF No. 1.
[3] ECF No. 1397.
[4] ECF No. 2910.

Applicable, To Permit Insurers To Advance And/Or Reimburse Defense Costs And Fees Under Directors And Officers Insurance Policies" (the "*Objection*").[5]

5. On September 22, 2025, Movants filed their "Reply In Further Support Of Motion Of Lamar Frady And Turjo Wadud For Relief From The Automatic Stay, To The Extent Applicable, To Permit Insurers To Advance And/Or Reimburse Defense Costs And Fees Under Directors And Officers Insurance Policies" (the "*Reply*").[6]

6. On September 24, 2025, the Court held a hearing (the "*Hearing*") and ordered post-trial briefing.[7]

7. On October 8, 2025, Movants filed their "Supplemental Brief In Support Of Motion Of Lamar Frady And Turjo Wadud For Relief From The Automatic Stay, To The Extent Applicable, To Permit Insurers To Advance And/Or Reimburse Defense Costs And Fees Under Directors And Officers Insurance Policies"[8] ("*Movants' Brief*").

8. On October 8, 2025, Trustee filed her "Chapter 7 Trustee's Supplemental Brief In Support Of Objection To The Motion Of Lamar Frady And Turjo Wadud For Relief From The Automatic Stay, To The Extent Applicable, To Permit Insurers To Advance And/Or Reimburse Defense Costs And Fees Under Directors And Officers Insurance Policies"[9] ("*Trustee's Brief*").

## II.    CONCLUSIONS OF LAW

### A.  Jurisdiction and Venue

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334 and exercises its jurisdiction in accordance with Southern District of Texas General Order 2012–6.[10] Section 157 allows a district court to "refer" all bankruptcy and related cases to the bankruptcy court, wherein the latter court will appropriately preside over the matter.[11] This Court determines that pursuant to 28 U.S.C. § 157(b)(2)(A),(G) and (O) this proceeding contains core matters, as it primarily involves

---

[5] ECF No. 2933.
[6] ECF No. 2946.
[7] Sep. 24, 2025 Courtroom Min.
[8] ECF No. 2976.
[9] ECF No. 2977.
[10] *In re*: *Order of Reference to Bankruptcy Judges*, Gen. Order 2012–6 (S.D. Tex. May 24, 2012).
[11] 28 U.S.C. § 157(a); *see also* In re: Order of Reference to Bankruptcy Judges, Gen. Order 2012-6 (S.D. Tex. May 24, 2012).

proceedings concerning the administration of this estate and modifications of the automatic stay.[12] This proceeding is also core under the general "catch-all" language because such a suit is the type of proceeding that can only arise in the context of a bankruptcy case.[13]

This Court may only hear a case in which venue is proper.[14]  28 U.S.C. § 1409(a) provides that "a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending." The Debtors' main bankruptcy case is pending before this Court and therefore, venue of this proceeding is proper.

## B.  Constitutional Authority to Enter a Final Order

While bankruptcy judges can issue final orders and judgments for core proceedings, absent consent, they can only issue reports and recommendations on non-core matters.[15]  The Motion for Relief pending before this Court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A)(G) and (O). Accordingly, this Court concludes that the narrow limitation imposed by *Stern* does not prohibit this Court from entering a final order here.[16] Thus, this Court wields the constitutional authority to enter a final order here.

### III.    ANALYSIS

---

[12] *See* 11 U.S.C. § 157(b)(2)(A)(G) & (O).

[13] *See Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.)*, 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under § 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.") (quoting *Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir. 1987)).

[14] 28 U.S.C. § 1408.

[15] *See* 28 U.S.C. §§ 157(b)(1), (c)(1); *see also Stern v. Marshall*, 564 U.S. 462, 480 (2011); *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1938–40 (2015).

[16] *See, e.g., Badami v. Sears (In re AFY, Inc.)*, 461 B.R. 541, 547-48 (8th Cir. BAP 2012) ("Unless and until the Supreme Court visits other provisions of Section 157(b)(2), we take the Supreme Court at its word and hold that the balance of the authority granted to bankruptcy judges by Congress in 28 U.S.C. § 157(b)(2) is constitutional."); *see also Tanguy v. West (In re Davis)*, No. 00-50129, 538 F. App'x 440, 443 (5th Cir. 2013) ("[W]hile it is true that *Stern* invalidated 28 U.S.C. § 157(b)(2)(C) with respect to 'counterclaims by the estate against persons filing claims against the estate,' *Stern* expressly provides that its limited holding applies only in that 'one isolated respect' .... We decline to extend *Stern's* limited holding herein.") (Citing *Stern*, 564 U.S. at 475, 503, 131 S.Ct. 2594).

The insurance policy from which the Movants seek to access proceeds, through the Motion for Relief, is the AXIS Insurance Company Management Liability Policy, Policy No. P-001-000763425-01 (the "*Policy*") which has a policy period of December 22, 2021 through December 22, 2022.[17] The Motion for Relief also references and attaches this Policy as an exhibit.[18] Likewise, the Trustee's Objection references this Policy.[19] However, at the Hearing, Movants introduced, and the Court admitted into evidence, without objection by the Trustee, the AXIS Insurance Company Management Liability Policy, Policy No. P-001-000763425-02, (the "*Renewed Policy*") which is a renewal of the Policy with a policy period of December 22, 2022 through December 22, 2023.[20] The parties' post-trial briefings analyze relief under the Renewed Policy, notwithstanding the fact that it is not mentioned in the Motion for Relief.[21] The  Policy and the Renewed Policy (collectively, the "*Policies*") are, for relevant purposes here, identical except that the Policies have different policy periods.

Federal Rule of Civil Procedure 15(b), made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7015(b), provides that  "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."[22] The Court finds that the parties implicitly consented to this Court's consideration of whether relief should be granted as to both Policies. Although the Motion for Relief and the Objection refer to the Policy, the parties stipulated to the admission of the Renewed Policy at the Hearing, and the post-trial briefing also referenced the Renewed Policy.[23]

---

[17] ECF Nos. 2943-1 at 4; 2910 at 2.
[18] ECF No. 2910 at 3.
[19] ECF No. 2933.
[20] ECF No. 2954-1 at 4.
[21] ECF Nos. 2976 at 1; 2977.
[22] *See also Reed v. Rabe* (*In re Grotjohn*), 356 B.R. 393, 397 (Bankr. N.D. Tex. 2006) ("There is authority that suggests that a court may allow amendments to pleadings *sua sponte.*").
[23] *Haught v. Maceluch*, 681 F.2d 291, 305 (5th Cir. 1982) ("As a general rule, we can find implied consent when a party fails to object to evidence relating to issues that are beyond the pleadings.").

Accordingly, to avoid confusion and to align the pleadings with the issues developed at the Hearing, the Court will consider relief as to both Policies.

Though their Motion for Relief and post-trial briefing, Movants are seeking entry of an order authorizing, and, to the extent necessary, modifying or lifting the automatic stay under § 362(a) to allow AXIS Insurance Company (the "*Insurer*"), under the Policies to advance and/or reimburse covered "Loss," including "Defense Costs," to any "Insured Individual" (as those terms are defined in the Policies), including Movants and Jared Sheiker, in accordance with the terms of the Policies.[24] Movants raise two grounds for granting the Motion for Relief: (1) the estate has no interest in the proceeds of the Policies (the "*Proceeds*") and therefore the automatic stay does not apply to the Proceeds for their Defense Costs and other Loss and (2) even if the estate had a property interest in the Proceeds, there is cause to lift the stay pursuant to § 362(d)(1).[25] The Trustee objects to the Motion for Relief on the grounds that (1) the Policies and Proceeds are property of the estate because Debtors are "Insured Entities" under the Policies that are entitled to coverage; and (2) there is no cause to lift the stay because lifting the stay would diminish the estate's interest in the Proceeds.[26] The Court will consider each of the parties arguments.

As a preliminary matter, neither Jared Sheiker nor any other Insured Individual, aside from the Movants, has requested any relief under the instant Motion for Relief. The Movants have not demonstrated that they have standing to seek relief on behalf of any other Insured Individual. Accordingly, neither Jared Sheiker nor any other Insured Individual, aside from the Movants, is granted any relief under this Court's accompanying order.

## A.  Whether the Policy and Proceeds are property of the estate

---

[24] ECF Nos. 2910; 2976.
[25] ECF No. 2910 at 10, 13.
[26] ECF No. 2933 at 8; 2977 at 10.

Section 541(a)(1) provides that property of the estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case."[27]  The Supreme Court has interpreted § 541(a)(1) broadly to include tangible, intangible property and causes of action.[28] "The party seeking to include property in the estate bears the burden of showing that the item is property of the estate."[29]

When a debtor files for bankruptcy, an automatic stay goes into effect under § 362.[30] Property of the estate is protected by an automatic stay and stays, *inter alia*,  "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."[31] A party can seek relief from the automatic stay under § 362(d)(1) which provides that "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay . . . for cause." Before the Court can reach the question of whether there is cause to lift the automatic stay, the Court must first determine whether the automatic stay is applicable to the Proceeds, which hinges on whether the Policy and Proceeds are Property of the estate.[32] There is a "distinction between owning a policy and owning the proceeds."[33] Thus, the Court will determine whether the Policies are property of the estate, and if so, whether the Proceeds of the Policies are property of the estate.

1.    **The Policies**

The Policies provide in relevant part as follows:

a.  **Amount:** Provides for $3,000,000 of insurance coverage, in the aggregate, applicable to

---

[27] 11 U.S.C. § 541(a)(1).
[28] *See United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205, 103 S. Ct. 2309, 2313 (1983).
[29] *TMT Procurement Corp. v. Vantage Drilling Co. (In re TMT Procurement Corp.)*, 764 F.3d 512, 523 (5th Cir. 2014).
[30] 11 U.S.C. § 362(a).
[31] 11 U.S.C. § 362(a)(3).
[32] *See Sosebee v. Steadfast Ins. Co.*, 701 F.3d 1012, 1025 (5th Cir. 2012).
[33] *La. World Exposition, Inc. v. Fed. Ins. Co.*(*In re La. World Exposition, Inc.*), 832 F.2d 1391, 1399 (5th Cir. 1987).

all relevant Coverage Parts.[34]

b. **Coverage parts:** "Coverage Part" means each "Coverage Part designated in the DECLARATIONS as a part of this Policy."[35]

c. **Claims:** "Claim," means in relevant part, "a written demand, including a civil or criminal complaint or similar pleading or any appeal therefrom, for monetary relief or non-monetary or injunctive relief, including a written request to toll or waive a statute of limitations or engage in any alternative dispute resolution."[36]

d. **Claims-Made Liability Coverage:** The Policies provide for "Claims-Made liability Coverage"—meaning, among other things, coverage for "Claims" that are "first made" against Insured Individuals "during the Policy Period or the Extended Reporting Period" and are reported to the Insurer "in no event later than 90 days after the end of the Policy Period or, with respect to a Claim made during the Extended Reporting Period, if applicable, no later than the expiration thereof"[37] Claims-Made Liability Coverage means "any Coverage designated as such in any Coverage Part."[38]

e. **Defense Costs:** "Defense Costs" means:

> reasonable expenses incurred in investigating, opposing, defending, settling, or appealing covered Claims, whether paid by the Insurer or by the Insured with the Insurer's consent, including attorney and expert fees; court costs; alternative dispute resolution costs; the cost of appeal bonds or release attachment bonds for amounts within the applicable Limit of Insurance, but the Insurer does not have to furnish these bonds; and expenses incurred by an Insured Individual at the Insurer's request, excluding loss of earnings, salaries, benefits, and other compensation paid to any Insured.[39]

f. **Extended Reporting Period:** The "Extended Reporting Period" was for no longer than one year[40]—that is, until no later than December 22, 2023 for the Policy and no later than December 22, 2024 for the Renewed Policy. Extended Reporting Period means "a designated period immediately following cancellation or nonrenewal of the Policy."[41] The extended reporting Period is applicable to Claims-Made Liability Coverage.[42]

g. **Financial Impairment:** "Financial Impairment" is defined as (1) "the appointment by any Government Authority of any receiver, trustee, examiner, conservator, liquidator, rehabilitator, or similar official to take control of, supervise, manage or liquidate the

---

[34] ECF Nos. 2943-1 at 5; 2954-1 at 5.
[35] ECF Nos. 2943-1 at 10; 2954-1 at 10.
[36] ECF Nos. 2943-1 at 8; 2954-1 at 8.
[37] ECF Nos. 2943-1 at 27; 2954-1 at 27.
[38] ECF Nos. 2943-1 at 9; 2954-1 at 9.
[39] ECF Nos. 2943-1 at 10; 2954-1 at 10.
[40] ECF Nos. 2943-1 at 4, 6; 2954-1 at 4, 6.
[41] ECF Nos. 2943-1 at 12; 2954-1 at 2.
[42] ECF Nos. 2943-1 at 6; 2954-1 at 6.

organization"; or (2) "the organization becoming a debtor in possession within the meaning of the United States Bankruptcy Code or similar legal status under foreign law."[43]

h. **Loss:** "Loss" in the Policies is: "monetary judgments, awards, or settlements, including prejudgment interest, post-judgment interest, statutory, punitive, multiplied or exemplary damages, attorney's fees, and costs included as part of a judgment or award, and Defense Costs…."[44]

i. **Insured Entity**: "Insured Entity" means individually and collectively, "the Named Insured and the Subsidiaries, including any such entity as a debtor in possession within the meaning of the United States Bankruptcy Code or similar legal status under foreign law."[45] The Named Insured is Mountain Express Oil, Inc.[46] Mountain Express Oil, Inc's status as the Name Insured also extends to its subsidiaries and affiliates as the Policies Provide that:

> If during the Policy Period, the Named Insured creates, acquires, or merges with a new entity or obtains Management Control of any entity, then this Policy will provide coverage for such entity and its subsidiaries, directors, officers, trustees, and employees who would otherwise become Insureds pursuant to the provisions of this Policy, but only for Wrongful Acts, Enterprise Security Events, violations of Privacy Regulations or Events occurring or loss Discovered on or after the effective date of such transaction.[47]

j. **Insured Individual**: "Insured Individual" means any natural person who was or is: (1) "a duly elected or appointed director or officer of any Insured Entity that is a corporation, a manager or managing member of any Insured Entity that is a limited liability company, or a general partner or managing partner of any Insured Entity that is a partnership or joint venture"; (2) "a duly elected or appointed trustee of the Insured Entity or member of any duly constituted board or committee of the Insured Entity"; (3) "an Employee, other than an applicant for prospective employment by the Insured Entity, to whom the Insured Entity provides indemnification for Loss arising from any Claim for his or her Wrongful Act"; or (4) "the functional equivalents of any of the foregoing."[48]

k. **Notices**: The Policies provide for written notice when notice is required by the Policies:

> Except as otherwise provided in this Policy, all notices under this Policy must be in writing and delivered by prepaid express courier or certified mail, facsimile, or electronic mail to the appropriate party at the street address, fax number, or email address, as applicable, designated in the DECLARATIONS. Notices to the Insureds will be given to the Named Insured. Notice will be

---

[43] ECF Nos. 2943-1 at 12; 2954-1 at 12.
[44] ECF Nos. 2943-1 at 14; 2954-1 at 14.
[45] ECF Nos. 2943-1 at 14; 2954-1 at 14.
[46] ECF Nos. 2943-1 at 1, 13–14; 2954-1 at 1, 13–14.
[47] ECF Nos. 2943-1 at 31; 2954-1 at 31.
[48] ECF Nos. 2943-1 at 14; 2954-1 at 14.

deemed to be received and effective upon actual receipt by the addressee or one day following the date such notice is sent, whichever is earlier.[49]

l. **Payments**: the Policies provide for a priority of payment scheme (the "*Priority Payment Provision*") as follows:

> The Insurer will be entitled to pay Loss and other covered amounts as they become due and payable under this Policy without consideration of other future payment obligations. However, if Loss exceeds the remaining applicable Limit of Insurance or in the event of the Financial Impairment of the Insured Entity, the Insurer will first pay Loss that the Insured Individual is legally obligated to pay that is not indemnified by the Insured Entity because the Insured Entity either is not legally permitted to provide such indemnification or is unable to provide such indemnification by reason of Financial Impairment.[50]

m. **Management and Entity Liability:** The Policies provide for three different Claims-Made Liability Coverage. Specifically, the Policies provide that:

  i. **Directors & Officers Liability Coverage ("*Side A Coverage*").**

> The Insurer will pay Loss not indemnified by the Insured Entity that the Insured Individual becomes legally obligated to pay arising from a Claim first made against such Insured Individual during the Policy Period or the Extended Reporting Period, if applicable, for a Wrongful Act.

  ii. **Insured Entity Indemnification Coverage ("*Side B Coverage*").**

> The Insurer will pay Loss for which the Insured Entity4 is permitted or required to indemnify an Insured Individual arising from a Claim first made against such Insured Individual during the Policy Period or the Extended Reporting Period, if applicable, for a Wrongful Act.

  iii. **Insured Entity Liability Coverage ("*Side C Coverage*").**

> The Insurer will pay Loss that the Insured Entity becomes legally obligated to pay arising from a Claim first made against the Insured Entity during the Policy Period or the Extended Reporting Period, if applicable, for a Wrongful Act. [51]

n. **Condition Precedent for coverage**: It is a condition precedent for Side A, Side B, and Side C Coverage, *inter alia*, that: (1) "all Wrongful Acts take place prior to the end of the

---

[49] ECF Nos. 2943-1 at 31; 2954-1 at 31.
[50] ECF Nos. 2943-1 at 31; 2954-1 at 31.
[51] ECF Nos. 2943-1 at 33; 2954-1 at 33.

Policy Period"; (2) "all Claims are reported to the Insurer in writing in accordance with the REPORTING OF CLAIMS AND EVENTS section in the GENERAL TERMS AND CONDITIONS."[52]

o. **Policy Period**: The "Policy Period" for the Policy was from December 22, 2021 to December 22, 2022 but in no event no later than 90 days thereafter.[53] Ninety days thereafter was March 22, 2023 as to the Policy. The "Policy Period" for the Renewed Policy was from December 22, 2022 to December 22, 2023 but in no event no later than 90 days thereafter.[54] Ninety days thereafter was March 21, 2024 as to the Renewed Policy.

p. **Reporting of Claims and Events**: It is a condition precedent to coverage under all Claims-Made Liability Coverages, that:

> as soon as practicable after any Insured Executive becomes aware of any Claim, the Insured must notify the Insurer thereof in writing, but in no event later than 90 days after the end of the Policy Period or, with respect to a Claim made during the Extended Reporting Period, if applicable, no later than the expiration thereof.[55]

q. **Reporting of Circumstances under Claims-Made Liability Coverages**: the Policies provide for what may constitute sufficient notice of a Claim for purposes of obtaining Claims-Made Liability Coverage:

> If during the Policy Period or the Extended Reporting Period, if applicable, an Insured gives the Insurer written notice of any Wrongful Act, . . .  act, error, omission, fact, or circumstance that occurred before the end of the Policy Period and is reasonably likely to give rise to a Claim with full details of: 1. such Wrongful Act, . . .  act, error, omission, fact, or circumstance including any available information on persons or entities involved; 2. the nature and extent of the potential damages and the names of the potential claimants; and 3. the manner in which the Insured first became aware of such Wrongful Act, . . . , act, error, omission, fact, or circumstance; then any such Claim subsequently arising out of such Wrongful Act, Enterprise Security Event, violation of a Privacy Violation, act, error, omission, fact or circumstance will be deemed to have been made during the policy period in which such notice was given.[56]

r. **Wrongful Act** means:

    1. with respect to the MANAGEMENT AND ENTITY LIABILITY COVERAGE PART:

        i. any actual or alleged error, misstatement, misleading statement, act, omission,

---

[52] ECF Nos. 2943-1 at 33; 2954-1 at 33.
[53] ECF No. 2943-1 at 4, 28.
[54] ECF No. 2954-1 at 4, 28.
[55] ECF Nos. 2943-1 at 27; 2954-1 at 27.
[56] ECF Nos. 2943-1 at 27; 2954-1 at 27.

neglect, or breach of duty by:

   1)  an Insured Individual in his or her capacity as such or in an Outside Position; or
   2)  the Insured Entity, with respect to the Insured Entity Liability Coverage; or

  **b.**  any matter claimed against an Insured Individual solely by reason of his or her status as such or in an Outside Position.[57]

## 2.  Whether the Policies are property of the estate

"[A]n overwhelming majority of courts have concluded that liability insurance policies fall within § 541(a)(1)'s definition of estate property," including the Fifth Circuit.[58] For example, the Fifth Circuit in *In Re Vitek, Inc.*[59] held that "[t]he language of § 541(a)(1) is unquestionably broad enough to cover a debtor's interest in liability insurance."[60] Thus, it is clear from Fifth Circuit precedent that an insurance policy owned by the debtor is property of the estate.[61] Here, the only Named Insured under the Policies is the Debtor.[62] Therefore, the Policies are property of the estate.[63]  The Court will next determine whether Proceeds of the Policies are property of the estate.

## 3.  Whether Proceeds of the Policies are Property of the estate

A debtor who owns an insurance policy does not necessarily have an interest in the proceeds of that policy.[64] In *In re Edgeworth*[65] the Fifth Circuit spoke on whether proceeds of an insurance policy is property of the estate:

The overriding question when determining whether insurance proceeds are property of the estate is whether the debtor would have a right to receive and keep those proceeds when the insurer paid on a claim. When a payment by the insurer cannot inure to the debtor's pecuniary benefit, then that payment should neither

---

[57] ECF Nos. 2943-1 at 22; 2954-1 at 22.
[58] *Homsy v. Floyd (In re Vitek, Inc.)*, 51 F.3d 530, 533 (5th Cir. 1995).
[59] 51 F.3d 530 (5th Cir. 1995).
[60] *Id.* at 533.
[61] *Martinez v. OGA Charters, L.L.C.* (*In re OGA Charters, L.L.C.*), 901 F.3d 599, 602 (5th Cir. 2018); *La. World Exposition, Inc. v. Fed. Ins. Co.* (*In re La. World Exposition, Inc.*), 832 F.2d 1391, 1399 (5th Cir. 1987).
[62] ECF Nos. 2976-2 at 38, 44; 2976-1 at 4, 13; 2943-1 at 4, 13.
[63] *See Kipp Flores Architects, L.L.C. v. Mid-Continent Cas. Co.*, 852 F.3d 405, 413 (5th Cir. 2017).
[64] *In re La. World Exposition, Inc.*, 832 F.2d at 1399.
[65] 993 F.2d 51 (5th Cir. 1993).

enhance nor decrease the bankruptcy estate. In other words, when the debtor has no legally cognizable claim to the insurance proceeds, those proceeds are not property of the estate.[66]

In determining an estate's property interest in insurance proceeds, the Court must assess the language and scope of the policy at issue.[67] As noted by *In re OGA Charter*:[68] "The framework laid out in *Edgeworth* remains applicable in this circuit.[69] However, the inquiry remains, as it has always been, a fact-specific one."[70] Fifth Circuit precedent teaches that when a debtor is entitled to liability coverage under an insurance policy and a covered claim is asserted against the debtor, the policy's proceeds may constitute property of the estate.[71]

For example, in *In re La. World Exposition*,[72] the court held that proceeds of a directors and officers insurance policy were not estate property because only the directors and officers, not the debtor itself, were entitled to liability coverage under the policy.[73] In reaching this conclusion, the court reasoned that a debtor has no ownership interest in proceeds of a policy when "the obligation of the insurance companies was only to the directors and officers and they are the named and the only insureds" and the "proceeds would be paid only if the directors and officers incurred some covered legal expense or liability."[74]

Additionally, in *OGA Charters*, the debtor was being sued by multiple parties in an amount exceeding the limits of the policy and the insurance policy the debtor owned covered the debtor's

---

[66] *Id.* at 55.

[67] *See In Re OGA Charters, LLC*, 901 F.3d 599, 602-03 (5th Cir. 2018) (looking to whether a debtor has rights to proceeds under a policy); *In re Allied Digital Techs. Corp.*, 306 B.R. 505, 509 (Bankr. D. Del. 2004) (stating that whether proceeds of directors and officers' policies are property of the estate is "controlled by the language and scope of the policy at issue").

[68] 901 F.3d 599 (5th Cir. 2018).

[69] *Id.* at 603.

[70] *In re OGA Charters, L.L.C.*, 901 F.3d at 603. *See also In re Sfuzzi, Inc.*, 191 B.R. 664, 668 (Bankr. N.D. Tex. 1996) ("[T]he question of whether the proceeds are property of the estate must be analyzed in light of the facts of each case.")

[71] *See e.,g*., *In re OGA Charters, L.L.C.*, 901 F.3d at 603–605.

[72] 832 F.2d 1391, 1393 (5th Cir. 1987).

[73] *Id.* at 1400, 1394, 1399.

[74] *Id.* at 1399.

liability to those third-party claimants.[75] The court ruled that "where a siege of tort claimants threaten the debtor's estate over and above the policy limits, we classify the proceeds as property of the estate."[76] The Court held that the claims against the debtor exceeded the policy limit, "giving rise to an equitable interest of the debtor in having the proceeds applied to satisfy as much of those claims as possible."[77]

In *Edgeworth*, the Court held that the debtor had no interest in the proceeds of its malpractice insurance policy.[78] In its holding, the court noted that the debtor, who was an insured individual under a medical malpractice liability, asserted no claim at all to the proceeds of the policy and that the proceeds could not be made available for the distribution to the creditors other than the victims of medical malpractice.[79]

Here, Trustee asserts that pursuant to Fifth Circuit precedent, the estate has an interest in Proceeds under Side C Coverage and Side A Coverage of the Policies. The Court will address each in turn.

### i.   Side C Coverage

Side C Coverage, labeled as "Insured Entity Liability Coverage," provides that: "[t]he Insurer will pay Loss that the Insured Entity becomes legally obligated to pay arising from a Claim first made against the Insured Entity during the Policy Period or the Extended Reporting Period, if applicable, for a Wrongful Act."[80]

The Policies provide Claims-Made Liability Coverage—meaning, among other things, coverage for "Claims" that are "first made" against Insured Individuals "during the Policy Period

---

[75] *In re OGA Charters, L.L.C.*, 901 F.3d at 603.
[76] *Id.* at 604
[77] *Id.*
[78] *In re Edgeworth*, 993 F.2d at 56.
[79] *Id.*
[80] ECF Nos. 2943-1 at 33; 2954-1 at 33.

or the Extended Reporting Period" and are reported to the Insurer "in no event later than 90 days after the end of the Policy Period or, with respect to a Claim made during the Extended Reporting Period, if applicable, no later than the expiration thereof."[81] The "Policy Period" was from December 22, 2021 to December 22, 2022 for the Policy.[82] Ninety days thereafter was March 22, 2023. The "Policy Period" was from December 22, 2022 to December 22, 2023 for the Renewed Policy.[83] Ninety days thereafter was March 21, 2024. The "Extended Reporting Period" was for no longer than one year—that is, until no later than December 22, 2023 for the Policy and no later than December 22, 2024 for the Renewed Policy.[84]

As with all coverages under the Policies, Side-C Coverages are Claims-Made as described above: coverage is available only for Claims "first made against" the Insured Entity "during the Policy Period or Extended Reporting Period" (i.e., no later than December 22, 2023 or December 22, 2024).[85] And to be covered, the Insured "must notify the Insurer" of the Claim "in no event later than 90 days after the end of the Policy Period or," to the extent applicable, "no later than the expiration of" the Extended Reporting Period (i.e., December 22, 2023 or December 22, 2024).[86] In sum, for a party to obtain Side C Coverage, it must, among other things, have both received a covered "Claim" against it and notified the Insurer of that "Claim" no later than December 22, 2023 for the Policy and December 22, 2024 for the Renewed Policy. Indeed, Trustee does not dispute that it must have notified the Insurer of a Claim for Debtors to obtain coverage for that Claim under Side C Coverage.[87]

---

[81] ECF Nos. 2943-1 at 33, 27; 2954-1 at 33, 27.
[82] ECF Nos. 2943-1 at 4.
[83] ECF No. 2954-1 at 4.
[84] ECF Nos. 2943-1 at 6; 2954-1 at 6.
[85] ECF Nos. 2943-1 at 6; 2954-1 at 6.
[86] ECF Nos. 2943-1 at 33, 27; 2954-1 at 33, 27.
[87] *See generally* ECF No. 2976-2; 2933.

Trustee asserts she gave notice to the Insurer of a Claim asserted against the Debtors before December 22, 2023 when her counsel sent a letter to Movants and the Insurer on December 14, 2023[88] (the "*December 14, 2023 Letter*").[89] The December 14, 2023 Letter stated in relevant part that: "[t]his letter shall serve as notice, and a demand for damages, that [Mountain Express Oil Company and its debtor affiliates] ha[ve] been harmed by acts, omissions, and other wrongful conduct engaged in and by its former officers and directors"[90] The Trustee asserts that the December 14, 2023 Letter is a broad notice that also gives notice to the Insurer of potential Claims against the Debtors that arise out of the misconduct referenced in the December 14, 2023 Letter.[91] Specifically, in her briefing, the Trustee asserts that: "[t]he Trustee's decision to file a broad Claims Notice was in compliance with the Policy. Indeed, nothing in the Policy or elsewhere required the Trustee to describe the specifics of the claims or identify whether notice was being provided under Side A, Side C, or both."[92] In other words, Trustee's argument is that the December 14, 2023 Letter gives the Insurer notice of any Claims potentially brought against Debtors that is also based on Movant's alleged acts, omissions, and other wrongful conduct referenced in the December 14, 2023 Letter, including a claim brought by West Hill Ranch against one of the Debtors.[93] Notably, in her briefing, the Trustee indicates for the first time a specific claim that allegedly implicated Side C Coverage, stating that: "West Hill Ranch, a former 3% owner of MEX, has asserted a Proof of Claim against the estate for 'Damages resulting from fraud, fraudulent

---

[88] ECF No. 2954-3.
[89] ECF No. 2977 at 5.
[90] ECF No. 2954-3.
[91] ECF No. 2977 at 5.
[92] ECF No. 2977 at 8.
[93] ECF No. 2977 at 7.

conveyance of MEX assets and defalcation."[94] However, no documentary or testimonial evidence was offered or admitted into evidence at the Hearing to substantiate this assertion.[95]

The Court finds that the Trustee, on behalf of the Debtors, failed to show that she provided the Insurer with sufficient notice of a Claim to entitle the Debtors to Side C Coverage. Paragraph B of the Policies state that it is a condition precedent for Claim-Made Liability Coverages that "the Insured must notify the Insurer thereof in writing" of any Claim.[96]

Additionally, Paragraph C of the Policies provide in relevant part:

> If during the Policy Period or the Extended Reporting Period, if applicable, **an Insured gives the Insurer written notice of any Wrongful Act,** . . . **act, error, omission, fact, or circumstance that occurred before the end of the Policy Period and is reasonably likely to give rise to a Claim with full details of**: **1.** such Wrongful Act, . . . act, error, omission, fact, or circumstance including any available information on persons or entities involved; **2.** the nature and extent of the potential damages and the names of the potential claimants; and **3.** the manner in which the Insured first became aware of such Wrongful Act, . . . act, error, omission, fact, or circumstance; **then any such Claim subsequently arising out of such Wrongful Act,** . . . act, error, omission, fact or circumstance **will be deemed to have been made during the policy period in which such notice was given**. In order for coverage to apply to any such Claim, the Insured must provide notice to the Insurer of such Claim in accordance with paragraph B above. No coverage will be provided for any Defense Costs incurred prior to the time such Claim is made unless otherwise authorized in writing by the Insurer.[97]

The December 14, 2023 Letter provides the full details of a Wrongful Act. Specifically, the December 14, 2023 Letter provides that "[a]mong other things, the Officers and Directors breached their fiduciary duties, breached their duties of good faith and fair dealing, engaged in self-dealing, converted MEX's assets, and/or engaged in otherwise improper transfers and conveyances."[98] However, the December 14, 2023 Letter does not meet the other requirements to

---

[94] ECF No. 2977 at 6.
[95] *See* ECF No. 2976-2 at 18.
[96] ECF Nos. 2943-1 at 27; 2954-1 at 27.
[97] ECF No. 2943-1 at 27; 2954-1 at 27 (emphasis added).
[98] ECF No. 2954-3.

suffice as notice under the Policies. As to the second requirement under paragraph C of the Policies, the December 14, 2023 Letter gives some detail of the potential damages by demanding "A minimum of $250 million in damages," but it gives no details of "the names of the potential claimants" that would potentially bring a Claim against any of the Debtors, as required by the Policies.[99] As to the third requirement, the December 14, 2023 Letter does not provide in any detail "the manner in which the Insured first became aware of such Wrongful Act."[100]  In sum, the December 14, 2023 Letter does not indicate whether any Claims were or will be asserted against the Debtors.

Testimony from Trustee and her counsel at the Hearing confirm that the December 14, 2023 Letter did not place the Insurer on notice of any Claim made against the Debtors. At the Hearing, the Trustee testified that she was unaware of any covered Claim having been made against a Debtor and that, in any event, no Claim was reported to the Insurer before the December 2023 and December 2024 deadlines.[101] Specifically, Trustee was asked: "But you're not aware of any claim under this policy that's been made against a Debtor?" The Trustee responded: "The Debtor entities, not that I'm aware of. That is correct."[102] She was also asked: "So you have not notified AXIS Insurance Company of any claims made against the Debtor. Correct?" The Trustee answered: "That is correct."[103] The Court also asked Trustee's counsel: "But the Trustee has not made a claim under this policy by the deadline. Correct?" Trustee's counsel replied: "That is correct."[104] Therefore, the Court finds that the December 14, 2023 Letter does not provide notice to the Insurer of Claims against the Debtors that triggers Side C Coverage. Trustee has not provided

---

[99] ECF No. 2954-3.
[100] ECF Nos. 2943-1 at 27; 2954-1 at 27.
[101] ECF No. 2976-2 at 18.
[102] ECF No. 2976-2 at 18.
[103] ECF No. 2976-2 at 18.
[104] ECF No. 2976-2 at 42.

any evidence to show that she provided notice to the Insurer of Claims against the Debtors that would trigger Class C Coverage.

Accordingly, the Court finds that because the Trustee failed to show she placed the Insurer on notice of any Claims made against any of the Debtors implicating Side C Coverage before December 22, 2023 and December 22, 2024—and because such notice was required to obtain Side C Coverage—the Trustee has failed to show that any Debtor has a covered Claim under the Policies' Side C Coverage resulting in the estate having no interest to the Proceeds of the Policies under Side C Coverage.

### ii. Side A Coverage

Trustee asserts that in the event the Trustee obtains a judgement or settlement against Movants, the Policies require that the Insurer deliver the Proceeds to the Trustee, not Movants.[105] Accordingly, Trustee asserts that "because (i) the Trustee has provided notice of claims through the [December 14, 2023 Letter] and (ii) if the Trustee is successful in her litigation, the Policy Proceeds would be paid directly to the estate," the Trustee, vis a vis the estate, has an interest in the Policy Proceeds under Side A Coverage.[106]

Trustee did not assert any interest to the Proceeds under Side A Coverage until the Hearing.[107] Movants, in their post-trial briefing, assert that the Trustee waived her argument regarding Side A Coverage because the argument was untimely.[108] The Court must thus consider whether Trustee's argument relying on Side A Coverage is untimely and therefore waived.[109] The deadline to object to the Motion for Relief was seven days before the Hearing pursuant to BLR

---

[105] ECF No. 2977 at 11.
[106] ECF No. 2977 at 11.
[107] *See* ECF No. 2933; Sep. 24, 2025 Courtroom Min.
[108] ECF No. 2976 at 4–5.
[109] ECF No. 2976 at 5.

4001-1(a)(3). The Trustee filed her Objection within that deadline on September 17, 2025.[110] The Objection did not assert an interest to Proceeds under Side A Coverage.[111] Nonetheless, this Court has discretion to overlook transgressions of local rules and consider arguments raised after a deadline.[112] Here, Movants had an opportunity to respond to Trustee's arguments regarding Side A Coverage at the Hearing and the Court gave additional time for post-trial briefing on the issue of Side A Coverage.[113] Accordingly, as the Court finds that no party will be prejudiced by considering the Trustee's argument regarding Side A Coverage, the Court will now consider whether Debtors are entitled to Side A Coverage under the Policies.[114]

Side A Coverage of the Policies, labeled as Directors & Officers Liability Coverage, provides that: "The Insurer will pay Loss not indemnified by the Insured Entity that the Insured Individual becomes legally obligated to pay arising from a Claim first made against such Insured Individual during the Policy Period or the Extended Reporting Period, if applicable, for a Wrongful Act."[115] In the simplest terms, and subject to the other provisions of the Policies, Side A Coverage requires the Insurer to pay Insured Individuals for Losses arising from certain Claims.[116] The plain language of the Policies limits Side A Coverage to the benefit of Insured Individuals such as Movants, and is not for the benefit of Insured Entities, such as the Debtors.[117] Side A Coverage

---

[110] ECF No. 2933.

[111] ECF No. 2933.

[112] *Serv. Steel Warehouse Co., L.P. v. Steel Stadiums Fab, L.P.* (*In re Steel Stadiums*), Nos. 11-42632-DML, 11-4205- DML, 2013 Bankr. LEXIS 148, at *11 (Bankr. N.D. Tex. Jan. 14, 2013) ("The 'decision whether to apply [a local] rule strictly or to overlook any transgression' is generally left to the court's discretion."); *Leal v. Woodley & McGillivary*, No. H-08-cv-3452, 2009 U.S. Dist. LEXIS 126698, at *3 (S.D. Tex. Aug. 31, 2009).

[113] Sep. 24, 2025 Courtroom Min.

[114] *Leal*, No. H-08-cv-3452, 2009 U.S. Dist. LEXIS 126698, at *3 ("Defendants move to strike Plaintiffs' Reply because it was untimely filed and because it relies on documentary evidence that Plaintiffs did not include in their previous Response to Defendants' Motion to Dismiss or their Motion to Reconsider. Because it is this Court's practice to resolve issues on the merits, Defendants' Motion to Strike will be denied.").

[115] ECF Nos. 2943-1 at 33; 2954-1 at 33.

[116] ECF Nos. 2943-1 at 33; 2954-1 at 33.

[117] *See Youngstown Osteopathic Hosp. Ass'n v. Ventresco* (*In re Youngstown Osteopathic Hosp. Ass'n*), 271 B.R. 544, 550 (Bankr. N.D. Ohio 2002); *Ochs v. Lipson* (*In re First Central Financial Corp.*), 238 B.R. 9, 13 (Bankr. E.D.N.Y. 1999) ("There is an important distinction between the individual liability and the reimbursement portions

provides coverage for Loss, which is defined in the Policies as "monetary judgments, awards, or settlements . . . and Defense Costs."[118]

The inclusion of defense costs in the definition of Loss is particularly instructive as to whom proceeds are directed—under no circumstance is the Trustee capable of incurring losses in the form of defense costs for an action that she brings on behalf of the Debtors.[119] Moreover, the Fifth Circuit in *World Exposition* noted that a suit whose object is to enlarge the debtor's estate does not trigger coverage for the debtor under an insurance policy.[120] In *World Exposition*, the creditors' committee, on behalf of the debtor, brought a suit against directors and officers of the debtor.[121] Although the Court found that the officers and directors were entitled to liability coverage for the creditors' committee's suit, it did not find that the suit also triggered coverage for the debtor, despite the debtor being a named insured.[122] The court in *World Exposition* looked to precedent cases where it was held that the estate had an interest in the proceeds of the estate's insurance policy.[123] The court distinguished those cases because, in those cases, the suits triggering coverage were brought against the estate and threatened to impose liability on it.[124] In contrast, the suit that called coverage into play in *World Exposition* was one brought on behalf of the estate and

---

of a D & O policy. . . .  Unlike an ordinary liability insurance policy, in which a corporate purchaser obtains primary protection from lawsuits, a corporation does not enjoy direct coverage under a D & O policy. It is insured indirectly for its indemnification obligations. In essence and at its core, a D & O policy remains a safeguard of officer and director interests and not a vehicle for corporate protection."); *La. World Exposition, Inc. v. Fed. Ins. Co.(In re La. World Exposition, Inc.)*, 832 F.2d 1391, 1398 (5th Cir. 1987) ("With regard to the liability proceeds, the obligation of the insurance companies was only to the directors and officers and they are the named and the only insureds. These proceeds would be paid only if the directors and officers incurred some covered legal expense or liability. LWE's rights were limited to the indemnification proceeds.").

[118] ECF Nos. 2943-1 at 14; 2954-1 at 14.

[119] ECF Nos. 2943-1 at 14; 2954-1 at 14.

[120] *See In re La. World Exposition, Inc.*, 832 F.2d at 1400 ("Here, the suit calling the liability coverage into play is one brought by the Committee on behalf of the debtor, LWE. The object of that action is to enlarge the debtor's estate. In the cited cases where the directors' and officers' liability coverage was at issue, the situation was just the opposite.").

[121] *Id.*

[122] *Id.* at 1400.

[123] *Id.* at 1399–1400.

[124] *Id.*

sought to enlarge the estate.[125] The same is true here. The suits the Trustee claims trigger Side A Coverage are ones brought on behalf of the Debtors to enlarge the estate. Because any suit the Trustee brings against the Insured Individuals would bring money into the estate rather than impose liability on it, such a suit would not trigger Side A Coverage for the Debtors' direct benefit, even though the Debtors are Named Insureds under the Policy. Accordingly, the Court finds that the Trustee is not entitled to implicate Side A Coverage of the Policies because that coverage applies solely to individual directors and officers such as Movants here. [126]

### iii.   Whether the estate has an interest in Proceeds of the Policies notwithstanding a lack of Side A and Side C Coverage

Truste asserts that the estate has an interest in the Proceeds because (1) any payment of Proceeds to the benefit of Movants reduces payments available to estate and (2) any settlement or judgement obtained by Trustee against Movants on behalf of the Debtors would result in Proceeds being paid directly to estate.[127] For the reasons explained *infra*, the Court finds that the estate does not have a demonstrated interest in the Proceeds, notwithstanding whether any Proceeds might be distributed to the estate, because the Trustee failed to show that the Debtors have a covered Claim that entitles them to coverage under the Policies.

Fifth Circuit precedent makes clear that a debtor's property interest in proceeds of an insurance policy turns on the debtor's status as an insured, not a plaintiff. In *World Exposition*, a creditors' committee, acting with court authority on behalf against the debtor's directors and officers.[128] The directors and officers sought to obtain coverage for defense costs under a directors

---

[125] *Id.* at 1400.
[126] *See Equinox Oil Co. v. Official Unsecured Creditor's Comm.* (*In re Equinox Oil Co.*), 300 F.3d 614, 620 (5th Cir. 2002) ("In summary, we agree with the district court that the proceeds of the National Union policy belong to the bankruptcy estate. The policy protects Equinox from losses resulting from loss of control of a well. The policy is not designed to protect losses of third parties, like the directors and officers in *LWE* or the patient in *Edgeworth*.").
[127] ECF No. 2977 at 3, 10–11.
[128] *In re La. World Exposition, Inc.*, 832 F.2d 1391 at 1393-94.

and officers insurance policy, and the committee, acting on behalf of the debtor, filed suit to halt the payment of proceeds, arguing—as the Trustee does here—that the policy proceeds are estate property.[129] The creditors' committee argued that the insurance policy proceeds were property of the bankruptcy estate because paying the directors' and officers' legal fees would reduce the policy's liability coverage and this reduction would leave less coverage available for the debtor to recover from if it wins its lawsuit against those directors and officers.[130] Notwithstanding that the committee, acting in the name of the debtor, brought suit against the directors and officers, the Court held that the proceeds of the policy were not property of the estate because only directors and officers, not the debtor itself, were afforded liability coverage under the policy.[131]

The Trustee asserts that *World Exposition* is inapplicable here because *World Exposition* noted that when policy proceeds are payable directly to officers and directors, the proceeds may not be assets of the estate.[132] The Trustee argues that, in contrast, the Proceeds in this case would be paid directly to the estate if she prevails in a suit against the Movants.[133] However, *World Exposition* does not create a *per se* rule that whenever insurance proceeds are paid directly into the estate, the proceeds become property of the estate. In fact, in *World Exposition*, the policy provided indemnification coverage for the debtor itself to the extent it might reimburse its directors or officers for legal expenses or liability.[134] In reaching its conclusion that the proceeds of the policy

---

[129] *Id.* at 1393.

[130] *Id.* at 1400 ("Here, as noted, the claim of the Committee (for LWE) is not related to the indemnification coverage, but rather asserts that the liability coverage afforded the directors and officers, which LWE could reach if successful in its suit (cause No. 85-2989) against them, will be diminished by the payment of their legal fees and hence there will be less of such liability coverage against which LWE, as plaintiff in that suit, might effect any recovery it may ultimately be awarded therein.").

[131] *Id.* at 1393, 1400–01.

[132] ECF No. 2977 at 11. *See In re La. World Exposition, Inc.*, 832 F.2d 1391 at 1400 ("Actually, what these cases suggest is that it is the directors and officers to whom the liability proceeds are payable, and not LWE, who have the property interest in such proceeds for bankruptcy purposes.").

[133] ECF No. 2977 at 11.

[134] *Id.* at 1393.

were not property of the estate, the court noted that the creditors' committee did not claim the debtor was entitled to coverage under the indemnification provision of the policy and that only the directors and officers were entitled to liability coverage under the policy.[135] Therefore, the court in *World Exposition* held that insurance proceeds were not property of the estate, notwithstanding that the proceeds might have eventually ended up in the estate's possession.[136]

The Trustee relies on *Edgeworth* which noted, in the context of determining whether the estate had an interest in proceeds of its insurance policy, that "no secondary impact has been alleged upon Edgeworth's estate, which might have occurred if, for instance, the policy limit was insufficient to cover appellants' claims or competing claims to proceeds."[137] Specifically, Trustee asserts that since granting Movants' Motion for Relief would result in the depletion of the $3,000,000 coverage of the Policies, leaving the estate without coverage, the Trustee has an interest in the Proceeds under the "secondary impact" exception in *Edgeworth*.[138] However, as noted by the Fifth Circuit, the question of whether a debtor has an interest in the proceeds of an insurance policy is a fact-specific one, and proceeds of an insurance policy are properly classified as property of the estate in "limited circumstances."[139] The Fifth Circuit in *OGA Charters* relied on the "secondary impact" exception in *Edgeworth* in finding that proceeds of an insurance policy were property of the estate.[140] But in *OGA Charters*, the debtor was entitled to coverage under the policy for claims brought against the debtor.[141] Here, the Trustee has not demonstrated that the Debtors are entitled to coverage under the Policies—whether under Side A, Side C, or any other

---

[135] *Id.* at 1400.
[136] *Id.* at 1400.
[137] *In re Edgeworth*, 993 F.2d at 56.
[138] ECF No. 2977 at 9.
[139] *In re OGA Charters, L.L.C.*, 901 F.3d at 603, 605 ("[W]e hold this case presents the limited circumstances in which the proceeds of a debtor's liability policy are property of the estate.").
[140] *Id.* at 604.
[141] *Id.* at 601.

provision. The Trustee has not identified a single case in which the proceeds of an insurance policy were deemed property of the estate without a showing that the debtor was entitled to coverage under the policy.

Moreover, it would defy logic and cut against public policy to find a property interest in the Proceeds by the estate merely because the Trustee is bringing claims against Movants which may be satisfied through the Proceeds of the Policies. The Court in *World Exposition* explained that "[o]ne having a pending, unadjudicated tort claim against another does not—whether or not the claimant is bankrupt— thereby have a property interest in liability insurance proceeds payable to the defendant; but the defendant does have a property interest, recognized in bankruptcy, in such proceeds."[142] Shifting the analysis around, the Fifth Circuit stated:

> Suppose that instead of [the debtor], it was the directors and officers who were bankrupt. In that case, it would be perfectly clear . . . that the liability proceeds were part of the directors' and officers' respective estate . . . . In such an instance, no person asserting a claim against them, as the Committee is here, would suggest that the proceeds were property of the corporation.

Accordingly, the Court concludes that the fact that the Trustee's potential recovery might be paid from the Policies' Proceeds does not create a "limited circumstance" making the Proceeds property of the estate because the Trustee has not shown that the Debtors have a covered Claim under the Policies.[143]

Because the Trustee has not demonstrated that there are any Claims asserted against the Debtors that trigger coverage for Debtors under the Policies and because Trustee's prosecution of claims against Movants does not convert the Proceeds into property of the estate, the Court finds

---

[142] *In re La. World Exposition, Inc.*, 832 F.2d 1391 at 1400.
[143] *In re Charters, L.L.C.*, 901 F.3d at 603; *Homsy v. Floyd* (*In re Vitek, Inc.*), 51 F.3d 530, 535 (5th Cir. 1995) ("[W]hen a debtor corporation owns a liability policy that *exclusively* covers its directors and officers, we know from *World Exposition* that the proceeds of that D&O policy are not part of the debtor's bankruptcy estate.") (emphasis in original).

that the estate has no demonstrated property interest in the Proceeds of the Policies. Therefore, the automatic stay under § 362 does not apply to prevent the Insurer from evaluating coverage and applying Proceeds of the Policies towards defense costs to Movants.[144]

The parties have filed post-trial briefing on the issue of whether the Priority Payment Provision in the Policies is enforceable in bankruptcy.[145] The Priority Payment Provision provides that:

> The Insurer will be entitled to pay Loss and other covered amounts as they become due and payable under this Policy without consideration of other future payment obligations. However, if Loss exceeds the remaining applicable Limit of Insurance or in the event of the Financial Impairment of the Insured Entity, the Insurer will first pay Loss that the Insured Individual is legally obligated to pay that is not indemnified by the Insured Entity because the Insured Entity either is not legally permitted to provide such indemnification or is unable to provide such indemnification by reason of Financial Impairment.[146]

Movants assert that even if the Trustee could show that the estate has a cognizable property interest in the insurance proceeds, that interest necessarily would always be subordinated to that of the Movants because the Policies' Priority Payment Provision requires that the Movants must be paid out Proceeds before any of the Insured Entities.[147] In contrast, the Trustee asserts that the Priority Payment Provision is an unenforceable "ipso facto clause" under § 365(e)(1).[148] However, this Court need not determine the enforceability of the Priority Payment Provision because the estate has no demonstrated property interest in the Proceeds that may be subject to the Priority Payment Provision.

Accordingly, the Court finds that the automatic stay is inapplicable in this matter because although the AXIS Insurance Company Management Liability Policy, Policy No. P-001-

---

[144] *See Sosebee v. Steadfast Ins. Co.*, 701 F.3d 1012, 1025 (5th Cir. 2012).
[145] ECF Nos. 2976; 2977.
[146] ECF Nos. 2943-1 at 31; 2954-1 at 31.
[147] ECF No. 2976 at 11.
[148] ECF No. 2977 at 12.

000763425-01 and Policy No. P-001-000763425-02 are property of the Debtor's bankruptcy estate, the Debtors' bankruptcy estate has no demonstrated interest in the proceeds of the AXIS Insurance Company Management Liability Policy, Policy No. P-001-000763425-01 and Policy No. P-001-000763425-02, and therefore AXIS Insurance Company is permitted to evaluate coverage and make payments under the terms of the AXIS Insurance Company Management Liability Policy, Policy No. P-001-000763425-01 and Policy No. P-001-000763425-02 to or for the benefit of Mr. Lamar Frady and Mr. Turco Wadud.

## IV.   CONCLUSION

An order consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

**SIGNED October 29, 2025**

**Eduardo V. Rodriguez**
**Chief United States Bankruptcy Judge**